IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARA LEE CORPORATION, on behalf of its employee-participants in the American Bakers Association Retirement Plan,**<br>Three First National Plaza<br>Chicago, Illinois 60602-4260<br><br>    **Plaintiff,**<br><br>v.<br><br>**AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION, as Administrator of The American Bakers Association Retirement Plan**<br>1350 Eye Street, N.W., Ste. 1290<br>Washington, D.C. 20005<br><br>    **Defendants.** | Case No._____ |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Sara Lee Corporation ("Sara Lee"), by and through counsel and on behalf of its employee-participants in the American Bakers Association Retirement Plan (the "ABA Plan"), for its complaint against Defendants ABA Plan and the Board of Trustees of the American Bakers Association, as Administrator of the ABA Plan ("Board of Trustees") (collectively "Defendants"), states as follows:

### JURISDICTION AND VENUE

1. This is an action by Sara Lee, a Participating Employer and functional fiduciary of the ABA Plan, seeking declaratory and injunctive relief with respect to the acts and practices of the Defendants that violate the terms of the ABA Plan, an employee benefit pension plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

This Court has jurisdiction over this matter pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

2. Venue is proper in the District of Columbia pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2) because the ABA Plan is administered in this District, the acts and practices violating the ABA Plan's terms occurred in this District and the Defendants can be found in this District.

**PARTIES**

3. Plaintiff Sara Lee is incorporated in the State of Maryland and has a principal place of business in Chicago, Illinois. As a member of the American Bakers Association ("ABA"), Sara Lee is a Participating Employer in the ABA Plan. As a Participating Employer, Sara Lee makes contributions to the ABA Plan for its eligible employee-participants and has been accepted for participation in the ABA Plan by the Board of Trustees. Sara Lee brings this suit as a functional fiduciary under the ABA Plan on behalf of its employee-participants who are eligible for benefits under the ABA Plan's terms.

4. Defendant ABA Plan is an employee pension benefit plan as defined by ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A). The ABA Plan is administered in several places, including Washington, D.C., where the Chairman of the Board of Trustees resides and the ABA Plan's counsel—the ABA Plan's registered agent for service of legal process—is located.

5. Defendant Board of Trustees is the ABA Plan's Named Fiduciary as defined by ERISA Section 402(a)(2), 29 U.S.C. § 1102(a)(2), and as such has the full authority and responsibility under the ABA Plan to control and manage the ABA Plan's operation and administration, and under the American Bakers Association Retirement Trust (the "ABA Trust") to manage and control the ABA Plan's assets held in the ABA Trust.

## FACTUAL AVERMENTS

I.   **The Plan's Administration**

6.   The ABA Plan was initially adopted effective as of October 1, 1961. The ABA Plan was designed with the express purpose of providing Participating Employers with the benefit, including the cost savings, of centralized administration and investment management while ensuring that each Participating Employer remained singly responsible for the benefits paid under the ABA Plan to its employee-participants.

7.   The Board of Trustees is the ABA Plan's Named Fiduciary, as that term is defined by ERISA. As such, under Section 2.01 of the ABA Plan, the Board of Trustees has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund. (A copy of the 2002 Restatement of the ABA Plan's governing document is attached hereto as Exhibit 1).

8.   Under Section 2.02(h) of the ABA Plan, the Board of Trustees has the express duty under the Plan "[t]o enforce the Plan in accordance with its terms, and with the Board's own rules and regulations." (*See* Ex. 1 at 16).

II.  **The ABA Plan as an Aggregate of Single Employer Pension Plans**

9.   Effective October 1, 1976, the ABA Plan was amended to satisfy the requirements of ERISA. After the ABA Plan became subject to ERISA, the effort to retain, to the extent possible, the terms of the ABA Plan as they existed prior to ERISA resulted in the creation of a rather unusual plan structure. The ABA Plan operates as a multiple employer defined benefit pension plan for most ERISA purposes. However, since October 1, 1976, the ABA Plan has been administered as an aggregate of single employer pension plans rather than a multiple

employer pension plan for purposes of the Pension Benefit Guaranty Corporation's ("PBGC") termination and premium rules found in Title IV of ERISA.

10.    In a letter dated June 21, 1979, the PBGC approved the structure of the ABA Plan when it determined that the ABA Plan constitutes an aggregate of separate pension plans for purposes of Title IV of ERISA (the "1979 Letter"). (*See* Exhibit A to the ABA Plan). While the ABA Plan has been amended and restated several times since the 1979 Letter, most recently on November 9, 2001, it has remained committed to the fundamental concept that, for PBGC premium and plan termination purposes, the ABA Plan is a group of single employer plans rather than a plan to which more than one employer contributes.

11.    Section 13.01 of the ABA Plan specifically states that the ABA Plan is intended to be an aggregate of single employer pension plans:

> 13.01    <u>Association of Single Employer Plans</u>. This Plan constitutes an association of single employer plans designed to give the cost savings and other benefits of a tax-qualified plan, the administration in common of all associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants. That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes . . . ." (*See* Ex. 1 at 70).

12.    In the various Participation Agreements entered into by the Board of Trustees and the Participating Employers, the Participating Employers acknowledged that they accepted that for purposes of the PBGC's termination and premium rules the ABA Plan was an association of single employer plans.

### III. Each Single Employer Plan Is To Provide Funding for Its Own Employee- Participants

13. Under the ABA Plan, as an aggregate of single employer pension plans, each Participating Employer is a sponsor of a separate pension plan covering only its own employee-participants for purposes of PBGC funding rules. Each Participating Employer's contributions to the ABA Plan are to be used to fund only the benefits of its own employee-participants and each separate plan is administered in an aggregate fashion by the Board of Trustees for administrative convenience.

14. Section 13.02 of the ABA Plan specifically states that contributions of each Participating Employer will be used only to provide benefits for its own employee-participants:

> 13.02 <u>Each Single Employer Plan to Provide Funds For Its Participants</u>. Subject to the Plan's actuarial assumptions that the stated contribution amounts will produce the stated benefit amounts, it is the fundamental concept and intent of this Plan that the contributions of each separate employer will be used only to provide benefits for Participants (and Beneficiaries thereof) by reason of such Participants' employment by such employer; *and only contributions by such employer will be used to provide benefits for such Participants (and Beneficiaries*) (Emphasis supplied). (*See* Ex. 1 at 70).

15. Under Section 7.02 of the ABA Plan, the Board of Trustees may terminate a Participating Employer's participation in the ABA Plan if the Participating Employer fails to submit the full amount of its agreed upon contributions to the Fund:

> 7.02 <u>Contribution Delinquencies</u>. A Participating Employer's participation in the Plan may be terminated by the Board if the Participating Employer shall fail to pay such sums of money as shall have been agreed upon in the Participation Agreement between the Participating Employer and the Board in accordance with the rules of the Board for remitting such contributions." (*See* Ex. 1 at 57).

IV. **The Board of Trustees Has Paid the Benefits for the
Employee-Participants of Certain Participating Employers
with the Contributions Attributable to Sara Lee and Other Participating Employers**

16. On or about June 17, 2005, the Board of Trustees approved a report by the ABA Plan's actuary related to the ABA Plan's financial status effective as of October 1, 2004 (the "2005 Plan Asset Report"). The 2005 Plan Asset Report listed, by Participating Employer, the contributions, administrative expenses, investment income, reallocations received due to terminated employers and fund balance for each Participating Employer.

17. In the 2005 Plan Asset Report, the ABA Plan's actuary reported that four of the seven active Participating Employers maintained negative balances in the ABA Trust. This meant that the four Participating Employers' investment income and contributions paid to the ABA Trust were less than their administrative expenses and the amount of benefits the Board of Trustees paid to their respective employee-participants.

18. In the 2005 Asset Balance Report, the ABA Plan's actuary also reported that Sara Lee maintained by far the greatest positive ABA Trust balance of any of the Participating Employers, as Sara Lee's asset balance was over $110.9 million—or over 90% of the ABA Trust's total balance of over $122.2 million.

19. By permitting the four Participating Employers to maintain a negative ABA Trust balance as of October 1, 2004, the Board of Trustees used ABA Trust funds attributable to Sara Lee contributions (as well as the contributions of two other Participating Employers) to make benefit payments for the employee-participants of the four Participating Employers maintaining negative balances.

# CLAIM FOR RELIEF

## Claim for Enforcement of ABA Plan Terms under
## ERISA Section 502(a)(3) against All Defendants

20. Sara Lee incorporates paragraphs 1 through 19 of this Complaint as if fully set forth herein.

21. Sara Lee brings this cause of action under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

22. Sara Lee brings this suit as a fiduciary of the ABA Plan and Participating Employer under Section 11.03 of the ABA Trust, which states:

> Participating Employers shall have the authority, either jointly or severally, to enforce this Trust on behalf of the persons having or claiming any interest in the Fund. In any action or proceeding affecting the Fund or the administration thereof or for instructions to the Board, the Association and the Board shall be the only necessary parties, and no Participating Employer or employees or former employees of any Participating Employer or their beneficiaries or any other person having or claiming to have an interest in the Fund shall be entitled to any notice of process, and any judgement that may be entered in such action or proceeding shall be binding on all persons having or claiming to have any interest in the Fund. (A copy of the ABA Trust is attached hereto as Exhibit 2).

23. Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers.

24. Sara Lee was one of only three active Participating Employers in the ABA Plan that maintained a positive balance in the ABA Trust as of October 1, 2004.

25. Defendants have violated the terms of Section 13.02 of the ABA Plan by using Sara Lee's contributions (and the contributions of two other Participating Employers maintaining positive ABA Trust balances) in the ABA Trust to pay the benefits for employee-participants of other Participating Employers that maintain negative balances in the ABA Trust.

26. Defendants have also violated the terms of Section 2.02(h) of the ABA Plan by failing to enforce the ABA Plan in accordance with its terms.

27. Defendants therefore should be enjoined from continuing to violate the ABA Plan's terms and should be directed to require all Participating Employers to fulfill their benefit contribution requirements under the ABA Plan and their Participation Agreements and maintain positive balances in the ABA Trust so that their own contributions will be used to pay the benefits due to their respective employee-participants.

28. Defendants should also be enjoined from using ABA Trust proceeds attributable to Sara Lee's contributions to the ABA Plan (or the contributions of the two other Participating Employers maintaining positive ABA Trust balances) to pay the benefits for employee-participants of other Participating Employers.

29. Sara Lee further seeks recovery of its attorneys' fees and court costs required to file and prosecute this lawsuit to enforce the ABA Plan's terms under ERISA Section 502(g), 29 U.S.C. § 1132(g).

**WHEREFORE**, Sara Lee Corporation, on behalf of its employee-participants in the ABA Plan, requests that this Court:

(1) declare pursuant to 28 U.S.C. § 2201 that Defendants have violated the terms of Section 13.02 of the ABA Plan by using Sara Lee's contributions (and the contributions of two other Participating Employers maintaining positive ABA Trust balances) in the ABA Trust to pay the benefits for employee-participants of other Participating Employers that maintain negative balances in the ABA Trust;

(2) declare pursuant to 28 U.S.C. § 2201 that Defendants have violated the terms of Section 2.02(h) of the ABA Plan by failing to enforce the ABA Plan in accordance with its terms;

(3) permanently enjoin Defendants American Bakers Association Retirement Plan and the Board of Trustees of the American Bakers Association, as Administrator of the ABA Plan, from violating the unambiguous terms of the ABA Plan;

(4) permanently enjoin Defendants to cease and desist from violating the ABA Plan's terms with respect to using Sara Lee's contributions (and the contributions of two other Participating Employers maintaining positive ABA Trust balances) in the ABA Trust to pay the benefits for employee-participants of other Participating Employers that maintain negative balances under the ABA Trust;

(5) award such other appropriate equitable relief under ERISA and further relief under 28 U.S.C. § 2202 as necessary to ensure that Defendants enforce the ABA Plan's unambiguous terms equally for all Participating Employers and Plan Participants and Beneficiaries;

(6)    award Sara Lee its attorneys' fees and court costs as a prevailing party under ERISA Section 502(g), 29 U.S.C. § 1132(g); and

(7)    award such other relief as may be appropriate.

Respectfully Submitted,

SARA LEE CORPORATION

By: _____
One of Its Attorneys

M. Miller Baker (DC Bar No. 444736)
Sarah E. Hancur (DC Bar No. 480537)
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005-3096
Phone: 202.756.8000
Fax:   202.756.8087
Email: mbaker@mwe.com
       shancur@mwe.com

Michael T. Graham*
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois  60606
Phone: 312.372.2000
Fax:   312.984.7700
Email: mgraham@mwe.com

*Motion for Admission *Pro Hac Vice* to be filed.

WDC99 1219808-1.029636.0180