# AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN

## 2002 RESTATEMENT

NOVEMBER 11, 2004

AS AMENDED THROUGH 11.16.2004

# AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN

## TABLE OF CONTENTS

I.  DEFINITIONS.................................................  1

    1.01 Accrued Benefit...........................................  1
        Actuary or Plan Actuary....................  1
        Affiliate.................................  2
        Beneficiary...............................  2
        Board.....................................  2
        Code......................................  2
        Contract Administrator....................  2
        Credited Service..........................  2
        Deferred Retirement Date..................  5
        Disability and Disabled...................  5
        Disability Retirement Date................  5
        Early Retirement Date.....................  5
        Effective Date............................  5
        Employee..................................  6
        Employer..................................  6
        ERISA.....................................  7
        Forfeiture................................  7
        Former Plan...............................  7
        Fund......................................  7
        Initial Participation Date................  7
        Insurance Company.........................  7
        Investment Manager........................  8
        Joint-and-Survivor Annuity................  8
        Maternity or Paternity Leave..............  8
        Named Fiduciary...........................  9
        Normal Retirement Date....................  9
        One-Year Break in Service.................  9
        Participant...............................  10
        Participating Employer....................  10
        Participation Agreement...................  10
        Plan......................................  10
        Plan Year.................................  10
        Qualified Domestic Relations Order........  11
        Qualified Joint and Survivor Annuity......  11
        Qualified Pre-Retirement Survivor Annuity....  11
        Rate of Contribution......................  11
        Retiree...................................  11
        Retires or Retirement or Retiring.........  11
        Trust.....................................  12

Vesting Year of Service....................... 12
Uncapped Service.............................. 12
Vesting Year of Service ...................... 12
Week of Service. ............................. 13
1.02 Gender and Number............................ 14

II.    MANAGEMENT AND ADMINISTRATION OF THE PLAN....... 15

2.01 Board is Named Fiduciary..................... 15
2.02 Board's Administrative Powers................ 15
2.03 Board's Right to Delegate to Contract
     Administrator............................... 17
2.04 Liability of Fiduciaries and Right to Insure. 17
2.05 Information to be Provided to Participants
     and Others.................................. 17
2.06 Annual Reports.............................. 17
2.07 Secretary................................... 18
2.08 Employee Information........................ 18
2.09 Non-Discrimination.......................... 18
2.10 Board Not Compensated....................... 18
2.11 Agent for Service of Process................ 18

III.   ELIGIBILITY AND PARTICIPATION................... 19

3.01 Participants in Former Plan................. 19
3.02 Eligibility On and After September 30, 1976.. 19
3.03 Duration.................................... 20

IV.    RETIREMENT BENEFITS............................. 21

4.01 Normal Retirement Amount.................... 21
4.01.1 Optional Uncapped Service Benefit.......... 23
4.02 Deferred Retirement Amount.................. 24
4.03 Early Retirement Amount..................... 24
4.04 Disability Retirement Amount................ 24
4.05 Vested Benefit on Termination............... 25
4.06 Qualified Joint-and-Survivor Annuity........ 25
4.07 Qualified Pre-Retirement Survivor Annuity.... 26
4.08 Non-Duplication of Benefits................. 27

V.     ALTERNATIVE OPTIONAL FORMS OF PENSION........... 30

5.01 Alternative Benefit Options................. 30
5.02 Beneficiary's Death......................... 32
5.03 Small Payment Option........................ 32
5.04 Designation of Beneficiary.................. 32

2002 RESTATEMENT · 11/16/2004

ii

5.05 Insured Annuity................................ 33
5.06 Rules Concerning Actuarial Equivalence....... 36

## VI.    PAYMENT OF RETIREMENT BENEFITS.................. 41

6.01        Benefit Commencement Dates.............. 41
6.01.1      Benefit Commencement Date - Qualified
            Pre-Retirement Survivor Annuity....... 42
6.02        Disability Payments..................... 42
6.03        Employment After Retirement............. 42
6.04        Effect of Amendments to Plan
            Changing Benefits..................... 43
6.05        Limitation on Benefits.................. 44
6.05.1      Maximum Compensation Considered......... 55
6.06        Payment of Benefits by Delivery
            of Insured Annuities.................. 55
6.07        Payment of Retirement Benefits
            Upon Late Application................. 55
6.08        Required Beginning Date................. 56

## VII.   CONTRIBUTIONS.................................... 57

7.01 Employer Contributions....................... 57
7.02 Contribution Delinquencies................... 57
7.03 Minimum Contribution......................... 57
7.04 Actuarial Surcharges......................... 57
7.05 Special Contributions........................ 58
7.06 Forfeitures Do Not Increase Benefits......... 58
7.07 Refunds of Erroneous Contributions........... 58
7.08 (proposed) Minimum Funding Contributions..... 58

## VIII.  THE FUND........................................ 59

8.01 Fund Management.............................. 59
8.02 Diversion Impossible......................... 59

## IX.    ACTUARIAL VALUATION.............................. 60

9.01 Periodic Actuarial Review.................... 60

## X.     AMENDMENT OF THIS PLAN........................... 61

10.01  Reservation of Right to Amend............. 61
10.02  Merger with Other Plans................... 61

**XI.  TERMINATION**................................................. 62

    11.01  Total Termination of Whole Plan........... 62
    11.02  Partial Termination of Plan............... 64
    11.02.1 Partial Termination Under IRC §411(d)(3).. 65
    11.03  Non-Discrimination........................ 65

**XII.  MISCELLANEOUS PROVISIONS**......................... 66

    12.01  Spendthrift Clause........................ 66
    12.02  Not A Contract of Employment.............. 67
    12.03  Addresses................................. 68
    12.04  Claims and Appeal Procedure............... 68
    12.05  Tax Qualified Plan........................ 68
    12.06  Payments to Person under Disability....... 68
    12.07  Termination for Loss of Association
           Membership................................ 68
    12.08  Saving Clause............................. 69
    12.09  Top-Heavy Plan............................ 69

**XIII.  NATURE OF PLAN**...................................... 70

    13.01  Association of Single Employer Plans...... 70
    13.02  Each Single Employer Plan to Provide
           Funds For Its Participants................ 70

**ADDENDUM NO. 1**

    Ad. 1    Definitions........................ Ad.-1
    Ad. 2    Top-Heavy Separate Plan Requirements.. Ad.-4
    Ad. 2.1  Vesting Rule....................... Ad.-4
    Ad. 2.2  Minimum Benefit Rule............... Ad.-4
    Ad. 2.3  Special Limitations in Case of More
           than One Plan...................... Ad.-5
    Ad. 2.4  Minimum Benefit in Case of More than
           One Plan........................... Ad.-6

**EXHIBIT A - PBGC LETTER**

## AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN
### 2002 RESTATEMENT - 1976 Preface

Preface. The American Bakers Association Retirement Plan (as amended and restated as of October 1, 1976) which follows seeks to bring the Plan into compliance with the requirements of the Employee Retirement Income Security Act of 1974 (ERISA) and yet retain, to the extent possible, the Plan as it was prior to the required changes.

Certain interpretations of ERISA regulations have been employed to meet the substance of the new rules and yet to avoid: (i) needless personnel record-keeping revisions, (ii) the multiplication of opportunities for mistakes, misunderstandings and controversies, and (iii) in general, forcing "round pegs into square holes."

The Trustees of the Plan are in receipt of determinations by the Pension Benefit Guaranty Corporation, the most recent of which is dated June 21, 1978, that for plan termination purposes the Plan is a group of single employer plans rather than a plan to which more than one employer contributes (see Article XIII and Exhibit A to the Plan). This concept is fundamental to the continuation of the Plan.

Notice is also hereby given that if future revision of ERISA rulings and regulations permit compliance in a manner deemed by the Trustees better suited to the purposes of the Plan and its common sense operation and more in line with the substance of the Plan's pre-ERISA provisions, changes will be made in this draft to take advantage of those revisions.

Notice is also hereby given that if any governmental agency will not permit the concept and provisions of Article XIII and the opinion in Exhibit A to remain substantially as set forth therein, this Plan will have been so radically altered that it will have to be terminated or substantially revised.

October 1, 1976

Board of Trustees,
AMERICAN BAKERS ASSOCIATION
RETIREMENT TRUST

# AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN
## 2002 RESTATEMENT

ANNE H.S. FRASER, PLAN COUNSEL
ANNE H.S. FRASER, P.C.
1320 19TH STREET, N.W, SUITE 200
WASHINGTON, D.C. 20005
202-466-4009

EDITION DATED 11.11.2004
AS AMENDED THROUGH 11.16.2004

**AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN**
**2002 RESTATEMENT**

## ARTICLE I

### DEFINITIONS

1.01  <u>Definitions</u>.  The following terms when used herein and initially capitalized as below indicated shall, unless the context clearly indicates otherwise, have the following respective meanings, namely:

"<u>Accrued Benefit</u>," when used in reference to a Participant at his Normal Retirement Date means his annual basic benefit determined as set forth in Section 4.01 hereof; and when used in reference to a Participant as of any given time prior to his Normal Retirement Date, means the product of (i) and (ii) or (i) and (iii) whichever is applicable, where:

(i)  equals the annual benefit commencing at his Normal Retirement Date (determined as set forth in Section 4.01 hereof) to which such Participant would be entitled assuming the terms of the Plan and his Rate of Contribution (as of such given time) remain the same to his Normal Retirement Date and assuming he commenced his participation at the earliest possible entry age; and

(ii) equals 4% multiplied by the number of his years of Credited Service at such given time (but not in excess of 100% except where the Participant is entitled to an Uncapped Service Benefit under Section 4.01.1 of the Plan), if at such given time such Participant has both attained age 47 and completed 15 years of Credited Service; and

(iii) equals 3% multiplied by the number of years of Credited Service at such given time (but not in excess of 100%), if at such given time such Participant has not both attained age 47 and completed 15 years of Credited Service.

"<u>Actuary</u>" or "<u>Plan Actuary</u>" means an actuary who is enrolled by the Joint Board for the Enrollment of Actuaries established under ERISA and who is selected by the Board from time to time to provide the actuarial reports and perform the actuarial services for the Plan and the Trust.

1

"Affiliate," when used in reference to a corporate Employer, means any corporation controlling, controlled by, or under common control with the Employer. For these purposes, a corporation is deemed to control another corporation if the controlling corporation owns, either alone or through other controlling corporations, more than 50% of the voting power of the controlled corporation.

"Beneficiary" means such person or persons as are concurrently or successively entitled to receive benefits hereunder by reason of the death of a Participant.

"Board" means the trustees of the Trust.

"Code" means the Internal Revenue Code of 1954 as from time to time amended.

"Contract Administrator" means the person or organization so designated by the Board in accordance with the provisions of Section 2.04 hereof, or in the event no such designation is in effect, such term means the Board.

"Credited Service" when used in reference to a Participant for the purpose, among others, of determining the amount of his Accrued Benefit prior to, at or after his Normal Retirement Date, means the sum of the following years (and fractions of years, if any):

    (i) for the period preceding October 1, 1976, each year for which he accumulated credit as a year of credited service used in computing the benefits at Normal Retirement Date under the Former Plan;

    (ii) for periods after September 30, 1976, each Plan Year for which his Participating Employer makes weekly contributions on his behalf in accordance with a Participation Agreement for a full 52 weeks;

    (iii) a fractional part of a year for each Plan year after September 30, 1976 during which his Participating Employer makes weekly contributions on his behalf in accordance with a Participation Agreement for at least 10 weeks but less than 52 weeks which bears the same ratio to a full year of Credited Service as the number of such contributed weeks bears to 52;

(iv) a fractional part of a year for the Plan Year after September 30, 1976 in which he Retires and during which his Participating Employer makes weekly contributions on his behalf in accordance with a Participation Agreement for less than 10 weeks which bears the same ratio to a full year of Credited Service as the number of such contributed weeks bears to 52:

(v) for each Participant whose Participating Employer's Effective Date occurs after September 30, 1976, his last period of service with his Participating Employer (including the predecessors in business of such Participating Employer) immediately preceding the Effective Date on which such Participating Employer commenced participation in the Plan and commenced making contributions in his behalf except that no such service shall be counted which precedes 3 or more successive One-Year Breaks in Service; and such period shall be calculated and credited to the nearest completed month of such service, and the length of such period shall be certified by such Participating Employer to the Contract Administrator as of such Effective Date at the time of applying for participation herein;

(vi) for each Participant whose Initial Participation Date occurs after September 30, 1976 and before July 1980, by reason of any of the following occurrences:

(a) the addition of his Participating Employer of a new category of Employees (including said Participant) for whom his Participating Employer makes contributions under the Plan, or

(b) a change in the employment of such Participant by transfer within the employment of his Participating Employer or by transfer into the employment of his Participating Employer, pursuant to which he becomes an Employee for whom his Participating Employer commences making contributions under the Plan,

then as such Participant completes each successive 2 full years of Credited Service prior to July 1, 1980, computed as provided in clauses (ii), (iii) and (iv) above, he shall be given credit for one additional full

year of Credited Service for each 12 months of his service with his Participating Employer next preceding his Initial Participation Date except that no such service shall be counted which precedes 3 or more successive One-Year Breaks in Service;

provided, however, that unless the Participating Employer has elected otherwise as provided in Section 4.08, such Credited Service shall be reduced by any period or periods of Credited Service for which such Participant at any time receives credit toward the accrual of a benefit (whether or not such benefit is necessarily attributable to any part or all of such period or periods of Credited Service) under any pension plan (other than this Plan and other than the American Society of Association Executives Retirement Plan as it applies to employees of The American Bakers Association)

(i)      which meets the requirements of Section 401 of the Code, and

(ii)     to which his Participating Employer made contributions on his behalf, and

(iii)    under which he or his beneficiary becomes entitled to a benefit;

provided, however, that for periods after September 30, 1976, in the case of a Participant who does not have a nonforfeitable right to an Accrued Benefit, years of Service after his Initial Participation Date which would otherwise be Credited Service which occur before any One-Year Break in Service shall not be taken into account if the number of successive One-Year Breaks in Service is at least three and equals or exceeds the aggregate number of his years of Credited Service before such One-Year Break in Service; and further provided, that for periods after September 30, 1985, in the case of a Participant who does not have a nonforfeitable right to an Accrued Benefit, years of service after his Initial Participation Date, which would otherwise be Credited Service which occur before any One-Year Break in Service shall not be taken into account if the number of successive One-Year Breaks in Service is at least five and equals or exceeds the aggregate number of years of Credited Service before such One-Year Break in Service, whichever is greater; and the aggregate number of years of Credited Service before any such One-year Break in Service shall be deemed not to include any years of Credited Service similarly not required to be taken into account by reason of any prior One-Year Break in Service. For

these purposes a Participant shall be deemed to have completed a Week of Service for each week for which contributions are erroneously omitted but later paid. No Participant will be credited with more than one year of Credited Service with respect to any Plan Year.

Notwithstanding any provision of this plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Internal Revenue Code.

"<u>Deferred Retirement Date</u>" means the date on which a Participant, who has remained in service after his Normal Retirement Date with the consent of his Participating Employer, retires.

"<u>Disability</u>" and "<u>Disabled</u>" means a physical or mental condition resulting from bodily injury or disease or mental disorder which, in the opinion of the Board on the basis of medical evidence satisfactory to the Board, renders a Participant incapable of engaging in any substantial employment. The Board shall be the sole and final judge of such disability and its decision shall be conclusive and binding on all parties.

"<u>Disability Retirement Date</u>" means the date on which a Participant for whom contributions have been made by his Participating Employer for at least 6 months, and who has completed at least 10 years of Credited Service or at least 5 years of Credited Service and at least 15 years of employment with a Participating Employer which would meet the test of Vesting Years of Service for post-September 30, 1976 Participants, and has not yet attained his Normal Retirement Date, terminates his employment with a Participating Employer by reason of Disability.

"<u>Early Retirement Date</u>" means the date on which a Participant for whom contributions have been made by his Participating Employer for at least 6 months, and who has completed 10 years of Credited Service or at least 5 years of Credited Service and at least 15 years of employment with a Participating Employer which would meet the tests of Vesting Years of Service for post-September 30, 1976 Participants, retires within the 10 year period next preceding his Normal Retirement Date.

"<u>Effective Date</u>" means October 1, 1961, with respect to any person, company or business organization which became a Participating Employer as of that date and with respect to any person,

company or business organization becoming a Participating Employer thereafter it shall mean the date on which such person, company or business organization first meets the definition of a Participating Employer.

"Employee" means a person in an employee-employer relationship with a Participating Employer. "Employee" shall include any employee of any other employer required to be aggregated with such employer under Sections 414(b), (c), (m) or (o) of the Internal Revenue Code and any leased employee of any "Employer" as defined herein.

As used herein, the term "leased employee" means any person who is not an employee of the recipient and who provides services to the recipient if -

(A) such services are provided pursuant to an agreement between the recipient and any other person (in this subsection referred to as the "leasing organization"),

(B) such person has performed such services for the recipient (or for the recipient and related persons) on a substantially full-time basis for a period of at least 1 year, and

(C) such services are performed under primary direction or control by the recipient.

With respect to any person (hereinafter in this subsection referred to as the "recipient") for whom a leased employee performs services, the leased employee shall be treated as an employee of the recipient, but contributions or benefits provided by the leasing organization which are attributable to services performed for the recipient shall be treated as provided by the recipient.

In the case of a person who is an employee of the recipient (whether by reason of this subsection or otherwise), years of service for the recipient shall be determined by taking into account any period for which such employee would have been a leased employee but for the requirements of subparagraph (B), above.

"Employer" means any person, company or business organization which is a member of the American Bakers Association so long as he or it remains a member of such Association.

"ERISA" means the Employee Retirement Income Security Act of 1974, as from time to time amended.

"Forfeiture" means such amount of a Participant's Accrued Benefit as shall not be distributable to him or his Beneficiary in accordance with the provisions of Section 4.05 hereof and is thus forfeited.

"Former Plan" means the American Bakers Association Retirement Plan effective October 1, 1961, as amended to and in existence at the time of the amendment and restatement thereof effective October 1, 1976.

"Fund" means the entire trust fund from time to time held by the Board pursuant to the Trust for the purposes of the Plan.

"Highly Compensated Employee." Effective for the Plan Year beginning October 1, 1997 and thereafter, the term highly compensated employee means any employee who: (1) was a 5-percent owner at any time during the Plan Year or the preceding Plan Year; (2) for the preceding Plan Year had compensation from the employer in excess of $80,000 and was in the top-paid group for the preceding Plan Year. The $80,000 amount is adjusted at the same time and in the same manner as under section 415(d), except that the base period is the calendar quarter ending September 30, 1996.

For this purpose the applicable Plan Year for which a determination is being made is called a determination Plan Year and the preceding 12-month period is called a look-back Plan Year.

A highly compensated former employee is determined in accordance with the regulations in effect under Code Section 414(q).

"Initial Participation Date" when used with reference to a Participant means the initial date as of which he becomes eligible to be a Participant.

"Insurance Company" means any legal reserve insurance company selected by the Board which may hold and invest assets of

the Fund and which underwrites any form of contract to provide for all or part of the benefits under the Plan.

"Investment Manager" means a person or organization:

(a) who is designated by the Board to have the unlimited or limited authority and power to manage, acquire or dispose of any asset in the Fund, and

(b) who is registered as an investment adviser under the Investment Advisers Act of 1940, is a bank as defined in that Act, or is an Insurance Company qualified to perform such services under the laws of more than one State, and

(c) who has acknowledged in writing that he is a fiduciary with respect to the Plan.

"Joint-and-Survivor Annuity" means a monthly annuity for the life of the Participant with a monthly annuity payable to a survivor after the Participant's death. Where the survivor is the Participant's spouse, the Joint-and-Survivor Annuity shall be a "Qualified Joint-and-Survivor Annuity." Where the survivor is a designated beneficiary other than the spouse, the Joint-and-Survivor Annuity means a monthly annuity for the life of the Participant with a monthly annuity for the designated beneficiary for the lesser of a) five years from the date of the Partici-pant's death or b) the designated beneficiary's lifetime.

"Maternity or Paternity Leave" for purposes of calculating vesting years of service means leave taken after December 31, 1984, of up to 501 hours which are hours which otherwise would normally have been credited to such individual but for such absence, or if normal working hours cannot be determined, 8 hours of service per day of absence. Such absence must be certified by the employee and approved by the employer according to procedures determined by the Plan Administrator as leave taken for one of the following reasons:

(i)     pregnancy of the individual;

(ii)    birth of the child of the individual;

(iii)    place of a child in connection with the adoption of the child by the individual; or

(iv)    for purposes of caring for the child during the period immediately following the birth or placement for adoption (excluding foster home placement).

"Named Fiduciary" means the persons who have authority to control and manage the operation and administration of the Plan as set forth in Article II.

"Normal Retirement Date" when used in reference to a Participant means the earliest date on which (I), (ii) and (iii) are all satisfied:

(i)    he has attained his 65th birthday;

(ii)    contributions have been made for him by his Participating Employer for at least 6 months;

(iii)    the earlier of (A) or (B) has occurred where

(A)    is the 5th anniversary of the commencement of his participation in the Plan; and

(B)    is the date he has completed 10 years of Credited Service.

"One-Year Break in Service" when used in reference to a Participant means a Plan Year (or other appropriate 12 month period for service prior to such Participant's Initial Participation Date) during which he has completed 10 Weeks of Service or less; provided, however, that for plan years beginning after October 1, 1984, an absence from work for maternity or paternity leave (as hereinabove defined) shall be credited toward a Participant's Weeks of Service only in the year in which such absence begins if such absence, if not credited, would result in

a break in service in that year, or, in any other case, in the following year. An absence for maternity or paternity leave is disregarded for purposes of accrued benefits requirements.

"<u>Participant</u>" means an Employee or a former Employee who is eligible to participate in the Plan or in its benefits, or who is receiving such benefits or who is eligible to receive a vested benefit the payment of which is deferred.

"<u>Participating Employer</u>" means:

    (i)      any member of the American Bakers Association, so long as such membership is maintained.

    (ii)      any Affiliate of such a member provided such member is a corporation,

    (iii)      an appropriate plant or unit of such a member of such an Affiliate, and

    (iv)      the American Bakers Association, in its capacity as an employer,

which agrees in a Participation Agreement to make contributions to the Fund and is accepted by the Board for participation in the Plan.

"<u>Participation Agreement</u>" means the contract by which an Employer agrees with the Board to participate in the Plan and agrees to be bound by the terms and provisions of the Plan, and to make contributions to the Fund on behalf of certain of its Employees.

"<u>Plan</u>" means the AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN as set forth herein as from time to time amended.

"<u>Plan Year</u>" means the fiscal year commencing October 1 of any year and ending with the next succeeding September 30.

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

10

"Qualified Domestic Relations Order" means a qualified domestic relations order as defined at Section 414(p) of the Internal Revenue Code, which is filed with the Board or its designated agent before payment of benefits commences; or any domestic relations order entered before January 1, 1985, if payments pursuant to the order have commenced on or before January 1, 1985. The Board may, in its uncontrolled discretion, treat a domestic relations order entered prior to January 1, 1985, as a Qualified Domestic Relations Order if payment of benefits has not commenced as of January 1, 1985.

"Qualified Joint-and-Survivor Annuity" means a monthly annuity for the life of the Participant with a monthly survivor annuity for the life of the spouse which is not less than 50 percent of and not greater than 100 percent of the amount of the annuity which is payable during the joint lives of the Participant and the spouse, and which is equal to the amount payable as a single annuity for the life of the Participant.

"Qualified Pre-Retirement Survivor Annuity" means a monthly survivor annuity for the life of the surviving spouse of a deceased Participant which is equal to the amount that would have been payable as a Qualified Joint-and-Survivor Annuity if the Participant had retired the day before his date of death, as set forth in Sections 4.06 and 4.07 hereof.

"Rate of Contribution" means the weekly contribution from time to time made on behalf of the Participant by his Participating Employer in accordance with the terms of the Plan and the Participation Agreement entered into by and between the Board and such Participating Employer, excluding, however, any additions for late participation, any actuarial surcharges and any special contributions to provide an Uncapped Service Benefit under Section 4.01.1 of Article IV.

"Retiree" means a Participant who has terminated his employment and has commenced to receive a retirement or disability benefit under the Plan.

"Retires" or "Retirement" or "Retiring" when used in reference to a Participant means the termination of such Participant's service with his Participating Employer under circumstances which would entitle him to commence receiving a

Normal, Deferred, Early or Disability Retirement pension in accordance with Articles IV and VI of this Plan.

"Trust" means the AMERICAN BAKERS ASSOCIATION RETIREMENT TRUST established by the Trust Agreement dated September 19, 1961, as from time to time amended.

"Uncapped Service" or "Uncapped Service Benefit" means Credited Service in excess of 25 years, or a benefit based on such service, where a Participating Employer has elected to provide an Uncapped Service Benefit in accordance with Article IV, Section 4.01.1 of the Plan.

"Vesting Year of Service" when used in reference to a Participant for the purpose, among others, of determining the nonforfeitable percentage of his Accrued Benefit (under Section 4.05 hereof) means:

(i) for Participants on October 1, 1976, each year prior to that date for which he accumulated credit as a year of credited service under the Former Plan, and each Plan Year after that date and after his 18th birthday (22nd birthday for Participants who are separated from service prior to October 1, 1985 or who have not completed one hour of service on or after October 1, 1985) during which he has completed at least 20 Weeks of Service, and

(ii) for each Participant who was not a Participant on and before October 1, 1976, each Plan Year after his 18th birthday (22nd birthday for Participants who are separated from service prior to October 1, 1985, or who have not completed one hour of service on or after October 1, 1985) during which he has completed at least 20 Weeks of Service since the earliest Effective Date of any Participating Employer by which he is or has been employed.

and further provided, however, that in the case of a Participant who does not have a nonforfeitable right to an Accrued Benefit, years of service which would otherwise be Vesting Years of

Service which occur before any One-Year Breaks in Service is at least three (at least five for periods after September 30, 1985) and equals or exceeds the aggregate number of such Vesting Years in Service before such One-Year Break in Service; and such aggregate number of Vesting Years of Service before any such One-Year Break in Service shall be deemed not to include any Vesting Years of Service similarly not required to be taken into account by reason of any prior One-Year Break in Service. No more than one year of Vesting Service shall be counted for a Participant for any one Plan Year.

"Week of Service" when used in reference to an Employee (including periods in which he is an employee, an Employee or a Participant), means each record week (defined below) for which he is directly or indirectly paid, or entitled to payment, by his employer (including periods before, during and after such employer is a Participating Employer) for the performance of duties or for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by such employer, and for reasons other than the performance of duties such as, but not limited to, vacations, holidays, jury duty, paid leaves of absence, qualified military duty or leave of absence under the Uniformed Services Employment and Re-employment Rights Act, paid sick time and periods for which Workmen's Compensation payments are made. "Record Weeks" are determined as follows:

(i) For an Employee for whom records (such as payroll records) are kept, or are required to be kept, reflecting hours worked or for which payment is made or owing, each calendar week in which there are:

(a) at least 20 such hours, and

(b) at least 3 days in which such hours occur or, for hours not worked, such hours as regularly scheduled to occur,

shall be a record week.

(ii) For an Employee for whom records of hours worked or for which payment is made or owing are neither kept nor required to be kept, such as, but not

limited to, salaried Employees or those compensated on a commission or piecework basis:

(a) if records are kept for him for days worked or for which payment is made or owing, then each calendar week in which there are 3 such days shall be a record week; or

(b) if records are kept for him for calendar weeks worked or for which payment is made or owing, then each such calendar week shall be a record week.

In counting the Weeks of Service of an Employee, all employees of Affiliates shall be treated as employed by a single employer. Further, in counting the Weeks of Service of an Employee not already counted by reason of the preceding sentence, all Participating Employers shall be treated as a single employer so long as such Employee maintains continuity of employment or continuity of Plan coverage.

1.02 <u>Gender and Number</u>. The masculine pronoun whenever used herein shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural whenever the context requires.

## ARTICLE II

## MANAGEMENT AND ADMINISTRATION OF THE PLAN

2.01 <u>Board is Named Fiduciary</u>.  The Board shall be the Named Fiduciary of the Plan and as such shall have the full authority and responsibility under and in accordance with the Plan to control and manage the operation and administration of the Plan, and under and in accordance with the Trust, to manage and control the assets of the Fund.

2.02 <u>Board's Administrative Powers</u>.  The Board shall have full power and authority, within the limits provided by the Plan:

(a)   To authorize any person, company or business organization which the Board finds eligible to participate and which applies for participation in the Plan to become a Participating Employer; and to prescribe in the Participation Agreement the terms and conditions under which such person, company or business organization shall become a Participating Employer, and in making a determination as to the participation of a new Participating Employer, the effect upon the actuarial soundness of the Plan shall be given due consideration;

(b)   To terminate the participation herein of a Participating Employer for violation of the terms of the Plan, the Participation Agreement or the rules adopted hereunder;

(c)   To make determinations as to the eligibility of an Employee to Participate in the Plan;

(d)   To determine all matters relating to the service of Employees and Participants, such determinations to be based on information filed by the Participating Employer and the Employee or Participant with the Board and such other information as is available to the Board;

(e) To receive and process applications for benefits under this Plan;

(f) To make interpretations and applications of the Plan and its provisions;

(g) To adopt such rules and regulations as it may deem reasonably necessary for the proper and efficient administration of the Plan and not inconsistent with the purposes and provisions of the Plan;

(h) To enforce the Plan in accordance with its terms, and with the Board's own rules and regulations;

(i) To appoint a Plan Actuary to prepare the actuarial reports and perform the actuarial services for the Plan and the Trust;

(j) To appoint a Plan Auditor to audit the books of the Plan and Trust, prepare the Plan's financial statements and render accounting services from time to time as requested by the Board;

(k) To appoint an Investment Manager to manage, acquire and dispose of all or any part of the assets of the Trust;

(l) To appoint and consult with such legal or other consultants or agents as the Board deems advisable to assist in the management or administration of the Plan and the Trust; and

(m) To do all other acts, in its judgment necessary or desirable, for the proper and advantageous administration of the Plan;

and the due exercise by the Board of any and all such powers and authorities shall be conclusive and binding on all persons whomsoever for the purposes of the Plan and Trust.

2.03 <u>Board's Right to Delegate to Contract Administrator</u>.
The Board may designate a Contract Administrator and delegate and
assign to such Contract Administrator all or any part of the
Board's administrative powers, duties and responsibilities
hereunder, and to the extent such delegation has occurred, any
reference in the Plan to "Board" shall mean and refer to the
"Contract Administrator."

2.04 <u>Liability of Fiduciaries and Right to Insure</u>.  The
Association, each Participating Employer, the Contract Adminis-
trator, and the directors, officers, employees and agents of each
of them and the Board, each of the member Trustees, and the
secretary, employees, agents and consultants of the Board or any
of them (herein called "involved persons") shall not, except as
provided in ERISA, incur any personal liability for the breach of
any responsibility, obligation or duty in connection with any act
done or omitted to be done in good faith in the management and
administration of the Plan and Trust and the investment and
handling of the Fund and shall be indemnified and held harmless
by the Trust from and against any such personal liability
including all expenses reasonably incurred in its or their
defense.   The Plan and Trust may purchase insurance to cover
potential liability of the involved persons with regard to the
Plan and Trust.   The Trust at its expense may insure itself
against loss by misdeeds or omissions of the involved persons,
but the insurer shall have recourse against the involved persons.
The individual trustees of the Trust, or their employers, or the
Association may at their or its expense obtain insurance to cover
the exposure of the involved persons by reason of such right of
recourse.

2.05 <u>Information to be Provided to Participants and Others</u>.
The Board shall furnish and make available to Participants and
Beneficiaries, and to the Secretary of Labor or his delegate, to
the Secretary of the Treasury or his delegate, and to or for the
Secretary of Health, Education and Welfare or his delegate, such
plan descriptions, summaries, reports, registration statements,
notifications and other documents as may be required by ERISA and
the Code and regulations thereunder.

2.06 <u>Annual Reports</u>.  The Board, as the administrator of the
Plan and trustee of the Trust shall prepare, or cause to be
prepared, an annual report for each Plan Year containing such
financial statements, actuarial reports and other information in
such form and for such delivery and availability at such times

and in such manner, all as may be required by ERISA and the Code
and regulations thereunder and the Board shall retain such
records for such periods as may be required by such laws and
regulations.

2.07 Secretary. The Board will appoint a secretary who may,
but need not, be a member of the Board, and any document required
to be filed with, or any notice required to be given to, the
Board will be properly filed or given if mailed by registered
mail or delivered to the secretary of the Board in care of the
Association. The Board shall notify each Participating Employer
in writing of the person appointed to act as secretary of the
Board and of any change therein and the Participating Employers
will be protected in relying on such written notice in dealing
with the secretary.

2.08 Employee Information. Each Participating Employer and
each Employee, Participant and Beneficiary shall provide the
Board with such information the Board may deem necessary or
advisable for making determinations under the Plan with respect
to Years of Participation, amount of contributions, eligibility
for participation and retirement benefits, retirement dates and
the modes of payment of retirement benefits.

2.09 Non-Discrimination. The Board in administering this
Plan with respect to Participants shall act in a uniform non-
discriminatory manner under like circumstances with respect to
all Participants similarly situated.

2.10 Board Not Compensated. No member of the Board shall
receive any compensation for his services as such from the
contributions made to the Fund, but may be reimbursed for any
expenses incurred in the transaction of the Board's business with
respect to this Plan.

2.11 Agent for Service of Process. Plan Counsel shall be
the agent for service of process for the Plan and Trust, and such
agent's address is: Anne H.S. Fraser, P.C., 1501 M Street, N.W.,
Suite 1150, Washington, D.C. 20005.[*] Such agent may be changed
by the Board by due notice to the Participating Employers,
Participants and Beneficiaries. [* Eff. 11/1/2004, 1320 19th St.
NW, Suite 200, Washington, D.C. 20036, tel. 202-466-4009.]

# ARTICLE III

## ELIGIBILITY AND PARTICIPATION

3.01 <u>Participants in Former Plan</u>. Each Employee for whom his Participating Employer was making contributions under the Former Plan on October 1, 1976, and who upon the amendment and restatement thereof becoming effective on said date continues as such an Employee, shall, on said date, be a Participant. Also each Retiree on October 1, 1976, and each former Employee whose employment with a Participating Employer has terminated prior to that date but who is entitled to a vested benefit under the Former Plan to commence at his Normal or Early Retirement Date shall be a Participant on that date.

3.02 <u>Eligibility On and After September 30, 1976</u>. Each Employee:

(i)     who is not already a Participant by reason of the provisions of Section 3.01 above, and

(ii)    whose terms of employment are not determined by a collective bargaining agreement with respect to which there is evidence that retirement benefits were the subject of good faith bargaining, unless such collective bargaining agreement has a specific provision which makes this Plan applicable to him, and

(iii)   for whom his Participating Employer makes weekly contributions to the Fund in accordance with a Participation Agreement,

shall be eligible to be and shall become a Participant. In the event a participant is no longer a member of an eligible class of employees and becomes ineligible to participate but has not incurred a break in service, such employee will participate immediately upon returning to an eligible class of employees. If such participant incurs a break in service, eligibility will be determined under the break in service rules of the plan.

In the event an employee who is not a member of an eligible class of employees becomes a member of an eligible class, such employee will participate immediately if such employee has otherwise satisfied all eligibility requirements.

3.03 Duration. A Participant shall continue to be a Participant until he has a One-year Break in Service and also shall continue to be a Participant thereafter for so long as he is entitled to receive any benefits hereunder regardless of when such benefits are payable. If, when he has a One-Year Break in Service, he is not entitled to receive (then or thereafter) a benefit hereunder, he thereupon shall cease to be a Participant unless and until his right to a benefit re-arises by reason of re-employment as an Employee.

ARTICLE IV

RETIREMENT BENEFITS

4.01 Normal Retirement Amount. Subject to the provisions of Section 4.06, the monthly retirement amount commencing at Normal Retirement Date for a Participant retiring on or after October 1, 1997, who has then completed at least 25 years of Credited Service shall be 58 (62 for service earned prior to 10/1/97) multiplied by the number of dollars and fraction of a dollar in the average weekly Rate of Contribution for such Participant over his last year of Credited Service for which contributions have been made for him by a Participating Employer. For example:

| Average Weekly Rate of Contribution over Last Year of Credited Service | Monthly Retirement Amount |
|---|---|
| $ 2.00 | $116.00 |
| 4.00 | 232.00 |
| 5.00 | 290.00 |
| 6.00 | 348.00 |
| 8.00 | 464.00 |
| 10.00 | 580.00 |
| 12.00 | 696.00 |

The monthly retirement amount commencing at Normal Retirement Date for a Participant retiring on or after October 1, 1997, who has completed less than 25 years of Credited Service shall be (a) below multiplied by (b) below, where

(a)   equals 58(62 for service earned prior to 10/1/97)(62 for all service for Participants earning Credited Service on or after 6/1/2000) multiplied by the number of dollars and fraction of a dollar in such average weekly Rate of Contribution for such Participant , and

> (b)  equals a fraction, the numerator of which is the
> number of years of Credited Service and fraction
> of a year of Credited Service of such Participant
> to Normal Retirement Date and the denominator of
> which is 25.

Notwithstanding the first paragraph of this section, the monthly
retirement amount for a Participant retiring on or after October
1, 1998 whose Participating Employer has elected to provide an
Uncapped Service Benefit under Section 4.01.1 shall be (a)
multiplied by (b) below, where:

> (a) equals 58 (62 for service earned prior to 10/1/97) (62
> for all service for Participants earning Credited Service on
> or after 6/1/2000) multiplied by the number of dollars and
> fraction of a dollar in such average weekly Rate of
> Contribution for such Participant, and

> (b)  equals a fraction, the numerator of which is the number
> of years of Credited Service and fraction of a year of
> Credited Service of such Participant to Normal Retirement
> Date and the denominator of which is 25.The monthly retire-
> ment amount for Participants retiring before October 1, 1997
> will be calculated according to the Plan provisions in
> effect on the  Participant's retirement date, except that
> for Participants receiving pensions on October 1, 1997,
> benefits shall be increased by a factor of 1.0164.

In no event shall the monthly amount payable at Normal Retirement
Date be less than the monthly amount he could have had at any
Early Retirement Date.  A Participant who attains his Normal
Retirement Date while receiving a Disability Benefit (as provided
in Section 4.04 hereof) shall in lieu of such Disability Benefit
then become entitled to receive a Normal Retirement amount
(determined in accordance with the provisions of this Section
4.01).

In the event a Participant leaves the employ of a Participating
Employer and subsequently becomes employed by another Participat-
ing Employer without incurring a break-in-service which would
result in loss of Credited Service under the terms of this Plan,
and where the subsequent Participating Employer's weekly
contribution for the Participant during the Participant's last
year of Credited Service with said Participating Employer is less

than the weekly contribution for the Participant made during the Participant's last year of Credited Service with the preceding Participating Employer, then a separate calculation of the monthly retirement amount shall be made according to the average weekly rate of contribution in effect over the last 52 weeks of Credited Service with each such Participating Employer [(a) above] multiplied by a fraction, the numerator of which is the number of years of Credited Service with that Participating Employer and the denominator of which is 25 [(b) above], and the sum of said separate calculations shall constitute the monthly retirement amount for such Participant. Except where an Uncapped Service Benefit in accordance with Section 4.01.1 or a benefit excluded from the Non-Duplication provisions of Section 4.08 under Section 4.08° applies to the Participant, in no event shall the sum of years of Credited Service so calculated exceed 25 years, and where a Participant has served a total of more than 25 years in service with more than one Participating Employer, the years of Credited Service at the higher or highest rate shall be calculated first and applied toward the maximum of 25 years to afford the Participant the benefit of all years of service at the highest applicable rate.

Should the termination or commencement of employment with one or the other Participating Employers not occur on an anniversary of employment, any fraction of a year immediately preceding or following commencement or termination of employment with a Participating Employer shall be included in the separate calculation in which the higher or highest applicable rate of contribution with a Participating Employer is multiplied to determine the monthly retirement amount.

   4.01.1 <u>Optional Uncapped Service Benefit</u>. A Participating Employer may elect to provide benefits for years of service in excess of the maximum of twenty-five (25) years (and with no maximum) for Participants ("Uncapped Service Benefit"). Such election shall be made in the participation agreement or in another form acceptable to the Board and shall require payment by the Participating Employer of an additional contribution to the Plan of Forty-Nine Cents ($0.49) for each one dollar ($1.00) of the weekly Rate of Contribution in addition to and not in lieu of the weekly Rate of Contribution and any applicable surcharges. The enhanced optional benefit referenced herein shall be treated as the Normal Retirement Amount for all Participants to whom such optional enhanced benefit applies for all purposes under the Plan. Any such election may not be revoked.

4.02 <u>Deferred Retired Amount</u>.  Subject to the provisions of Section 4.06, the monthly retirement amount commencing at Deferred Retirement Date for a Participant who then retires shall be the monthly retirement amount computed as set forth in Section 4.01 hereof accrued to such Deferred Retirement Date (by substituting Deferred Retirement Date for Normal Retirement Date in making the computation), increased by (I) one percent (.01) for each month that the Deferred Retirement Date succeeds the Participant's attainment of age 65, for all months that precede both the Deferred Retirement date and the Participant's attainment of age 70 and ½; (II) one-and-one-half percent (.015) for each month that the Deferred Retirement Date succeeds the Participant's attainment of age 70 and ½, for all months that precede both the Deferred Retirement Date and the Participant's attainment of age 75; and (III) three percent (.03) for each month that the Deferred Retirement Date succeeds the Participant's attainment of age 75, and shall not be less than the monthly amount to which he would have been entitled at Normal Retirement Date.

4.03 <u>Early Retirement Amount</u>.  Subject to the provisions of Sections 4.06 and 4.07 the monthly retirement amount commencing at Early Retirement Date for a Participant retiring on or after October 1, 1997 shall be the monthly retirement amount computed in accordance with the provisions of Section 4.01 by substituting his Early Retirement Date for Normal Retirement Date in making the computation, reduced by 25 hundredths of one percent (25/100ths of 1% or .0025) [5 tenths of one percent (5/10 of 1%) for Participants retiring before October 1, 1997] for each month that his Early Retirement Date precedes his Normal Retirement Date.

4.04 <u>Disability Retirement Amount</u>.  Subject to the provisions of Section 4.06 the monthly disability amount commencing at Disability Retirement Date for a Participant shall be equal to two-thirds (2/3) [seventy-five percent (75%) for Participants who first become Disabled after June 1, 1991] of the monthly retirement amount computed in accordance with the provisions of Section 4.01 by substituting Disability Retirement Date for Normal Retirement Date in making the computation.  In no event shall a Participant who is receiving a disability benefit (under the provisions of this Section 4.04) become entitled to an Early Retirement benefit (under the provisions of Section 4.02 hereof) during the continuance of his Disability.

4.05 <u>Vested Benefit on Termination</u>.  If a Participant's service is terminated after September 30, 1976, for a reason other than death or Retirement, after his Participating Employer has made weekly contributions on his behalf for not less than 6 months and after he has:

    (i)   completed at least 10 full Years of Vesting Service in the case of a Participant whose service is terminated prior to October 1, 1988, or 5 full Years of Vesting Service in the case of a person who is a Participant on October 1, 1988, or a person who first becomes a Participant after that date, or

    (ii)  attained his 47th birthday and completed at least 15 full years of Credited Service.

such Participant shall be entitled to a benefit amount equal in value to his Accrued Benefit determined as of the date of such termination, <u>provided</u>, <u>however</u>, that each Participant with not less than 10 Vesting Years of Service on October 1, 1976, shall be permitted to elect prior to June 1, 1978, to have the amount of his nonforfeitable interest in his Accrued Benefit determined under the provisions of the Former Plan.  Subject to the provisions of Section 4.06, any amount of a Participant's said Accrued Benefit to which he is entitled as above set forth shall be a monthly pension amount payable to the Participant on the first day of each month commencing after his Normal Retirement Date and ending with the month in which his death occurs.  A Participant whose service with his Participating Employer is terminated before the earliest date which would be his Early Retirement Date if he then retired, and who has completed at least ten years of Credited Service shall upon his prior written election delivered to the Board, be entitled to receive the benefit provided in Section 4.03 commencing on the first day of the calendar month coincident with, or, failing that, next following his earliest Early Retirement Date and before his Normal Retirement Date as if he has then retired.

4.06 <u>Qualified Joint-and-Survivor Annuity</u>.  If a Participant is married on his Benefit Commencement Date as defined at Section 6.01, and the Participant and his spouse have been married throughout the one-year period ending on the later of a) the Participant's Benefit Commencement Date, or b) the date of the Participant's death, unless the Participant has elected another

form of benefit in the manner provided in Section 5.01, then the Retirement Benefit payable under this Plan shall be in the form of a Qualified Joint-and-Survivor Annuity calculated in accordance with Section 5.06(b).

4.07 <u>Qualified Pre-Retirement Survivor Annuity</u>. If a Participant dies after attaining age 55, and all of the following conditions are met as of the date of his death:

    (a)  Distribution of benefits has not yet commenced;

    (b)  He has been married to his spouse throughout the one year period preceding the later of (I) the date of his death or (ii) his Benefit Commencement Date;

    (c)  Contributions have been made on his behalf by his Employer for at least six months; and

    (d)  He has completed such service as would entitle him to a Vested Benefit Upon Termination under Section 4.05 of this Plan;

then his surviving spouse shall receive a survivor's annuity which is equal to the survivor annuity payable to a surviving spouse under Section 4.06 if the Participant had retired (as of Early, Normal, or Deferred Retirement, whichever is applicable) with an immediate Qualified Joint-and-Survivor Annuity on the day before the Participant's date of death.

If a Participant dies on or before the date on which the Participant would have attained age 55 but for his death, and conditions a) through d) above are met as of the date of death, then his surviving spouse shall receive a survivor's annuity which is equal to the survivor annuity which would be payable to the spouse if the Participant had separated from service on the date of the Participant's death, survived until age 55, retired with an immediate Qualified Joint-and-Survivor Annuity under Section 4.06 at age 55, and died on the day after attaining age 55.

4.08 <u>Non-Duplication of Benefits</u>.  (a) If a Participant (or his Beneficiary) becomes entitled to a benefit (herein called his "This Plan Benefit") under this Plan and also becomes entitled to a benefit (herein called his "Other Plan Benefit") from another defined benefit plan (other than: (I) the American Society of Association Executives Retirement Plan as it applies to employees of the American Bakers Association, and (ii) a single employer defined benefit plan maintained by his employer prior to becoming a Participating Employer under this Plan):

(i)        which meets the requirements of Code Section 401, and

(ii)       to which his Participating Employer has made contributions on his behalf, and

(iii)      which, in determining his Other Plan Benefit, gives credit for service with his Participating Employer which also constitutes Credited Service under this Plan (herein called "<u>Overlapping Service</u>"),

then his This Plan Benefit shall be adjusted to equal an Adjusted Benefit (defined below) in order to avoid a duplication of benefit based on the same service in accordance with the following steps:

Step 1.  The single-sum actuarial equivalents of his This Plan Benefit and of his Other Plan Benefit are determined.

Step 2.  The single sum actuarial equivalent of his This Plan Benefit attributable to Overlapping Service is determined by multiplying the single-sum actuarial equivalent of his This Plan Benefit by a fraction, the numerator of which is the number of his years of Credited Service (up to 25) in the Overlapping Service and the denominator of which is the total number of his years of Credited Service (up to 25).

The single-sum actuarial equivalent of his Other Plan Benefit attributable to Overlapping Service is determined by multiplying the single-sum actuarial equivalent of his Other Plan Benefit, the numerator of which is the number of his years of service with his Participating Employer which is Overlapping Service, and which is counted in determining his benefit under the Other Plan (but not more than the maximum counted for such purpose); and the denominator of which is the number of all of his years of service with his Participating Employer which is counted in determining his benefit under the Other Plan (but not more than the maximum counted for such purpose); or if such method is not appropriate, said single-sum actuarial equivalent of his Other Plan Benefit attributable to Overlapping Service shall be determined in such other way as may be equitable and appropriate.

Step 3. His adjusted benefit under this Plan (herein called his "Adjusted Benefit") is equal in single-sum actuarial equivalent to the single-sum actuarial equivalent of his This Plan Benefit reduced by the single-sum actuarial equivalent of that part (which may be all or none) of his This Plan Benefit attributable to Overlapping Service, provided, however, that such single-sum Adjusted Benefit shall in no event fall below an amount which when added to the single-sum actuarial equivalent of his Other Plan Benefit attributable to the Overlapping Service, shall equal in sum not less than the single-sum actuarial equivalent of his This Plan Benefit.

(b)  Single-sum actuarial equivalents and other actuarial computations made under this Section 4.08 shall be based on the actuarial assumptions prescribed for use in this Plan.

(c)  Effective October 1, 1996, a Participating Employer may permanently elect to have the benefits payable to Participants under its Plan computed without regard to subsections (a) and (b) of this Section 4.08, provided that such election does not cause any contributions or benefits for such Participants to exceed any limitation contained in this Plan (or prescribed by the Internal Revenue Code) on contributions or benefits, cause its Plan to discriminate in favor of highly compensated employees, or adversely affect the Plan's favorable tax qualification.

A Participating Employer shall certify its acknowledgment of these requirements and its election to have benefits computed without regard to subsections (a) and (b) hereof in writing to the Board of Trustees no less than 90 days prior to commencement of the Plan Year in which such change is to be effective. Once made, such election may not be revoked.

ARTICLE V

ALTERNATIVE OPTIONAL FORMS OF PENSION

5.01 <u>Alternative Benefit Options</u>. In lieu of the amount and method of payment of monthly pensions payable under ARTICLE IV for pensions to commence at a Participant's Normal Retirement, Early Retirement, Disability Retirement or Deferred Retirement Date, a Participant by a written election (which may be an original election or a revocation or an amendment of a prior election) delivered to the Board in a form acceptable to the Board before his Early Retirement Date (if he retires, or is deemed to retire, early), or his Disability Retirement Date (if he retires for Disability), or his Normal Retirement Date (in all other events) may take the actuarial equivalent of his retirement benefit in accordance with such of the following alternative options as he may so elect:

(a)  <u>Joint-and-Survivor with Spouse</u>. A monthly retirement benefit payable to the Participant for his lifetime and after his death, either 100% or 66-2/3% of such monthly benefit amount, payable monthly to his spouse for the lifetime of such spouse, which percentage and spouse shall be designated by the Participant in his written request for such optional form of retirement benefit; or,

(b)  <u>Limited Joint-and-Survivor With Beneficiary Other Than Spouse</u>. A monthly retirement benefit payable to the Participant for his lifetime and after his death, either 100%, 66-2/3% or 50% of such monthly benefit amount, payable monthly to his Beneficiary (other than his spouse) for the shorter of such Beneficiary's lifetime or 5 years, which percentage and Beneficiary shall be designated by such Participant in his written request for such optional form of retirement benefit; or,

(c)  <u>Life Only</u>. A monthly retirement benefit payable in equal installments to Participant for his

lifetime, that terminates upon the participant's death, with no provision for payments to a spouse or other Beneficiary,

provided, however, that unless he has shown evidence of good health satisfactory to the Board at the time of an election under sub-paragraph (a) or (b) of this Section 5.01, no such election shall be given effect if Participant dies within one year of the date of such election is made, except that any such election shall be given effect in any case, in which:

i)   such Participant dies from accidental caus-
     es, and

ii)  the failure to give effect would deprive
     Participant's surviving spouse of a sur-
     vivor's benefit under a Qualified Joint-and-
     Survivor Annuity or Qualified Pre-Retirement
     Survivor Annuity, and

iii) such election is made before the accident
     occurs which resulted in his death.

Effective September 19, 1995, the Plan Administrator shall give each Participant notice of the terms and conditions of alterna-tive optional forms of pension, the Participant's right to make, and the effect of an election, the right to revoke an election, the rights of the Participant's spouse, and the opportunity to elect an alternative option in the case of a joint-and-survivor annuity at least ninety (90) days and no less than thirty (30) days before the annuity starting date or the date distribution commences, as determined by the Plan Administrator. A Participant may elect (in a written form acceptable to the Plan Administra-tor, and accompanied by any applicable spousal consent) to waive the requirement of Code 417 (a) that the notice be provided no less than 30 days before the annuity starting date if the payment of benefits commences more than 7 days after such notice is provided.  If a Participant separates from service, notice may be given on the date of separation or within a reasonable period thereafter with respect to benefits accrued before the separation from service.   Such notice shall be in writing, in the form approved by the Board, shall require the spouse's written consent if the Participant elects to decline the Qualified Joint-and-Survivor Annuity, and shall offer the Participant the opportunity

to receive a written explanation of the alternative benefit options as described below. The spouse's consent is not valid unless witnessed by a plan representative or a notary public. If the spouse's written consent cannot be obtained for any reason, the Plan Administrator may waive the requirement of spousal consent if circumstances are established by proof satisfactory to the Plan Administrator which warrant such a waiver or which require such a waiver pursuant to regulations of the Secretary of the Treasury. In the event that a Section 4.06 joint-and-survivor benefit or an optional joint-and-survivor benefit with the Participant's spouse as the survivor Beneficiary is applicable, and Participant desires to elect an alternative option under this Section 5.01, he shall receive from the Board within a reasonable time after his request and before the commencement of his pension benefit a written explanation of the relative financial effect, giving dollar comparisons, of the monthly amounts of such joint-and-survivor benefits and the other available optional benefits.

5.02 <u>Beneficiary's Death</u>. If the Participant's spouse, or other Beneficiary designated under subsection (b) of Section 5.01 and Section 5.04 hereof shall die before Participant's retirement benefit commences, the option so elected will be automatically canceled and the monthly retirement benefit payable to such Participant hereunder will be made as though the election of the option had not been made, except that Participant may again elect an optional form of retirement benefit in accordance with Section 5.01 above.

5.03 <u>Small Payment Option</u>. Notwithstanding the provisions of Section 5.01(a) governing spousal consent and Section 5.06 governing insured annuity option upon Plan termination, should any benefit payable under this Plan to any Participant or Beneficiary, when calculated as the lump sum actuarial equivalent of a single life annuity, not exceed $5,000.00 [eff. 10/1/97] in present value, the Board may, in its uncontrolled discretion, elect to have the actuarial equivalent of the remainder of such monthly pension payments paid to such Participant or Beneficiary in a lump-sum or in periodic payments for a specified period.

5.04 <u>Designation of Beneficiary</u>. Any benefits payable by reason of the participation herein of a Participant which are payable under the terms hereof after his death shall be paid to such person or persons and in such proportions as may be designated by him by an instrument in writing in a form accept-

able to the Board (and subject to the provisions of Sections 4.06, 4.07 and 5.01 hereof) executed by such Participant and filed with the Board, which designation may be revoked or modified by the Participant from time to time by an instrument in writing in a form acceptable to the Board executed by such Participant and filed with the Board. Designations of surviving Beneficiaries under option (b) of Section 5.01 hereof shall be filed with the Board before Participant's Retirement date.

5.05 <u>Insured Annuity Upon Plan Termination</u>. In the event of the termination of the participation in the Plan of a Participating Employer, the Board shall, at the written request of each Participant and Beneficiary of a Participant of the terminating Participating Employer entitled to a benefit, provide for the payment of all (but not less than all) such benefits by distributing to or for each such participant and Beneficiary of a Participant entitled to a benefit an insured annuity or, if the present value of the benefit is not greater than $5,000 [eff. 10/1/97], a lump sum small payment in accordance with Section 5.03, provided that the following requirements are met:

(a)    Should a married Participant direct that distribution of the benefit be paid by the delivery of an insured annuity the Board shall require the written and notarized consent of the spouse of said Participant to the form of distribution except where the present value of the benefit is not greater than $5,000.

(b)    The value of the insured annuity shall be equal to the value at the time of such distribution of the benefit applicable to such distributee determined either on the basis of currently available annuity rates or the actuarial assumptions prescribed by Internal Revenue Code Section 411(a)(11)and any rules, regulations, procedures or guidelines promulgated from time to time for use in determining the value of lump sum distributions not greater than $5,000, whichever produces the smaller result, as follows:

| <u>Distributee</u> | <u>Applicable Benefits</u> |
|---|---|
| (i)    Retiree | Remainder of the retirement benefit due such Retiree and his Beneficiary, if any |

| (ii) | Employee - Participant at the time of such termination | Value of Accrued Benefit of such Participant at the time of distribution |
| (iii) | Vested former-Employee Participant | Value of Vested Benefit at time of distribution |
| (iv) | Beneficiary | Remainder of benefit due such Beneficiary |

(c) provided, however, that the actuarial assumptions used in determining the value of lump sum distributions not greater than $5,000 or less on plan termination shall be those set forth at Section 5.06(e) of this Plan.

(d) The cash value of the assets in the Trust attributable to the participation of the terminating Participating Employer at the time of distribution shall be not less than the value of the insured annuities and small payments of all Participants and Beneficiaries of Participants as above indicated.

(e) The terminating Participating Employer shall reimburse the Trust for the cost to the Trust of the services of the Plan Actuary, Plan Counsel and the Contract Administrator rendered by reason of and in connection with such termination and distributions. Services rendered by the Plan Actuary, Plan Counsel and the Contract Administrator in connection with the termination of a Participating Employer shall be for the exclusive benefit of Plan Participants, and reimbursement of expenses hereunder shall not obligate the Plan, Plan Actuary, Plan Counsel or Contract Administrator to render any advice or service in connection with the termination for the benefit of the terminating Participating Employer, or which is contrary to the best interests of the Participants. Payment of any expenses incurred but not reimbursed hereunder shall be secured by a lien upon any excess assets available for reversion to the terminating employer; but the assertion of such lien shall not be deemed to relieve the terminat-

ing employer of its affirmative obligation to pay said expenses.

(f)   The terminating Participating Employer shall apply to the District Director of Internal Revenue in Chicago (with a copy of the application to the attorney for the Plan) for a determination letter to the effect that the termination of such Participating Employer's participation in the Plan and the annuity and IRA (or other qualified plan) rollover distributions referred to above do not adversely affect the existing favorable IRS determination and when such determination letter is received will furnish a copy thereof to said attorney for the Plan.

(g)   The terminating Participating Employer shall apply to the Pension Benefit Guaranty Corporation for approval of the termination of such Participating Employer's participation in the Plan, and the termination of such participation and the distribution of benefits pursuant to such termination shall be subject to, and contingent upon, the Employer's seeking the approval of and meeting all applicable requirements of the Pension Benefit Guaranty Corporation for such termination.

(h)   Any insured annuity purchased pursuant to this Section 5.06 shall by its terms comply with the provisions of the Retirement Equity Act of 1984 and regulations promulgated thereunder with respect to (I) spousal consent; and (ii) a Qualified Domestic Relations Order.

(i)   Any distribution to a participant by reason of plan termination under Section 5.05 (1) if a lump sum not greater than $5,000, may be rolled over to another qualified plan; (2) shall be subject to mandatory withholding by the Plan Administrator except where the participant has elected a direct rollover to another qualified plan, except that the Plan shall not be deemed the payor of any distribution in the form of an annuity contract purchased on plan termination; (3) shall cause the Plan Administrator to afford the participant affected by such distribution (A) the opportunity to elect a direct rollover where applicable, and (B) the notice required by Internal Revenue Code Section 402(f), 411(a)(11) and 417 in accordance

with the time limitations prescribed therein. This section applies to all distributions which occur on or after January 1, 1993.

(j) In the event of plan termination, the benefit of any "highly compensated employee" or "restricted employee" as those terms are defined in the Internal Revenue Code and regulations and pronouncements promulgated by the Secretary thereunder, is limited to a benefit that is non-discriminatory under Internal Revenue Code Section 401(a)(4) and not in excess of the amount payable in any year to such employee under a straight life annuity equal to said employees accrued benefit and other benefits under the Plan.

(k) In the event of plan termination, if insured annuities that conform with the requirements of this section are not available or, if available, are available only at a cost that exceeds the lump sum value [as determined by the actuary in accordance with Section 5.06(e) and (f)(II) of the Plan] of the benefits to be provided by said annuities by 15% or more of said lump sum value, then, on request of the terminating employer, the Plan may distribute benefits due to participants on plan termination by distribution of the benefits in lump sum form. Any lump sum distribution to a participant by reason of plan termination under this subsection shall be subject to the requirements of subsection 5.06(I) and (j) of this Section and to the Retirement Equity Act of 1984 and regulations promulgated thereunder with regard to (I) the requirements of spousal notification and consent; and (II) any Qualified Domestic Relations Order filed with the Plan prior to such distribution.

5.06 <u>Rules Concerning Actuarial Equivalence</u>.

(a) <u>Effective Date</u>. Notwithstanding anything to the contrary in Article IV or V concerning actuarial equivalence, the provisions of this Section 5.07 shall be effective for any pension that first becomes payable after September 30, 1983.

(b) <u>50% Joint and Survivor Option and Qualified Joint and Survivor Annuity</u>.

(I)  <u>Non-disability</u>.  If payment of a non-disability pension is to be made in the form of a 50% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  88% minus .4% for each year that the Beneficiary's age is less than the Participant's age or plus .4% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(II) <u>Disability</u>.  If payment of a disability pension is to be made in the form of a 50% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  77.5% minus .4% for each year that the Beneficiary's age is less than the Participant's age or plus .4% point for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(c)   66-2/3% Joint-and-Survivor Option

(I)   Non-disability.   If payment of a non-disability pension is to be made in the form of a 66-2/3% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage: 85% minus .5% for each year that the Beneficiary's age is less than the Participant's age or plus .5% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(II) Disability.  If payment of a disability pension is to be made in the form of a 66-2/3% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  72% minus .5% for each year that the Beneficiary's age is less than the Participant's age or plus .5% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(d)   100% Joint-and-Survivor Option

(I)   Non-disability.   If payment of a non-disability pension is to be made in the form of a 100% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:   79% minus .6% for each year that the Beneficiary's age is less than the Participant's age or plus .6% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(II) Disability.  If payment of a disability pension is to be made in the form of a 100% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  63% minus .6% for each year that the Beneficiary's age is less than the Participant's age or plus .6% for each year that the Beneficiary's age is greater than the Partici-

pant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(e)  Small Payment Option.  The amount of a lump sum payable in accordance with Section 5.03 shall take into account months as well as years of attained age. The actuarial value for each month in excess of an attained age shall be interpolated from a table of lump sum factors at integral ages.  The table shall be based on the 1971 Group Annuity Mortality Table (male) and the applicable interest rate.  The applicable interest rate shall be the interest rate that would be used, as of the first day of the Plan Year in which such lump sum is paid, by the Pension Benefit Guaranty Corporation for purposes of determining the present value of immediate and deferred annuities if the Plan were then terminated.  In the case where the lump sum value of a benefit (using the applicable interest rate specified in the preceding sentence) exceeds $25,000, the applicable interest rate shall be one hundred twenty (120%) of the applicable Pension Benefit Guaranty Corporation interest rate, but in such instance, the present value so determined shall not be less than $25,000.

Effective October 1, 1999, for purposes of determining the amount of a distribution in a form other than a periodic benefit payable in accordance with any provision of this Article V, actuarial equivalence will be determined on the basis of factors using the applicable mortality table and applicable interest rate specified under Internal Revenue Code Section 417(e).  In no event shall the benefit calculated on this basis be less than the Participant's benefit as of September 30, 1999, calculated with the factors in effect on that date.

Effective October 1, 1999, the applicable interest rate is the rate of interest on 30-year treasury securities as specified by the Commissioner for the second month preceding the first day of the plan year that contains the annuity starting date.

Effective October 1, 1999, the Section 417 applicable mortality table is the table described in Section 417(e)(-3)(A)(ii)(II) of the Internal Revenue Code, which is set forth in Rev. Rul. 95-6, 1995-1 C.B. 80 or its successors, when applicable [for the period December 31, 2002 to September 30, 2003, GAR94 unloaded (50/50) projected with Scale AA to 2002 pursuant to Rev. Rul. 2001-62].

Notwithstanding the above factors, for purposes of determining the amount of a distribution in a form other than a periodic benefit payable in accordance with any provision of this Article V, actuarial equivalence will be determined on the basis of factors using the applicable mortality table and applicable

interest rate specified under Internal Revenue Code Section 417(e), if they produce a benefit greater than that determined under the above factors.

(f)  Other Option Factors

(I)  If payment is to be made in accordance with the options permitted by the plan for which determination of the adjusted amount is not specified by any other part of this Plan or by any applicable provision of law, rule or regulation, the determination is to be made by the Plan's enrolled actuary on the basis of 7 percent interest and the 1983 Group Annuity Mortality Table, with the mortality rates of males and females blended into a single set by weighing the two sets of rates in proportion to the percentages of male and female Participants found by the actuary, on the basis of the relevant experience, likely to select the option involved.

(II) If any payment under this section [5.06(f)(I)] is in a form other than a periodic benefit, actuarial equivalence will be defined as it is for such payments under section 5.06(e).

# ARTICLE VI

## PAYMENT OF RETIREMENT BENEFITS

6.01 <u>Benefit Commencement Dates</u>.  Benefit payments to each Participant who Retires on a Normal, Deferred, or Early Retirement Date (under Sections 4.01 to 4.03 hereof inclusive) shall commence as of the later of the first of the month next following his said Retirement date or the first of the month next following the date which is 60 days prior to his written application for the Retirement benefit.  Deferred nonforfeitable benefit payments shall commence as set forth in Section 4.05 hereof. In no event shall any benefit payments commence later than the first day of April of the year following the later of

    (a) the calendar year in which the Participant attains age 70 ½ or

    (b) the calendar year in which the Participant retires;

    <u>except that</u> distribution to a five percent (5%) owner must commence by April 1 of the year following the calendar year in which such Participant attains age 70 ½.

Such Retirement benefit payments to a Participant, once commenced, shall continue to be paid monthly for the remainder of Participant's life.  Any benefit payments payable to his surviving spouse shall commence as of the first day of the month next following the month in which Participant's death occurs or the benefit commencement date if Participant is not living, and shall continue to be paid monthly for the remainder of such spouse's life.  Any benefit payments payable to a Beneficiary other than his spouse after Participant's death shall be paid in equal monthly payments commencing on the first day of the month next following the month in which Participant's death occurs, or on the benefit commencement date if Participant is not living, and shall continue to be paid until the 60th such payment or the payment next preceding the earlier death of such Beneficiary.

6.01.1    <u>Benefit Commencement Date - Qualified Pre-Retirement Survivor Annuity</u>.    Payment of a Qualified Pre-Retirement Survivor Annuity to a surviving spouse shall commence on the later of a) the first of the month next following the date on which the Participant would have attained age 55 but for his death, or if the Participant dies after attaining age 55, on the first of the month next following the date of the Participant's death; or b) the first of the month next following the date which is 60 days prior to the Survivor's written application for the survivor benefit.

6.02 <u>Disability Payments</u>.    Benefit payments to each Participant who retires by reason of Disability on a Disability Retirement Date shall commence as of the later of the first day of the month next following the month in which the Participant becomes eligible therefor or the first of the month next following the date which is 60 days prior to his written application for the Disability Retirement Benefit and shall be payable on the first day of each month thereafter until the first to occur of:

(a)   his recovery from Disability,

(b)   his Normal Retirement Date, or

(c)   his death.

Whether or not a Participant has recovered from Disability shall be determined finally and conclusively by the Board using such information as it shall require.  To make such determination, the Board may require the Participant to furnish at any time and from time to time such medical or other evidence as it may request, provided, however, that such evidence may not be requested more often than semi-annually.  No monthly disability payment shall be payable with respect to any period during which the Board has declared the Participant recovered.  No disability benefit shall be payable hereunder to a Participant who is not in active service with an employer participating in this Plan at the time said Participant becomes Disabled.

6.03 <u>Employment After Retirement</u>.  If a Participant who is Retired and receiving a retirement benefit (other than a Disability benefit) is re-employed by any Participating Employer

or Affiliate thereof, he shall continue to receive such retire-
ment benefit during such re-employment.  When his re-employment
is terminated, his retirement benefit shall be redetermined in
accordance with the Plan, subject to the following:

    a)    such redetermination shall take into account additional
              Credited Service attributable to the re-employment
              period and any change that may have occurred in the
              Rate of Contribution during the re-employment period
              that is applicable to him; and

    b)    such benefit as so determined shall be reduced by
              amounts determined by the Board to be the actuar-
              ial equivalent of such retirement benefits as may
              theretofore have been paid him under the Plan;

provided, however, that in no event shall such benefit, as so
redetermined and as so reduced, be less, in actuarial equivalent,
than the benefit he was receiving at the end of such re-employ-
ment period.

    6.04 Effect of Amendments to Plan Changing Benefits.  All
rights and benefits, if any, provided under the Plan or Former
Plan for any Participant or the Beneficiary of any Participant
shall be determined under the terms and provisions of the Plan or
Former Plan as they exist at the time such Participant's service
with his Participating Employer terminates, whether by death,
retirement, resignation, discharge or otherwise, and such
benefits, so determined and fixed, shall not be changed by
amendments to the Plan effective after such termination of
service unless Section 6.03 hereof is applicable; provided,
however, that the benefit payable immediately prior to October 1,
1982, under this Plan to:

    (a)    each Retirement Participant in pay status,

    (b)    each Beneficiary in pay status of a deceased Partici-
              pant, and

    (c)    each Participant who is no longer employed by a
              Participating Employer but who is entitled to a vested

benefit to commence in the future pursuant to Section 4.05 hereof,

shall be increased by 9.375% from and after October 1, 1982 if the Participant referred to in each of (a), (b) and (c) above was, immediately before the time of his retirement or other separation from service, the employee of a Participating Employer which continued to make contributions as a Participating Employer on October 1, 1982.

6.05 <u>Limitation on Benefits</u>

(a)(1)    This section, except for subsection (a)(3), applies regardless of whether any Participant is or has ever been a Participant in another qualified plan maintained by the Participating Employer.  For limitation years beginning before January 1, 2000, If any Participant is or has ever been a Participant in another qualified plan maintained by the Employer, or a welfare benefit fund, as defined in section 419(3) of the Code, maintained by the Employer, or an individual medical account, as defined in section 415(1)(2) of the Code, which provides an annual addition as defined in subsection (d), subsection (b) is also applicable to that Participant's benefits.

(a)(2)    The annual benefit otherwise payable to a Participant at any time will not exceed the maximum permissible amount.  If the benefit the Participant would otherwise accrue in a limitation year would produce an annual benefit in excess of the maximum permissible amount, the rate of accrual will be reduced so that the annual benefit will equal the maximum permissible amount.

(a)(3)    The limitation in subsection (a)(1) is deemed satisfied if the annual benefit payable to a Participant is not more than $1,000 multiplied by the Participant's number of years of service or parts thereof (not to exceed 10) with the Employer, and the Employer has not at any time maintained a defined contribution plan, a welfare benefit plan as defined in section 419(e) of the Code, or an individual medical account as defined in section 415(1)(2) of the Code in which such Participant participated.

(b)(1)      For limitation years beginning before January 1, 2000, this section applies if any Participant is covered, or has ever been covered, by another plan maintained by the Employer, including a qualified plan, a welfare benefit fund, as defined in section 419(e) of the Code, or an individual medical account, as defined in section 415(1)(2) of the Code, which provides an annual addition as described in subsection (d).

(b)(2)      If a Participant is, or has ever been, covered under more than one defined benefit plan maintained by the employer, the sum of the Participant's annual benefits from all such plans may not exceed the maximum permissible amount.

(b)(3)      For limitation years beginning before January 1, 2000, if the Employer maintains, or at any time maintained, one or more qualified defined contribution plans covering any Participant in this plan, a welfare benefit fund, as defined in section 419(e) of the Code, or an individual medical account as defined in section 415(1)(2) of the Code, the sum of the Participant's defined contribution fraction and defined benefit fraction will not exceed 1.0 in any limitation year, and the annual benefit otherwise payable to the Participant under this plan will be limited in accordance with this Section 6.05.

(c)(1)      In the case of an individual who was a participant in one or more defined benefit plans of the employer as of the first day of the first limitation year beginning after December 31, 1994, the application of the limitations of this article shall not cause the maximum permissible amount for such individual under all such defined benefit plans to be less than the individual's Retirement Protection Act of 1994 old law benefit.   The preceding sentence applies only if such defined benefit plans met the requirements of Section 415 of the Internal Revenue Code on December 7, 1994.

(d)          Definitions.

(d)(1)      Annual additions:  The sum of the following amounts credited to a Participant's account for the limitation year:

(i)          employer contributions;
(ii)         employee contributions;

(iii)     forfeitures; and

(iv)     Amounts allocated to an individual medical account, as defined in section 415(1)(2) of the Code, which is part of a pension or annuity plan maintained by the employer are treated as annual additions to a defined contribution plan.   Also, amounts derived from contributions paid or accrued after December 31,1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits allocated to the separate account of a key employee, as defined in section 419A(d)(3) of the Code, under a welfare benefit fund, as defined in section 419(e) of the Code, maintained by the employer, are treated as annual additions to a defined contribution plan.

(d)(2)     Annual benefit:     For limitation years beginning before January 1, 1995, such actuarially equivalent straight life annuity is equal to the greater of the annuity benefit computed using the interest rate specified in the plan for adjusting benefits in the same form or 5 percent.   For limitation years beginning after December 31, 1994, the actuarially equivalent straight life annuity is equal to the greater of the annuity benefit computed using the interest rate and mortality table (or other tabular factor) specified in the plan for adjusting benefits in the same form, and the annuity benefit computed using a 5 percent interest rate assumption and the applicable mortality table defined in section 5.06(f) of the plan.   In determining the actuarially equivalent straight life annuity for a benefit form other than a nondecreasing annuity payable for a period of not less than the life of the participant (or, in the case of a qualified pre-retirement survivor annuity, the life of the surviving spouse), or decreases during the life of the participant merely because of (a) the death of the survivor annuitant (but only if the reduction is not below 50% of the annual benefit payable before the death of the survivor annuitant), or (b) the cessation or reduction of Social Security supplements of qualified disability payments (as defined in § 401(a)(11), "the applicable interest rate", as defined in section 5.06(f) of the plan, will be substituted for "a 5 percent interest rate assumption" in the preceding sentence.

The annual benefit does not include any benefits attributable to employee contributions or rollover contributions, or the assets transferred from a qualified plan that was not maintained by the employer.

(d)(3)    Compensation: A Participant's earned income, wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of employment with the Employer maintaining the plan (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses), and excluding the following:

(A)    Employer contributions to a plan of deferred compensation which are not included in the employee's gross income for the taxable year in which contributed or employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the employee, or any distributions from a plan of deferred compensation;

(B)    Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(C)    Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(D)    Other amounts which received special tax benefits, or contributions made by the Employer (whether or not under a salary reduction agreement) towards the purchase of an annuity described in section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the employee).

Compensation for any limitation year is the compensation actually paid or includable in gross income during such year. For limitation years beginning after December 31, 1997, for purposes of applying the limitations of this article, compensation paid or made available during such limitation year shall include any elective deferral (as defined in Code §402(g)(3) ), and any amount which is contributed or deferred by the employee at the election of the employee and which is not includable in the gross income of the employee by reason of Section 125 or 457.

(d)(4)    Current accrued benefit.    A Participant's accrued benefit under the plan, determined as if the Participant had separated from service as of the close of the last limitation year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of 415(b)(2) of the Code.    In determining the amount of a Participant's current accrued benefit, the following shall be disregarded:

     (i)    any change in the terms and conditions of the plan after May 5, 1986; and

     (ii)    any cost of living adjustments occurring after May 5, 1986.

(d)(5)    Defined benefit dollar limitation: $90,000. Effective on January 1, 1988, and each January thereafter, the $90,000 limitation above will be automatically adjusted by multiplying such limit by the cost of living adjustment factor prescribed by the Secretary of the Treasury under section 415(d) of the Code in such manner as the Secretary shall prescribe.    The new limitation will apply to limitation years ending within the calendar year of the date of the adjustment.

(d)(6)    Defined benefit fraction:    A fraction, the numerator of which is the sum of the Participant's projected annual benefits under all the defined benefit plans (whether or not terminated) maintained by the employer, and the denominator of which is the lesser of 125 percent of the dollar limitation determined for the limitation year under sections 415(b)(1)(A) and (d) of the Code or 140 percent of the higher average compensation, including any adjustments under section 415(b)(5) of the Code, both in accordance with Section (d)(11) below.

Notwithstanding the above, if the Participant was a Participant as of the first day of the first limitation year beginning after December 31, 1986, in one or more defined benefit plans maintained by the employer which were in existence on May 6, 1986, the denominator of this fraction will not be less than 125 percent of the sum of the annual benefits under such plans which the Participant had accrued as of the close of the last limitation year beginning before January 1, 1987, disregarding any changes in the terms and conditions of the plans after May 5, 1986.    The preceding sentence applies only if the defined benefit plans individually and in the aggregate satisfied the require-

ments of section 415 for all limitation years beginning before January 1, 1987.

(d)(7)    Defined contribution fraction: A fraction, the numerator of which is the sum of the annual additions to the Participant's account under all the defined contribution plans (whether or not terminated) maintained by the Employer for the current and all prior limitation years (including the annual additions attributable to the Participant's nondeductible employee contributions to all other defined benefit plans (whether or not terminated) maintained by the Employer, and the annual additions attributable to all welfare benefit funds, as defined in section 419(e) of the Code or individual medical accounts, as defined in section 415(1)(2) of the Code, maintained by the employer), and the denominator of which is the sum of the maximum aggregate amounts for the current and all prior limitation years of service with the Employer (regardless of whether a defined contribution plan was maintained by the Employer). The maximum aggregate amount in any limitation year is the lesser of (1) 125 percent of the dollar limitation under Code Section 415 (c)(1)(A) after adjustment under Code Section 415(d), or (2) 35 percent of the participant's compensation for such year.    The annual addition for any limitation year beginning before January 1, 1987 shall not be recomputed to treat all employee contributions as annual additions.

If the Employee was a Participant as of the first day of the first limitation year beginning after December 31, 1986, in one or more defined contribution plans maintained by the Employer which were in existence on May 6, 1986, the numerator of this fraction will be adjusted if the sum of this fraction and the defined benefit fraction would otherwise exceed 1.0 under the terms of this plan.    Under the adjustment, an amount equal to the product of (1) the excess of the sum of the fractions over 1.0 times (2) the denominator of this fraction, will be permanently subtracted from the numerator of this fraction.    The adjustment is calculated using the fractions as they would be computed as of the end of the last limitation year beginning before January 1, 1987, and disregarding any changes in the terms and conditions of the plans made after May 5, 1986, but using the section 415 limitation applicable to the first limitation year beginning on or after January 1, 1987.

The annual addition for any limitation year beginning before January 1, 1987, shall not be recomputed to treat all employee contributions as annual additions.

(d)(8)    Employer:    For purposes of this section, employer shall mean the Employer that enters into a Participation Agreement pursuant to which the Employer makes contributions to this Plan, and all members of a controlled group of corporations (as defined in section 414(b) of the Code, as modified by section 415)h)), all commonly controlled trades or businesses (as defined in section 414(c) as modified by section 415(h)), or affiliated service groups (as defined in section 414(m)) of which the Participating Employer is a part, and any other entity required to be aggregated with the Employer pursuant to regulations under section 414(o) of the Code.

(d)(9)    Highest average compensation:    The average compensation for the three consecutive years of service with the Employer that produces the highest average. A year of service with the Employer is a year of Credited Service as defined in Article I, Section 1.01 of this Plan.

In the case of a participant who has separated from service, the participant's highest average compensation will be automatically adjusted by multiplying such compensation by the cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415(d) of the Internal Revenue Code. The adjusted compensation amount will apply to limitation years ending within the calendar year of the date of the adjustment.

(d)(10)    Limitation year:    A plan year as defined in Article I, Section 1.01 of this Plan unless otherwise specified in the Participation Agreement. All qualified plans maintained by the Employer must use the same limitation year. If the limitation year is amended to a different 12-consecutive month period, the new limitation year must begin on a date within the limitation year in which the amendment is made.

(d)(11)    Maximum permissible amount:

(A)    The lesser of the defined benefit dollar limitation or 100 percent of the Participant's highest average compensation.

(B)  If the participant has less than 10 years of participation in the plan, the defined benefit dollar limitation shall be multiplied by a fraction -- (I) the numerator of which is the number of years (or part thereof) of participation in the plan, and (ii) the denominator of which is 10.  In the case of a participant who has less than ten years of service with the employer, the compensation limitation shall be multiplied by a fraction -- (I) the numerator of which is the number of years (or part thereof) of service with the employer, and (ii) the denominator of which is 10.

The adjustments of this section (B) shall be applied in the denominator of the defined benefit fraction based upon years of service.  For purposes of computing the defined benefit fraction only, years of service shall include future years of service (or part thereof) commencing before the participant's normal retirement age.  Such future years of service shall include the year that contains the date the participant reaches normal retirement age,  only if it can be reasonably anticipated that the participant will receive a year of service for such year, or the year in which the participant terminates employment, if earlier.  This paragraph does not apply for limitation years beginning on or after January 1, 2000.

(C)  If the annual benefit of the Participant commences before the Participant's social security retirement age, but on or after age 62, the defined benefit dollar limita-tion as reduced  in (B) above, if necessary, shall be determined as follows:

(i)  If a Participant's social security retirement age is 65, the dollar limitation for benefits commencing on or after age 62 is determined by reducing the defined benefit dollar limitation by 5/9 of one percent for each month by which benefits commence before the month in which the Participant attains age 65.

(ii) If a Participant's social security retirement age is greater than 65, the dollar limitation for benefits commencing on or after age 62 is determined by reducing the defined benefit dollar limitation by 5/9 of one percent for each of the first 36 months and 5/12 of one percent for each of the additional months (up to 24 months) by which benefits commence

before the month of the Participant's social security retirement age.

(D) If the annual benefit of the Participant commences prior to age 62, the defined benefit dollar limitation shall be an annual benefit that is the actuarial equivalent of the defined benefit dollar limitation for age 62, as determined above, reduced for each month by which benefits commence before the month in which the participant attains age 62. The annual benefit beginning prior to age 62 shall be determined as the lesser of the equivalent annual benefit computed using the interest rate and mortality table (or other tabular factor) equivalence for early retirement benefits, and the equivalent annual benefit computed using a 5 percent interest rate and the applicable mortality table as defined in section 5.06(f) of the plan. Any decrease in the adjusted defined benefit dollar limitation determined in accordance with this provision (D) shall not reflect any mortality decrement to the extent that benefits will not be forfeited upon the death of the participant.

(E) If the annual benefit of a participant commences after the participant's social security retirement age, the defined benefit dollar limitation as reduced in (B) above, if necessary, shall be adjusted so that it is the actuarial equivalent of an annual benefit of such dollar limitation beginning at the participant's social security retirement age. The equivalent annual benefit beginning after social security retirement age shall be determined as the lesser of the equivalent annual benefit computed using the interest rate and mortality table (or other tabular factor) specified in the plan for purposes of determining actuarial equivalence for delayed retirement benefits, and the equivalent annual benefit computed using a 5 percent interest rate assumption and the applicable mortality table as defined in section 5.06(f) of the plan.

(F) Notwithstanding anything else in this section to the contrary, the benefit otherwise accrued or payable to a participant under this plan shall be deemed not to exceed the defined benefit dollar limitation if:

(i) the retirement benefits payable for a plan year under any form of benefit with respect to such participant under this plan and under all other defined benefit plans (regardless of whether terminated) ever maintained by the employer do not exceed $1,000

multiplied by the participant's number of years of service or parts thereof (not to exceed 10) with the I employer; and

(ii) the employer has not at any time maintained a defined contribution plan, a welfare benefit plan, or an individual medical account in which the participant participated.

(d)(12)  RPA '94 old law benefit: The participant's accrued benefit under the terms of the plan as of October 1, 1999, (the RPA '94 freeze date), for the annuity starting date and optional form and taking into account the limitations of § 415, as in effect on December 7, 1994, including the participation require-ments under § 415(b)(5). In determining the amount of a partici-pant's RPA '94 old law benefit, the following shall be disre-garded:

(i) any plan amendment increasing benefits adopt-ed after the RPA '94 freeze date; and

(ii) any cost of living adjustments that become effective after such date.

A participant's RPA '94 old law benefit is not increased after the RPA '94 freeze date, but if the limitations of   § 415, as in effect on December 7, 1994, are less than the limitations that were applied to determine the participant's RPA '94 old law benefit on the RPA '94 freeze date, then the participant's RPA '94 old law benefit will be reduced in accordance with such reduced limitation. If, at any date after the RPA '94 freeze date, the participant's total plan benefit, before the applica-tion of § 415, is less than the participant's RPA '94 old law benefit, the RPA '94 old law benefit will be reduced to the participant's total plan benefit.

If the RPA '94 benefit was reduced during the period between the RPA '94 freeze date and the first day of the first limitation year beginning on or after January 1, 2000 because of annual additions credited to a participant's account in an existing defined contribution plan, the RPA '94 old law benefit may increase to the RPA '94 freeze date level as of the first day of the first limitation year beginning on or after January 1, 2000.

(d) (13) Social security retirement age: Age 65 in the case of a participant attaining age 62 before January 1, 2000 (i.e., born before January 1, 1938), age 66 for a Participant attaining age 62 after December 31, 1999, and before January 1, 2017 (i.e., born after December 31, 1937, but before January 1, 1955), and age 67 for a Participant attaining age 62 after December 31, 2016 (i.e., born after December 31, 1954).

(d) (14)  TRA '86 accrued benefit:  A participant's accrued benefit under the plan, determined as if the participant had separated from service as of the close of the last limitation year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of    § 415(b)(2) of the Internal Revenue Code. In determining the amount of a participant's TRA '86 accrued benefit, the following shall be disregarded:

> (i) any change in the terms and conditions of the plan after May 5, 1986; and

> (ii) any cost of living adjustments occurring after May 5, 1986.

(d)(15)   Year of participation:  The Participant shall be credited with a year of participation (computed to fractional parts of a year) for each accrual computation period for which the following conditions are met:   (1) The participant is credited with at least the number of hours of service (or period of service if the elapsed time method is used) for benefit accrual purposes, required under the terms of the plan in order to accrue a benefit for the accrual computation period, and (2) the Participant is included as a Participant under the eligibility provisions of the plan for at least one day of the accrual computation period.  If these two conditions are met, the portion of a year of participation credited to the Participant shall equal the amount of benefit accrual service credited to the Participant for such accrual computation period.  A Participant who is permanently and totally disabled within the meaning of section 415(c)(3)(C)(I) of the Code for an accrual computation period shall receive a year of participation with respect to that period.  In addition, for a Participant to receive a year of participation (or part thereof) for an accrual computation period, the plan must be established no later than the last day

of such accrual computation period.  In no event will more than one year of participation be credited for any 12-month period.

(e) Transition Rule

      If this plan was adopted by and in effect for a participating employer before December 8, 1994, determinations under Code § 415(b)(2)(E) that are made before October 1, 1999, shall be made with respect to a participant's RPA '94 old law benefit on the basis of Code § 415(b)(2)(E) as in effect on December 7, 1994, and the provisions of the plan as in effect on December 7, 1994, but only if such provisions of the plan meet the requirements of Code § 415(b)(2)(E) as so in effect.

      6.05.1  Maximum Compensation Considered.  The annual compensation (as defined in Section 415(c)(3) of the Internal Revenue Code) of each employee taken into account in computing the applicable rate of contribution or any benefit under this Plan for any year shall not exceed the greater of  (a) $150,000.00; or (b) said $150,000.00 as adjusted by the Secretary of the Treasury in accordance with Internal Revenue Code Section 415(d).

      6.06  Payment of Benefits by Delivery of Insured Annuities. The Trustees may, in their sole discretion, provide for the payment of Retirement benefits by the purchase and delivery of insurance contracts issued by an Insurance Company. Any annuity contract distributed to a participant shall comply with the terms of this plan and shall be non-transferrable.

      6.07  Payment of Retirement Benefits Upon Late Application. Whenever a Participant fails to make an application for Early, Deferred, Disability or Normal Retirement Benefits within a reasonable time after he becomes eligible therefor, the Board may, in its sole discretion, determine whether said failure to apply is by reason of mistake, inability, inadvertence or negligence of the Participant or of any other person; and if the Board determines that there is cause for such failure to apply, it may, in its sole discretion, treat such application as if made within a reasonable time after the Participant became eligible for such benefits, and may order the payment of benefits in a lump sum retroactively to such Participant for the period

commencing on the first day of eligibility and continuing until the date of application for benefits with or without payment of interest thereon.

6.08 <u>Required Beginning Date</u>.   Notwithstanding any other provision of this Plan, distribution of benefits to a Participant must commence no later than the first day of April of the year following the later of

        (a)   the calendar year in which the Participant attains age 70 ½, or

        (b)   the calendar year in which the Participant retires;

<u>except that</u> distribution to a five percent (5%) owner must commence by April 1 of the year following the calendar year in which such Participant attains age 70 ½.   A Participant is treated as a five-percent owner for purposes of this section if such Participant is a five percent owner as defined in Section 416(I)(1) of the Code at any time during the plan year ending with or within the calendar year in which such owner attains age 70 and ½.

# ARTICLE VII

## CONTRIBUTIONS

7.01 <u>Employer Contributions</u>.  All contributions to provide the benefits under this Plan shall be made by the Participating Employer and no contributions shall be required of Employees. Contributions shall be paid to the Fund in accordance with the procedures adopted for such by the Board.  Contributions must be made for all Employees in the covered unit, including temporary, part time, or seasonal employees for any Week of Service of such Employee.

7.02 <u>Contribution Delinquencies</u>.  A Participating Employer's participation in the Plan may be terminated by the Board if the Participating Employer shall fail to pay such sums of money as shall have been agreed upon in the Participation Agreement between the Participating Employer and the Board in accordance with the rules of the Board for remitting such contributions.

7.03 <u>Minimum Contribution</u>.  In no event shall the Rate of Contribution for any Employee be less than $2.00 per week.

7.04 <u>Actuarial Surcharges</u>.  An Employer applying to become a Participating Employer shall be required to submit such data with respect to Employees in the units such Employer proposes to have covered as the Actuary may require to determine whether a surcharge over and above the regular weekly Rate of Contribution set forth in Section 4.01 hereof is necessary in order to avoid an actuarial deficiency, and to pay any such surcharge as the Actuary determines is so required.  A similar determination and surcharge (if found necessary) is required with respect to an increase in Rate of Contribution or with respect to the inclusion of a new employee unit in the Plan by a Participating Employer but such a surcharge, if any, will apply only to the increase in Rate of Contribution or to the new Employee unit covered, as the case may be.  Each surcharge in existence on December 31, 1982, shall be reduced by 50% for all weeks commencing thereafter and shall thereafter apply to, and be payable for, only the Participants to whom such surcharges were applicable on such date.  Any surcharges imposed after December 31, 1982, shall be added to the regular weekly Rate of Contribution only of the Participants of

said Participating Employer who were or became Participants at the time such surcharge was imposed; no such surcharge shall apply to any Participant of said Participating Employer who first becomes a Participant by reason of being hired after December 31, 1982, and after such surcharge was imposed.

7.05 <u>Special Contributions</u>.  A Participating Employer shall pay any past contribution amount due (including surcharges, if any) but erroneously omitted promptly upon learning of the error. The Trustees may require payment of interest by the Participating Employer on any past contribution amount due (including surcharges), at a rate equal to actual Plan experience for the period of the deficiency.

7.06 <u>Forfeitures Do Not Increase Benefits</u>.  In no event shall Forfeitures be applied to increase the benefit any Participant would otherwise receive under the Plan.

7.07 <u>Refunds of Erroneous Contributions</u>.  Contributions made by a Participating Employer by reason of a *bona fide* mistake of fact may be returned to such Participating Employer within one year after the payment to the Trust of such erroneous contribution.

*[Proposed Amendment 7.08, November 17, 2004:  **The Participating Employers may contribute such sums of money (in addition to the regular weekly contribution stated in the Participation Agreements on which benefit calculations are based and any special assessments or surcharges) as are required by law to satisfy the minimum funding requirements of the Internal Revenue Code and ERISA; and the acceptance of such sums in addition to the regular weekly Rate (or Rates) of Contribution as defined in the Plan Document Section 1.01 shall not affect the weekly Rate of Contribution stated in the Participation Agreement(s) of any such Employer, the benefit calculation based thereon, or any other obligation of the parties under such Participation Agreement(s).]***

## ARTICLE VIII

### THE FUND

8.01 <u>Fund Management</u>.   The contributions paid to the Fund shall be held, invested, transferred and distributed by the Board in accordance with the terms and provisions of the Trust.   Said Trust authorizes the Board to enter into both a trust agreement with a corporate Trustee and contract(s) with an Investment Manager which may be an Insurance Company in order to implement this Plan so that the benefits to be provided may be payable under either the Trust or such contract(s) or a combination of both.

8.02 <u>Diversion Impossible</u>.   It shall be impossible at any time prior to satisfaction of all liabilities to Participants and Beneficiaries for any part of the Fund to revert to the Participating Employers, or to be used for, or diverted to, any purpose other than the exclusive benefit of such Participants and Beneficiaries.   Only after such satisfaction may recovery be had to the extent of any surplus existing because of an actuarial error.

ARTICLE IX

ACTUARIAL VALUATION

9.01 Periodic Actuarial Review. The benefits as set forth in this Plan have been adopted by the Board on the basis of an actuarial estimate furnished to them by the Actuary that the contributions to the Fund and the estimated earnings thereof will be sufficient to provide such benefits on a continuing basis. However, it is recognized that:

(a)  in the future the income and/or liabilities of the Fund may differ from those estimated at the time of establishment of this Plan or from time to time thereafter, and

(b)  the benefits set forth in this Plan can be provided only to the extent that the assets of the Fund are sufficient to provide them.

In recognition of the foregoing, the Board shall have an Actuary prepare an actuarial valuation of the Fund not less often than every third year, and recommend to the Board changes in benefits and contributions.

# ARTICLE X

## AMENDMENT OF THIS PLAN

10.01    <u>Reservation of Right to Amend</u>.  The Board reserves the right at any time to amend this Plan in whole or in part; <u>provided, however</u>, that said Board shall have no power to amend this Plan in such manner as would cause or permit any portion of the Fund to be used for, or diverted to, purposes other than for the exclusive benefit of Participants or their Beneficiaries, or as would cause or permit any portion of the Fund to become the property of the Participating Employers.  Except for amendments revoking changes made solely for the purpose of complying with ERISA requirements if such changes are later ruled not to have been required, no such amendment shall have the effect of retroactively depriving Participants or Beneficiaries of rights already accrued under this Plan.  Any such amendment of the Plan duly effected by the Board shall be binding on Participants, the Participating Employers, the Board and each Trustee, the Corporate Trustee, the Contract Administrator and all others whomsoever.

10.02    <u>Merger with Other Plans</u>.  In the event of any merger or consolidation of part or all of the Plan with, or the transfer of part or all of its assets or liabilities to, any other plan or trust (herein called "other plan"), such other plan shall provide that each Participant in the Plan and Trust whose Plan and Trust interests were so merged, consolidated or transferred into, with or to the other plan would (if the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which would be equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

ARTICLE XI

TERMINATION

11.01    Total Termination of Whole Plan.  This Plan and Trust may be completely terminated, or the participation of all Participating Employers herein, or further contributions by the Participating Employers hereto may be terminated by a duly adopted resolution of the Board; and the complete discontinuance of contributions under the Plan shall constitute a termination thereof.  In the event of any such termination the rights of all Participants to the benefits accrued to the date of such termination to the extent then funded, all as more particularly set forth below in this ARTICLE XI, shall become nonforfeitable. For the period required to complete such termination, the Board shall continue to hold, administer, invest and distribute the Fund in accordance with the provisions of the Plan and the Trust Agreement unless and until the Fund is to be administered by a trustee appointed by the Pension Benefit Guarantee Corporation pursuant to proceedings instituted under ERISA.  In the event of the termination of this Plan the Board with the aid and counsel of the Actuary and the accountants for the Plan shall determine in accordance with any applicable ERISA rules and regulations thereunder the portion of the assets of the Plan attributable to the participation in the Plan of the Participants and Beneficiaries of each of the Participating Employers and shall then allocate such portion among the Participants and Beneficiaries of Participants of such Participating Employer for the following benefits and in the following order of priority:

First    (a)  In the case of each Participant and Beneficiary to whom a benefit was being paid on the date of such termination and as of the beginning of the 3rd year before such termination date, the actuarial equivalent of the benefit determined at the lowest benefit level paid during such 3-year period or provided under the Plan during the 5-year period before such termination date; and

(b)  In the case of each Participant and Beneficiary to whom a benefit would have been payable at the beginning of the 3rd year before such termination date if the Participant had retired prior thereto, the actuarial

equivalent of the benefit determined at the lowest benefit level provided under the Plan during the 5-year period before such termination date;

Second    (a)  The actuarial equivalent of each benefit of a Participant and Beneficiary other than provided for in First above which is guaranteed under ERISA Section 4022 (determined without regard to paragraph (b)(5) thereof); and

(b)  The actuarial equivalent of each benefit of a Participant or Beneficiary other than provided for in First and Second (a) above which is nonforfeitable under the provisions of the Plan (other than benefits which become nonforfeitable upon termination under this Section 12.01);

Third, the actuarial equivalent of each benefit of a Participant or Beneficiary other than provided for in First and Second above, provided for under the Plan; and

Fourth, any excess after all of the foregoing have been fully provided for shall be allocated to the Participating Employer as an excess due to actuarial error.

If the assets of the Fund available for allocation under any paragraphs First or Second above are insufficient to satisfy in full all of the benefits described in such paragraph, such assets shall be allocated pro rata among such benefits on the basis of the actuarial equivalent referred to in such paragraph of their respective benefits; and if the assets available for allocation under paragraph Third above are insufficient to satisfy in full all of the benefits described in such paragraph, such assets shall be allocated among such benefits pro rata as such benefits are determined under the Plan as in effect at the beginning of the 5-year period ending on such termination date, and if sufficient for that purpose and if the Plan has been amended during such 5-year period, the remainder shall be allocated pro rata among any benefits in addition to such benefits (as were in effect at the beginning of such 5-year period) for which each such amendment provided, in the order of occurrence until all such assets are exhausted.   The manner and time of paying benefits not already being paid shall be determined by the Board subject to the applicable provisions of ERISA and the Code.  If and to the extent that such assets are insufficient to satisfy in full all of the benefits described in any of paragraph First,

Second, or Third (in that order of priority) for the Participants and Beneficiaries of the terminating Participating Employer, then such Participating Employer shall contribute to the Fund the amount necessary to make up the insufficiency for any or all of such benefits in the order of priority given.

11.02    Partial Termination of Plan. If any Participating Employer shall discontinue its participation in the Plan by any one or more of the following actions:

(a)  The termination of such Participating Employer's contributions;

(b)  The termination of such Participating Employer's business with consequent termination of employment of Participants employed by such Participating Employer;

(c)  Disposition of substantially all its business operations without the acquiring person or entity assuming and continuing the Participating Employer's participation in the Plan,

then the Plan shall be terminated with respect to such Participating Employer and with respect to the Participants and Beneficiaries of Participants whose participation in the Plan is attributable to employment with such Participating Employer, other than any such Participant who continues his participation in the Plan by becoming employed by another Participating Employer. Upon any such termination of the Plan with respect to such Participating Employer, the portion of the assets of the Fund attributable to the participation in the Plan of the Participants and Beneficiaries of Participants with respect to whom the Plan is thus terminated shall be determined and allocated in accordance with the provisions of Section 11.01. The provisions of Article V, Section 5.05 shall apply to any partial termination under this Section.

In the event a Participating Employer discontinues contributions or otherwise seeks to terminate participation in this Plan, before such termination shall be effective, Participants in the Plan of said Employer shall receive advance written notice from the Employer that contributions and benefit accruals will cease;

and the Participant shall cease to accrue benefits in said Plan as of the latest of

    (a)  the date contributions cease;

    (b)  the date specified in the notice of cessation of benefit accruals; or

    (c)  any other date required by any government agency having jurisdiction over the termination.

    An Employer seeking to terminate its Participation in the Plan shall notify the Plan in writing no less than 180 days in advance of the proposed termination date, and no termination shall be effective until a period of 180 days has elapsed from the date of notification of the Plan.

11.02.1   <u>Partial Termination Under Internal Revenue Code Section 411(d)(3)</u>.  If a "partial termination" under Internal Revenue Code Section 411(d)(3) occurs with respect to a Participating Employer, the rights of all employees and participants affected by such partial termination to benefits accrued to the date of such termination, to the extent funded as of such date, shall be non-forfeitable; and the Plan shall be terminated with respect to the affected participants.   In the event of such partial termination, the portion of the assets of the Fund attributable to the participation in the Plan of the Participants and Beneficiaries of Participants with respect to whom the Plan is thus terminated shall be determined and allocated in accordance with the provisions of Section 11.01. The provisions of Article V, Section 5.05 shall apply to any partial termination under this Section.

11.03    <u>Non-Discrimination.</u> In the event of total or partial plan termination, the benefit of any highly compensated active or former employee is limited to a benefit that is non-discriminatory under Code section 401(a)(4).

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.01    Spendthrift Clause.    Amounts payable under the Plan to a Participant or to a Beneficiary shall be paid only to him and upon his personal receipt (except (a) a person under a disability as provided in Section 12.06 hereof; or (b) a person whose entitlement to a benefit under this Plan is subject to a Qualified Domestic Relations Order duly filed with the Plan, in which event payment shall be made in accordance with the terms of said Qualified Domestic Relations Order).    No benefit payable under the provisions hereof shall be assigned or alienated or be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge. Any attempt to so charge shall be void, nor shall the Trust or the Fund or any part thereof be in any manner liable for or subject to the debts, contracts, liabilities, engagements or torts of the person entitled to any benefit payment.

The prohibition against assignment contained herein shall not apply to any offset of a participant's benefits provided under the Plan against an amount that the participant is ordered or required to pay to the plan if

(i) the order or requirement to pay arises -

(I) under a judgment of conviction for a crime involving such plan,

(II) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA, or

(III) pursuant to a settlement agreement between the Secretary of Labor and the participant, or a settlement agreement between the Pension Benefit Guaranty Corporation and the participant, in connection with a violation (or alleged violation) of part 4 of such subtitle by a fiduciary or any other person,

(ii) the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

amount ordered or required to be paid to the plan against the participant's benefits provided under the plan, and

(iii) in a case in which the survivor annuity requirements of section 401(a)(11) apply with respect to distributions from the plan to the participant, if the participant has a spouse at the time at which the offset is to be made -

(I) either such spouse has consented in writing to such offset in accordance with the formalities set forth in Section 5.01 of the Plan, or an election to waive the right of the spouse to either a qualified joint and survivor annuity or a qualified preretirement survivor annuity is in effect,

(II) such spouse is ordered or required in such judgment, order, decree, or settlement to pay an amount to the plan under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA, or

(III) in such judgment, order, decree, or settlement, such spouse retains the right to receive the survivor annuity under a Qualified Joint and Survivor Annuity and under a Qualified Preretirement Survivor Annuity provided pursuant to section 401(a)(11)(A)(ii), determined in accordance with subparagraph (D).

12.02    Not A Contract of Employment. Nothing contained herein shall be construed as a contract of employment between any Participant and his Participating Employer or as giving a right to any Participant to be continued in the employment of his Participating Employer, or as a limitation of the right of a Participating Employer to discharge any Participant at any time with or without cause.

12.03    Addresses. Each person entitled to benefits hereunder shall file with the Board from time to time in writing his complete mailing address and each change of mailing address. Any check representing payment hereunder, and any communication, addressed to a Participant or to any other person at his last address so filed (or if no such address has been filed, then at his last address indicated on the records of the Company) shall be deemed to have been

received by such person for all purposes of the Plan, and neither the Board nor any Participating Employer shall be obliged to search for or ascertain the location of any such person.

12.04    Claims and Appeal Procedure.  Any claim for benefits which are not received shall be made in writing to the Board.  The Board shall consider such claim and shall within 60 days either approve it or deny it.  Each denial shall be in writing, setting forth the specific reasons for such denial and written in a manner calculated to be understood by the Participant or Beneficiary making such claim and the Board shall afford a reasonable opportunity to any Participant or Beneficiary whose claim is denied for a full and fair review by the Board or its delegate of the decision denying the claim.

12.05    Tax Qualified Plan.  The Board intends this Plan and the Trust to be qualified under the provisions of Section 401 of the Code.  The Board shall seek determination letters to that effect and keep the Participating Employers advised of any changes in the federal income tax qualification status of the Plan and the Trust.

12.06    Payments to Person under Disability.  If the Board shall find that any person to whom a benefit is payable from the Fund is unable to care for his affairs because of infirmity, illness or accident, any payment due (unless a prior claim therefor shall have been made by a duly appointed guardian or other legal representative) may be made to the spouse, a child, a parent, or a brother or a sister, or to any other person whom the Board deems competent to receive payments on behalf of the person to whom said benefit is payable.  Any such payment shall be a complete discharge of any liability under this Plan.

12.07    Termination for Loss of Association Membership.  Upon the Board's receipt of notification by the American Bakers Association that the membership of a Participating Employer in the Association has been terminated, the participation in this Plan of such Participating Employer and its Affiliates (except to the extent any such Affiliate may be or become an Association member) may be terminated by the Board after due consideration of the circumstances.

12.08    <u>Saving Clause</u>.  In the event that any section or clause hereof should be invalid, the remaining parts not so invalid shall be given full force and effect.  Should any provision of this Plan conflict with any governing law, rule or regulation then in effect, the provisions of said governing law, rule or regulation shall control the terms of this Plan; and the terms of this Plan which conflict shall be construed in the manner most consistent with said governing law, rule or regulation.

12.09    <u>Top-Heavy Plan</u>.  If the part of the Plan which is the separate plan of a Participating Employer hereunder becomes a "Top-Heavy Plan" as defined in ADDENDUM NO. 1 to this Plan, then such Addendum No. 1 shall become applicable to such separate plan and shall remain applicable thereto to the extent therein set forth.

ARTICLE XIII

NATURE OF PLAN

13.01    Association of Single Employer Plans. This Plan constitutes an association of single employer plans designed to give the cost savings and other benefits of a tax-qualified prototype plan, the administration in common of all the associated plans (including, but no limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants. That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes (see Exhibit A attached hereto).

13.02    Each Single Employer Plan to Provide Funds For Its Participants. Subject to the Plan's actuarial assumptions that the stated contribution amounts will produce the stated benefit amounts, it is the fundamental concept and intent of this Plan that the contributions of each separate employer will be used only to provide benefits for Participants (and Beneficiaries thereof) by reason of such Participants' employment by such employer; and only contributions by such employer will be used to provide benefits for such Participants (and Beneficiaries).

(END)

ADDENDUM NO. 1

TO

<u>AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN</u>

**Ad. 1** <u>Definitions</u>. For the purposes of this Addendum No. 1 the following terms, when used herein, shall have the following respective meanings:

I) <u>Key Employee</u>: Any employee or former employee (and the beneficiaries of such employee) who at any time during the determination period was an officer of the employer is such individual's annual compensation exceeds 50 percent of the dollar limitation under section 415(b)(1)(A) of the Internal Revenue Code, an owner (or considered an owner under section 318 of the Code) of one of the ten largest interests in the employer if such individual's compensation exceeds 100 percent of the dollar limitation under section 415(c)(1)(A) of the Code, a 5-percent owner of the employer, or a 1-percent owner of the employer who has an annual compensation of more than $150,000. Annual compensation means compensation as defined in section 415(c)(3) of the Code, but including amounts contributed by the employer pursuant to a salary reduction agreement which are excludable from the employee's gross income under section 125, section 402(a)(8), section 402(h) or section 403(b) of the Code. The determination period is the plan year containing the determination date and the 4 preceding plan years. The determination of who is a key employee will be made in accordance with section 416(I)(1) of the Code and the regulations thereunder.

ii) <u>Top-heavy plan</u>: For any plan year beginning after December 31, 1983 the separate plan of any Participating Employer in this Plan ("separate plan") is top-heavy if any of the following conditions exists:

a. If the top-heavy ratio for such plan exceeds 60 percent and such separate plan is not part of any required aggregation group or permissive aggregation group of plans.

b. If such separate plan is a part of a required aggregation group of plans but no part of a permissive aggregation group and the top-heavy ratio for the group of plans exceeds 60 percent.

c. If such separate plan is a part of a required aggregation group and part of a permissive aggregation group of plans and the top-heavy ratio for the permissive aggregation group exceeds 60 percent.

**2002 RESTATEMENT**

iii)   Top-heavy ratio:

a.    If the employer maintains one or more defined benefit
plans and the employer has not maintained any defined
contribution plan (including any Simplified Employee
Pension Plan) which during the 5-year period ending on
the determination date(s) has or has had account
balances, the top-heavy ratio for the separate plan of said
Participating Employer alone or for the required or
permissive aggregation group as appropriate is a
fraction, the numerator of which is the sum of the
present values of accrued benefits of all key employees
as of the determination date(s) (including any part of any
accrued benefit distributed in the 5-year period ending
on the determination date(s)), and the denominator of
which is the sum of the present value of all accrued
benefits (including any part of any accrued benefit
distributed in the 5-year period ending on the
determination date(s)), determined in accordance with
section 416 of the Code and the regulations thereunder.

b.    If the employer maintains one or more defined benefit
plans and the employer maintains or has maintained one
or more defined contribution plans (including any
Simplified Employee Pension Plan) which during the 5-
year period ending on the determination date(s) has or
has had any account balances, the top-heavy ratio for any
required or permissive aggregation group as appropriate
is a fraction, the numerator of which is the sum of the
present value of accrued benefits under the aggregated
defined benefit plan or plans for all key employees,
determined in accordance with (a) above, and the sum of
account balances under the aggregated defined
contribution plan or plans for all key employees as of the
determination date(s), and the denominator of which is
the sum of the present value of accrued benefits under
the aggregated defined benefit plan or plans, determined
in accordance with (a) above, for all participants and the
sum of the account balances under the aggregated
defined contribution plan or plans for all participants as
of the determination date(s), all determined in

accordance with section 416 of the Code and the regulations thereunder. The account balances under a defined contribution plan in both the numerator and denominator of the top-heavy ratio are increased for any distribution of an account balance made in the five-year period ending on the determination date.

c.    For purposes of (a) and (b) above the value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that falls within or ends with the 12-month period ending on the determination date, except as provided in section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan. The account balances and accrued benefits of a participant (1) who is not a key employee but who was a key employee in a prior year, and (2) who has not been credited with at least one hour of service with any employer maintaining the plan at any time during the 5-year period ending on the determination date will be disregarded. The calculation of the top-heavy ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with section 416 of the Code and the regulations thereunder. Deductible employee contributions will not be taken into account for purposes of computing the top-heavy ratio. When aggregating plans the value of account balances and accrued benefits will be calculated with reference to the determination dates that fall within the same calendar year.

The accrued benefit of a participant other than a key employee shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the employer, or (b) if there is not such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of section 411(b)(1)(C) of the Code.

iv)    <u>Permissive aggregation group</u>: The required aggregation group of plans plus any other plan or plans of the employer which, when considered

- 3 -

as a group with the required aggregation group, would continue to satisfy the requirements of sections 401(a)(4) and 410 of the Code.

v)    Required aggregation group:  (1) Each qualified plan of the employer in which at least one key employee participates or participated at any time during the determination period (regardless of whether the plan has terminated), and (2) any other qualified plan of the employer which enables a plan described in (1) to meet the requirements of sections 401(a)(4) or 410 of the Code.

vi)    Determination date:  For any plan year subsequent to the first plan year, the last day of the preceding plan year.  For the first plan year of the plan, the last day of that year.

vii)    Valuation date:  The most recent valuation date that falls within or ends with the 12-month period ending on the determination date, except as provided in section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.

viii) Present value:  Present value shall be based only on the following interest and mortality rates:

Interest: 7%  Mortality Table: 1971 Group Annuity  Mortality Table

### Ad. 2  Top-Heavy Separate Plan Requirements

Ad. 2.1    Vesting Rule.  For purposes of these Top-Heavy Rules, each Participant who has completed at least 3 Vesting Years of Service with a Participating Employer has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

Ad. 2.2    Minimum Benefit Rule.  (1) Notwithstanding any other provision in this plan except (3), (4), and (5) below, for any plan year in which the separate plan of a Participating Employer is top-heavy, each participant who is not a key employee and has completed 1,000 hours of service will accrue a benefit (to be provided solely by employer contributions and expressed as a life annuity commencing at normal retirement age) of not less than 2 percent of his or her highest average compensation for the five consecutive years for which the participant had the highest compensation.  The aggregate compensation for the years during such five-year period in which the participant was credited with a year of service will be divided by the number of such years in order to determine average annual compensation.  The minimum accrual is determined without regard to any Social Security contribution.  The minimum accrual applies even though under other plan provisions the participant would not otherwise be entitled to receive an accrual, or would have received a

lesser accrual for the year because (I) the non-key employee's compensation is less than a stated amount, or (ii) the non-key employee is not employed on the last day of the accrual computation period.

     (2)    For purposes of computing the minimum accrued benefit, Average Compensation shall mean: average annual compensation (as defined in Section 415(c)(3) of the Internal Revenue Code) for the period of 5 (or all if less than 5) consecutive Plan Years included in his Credited Service in which such Participant's aggregate compensation is the highest.

     (3)    No additional benefit accruals shall be provided pursuant to (1) above to the extent that the total accruals on behalf of the participant attributable to employer contributions will provide a benefit expressed as a life annuity commencing at normal retirement age that equals or exceeds 20 percent of the participant's highest average compensation for the five consecutive years for which the participant had the highest compensation.

     (4)    The provision in (1) above shall not apply to any participant to the extent the participant is covered under any other plan or plans of the employer and the employer has provided in such other plan that the minimum allocation of benefit requirement applicable to top-heavy plans will be met in the other plan or plans.

     (5)    All accruals of employer derived benefit, whether or not attributable to years for which the plan is top-heavy, may be used in computing whether the minimum accrual requirements of paragraph (3) above are satisfied.

     (6)    If the form of benefit is other than a single life annuity, the employee must receive an amount that is the actuarial equivalent of the minimum single life annuity benefit. If the benefit commences at a date other than at normal retirement age, the employee must receive at least an amount that is the actuarial equivalent of the minimum single life annuity benefit commencing at normal retirement age.

     (7)    The minimum accrued benefit required (to the extent required to be nonforfeitable under section 416(b)) may not be forfeited under section 411(a)(3)(B) or 411(a)(3)(D).

     (8)    For any plan year in which the separate plan of a Participating Employer is top-heavy, the minimum vesting schedule set forth at Ad. 2.1 will automatically apply to the plan. The minimum vesting schedule applies to all benefits within the meaning of section 411(a)(7) of the Code except those attributable to employee contributions, including benefits accrued before the effective date of section 416 and benefits accrued before the plan became top-heavy. Further, no decrease in a participant's nonforfeitable percentage may occur in the event the plan's status as top-heavy changes for any plan year. However, this section does not apply

- 5 -

to the accrued benefits of any employee who does not have an hour of service after the plan has initially become top-heavy and such employee's account balance attributable to employer contributions and forfeitures will be determined without regard to this section.

Ad. 2.3    Special Limitations In Case Of More Than One Plan. For limitation years beginning before January 1, 2000, in any plan year in which the separate Plan of a Participating Employer, considered along with any other plan of a particular Participating Employer, is top-heavy, i.e., the top-heavy ratio exceeds 60%, the denominators of the defined benefit fraction (as defined in section 6.05 of the plan) and defined contribution fraction (as defined in section 6.05 of the plan) shall be computed using 100 percent of the dollar limitation set forth at subsection (d)(6) of Section 6.05 instead of 125 percent, unless otherwise permitted by Section 416(h)(2) of the Internal Revenue Code.

Ad. 2.4    Minimum Benefit In Case Of More Than One Plan. For limitation years beginning before January 1, 2000, when the separate Plan of a Participating Employer, considered along with any other plan of a particular Participating Employer is top-heavy, the employer will provide a minimum nonintegrated accrued benefit of 2% of the highest 5-consecutive year average compensation (not to exceed a cumulative accrued benefit of 20%), to each non-key employee who participates in this Plan and who does not participate in the Participating Employer's other plan.

[END]

Pension Benefit Guaranty Corporation
2020 K Street. N.W. Washington. D.C. 20006

JUL 21 1979

Mr. Donald Gerrish
American Bakers Association
2020 K Street, N.W.
Suite 850
Washington, D.C. 20006

Dear Mr. Gerrish:

This is in response to your request for a determination by
the Pension Benefit Guaranty Corporation ("PBGC") whether
the American Bakers Association Retirement Plan (the "Fund")
constitutes a single pension plan or an aggregate of separate
pension plans. We have concluded that the Fund constitutes
an aggregate of separate plans. Therefore, an employer's
cessation of participation constitutes a plan termination.

We understand that the American Bakers Association ("ABA"),
an association of approximately one hundred employers in the
baking industry, established the ABA Trust ("Trust"), effective
September, 1961. Pursuant to Trust Article II, the Fund was
established October 1, 1961. The Fund has been amended from
time to time, including October 1, 1976 amendments to satisfy
the requirements of ERISA. The Fund is managed by seven
trustees, three of whom are elected by the participating
employers and four of whom are appointed by the ABA. All
seven trustees are participating employers. The trustees
oversee the work of the plan administrator, Mass Insurance
Consultants and Administrators, Inc. ("MICA"). The approxi-
mately four thousand active Fund participants work in ninety-
three separate plants, that are located in twenty-seven
states from Florida to California. There are from one to
more than two hundred participants at each participating
plant. More than three hundred participants receive pension
benefits under the Fund. The Fund is not union negotiated.

Our determination as to the nature of an entity -- whether
it is a single plan or an aggregate of single plans -- is
based on its structure and how it actually operates on an
ongoing basis. We look to the documents governing the
entity and to relevant evidence of how it has operated and
continues to operate. Such evidence may include the reasonable
expectations and intent of the parties.

EXHIBIT A to th'
Page 1

-2-

The availability of funds held by an entity to provide
benefits is a central factor in our analysis.  Restrictions
in the use of such funds indicate that the entity may be an
aggregate of single plans.  For example, if separate accounts
are maintained for each contributing employer, it may be
possible to restrict the use of assets from each separate
account to pay only the benefits of the employee-participants
of the employer maintaining the account.  If the evidence
shows that payments are effectively restricted, by whatever
means, so that there is a minimal risk of funds attributable
to the contributions of one employer being used to pay the
benefits of another employer's employee-participants, then
the entity is an aggregate of single plans.

We note first that since the inception of the Fund in 1961,
each employer that enters the Fund, that increases its
contribution rate, or that adds a new unit has been required
to sign a separate participation agreement.  This agreement
states that the employer's participation in the Fund is only
with respect to its own employees.  Each participation
agreement sets forth the employees to be covered and the
contribution rate or rates applicable to the signatory.  The
contribution rate varies at the discretion of each employer,
and the benefits are directly related to that contribution.
Benefits are determined individually by employer and contribution
rates are actuarially determined by the Fund actuary.  (See
 audited Financial Statements of the Fund, September 30, 1974
 and September 30, 1975 at page 6.)

Each new employer and each employer that chooses to increase
its contribution rate(s) is the subject of an actuarial
study made by the Fund actuary.  This study is made to
determine whether, in addition to the contribution rate
stated in its participation agreement, the employer must pay
a surcharge to avoid any actuarial deficiency.  [Fund section
10.04].  This surcharge is a direct function of the age and
service distribution of the subject employer's employees.
Each new employer and each employer that changes its contri-
bution rate must separately submit to the Internal Revenue
Service ("IRS") an application for a determination letter
that its new or amended participation in the Fund separately
meets the Internal Revenue Code requirements for a qualified
plan.  Also concerning the Fund's representations to the
IRS, we note that the Annual Returns of Fiduciary of Employees'
Pension or Profit Sharing Trust (IRS Form 990P) filed by the
Fund state that more than ninety employer-adopted plans are

EXHIBIT A to the
Page 2

involved in the Fund's commingled trust account.  Further, the Schedules A of IRS Form 990P list the discrete serial umber of each employer's plan.

On an ongoing basis all contributions are paid into and all distributions are paid from the commingled trust, established pursuant to Trust Article III.  Although the trustees do keep a record of the credited service of each employee-participant, on an ongoing basis the Fund only maintains separate accounting per employer for purposes of cost allocation.

We note, too, that upon total discontinuance of the Fund, Fund Article XIV and Trust Article IX provide initially for an allocation of Fund assets by employer, crediting each employer with that portion of assets attributable to its participation in the Fund.  Each such portion is allocated according to express priority categories of each employer's employees.

The intent to maintain an aggregate of single plans has been expressed to the employee-participants in the Fund.  The Summary Plan Description ("SPD") distributed to all employee-participants specifies that continued benefit payments are a direct function of continued employer participation, i.e., requisite funding by the appropriate employer.  "Your company is paying the entire cost of the Plan . . . The company's bility to continue payments to the Plan will depend upon e company's continued financial success." 1/  The SPD also states that "[s]hould the company's participation in the Plan end, only its employees then receiving, or eligible to receive benefits would have any further interest in the Plan, and their benefits might be reduced if an actuarial evaluation showed that the company's past contributions had not been sufficient to fund their benefits." 2/

Further examination of the documentation submitted to this Office reveals the following information:

  (1) The raw data necessary to historically re-create separate accounts has been maintained.  Such accounts were created pursuant to Fund Section 14.02 each time an employer ceased participation in the Fund; and

---

1/  SPD at page 2.

2/  SPD at page 10.

-4-

(2) The Fund presently provides for a reversion to an employer ceasing participation, of any amounts attributable to its contributions that prove to be in excess of the accrued pensions of its employees. However, until the Fund was so amended in 1976, any such excess remained in the commingled trust rather than reverting to the subject employer.

Examining the evidence under the analysis set forth above, we have determined that the Fund is an aggregate of separate pension plans. In this case the separate actuarial valuations made with regard to each employer and the system of surcharges, discussed above, effectively minimize the risk that one employer's contributions will be used to fund the benefits of another employer's employees.

I hope that this response is helpful to you. Should you need further assistance, please do not hesitate to contact David Levin of this Office at (202) 254-4895.

Sincerely,

Henry Rose
General Counsel

cc:  William C. Childs, Esquire
     Hopkins, Sutter, Mulroy, Davis &
           Cromartie
     One First National Plaza
     Chicago, Illinois 60603

     Laura E. Stone, Esquire
     Steptoe & Johnson
     1250 Connecticut Avenue, N.W.
     Washington, D.C. 20036

     Mrs. Albert Spelsberg
     115 South Main Street
     West Hartford, Connecticut 06107

EXHIBIT A to the Pla
Page 4