## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARA LEE CORPORATION, on its own behalf** ) | |
| **and on behalf of its employee-participants in the** ) | |
| **American Bakers Association Retirement Plan,** ) | |
| Three First National Plaza ) | |
| Chicago, Illinois  60602-4260 ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.** 06-CV-0819-HHK |
| ) | |
| **AMERICAN BAKERS ASSOCIATION** ) | |
| **RETIREMENT PLAN; and** ) | |
| **BOARD OF TRUSTEES OF THE AMERICAN** ) | |
| **BAKERS ASSOCIATION RETIREMENT** ) | |
| **PLAN, as Administrator of The American** ) | |
| **Bakers Association Retirement Plan** ) | |
| 1350 Eye Street, N.W., Ste. 1290 ) | |
| Washington, D.C. 20005 ) | |
| ) | |
| **and** ) | |
| ) | |
| **PENSION BENEFIT GUARANTY** ) | |
| **CORPORATION,** ) | |
| 1200 K Street, N.W. ) | |
| Washington, D.C. 20005 ) | |
| ) | |
| **Defendants.** ) | |

## SECOND AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Sara Lee Corporation ("Sara Lee"), by and through counsel and on its own behalf and on behalf of its employee-participants in the American Bakers Association Retirement Plan (the "ABA Plan"), for its Second Amended Complaint against Defendant Pension Benefit Guaranty Corporation ("PBGC") and Defendants ABA Plan and the Board of Trustees of the American Bakers Association Retirement Plan, as Administrator of the ABA Plan ("Board of Trustees"), states as follows:

## NATURE OF ACTION

1.      This is an action by Sara Lee, a Participating Employer and functional fiduciary of the ABA Plan, seeking declaratory and injunctive relief (i) to reverse and enjoin the PBGC's August 8, 2006 determination that the ABA Plan is a multiple employer pension plan and not an aggregate of single-employer pension plans under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); (ii) to challenge the acts and practices of the Board of Trustees that violate the terms of the ABA Plan, an employee benefit pension plan governed by ERISA; and (iii) if the PBGC's August 8, 2006 determination is upheld and the ABA Plan is determined to be a multiple employer pension plan, to challenge the Board of Trustees' breach of fiduciary duty for failing to administer the ABA Plan according to its terms that state it is to be administered as an aggregate of single-employer pension plans.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over Sara Lee's claim against the PBGC pursuant to ERISA Section 4003(f)(1), 29 U.S.C. § 1303(f)(1), and 28 U.S.C. § 1331.

3.      This Court has subject matter jurisdiction over Sara Lee's claims against the ABA Plan and the Board of Trustees pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

4.      Venue is exclusive to the District of Columbia on Sara Lee's claim against the PBGC pursuant to ERISA Section 4003(f)(2), 29 U.S.C. § 1303(f)(2), because the ABA Plan's principal office is located in this District and this District is a proper venue for all actions against the PBGC.

5.      Venue is proper in the District of Columbia on Sara Lee's claims against the ABA Plan and the Board of Trustees pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ABA Plan is administered in this District, the acts and practices violating the ABA Plan's terms occurred in this District and the ABA Plan and the Board of Trustees can be found in this District.

## PARTIES

6.      Plaintiff Sara Lee is incorporated in the State of Maryland and has a principal place of business in Chicago, Illinois.  As a member of the American Bakers Association ("ABA"), Sara Lee is a Participating Employer in the ABA Plan.  As a Participating Employer, Sara Lee makes contributions to the ABA Plan for its eligible employee-participants and has been accepted for participation in the ABA Plan by the Board of Trustees.  Sara Lee brings this suit as a functional fiduciary under the ABA Plan.

7.      Defendant ABA Plan is an employee pension benefit plan as defined by ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A).  The ABA Plan is administered in the District of Columbia, where the Chairman of the Board of Trustees resides and the ABA Plan's counsel— the ABA Plan's registered agent for service of legal process—is located.  The ABA Plan's principal office is located in the District of Columbia.

8.      Defendant Board of Trustees is the ABA Plan's Named Fiduciary as defined by ERISA Section 402(a)(2), 29 U.S.C. § 1102(a)(2), and as such has the full authority and responsibility under the ABA Plan to control and manage the ABA Plan's operation and administration, and under the American Bakers Association Retirement Trust (the "ABA Trust") to manage and control the ABA Plan's assets held in the ABA Trust.

3

9.     Defendant PBGC is a corporation established by ERISA Section 4002, 29 U.S.C. § 1302, within the Department of Labor.  The PBGC is domiciled and maintains its principal office within the District of Columbia.

## FACTUAL AVERMENTS

### The Plan's Administration

10.     The ABA Plan was initially adopted effective as of October 1, 1961.  The ABA Plan was designed with the express purpose of providing Participating Employers with the benefit, including the cost savings, of centralized administration and investment management while ensuring that each Participating Employer remained singly responsible for the benefits paid under the ABA Plan to its employee-participants.

11.     The Board of Trustees is the ABA Plan's Named Fiduciary, as that term is defined by ERISA.  As such, under Section 2.01 of the ABA Plan, the Board of Trustees has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund.  (A true and correct copy of the 2002 Restatement of the ABA Plan's governing document is attached hereto as Exhibit 1).

12.     Under Section 2.02(h) of the ABA Plan, the Board of Trustees has the express duty under the Plan "[t]o enforce the Plan in accordance with its terms, and with the Board's own rules and regulations."  (*See* Exhibit 1 at 16).  Moreover, under Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), as the ABA Plan's named fiduciary, the Board of Trustees is required to discharge its duties with respect to the ABA Plan in the sole interest of its participants and beneficiaries and in accordance with the ABA Plan's governing documents.

### The ABA Plan Is an Aggregate of Single-Employer Pension Plans

13.    Congress enacted ERISA in 1974.  Effective October 1, 1976, the ABA Plan was amended to satisfy the requirements of ERISA.  After the ABA Plan became subject to ERISA, the effort to retain, to the extent possible, the terms of the ABA Plan as they existed prior to ERISA resulted in the creation of a rather unusual plan structure.  Since October 1, 1976, the ABA Plan has been administered as an aggregate of single-employer pension plans rather than a multiple employer pension plan.

14.    In a determination dated June 21, 1979, the PBGC approved the structure of the ABA Plan when it decided that the ABA Plan constituted an aggregate of separate pension plans for purposes of Title IV of ERISA (the "1979 Determination").  (A true and correct copy of the 1979 Determination is incorporated into the ABA Plan as Exhibit A).  *See* Exhibit 1 at Exhibit A.  While the ABA Plan has been amended and restated several times since the 1979 Determination, most recently on November 9, 2001, it has remained committed to the fundamental concept that the ABA Plan is an aggregate of single-employer plans rather than a plan to which more than one employer contributes.

15.    Section 13.01 of the ABA Plan specifically states that the ABA Plan is intended to be an aggregate of single-employer pension plans:

> 13.01    Association of Single-Employer Plans.  This Plan constitutes an association of single-employer plans designed to give the cost savings and other benefits of a tax-qualified plan, the administration in common of all associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants.  That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes . . . .  (*See* Exhibit 1 at 70).

16.    In the various Participation Agreements entered into by the Board of Trustees and the Participating Employers, the Participating Employers acknowledged that they accepted the ABA Plan to be an association of single-employer plans.

### Each Single-Employer Plan Is To Provide Funding for Its Own Employee-Participants

17.    Under the ABA Plan, as an aggregate of single-employer pension plans, each Participating Employer is a sponsor of a separate pension plan covering only its own employee-participants.  Each Participating Employer's contributions to the ABA Plan are to be used to fund only the benefits of its own employee-participants and each separate plan is administered in an aggregate fashion by the Board of Trustees for administrative convenience.

18.    Section 13.02 of the ABA Plan specifically states that contributions of each Participating Employer will be used only to provide benefits for its own employee-participants:

> 13.02   Each Single-Employer Plan to Provide Funds For Its Participants.  Subject to the Plan's actuarial assumptions that the stated contribution amounts will produce the stated benefit amounts, *it is the fundamental concept and intent of this Plan that the contributions of each separate employer will be used only to provide benefits for Participants (and Beneficiaries thereof) by reason of such Participants' employment by such employer; and only contributions by such employer will be used to provide benefits for such Participants (and Beneficiaries)*. (Emphasis supplied).  (*See* Exhibit 1 at 70).

19.    Under Section 7.02 of the ABA Plan, the Board of Trustees may terminate a Participating Employer's participation in the ABA Plan if the Participating Employer fails to submit the full amount of its agreed upon contributions to the Fund:

> 7.02   Contribution Delinquencies.  A Participating Employer's participation in the Plan may be terminated by the Board if the Participating Employer shall fail to pay such sums of money as shall have been agreed upon in the Participation Agreement between the Participating Employer and the Board in accordance with the rules of the Board for remitting such contributions." (*See* Exhibit 1 at 57).

**Sara Lee and the Board of Trustees Agree to Permit the**
**Transfer of Plan Assets to Sara Lee-Sponsored Pension Plan**

20.     In 2005, Sara Lee became interested in transferring certain of its employee-participants in the ABA Plan to the Consolidated Sara Lee Bakery Group Hourly Employees' Pension Plan (the "Sara Lee Bakery Plan"), which is a defined benefit pension plan sponsored by Sara Lee.

21.     In order to determine the efficacy of such a transfer, Sara Lee requested the Board of Trustees to calculate the portion of Sara Lee's assets in the ABA Plan attributable to the employee-participants to be transferred, in accordance with Section 4044 of ERISA, 29 U.S.C. § 1344.  In reply to Sara Lee's request, the Board of Trustees instructed the ABA Plan's actuary to determined the portion of the ABA Plan's assets that were attributable to Sara Lee (as a single-employer plan) and then from that amount determine the portion that would be attributable to the employee-participants Sara Lee was interested in transferring to the Sara Lee Bakery Plan.

22.     The ABA Plan's actuary calculated Sara Lee's total asset balance in the ABA Plan as of September 30, 2004, to be over $110.9 million, recognizing the aggregate nature of the ABA Plan and that Sara Lee's contributions to the ABA Plan were to be used only to provide benefits for Sara Lee's employee-participants.

23.     Based on the terms of the ABA Plan and the Board of Trustees' representation of the value of the assets of the ABA Plan attributable to Sara Lee, Sara Lee decided to proceed with the transfer and, effective as of August 30, 2005, Sara Lee, the ABA Plan and the Board of Trustees executed a Transfer Agreement (the "Transfer Agreement") (A true and correct copy of the Transfer Agreement is attached hereto as Exhibit 2).  Through this Transfer Agreement, the Board of Trustees agreed to transfer the amount of accrued benefits for each of Sara Lee's

employee-participants who were transferred to the Sara Lee Bakery Plan.  The Board of Trustees agreed to transfer $71 million to the Sara Lee Bakery Plan within 30 days of the execution of the Transfer Agreement, with any additional amounts attributable to the transferred employee-participants' accrued benefits to be transferred to the Sara Lee Bakery Plan at a later date.  To date, the Sara Lee Bakery Plan has received from the Board of Trustees and the ABA Plan only the initial $71 million transfer required by the Transfer Agreement.

24.     At the time it executed the Transfer Agreement, Sara Lee believed that the ABA Plan was being administered by the Board of Trustees as an aggregate of single-employer pension plans and not as a multiple employer pension plan, and that it had the right to request a transfer of any or all of its assets contributed and held in the ABA Plan.

25.     Sara Lee detrimentally relied on the ABA Plan's governing document and its Participation Agreement with the Board of Trustees, which documents unambiguously state that the ABA Plan was to be administered as an aggregate of single employer pension plans.

### The Board of Trustees Has Paid the Benefits for the Employee-Participants of Certain Participating Employers with the Contributions Attributable to Sara Lee and Other Participating Employers

26.     On or about June 17, 2005, the Board of Trustees approved a report by the ABA Plan's actuary related to the ABA Plan's financial status effective as of September 30, 2004 (the "2005 Plan Asset Report").  The 2005 Plan Asset Report listed, by Participating Employer, the contributions, administrative expenses, investment income, reallocations received due to terminated employers and fund balance for each Participating Employer.

27.     In the 2005 Plan Asset Report, the ABA Plan's actuary reported that four of the seven active Participating Employers maintained negative balances in the ABA Trust.  This

meant that the four Participating Employers' investment income and contributions paid to the ABA Trust were less than their administrative expenses and the amount of benefits the Board of Trustees paid to their respective employee-participants.

28.    In the 2005 Asset Balance Report, the ABA Plan's actuary also reported that Sara Lee maintained by far the greatest positive ABA Trust balance of any of the Participating Employers, as Sara Lee's asset balance was over $110.9 million—or over 90% of the ABA Trust's total balance of over $122.2 million.

29.    By permitting the four Participating Employers to maintain a negative ABA Trust balance as of October 1, 2004, the Board of Trustees used ABA Trust funds attributable to Sara Lee contributions (as well as the contributions of two other Participating Employers) to make benefit payments for the employee-participants of the four Participating Employers maintaining negative balances.

**The PBGC Reverses Its Position on the Nature of the ABA Plan**

30.    On or about June 24, 2005, the PBGC received a formal request to reconsider its 1979 Determination from one or more of the ABA Plan's Participating Employers that maintained negative account balances under the ABA Plan's trust.

31.    The PBGC provided the ABA Plan and any Participating Employer in the ABA Plan the opportunity to submit a position statement on the issue whether the ABA Plan is a multiple employer pension plan or an aggregate of single-employer pension plans.  The position statements were to be filed on or about November 1, 2005.  On information and belief, the PBGC ultimately received position statements from the ABA Plan as well as three Participating Employers in the ABA Plan, including Sara Lee.

32.     On August 8, 2006, the PBGC issued a determination completely reversing its 1979 Determination that the ABA Plan was an aggregate of single-employer pension plans under ERISA and stating its new position that the ABA Plan is, and always has been, a multiple-employer pension plan (the "2006 Determination").  (A true and correct copy of the August 8, 2006 determination letter is attached hereto as Exhibit 3).  In the 2006 Determination, the PBGC determined that, in its view, the ABA Plan has been consistently administered as a multiple employer pension plan notwithstanding the fact that the governing plan document specifically states that it is intended to be an aggregate of single-employer pension plans.

33.     Specifically, in the 2006 Determination, the PBGC failed to consider that the ABA Plan's governing document specifically provides that each Participating Employer's contributions to the ABA Plan are to be used only to provide benefits for their own employee-participants and not for the payment of benefits for other the employee-participants of other Participating Employers.  Further, the PBGC failed to recognize that since the ABA Plan's adoption, when Participating Employers ceased to contribute and thus terminated their participation in the ABA Plan, the vast majority of terminations were administered as standard single-employer plan terminations and not as withdrawals from a multiple employer plan.

34.     The PBGC also stated in the 2006 Determination that, due to the exigencies of the matter, its determination would be effective immediately upon its date of issuance and that there is no obligation for any party aggrieved by this determination to exhaust its administrative remedies with respect to the 2006 Determination, either by seeking reconsideration by the PBGC or by filing an administrative appeal.

35.    The PBGC's decision to make the 2006 Determination effective immediately essentially terminated the rights of any aggrieved party, including Sara Lee, to file an administrative appeal, which would permit the parties to more fully develop the factual record and for any aggrieved party to challenge the PBGC's findings administratively before resort to litigation in this Court.  Instead, to challenge the PBGC's 2006 Determination, Sara Lee is left without any other recourse but to file the instant complaint without proper factual development at the agency-level.

### CLAIMS FOR RELIEF

### COUNT I – Claim for Judicial Review of PBGC's 2006 Determination on Status of ABA Plan under ERISA Section 4003(f) against Defendant PBGC

36.    Sara Lee incorporates paragraphs 1 through 35 of this Second Amended Complaint as if fully set forth herein.

37.    In 2005, Sara Lee decided to transfer some of its employee-participants covered under the ABA Plan and their respective liabilities to a separate pension plan sponsored by Sara Lee.  Sara Lee made this decision based on the ABA Plan's governing document, which provides that the ABA Plan is an aggregate of single-employer pension plans and the representation made by the Board of Trustees of the portion of the ABA Plan attributable to Sara Lee's contributions.

38.    On August 8, 2006, the PBGC issued its 2006 Determination, in which it found the ABA Plan to be a multiple employer pension plan and rescinded its prior 1979 Determination, in which the PBGC concluded that the ABA Plan was an aggregate of single-employer pension plans under ERISA.

39.    ERISA Section 4003(f), 29 U.S.C. § 1303(f), permits any person or party who is a fiduciary, employer, contributing sponsor, member of a contributing sponsor's controlled group,

participant, or beneficiary, and is adversely affected by any action of the PBGC with respect to a plan in which such party has an interest, to bring an action against the PBGC for appropriate equitable relief in the appropriate court.

40.    Sara Lee brings this Second Amended Complaint against the PBGC under ERISA Section 4003(f), 29 U.S.C. § 1303(f), as a Participating Employer under the ABA Plan and on behalf of its employee-participants, which are participants in the ABA Plan.

41.    Sara Lee and its employee-participants are adversely affected by the PBGC's 2006 Determination because they relied on the ABA Plan's terms, which specifically state that the ABA Plan is an aggregate of single-employer pension plans, when it decided to transfer its employee-participants to the Sara Lee Bakery Plan.

42.    If the Court determines that the ABA Plan is a multiple employer pension plan, as the PBGC opines, Sara Lee will incur additional liabilities under the Sara Lee Bakery Plan for its employee-participants who were transferred out of the ABA Plan to the Sara Lee Bakery Plan (*i.e.*, the Sara Lee Bakery Plan and the benefits transferred from the ABA Plan will be significantly less funded than they should have been) and Sara Lee will also incur additional liabilities under the ABA Plan for Sara Lee employee-participants who remain in the ABA Plan but with less assets to fund their benefits.  Specifically, if the 2006 Determination is upheld, Sara Lee and other Participating Employers maintaining a positive balance in the ABA Plan trust will be required to fund the benefits for the employee-participants of other Participating Employers who maintain negative balances in the Plan.  Such a result is contrary to both the unambiguous terms of the ABA Plan's governing document as well as the terms of the Participation

Agreements each Participating Employer entered into upon commencing participation in the ABA Plan.

43.    This Second Amended Complaint is filed in an appropriate court under ERISA Section 4003(f), 29 U.S.C. § 1303, because the District of Columbia is an appropriate statutory venue and the ABA Plan's principal offices are located in the District of Columbia.

44.    Sara Lee seeks appropriate equitable relief from the Court in the form of a declaration and injunction reversing the PBGC's decision in the 2006 Determination that the ABA Plan is a multiple employer pension plan because that decision is arbitrary, capricious and incorrect as a matter of law.

45.    The PBGC's determination in the 2006 Determination should also be reversed as arbitrary, capricious and incorrect as a matter of law because the PBGC is subject to a conflict of interest, as the PBGC will receive a significant financial benefit as a result of its decision to reverse its 1979 Determination that the ABA Plan is an aggregate of single-employer pension plans, and the PBGC should not be permitted to reverse a determination after the fact when it becomes financially beneficial for the PBGC to do so.

**COUNT II – Claim for Enforcement of ABA Plan Terms and Transfer Agreement under ERISA Section 502(a)(3) against Defendants ABA Plan and Board of Trustees**

46.    Sara Lee incorporates paragraphs 1 through 45 of this Second Amended Complaint as if fully set forth herein.

47.    Sara Lee brings this claim under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms

of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

48.    Sara Lee brings this claim as a fiduciary of the ABA Plan and Participating Employer under Section 11.03 of the ABA Trust, which states:

> Participating Employers shall have the authority, either jointly or severally, to enforce this Trust on behalf of the persons having or claiming any interest in the Fund.  In any action or proceeding affecting the Fund or the administration thereof or for instructions to the Board, the Association and the Board shall be the only necessary parties, and no Participating Employer or employees or former employees of any Participating Employer or their beneficiaries or any other person having or claiming to have an interest in the Fund shall be entitled to any notice of process, and any judgement that may be entered in such action or proceeding shall be binding on all persons having or claiming to have any interest in the Fund.  (A copy of the ABA Trust is attached hereto as Exhibit 4).

49.    Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers.

50.    Sara Lee was one of only three active Participating Employers in the ABA Plan that maintained a positive balance in the ABA Trust as of October 1, 2004.

51.    Defendants ABA Plan and the Board of Trustees have violated the terms of Section 13.02 of the ABA Plan by using Sara Lee's contributions (and the contributions of two other Participating Employers maintaining positive ABA Trust balances) in the ABA Trust to pay the benefits and administrative expenses for employee-participants of other Participating Employers that maintain negative balances in the ABA Trust.

52.    Defendants ABA Plan and the Board of Trustees have also violated the terms of Section 2.02(h) of the ABA Plan by failing to enforce the ABA Plan in accordance with its terms.

53.    Defendants ABA Plan and the Board of Trustees therefore should be enjoined from continuing to violate the ABA Plan's terms and should be directed to require all Participating Employers to fulfill their benefit contribution requirements under the ABA Plan and their Participation Agreements and maintain positive balances in the ABA Trust so that their own contributions will be used to pay the benefits due to their respective employee-participants.

### COUNT III – In the Alternative, Claim for Breach of Fiduciary Duty under ERISA Section 502(a)(3) against Defendants ABA Plan and Board of Trustees

54.    Sara Lee incorporates paragraphs 1 through 53 of this Second Amended Complaint as if fully set forth herein.

55.    Sara Lee brings this breach of fiduciary duty claim under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

56.    Sara Lee brings this claim as a fiduciary of the ABA Plan and Participating Employer under Section 11.03 of the ABA Trust.

57.    Section 13.01 of the ABA Plan specifically states that the ABA Plan is to be administered as an aggregate of single-employer pension plans:

13.01    <u>Association of Single-Employer Plans.</u>    This Plan constitutes an association of single-employer plans designed to give the cost savings and other benefits of a tax-qualified prototype plan, the administration in common of all the associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants.  That the Plan is, and is to be treated as, "an aggregate or separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes (*see* Exhibit 1 at Exhibit A).

58.    Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers.

59.    Further, the termination provisions in Article XI of the ABA Plan provide that when a Participating Employer ceases contributing to the ABA Plan or terminates its business, the termination will be treated as a termination of a single-employer pension plan.  In addition, if the ABA Plan as a whole terminates, then each Participating Employer's portion of the ABA Plan will be treated as a termination of a single employer pension plan.  Put another way, when a single Participating Employer's plan terminates or the ABA Plan as whole terminates, each Participating Employer's contributions will be used to pay only the benefits of its own employee-participants and the Participating Employer will not suffer any withdrawal liability that would require the terminating Participating Employer to fund any benefits for the employee-participants of any other Participating Employer remaining in the ABA Plan.

60.    Section 2.01 of the ABA Plan states that the Board of Trustees is the Named Fiduciary of the ABA Plan and has the full authority and responsibility to administer the ABA Plan in accordance with the terms of the ABA Plan's governing plan document.

61.     In its 2006 Determination, the PBGC determined that the ABA Plan has always been administered as a multiple employer pension plan and not as an aggregate of single-employer pension plans.  *See* Exhibit 3.

62.     If the Court upholds and affirms the PBGC's 2006 determination that the ABA Plan is a multiple employer pension plan because it has been administered as a multiple employer pension plan and not as an aggregate of single-employer pension plans, Defendant Board of Trustees breached its fiduciary duties to Sara Lee and its employee-participants by failing to administer the ABA Plan according to its terms as an aggregate of single-employer pension plans and violated the terms of the various Participation Agreements entered into by the Board of Trustees and the Participating Employers.

63.     If the PBGC's 2006 Determination is upheld, the Board of Trustees' failure to administer the ABA Plan as an aggregate of single employer pension plans will have damaged Sara Lee in two distinct ways: (1) Sara Lee will be required to pay benefits for the employee-participants of other Participating Employers in the ABA Plan that maintain negative balances in the ABA Plan trust and have failed to fulfill their contribution requirements under the ABA Plan; and (2) the amount transferred from the ABA Plan to the Sara Lee Bakery Plan will be less than the amount required to be paid by the Board of Trustees under the Transfer Agreement, which will require Sara Lee to have made two contributions—one to the ABA Plan and another to the Sara Lee Bakery Plan—to pay the same accrued benefits for its employee-participants transferred from the ABA Plan to the Sara Lee Bakery Plan under the Transfer Agreement.

64.     If the ABA Plan is determined to be a multiple employer pension plan, Defendants ABA Plan and Board of Trustees should be required to make Sara Lee whole for any

and all liabilities it may incur or accrue due to its reliance on the ABA Plan's terms that the ABA Plan was an aggregate of single-employer pension plans, including but not limited to the amount of Sara Lee's contributions that will be used to pay the benefits for employee-participants of other Participating Employers.

**WHEREFORE**, Sara Lee Corporation, on its own behalf and on behalf of its employee-participants in the ABA Plan, requests that this Court:

## PRAYER FOR RELIEF UNDER COUNTS I AND II

(1)    declare the PBGC's August 8, 2006 determination that the ABA Plan is a multiple employer pension plan and not an aggregate of single-employer pension plans to be arbitrary, capricious and incorrect as a matter of law;

(2)    reverse the PBGC's August 8, 2006 determination and enjoin the PBGC from rescinding its 1979 Determination, in which it determined the ABA Plan to be an aggregate of single-employer pension plans;

(3)    declare that Defendants ABA Plan and Board of Trustees have violated the terms of Section 13.02 of the ABA Plan by using Sara Lee's contributions (and the contributions of two other Participating Employers maintaining positive ABA Trust balances) in the ABA Trust to pay the benefits for employee-participants of other Participating Employers that maintain negative balances in the ABA Trust;

(4)    declare that Defendants ABA Plan and Board of Trustees have violated the terms of Section 2.02(h) of the ABA Plan by failing to enforce the ABA Plan in accordance with its terms;

(5)    permanently enjoin Defendants ABA Plan and Board of Trustees from violating the unambiguous terms of the ABA Plan;

(6)    permanently enjoin Defendants ABA Plan and Board of Trustees to cease and desist from violating the ABA Plan's terms with respect to using Sara Lee's contributions (and the contributions of two other Participating Employers maintaining positive ABA Trust balances) in the ABA Trust to pay the benefits for employee-participants of other Participating Employers that maintain negative balances under the ABA Trust;

(7)    declare that Defendants ABA Plan and Board of Trustees be required to follow the terms of the Transfer Agreement and transfer all amounts required therein to be paid to the Sara Lee Bakery Plan;

(8)    enjoin Defendants ABA Plan and Board of Trustees to require them to fulfill the terms of the Transfer Agreement and transfer all ABA Plan assets requested by Sara Lee to the Sara Lee Bakery Plan;

(9)    award such other appropriate equitable relief under ERISA and further relief under 28 U.S.C. § 2202 as necessary to ensure that Defendants enforce the ABA Plan's unambiguous terms equally for all Participating Employers and Plan Participants and Beneficiaries;

(10)    award Sara Lee its attorneys' fees and court costs as a prevailing party under ERISA Section 502(g), 29 U.S.C. § 1132(g); and

(11)    award such other relief as may be appropriate.

## ALTERNATIVE PRAYER FOR RELIEF UNDER COUNT III

In the alternative, if the PBGC's 2006 Determination opining the ABA Plan to be a multiple employer pension plan is upheld by this Court, the Court should:

(1)     declare that Defendants ABA Plan and Board of Trustees have violated the terms of Section 13.01 of the ABA Plan by failing to administer the ABA Plan by its own terms, which state that the ABA Plan is to be administered as an aggregate of single-employer pension plans;

(2)     declare that Defendants ABA Plan and Board of Trustees have violated the terms of Section 2.01 of the ABA Plan by failing to administer the ABA Plan in accordance with its terms;

(3)     declare that Defendants ABA Plan and Board of Trustees breached their ERISA-based fiduciary duties to Sara Lee and its employee-participants by failing to administer the ABA Plan according to its terms as an aggregate of single-employer pension plans;

(4)     rescind the Transfer Agreement entered into between Sara Lee and Defendants ABA Plan and Board of Trustees and enjoin Defendants ABA Plan and Board of Trustees from enforcing any part of the Transfer Agreement;

(5)     award appropriate equitable relief to allow Sara Lee to return its employee-participants subject to the Transfer Agreement to the ABA Plan from the Sara Lee Bakery Plan;

(6)     award appropriate equitable relief to require Defendants ABA Plan and Board of Trustees to make Sara Lee whole for any losses or liabilities Sara Lee may accrue related to its transfer of employee-participants to the Sara Lee Bakery Plan;

(7)     create a constructive trust over ABA Plan assets for the benefit of Sara Lee to recover any losses or liabilities Sara Lee may accrue resulting from the breach of fiduciary duty

by Defendants ABA Plan and Board of Trustees in failing to administer the ABA Plan as an aggregate of single-employer pension plans, including any and all losses and liabilities Sara Lee may incur or accrue resulting from the transfer of employee-participants from the ABA Plan to the Sara Lee Bakery Plan;

(8)     award Sara Lee its attorneys' fees and court costs as a prevailing party under ERISA Section 502(g), 29 U.S.C. § 1132(g); and

(9)     award such other relief as may be appropriate.

Dated: September 29, 2006                    Respectfully submitted,

                                             SARA LEE CORPORATION

                            By:     /s/   Sarah E. Hancur
                                    One of Its Attorneys

M. Miller Baker (DC Bar No. 444736)
Sarah E. Hancur (DC Bar No. 480537)
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005-3096
Phone: 202.756.8000
Fax:    202.756.8087
Email: mbaker@mwe.com
        shancur@mwe.com

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois  60606
Phone: 312.372.2000
Fax:    312.984.7700
Email: mgraham@mwe.com