# AMERICAN BAKERS ASSOCIATION
# RETIREMENT PLAN
# TRANSFER AGREEMENT

      This Agreement ("Agreement") is made as of August 30, 2005 (the "Effective Date"), between Sara Lee Corporation ("SLC") and the Trustees under the American Bakers Association Retirement Plan and Trust (the "Trustees") on behalf of the American Bakers Association Retirement Plan and Trust (the "ABA Plan");

      WHEREAS, the ABA Plan is a defined benefit pension plan that is subject to Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and to which several unaffiliated employers make contributions as participating employers; and

      WHEREAS, SLC maintains the Consolidated Sara Lee Bakery Group Hourly Employees' Pension Plan (the "SLC Bakery Plan"); and

      WHEREAS, SLC and the Trustees have agreed that the liabilities under the ABA Plan with respect to the benefits for Transferred Participants (as defined below) as of December 31, 2004 (the "Transfer Date") will be transferred to and assumed by the SLC Bakery Plan, upon the transfer to the SLC Plan of assets from the ABA Plan in accordance with the terms and conditions herein and in accordance with the requirements of Treasury Regulation 1.414(l)-1(b)(5);

      NOW, THEREFORE, in consideration of the mutual promises, agreements and undertakings herein contained and other valuable consideration, the parties hereto mutually agree as follows:

      1.    <u>Transfer of Accrued Benefits.</u>  Effective as of the Transfer Date the accrued benefit of each Transferred Participant under the ABA Plan determined as of the Transfer Date in accordance with the terms of the ABA Plan and Treasury Regulation 1.414(l)-1(b)(5) (the "Transferred Accrued Benefits") shall be transferred to the SLC Bakery Plan.  For purposes of this Agreement, Transferred Participants shall mean (i) each non-union employee of SLC (or a subsidiary or affiliate of SLC) who, as of the Transfer Date, is an active participant in the ABA Plan with an accrued benefit and is on an active SLC payroll (including any employee on an approved leave of absence or receiving long or short-term disability benefits) (ii) each non-union employee of SLC (or a subsidiary or affiliate of SLC) who is a participant in the ABA Plan with an accrued benefit thereunder and who, as of the Transfer Date, is no longer an active participant in the ABA Plan but is on an active SLC payroll (including any employee on an approved leave of absence or receiving long or short-term disability benefits) and (iii) each other participant in the ABA Plan with an accrued benefit thereunder who is no longer actively employed by SLC (or a subsidiary or affiliate of SLC) but who was employed by SLC (including any subsidiary or affiliate of SLC and any predecessor company of SLC that maintained the ABA Plan, including but not limited to,

Campbell Taggart Corporation, Anheuser-Busch Corporation and Earthgrains, Inc.) and accrued benefits under the ABA Plan during such employment. Transferred Participants described above who are in pay status as of April 1, 2005 are referred to herein as the "Retired Transferred Participants" and the Transferred Participants described above who are not in pay status as of April, 2005 are referred to herein as the "Active Transferred Participants" Contingent upon the transfer of assets from the ABA Plan to the SLC Bakery Plan in accordance with this Agreement, the SLC Bakery Plan shall assume the liability and obligations of the ABA Plan for the Transferred Accrued Benefits and the ABA Plan shall have no further liability or obligations with respect to such benefits. The accrued benefit of each Transferred Participant under the SLC Bakery Plan immediately following the transfer shall equal his or her Transferred Accrued Benefit and in no event shall a Transferred Participant's accrued benefit under the SLC Bakery Plan at any time on or after the Transfer Date be less than the Transferred Participant's Transferred Accrued Benefit. Each Transferred Participant shall be entitled to credit under the SLC Bakery Plan for purposes of eligibility and vesting for all service that is recognized under the ABA Plan for such purposes.

2. **Transfer of ABA Plan Assets.** At the times and in the amounts specified below, the Trustees shall transfer or cause to be transferred the Asset Transfer Amount from the ABA Plan to the SLC Bakery Plan. The "Asset Transfer Amount" shall be determined as follows:

(i) SLC and the Trustees have agreed that as of September 30, 2004 the portion of the market value of the ABA Plan assets that is attributable to contributions made by SLC (or any subsidiary or affiliate of SLC) equaled $~~110,976,767.00~~ $108,456,816.00 (the "SLC Assets"). [initialed]

(ii) The Asset Transfer Amount shall equal the portion of the SLC Assets (adjusted as described below to the Transfer Date) that are allocated as of the Transfer Date to the Transferred Accrued Benefits as determined by the ABA Plan actuary in accordance with Section 4044 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The determination of the Asset Transfer Amount shall be certified by the ABA Plan actuary and shall be subject to review by SLC and the actuary for the SLC Bakery Plan.

(iii) After October 1, 2004 and through the Transfer Date, the SLC Assets shall be (a) increased by the amount of contributions made to the ABA Plan by SLC or any subsidiary or affiliate of SLC, (b) decreased by any benefit payments made by the ABA Plan to any participant who was a former employee of SLC (or any predecessor, subsidiary or affiliate of SLC) to the extent attributable to service with SLC or any predecessor, subsidiary or affiliate of SLC (c) decreased by any ABA Plan administrative expenses properly allocable to the SLC Assets to the extent that the Trustees determine, or have heretofore determined, consistent with their fiduciary duties under ERISA, that such expense may be paid from the assets of the ABA Plan, and (d) adjusted to reflect realized and unrealized investment

experience under the ABA Plan. The Plan Actuary shall then allocate said SLC Assets as provided in (ii) next above to determine the Asset Transfer Amount as of the Transfer Date. All expenses allocable to the Asset Transfer or to effect the requirements of this Agreement shall be paid by SLC to the extent not paid by the ABA Plan (and allocated to the Transferred Assets).

(iv) On and after the Transfer Date, the Asset Transfer Amount as determined under (iii) next above shall be (a) increased by the amount of contributions made to the ABA Plan by SLC (or by any subsidiary or affiliate of SLC) that are attributable to the Transferred Accrued Benefits, (b) decreased by any benefit payments made by the ABA Plan to any Transferred Participant after the Transfer Date to the extent attributable to service with SLC or any subsidiary or affiliate of SLC and included in the Transferred Accrued Benefits (c) decreased by any ABA Plan administrative expenses properly allocable to the SLC Assets to the extent that the Trustees determine, consistent with their fiduciary duties under ERISA that such expense may be paid from the assets of the ABA Plan, and (d) adjusted to reflect any realized or unrealized investment experience under the ABA Plan. (with respect to the portion of the Asset Transfer Amount that remains in the ABA Plan).

(v) The Trustees shall furnish to SLC at SLC's expense detailed accountings of the asset adjustments required under this provision which accountings shall be conclusive except as to any item or adjustment as to which SLC files with the Trustees written exceptions or objections within thirty days after receipt of the detailed accounting. Any dispute as to any item or adjustment that can not be resolved by SLC and the Trustees within sixty (60) days shall be referred to an independent third party mutually acceptable to SLC and the Trustees whose final determination of the disputed item or adjustment shall be binding on SLC and the Trustees. The costs of the independent third party shall be borne by the SLC (and paid directly by SLC or charged against the Asset Transfer Amount).

As soon as practical (but not later than 30 days) after the Effective Date the Trustees shall transfer or cause to be transferred seventy-one million dollars, ($71,000,000.00) (the "Initial Transfer Amount) from the ABA Plan to the SLC Bakery Plan As soon as practical (but later than 300 days ) after December 1, 2005, the Trustees shall transfer or cause to be transferred an amount equal to the Asset Transfer Amount (adjusted as provided in (iv) above through the transfer date) less the Initial Transfer Amount from the ABA Plan to the SLC Bakery Plan. Each transfer required under this provision shall be in cash, cash equivalents or as otherwise agreed to in writing by SLC and the Trustees and shall be made to The Northern Trust Company as trustee under the SLC Bakery Plan..

In the event that the Trustees determine that any ABA Plan assets transferred or to be transferred to the SLC Bakery Plan should not be or have been transferred to the SLC Bakery Plan and such determination is supported by substantial legal authority, or in the case of an error in calculation, (1) SLC agrees to take such action as may be necessary to cause any amounts transferred to the SLC Bakery Plan in excess of those permitted pursuant to its determination to be returned to the ABA Plan after assuring itself that such transfer is permissible under applicable law and after adjusting any amount for investment experience

under the SLC Bakery Plan (2), any failure by the Trustees to cause the transfer of any ABA Plan assets in excess of those permitted pursuant to its determination shall not be deemed to be a breach of this Agreement and the Trustees shall not be obligated to incur any fees or costs in defense of any action to compel the transfer of such assets

.

3. <u>Transfer of Recordkeeping Responsibilities</u>. Until April 1, 2005 (the "Initial Administrative Transfer Date") the ABA Plan shall retain all administrative and recordkeeping responsibilities for all Active Transferred Participants including, but not limited to, the responsibility for maintaining and updating census data (including credited and vesting service data for the period between January 1, 2005 and the Administrative Transfer Date notwithstanding the absence of weekly contributions on behalf of such Active Transferred Participants). Effective on the Initial Administrative Transfer Date, the SLC Bakery Plan shall assume all recordkeeping responsibility for Active Transferred Participants and the Trustees shall have all ABA Plan records pertaining to the Active Transferred Participants transferred to Mercer HR Services in Dallas, Texas as administrator under the SLC Bakery Plan ("Mercer"). Until July 1, 2005 or such later date as SLC and the Trustees may agree to in writing (the "Final Administrative Transfer Date") the ABA Plan shall retain all administrative and recordkeeping responsibilities for all Retired Transferred Participants including, but not limited to the processing and properly reporting and recording of all benefits payments. Effective on the Final Administrative Transfer Date, the SLC Bakery Plan shall assume all recordkeeping responsibility for Retired Transferred Participants and the Trustees shall have all ABA Plan records pertaining to the Inactive Transferred Participants transferred to Mercer. The transfer of ABA Plan records for all Transferred Participants shall be in electronic file format (Excel format) or such other media acceptable to Mercer and the Trustees and shall include all information necessary for Mercer to (i) calculate and pay each Transferred Participant's Transferred Accrued Benefit and calculate any additional service accruals or credits for purposes of the SLC Bakery Plan from January 1, 2005 through the Administrative Transfer Date and (ii) determine their rights to receive benefits, including the Transferred Accrued Benefit under the ABA Plan. Until the Final Administrative Transfer Date, the ABA Plan shall continue to process and make benefit payments with respect to any Retired Transferred Participant The ABA Plan shall not be required to compute or calculate benefits based on any service accruals in the SLC Bakery Plan . Effective on the Final Administrative Transfer Date, the SLC Bakery Plan shall assume responsibility for the payment of benefits for all Retired Transferred Participants. and thereafter the ABA Plan shall have no further liability for such benefit payments or any related administrative obligations or claims, including benefit determinations.

5. <u>SLC Bakery Plan Representations.</u> SLC represents and warrants that, as of the Transfer Date, and through July 1, 2005, the SLC Bakery Plan (i) complies and will comply in form and operation with the provisions of Section 401(a) of the Internal Revenue Code or 1986, as amended (the "Code") and the trust associated with the SLC Bakery Plan

shall be exempt from taxation under Section 501(a) of the Code; (ii) has received a favorable determination letter from the Internal Revenue Service as to the tax-qualification of the SLC Bakery Plan, and the tax-exempt status of said related trust under the Code, and that nothing has occurred since the date of the last determination letter which resulted in or is likely to result in the revocation of such determination; (iii) contains a provision for accepting assets and liabilities, including all benefit obligations, transferred from the ABA Plan. SLC further represents and warrants that (iv) the SLC Bakery Plan shall provide that each Transferred Participant will receive a benefit immediately after the transfer that is equal to or greater than the benefit he or she would have been entitled to receive immediately before the transfer if the ABA Plan had then terminated; (v) as of the Transfer Date it has filed the required forms for approval of the Transfer contemplated hereunder with the Pension Benefit Guaranty Corporation and IRS and (vi) subsequent to the Transfer Date it shall comply with the minimum funding requirements of ERISA with respect to the ABA Plan on behalf of its employees who continue to participate in the ABA Plan.

6. <u>ABA Plan Representations</u>. The Trustees represent and warrant that, (i) the SLC Asset figure has been independently audited and certified; (ii) through the Administrative Transfer Date, the ABA Plan shall comply in form and operation with the provisions of Section 401(a) of the Code and the trust associated with the ABA Plan shall be exempt from taxation under Section 501(a) of the Code; (iii) the ABA Plan has received a favorable determination letter from the Internal Revenue Service as to the tax-qualification of the ABA Plan, and the tax-exempt status of said related trust under the Code, and that nothing has occurred since the date of the last determination letter which resulted in or is likely to result in the revocation of such determination; (iv) the ABA Plan contains a provision at Plan Section 10.02, "Merger With Other Plans," for transferring assets and liabilities from the ABA Plan to the SLC Bakery Plan and (v) that the Transferred Accrued Benefits have been calculated accurately and consistent with the ABA Plan document and the nature of the ABA Plan as an association of single employer plans under the existing PBGC letter dated 1979 and IRS favorable determination letters.

7. <u>Release of Obligations</u>. Effective upon completion of the transfers required by this Agreement, SLC and each of its subsidiaries and affiliates shall have no liability or obligation with respect to contributions to the ABA Plan for any Transferred Participant. In addition, upon completion of the transfers required by this Agreement, the Trustees and the ABA Plan shall have no liability or obligation with respect to the Transferred Participants and the Transferred Accrued Benefits. SLC shall indemnify the Trustees and the ABA Plan against any benefit claim asserted by or with respect to the Transferred Participants after July 1, 2005 and against any claims brought by any regulatory body arising out of the transfer. or SLC's or the Bakery Plan's post-Transfer operation of a retirement plan for former ABA participants. Nothing herein shall affect the benefit or contribution obligations of the parties with respect to the SLC employees not transferred who remain in the ABA Plan.

8. <u>Cooperation; Filings</u>. SLC and the Trustees agree to cooperate and use reasonable efforts to accomplish the transactions set forth herein and to comply with all

requirements of ERISA, the Code, the Internal Revenue Service, the Pension Benefit Guaranty Corporation and the Department of Labor which may be applicable to the transfer contemplated hereby. Before any transfer is made pursuant to this Agreement, SLC and the Trustees will use commercially reasonable efforts to agree upon which additional documents or portions of documents shall be provided to each other to demonstrate that the SLC Bakery Plan and the ABA Plan comply with applicable law.

9. <u>Notices</u>. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed to have been given (i) when hand delivered (including delivery by messenger or courier service) to the address set forth below, or if such delivery is refused, when such delivery is refused, (ii) when received or refused as evidenced by the postal receipt if sent by United States mail as Certified Mail, Return Receipt Requested, with proper postage prepaid, addressed as set forth below:

| If to SLC: | If to ABA Plan: |
|---|---|
| Mark Jacobs | Anne H.S. Fraser, Esq., |
| Sara Lee Corporation | 1320 19th Street, N.W., Suite 200, |
| Three First National Plaza | Washington, DC 20036-1637 |
| Chicago, IL 60602 | |

10. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts and by different parties hereto in separate counterparts, with the same effect as if all parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together and shall constitute one and the same document.

11. <u>Headings</u>. The headings of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part hereof.

12. <u>Governing Law</u>. This Agreement shall be construed in accordance with, and governed by, the internal laws (and not the laws of conflicts) of the State of Illinois, except to the extent the Internal Revenue Code and/or ERISA applies, governs and controls.

13. <u>Assignment</u>. Neither party hereto shall assign this Agreement or any interest herein or any rights hereunder without the written consent of the other party. This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their successors and permitted assigns and beneficiaries, including Alternate Payees. Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any person (other than the parties and successors and assigns permitted by this Section 13) any rights, remedy or claim by reason of this Agreement.

14. <u>Modifications</u>. No revision or modification of this Agreement shall be effective unless it is in writing and signed by an authorized representative of each of the parties.

15. <u>Waiver</u>. Failure or delay on the part of either party to exercise any right, remedy, power, privilege or option hereunder which is not subject to an express time limitation with respect to exercise shall not operate or be construed to operate as a waiver thereof. A waiver, to be effective, must be in writing and be signed by the party making the waiver. No written waiver of any term or condition of this Agreement shall operate or be construed to operate as a waiver of any other term or condition, nor shall any written waiver of any breach or default operate or be construed to operate as a waiver of any other breach or default or of the same type of breach or default on a subsequent occasion or operate or be construed to operate as a continuing waiver.

16. <u>Severability</u>. If any provision of this Agreement should be held invalid or unenforceable by any court of competent jurisdiction, such provision shall be deemed deleted, and the validity and enforceability of the remaining provisions shall not be affected thereby, unless the deletion of any such provision materially affects any right, benefit, privilege or option of either party, in which case, the parties agree to renegotiate in good faith such provision and replace it with a substitute valid and enforceable provision that achieves the intent and purpose of the deleted provision.

17. <u>Authorship.</u> SLC and the Trustees agree that the terms and language of this Agreement were the result of negotiations between them and, as a result, there shall be no presumption that any ambiguities in this Agreement shall be resolved against either party. Any controversy over construction of this Agreement shall be decided without regard to events of authorship or negotiation.

18. <u>Entire Agreement</u>. This Agreement, together with the Schedule hereto, constitutes the final expression of the agreement of the parties with respect to the subject matter hereof, is intended as a complete and exclusive statement of the terms of such agreement, and supersedes all prior and concurrent promises, proposals, representations, negotiations, communications, letters, discussions and agreements that may have been made in connection with the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the date first above written.

| SARA LEE CORPORATION | AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN |
|---|---|
| By: *Mark Jacobs* | *Robb MacKie* |
| Name: Mark Jacobs | Robb MacKie |
| Title: VP Global Benefits | President & Secretary |
| | AS TRUSTEES |