**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SARA LEE CORPORATION, on its own behalf and on behalf of its employee-participants in the American Bakers Association Retirement Plan, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 06-CV-0819-HHK |
| AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of The American Bakers Association Retirement Plan | ) ) ) ) ) ) | Hon. Henry H. Kennedy, Jr. |
| and | ) ) | |
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS AMERICAN BAKERS ASSOCIATION
RETIREMENT PLAN'S AND BOARD OF TRUSTEES'
MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS COUNTS II AND III
OF THE SECOND AMENDED COMPLAINT**

Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
Edward R. Mackiewicz (D.C. Bar # 944884)
Ryan T. Jenny (D.C. Bar # 495863)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902

Anne H.S. Fraser (D.C. Bar # 349472)
Law Office of Anne H.S. Fraser, P.C.
1320 19th Street, N.W., Suite 200
Washington, DC 20036-1637
Tel: (202) 466-4009
Fax: (202) 466-4010

**Attorneys for Defendants American Bakers Association Retirement Plan and Board of
Trustees of the American Bakers Association Retirement Plan**

November 14, 2006

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), defendants American Bakers Association Retirement Plan (the "Plan" or "ABA Plan") and the Plan's Board of Trustees (the "Board") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Counts II and III of Plaintiff Sara Lee Corporation's Second Amended Complaint ("SAC").

The Plan is a defined benefit pension plan under the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), to which several participating employers, including Sara Lee Corporation ("Sara Lee" or "Plaintiff"), contribute. Since ERISA became effective in 1976, the Plan has been operated and regarded by the Board and participating employers as a single plan for purposes of Titles I and II of the statute. The question in this case is whether the Plan is a multiple employer plan or an aggregate of single employer plans for Pension Benefit Guaranty Corporation ("PBGC") plan termination and premium purposes under Title IV.

Relying on a 1979 PBGC determination letter ("1979 PBGC Letter"), and Plan terms that incorporated that letter, Plaintiff contends that the Plan is an aggregate of single employer plans for Title IV purposes, and therefore contributions attributable to Sara Lee may be used to provide benefits only to Sara Lee employee-participants. Based on this theory, in August 2005 Sara Lee entered into a Transfer Agreement with the Board under which the liabilities associated with the vested benefits of certain of Sara Lee's employee-participants, as well as the assets attributable to such benefits, were transferred to a separate Consolidated Sara Lee Bakery Group Hourly Employees' Pension Plan (the "Sara Lee Bakery Plan") sponsored by Plaintiff. If the ABA Plan is an aggregate of single employer plans under Title IV, additional Plan assets may be

transferable to the Sara Lee Bakery Plan under the Transfer Agreement. But if the Plan is a multiple employer plan, such assets must be used for the benefit of all participants and beneficiaries in the Plan, and no further assets are transferable to the Sara Lee Bakery Plan. On August 8, 2006, PBGC revoked its 1979 Letter and held that the Plan is and always has been a multiple employer plan under Title IV. Plaintiff seeks reversal of this "2006 PBGC Letter" in Count I, which is asserted against co-defendant PBGC only.

Plaintiff's SAC asserts against Defendants two claims under section 502(a)(3) of ERISA. Count II alleges that Defendants have used Plan assets attributable to Sara Lee to provide pension benefits to all Plan participants, rather than only Sara Lee employees, and thereby violated the terms of the Plan incorporating the 1979 PBGC Letter. Count II seeks an order (1) declaring that Defendants violated the Plan in this manner and enjoining them from doing so, (2) compelling Defendants to seek additional contributions from other participating employers whose alleged Plan accounts are under-funded, and (3) compelling Defendants to transfer additional Plan assets to the Sara Lee Bakery Plan pursuant to the Transfer Agreement.

In Count III, Plaintiff asserts that if this Court affirms PBGC's recent determination that the Plan is a multiple employer plan, Defendants breached their fiduciary duties by operating it as such a plan. The relief sought by Count III is (1) monetary relief to make *Sara Lee* whole by means of either a constructive trust on the Plan's assets or by some other unexplained means purportedly allowable under ERISA § 502(a)(3), (2) rescission of the Transfer Agreement entered into between Sara Lee and the Board, and (3) declarations that Defendants breached their ERISA duties and violated the Plan's terms.

Counts II and III should be dismissed for the following reasons:

(1) Plaintiff lacks ERISA statutory standing and this Court lacks subject matter

jurisdiction over both Counts II and III because neither the facts alleged in the SAC nor the terms of the Plan demonstrate that Plaintiff is a Plan fiduciary entitled to bring this action under ERISA. Plaintiff's status as a participating employer is not sufficient to meet ERISA's standing or jurisdictional mandates, as employers are not an "enumerated party" under the statute's exclusive list of persons authorized to bring ERISA actions.

(2) Because the PBGC has revoked the 1979 PBGC Letter, the authority upon which Count II relies has been eliminated. Unless the 2006 PBGC Letter is reversed as requested in Count I, Plaintiff can prove no set of facts in support of Count II that would entitle it to relief. Therefore, should this Court dismiss Count I, Count II should also be dismissed under Rule 12(b)(6). Furthermore, Count II must be dismissed, in any event, to the extent it seeks an order compelling Defendants to pay money to the Sara Lee Bakery Plan pursuant to the Transfer Agreement because the imposition of liability for a contractual obligation to pay money is legal relief not authorized by ERISA § 502(a)(3).

(3) Count III should be dismissed because Defendants bore no fiduciary duties under ERISA to Sara Lee; the monetary relief sought for Sara Lee cannot be awarded under ERISA § 502(a)(3); Sara Lee has stated no cognizable grounds for rescission of its Transfer Agreement with the Board; and the declaratory relief that Sara Lee seeks is not equitable relief under ERISA § 502(a)(3) and, as it is the only relief sought on behalf of the participants, should also be denied as an empty and futile gesture.

## FACTUAL BACKGROUND

### A.    Nature of the Plan and the 1979 PBGC Letter.

The Plan is a defined benefit pension plan that was established in 1961 for the benefit of certain employees of various unrelated employer members of the American Bakers Association

("ABA"), including Sara Lee. (SAC ¶¶ 1, 7, 10). The Plan is governed by, *inter alia,* ERISA

and the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 1, *et seq.* (SAC ¶¶ 1, 13; ABA

Plan ¶¶ 2.05, 2.06, 12.05).[1] The Board is the Plan's named fiduciary, "and as such has the full

authority and responsibility under the ABA Plan to control and manage the ABA Plan's

operation and administration, and under the terms of the American Bakers Association

Retirement Trust (the "ABA Trust")[2] to manage and control the ABA Plan's assets held in the

ABA Trust." (SAC ¶¶ 8, 11; *see also* ABA Plan at p. 9, Art. II, ¶ 8.01).

The underlying dispute in this lawsuit involves the nature of the Plan for PBGC plan

termination and premium purposes (Title IV of ERISA). The Plan was designed as an

aggregation of single employer plans for PBGC termination purposes but was operated as a

single plan for other purposes. (SAC ¶¶ 7, 10, 11, 13, 14; *see also* ABA Plan). In fact, in 1979

the Plan secured a determination from the PBGC that the Plan was an aggregation of single

employer plans and not a multiple employer plan for plan termination and PBGC premium

purposes. (SAC ¶¶ 14, 32; ABA Plan Ex. A; SAC Ex. 3). The Plan's documents were amended

to incorporate this principle, and the 1979 PBGC Letter was attached to the Plan as Exhibit A.

(SAC ¶¶ 14, 15). The Plan, however, acknowledged that application of the 1979 PBGC Letter

and the related Plan provisions of Article XIII were dependant upon continued permission of the

government agencies concerned, stating: "Notice is also hereby given that if any governmental

agency will not permit the concept and provisions of Article XIII and the opinion in Exhibit A to

remain substantially as set forth therein, this Plan will have been so radically altered that it will

---

[1] The ABA Plan document, entitled American Bakers Association Retirement Plan 2002 Restatement, and the 1979 PBGC Letter which is attached as Exhibit A thereto, are attached to the SAC at Exhibit 1. (SAC ¶¶ 11, 14).

[2] The ABA Trust, entitled Amendment and Restatement of the American Bakers Association Retirement Trust, is attached at Exhibit 4 to the SAC. (SAC ¶ 48).

have to be terminated or substantially revised."  (ABA Plan at 1976 Preface).

    In June 2005 it was determined that when the Plan's financial condition was examined on a "separate account" (*i.e.*, a separate employer) basis, four of the seven remaining participating employers had "negative account balances."  (SAC ¶¶ 26, 27).  On the same separate employer basis, it was determined that Sara Lee had the largest positive balance of any contributing employer to the Plan.  (SAC ¶ 28).  Sara Lee thereafter decided to transfer certain of its employees covered by the Plan to a separate pension plan that it sponsored – the Sara Lee Bakery Plan – together with accrued benefits and assets associated with those employees.  (SAC ¶¶ 20, 23).  This was effectuated pursuant to the "Transfer Agreement."  (SAC ¶ 23; SAC Ex. 2).[3]  Under that Agreement, the Board initially transferred $71 million to the Sara Lee Bakery Plan, an amount calculated as if the Plan were a multiple employer plan.  (SAC ¶ 23). Additional assets – representing assets attributable to Sara Lee if the Plan were treated as an aggregate of single employer plans – were to be transferred unless the Board found otherwise and its "determination [was] supported by substantial legal authority."  (SAC Ex. 2 ¶ 2(v)).  The "Transferred Accrued Benefits" in the Transfer Agreement had been calculated "consistent with the ABA Plan document and *the nature of the ABA Plan as an association of single employer plans under the existing PBGC letter dated 1979*."  (SAC Ex. 2 ¶ 6) (emphasis added); *see also* SAC ¶¶ 21, 22.

    **B.**    **The 2006 PBGC Letter.**

    In late June 2005, Interstate Bakeries Corporation ("IBC") and Kettering Baking ("Kettering") made a formal request to the PBGC that the agency reconsider its 1979

---

[3] The Transfer Agreement, entitled American Bakers Association Retirement Plan Transfer Agreement, is attached at Exhibit 2 to the SAC.  (SAC ¶ 23).

determination that the Plan is an aggregation of single employer plans for PBGC plan termination purposes.  (SAC Ex. 3 at 1, 2, 11; SAC ¶ 30).  In their request, they argued that the Plan should be treated as a multiple employer plan for all purposes.  (SAC Ex. 3 at 1, 2, 11).  In response to this reconsideration request, the Plan and Sara Lee, among others, provided to the agency submissions stating their respective positions.  (SAC Ex. 3 at 4; SAC ¶ 31).  The Plan and Sara Lee argued that the Plan is in an aggregation of single employer plans for plan termination purposes and has operated as such in accordance with the 1979 PBGC Letter.  (SAC Ex. 3 at 2, 4, 8, 9, 11).

On August 8, 2006, the PBGC issued its determination.[4]  (SAC Ex. 3; SAC ¶ 32).  The PBGC reversed its prior position, concluding the Plan is, and has always been, a multiple employer plan and not an aggregation of single employer plans for plan termination and PBGC premium purposes.  (SAC Ex. 3 at *passim*; SAC ¶ 32).  The PBGC made its determination effective immediately upon the date of its issuance.  (SAC Ex. 3 at 17; SAC ¶ 34).

The effect of this 2006 PBGC Letter is that the second payment of Plan assets to the Sara Lee Bakery Plan contemplated under the Transfer Agreement is in doubt because arguably the assets now must be used to fund the benefits of all Plan participants, and not just those employed by Sara Lee.  (SAC ¶¶ 42, 63; *see also* SAC Ex. 2 ¶¶ 2(v), 6; SAC ¶¶ 21-25).

C.    **The Present Lawsuit.**

On May 3, 2006, Sara Lee commenced this action against Defendants, and on May 10, 2006, filed its First Amended Complaint (Doc. 4).  On September 29, 2006, Plaintiff filed its SAC (Doc. 12).  The SAC added PBGC as a defendant and asserts, in Count I, a claim against the agency seeking "to reverse and enjoin the PBGC's August 8, 2006 determination that the

_____

[4] The 2006 PBGC Letter is attached at Exhibit 3 to the SAC.  (SAC ¶ 32).

ABA Plan is a multiple employer pension plan and not an aggregate of single-employer pension plans." (SAC ¶ 1; *see also* ¶¶ 37-45).

Plaintiff has asserted two claims against Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (SAC ¶¶ 47, 55). Plaintiff brings these claims, purportedly on behalf of itself and its employee-participants in the Plan, in its capacity as a participating employer and "functional fiduciary" of the Plan. (SAC preamble & ¶¶ 1, 6, 48, 56).

In Count II, Plaintiff seeks a declaration that the Plan and its Board of Trustees have violated the Plan's terms by not operating as an aggregation of single employer plans as provided in the Plan and in accordance with the 1979 PBGC Letter by using assets attributable to contributions of participating employers with positive account balances to pay the benefits of employees of participating employers with negative account balances. (*See, e.g.*, SAC ¶¶ 51-53, Count II Prayer for Relief ¶¶ 3, 4). Sara Lee also seeks an order prohibiting the Plan and its trustees from such further violation of the Plan's terms, compelling Defendants to seek additional contributions from other participating employers whose alleged single employer plan accounts are under-funded, and compelling Defendants to transfer additional Plan assets to the Sara Lee Bakery Plan pursuant to the Transfer Agreement. (SAC ¶ 53, Count II Prayer for Relief ¶¶ 5-8).

In Count III, Plaintiff asserts a breach of fiduciary duty claim under ERISA § 502(a)(3) seeking monetary relief *for itself* in the event this Court upholds the 2006 PBGC Letter. (SAC ¶¶ 1, 55, 62-64; Count III Prayer for Relief at ¶¶ 6, 7). Plaintiff argues that if this Court affirms the agency's determination that the Plan is a multiple employer plan, Defendants breached their fiduciary duties by operating it as such a plan. (SAC ¶¶ 1, 62). The relief sought by Count III is (1) monetary relief to make *Sara Lee* whole by means of either a constructive trust on the Plan's assets or by some other unexplained means purportedly allowable under ERISA § 502(a)(3);

(2) rescission of Sara Lee's and the Board's Transfer Agreement and the reinstatement as participants in the Plan those Sara Lee employee-participants who have withdrawn from the Plan and become participants in the Sara Lee Bakery Plan; and (3) declarations that Defendants breached their ERISA duties and violated the Plan's terms, which is the only relief purportedly sought under Count III on behalf of the Sara Lee employee-participants.  (SAC ¶¶ 63, 64; Count III Prayer for Relief).

## ARGUMENT

### A.    Standards of Review.

#### 1.    Fed. R. Civ. P. 12(b)(1) Standard.

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also GMC v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").  Because "subject-matter jurisdiction is 'an Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (*quoting Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction by a preponderance of the evidence.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Does v. Bush*, 2006 U.S. Dist. LEXIS 79175, *12 (D.D.C. Oct. 31, 2006); *Kinard v. United States DOJ*, 2006 U.S. Dist. LEXIS 43410, *5 (D.D.C. June 27, 2006).  The court may dismiss a complaint for lack of subject matter jurisdiction if "'it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), *vacated on other grounds*, 542 U.S. 155 (2004).

Because subject matter jurisdiction focuses on the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2.    Fed. R. Civ. P. 12(b)(6) Standard.

The court may dismiss a complaint for failure to state a claim pursuant to Rule 12(b)(6) if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While the court must accept all well-pled allegations of fact, allegations that are overbroad and unsupported by specific factual averments are insufficient to state a claim. *Hartline v. Sheet Metal Worker's Nat'l Pension Fund*, 134 F. Supp. 2d 1, 8 (D.D.C. 2000), *aff'd*, 286 F.3d 598 (D.C. Cir. 2002). The court also need not accept as true the plaintiff's legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). Nor need the court accept unsupported assertions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. *Miree v. De Kalb County*,

433 U.S. 25, 27 (1977); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In addition, the court need not assume the existence of facts that would eliminate a defense.

*Hartline*, 134 F. Supp. 2d at 8.  The court may consider the allegations of the complaint,

documents attached to or specifically referred to in the complaint, matters of which the court

may take judicial notice, and matters of public record.  *Id.*; *EEOC v. St. Francis Xavier*

*Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v.*

*Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

> **B.**     **Counts II & III Must be Dismissed for Lack of Standing and Subject Matter Jurisdiction Because Plaintiff is a "Non-Enumerated Party" Under ERISA.**

Plaintiff asserts two bases for its standing to bring an ERISA § 502(a)(3) claim on its own

behalf and on behalf of its employee-participants; namely, (1) as a fiduciary of the Plan, and

(2) as a participating employer in the Plan.  (SAC ¶¶ 1, 6, 48, 56).  But Plaintiff cannot establish

its standing or the subject matter jurisdiction of this Court on either of these bases.  The SAC sets

forth no facts showing that Plaintiff is a Plan fiduciary, and the Plan document does not support

such an allegation.  Plaintiff's status as a participating employer also is insufficient because

employers are not among the classes of persons allowed to bring section 502(a)(3) claims under

the express terms of ERISA.  As a "non-enumerated party" under the statute, Plaintiff has no

standing to assert a claim on its own behalf *or* on a representational basis on behalf of its

employee-participants.  Furthermore, as an employer and not a union, Plaintiff is not in fact a

representative of its employee-participants even for purposes of Article III standing.

Section 502 of ERISA enumerates those classes of persons who may bring an ERISA

civil action.  29 U.S.C. § 1132.  Under the subsection under which Plaintiff brings suit, section

502(a)(3) (*see* SAC ¶¶ 47, 55), only plan participants, beneficiaries, and fiduciaries have

standing to assert an action.  29 U.S.C. § 1132(a)(3).  Section 502(e)(1) likewise restricts the

federal courts' subject matter jurisdiction to suits brought by these persons and the Secretary of Labor. 29 U.S.C. § 1132(e)(1). These statutory lists are "exclusive." *Systems Council EM-3 v. AT&T Corp.*, 972 F. Supp. 21, 27 (D.D.C. 1997), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998) (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983) (ERISA "does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action"); *and Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71 (D.C. Cir. 1987)); *see also Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1288-89 (5th Cir. 1988) (adhering to a "literal construction" of Congress' enumeration of the parties that may bring civil actions under ERISA); *Crown Cork & Seal Co. v. Teamsters Pension Fund*, 549 F. Supp. 307, 310 n.3, 311 (E.D. Pa. 1982), *aff'd mem.*, 720 F.2d 661 (3d Cir. 1983) ("Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) (1976) clearly restricts the categories of individuals empowered to bring a civil action to four groups of persons").

The allegations in the SAC are insufficient to show Plaintiff is a Plan fiduciary.[5] On its face, the SAC fails to assert any basis to conclude that Plaintiff has *any* discretionary authority or responsibility over the management or administration of the Plan or its assets. Sara Lee's assertion that it is a fiduciary is merely conclusory and insufficient to preclude dismissal on standing and jurisdictional grounds. *Trs. of the Sheet Metal Workers Prod. Workers Welfare Fund v. Southbay Air Sys., LLC*, 2006 U.S. Dist. LEXIS 66944, *15 (E.D.N.Y. Sept. 19, 2006) (dismissing employer's ERISA § 502(a)(3) claim because "there are no allegations in the [Complaint] upon which this Court could conclude that the [employer] is a fiduciary with ERISA

---

[5] Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

standing"); *Sanofi-Synthelabo Inc. v. Eastman Kodak Co.*, 2000 U.S. Dist. LEXIS 15676, *10 (S.D.N.Y. Oct. 27, 2000) (dismissing ERISA claims by employer-plan sponsor whose complaint "has not pleaded any facts to demonstrate that it is a fiduciary," but only alleged that it had undertaken to appoint a trustee and financial advisors to manage the plan assets); *McDermott Food Brokers, Inc. v. Kessler*, 899 F. Supp. 928, 932 (N.D.N.Y. 1995) (remanding to state court because plaintiff employer did not have standing as a fiduciary for purposes of the ERISA claims asserted on the face of the complaint); *Bernard Food Indus. v. Heatherton Staff Leasing*, 1994 U.S. Dist. LEXIS 4941, *5, 9 (N.D. Ill. Apr. 15, 1994) (granting motion to dismiss where "the complaint's allegations indicate no 'fiduciary' activities on the part of" the employer-plaintiff). The factual allegations in the SAC show only that Plaintiff is a participating employer in the Plan, and this is "patently insufficient to render it a 'fiduciary.'" *County, Mun. Emples. Supervisors & Foreman's Union Local No. 1001 v. Laborers' Pension Fund*, 240 F. Supp. 2d 827, 831-32 (N.D. Ill. 2003) (union that brought suit as participating employer in multiemployer plan was not a fiduciary and lacked standing); *Healthtek Solutions, Inc. v. Fortis Bens. Ins. Co.*, 274 F. Supp. 2d 767, 775-76 (E.D. Va. 2003) (employer-plan sponsor was not a fiduciary with ERISA standing where insurance company, and not employer, bore the discretionary authority over plan).

The Plan document also does not show that Plaintiff had any fiduciary responsibility or authority.  In fact, Plaintiff admits that under the Plan it is the Plan's "Board of Trustees [that] has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund."  (SAC ¶ 11; *see also* ¶ 8).  Since Plaintiff bears no discretionary authority required to render it a fiduciary under the Plan, its claims should be dismissed in their entirety. *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross &*

*Blue Shield of Kan., Inc.*, 361 F. Supp. 2d 1280, 1287-89 (D. Kan. 2005) (dismissing employer's ERISA claims for lack of standing because plan document showed employer was a fiduciary for only a narrow purpose unrelated to its claims and it lacked fiduciary standing to assert its claims); *Healthtek*, 274 F. Supp. 2d at 775-76.

Plaintiff also cannot assert standing based on its participating employer status. Because they are non-enumerated parties on the ERISA section 502(a) and 502(e)(1) lists, employers do not have standing to assert ERISA Title I breach of fiduciary duty claims *qua* employers and the federal courts lack jurisdiction over their claims. *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71 (D.C. Cir. 1987) (affirming dismissal of breach of fiduciary duty claims brought by employer against multiemployer plan and its trustees for lack of standing); *Tuvia Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Employees*, 717 F.2d 726, 729-30 (2d Cir. 1983) (holding that employer did not have standing under ERISA § 1132); *Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 891-93 (2d Cir. 1983) (ERISA § 1132(e)(1) viewed as exclusive jurisdictional grant, thus excluding suits by employers); *Healthtek*, 274 F. Supp. 2d at 775 n.2 ("Any argument that an employer has standing to sue under ERISA based on their status as an employer must fail. . . . The Court of Appeals for the Fourth Circuit and every other circuit court to address the question [except the Ninth] have held that employers must fit into one of the enumerated categories in order to have standing."); *County, Mun. Emples.*, 240 F. Supp. 2d at 831-32 (although union was participating employer in multiemployer plan, it lacked standing to assert ERISA claims).

Nor does Plaintiff's employer status give it the ability to claim representational standing on behalf of its employee-participants because it must *itself* fall into one of ERISA's enumerated classes, *i.e.*, as a fiduciary, but does not for the reasons stated above. *Systems Council EM-3 v.*

*AT&T Corp.*, 972 F. Supp. 21, 27-28 (D.D.C. 1997), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998) (holding ERISA does not allow representational standing by non-enumerated party). In any event, Plaintiff cannot argue that it is a representative of its employees even for purposes of Article III standing, much less ERISA statutory standing purposes, because it is its employee-participants' *employer* and not their union. *County, Mun. Emples.*, 240 F. Supp. 2d at 831 (union that asserted ERISA action as an employer could not prove representational standing).

While Plaintiff apparently believes that the ABA Trust gives it the authority to bring these claims (SAC ¶¶ 48, 56), any such terms inconsistent with Congress's delineation in ERISA of the scope of this Court's jurisdiction and the parties having standing to sue are void. "The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case *and cannot be waived or otherwise conferred upon the court by the parties*. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (*quoting Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951)) (internal footnotes omitted, citations omitted, and emphasis added); *see also Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) ("Because subject-matter jurisdiction is an Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.").

For all these reasons, Plaintiff's Counts II and III should be dismissed for lack of subject matter jurisdiction and standing pursuant to Rules 12(b)(1) and 12(b)(6).

**C.**     **<u>Count II Does Not State a Claim Because the Authorities Upon Which it Relies Have Been Eliminated by the PBGC's Recent Determination and, Alternatively, Plaintiff Cannot Seek Payment Under the Transfer Agreement Under ERISA § 502(a)(3).</u>**

Count II is based entirely upon a 1979 letter from the PBGC determining that the "Plan

constituted an aggregate of separate pension plans for purposes of Title IV of ERISA," and

provisions of the Plan that incorporated that determination. (SAC ¶ 14). But three months after

Plaintiff initiated this action, the PBGC issued a new determination revoking its 1979 Letter and

holding that the Plan is a multiple employer plan for all purposes. (SAC Ex. 3). The authorities

upon which Plaintiff relies having been eliminated by this intervening event, it is beyond doubt

that unless the 2006 PBGC Letter is reversed by this Court as requested in Count I Plaintiff can

prove no set of facts in support of its claim that would entitle it to relief. As such, if this Court

dismisses Count I, Count II should also be dismissed pursuant to Rule 12(b)(6). *See, e.g.*,

*Stewart v. Nat'l Educ. Ass'n*, 404 F. Supp. 2d 122, 133-34 (D.D.C. 2005) (dismissing ERISA

claims pursuant to Rule 12(b)(6) where plan documents relied upon in complaint did not support

claim for relief); *Hartline*, 134 F. Supp. 2d at 8 (allegations that are overbroad and unsupported

by specific factual averments are insufficient to state a claim upon which relief may be granted).

     In the alternative, that portion of Count II that seeks transfer of Plan assets to the Sara

Lee Bakery Plan under the terms of the Transfer Agreement (*see* Count II Prayer for Relief Nos.

7 & 8) must be dismissed because Plaintiff cannot seek this non-equitable relief under ERISA

§ 502(a)(3).[6] The Supreme Court has flatly held that the imposition of liability for a contractual

obligation to pay money is legal relief not authorized by § 502(a)(3). *Great-West Life & Annuity*

*Ins. Co. v. Knudson*, 534 U.S. 204, 210-11 (2002) (holding, "an injunction to compel the

---

     [6] Section 502(a)(3) authorizes a civil action: "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). The equitable relief allowed under Section 502(a)(3) has been narrowly construed. The Supreme Court has held "that the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity" and that it "will not attempt to adjust the 'carefully crafted and detailed enforcement scheme' embodied in the text [of ERISA] that Congress has adopted." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 221 (2002) (*quoting Mertens v. Hewitt Associates*, 508 U.S. 248, 254, 256 (1993)).

payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity"). For this reason, Count II must be dismissed to the extent it seeks such relief, regardless of this Court's resolution of the Plan's status as a multiple employer plan or aggregate of single employer plans.

### D.    Count III Must be Dismissed Because Defendants Bore No Fiduciary Duty to Sara Lee and None of the Relief Requested May be Awarded.

Count III asserts an ERISA § 502(a)(3) breach of fiduciary duty claim against Defendants on behalf of Sara Lee, and purportedly on behalf of its employee-participants as well. In fact, the only relief sought on behalf of the participants is a hollow declaration that Defendants breached their duties. The crux of the requested relief is money payable *to Sara Lee* and rescission of the Transfer Agreement entered into *between Sara Lee and the Board*. Even apart from its lack of standing noted above, any claim brought on behalf of Sara Lee necessarily fails as a matter of law because Defendants owed *no* ERISA fiduciary duties to it. With regard to any claim brought on behalf of the participants, this should be dismissed as well because the declaration sought is not equitable relief under ERISA § 502(a)(3) and, as it is the only relief sought on behalf of the participants, it should also be denied as an empty and futile gesture. Furthermore, in the alternative, the monetary relief sought for Sara Lee cannot be awarded under ERISA § 502(a)(3) and Sara Lee has articulated no cognizable grounds for rescission of its Transfer Agreement with the Board.

1.    Count III must be dismissed because Defendants bore no fiduciary duty to Sara Lee.

Plaintiff alleges that by operating the Plan as a multiple employer plan for Title IV purposes, Defendants breached a fiduciary duty owed under ERISA *to Plaintiff*. The short answer to this question is that under ERISA's fiduciary duty provision, ERISA § 404(a)(1), fiduciary duties are owed *solely* to participants and beneficiaries of a plan, and not to employers.

29 U.S.C. § 1104(a)(1) (stating, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). For this reason, when a participating employer in a multi-employer plan claimed that the plan owed it a fiduciary duty under ERISA, this Court rejected the claim, holding: "**Pension Funds have no fiduciary duty to employers.**" *Nat'l Shopmen Pension Fund v. Burtman Iron Works, Inc.*, 148 F. Supp. 2d 60, 67 (D.D.C. 2001) (emphasis added) (*citing Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113, 119 (3d Cir. 1988); *and Alton Mem'l Hosp. v. Metro. Life Ins. Co.*, 656 F.2d 245, 249 (7th Cir. 1981)); *cf.* Section B, *supra*, and cases cited therein showing employers do not have standing to bring ERISA claims. Thus, Plaintiff cannot state a claim that Defendants breached a fiduciary duty to it.

  2. <u>The monetary relief requested cannot be awarded under ERISA § 502(a)(3).</u>

  Even if, *arguendo*, Plaintiff has standing to assert this claim and can state a claim that Defendants breached a fiduciary duty to it, it cannot be awarded the monetary relief it seeks under ERISA § 502(a)(3). Turning first to the moneys sought from the Plan, Plaintiff cannot receive monetary relief from the Plan by means of a constructive trust on the Plan's assets. Monetary relief is allowed under ERISA § 502(a)(3) only in the form of equitable restitution "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. . . . Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213-14. Plaintiff cannot obtain monetary relief from the Plan under ERISA § 502(a)(3) for three reasons.

  First, the SAC, on its face, makes no claim for restitution. Instead, Plaintiff seeks

damages for an alleged breach of fiduciary duty.  (*See, e.g.*, Count III Prayer for Relief No. 7).

Under *Great-West*, this relief is not allowed under ERISA § 502(a)(3).

Second, in the alternative, even if Plaintiff were to allege that it seeks restitution, it

cannot establish that such restitution is "equitable restitution" under *Great-West*.  Plaintiff simply

cannot show that any Plan assets belong "in good conscience" *to Plaintiff*.  The assets of the Plan

"belong" only to the participants and beneficiaries of the Plan and may be used only for the

"exclusive purpose" of providing them benefits.  29 U.S.C. § 1104(a).  Plaintiff does not dispute

this fact with an allegation that it made erroneous contributions to which it is personally entitled,

which under the Plan's terms would be refundable within one year after payment to the Trust.

(ABA Plan ¶ 7.07).[7]

Third, under the very premise of Count III, there are no Plan assets "traceable" to

Plaintiff.  Sara Lee asserts Count III only in the event that this Court holds the Plan to be a

multiple employer plan, and not an aggregate of single employer plans.  However, the Plan's

assets are commingled in a single trust – there are no separate accounts for each participating

---

[7] The Plan and Trust documents further reinforce the principle that Plan assets cannot be diverted to a participating employer under the facts presented, *i.e.*, where "satisfaction of all liabilities to Participants and Beneficiaries" has not been accomplished and where the Plan and Trust are not being terminated.  (ABA Plan ¶ 8.02; Trust ¶ 9.02).

Paragraph 8.02 of the Plan states: "<u>Diversion Impossible</u>.  It shall be impossible at any time prior to satisfaction of *all liabilities to Participants and Beneficiaries* for any part of the Fund to revert to the Participating Employers, or to be used for, or diverted to, any purpose other than the *exclusive benefit of such Participants and Beneficiaries*.  Only after such satisfaction may recovery be had to the extent of any surplus existing because of an actuarial error." (Emphasis added).

Paragraph 9.02 of the Trust states: <u>No Assets to be Returned to Employers</u>.  In no event shall any assets be returned to any Participating Employer, *except that upon the termination of the Plan and this Trust* any assets attributable to the contributions of such Participating Employer which remain in the Fund after, and only after, the satisfaction of *all liabilities to persons entitled to benefits from the Fund* pursuant to the Plan by reason of the participation of such Participating Employer, may be returned to such Participating Employer."  (Emphasis added).

- 18 -

employer in such a multiple employer plan. Plaintiff thus does not claim "particular funds" traceable to it but seeks to assert an action at law to impose personal liability on the Plan for a sum of money. In short, Plaintiff cannot achieve with slight-of-hand in Count III what it fails to achieve directly in Count II – a holding that the Plan holds segregated funds payable only to it. For all these reasons, the monetary relief Plaintiff seeks from the Plan cannot be awarded under ERISA § 502(a)(3).

To the extent Plaintiff is seeking monetary damages from the Board for its alleged breach of fiduciary duty in the vague Prayer for Relief number 6, such relief is likewise not available because it is not "equitable" within the meaning of ERISA § 502(a)(3). *Great-West*, 534 U.S. 204. Monetary relief in the form of restitution may be considered equitable only if it "seek[s] not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214; *see also Sereboff v. Mid Atl. Med. Servs., Inc.,* 126 S. Ct. 1869 (2006); *LaRue v. Dewolff, Boberg & Assocs., Inc.*, 458 F.3d 359, 362 (4th Cir. 2006); *Callery v. United States Life Ins. Co.*, 392 F.3d 401 (10th Cir. 2004). Here, the SAC does not allege that there are any "particular funds or property in the [Board members'] possession" (*Great-West,* 534 U.S. at 213-14) upon which the Court could place a constructive trust. Instead, "the requested monetary relief is in the nature of legal relief because it seeks to impose personal liability on the defendant, is measured by the plaintiffs' loss, and does not involve traceable funds that belong to the plaintiff and are being unlawfully held by the defendant." *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005). Accordingly, Plaintiff's claim for monetary relief from the Board is in the nature of an action at law to impose personal liability on its members, which cannot be asserted under ERISA § 502(a)(3). *Great-West*, 534 U.S. at 221.

3.    <u>Plaintiff cannot seek rescission of the Transfer Agreement under Count III.</u>

Plaintiff confusingly requests rescission of the Transfer Agreement as a form of relief for the breach of fiduciary duty alleged in Count III.  (Count III Prayer for Relief ¶¶ 4-5).  But no nexus between the alleged fiduciary breach and Plaintiff's potential damages under that contract is presented in the Complaint, and the Transfer Agreement provides that the assets that are claimed as damages would not be transferred to Sara Lee if the PBGC reversed the 1979 Letter.  Plaintiff consequently bore the risk of loss.  Rescission is therefore not "appropriate" relief under ERISA § 502(a)(3) for the breach alleged in Count III.

Under the facts alleged in the SAC, Plaintiff cannot establish that the alleged breach of fiduciary duty is the cause of any damages Sara Lee may bear under the Transfer Agreement.  Rather, the cause was Plaintiff's own intervening decision to negotiate and enter into a contract under which it assumed the risk that it could bear additional benefits obligations if it withdrew its employee-participants from the Plan and made them participants in the Sara Lee Bakery Plan.  Plaintiff entered into the Transfer Agreement on August 30, 2005, more than two months *after* IBC and Kettering made a formal request to the PBGC to revoke its 1979 determination that the Plan is an aggregation of single employer plans.  (SAC ¶¶ 23, 30).  The Transfer Agreement explicitly states that the accrued benefits were calculated with the assumption that the Plan was an aggregate of single employer plans, in accordance with the 1979 PBGC Letter.  (SAC Ex. 2 ¶ 6).  The Transfer Agreement therefore provided for two payments to the Sara Lee Bakery Plan, the first of the $71 million that was payable regardless of the ABA Plan's status under Title IV, and a subsequent second payment that could be forfeited if the Board had "substantial legal authority" for doing so, *i.e.*, if the PBGC reversed its 1979 Letter.  (SAC Ex. 2 ¶ 2(v)).  The PBGC did so.  Plaintiff's insertion of the Transfer Agreement into this claim is therefore nothing

but an attempt to nullify the terms of a contract it entered into knowingly in the hope that certain future events would not materialize. That Plaintiff's prediction was incorrect does not provide grounds for rescission. *Harbor Ins. Co. v. Stokes*, 45 F.3d 499, 501-03 (D.C. Cir. 1995) (where plaintiff settled lawsuit based upon prediction that court would not enter a judgment quickly, but court entered judgment the day before the settlement, unbeknownst to the parties, the plaintiff "bore the risk" and rescission of the settlement was denied). In short, Plaintiff cannot challenge the contract it insisted upon by incongruously attaching a request for rescission to its breach of fiduciary duty claim.

For all these reasons, rescission cannot be awarded under Count III.

4.    <u>The remaining relief requested under Count III cannot be awarded.</u>

The only relief that Plaintiff seeks on behalf of its employee-participants is a declaration that Defendants breached their fiduciary duty. "Such a declaration, in the absence of any other accompanying meaningful and tangible relief the Court can award, would be an empty and futile gesture." *Ramsey v. Formica Corp.*, 2006 U.S. Dist. LEXIS 966, *14 n.2, *16 (S.D. Ohio Jan. 5, 2006) (granting motion to dismiss ERISA claims); *see also Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1137 (D.C. Cir. 1989) (holding, "Inasmuch as the grant of declaratory relief would . . . constitute a hollow exercise, we affirm the District Court's dismissal of claims under [ERISA] section 1133."). Because Plaintiff cannot obtain any "meaningful and tangible relief" under Count III, for the reasons stated above, this Court should dismiss Count III to the extent it seeks declaratory relief. *Id.*

Similarly, the declaration Plaintiff seeks must also be denied because it is not an equitable form of relief under ERISA § 502(a)(3). *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 2004 U.S. Dist. LEXIS 26070 (S.D.N.Y. Dec. 28, 2004), *aff'd*, 173 Fed. Appx. 936

(2d Cir. 2006). As in *Yoon*, "Plaintiff's prayer for declaratory relief is merely a prelude to a claim for damages." 2004 U.S. Dist. LEXIS 26070 at *44. As the Second Circuit observed, such claims are "inherently legal rather than equitable in nature." 173 Fed. Appx. at 941; *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (Court distinguished between equitable and declaratory relief, asserting that the plaintiffs could not have sued for declaratory relief under § 502(a)(3) because the declaration they sought "was merely a prelude to a request for damages"). Like *Yoon*, the court in *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002, 1024-26 (S.D. Ohio 2006), recently dismissed the claims asserted under ERISA § 502(a)(3) in their entirety where the plaintiffs argued their claims should survive to the extent they sought a declaration (as well as other relief such as an injunction against future fiduciary breaches and a constructive trust). The *Cardinal* court correctly held: "though Plaintiffs try to mask their requested relief as equitable, in truth, it is nothing more than 'compensatory damages': monetary relief for the losses their plan sustained as a result of the alleged breach of fiduciary duties." 424 F. Supp. 2d at 1026. This Court should likewise reject Plaintiff's attempt to "mask" its requested relief in this manner, in an ineffectual attempt to get around *Great-West*, and should dismiss the claims for a declaration brought under ERISA § 502(a)(3).

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the claims asserted against them in Counts II and III of Plaintiff's Second Amended Complaint be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: November 14, 2006                Respectfully submitted,

                                        STEPTOE & JOHNSON LLP

                                        /s/ Paul J. Ondrasik, Jr.
                                        Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
                                        Edward R. Mackiewicz (D.C. Bar # 944884)
                                        Ryan T. Jenny (D.C. Bar # 495863)
                                        1330 Connecticut Avenue, N.W.
                                        Washington, DC  20036-1795
                                        Tel:  (202) 429-3000
                                        Fax:  (202) 429-3902

                                        LAW OFFICE OF ANNE H.S. FRASER, P.C.
                                        Anne H.S. Fraser (D.C. Bar # 349472)
                                        1320 19th Street, N.W., Suite 200
                                        Washington, DC  20036-1637
                                        Tel:  (202) 466-4009
                                        Fax:  (202) 466-4010

                                        **Counsel for Defendants American Bakers
                                        Association Retirement Plan and Board of
                                        Trustees of the American Bakers Association
                                        Retirement Plan**

## <u>CERTIFICATE OF SERVICE</u>

      I, Edward R. Mackiewicz, an attorney of record, deposes and states that copies of the attached *Defendants American Bakers Association Retirement Plan's and Board of Trustees' Memorandum in Support of their Motion to Dismiss Counts II and III of the Second Amended Complaint*, *Motion to Dismiss Counts II and III of the Second Amended Complaint*, and the *Proposed Order*, have been served on Tuesday, November 14, 2006, as indicated on the attached service list.

                                    /s/  Edward R. Mackiewicz _____

<u>**SERVICE LIST**</u>

*VIA ELECTRONIC FILING:*

M. Miller Baker
Sarah E. Hancur
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005-3096

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606

**Attorneys for Plaintiff Sara Lee Corp.**


*As Defendant Pension Benefit Guaranty Corporation has not yet made an appearance in this matter, the following individuals have been served on behalf of Defendant Pension Benefit Guaranty Corporation with a copy of this Motion VIA CERTIFIED MAIL:*

Vincent K. Snowbarger
Acting Executive Director
Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, DC  20005

Alberto R. Gonzalez
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC  20530-0001

Civil Process Clerk
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, DC  20530

**On behalf of Defendant Pension Benefit Guaranty Corporation**