STEPTOE & JOHNSON LLP
Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
Edward R. Mackiewicz (D.C. Bar # 944884)
Ryan T. Jenny (D.C. Bar # 495863)
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Tel:  (202) 429-3000
Fax: (202) 429-3902

LAW OFFICE OF ANNE H. S. FRASER, P.C.
Anne H. S. Fraser (D.C. Bar # 349472)
1320 19th Street, N.W., Suite 200
Washington, DC  20036-1637
Tel:  (202) 466-4009
Fax: (202) 466-4010
**Counsel for Defendants/Third Party Plaintiffs/**
**Counterclaimants/Cross-Claimants,**
**American Bakers Association Retirement Plan**
**and Board of Trustees of the American Bakers**
**Association Retirement Plan**


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SARA LEE CORPORATION, on its own** | ) | |
| **behalf and on behalf of its** | ) | |
| **employee-participants in the American** | ) | |
| **Bakers Association Retirement Plan**, | ) | |
| Three First National Plaza | ) | |
| Chicago, Illinois  60602-4260 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06-CV-0819-HHK |
| v. | ) | Hon. Henry H. Kennedy, Jr. |
| | ) | |
| **AMERICAN BAKERS ASSOCIATION** | ) | THIRD-PARTY COMPLAINT FOR |
| **RETIREMENT PLAN; and BOARD OF** | ) | DECLARATORY AND INJUNCTIVE |
| **TRUSTEES OF THE AMERICAN** | ) | RELIEF |
| **BAKERS ASSOCIATION RETIREMENT** | ) | (Fed. R. Civ. P. 14(a)), |
| **PLAN, as Administrator of The American** | ) | COUNTERCLAIM |
| **Bakers Association Retirement Plan**, | ) | (Fed. R. Civ. P. 13(a)), and |
| 1300 Eye Street, N.W., Ste. 700 West | ) | CROSS-CLAIM |
| Washington, D.C.  20005 | ) | (Fed. R. Civ. P. 13(g)) |
| | ) | |
| and | ) | |

PENSION BENEFIT GUARANTY )
CORPORATION, )
1200 K Street, N.W. )
Washington, D.C. 20005 )
                                               )
                                  Defendants.  )
_____)
                                               )
AMERICAN BAKERS ASSOCIATION )
RETIREMENT PLAN; and BOARD OF )
TRUSTEES OF THE AMERICAN )
BAKERS ASSOCIATION RETIREMENT )
PLAN, as Administrator of The American )
Bakers Association Retirement Plan, )
                                               )
            Third Party Plaintiffs, )
Counterclaimants, and Cross-Claimants, )
                                               )
                         v. )
                                               )
SARA LEE CORP., )
                                               )
                              Respondent, )
                                               )
PENSION BENEFIT GUARANTY )
CORPORATION, )
                                               )
                         Cross-Defendant, )
                                               )
            and )
                                               )
KETTERING BAKING CO. )
729 Coleman Avenue )
Fairmont, WV  26554 )
                                               )
INTERSTATE BRANDS CORP. )
12 E. Armour Blvd. )
Kansas City, MO  64111-1202 )
                                               )
LEWIS BROS. BAKERIES, INC. )
500 N. Fulton Avenue )
Evansville, IN  47710 )
                                               )
HARRIS BAKING CO., INC. )
2301 S. 1st Street )

Rogers, AR  72758-6416                          )
                                                )
**AMERICAN BAKERS ASSOCIATION**                 )
1300 Eye Street, N.W.                           )
Suite 700 West                                  )
Washington, DC 20005                            )
                                                )
         and                                    )
                                                )
**JENNY LEE BAKERY, INC.**                      )
620 Island Avenue                               )
McKees Rock, PA  15136                          )
                                                )
         Third-Party Defendants.                )
                                                )
_____)

## AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND BOARD OF TRUSTEES' THIRD PARTY COMPLAINT AGAINST INTERSTATE BAKERIES CORPORATION, HARRIS BAKING COMPANY, KETTERING BAKING COMPANY, JENNY LEE BAKERY, INC., LEWIS BROTHERS BAKING COMPANY, AND AMERICAN BAKERS ASSOCIATION; COUNTERCLAIM AGAINST SARA LEE CORPORATION; AND CROSS-CLAIM AGAINST PENSION BENEFIT GUARANTY CORPORATION FOR DECLARATORY AND INJUNCTIVE RELIEF

Defendants American Bakers Association Retirement Plan (the "ABA Plan" or "Plan") and the Board of Trustees of the ABA Plan:  Robb MacKie, Steven Gebben, Byron Magafas, Charles Wellard, and Edwin Gladbach ("Trustees") (collectively, the "ABA Plan Defendants"), by and through counsel and on their own behalf and on behalf of the Plan's participants and beneficiaries, pursuant to Fed. R. Civ. P. 14(a), 13(a) and 13(g), assert this third party complaint, counterclaim, and cross-claim for declaratory and injunctive relief against Interstate Bakeries Corporation, Harris Baking Company, Kettering Baking Company, Jenny Lee Bakery, Inc., Lewis Brothers Baking Company, American Bakers Association (collectively, the "Third Party Defendants"), Plaintiff Sara Lee Corporation, and Co-Defendant Pension Benefit Guaranty Corporation, and, upon information and belief, state as follows:

**Nature of the Action**

1.      Sara Lee Corporation ("Sara Lee") initiated this action for declaratory and injunctive relief against the ABA Plan Defendants and Defendant Pension Benefit Guaranty Corporation ("PBGC").  Count I of the Second Amended Complaint is asserted solely against Defendant PBGC and seeks judicial review of PBGC's August 8, 2006, letter determination (the "2006 PBGC Letter") that the ABA Plan is a "multiple employer" pension plan under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").  Counts II and III are asserted against the ABA Plan Defendants.  Count II alleges that the ABA Plan Defendants have used Plan assets attributable to Sara Lee to provide pension benefits to all Plan participants rather than only Sara Lee employees, and has thereby violated the terms of the Plan incorporating an earlier determination by the PBGC that the ABA Plan is an "aggregation of single employer plans" for ERISA Title IV purposes (the "1979 PBGC Letter").  Count III asserts that if the Court affirms PBGC's recent determination that that Plan is a multiple employer plan, the ABA Plan Defendants breached their fiduciary duties by operating it as such a plan.

2.      In Count I of its Third Party Complaint, Counterclaim and Cross-Claim, the ABA Plan Defendants seek declaratory and injunctive relief from this Court, ruling on whether the Plan is indeed a "multiple employer" plan pursuant to the 2006 PBGC Letter, or whether it is instead an "aggregation of single-employer plans" pursuant to the 1979 PBGC Letter and the terms of the Plan documents.  As the Plan is underfunded, this determination affects the allocation of Plan assets as among the seven Participating Employers, and constitutes an actual case or controversy.

3.     In addition, in Count II of its Cross-Claim against Co-Defendant PBGC, the ABA Plan Defendants seek review of the 2006 PBGC Letter, which was issued on the basis of erroneous and incomplete facts, and was the result of a procedurally flawed inquiry by PBGC.

4.     Count I is brought by the ABA Plan and its Trustees, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and 28 U.S.C. § 2201 against Plaintiff Sara Lee, the Third Party Defendants, and Co-Defendant PBGC.

5.     Count II is brought by the ABA Plan and its Trustees, pursuant to Section 4003(f)(1) of ERISA, 29 U.S.C. § 1303(f)(1), against Co-Defendant PBGC for violation of their procedural due process rights under the Fifth Amendment of the Constitution.  U.S. Const. amend. V.

## Jurisdiction and Venue

6.     This Court has subject matter jurisdiction over this action pursuant to ERISA §§ 4003(f)(1), (2) and (6), 29 U.S.C. §§ 1303(f)(1), (2) and (6); ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); and 28 U.S.C. § 1331.

7.     This Court has personal jurisdiction over all of the Third-Party Defendants pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

8.     Venue is exclusive to the District of Columbia pursuant to ERISA § 4003(f)(2), 29 U.S.C. § 1303(f)(2), and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## Parties

9.     The Plan is a "defined benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The Plan is administered in the District of Columbia, and has its principal office there. The Plan is funded and operated through the medium of a single trust, the American

Bakers Association Retirement Trust, (the "Trust") (attached to the Second Amended Complaint ("SAC") as Exhibit 4).

10.    The Board of Trustees is the Plan's named fiduciary pursuant to Section 2.01 of the Trust, and as defined by ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2). The Trustees are also responsible for the administration and management of the Plan.  The Trust is an Illinois trust, and was established by the American Bakers Association in 1961.  The Trust provides for the establishment of the ABA Plan and governance of the Plan and Trust by the Board of Trustees. The Trust and the Plan are administered in Washington D.C.  The Chairman of the Board of Trustees is also located in Washington D.C. and maintains his principal place of business there.

11.    As the named fiduciaries, the Trustees are the proper parties to bring suit on behalf of the Plan and Trust and its participants and beneficiaries.

12.    Plaintiff Sara Lee is incorporated in the State of Maryland and has its principal place of business in Chicago, Illinois.  Sara Lee is a "Participating Employer" in the ABA Plan. As a Participating Employer, Sara Lee contributes to the ABA Plan on behalf of its eligible employee-participants.

13.    Third-Party Defendant Interstate Bakeries Corporation ("IBC") is incorporated in the State of Delaware and has its principal place of business in Kansas City, Missouri.  IBC is a Participating Employer in the ABA Plan.  As a Participating Employer, IBC contributes to the ABA Plan on behalf of its eligible employee-participants.

14.    Third-Party Defendant Harris Baking Company is incorporated in the State of Missouri and has its principal place of business in Rogers, Arkansas.  Harris Baking Company is a Participating Employer in the ABA Plan.  As a Participating Employer, Harris Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

15.    Third-Party Defendant Jenny Lee Bakery, Inc. is incorporated in the State of Pennsylvania and has its principal place of business in McKees Rock, Pennsylvania. Jenny Lee Bakery, Inc. is a Participating Employer in the ABA Plan. As a Participating Employer, Jenny Lee contributes to the ABA Plan on behalf of its eligible employee-participants.

16.    Third-Party Defendant Kettering Baking Company is incorporated in the State of West Virginia and has its principal place of business in Fairmont, West Virginia. Kettering Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Kettering Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

17.    Third-Party Defendant Lewis Brothers Baking Company is incorporated in the State of Illinois and has its principal place of business in Evansville, Indiana. Lewis Brothers Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Lewis Brothers Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

18.    Third-Party Defendant American Bakers Association is incorporated in the State of Illinois and has its principal place of business in Washington, D.C. American Bakers Association is a Participating Employer in the ABA Plan. As a Participating Employer, American Bakers Association contributes to the ABA Plan on behalf of its eligible employee-participants.

19.    Co-Defendant PBGC is a government corporation established by ERISA § 4002, 29 U.S.C. § 1302, within the U.S. Department of Labor. PBGC administers the plan termination insurance program under Title IV of ERISA and is domiciled and maintains its principal office in the District of Columbia.

## Factual Allegations

## Plan Design

20.    The Plan is a defined benefit pension plan under ERISA, to which the Participating

Employers, including Sara Lee, contribute.

21.    The Plan is governed by a Plan Document as required by ERISA § 402(a)(1),

29 U.S.C. § 1102(a)(1).  A copy of the Plan Document, as amended from time to time, is

attached and incorporated by reference as Exhibit 1 to the Second Amended Complaint.

22.    The Plan was established in 1961 by the American Bakers Association, to provide a

vehicle for baking industry employers to offer a traditional defined benefit pension plan to

groups of their employees at various work locations.  The Plan is administered by a Board of

Trustees chosen from the employers that have contracted with the Plan to provide pensions for

certain of  their employees ("Participating Employers").

23.    Since ERISA went into effect in 1976, the Plan has been administered and regarded

by the Board and Participating Employers as a single plan for purposes of Titles I and II of

ERISA.

24.    In 1979, the PBGC issued a letter ("1979 PBGC Letter") wherein the agency

determined that the Plan is an "aggregate of single employer plans" for purposes of plan

termination and premiums under Title IV of ERISA. The 1979 PBGC Letter concluded that the

requirement under the Plan Document that each employer fund its own participation and

employee-participant benefits and the system of assessing surcharges on new Participating

Employers based on an actuarial review of their employee-participant population were sufficient

to demonstrate an intent to maintain separate plans.

25.    Upon issuance of the 1979 PBGC Letter, the Plan Document was amended to

conform to the 1979 PBGC Letter by adding Article XIII.  Article XIII describes the purpose and intent of the Plan as follows:

> 13.01  <u>Association of Single Employer Plans.</u>  This Plan constitutes an association of single employer plans designed to give the cost savings and other benefits of a tax-qualified prototype plan, the administration in common of all the associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants.  That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes (see Exhibit A attached hereto).

26.    Each employer joining the Plan executes a Participation Agreement adopting the terms of the Plan Document, whereby it agrees to make contributions to the Plan to fund its employee-participants' benefits.

27.    Pursuant to Article XI, Sections 11.01 and 11.02 of the Plan Document, when an employer terminates its participation under the Plan, a separate actuarial study is made of its contributions and pensions payable, and the employer is required to cover any additional costs for benefits for its employee-participants that have not been adequately funded by its past contributions.  If the employer has contributed excess funds, the surplus assets revert to the terminating employer after the benefits are paid.

28.    Since 1979, PBGC has approved a number of individual employer terminations from the Plan.

29.    Since 1979, the ABA Plan and its employers have operated in the belief that each employer was to provide funds for the benefit of its own employee-participants, and that the Plan was an "aggregation of single employer plans" wherein any funding deficiencies at the time of termination were to be addressed by the employer.

30.    The ABA Plan has been governed in substantial compliance and conformity with the 1979 PBGC Letter and its governing documents in accordance with ERISA § 404.  29 U.S.C § 1104.

## Events Leading Up to This Action

31.    For the past five years, the Plan has had seven Participating Employers:  Interstate Bakeries Corporation ("IBC"), Harris Baking Company, Jenny Lee Bakery, Inc., Kettering Baking Company, Lewis Brothers Baking Company, the American Bakers Association (collectively, the "Third Party Defendants") and Plaintiff Sara Lee Corporation.

32.    As of September 1, 2006, the Plan covered 2,581 total participants:  1,597 participants from IBC, 687 from Sara Lee, 141 from Jenny Lee, 57 from Lewis Brothers, 34 from Harris, 31 from American Bakers Association, and 13 from Kettering.

33.    IBC filed Chapter 11 bankruptcy proceedings in the United States District Court for the Western District of Missouri, Case No. 04-45814 (JWV) on September 22, 2004.  On November 7, 2006, the Bankruptcy Court entered an Agreed Order granting the Plan and the Trustees relief from the automatic stay provisions of the Bankruptcy Code, in connection with this action.

34.    While IBC participants comprise approximately 62% of the total Plan participants, the percentage of IBC former employees who are among the terminated and vested population is much higher, namely, approximately 80% of the Plan's total population.

35.    As of October 1, 2005, the Plan's total actuarial value of assets was approximately $65.8 million, representing the contributions and investment earnings of all employers less benefits payments and administrative expenses.

36.    The number of active participants in the Plan for whom contributions are being

made and the amount of contributions received relative to pensions being paid out are in decline.

37.    In March 2004, after discussion over a period of several years of its intentions in maintaining the Plan, Sara Lee announced that it intended to terminate the participation of some Sara Lee employees in the Plan.

38.    At Sara Lee's request, the Plan began the administrative transfer of Sara Lee's non-union active employee-participants, as well as the union and non-union former and retired employees and their beneficiaries, from the ABA Plan to the Consolidated Sara Lee Bakery Group Hourly Employees' Pension Plan (the "Sara Lee Plan"), a separate Sara Lee successor plan sponsored by the Plaintiff.

39.    The active union employees of Sara Lee remain in the ABA Plan.

40.    The associated pension liabilities for the transferred participants were also transferred to the Sara Lee Plan.

41.    During the plan year beginning October 1, 2004, the Plan was required to collect, in addition to the normal contributions required by the Plan from Participating Employers, quarterly contributions from Participating Employers to meet ERISA's minimum funding requirements and to reduce the balance of unfunded benefits under the Plan.

42.    The Plan initially calculated and assessed such quarterly contributions according to a method that was based on the number of each Participating Employer's active and inactive participants weighted by the contractual rate of each Participating Employer's weekly contributions.  After completing studies of the relative funded position of each employer group during the 2005 Plan Year, the Plan adopted a new method of assessing additional required funding contributions and applied the new method retroactively to the beginning of the 2005 Plan Year.  The new method apportioned the quarterly contribution according to each employer's

unfunded liability for the benefits of its own employee-participants. The new method eliminated any need for additional quarterly contributions by Sara Lee and increased the contribution requirement of IBC by millions of dollars.

43.    In the summer of 2005, IBC and Sara Lee were provided with preliminary calculations of the share of ABA Plan assets attributable to their respective employees' participation in the Plan. The asset calculation considered contributions plus investment earnings minus administrative expenses and pensions paid.

44.    These calculations indicated that five of the Participating Employers, including IBC, had made insufficient contributions to the Plan to fund the benefits of their employee-participants, while two of the Participating Employers, including Sara Lee, had made contributions more than sufficient to fund the benefits of their employee-participants.

45.    On June 24, 2005, IBC requested the PBGC to conduct a review of the Plan, to determine compliance with the 1979 PBGC Letter and to consider involuntary termination of the Plan. IBC alleged that the Plan had not been operated in accordance with the 1979 PBGC Letter by failing to maintain records and by failing to perform separate valuations. IBC ceased making required quarterly contributions to the Plan on January 15, 2006, although it continued to make regular monthly contributions based on the number of its active participants.

46.    While IBC's request was pending, IBC, Sara Lee and the Plan entered into a "No-Action Agreement." The No-Action Agreement authorized the transfer by the Plan of $71 million to the Sara Lee Plan following its execution and provided for a delay in transfers of any additional assets from the Plan to the Sara Lee Plan until PBGC completed its review. The $71 million authorized to be transferred represented a calculation made in accordance with Internal Revenue Code Section 414(l) that was agreed to by Sara Lee, IBC and the Plan, and was

not the Plan's ordinary method for calculating the amount of such liabilities.

47.    On August 28, 2005, Sara Lee entered into a Transfer Agreement with the Plan, providing for transfer of the $71 million and for the transfer of an additional amount of assets attributable to Sara Lee's contributions for the transferred participants according to the Plan's usual method for single employer terminations.  The additional amount to be transferred was approximately $27 million, but the transfer of those funds has not been effected as a result of PBGC's determination that the Plan is a multiple employer plan.

48.    On or about September 30, 2005, pursuant to the Transfer Agreement, and with the knowledge and consent of IBC and with the knowledge of  PBGC, $71 million was transferred to the Sara Lee Plan, but no further amounts have since been transferred.

49.    As of October 1, 2005, the present actuarial value of accrued benefits to be paid to employees, former employees and beneficiaries of the Participating Employers (excluding the transferred Sara Lee participants) was approximately $95.7 million.  The present value of accrued benefits to be paid to employees and former employees of IBC and their beneficiaries is approximately $60 million.

50.    On November 2, 2005, the PBGC announced that it would revisit the 1979 PBGC Letter determination and informed the Plan, IBC, and other interested parties that they would be permitted to make written submissions to the PBGC by November 18, 2005.

51.    The PBGC permitted the parties to be involved only through this single submission.

52.    The PBGC did not inform the parties what process it would employ to review the submissions, or whether a record was being maintained, or whether each submitter would be permitted to review what the other parties had submitted.

53.    Parties who submitted written documents were not required to serve, and were not

identified to other interested parties in any formal way.

54.    On information and belief, there were extensive *ex parte* communications between PBGC and some of the interested parties.

55.    The submitters participating in the process had no opportunity to review the submissions of other submitters, or to make any second-round or rebuttal submissions.

56.    The submitters had no opportunity to review any agency record despite efforts to obtain such records through the Freedom of Information Act.

57.    Representatives of the Plan had no opportunity to cross-examine or confront any witness, examine any other party's evidence, join any other interested party, discern who would be the decision-maker, or review or object to any proposed decision prior to the issuance of the determination.

58.    On August 8, 2006, the PBGC responded to IBC's June 24, 2005 request by written letter ("2006 PBGC Letter").  The 2006 PBGC Letter expressly revoked the 1979 PBGC Letter and determined that assets that have been contributed to the ABA Plan by each employer since at least 1979 are not restricted in use to pay pensions for participants of the employer that contributed the assets, but instead are available to pay the benefits of all employers' participants. The 2006 PBGC Letter is incorporated by reference and is attached as Exhibit 3 to the Second Amended Complaint.

59.    Against its liabilities, the Plan held in trust approximately $78.2 million in assets at market value as of September 30, 2006, with the balance to be paid by contributions from Participating Employers.  This amount includes the approximately $27 million that would have been transferred to the Sara Lee Plan, in addition to the $71 million that was transferred, under the Plan's usual methodology for plan spin-offs or employer terminations.

60.    The present value of the unfunded amount of liabilities of all Plan participants is approximately $16.9 million.  If the $27 million were transferred to Sara Lee, the unfunded amount for the Plan would increase to approximately $43.9 million.

61.    Prior to August 8, 2006, the Plan was pursuing actions to collect additional contributions from the Participating Employers.  These efforts included filing a Proof of Claim in the Bankruptcy Court against IBC for all amounts needed to fund IBC's liabilities under the Plan, including the unpaid quarterly contributions for the Plan Year commencing October 1, 2005, and taking actions to compel other employers to pay their quarterly contributions under both the old and new methods.

62.    On information and belief, the 2006 PBGC Letter requires the Plan to cease actions that are inconsistent with its determination that all the Plan's assets are available to pay the pensions of all active, inactive and retired employees who participate in the Plan.

63.    In effect, the 2006 PBGC Letter shifts each employer's individual liability to fund its own employee-participants' benefits to the common trust and thus to all Participating Employers collectively.

64.    The 2006 PBGC Letter also shifts the funding obligation for each employer's liability to its employee-participants to all Participating Employers collectively on a joint and several basis.  This renders the amount of unfunded or underfunded liability arising from the participation of IBC participants, which is currently approximately $60.7 million, the collective responsibility of all the employers in the Plan.

65.    Upon information and belief, the amount of liability for IBC participants alone exceeds the net worth of one or more of the Plan's smaller employers.

**Count I – Action for Declaratory Judgment**
**(against Co-Defendant PBGC, Plaintiff Sara Lee, and the Third-Party Defendants)**

66.     The ABA Plan Defendants incorporate paragraphs 1 through 65 of this Third Party-Complaint, Counterclaim and Cross-Claim as if fully set forth herein.

67.     The 1979 PBGC Letter states that the Plan is an aggregation of single employer plans for purposes of Title IV.  Sara Lee seeks to make contributions to, and effect distributions from the Plan according to the 1979 PBGC Letter.

68.     The 2006 PBGC Letter, on the other hand, concludes that the Plan is not an aggregation of single employer plans but rather a multiple employer plan for purposes of Title IV.  On information and belief, several other Participating Employers seek to make contributions to, and effect distributions from the Plan according to the 2006 PBGC Letter.

69.     The 2006 PBGC Letter is in conflict with Section 3.01 of the Trust Instrument, Article XIII, Section 13.02 of the Plan Document, the Plan's termination provisions found in Articles V and XI and other provisions of the Plan document, the Plan's Participation Agreements with its Participating Employers, the Plan's previously received governmental approvals, and the Plan's longstanding practice.  ERISA mandates that the Trustees manage the Plan according to its terms.

70.     The contradictions between the positions contained in the 1979 PBGC Letter and the Plan documents on the one hand, and in the 2006 PBGC Letter on the other hand create an actual case or controversy that is properly before this Court.

71.     The Court can and should determine the continuing validity and effect, if any, of the Plan's governing documents in light of the 1979 PBGC Letter and 2006 PBGC Letter.

**Count II –Violation of Fifth Amendment Right to Procedural Due Process
(against Co-Defendant PBGC)**

72.    The ABA Plan Defendants incorporate paragraphs 1 through 71 of this Third Party

Complaint, Counterclaim and Cross-Claim as if fully set forth herein.

73.    On August 8, 2006, PBGC issued its 2006 Letter, in which it found the ABA Plan

to be a multiple employer pension plan and revoked its prior 1979 Letter, in which it concluded

that the Plan was an aggregate of single-employer pension plans under ERISA.

74.    ERISA § 4003(f)(1) permits any fiduciary who is adversely affected by any action

of PBGC to bring an action against PBGC for appropriate equitable relief.  29 U.S.C.

§ 1303(f)(1).

75.    The ABA Plan Defendants have adversely been affected by PBGC's 2006 Letter, in

that it subjects the Plan to uncertainty and has exposed the Plan and its Trustees to litigation.

76.    The PBGC's 2006 Letter was based on erroneous facts and information, and is in

violation of the due process clause of the Fifth Amendment.  The inquiry was conducted in an

arbitrary and capricious manner, with no party understanding the process or having the

opportunity to address and respond to arguments that may have been made by other interested

parties.

**WHEREFORE**, the ABA Plan Defendants, on their own behalf and on behalf of

the ABA Plan and its participants and beneficiaries, request that this Court:

**PRAYER FOR RELIEF**

(1)  declare the rights and obligations of the ABA Plan Defendants in

administering the ABA Plan by affirming the positions in either the 1979 PBGC Letter and the

Plan documents or the 2006 PBGC Letter concerning what type of plan the ABA Plan is (*i.e.,*

multiple employer versus an aggregate of single-employer plans) for ERISA Title IV purposes;

or by otherwise reconciling the positions stated therein; or

      (2)  in the alternative, rescind the agency's determination in the 2006 PBGC

Letter based on the agency's violations of procedural due process;

      (3)  award the ABA Plan Defendants their reasonable attorneys' fees, costs and

expenses under ERISA §§ 502(g)(1) and 4003(f)(3), 29 U.S.C. §§ 1132(g)(1) and 1303(f)(3);

and

      (4)  award such other relief as may be appropriate.

Dated: November 30, 2006           Respectfully submitted,

                                  STEPTOE & JOHNSON LLP

                                  /s/ Paul J. Ondrasik, Jr.
                                  Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
                                  Edward R. Mackiewicz (D.C. Bar # 944884)
                                  Ryan T. Jenny (D.C. Bar # 495863)
                                  1330 Connecticut Avenue, N.W.
                                  Washington, DC  20036-1795
                                  Tel:  (202) 429-3000
                                  Fax:  (202) 429-3902

                                  LAW OFFICE OF ANNE H. S. FRASER, P.C.
                                  Anne H. S. Fraser (D.C. Bar # 349472)
                                  1320 19th Street, N.W., Suite 200
                                  Washington, DC 20036-1637
                                  Tel:  (202) 466-4009
                                  Fax:  (202) 466-4010

                                  **Counsel for Defendants/Third Party**
                                  **Plaintiffs/Counterclaimants/Cross-Claimants**
                                  **American Bakers Association Retirement Plan and**
                                  **Board of Trustees of the American Bakers**
                                  **Association Retirement Plan**

## CERTIFICATE OF SERVICE

I, Edward R. Mackiewicz, hereby certify that a true and exact copy of the foregoing Defendants American Bakers Association Retirement Plan's and Board of Trustees' Third Party Complaint, has been served on the following parties this 30th day of November, 2006, as indicated below:

*VIA ELECTRONIC FILING:*

M. Miller Baker
Sarah E. Hancur
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005-3096

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL  60606

**Attorneys for Plaintiff Sara Lee Corp.**

*Pursuant to Fed. R. Civ. P. 4, the following individuals have been served on behalf of Defendant Pension Benefit Guaranty Corporation with a summons, and a copy of this Third Party Complaint VIA CERTIFIED MAIL:*

Vincent K. Snowbarger
Acting Executive Director
Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C.  20005

Alberto R. Gonzalez
Attorney General of the United States
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530-0001

Civil Process Clerk
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530

**On behalf of Defendant Pension Benefit Guaranty Corporation**

*Pursuant to Fed. R. Civ. P. 4(h), the following individuals will be served on behalf of the Third Party Defendants with a summons, and a copy of this Third Party Complaint VIA PERSONAL DELIVERY:*

James R. Kettering, Jr.
President
Kettering Baking Co.
729 Coleman Avenue
Fairmont, WV  26554

Interstate Brands Corporation
c/o C T Corporation System
Registered Agent
120 South Central Ave.
Clayton, MO  63105

R. Jack Lewis Jr.,
President
Lewis Bros. Bakeries, Inc.
500 North Fulton Avenue
Evansville, IN  47710

John Carosh
Chief Executive Officer
Harris Baking Co., Inc.
2301 S. 1st Street
Rogers, AR  72758-6416

Robb MacKie
President
American Bakers Association
1300 Eye Street, N.W.
Suite 700 West
Washington, D.C. 20005

Bernard Baker
President
Jenny Lee Bakery, Inc.
620 Island Avenue
McKees Rock, PA  15136

**With courtesy copies to the following:**

Kent Magill, Esq.
General Counsel
Interstate Brands Corp., Legal Dept.
12 East Armour Blvd.
Kansas City, MO 64111

J. Eric Ivester, Esq.
Skadden Arps Slate Meagher & Flom
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285

*Attorneys for Interstate Brands Corporation*

Eugene J. Geeke, Jr.
Schiff Hardin, LLP
6600 Sears Tower
Chicago, IL 60606-6473

*Attorney for Lewis Brothers Baking Co.*

/s/ Edward R. Mackiewicz_____
Edward R. Mackiewicz
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel:  (202) 429-3000
Fax: (202) 429-3902