IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA LEE CORPORATION, on its own<br>Behalf and on behalf of its<br>Employee-participants in the American<br>Bakers Association Retirement Plan,<br>Three First National Plaza<br>Chicago, Illinois 60602-4260 | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| AMERICAN BAKERS ASSOCIATION<br>RETIREMENT PLAN; and BOARD OF<br>TRUSTEES OF THE AMERICAN<br>BAKERS ASSOCIATION RETIREMENT<br>PLAN, as Administrator of The American<br>Bakers Association Retirement Plan,<br>1300 Eye Street, N.W., Ste. 700 West<br>Washington, D.C. 20005 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| PENSION BENEFIT GUARANTY<br>CORPORATION<br>1200 K Street, N.W.<br>Washington, D.C. 20005 | )<br>)<br>)<br>) |
| Defendants. | )<br>) |
| _____ | )<br>) |
| AMERICAN BAKERS ASSOCIATION<br>RETIREMENT PLAN; and BOARD OF<br>TRUSTEES OF THE AMERICAN<br>BAKERS ASSOCIATION RETIREMENT<br>PLAN, as Administrator of The American<br>Bakers Association Retirement Plan, | )<br>)<br>)<br>)<br>)<br>) |
| Third Party Plaintiffs,<br>Counterclaimants, and Cross-Claimants | )<br>) |
| v. | )    No. 06-C-00819-HHK<br>) |

SARA LEE CORP.,                                    )
                                                   )
                        Respondent,                )
                                                   )
PENSION BENEFIT GUARANTY                            )
CORPORATION,                                        )
                                                   )
                        Cross-Defendant,            )
                                                   )
        and                                        )
                                                   )
KETTERING BAKING CO.                               )
729 Coleman Avenue                                 )
Fairmont, WV 26554                                 )
                                                   )
INTERSTATE BRANDS CORP.                            )
12 E. Armour Blvd.                                 )
Kansas City, MO  64111-1202                        )
                                                   )
LEWIS BROS. BAKERIES, INC.                         )
500 N. Fulton Avenue                               )
Evansville, IN  47710                              )
                                                   )
HARRIS BAKING CO., INC.                            )
2301 S. 1st Street                            )
Rogers, AR  72758-6416                             )
                                                   )
AMERICAN BAKERS ASSOCIATION                        )
1300 Eye Street, N.W.                              )
Suite 700 West                                     )
Washington, D.C.  20005                            )
                                                   )
        and                                        )
                                                   )
JENNY LEE BAKERY, INC.                             )
620 Island Avenue                                  )
McKees Rock, PA  15136                             )
                                                   )
                        Third-Party Defendants.    )
                                                   )
_____ )

**THIRD PARTY DEFENDANT INTERSTATE BRANDS CORPORATION'S ANSWER
TO AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND
BOARD OF TRUSTEES' THIRD PARTY COMPLAINT AGAINST INTERSTATE
BRANDS CORPORATION, HARRIS BAKING COMPANY, KETTERING BAKING**

**COMPANY, JENNY LEE BAKERY, INC., LEWIS BROTHERS BAKING COMPANY, AND AMERICAN BAKERS ASSOCIATION; COUNTERCLAIM AGAINST SARA LEE CORPORATION; AND CROSS-CLAIM AGAINST PENSION BENEFIT GUARANTY CORPORATION FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.    Sara Lee Corporation ("Sara Lee") initiated this action for declaratory and injunctive relief against the ABA Plan Defendants and Defendant Pension Benefit Guaranty Corporation ("PBGC"). Count I of the Second Amended Complaint is asserted solely against Defendant PBGC and seeks judicial review of PBGC's August 8, 2006, letter determination (the "2006 PBGC Letter") that the ABA Plan is a "multiple employer" pension plan under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"). Counts II and III are asserted against the ABA Plan Defendants. Count II alleges that the ABA Plan Defendants have used Plan assets attributable to Sara Lee to provide pension benefits to all Plan participants rather than only Sara Lee employees, and has thereby violated the terms of the Plan incorporating an earlier determination by the PBGC that the ABA Plan is an "aggregation of single employer plans" for ERISA Title IV purposes (the "1979 PBGC Letter"). Count III asserts that if the Court affirms PBGC's recent determination that that Plan is a multiple employer plan, the ABA Plan Defendants breached their fiduciary duties by operating it as such a plan.

**ANSWER**:  To the extent that the allegations in paragraph 1 purport to claim that the Pension Benefit Guaranty Corporation's ("PBGC") August 8, 2006 administrative decision, annexed to the Second Amended Complaint as Exhibit 3 (herein referred to as the "PBGC's August 8, 2006 administrative decision") and the PBGC's 1979 administrative decision, annexed to the Second Amended Complaint as Exhibit A within Exhibit 1 (herein referred to as the "PBGC's 1979 administrative decision"), are merely non-binding letters, Third Party Defendant Interstate Brands Corporation ("IBC") denies any such allegations.[1] Third Party Defendant IBC admits that Sara Lee initiated this action for declaratory and injunctive relief against the ABA Plan Defendants and Defendant Pension Benefit Guaranty Corporation ("PBGC"). Third Party Defendant IBC states that the Second Amended Complaint speaks for itself and denies the remaining allegations of paragraph 1 to the extent they are inconsistent therewith.

---

[1]    Third Party Defendant Interstate Brands Corporation is a wholly-owned subsidiary of Interstate Bakeries Corporation.

3

2.      In Count I of its Third Party Complaint, Counterclaim and Cross-Claim, the ABA Plan Defendants seek declaratory and injunctive relief from this Court, ruling on whether the Plan is indeed a "multiple employer" plan pursuant to the 2006 PBGC Letter, or whether it is instead an "aggregation of single-employer plans" pursuant to the 1979 PBGC Letter and the terms of the Plan documents.  As the Plan is underfunded, this determination affects the allocation of Plan assets as among the seven Participating Employers, and constitutes an actual case or controversy.

**<u>ANSWER</u>**:  To the extent that the allegations contained in paragraph 2 purport to claim that the PBGC's August 8, 2006 or 1979 administrative decisions are merely letters, Third Party Defendant IBC denies all such allegations.  Third Party Defendant IBC states that the Third Party Complaint, Counterclaim and Cross-Claim speaks for itself and denies the allegations of paragraph 2 to the extent they are inconsistent therewith.  Third Party Defendant IBC admits that this Court has jurisdiction to review whether the PBGC's August 8, 2006 administrative decision is arbitrary, capricious, or otherwise contrary to law.  Absent a finding by this Court that the PBGC's determination that the Plan is a multiple employer plan is arbitrary, capricious, or otherwise contrary to law, Third Party Defendant IBC denies that this Court has the authority to make an independent finding as to whether the Plan is a multiple employer plan or an aggregation of single employer plans.  Otherwise, Third Party Defendant IBC denies that there exists a case or controversy.  Third Party Defendant IBC denies that either the PBGC's 1979 administrative decision or the terms of the Plan documents demonstrate that the Plan is an aggregation of single employer plans.  Third Party Defendant IBC admits that the Plan is underfunded, which affects the allocation of Plan assets among the seven Participating Employers.

3.      In addition, in Count II of its Cross-Claim against Co-Defendant PBGC, the ABA Plan Defendants seek review of the 2006 PBGC Letter, which was issued on the basis of erroneous and incomplete facts, and was the result of a procedurally flawed inquiry by PBGC.

**ANSWER**:    To the extent that the allegations contained in paragraph 3 purport to claim that the PBGC's August 8, 2006 administrative decision was merely a letter, Third Party Defendant IBC denies all such allegations.  Third Party Defendant IBC states that Count II of the Third Party Complaint, Counterclaim and Cross-Claim speaks for itself and denies the allegations of paragraph 3 to the extent they are inconsistent therewith.  Third Party Defendant IBC denies that the PBGC's August 8, 2006 administrative decision was issued on the basis of erroneous and incomplete facts.  Third Party Defendant IBC denies that the PBGC's August 8, 2006 decision was the result of a procedurally flawed inquiry by the PBGC.

4.    Count I is brought by the ABA Plan and its Trustees, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and 28 U.S.C. § 2201 against Plaintiff Sara Lee, the Third Party Defendants, and Co-Defendant PBGC.

**ANSWER**:    Third Party Defendant IBC states that the Second Amended Complaint speaks for itself and denies the remaining allegations of paragraph 4 to the extent they are inconsistent therewith.

5.    Count II is brought by the ABA Plan and its Trustees, pursuant to Section 4003(f)(1) of ERISA, 29 U.S.C. § 1303(f)(1), against Co-Defendant PBGC for violation of their procedural due process rights under the Fifth Amendment of the Constitution.  U.S. Const. amend. V.

**ANSWER**:    Third Party Defendant IBC states that the Third Party Complaint, Counterclaim, and Cross-Claim speaks for itself and denies the remaining allegations of paragraph 5 to the extent they are inconsistent therewith.  Third Party Defendant IBC denies that either the ABA Plan's or the Trustees' procedural due process rights under the Firth Amendment of U.S. Constitution were violated.

6.    This Court has subject matter jurisdiction over this action pursuant to ERISA §§ 4003(f)(1), (2) and (6), 29 U.S.C. §§ 1302(f)(1), (2) and (6); ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); and 28 U.S.C. § 1331.

**ANSWER**:  The allegations of paragraph 6 state legal conclusions to which no answer is required.  To the extent an answer is required, Third Party Defendant IBC denies the allegations of paragraph 6.

7.    This Court has personal jurisdiction over all of the Third-Party Defendants pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**ANSWER**:  The allegations of paragraph 7 state legal conclusions to which no answer is required.  To the extent an answer is required, Third Party Defendant IBC denies the allegations as to itself.  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegation of paragraph 7, so denied.

8.    Venue is exclusive to the District of Columbia pursuant to ERISA § 4003(f)(2), 29 U.S.C. § 1303(f)(2), and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**ANSWER**:  The allegations of paragraph 8 state legal conclusions to which no answer is required.  To the extent an answer is required, Third Party Defendant IBC denies the allegations of paragraph 8.

9.    The Plan is a "defined benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The Plan is administered in the District of Columbia, and has its principal office there.  The Plan is funded and operated through the medium of a single trust, the American Bakers Association Retirement Trust, (the "Trust") (attached to the Second Amended Complaint ("SAC") as Exhibit 4).

**ANSWER**:  Third Party Defendant IBC admits that the Plan is a "defined benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 9, so denied.

10.    The Board of Trustees is the Plan's named fiduciary pursuant to Section 2.01 of the Trust, and as defined by ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).  The Trustees are also responsible for the administration and management of the Plan.  The Trust is an Illinois trust, and was established by the American Bakers Association in 1961.  The Trust provides for the establishment of the ABA Plan and governance of the Plan and Trust by the Board of Trustees.

The Trust and the Plan are administered in Washington D.C. The Chairman of the Board of Trustees is also located in Washington D.C. and maintains his principal place of business there.

**ANSWER**: Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10, so denied.

11.     As the named fiduciaries, the Trustees are the proper parties to bring this suit on behalf of the Plan and Trust and its participants and beneficiaries.

**ANSWER**: The allegations of paragraph 11 state a legal conclusion to which no answer is required. To the extent an answer is required, Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11, so denied.

12.     Plaintiff Sara Lee is incorporated in the State of Maryland and has its principal place of business in Chicago, Illinois. Sara Lee is a "Participating Employer" in the ABA Plan. As a Participating Employer, Sara Lee contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER**: Third Party Defendant IBC admits that Sara Lee participates in and contributes to the ABA Plan. Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 12, so denied.

13.     Third-Party Defendant Interstate Bakeries Corporation ("IBC") is incorporated in the State of Delaware and has its principal place of business in Kansas City, Missouri. IBC is a Participating Employer in the ABA Plan. As a Participating Employer, IBC contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER**: Third Party Defendant IBC admits that it is incorporated in the State of Delaware, has its principal place of business in Kansas City, Missouri, and is a Participating Employer in the ABA Plan. Third Party Defendant IBC admits that it contributes to the ABA Plan on behalf of its eligible employee-participants. To the extent that the allegations of paragraph 13 seek to imply that Third Party Defendant IBC viewed the ABA Plan as an aggregate of single employer plans, Third Party Defendant IBC denies any such allegations.

14.     Third-Party Defendant Harris Baking Company is incorporated in the State of Missouri and has its principal place of business in Rogers, Arkansas. Harris Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Harris Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER**: Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 14, so denied.

15.     Third-Party Defendant Jenny Lee Bakery, Inc. is incorporated in the State of Pennsylvania and has its principal place of business in McKees Rock, Pennsylvania. Jenny Lee Bakery, Inc. is a Participating Employer in the ABA Plan. As a Participating Employer, Jenny Lee contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER**: Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 15, so denied.

16.     Third-Party Defendant Kettering Baking Company is incorporated in the State of West Virginia and has its principal place of business in Fairmont, West Virginia. Kettering Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Kettering Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER**: Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 16, so denied.

17.     Third-Party Defendant Lewis Brothers Baking Company is incorporated in the State of Illinois and has its principal place of business in Evansville, Indiana. Lewis Brothers Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Lewis Brothers Baking Company contributes to the ABA Plan on behalf of its eligible employee-participatings.

**ANSWER**: Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 17, so denied.

18.     Third-Party Defendant American Bakers Association is incorporated in the State of Illinois and has its principal place of business in Washington, D.C. American Bakers Association is a Participating Employer in the ABA Plan. As a Participating Employer, American Bakers Association contributes to the ABA Plan on behalf of its eligible employee-participants.

8

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 18, so denied.

19.     Co-Defendant PBGC is a government corporation established by ERISA § 4002, 29 U.S.C. § 1302, within the U.S. Department of Labor.  PBGC administers the plan termination insurance program under Title IV of ERISA and is domiciled and maintains its principal office in the District of Columbia.

**ANSWER**:  Third Party Defendant IBC admits the allegations in paragraph 19.

20.     The Plan is a defined benefit pension plan under ERISA, to which the Participating Employers, including Sara Lee, contribute.

**ANSWER**:  Third Party Defendant IBC admits that the Plan is a defined benefit pension plan

under ERISA.   Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations of paragraph 20, so denied.

21.     The Plan is governed by a Plan Document as required by ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  A copy of the Plan Document, as amended from time to time, is attached and incorporated by reference as Exhibit 1 to the Second Amended Complaint.

**ANSWER**:  Third Party Defendant IBC admits that a copy of the ABA Plan document is

attached and incorporated by reference as Exhibit 1 to the Second Amended Complaint, but

denies that the Plan is governed by the purported ABA plan document.

22.     The Plan was established in 1961 by the American Bakers Association, to provide a vehicle for baking industry employers to offer a traditional defined benefit pension plan to groups of their employees at various work locations.  The Plan is administered by a Board of Trustees chosen from the employers that have contracted with the Plan to provide pensions for certain of their employees ("Participating Employers").

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 22, so denied.

23.     Since ERISA went into effect in 1976, the Plan has been administered and regarded by the Board and Participating Employers as a single plan for purposes of Titles I and II of ERISA.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations concerning how the Board and other Participating

Employers viewed the Plan, so denied.  Third Party Defendant IBC admits that the Plan has been

administered as a single plan under ERISA.  Third Party Defendant IBC denies the remaining

allegations of paragraph 23.

24.     In 1979, the PBGC issued a letter ("1979 PBGC Letter") wherein the agency
determined that the Plan is an "aggregate of single employer plans" for purposes of plan
termination and premiums under Title IV of ERISA.  The 1979 PBGC Letter concluded that the
requirement under the Plan Document that each employer fund its own participation and
employee-participant benefits and the system of assessing surcharges on new Participating
Employers based on an actuarial review of their employee-participant population were sufficient
to demonstrate an intent to maintain separate plans.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 24.

25.     Upon issuance of the 1979 PBGC Letter, the Plan Document was amended to
conform to the 1979 PBGC Letter by adding Article XIII.  Article XIII describes the purpose and
intent of the Plan as follows:

> 13.01  <u>Association of Single Employer Plans</u>.  This Plan constitutes an
> association of single employer plans designed to give the cost savings and
> other benefits of a tax-qualified prototype plan, the administration in
> common of all the associated plans (including, but not limited to, actuarial,
> legal, accounting, and computerized record-keeping services) and the
> handling of the receipt, investment and distribution of their funds through
> the medium of a single trust and the use of investment managers or
> advisers and pension consultants.  That the Plan is, and is to be treated as,
> "an aggregate of separate plans rather than a single pension plan" is
> recognized by the Pension Benefit Guaranty Corporation for plan
> termination purposes (see Exhibit A attached hereto).

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 25.

26.     Each employer joining the Plan executes a Participating Agreement adopting the
terms of the Plan Document, whereby it agrees to make contributions to the Plan to fund its
employee-participants' benefits.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 26, so denied.

27.     Pursuant to Article XI, Sections 11.01 and 11.02 of the Plan Document, when an employer terminates its participation under the Plan, a separate actuarial study is made of its contributions and pensions payable, and the employer is required to cover any additional costs for benefits for its employee-participants that have not been adequately funded by its past contributions.  If the employer has contributed excess funds, the surplus assets revert to the terminating employer after the benefits are paid.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 27.

28.     Since 1979, PBGC has approved a number of individual employer terminations from the Plan.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 28, so denied.

29.     Since 1979, the ABA Plan and its employers have operated in the belief that each employer was to provide funds for the benefit of its own employee-participants, and that the Plan was an "aggregation of single employer plans" wherein any funding deficiencies at the time of termination were to be addressed by the employer.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 29.

30.     The ABA Plan has been governed in substantial compliance and conformity with the 1979 PBGC Letter and its governing documents in accordance with ERISA § 404.  29 U.S.C. § 1104.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 30.

31.     For the past five years, the Plan has had seven Participating Employers:  Interstate Bakeries Corporation ("IBC"), Harris Baking Company, Jenny Lee Bakery, Inc., Kettering Baking Company, Lewis Brothers Baking Company, the American Bakers Association (collectively, the "Third Party Defendants') and Plaintiff Sara Lee Corporation.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 31, so denied.

32.     As of September 1, 2006, the Plan covered 2,581 total participants:  1,597 participants from IBC, 687 from Sara Lee, 141 from Jenny Lee, 57 from Lewis Brothers, 34 from Harris, 31 from American Bakers Association, and 13 from Kettering.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 32, so denied.

33.     IBC filed Chapter 11 bankruptcy proceedings in the United States District Court for the Western District of Missouri, Case No. 04-45814 (JWV) on September 22, 2004.  On November 7, 2006, the Bankruptcy Court entered an Agreed Order granting the Plan and the Trustees relief from the automatic stay provisions of the Bankruptcy Code, in connection with this action.

**ANSWER**:  Third Party Defendant IBC admits that it filed Chapter 11 bankruptcy proceedings

in the United States District Court for the Western District of Missouri, Case No. 04-45814

(JWV), on September 22, 2004.  Third Party Defendant IBC admits that, on November 7, 2006,

the Bankruptcy Court entered an Agreed Order granting the Plan and the Trustees relief from the

automatic stay provisions of the Bankruptcy Code for the limited purpose of pursuing the action

then pending in the District of Columbia as Case No. 06 C 0819 (the "Action").  To the extent

the allegations in paragraph 33 seek to expand the limited scope of relief from the stay beyond

the Action, Third Party Defendant IBC denies any such allegations.  Third Party Defendant IBC

denies the remaining allegations of paragraph 33.

34.     While IBC participants comprise approximately 62% of the total Plan participants, the percentage of IBC former employees who are among the terminated and vested population is much higher, namely, approximately 80% of the Plan's total population.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 34, so denied.

35.     As of October 1, 2005, the Plan's total actuarial value of assets was approximately  $65.8 million, representing the contributions and investment earnings of all employers less benefits payments and administrative expenses.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 35, so denied.

36.     The number of active participants in the Plan for whom contributions are being made and the amount of contributions received relative to pensions being paid out are in decline.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 36, so denied.

37.    In March 2004, after discussion over a period of several years of its intentions in maintaining the Plan, Sara Lee announced that it intended to terminate the participation of some Sara Lee employees in the Plan.

**ANSWER**:  Third Party Defendant IBC is aware that Sara Lee announced that it intended to terminate the participation of some Sara Lee employees in the Plan, but lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 37, so denied.

38.    At Sara Lee's request, the Plan began the administrative transfer of Sara Lee's non-union active employee-participants, as well as the union and non-union former and retired employees and their beneficiaries, from the ABA Plan to the Consolidated Sara Lee Bakery Group Hourly Employees' Pension Plan (the "Sara Lee Plan"), a separate Sara Lee successor plan sponsored by the Plaintiff.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38, so denied.

39.    The active union employees of Sara Lee remain in the ABA Plan.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39, so denied.

40.    The associated pension liabilities for the transferred participants were also transferred to the Sara Lee Plan.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 40.

41.    During the plan year beginning October 1, 2004, the Plan was required to collect, in addition to the normal contributions required by the Plan from Participating Employers, quarterly contributions from Participating Employers to meet ERISA's minimum funding requirements and to reduce the balance of unfunded benefits under the Plan.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41, so denied.

42.    The Plan initially calculated and assessed such quarterly contributions according to a method that was based on the number of each Participating Employer's weekly contributions. After completing studies of the relative funded position of each employer group during the 2005 Plan Year, the Plan adopted a new method of assessing additional required funding contributions and applied the new method retroactively to the beginning of the 2005 Plan Year.  The new method apportioned the quarterly  contribution according to each employer's unfunded liability

for the benefits of its own employee-participants.  The new method eliminated any need for additional quarterly contributions by Sara Lee and increased the contribution requirement of IBC by millions of dollars.

**ANSWER**:  Third Party Defendant IBC admits that, as far as Third Party Defendant IBC is

aware, the Plan initially calculated and assessed quarterly contributions according to a method

that was based on the number of each Participating Employer's weekly contributions and that the

Plan subsequently adopted a new method of assessing additional required funding contributions

and applied the new method retroactively to the beginning of the 2005 Plan Year.  Third Party

Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of paragraph 42, so denied.

43.    In the summer of 2005, IBC and Sara Lee were provided with preliminary calculations of the share of ABA Plan assets attributable to their respective employees' participating in the Plan.  The asset calculation considered contributions plus investment earnings minus administrative expenses and pensions paid.

**ANSWER**:  Third Party Defendant IBC admits that, in the summer of 2005, it was provided with

several different preliminary calculations of the share of ABA Plan assets attributable to its

respective participants in the Plan.  Third Party Defendant IBC lacks knowledge or sufficient

information to form a belief as to which preliminary calculation paragraph 43 refers, so denied.

Third Party Defendant IBC also has insufficient information to form a belief as to whether Sara

Lee received preliminary calculations of the share of ABA Plan assets attributable to its

participants in the Plan, so denied.

44.    These calculations indicated that five of the Participating Employers, including IBC, had made insufficient contributions to the Plan to fund the benefits of their employee-participants, while two of the Participating Employers, including Sara Lee, had made contributions more than sufficient to fund the benefits of their employee-participants.

**ANSWER**:  Third Party Defendant IBC admits that, in the summer of 2005, it was provided with

several different preliminary calculations of the share of ABA Plan assets attributable to its

respective employees participating in the Plan.  Third Party Defendant IBC lacks sufficient

knowledge or information to form a belief as to which preliminary calculation paragraph 44

refers, so denied.

45.     On June 24, 2005, IBC requested the PBGC to conduct a review of the Plan, to
determine compliance with the 1979 PBGC Letter and to consider involuntary termination of the
Plan.  IBC alleged that the Plan had not been operated in accordance with the 1979 PBGC Letter
by failing to maintain records and by failing to perform separate valuations.  IBC ceased making
required quarterly contributions to the Plan on January 15, 2006, although it continued to make
regular monthly contributions based on the number of its active participants.

**ANSWER**:  To the extent that the allegations contained in paragraph 45 purport to claim that the

PBGC's 1979 administrative decision is merely a letter, Third Party Defendant IBC denies all

such allegations.  Third Party Defendant IBC further denies that it requested that the PBGC

consider involuntary termination of the Plan.  Third Party Defendant IBC admits the remaining

allegations of paragraph 45.

46.     While IBC's request was pending, IBC, Sara Lee and the Plan entered into a "No-
Action Agreement."  The No-Action Agreement authorized the transfer by the Plan of $71
million to the Sara Lee Plan following its execution and provided for a delay in transfers of any
additional assets from the Plan to the Sara Lee Plan until PBGC completed its review.  The $71
million authorized to be transferred represented a calculation made in accordance with Internal
Revenue Code Section 414(l) that was agreed to by Sara Lee, IBC and the Plan, and was not the
Plan's ordinary method for calculating the amount of such liabilities.

**ANSWER**:  Third Party Defendant IBC admits that it entered into a "No-Action Agreement"

with Sara Lee and the Plan.  Third Party Defendant IBC admits that the "No-Action Agreement"

authorized the transfer by the Plan of $71 million to the Sara Lee Plan.  Third Party Defendant

IBC states that the $71 million transfer was made subject to Third Party Defendant IBC's rights

as stated in the "No-Action Agreement."  Third Party Defendant IBC denies that it has waived

any rights provided to it in the "No-Action Agreement."  Third Party Defendant IBC admits the

remaining allegations in paragraph 46.

47.     On August 28, 2005, Sara Lee entered into a Transfer Agreement with the Plan, providing for transfer of the $71 million and for the transfer of an additional amount of assets attributable to Sara Lee's contributions for the transferred participants according to the Plan's usual method for single employer terminations.  The additional amount to be transferred was approximately $27 million, but the transfer of those funds has not been effected as a result of PBGC's determination that the Plan is a multiple employer plan.

**ANSWER**:  Third Party Defendant IBC admits that $71 million was transferred to Sara Lee

pursuant to the "No Action Agreement" and was subject to the terms set forth therein.  Third

Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of paragraph 47, so denied.

48.     On or about September 30, 2005, pursuant to the Transfer Agreement, and with the knowledge and consent of IBC and with the knowledge of PBGC, $71 million was transferred to the Sara Lee Plan, but no further amounts have since been transferred.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 48, so denied.

49.     As of October 1, 2005, the present actuarial value of accrued benefits to be paid to employees, former employees and beneficiaries of the Participating Employers (excluding the transferred Sara Lee participants) was approximately $95.7 million.  The present value of accrued benefits to be paid to employees and former employees of IBC and their beneficiaries is approximately $60 million.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 49.

50.     On November 2, 2005, the PBGC announced that it would revisit the 1979 PBGC Letter determination and informed the Plan, IBC, and other interested parties that they would be permitted to make written submissions to the PBGC by November 18, 2005.

**ANSWER**:  To the extent that the allegations contained in paragraph 50 purport to claim that the

PBGC's 1979 administrative decision is merely a letter, Third Party Defendant IBC denies all

such allegations.  Third Party Defendant IBC admits the remaining allegations in paragraph 50.

51.     The PBGC permitted the parties to be involved only through this single submission.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 51.

52.     The PBGC did not inform the parties what process it would employ to review the submissions, or whether a record was being maintained or whether each submitter would be permitted to review what the other parties had submitted.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 52.

53.     Parties who submitted written documents were not required to serve, and were not identified to other interested parties in any formal way.

**ANSWER**:  Third Party Defendant IBC admits that parties who submitted written documents were not required to serve other interested parties.  Third Party Defendant IBC denies the remaining allegations of paragraph 53 as parties who submitted written documents were identified to the other interested parties.

54.     On information and belief, there were extensive *ex parte* communications between PBGC and some of the interested parties.

**ANSWER**:  Third Party Defendant IBC denies that any of its communications with the PBGC constituted "ex parte communications" within the meaning of the Administrative Procedures Act, or were proscribed thereunder.  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 54, so denied.

55.     The submitters participating in the process had no opportunity to review the submissions of other submitters, or to make any second-round or rebuttal submissions.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 55.

56.     The submitters had no opportunity to review any agency record despite efforts to obtain such records through the Freedom of Information Act.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 56.

57.     Representatives of the Plan had no opportunity to cross-examine or confront any witness, examine any other party's evidence, join any other interested party, discern who would be the decision-maker, or review or object to any proposed decision prior to the issuance of the determination.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 57.

58.     On August 8, 2006, the PBGC responded to IBC's June 24, 2005 request by written letter ("2006 PBGC Letter").  The 2006 PBGC Letter expressly revoked the 1979 PBGC Letter and determined that assets that have been contributed to the ABA Plan by each employer since at least 1979 are not restricted in use to pay pensions for participants of the employer that contributed the assets, but instead are available to pay the benefits of all employers' participants. The 2006 PBGC Letter is incorporated by reference and is attached as Exhibit 3 to the Second Amended Complaint.

**ANSWER**:  To the extent that the allegations contained in paragraph 58 purport to claim that the

PBGC's August 8, 2006 administrative decision is merely a letter, Third Party Defendant IBC

denies all such allegations.  Third Party Defendant IBC states that the 2006 PBGC determination

speaks for itself and denies the remaining allegations of paragraph 58 to the extent they are

inconsistent therewith.

59.     Against its liabilities, the Plan held in trust approximately $78.2 million in assets at market value as of September 30, 2006, with the balance to be paid by contributions from Participating Employers.  This amount includes the approximately $27 million that would have been transferred to the Sara Lee Plan, in addition to the $71 million that was transferred, under the Plan's usual methodology for plan spin-offs or employer terminations.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 59, so denied.

60.     The present value of the unfunded amount of liabilities of all Plan participants is approximately $16.9 million.  If the $27 million were transferred to Sara Lee, the unfunded amount for the Plan would increase to approximately $43.9 million.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 60.

61.     Prior to August 8, 2006, the Plan was pursuing actions to collect additional contributions from the Participating Employers.  These efforts included filing a Proof of Claim in the Bankruptcy Court against IBC for all amounts needed to fund IBC's liabilities under the Plan, including the unpaid quarterly contributions for the Plan Year commencing October 1, 2005, and taking actions to compel other employers to pay their quarterly contributions under both the old and new methods.

**ANSWER**:  Third Party Defendant IBC admits that the Plan filed a Proof of Claim.  Third Party

Defendant IBC has insufficient information to form a belief as to whether, prior to August 8,

2006, the Plan was pursuing actions to collect additional contributions from the Participating

Employers.  Third Party Defendant IBC has insufficient information to form a belief as to

whether the Plan took actions to compel other employers to pay their quarterly contributions

under both the old and new methods.  Third Party Defendant IBC denies the remaining allegation

of paragraph 61.

   62.  On information and belief, the 2006 PBGC Letter requires the Plan to cease
actions that are inconsistent with its determination that all the Plan's assets are available to pay
the pensions of all active, inactive and retired employees who participate in the Plan.

**ANSWER**:  To the extent that the allegations contained in paragraph 62 purport to claim that the

PBGC's August 8, 2006 administrative decision is merely a letter, Third Party Defendant IBC

denies all such allegations.  Third Party Defendant IBC admits the remaining allegations of

paragraph 62.

   63.  In effect, the 2006 PBGC Letter shifts each employer's individual liability to fund
its own employee-participants' benefits to the common trust and thus to all Participating
Employers collectively.

**ANSWER**:  To the extent that the allegations contained in paragraph 63 purport to claim that the

PBGC's August 8, 2006 administrative decision is merely a letter, Third Party Defendant IBC

denies all such allegations.  Third Party Defendant IBC states that the 2006 PBGC determination

speaks for itself and denies the remaining allegations of paragraph 63 to the extent they are

inconsistent therewith.

   64.  The 2006 PBGC Letter also shifts the funding obligation for each employer's
liability to its employee-participants to all Participating Employers collectively on a joint and
several basis.  This renders the amount of unfunded or underfunded liability arising from the
participation of IBC participants, which is currently approximately $60.7 million, the collective
responsibility of all the employers in the Plan.

**ANSWER**:  To the extent that the allegations contained in paragraph 64 purport to claim that the

PBGC's August 8, 2006 administrative decision is merely a letter, Third Party Defendant IBC

denies all such allegations.  Third Party Defendant IBC denies that the PBGC's 2006 determination shifts the funding obligation for each employer's liability to its employee-participants to all Participating Employers collectively on a joint and several basis.  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64, so denied.

65.    Upon information and belief, the amount of liability for IBC participants alone exceeds the net worth of one or more of the Plan's smaller employers.

**ANSWER**:  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65, so denied.

**Count I – Action for Declaratory Judgment**
**(against Co-Defendant PBGC, Plaintiff Sara Lee, and the Third-Party Defendants)**

66.    The ABA Plan Defendants incorporate paragraphs 1 through 65 of this Third Party-Complaint, Counterclaim and Cross-Claim as if fully set forth herein.

**ANSWER:**  Third Party Defendant IBC incorporates its answers to paragraphs 1 through 65.

67.    The 1979 PBGC Letter states that the Plan is an aggregation of single employer plans for purposes of Title IV.  Sara Lee seeks to make contributions to, and effect distributions from the Plan according to the 1979 PBGC Letter.

**ANSWER**:  To the extent that the allegations contained in paragraph 67 purport to claim that the PBGC's 1979 administrative decision is merely a letter, Third Party Defendant IBC denies all such allegations.  Third Party Defendant IBC denies that the PBGC's 1979 administrative decision found that the Plan was an aggregation of single employer plans for purposes of Title IV.  Third Party Defendant IBC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 67, so denied.

68.    The 2006 PBGC Letter, on the other hand, concludes that the Plan is not an aggregation of single employer plans but rather a multiple employer plan for purposes of Title IV.  On information and belief, several other Participating Employers seek to make contributions to, and effect distributions from the Plan according to the 2006 PBGC Letter.

**ANSWER**:  To the extent that the allegations contained in paragraph 68 purport to claim that the

PBGC's August 8, 2006 administrative decision is merely a letter, Third Party Defendant IBC

denies all such allegations.  Third Party Defendant IBC admits that the PBGC's August 8, 2006

administrative decision concluded that the Plan is not an aggregation of single employer plans,

but rather a multiple employer plan for purposes of Title IV.  Third Party Defendant IBC lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

of paragraph 68, so denied.

69.     The 2006 PBGC Letter is in conflict with Section 3.01 of the Trust Instrument,
Article XIII, Section 13.02 of the Plan Document, the Plan's termination provisions found in
Articles V and XI and other provisions of the Plan document, the Plan's Participation
Agreements with its Participating Employers, the Plan's previously received governmental
approvals, and the Plan's longstanding practice.  ERISA mandates that the Trustees manage the
Plan according to its terms.

**ANSWER**:  Third Party Defendant IBC denies the allegations of paragraph 69.

70.     The contradictions between the positions contained in the 1979 PBGC Letter and
the Plan documents on the one hand, and in the 2006 PBGC Letter on the other hand create an
actual case or controversy that is properly before this Court.

**ANSWER**:  Third Party Defendant IBC admits that this Court has jurisdiction to review whether

the PBGC's August 8, 2006 administrative decision is arbitrary, capricious or otherwise contrary

to law.  Third Party Defendant IBC denies that there exists any contradiction between the

positions contained in the PBGC's 1979 administrative decision and the PBGC's August 8, 2006

administrative decision.  Third Party Defendant IBC denies that the existence of two PBGC

administrative decisions, the first from 1979 and the second from August 8, 2006, creates a case

or controversy.  Third Party Defendant IBC denies the remaining allegations of paragraph 70.

71.     The Court can and should determine the continuing validity and effect, if any, of
the Plan's governing documents in light of the 1979 PBGC Letter and 2006 PBGC Letter.

**ANSWER**:  Third Party Defendant IBC admits that this Court has jurisdiction to review whether

the PBGC's August 8, 2006 administrative decision is arbitrary, capricious or otherwise contrary

to law.  Third Party Defendant IBC denies the remaining allegations of paragraph 71.


### Count II – Violation of Fifth Amendment right to Procedural Due Process
### (against Co-Defendant PBGC)

72.       The ABA Plan Defendants incorporate paragraphs 1 through 71 of this Third
Party Complaint, Counterclaim and Cross-Claim as if fully set forth herein.

**ANSWER:**  Third Party Defendant IBC incorporates its answers to paragraphs 1 through 71.

73.       On August 8, 2006, PBGC issued its 2006 Letter, in which it found the ABA Plan
to be a multiple employer pension plan and revoked its prior 1979 Letter, in which it concluded
that the Plan was an aggregate of single-employer pension plans under ERISA.

**ANSWER**:  The allegations in paragraph 73 are not asserted against Third Party Defendant IBC,

and therefore, no answer is required.

74.       ERISA § 4003(f)(1) permits any fiduciary who is adversely affected by any action
of PBGC to bring an action against PBGC for appropriate equitable relief.  29 U.S.C §1303(f)(1).

**ANSWER**:  The allegations in paragraph 74 are not asserted against Third Party Defendant IBC,

and therefore, no answer is required.

75.       The ABA Plan Defendants have adversely been affected by PBGC's 2006 Letter,
in that it subjects the Plan to uncertainty and has exposed the Plan and its Trustees to litigation.

**ANSWER**:  The allegations in paragraph 75 are not asserted against Third Party Defendant IBC,

and therefore, no answer is required.

76.       The PBGC's 2006 Letter was based on erroneous facts and information, and is in
violation of the due process clause of the Fifth Amendment.  The inquiry was conducted in an
arbitrary and capricious manner, with no party understanding the process or having the
opportunity to address and respond to arguments that may have been made by other interested
parties.

**ANSWER**:  The allegations in paragraph 76 are not asserted against Third Party Defendant IBC, and therefore, no answer is required.

AFFIRMATIVE DEFENSE

Third Party Plaintiff's claims are waived or otherwise barred based upon Third Party Plaintiff's actions and inaction during or in connection with the administrative process before the PBGC.

Dated:  December 26, 2006

Interstate Brands Corporation,

/s/  Edward J. Meehan
_____

*Of Counsel:*                                    Edward J. Meehan (DC Bar No. 413993)
Christina M. Tchen                          David E. Carney (DC Bar No. 472219)
J. Eric Ivester                                   SKADDEN, ARPS, SLATE,
Samuel Ory                                        MEAGHER & FLOM LLP
Amanda S. Williamson                   1440 New York Avenue, N.W.
SKADDEN, ARPS, SLATE,            Washington DC 20005-2111
  MEAGHER & FLOM LLP              (202) 371-7000
333 West Wacker Dr.
Chicago, Illinois 60606                    *Attorneys for Third Party Defendant*
(312) 407-0700                                 *Interstate Brands Corporation*

## Certificate of Service

  I, David E. Carney, an attorney, on December 26, 2006, caused a true and correct copy of THIRD PARTY DEFENDANT INTERSTATE BRANDS CORPORATION'S ANSWER TO AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND BOARD OF TRUSTEES' THIRD PARTY COMPLAINT to be served via U.S. Mail:

| **Counsel for Plaintiff/Third Party Defendant Sara Lee** | **Counsel for Defendant/Third Party Plaintiff American Bakers Association Retirement Plan** |
| --- | --- |
| M. Miller Baker<br>McDermott, Will & Emery<br>600 13th Street N.W.<br>Washington DC 20005-3096<br>(202) 756-8233<br>mbaker@mwe.com | Anne H. S. Fraser<br>Anne H. S. Fraser, PC<br>1320 19th Street, NW<br>Suite 200<br>Washington, DC 20036<br>(202)466-4009<br>ahsfraser@aol.com |
| Sarah E. Hancur<br>McDermott, Will & Emery<br>600 13th Street N.W.<br>Washington DC 20005-3096<br>(202) 756-8093<br>shancur@mwe.com | Edward Robert Mackiewicz<br>Steptoe & Johnson, LLP<br>1330 Connecticut Avenue<br>Washington, DC 20036<br>(202)429-3902<br>emackiew@steptoe.com |
| Michael T. Graham<br>McDermott, Will & Emery<br>227 West Monroe Street<br>Suite 4400<br>Chicago, Illinois 60606-5096<br>(312)984-3606<br>mgraham@mwe.com | Paul Ondrasik<br>Steptoe & Johnson, LLP<br>1330 Connecticut Avenue<br>Washington, DC 20036<br>(202)429-3902<br>pondrasik@steptoe.com |

**Courtesy copies were sent to the following counsel:**

Mark Blank
Michael Mora
Pension Benefit Guaranty Corporation
1200 K Street N.W.
Washington, DC 20005


      /s/ Edward J. Meehan
   _____

      Edward J. Meehan

1