# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARA LEE CORPORATION, on its own behalf and on behalf of its employee-participants in the American Bakers Association Retirement Plan**, | ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Case No. 06-CV-0819-HHK <br> ) Hon. Henry H. Kennedy, Jr. <br> ) |
| **AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of The American Bakers Association Retirement Plan; and PENSION BENEFIT GUARANTY CORPORATION**, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |
| _____ | ) |
| **AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of The American Bakers Association Retirement Plan,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Third Party Plaintiffs, Counterclaimants, and Cross-Claimants, | ) <br> ) <br> ) |
| v. | ) <br> ) |
| **SARA LEE CORP.,** | ) <br> ) |
| Respondent, | ) <br> ) |
| **PENSION BENEFIT GUARANTY CORPORATION,** | ) <br> ) <br> ) |
| Cross-Defendant, | ) <br> ) |
| and | ) <br> ) |

|  | ) |
| KETTERING BAKING CO., INTERSTATE | ) |
| BRANDS CORP., LEWIS BROS. | ) |
| BAKERIES, INC., HARRIS BAKING CO., | ) |
| INC., AMERICAN BAKERS | ) |
| ASSOCIATION, and JENNY LEE | ) |
| BAKERY, INC., | ) |
|  | ) |
| Third-Party Defendants. | ) |
| _____ | ) |

### REPLY MEMORANDUM OF DEFENDANTS
### AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN AND
### BOARD OF TRUSTEES IN SUPPORT OF THEIR MOTION TO DISMISS
### COUNTS II AND III OF THE SECOND AMENDED COMPLAINT

STEPTOE & JOHNSON LLP
Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
Edward R. Mackiewicz (D.C. Bar # 944884)
Ryan T. Jenny (D.C. Bar # 495863)
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902

LAW OFFICE OF ANNE H. S. FRASER, P.C.
Anne H. S. Fraser (D.C. Bar # 349472)
1320 19th Street, N.W., Suite 200
Washington, DC 20036-1637
Tel: (202) 466-4009
Fax: (202) 466-4010

**Counsel for Defendants/Third Party Plaintiffs/
Counterclaimants/Cross-Claimants,
American Bakers Association Retirement Plan
and Board of Trustees of the American Bakers
Association Retirement Plan**

January 19, 2007

<u>**INTRODUCTION**</u>

While long on rhetoric, Plaintiff Sara Lee Corporation's ("Plaintiff" or "Sara Lee") response brief provides no basis for denying the Motion to Dismiss Counts II and III of the Second Amended Complaint ("SAC") filed by the American Bakers Association Retirement Plan ("Plan" or "ABA Plan") and Board of Trustees (collectively, "Defendants"). Indeed, apart from knocking down "straw men" of Plaintiff's own creation, the response does little more than mischaracterize the complaint, the relief it seeks and the arguments for dismissal advanced by the Defendants.

Notwithstanding these efforts at "misdirection," the response does make clear that a single question, answerable now as a matter of law, requires dismissal of the two Counts against the Defendants – whether the right to sue provision contained in Paragraph 11.03 of the Plan's Trust Agreement, without more, makes Plaintiff (and the other Participating Employers) ERISA "fiduciaries," as defined in ERISA § 3(21)(A), and thereby confers standing on them? The answer to that question is "no." Without more, the authority to bring suit to enforce a plan simply does not constitute discretionary authority in the *administration or management of a plan* or *the disposition of plan assets*, the statutory prerequisites to fiduciary status under ERISA. Rather, at most, it amounts to a purported authorization to sue those who do possess the authority that would make them ERISA fiduciaries. To allow such a provision, on its own, to confer fiduciary status would permit parties to create standing – and in ERISA cases, federal court jurisdiction – by agreement, a notion contrary to basic principles of federal court jurisprudence. Not surprisingly then, Plaintiff has failed to cite a single case supporting this novel notion. Accordingly, because Plaintiff is not an ERISA fiduciary, Counts II and III must be dismissed on lack of standing and subject matter jurisdiction grounds.

If the Court dismisses these Counts on this basis, the other grounds for dismissal that Defendants advance need not be considered. However, even if these claims could withstand Defendants' threshold standing and jurisdictional challenges, Plaintiff has failed to show that the relief sought is within the narrow scope of equitable relief available under ERISA § 502(a)(3). With regard to Count II, the principal relief challenged – enforcement of the Transfer Agreement – plainly cannot be obtained. The Supreme Court has held that an "injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation" simply is not equitable relief within § 502(a)(3)'s meaning. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-11 (2002). And, even if it were, the plain language of § 502(a)(3) *only* authorizes equitable relief to enforce the terms of a *plan or ERISA*, and not contracts such as the Transfer Agreement. Moreover, Count II is subject to dismissal in its entirety since, as Plaintiff has conceded, it is entirely dependent on the outcome of Count I – if Plaintiff does not prevail on Count I and achieve the overturning of the PBGC's 2006 determination, no relief can be awarded under Count II.

Plaintiff's efforts to sustain Count III – the claim it advances as an alternative only if Counts I and II are rejected – fare no better. As a threshold matter, Plaintiff has conceded that the relief actually sought in the SAC – relief in favor of Sara Lee, including monetary relief against the Board of Trustees "to make Sara Lee whole for any losses or liabilities" it may incur – cannot be obtained under ERISA. Nor is Sara Lee's re-characterization of Count III to seek only a constructive trust on the Plan's assets for the benefit of its employees cognizable. As demonstrated below, even as re-characterized, that claim cannot satisfy the stringent standards for equitable relief under § 502(a)(3) announced by the Supreme Court. More importantly, it asks this Court to award the very relief that it would have *denied* if it were to reject Counts I and

2

II of the SAC and conclude that the Plan is a multiple employer plan, *i.e.*, one whose assets were available for the benefit of *all* plan participants. *A fortiori*, such relief – relief effectively requiring the Plan to act contrary to law – could not be appropriate equitable relief in the face of such a ruling.

## ARGUMENT

A. **Plaintiff Concedes It Must be a Plan Fiduciary to Have Standing but Fails to Identify Any Role It Plays in the Administration of the Plan or Its Assets.**

Plaintiff's response brief has reduced considerably the standing/jurisdictional issues before this Court. Plaintiff now does not argue that it has ERISA standing based on its status as a Participating Employer in the Plan. Rather, it concedes that its standing turns entirely on whether it is an ERISA fiduciary. Pl. Mem. at 4 ("In order to plead [Counts II and III], Sara Lee is required to be considered a fiduciary under the ABA Plan."). Plaintiff's brief has also narrowed the fiduciary status inquiry. In this regard, Plaintiff acknowledges that it is *not* a "named fiduciary" of the Plan.[1] Nonetheless, based entirely on a single provision of the Plan's Trust document (Paragraph 11.03), Sara Lee asserts it is a functional "fiduciary" of the Plan within the meaning of ERISA § 3(21)(A) and, as such, has standing.[2] Thus, the only question

_____

[1] Pl. Mem. at 10 ("Sara Lee does not contest that it is not the ABA Plan's 'named fiduciary.'"); *see also* SAC ¶¶ 8, 11 ("The Board of Trustees is the ABA Plan's Named Fiduciary, as that term is defined by ERISA."). Under Section 402(a)(1) of ERISA, a plan instrument must "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Thus, "the term 'named fiduciary' means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2).

[2] Contrary to Plaintiff's assertion, Defendants did *not* base their standing and jurisdictional challenges on Plaintiff's lack of "named fiduciary" status, a status Plaintiff now concedes it does not have. *See* Pl. Mem. at 5, 9, 11. Rather, Defendants also argued that Plaintiff was not a fiduciary because it did not have "*any* discretionary authority or responsibility

3

remaining to determine Plaintiff's standing and this Court's subject matter jurisdiction is whether

Paragraph 11.03, as a matter of law,[3] makes Plaintiff an ERISA fiduciary under ERISA

§ 3(21)(A).  As demonstrated below, it plainly does not because that provision gives Plaintiff *no*

discretionary authority over the administration of the Plan or its assets.

Section 3(21)(A) of ERISA defines "fiduciary" as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting *management of*
> *such plan* or exercises any authority or control respecting *management or*
> *disposition of its assets*, (ii) he renders investment advice for a fee or other
> compensation, direct or indirect, with respect to any moneys or other property
> of such plan, or has any authority or responsibility to do so, or (iii) he has any
> discretionary authority or discretionary responsibility in the *administration of*
> *such plan*.  Such term includes any person designated under section
> 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (emphasis added).  Given that Sara Lee does not allege that it provides

investment advice to the Plan, Sara Lee can be a fiduciary under ERISA § 3(21)(A) only if it has

discretionary authority or responsibility over the administration or management of the Plan or its

assets.  *See, e.g., International Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v.*

*Duval*, 925 F. Supp. 815, 828 (D.D.C. 1996) ("Simply stated, whether an individual is an ERISA

---

in the administration or management of the Plan or its assets," and thus was not a fiduciary
within the meaning of ERISA § 3(21)(A).  Def. Mem. at 11-13.  This is precisely the definition
of a "functional" fiduciary under ERISA.  "In addition to these so-called 'named fiduciaries,'
individuals may acquire fiduciary status if they exercise the fiduciary functions set forth in
ERISA § 3(21)(A)."  *Navarre v. Luna (In re Luna)*, 406 F.3d 1192, 1201 (10th Cir. 2005)
(holding employer not ERISA § 3(21)(A) fiduciary to multi-employer plan as "the relationship
between the [employer] and the Funds is best characterized as contractual, not fiduciary").  Thus,
Plaintiff's contention that Defendants argued only that it was not the Plan's "named fiduciary"
flatly mischaracterizes Defendants' position.

[3] "Where the facts are not in question, a party's status as an ERISA fiduciary is purely a
question of law." *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001); *LoPresti v. Terwilliger*,
126 F.3d 34, 39 (2d Cir. 1997) (same); *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1458 (9th
Cir. 1995) (same).  If the only dispute is whether plan documents and trust agreements impose
fiduciary status, this is a question of law and not fact.  *Srein v. Frankford Trust Co.*, 323 F.3d
214, 220 (3d Cir. 2003).

fiduciary turns upon whether the individual has discretionary authority or responsibility in the administration of a plan or regarding the disposition of plan assets.").  In arguing that it falls within this definition, Plaintiff has not pointed to *any* terms in the Plan document that give it such authority.  Nor has it identified *any* role that it plays in the administration of the Plan or the management of its assets.  In fact, Plaintiff admits that only the Trustees have such authority: "Defendant Board of Trustees . . . *has the full authority and responsibility* under the ABA Plan to control and manage the ABA Plan's operation and administration, and under the . . . Trust . . . to manage and control the ABA Plan's assets held in the ABA Trust."  (SAC ¶ 8; *see also* ¶ 11) (emphasis added).

Instead of alleging facts showing it has a role described in ERISA § 3(21)(A), Plaintiff relies entirely on Paragraph 11.03 of the Trust Agreement to support its claim to functional fiduciary status.  Paragraph 11.03 of the Trust provides:

> Enforcement of this Trust.  The *Participating Employers shall have the authority*, either jointly or severally, *to enforce this Trust* on behalf of the persons having or claiming any interest in the Fund.  In any action or proceeding affecting the Fund or the administration thereof or for instructions to the Board, the Association and the Board shall be the only necessary parties, and no Participating Employer or employees or former employees of any Participating Employer or their beneficiaries or any other person having or claiming to have interest in the Fund shall be entitled to any notice of process, and any judgment that may be entered in such action or proceeding shall be binding on all persons having or claiming to have any interest in the Fund.

Trust ¶ 11.03 (emphasis added) (attached to SAC at Ex. 4).  This provision, Plaintiff asserts, "grants Sara Lee authority . . . to enforce the Trust and the ABA Plan's terms" and "[t]his grant of discretion and authority . . . to challenge the ABA Plan's administration makes Sara Lee a functional fiduciary for that particular and limited purpose."  Pl. Mem. at 12

There is no merit to Plaintiff's position.  As a threshold matter, this provision, on its face, does *not* authorize Sara Lee to bring the present case since it does *not* authorize Sara Lee (or any

other Participating Employer) to enforce "the ABA Plan's terms" as Plaintiff claims. Rather, as Paragraph 11.03's plain language makes clear, it only authorizes Participating Employers "to enforce *this Trust*." Trust ¶ 11.03 (emphasis added). The Plan and the Trust are separate documents. *See* Ex. 1 and 4 to SAC.[4] Plaintiff's complaint, however, *only* alleges violations of the terms of the Plan. It *nowhere* alleges that the terms of the Trust Agreement have been violated. Thus, Paragraph 11.03 – the sole basis for Plaintiff's alleged standing – does not authorize Sara Lee to bring the present action and for that reason alone Counts II and III must be dismissed.

Even apart from this defect, the authority granted to Sara Lee under Paragraph 11.03 is insufficient to make it an ERISA fiduciary and thereby give it standing to bring an ERISA lawsuit. Notwithstanding Plaintiff's bald statements to the contrary, the right to bring suit to enforce a plan's terms, without more, simply is not a fiduciary function described in ERISA § 3(21)(A) – it does not constitute the administration or management of an employee benefit plan or its assets.

Rather, it is at most a purported right to bring suit against those who, in fact, are responsible for a plan's administration and management. However, ERISA § 502(a)(3) carefully limits that right to an existing "participant, beneficiary, or fiduciary" of the plan. Under Sara Lee's circular logic, that limitation would constitute no limit at all; *any* party authorized to bring suit – even if they otherwise had *no* relationship to a plan and *no* role in its administration or management – would become a fiduciary by the very fact of that authorization and fall within the narrow categories of permissible litigants under ERISA § 502(a)(3). Similarly, plan participants and beneficiaries would themselves be ERISA fiduciaries as a matter of law because § 502(a)(3)

---

[4] Indeed, the Plan is separately identified and defined in the Trust Agreement, thus underscoring that they are separate and distinct documents. Trust ¶ 1.01.

expressly authorizes them to bring suit "to enforce . . . the terms of the plan." As such, they would be duty bound to exercise that authority in strict accord with ERISA's stringent fiduciary standards that govern the fiduciary activities of all ERISA fiduciaries.[5] However, their right to sue derives not from such circular logic or any purported fiduciary status, but from the fact that they *are* participants and beneficiaries of the plan, and, as such, expressly authorized to bring suit under § 502(a)(3).[6] Not surprisingly then, Sara Lee has cited no authority which equates the mere right to sue with the type of plan management or administration responsibilities that would make a person a functional fiduciary under ERISA § 3(21)(A).[7]

Nor does the fact that Sara Lee's purported authorization is found in the Trust Agreement in any way alter this analysis. Its argument that a person is a fiduciary "so long as it is granted specific authority and discretion to take *an action* under the governing plan documents"[8] fails to

---

[5] *See* ERISA § 404, 29 U.S.C. § 1104 (requiring plan fiduciaries to discharge their plan responsibilities "solely in the interest" of the plan's participants and beneficiaries, for the "exclusive purpose of providing benefits" and "defraying reasonable expenses of administering the plan," and, among other things, "with the care, skill, prudence and diligence" of a "prudent man").

[6] In short, participants and beneficiaries are authorized to challenge fiduciaries, but do not become fiduciaries because they have that authority. ERISA thus distinguishes between a right to sue and fiduciary status. Sara Lee's claim to have authority to "challenge *Defendants' administration* of the ABA Plan" (Pl. Mem. at 12) does not make it the Plan's administrator or give it the administrator's powers – it in fact highlights that Sara Lee does not have the authority, possessed only by the Board.

[7] Should the Court credit Plaintiff's theory, the other Participating Employers will likely be surprised to learn that they are ERISA fiduciaries and concerned with the implications of that status. If they were fiduciaries as a result of Paragraph 11.03, they potentially would be subject to co-fiduciary liability for the alleged breaches of others, including those alleged in Counts II and III. ERISA § 405, 29 U.S.C. § 1105. They may also be liable under ERISA § 404 for their own breaches, including potentially here not mitigating the Plan's under-funding problem by prudently fulfilling their alleged fiduciary duty to "enforce the Trust" in the 27 years since the 1979 PBGC Letter was issued.

[8] Pl. Mem. at 11 (emphasis added).

recognize that authority to take *any* action is not enough – the action must be taken in the administration or management of a plan or the disposition of plan assets, *i.e.*, it must be a fiduciary function. ERISA § 3(21)(A); 29 C.F.R. § 2509.75-8; *International Bhd.*, 925 F. Supp. at 828. Plan documents frequently grant persons authority to take any number of non-fiduciary actions, often classified as settlor or ministerial acts, that do not make them fiduciaries even where those actions involve discretion. A prime example of this is the authority to amend a plan. Section 402(b)(3) of ERISA requires every plan to "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). However, it is well-settled that decisions that impact the structure of a plan, including decisions to amend, modify or terminate plans, are "settlor," non-fiduciary activities that are not subject to challenge under ERISA's fiduciary responsibility provisions. *See, e.g.*, *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 444 (1999); *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996) (settlor acts: board of directors with authority to amend plan does not "fall into the category of fiduciaries"); *see also Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1047-48 (7th Cir. 2004) (ministerial acts: "administrative manager" was designated under plan but court held "[t]his designation alone, however, does not transform someone into a fiduciary"). Consequently, the mere fact that a person is authorized to take some action in a plan document does not make that person a fiduciary; rather, that person attains functional fiduciary status only if that action is an ERISA § 3(21)(A) fiduciary function. Paragraph 11.03 does not extend Participating Employers any such authority.

Thus, when stripped to its essence, Sara Lee's argument is simply that Paragraph 11.03 of the Trust Agreement, without more, is sufficient to make it a fiduciary and give it standing to bring this ERISA action. However, as demonstrated in Defendants' opening brief (Def. Mem. at

14), it is well-settled that parties cannot, by agreement, expand either this Court's jurisdiction or the exhaustive list of parties that Congress specifically has authorized to bring an ERISA action. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951); *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003); *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000-01 (11th Cir. 1982); *see also Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71 (D.C. Cir. 1987). Even if Paragraph 11.03 implied consent to extend ERISA jurisdiction to claims brought by Participating Employers such as Sara Lee, "a party cannot waive by consent or contract a court's lack of *subject matter* jurisdiction." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989) (emphasis in original). Accordingly, Paragraph 11.03 cannot grant ERISA § 502(a)(3) standing to a "person," like Sara Lee, who is not a plan fiduciary, participant, or beneficiary, or give this Court jurisdiction over claims brought by persons who are not specifically enumerated in ERISA § 502(e)(1), *i.e.*, these same classes plus the Secretary of Labor. Thus, if the Court holds that Plaintiff is not a fiduciary,[9] Counts II and III must be dismissed.[10]

---

[9] Sara Lee does not contest that its claims must be dismissed on standing or jurisdictional grounds if it is found not to be an ERISA fiduciary.

[10] One additional point is worthy of brief note. Plaintiff has presented no opposition to Defendants' argument that Sara Lee has no standing to sue as a representative of its employee-participants if it is not itself an enumerated party under ERISA §§ 502(a)(3) and (e)(1). This Court has held that representational standing is barred under ERISA – a plaintiff itself must be within the parties enumerated to bring suit. *Systems Council EM-3 v. AT&T Corp.*, 972 F. Supp. 21, 27-28 (D.D.C. 1997), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998). Sara Lee is not such a party, and therefore cannot claim to have standing on a representational basis if the Court finds it lacks standing as a fiduciary.

**B.**    **Count II Must be Dismissed, in Whole or Part, For Failure to State a Claim.**

Defendants' challenge to the relief sought under Count II is considerably narrower and more direct than Plaintiff's response would suggest. In their motion, Defendants sought dismissal of Court II on the ground that it is entirely dependent on the success of Plaintiff's challenge to PBGC's 2006 determination that the Plan is a multiple employer plan. Unless and until that determination is overturned, there is simply no basis for the claims asserted in Count II. Thus, if Count I is dismissed on PBGC's anticipated motion, Count II must be dismissed as well. Def. Mem. at 14-15. In addition, Defendants sought dismissal of Count II to the extent that it sought to enforce the Transfer Agreement on the ground that such relief was not available as appropriate equitable relief under ERISA § 502(a)(3). Def. Mem. at 15-16.

In their response, Plaintiff effectively concedes that Count II turns on the outcome of Count I and that Count II cannot stand if it does not prevail on that claim. Pl. Mem. at 4, 15-16. Thus, Plaintiff does not contest that aspect of Defendants' challenge to Count II. And given that Count II turns on the outcome of Count I, Count II and the relief it seeks should be dismissed as unnecessary and premature.[11]

As for the challenge that Defendants have launched to Plaintiff's attempt to secure enforcement of the Transfer Agreement (*See* Count II, Prayer for Relief, Nos. 7, 8),[12] Plaintiff's response simply fails to refute Defendants' showing that such relief is not available under ERISA § 502(a)(3). There is a short answer to Plaintiff's exegesis on the scope of relief available under

---

[11] In addition, for the reasons stated in Section C, *infra*, Count II should be dismissed to the extent that it asserts claims on behalf of Sara Lee itself.

[12] Contrary to Plaintiff's assertion, Defendants have not argued that the other injunctive relief sought under Count II is not available, as an abstract matter, under ERISA § 502(a)(3). Thus, Plaintiff's defense of that other relief as among the types authorized by ERISA § 502(a)(3) is still another a "straw man" argument of its own creation.

that provision – in *Great West*, the Supreme Court specifically concluded that an "injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity" and therefore not available under § 502(a)(3). *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-11 (2002). Such relief is precisely what Plaintiff seeks in its Count II Prayer for Relief Nos. 7-8 – the transfer of plan funds pursuant to a contract Sara Lee entered into with the Board, and not pursuant to any terms of the Plan that is at issue in this case.

While Plaintiff relies on *Sereboff* and *Moore* in support of its requested relief, those cases are easily distinguishable. In both those case, the rights sought to be enforced were found in a plan document itself and not, as here, in a separate contract. *Sereboff v. Mid Atl. Med. Servs.*, 126 S. Ct. 1869, 1872-73 (2006) ("There is no dispute . . . that [plaintiff's] suit in District Court was to 'enforce . . . the terms of' the 'Acts of Third Parties' provision in the Sereboffs' plan.");[13] *Moore v. CapitalCare, Inc.*, 461 F.3d 1, 4 (D.C. Cir. 2006). Thus, even assuming arguendo that the relief sought by Plaintiff could be viewed as equitable despite *Great West*'s ruling to the contrary,[14] it would not constitute equitable relief "to redress" violations of or "enforce . . . the

---

[13] *Sereboff* in fact makes the distinction, noting: "ERISA provides for equitable remedies *to enforce plan terms*." 126 S. Ct. at 1874 (emphasis in original). Here, the transfer Plaintiff seeks is not to "enforce plan terms" but the *Transfer Agreement's terms*. The contract to be enforced here (one that is not a Plan document) is materially different from the "contract" breached in *Sereboff* (a plan document), and it is not the proper subject of an ERISA § 502(a)(3) claim.

[14] *Sereboff* and *Moore* are further distinguishable based on the relief there involved. As those decisions make clear, to constitute "appropriate equitable relief" within the meaning of ERISA § 502(a)(3), the relief sought by a party must satisfy two requirements: (1) the relief itself must be "equitable," rather than legal, in nature; and (2) the basis for the claim must be equitable. *Sereboff*, 126 S. Ct. at 1874 ("While Mid Atlantic's case for characterizing its relief as equitable thus does not falter because of the nature of the recovery it seeks, Mid Atlantic *must still establish that the basis for its claim is equitable*.") (emphasis added); *Moore*, 461 F.3d. at 7 (observing that *Sereboff* analysis asks not just whether "the type of relief" was equitable but also "whether the basis for [the] claim was equitable"). Both prongs were there satisfied because the

11

terms of a plan" as required by ERISA § 502(a)(3). *See Trigon Ins. Co. v. Columbia Naples Capital, LLC*, 235 F. Supp. 2d 495, 501-03 (E.D. Va. 2002) (holding that plaintiff could not seek an injunction ordering a transfer of money claimed under a contract that was not a plan document; "[Plaintiff] cannot possibly recover under section 502(a)(3) . . . since the relief it seeks, no matter how it is characterized, is both monetary and contractual (*i.e.* legal) in nature."). In short, the relief Plaintiff seeks – specific performance of a contract, rather than the terms of a plan – is plainly outside the narrow scope of relief available under ERISA § 502(a)(3).[15]

### C.    Count III Must be Dismissed in its Entirety For Failure to State a Claim.

Plaintiff's attempt to defend Count III against dismissal is nothing more than revisionist history of the highest order.  As Defendants' opening brief demonstrates, that Count was subject to dismissal for two principal reasons.  First, with the exception of a hollow request for declaratory relief, it sought *no* relief for the benefit of Plan participants.  *See* Count III Prayer for Relief.  Rather, it sought relief *solely* for the benefit of Sara Lee, a party to whom Defendants

---

plaintiff was asserting an "equitable lien" against "identifiable funds," distinct from the defendant's general assets, to which it had a claim for a particular share at the time such funds came into the defendant's possession. *Sereboff*, 126 S. Ct. at 1874-75; *Moore*, 461 F.3d at 4, 7-8.  Sara Lee here asserts neither an equitable lien, nor any claim against any identifiable funds to which it had an entitlement at the time they came into the Plan's possession.  Rather, it seeks an order requiring the Plan to transfer monies from the Plan's general trust assets pursuant to a contract.  This is precisely the type of "specific performance" claim rejected by the Supreme Court in *Great West*.

[15] It should be emphasized that dismissal of Prayer for Relief Nos. 7 & 8 would not preclude a transfer of assets to the Sara Lee Bakery Plan pursuant to the Transfer Agreement if this Court were to reverse the PBGC's determination and hold that the ABA Plan is an aggregate of single employer plans.  Whether to then authorize such transfer would be a decision for the Board of Trustees to make, based on the facts and circumstances then prevailing, and free from the legal impediments to such a transfer that are at issue in this litigation.  Any potential future disputes that might arise concerning that transfer – apart from the questions at issue in this case – are simply not ripe for resolution.

owe *no* ERISA duties.  Second, the monetary relief it sought for Sara Lee, by way of a constructive trust or otherwise, was in the nature of damages, rather than equitable relief, and thus could not be awarded against either the Plan or its Trustees under ERISA § 502(a)(3).

In its response, Plaintiff makes no effort to counter these arguments or defend the claims it actually brought.  Rather, it attempts to save Count III from dismissal by spinning it into an entirely new claim nowhere asserted in the SAC – a claim brought solely on behalf of its employee-participants in the Plan that in the area of monetary relief seeks only a constructive trust on the Plan's assets for the benefit of those employee-participants.  For the reasons stated below, Sara Lee simply cannot evade dismissal of Count III through this sleight of hand.

1.     Plaintiff has conceded that Count III, as presently asserted, must be dismissed.

 Plaintiff does not contest that Defendants owed it no ERISA duties, and that, as a result, Count III must be dismissed to the extent it seeks relief on its own behalf.  Rather, Plaintiff now asserts that in Count III, it is only bringing claims "as a functional fiduciary on behalf of its employee-participants in the ABA Plan" and that there is thus no reason for it to respond to Defendants' argument.  Pl. Mem. at 13, n. 4.[16]  Indeed, it chides Defendants for suggesting that it had brought claims for its own benefit.  *Id.*  This concession is not surprising – it is well-established that "Pension Funds have no fiduciary duty to employers," and therefore Plaintiff has no colorable argument against dismissal.  *Nat'l Shopmen Pension Fund v. Burtman Iron Works,*

_____

[16] Plaintiff repeatedly asserts that it brings its claims "on behalf of its employee-participants" (Pl. Mem. at 1, 3-5, 7, 10-13, 16, 19, 20, 24), omitting that its SAC brings claims on its own behalf and seeks certain relief *only* on its own behalf, including all the relief sought under Count III except for declaratory relief.  This shift appears to be due to Plaintiff's belated recognition that Paragraph 11.03 only authorizes Participating Employers to bring claims on behalf of their employee-participants, and not on their own behalf.  *See* Pl. Mem. at 12; Trust ¶ 11.03 ("The Participating Employers shall have the authority . . . to enforce this Trust *on behalf of the persons having or claiming any interest in the Fund*.").  Thus, even apart from the fact that such provision is an insufficient basis for ERISA standing, it would not authorize Sara Lee to sue in its own behalf.

*Inc.*, 148 F. Supp. 2d 60, 67 (D.D.C. 2001).[17]  Thus, Plaintiff has effectively conceded that Defendants are entitled to dismissal of any claims brought by Sara Lee seeking relief in its own behalf.

Notwithstanding Plaintiff's protests to the contrary, Count III is replete with such claims and requests for such relief.  Indeed, as noted above, apart from a declaration that Defendants have violated their duties, *all* of the relief expressly requested in the SAC on Count III is for Sara Lee's own benefit.  For example, in the event Counts I and II are resolved against it, Sara Lee seeks rescission of the Transfer Agreement that it entered into with the Board.  SAC Count III Prayer for Relief, ¶ 4.  Similarly, Sara Lee repeatedly asserts that it is entitled to recover money under Count III *only for itself*, for its own alleged losses and liabilities.  *See* SAC ¶ 63 (the Defendants' actions "will have *damaged Sara Lee*"); SAC ¶ 64 (Defendants "should be required to *make Sara Lee whole* for any and all liabilities *it may incur*"); Count III Prayer for Relief ¶ 6 ("require Defendants ABA Plan and Board of Trustees to *make Sara Lee whole* for any losses or liabilities *Sara Lee may accrue*").  And, to extent it seeks a constructive trust over the assets of the ABA Trust, it does so not for the benefit of its employee-participants in the Plan, but "for the *benefit of Sara Lee* to recover any losses or liabilities *Sara Lee may accrue* resulting from the breach of fiduciary duty . . . including any and all losses and liabilities *Sara Lee may incur*." Count III Prayer for Relief ¶ 7.  All of these claims must be dismissed because, as a matter of

---

[17] Plaintiff's brief is inconsistent as to this concession, as in two places it appears that Plaintiff still hopes the claims brought on its own behalf may somehow survive despite its providing no argument for why they can.  *See* Pl. Mem. at 18 ("Sara Lee requests this Court . . . declare that Defendants breached their ERISA-based fiduciary duties to Sara Lee") *and* 21 ("Sara Lee seeks to enforce its rights").  To the extent these two statements may reflect that Plaintiff is hedging on its concession, they are nonetheless insufficient rebuttal to Defendants' argument for dismissal.  *See, e.g.*, *Farnham v. Windle*, 918 F.2d 47, 51 (7th Cir. 1990) (though a claim must survive a motion to dismiss if supported by any legal theory, failure to brief those theories results in waiver).

law, Defendants owed no ERISA duties to Plaintiff, a point which Plaintiff simply does not contest.

For much the same reasons, Plaintiff has effectively conceded that the monetary relief that it actually seeks in Count III is not available under ERISA § 502(a)(3). In this regard, it does not contest that no monetary relief could be awarded against the Trustees under that provision. Instead, it now maintains that Defendants' contention that the requested relief could "result in 'personal liability' against" the Trustees "is incorrect" because it seeks recovery only from the assets of the Plan. Pl. Mem. at 22-23. Thus, Plaintiff has abandoned the attempt to impose personal liability on the Trustees reflected in its request that the Board be required "to *make Sara Lee whole* for any losses or liabilities *Sara Lee may accrue*." Count III Prayer for Relief ¶ 6. Likewise, by now asserting that it seeks only a constructive trust against the Plan's assets for the benefit of its employee-participants – relief requested *nowhere* in the SAC – it apparently has abandoned any request for a constructive trust for its benefit "to recover any losses or liabilities Sara Lee may accrue." Its decision to walk away from this claim too is hardly surprising since monetary relief that is measured by a plaintiff's loss, rather than a defendant's gain, traditionally has been viewed as a form of money damages, unavailable under ERISA § 502(a)(3). *See LaRue v. Dewolff, Boberg & Assocs.*, 450 F.3d 570, 576-77 (4th Cir. 2006); *Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 482-83 (6th Cir. 2001).

## 2. Plaintiff's re-characterization of Count III cannot save it from dismissal.

Plaintiff cannot avoid dismissal of Count III by re-characterizing it as a claim that seeks only a constructive trust for the benefit of its employee-participants for one plain fact – no such claim is asserted anywhere in the SAC. Because no such claim is found in the SAC, it can provide no basis for sustaining the claims Plaintiff actually has asserted. However, even if this

Court were to consider this re-characterized claim, it too is easily disposed of as outside the scope of available relief under ERISA § 502(a)(3).

First, this re-characterized claim, even though denominated as one seeking a constructive trust, effectively is a claim for money damages. Nor can Sara Lee avoid this fact simply by substituting its employee-participants for itself as the purported beneficiary of such trust. And, as Plaintiff's own description of this revised claim makes clear, that is all that Plaintiff has done. As Plaintiff itself states, this claim seeks

> Creation of a constructive trust over ABA Plan assets for the benefit of Sara Lee's employee-participants *to recover any losses or liabilities Sara Lee may accrue* resulting from Defendants' failure to administer the ABA Plan according to its express terms as an aggregate of single-employer pension plans . . . .

Pl. Mem. at 17 (emphasis added). Thus, like the constructive trust claim that Sara Lee has abandoned, this re-characterized claim seeks monetary relief as compensation for alleged losses caused by the Defendants' actions. *See Great-West*, 534 U.S. at 211 n.1 (cautioning that "lawyerly inventiveness" cannot transform a claim for legal relief into one for equitable relief). Any such monetary relief, even if obtained for the benefit of Sara Lee's employee-participants, effectively represents compensatory damages, "the classic form of *legal* relief." *Mertens v. Hewitt Associates*, 508 U.S. 248, 255-56 (1993) (holding that a claim that sought "nothing other than *compensatory damages*" was outside the scope of ERISA § 502(a)(3)).[18]

Second, even if this relief could be viewed as equitable in nature, Plaintiff would still have to demonstrate that the basis for its claim is equitable in order for its claim to come within

---

[18] Plaintiff's efforts to characterize this claim as something other than damages are further complicated by the fact that many of the participant-employees for whom it is allegedly acting have been transferred, along with their benefit entitlements, to Sara Lee's Plan, and thus are no longer participants in the ABA Plan. It is difficult to imagine how the use of ABA Plan assets for the benefit of these former participants could be viewed as something other than monetary damages.

ERISA § 502(a)(3).  *Sereboff*, 126 S. Ct. at 1874 ("While Mid Atlantic's case for characterizing

its relief as equitable thus does not falter because of the nature of the recovery it seeks, Mid

Atlantic *must still establish that the basis for its claim is equitable*."); *Moore*, 461 F.3d. at 7

(observing that *Sereboff* analysis asks not just whether "the type of relief" was equitable but also

"whether the basis for [the] claim was equitable").  Plaintiff conveniently ignores this aspect of

*Sereboff* and *Moore* in relying on those decisions.  To meet this additional prong, Plaintiff would

have to demonstrate that its employee-participants had a claim of right or entitlement – that they

were in effect, the "true owner"[19] – to specific, identifiable property in the Defendants'

possession.  Moreover, that claim of right or entitlement must be based on the terms of the plan

itself.  *See Sereboff*, 126 S. Ct. at 1874-75.

     In *Sereboff* and *Moore*, the plaintiffs could meet this additional prong in asserting an

"equitable lien" against the proceeds of a settlement in the defendant's possession because the

plan provision in question "specifically identified a particular fund, distinct from the

[defendant's] general assets" – there, recoveries from third parties – and "a particular share of

that fund to which [the plaintiff] was entitled" – there, the portion of the recovery due the

plaintiff for benefits paid.  *Sereboff*, 126 S. Ct. at 1875; *Moore*, 461 F.3d at 4, 7-8.  Plaintiff here,

however, can point to no specific, identifiable fund apart from the Plan's Trust Fund, and that

Trust Fund constitutes the "general assets" of the Plan.[20]  Nor can Plaintiff identify any particular

portion of that Trust Fund to which its employee-participants have a claim of right or entitlement

---

[19] *Great-West*, 534 U.S. at 213  ("money or property [must be] identified as *belonging* in
good conscience to the plaintiff" such that the plaintiff "was, in the eyes of equity, the true
owner").

[20] To hold that a plan's trust was a sufficiently identifiable fund for § 502(a)(3) purposes
would effectively make monetary relief available in any case in which a plan is a defendant; a
plan's trust fund always is specifically identifiable.

under the ABA Plan's terms.  *See Pell v. E.I. Dupont De Nemours & Co.*, Civ. Action No. 02-21
KAJ, 2006 U.S. Dist. LEXIS 73053, *40-42 (D. Del. Oct. 6, 2006), *reconsideration denied by*,
2006 U.S. Dist. LEXIS 84773, *5-7 (D. Del. Nov. 22, 2006) (denying restitution in the form of a
constructive trust where plaintiffs sought assets of a particular fund but did not otherwise meet
the standards for equitable restitution set forth in *Great-West* and *Sereboff*).  To the contrary, the
Plan's Trust Agreement expressly provides that unless otherwise set forth in the Plan or ERISA,
no "employee of any Participating Employer" shall have "any equity or other interests . . . in any
assets of the Fund."  Trust Agreement, ¶ 11.07, SAC, Ex. 4 at 21.  And, indeed, Plaintiff's
principal complaint in Count III is that the assets of the Plan are not segregated on an employer-
by-employer basis, but are available to satisfy the benefits of any ABA Plan participant.

Finally, and perhaps most importantly, the constructive trust relief that Plaintiff now
claims it is seeking under Count III is flatly inconsistent with the basic premise of that claim.
Plaintiff brought Count III as an alternative claim that is only to be asserted if this Court rejects
Counts I and II and upholds the PBGC's 2006 determination that the Plan is a multiple employer
plan.  *See, e.g.*, Pl. Mem. at 16.  In upholding the PBGC's determination, this Court will have
necessarily concluded that Sara Lee and its employee-participants have no claim on any
identifiable portion of the Plan's assets.[21]  Rather, it will have concluded that the Plan is a
multiple employer plan under which, by definition, "all plan assets are available to pay benefits
to all plan participants and beneficiaries."  29 C.F.R. § 4001.2; *Nowell v. Central Serv. Ass'n*,
106 F. Supp. 2d 888, 894 (S.D. Miss. 2000) (citing court and PBGC decisions setting forth this

---

[21] Indeed, the Court will have concluded that many of the employee-participants that Sara
Lee purportedly seeks to protect have *no* interest whatsoever in the Plan's remaining assets
because the Sara Lee Bakery Plan in which they now participate has already received the $71
million to which it would be entitled as a result of the benefit obligations owed them if the Plan
is a multiple employer plan.  SAC ¶¶ 23, 42, 63; SAC Ex. 2 ¶¶ 2(v), 6.

definition).  Notwithstanding its artful pleading efforts, Plaintiff cannot obtain, by way of a

constructive trust under Count III, the very relief that this Court will have found unavailable as a

matter of law in rejecting its claims under Counts I and II.[22]  In short, an order that would

effectively require the Plan to operate in a manner contrary to law simply cannot constitute

"appropriate" equitable relief within ERISA § 502(a)(3)'s meaning.

      3.    <u>Plaintiff's efforts to seek rescission of the Transfer Agreement are without merit.</u>

      Plaintiff's arguments to support its claim for rescission of the Transfer Agreement once

again attack a straw man.  Defendants did not argue that rescission is unavailable because it is

not an equitable remedy.  They argued the request must be dismissed because (1) the SAC

"asserts no cognizable grounds for rescission" and (2) under the facts alleged, it is not

"appropriate" relief under § 502(a)(3) due to the absence of any "nexus" between Plaintiff's

damages under the contract and the fiduciary breach alleged.  Def. Mem. at 3, 20-21.  Plaintiff's

brief does not show otherwise.

      In its response, Plaintiff has failed to articulate any grounds for rescission recognized by

courts generally, such as, fraud, duress or mutual mistake of fact.  *See, e.g.*, *Baker v. Penn Mut.*

*Life Ins. Co.*, 788 F.2d 650, 662 (10th Cir. 1986).  Its request for rescission, thus, fails to

adequately provide Defendants with notice of the claim against them, and must be dismissed.[23]

---

[22] Indeed, Plaintiff itself recognizes that the relief it seeks under Count III would "conflict with the PBGC's position on the ABA Plan's status."  Pl. Mem. at 16.

[23] *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) ("Pursuant to Rule 8(a), a complaint will be deemed inadequate . . . if it fails to . . . provide notice of circumstances which give rise to the claim.");  *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (noting that even though a complaint may comply with the simple notice pleading requirements of Rule 8(a)(2), it may nonetheless be dismissed under Rule 12(b)(6) if the plaintiff does not present legal arguments supporting the "substantive adequacy" or "legal merit" of that complaint);  *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 230-31 (W.D.N.Y. 2002) (dismissing ERISA claim because: "A complaint that contains only conclusory

And to the extent Plaintiff's brief may be read to attempt to justify rescission based on its mistake—*i.e.*, that when it entered into the Transfer Agreement it predicted incorrectly that PBGC would reaffirm its 1979 finding that the Plan was an aggregate of single-employer plans—such a claim is not cognizable.[24]  Sara Lee's knowledge that PBGC was reviewing its prior determination, and the terms of the contract allowing the Plan to withhold a second asset transfer to the Sara Lee Plan if PBGC reversed its prior position, also breaks any nexus between the alleged breach and Plaintiff's alleged harm – a point Plaintiff cannot rebut.

The SAC's pleading deficiencies are further magnified by Plaintiff's belated assertion that it does not bring this request on its own behalf, but on behalf of its employee-participants. Plaintiff does not explain how its employees may seek rescission, as non-parties to the contract without injury, or the Article III basis for its standing to represent them.  And whether its employee-participants, in fact, would authorize it to seek such relief on their behalf is far from clear given that, in connection with such rescission effort, it seeks to re-transfer them back from its own plan to what it maintains is a seriously under-funded plan.

---

allegations and lacking any factual assertions for support fails even the liberal standard of Federal Rule of Civil Procedure 12(b)(6).").

[24] *See Harbor Ins. Co. v. Stokes*, 45 F.3d 499, 501-03 (D.C. Cir. 1995) (where plaintiff settled lawsuit predicting that court would not enter judgment quickly, but it entered judgment before the settlement, unbeknownst to the parties, plaintiff "bore the risk" and rescission was denied); *Shear v. National Rifle Ass'n of Am.*, 606 F.2d 1251, 1260 (D.C. Cir. 1979) ("The mistake doctrine does not apply to predictions or promises of future conduct."); *Baker*, 788 F.2d at 661-62 (no claim of mutual mistake can be stated on the basis of disappointed expectations as to a future event, which amount to "mere conjecture, not an existing fact");  Restatement (Second) of Contracts § 151 cmt. a (1981) ("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined [under the doctrine of mutual mistake of fact].").

4.    <u>A mere declaration of a breach of duty cannot be awarded.</u>

In their motion, Defendants argued that the Court may properly dismiss Count III if the monetary relief and rescission Plaintiff requests cannot be awarded and the Court is being called upon only to issue a hollow declaration that Defendants did something wrong.  Plaintiff has failed to rebut this argument, instead urging that it is not just seeking a declaration but an injunction as well.  However, in attempting to defend Count III on this basis, Plaintiff once again has resorted to misdirection – it confuses the relief it requests under Count II with that it seeks under Count III.  While Plaintiff has sought injunctive relief under Count II, it seeks *no* such relief under Count III.  This argument thus does not address the issue raised.

Nor has Plaintiff properly responded to the case law cited by Defendants for the proposition that this Court should dismiss Count III if, as Defendants have demonstrated, it seeks only declarations of alleged wrongdoing, unaccompanied by meaningful and tangible relief.  *See* Def. Mem. at 21-22.  Plaintiff's attempt to distinguish *Davis* and *Ramsey* presents only *non sequiturs*, and does not rebut the principle stated.  Moreover, it has not even attempted to address the ERISA § 502(a)(3) cases—*Yoon*, *Berger*, and *Cardinal Health*—cited in Defendants' initial brief which show that declarations are not equitable relief under § 502(a)(3).  Accordingly, since Count III fails to seek anything more than a hollow declaration, it should be dismissed.


<u>**CONCLUSION**</u>

For the reasons stated herein and in their initial brief, Defendants respectfully request that the claims asserted against them in Counts II and III of Plaintiff's Second Amended Complaint be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: January 19, 2007                     Respectfully submitted,

                                            STEPTOE & JOHNSON LLP

                                            /s/ Paul J. Ondrasik, Jr.
                                            Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
                                            Edward R. Mackiewicz (D.C. Bar # 944884)
                                            Ryan T. Jenny (D.C. Bar # 495863)
                                            1330 Connecticut Avenue, N.W.
                                            Washington, DC  20036-1795
                                            Tel:  (202) 429-3000
                                            Fax:  (202) 429-3902

                                            LAW OFFICE OF ANNE H.S. FRASER, P.C.
                                            Anne H.S. Fraser (D.C. Bar # 349472)
                                            1320 19th Street, N.W., Suite 200
                                            Washington, DC  20036-1637
                                            Tel:  (202) 466-4009
                                            Fax:  (202) 466-4010

                                            **Counsel for Defendants/Third Party Plaintiffs/
                                            Counterclaimants/Cross-Claimants,
                                            American Bakers Association Retirement Plan
                                            and Board of Trustees of the American Bakers
                                            Association Retirement Plan**

## CERTIFICATE OF SERVICE

I, Edward R. Mackiewicz, hereby certify that a true and exact copy of the foregoing *Reply Memorandum of Defendants American Bakers Association Retirement Plan and Board of Trustees in Support of their Motion to Dismiss Counts II and III of the Second Amended Complaint*, has been served on the following parties this 19th day of January, 2007, as indicated below:

*VIA ELECTRONIC FILING:*

M. Miller Baker
Sarah E. Hancur
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606

**Attorneys for Plaintiff Sara Lee Corp.**

Edward J. Meehan
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue
Washington, DC 20011
(202) 371-7000

Amanda S. Williamson
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606
(312) 407-0700

**On behalf of Third-Party Defendant Interstate Brands Corporation**

James Hamilton
Bingham McCutchen
2020 K Street, NW
Washington, DC 20006
(202) 373-6026

**On behalf of Third-Party Defendant American Bakers Association**

Jeffrey S. Jacobovitz
Schiff Hardin LLP
1666 K Street, NW  Suite 300
Washington, DC  20006
(202) 778-6400

**On behalf of Third-Party Defendant Lewis Brothers Bakery**

Lonie A. Hassel
Groom Law Group
1701 Pennsylvania Ave., NW
Washington, DC  20006
(202) 857-0620

**On behalf of Third-Party Defendant Harris Baking Co.**

*The following individuals have been served VIA FIRST CLASS MAIL:*

Israel Goldowitz, Acting Chief Counsel
Charles Finke, Associate Chief Counsel
Michael Mora, Assistant Chief Counsel
Paula Connelly, Assistant Chief Counsel
Marc Pfeuffer, Attorney
Mark Blank, Attorney
PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.
Washington,  DC  20005

**On behalf of Defendant Pension Benefit Guaranty Corporation**

James R. Kettering, Jr.
President
Kettering Baking Co.
729 Coleman Avenue
Fairmont, WV  26554

**On behalf of Third-Party Defendant Kettering Baking Co.**

Bernard Baker
President
Jenny Lee Bakery, Inc.
620 Island Avenue
McKees Rock, PA  15136

**On behalf of Third-Party Defendant Jenny Lee Bakery, Inc.**


/s/ Edward R. Mackiewicz
Edward R. Mackiewicz
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel:  (202) 429-3000
Fax: (202) 429-3902