EXHIBIT 1

# AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN

## 2002 RESTATEMENT

NOVEMBER 11, 2004

AS AMENDED THROUGH 11.16.2004

# AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN

## TABLE OF CONTENTS

| | |
|---|---|
| I.  DEFINITIONS | 1 |
| 1.01  Accrued Benefit | 1 |
| Actuary or Plan Actuary | 1 |
| Affiliate | 2 |
| Beneficiary | 2 |
| Board | 2 |
| Code | 2 |
| Contract Administrator | 2 |
| Credited Service | 2 |
| Deferred Retirement Date | 5 |
| Disability and Disabled | 5 |
| Disability Retirement Date | 5 |
| Early Retirement Date | 5 |
| Effective Date | 5 |
| Employee | 6 |
| Employer | 6 |
| ERISA | 7 |
| Forfeiture | 7 |
| Former Plan | 7 |
| Fund | 7 |
| Initial Participation Date | 7 |
| Insurance Company | 7 |
| Investment Manager | 8 |
| Joint-and-Survivor Annuity | 8 |
| Maternity or Paternity Leave | 8 |
| Named Fiduciary | 9 |
| Normal Retirement Date | 9 |
| One-Year Break in Service | 9 |
| Participant | 10 |
| Participating Employer | 10 |
| Participation Agreement | 10 |
| Plan | 10 |
| Plan Year | 10 |
| Qualified Domestic Relations Order | 11 |
| Qualified Joint and Survivor Annuity | 11 |
| Qualified Pre-Retirement Survivor Annuity | 11 |
| Rate of Contribution | 11 |
| Retiree | 11 |
| Retires or Retirement or Retiring | 11 |
| Trust | 12 |

2002 RESTATEMENT - 11/16/2004

i

|  |  |  |
|---|---|---|
| | Vesting Year of Service............................ | 12 |
| | Uncapped Service.................................. | 12 |
| | Vesting Year of Service ........................ | 12 |
| | Week of Service. ............................ | 13 |
| 1.02 | Gender and Number............................ | 14 |
| **II.** | **MANAGEMENT AND ADMINISTRATION OF THE PLAN**....... | **15** |
| 2.01 | Board is Named Fiduciary..................... | 15 |
| 2.02 | Board's Administrative Powers................ | 15 |
| 2.03 | Board's Right to Delegate to Contract Administrator.............................. | 17 |
| 2.04 | Liability of Fiduciaries and Right to Insure. | 17 |
| 2.05 | Information to be Provided to Participants and Others................................. | 17 |
| 2.06 | Annual Reports.............................. | 17 |
| 2.07 | Secretary................................... | 18 |
| 2.08 | Employee Information........................ | 18 |
| 2.09 | Non-Discrimination.......................... | 18 |
| 2.10 | Board Not Compensated....................... | 18 |
| 2.11 | Agent for Service of Process................ | 18 |
| **III.** | **ELIGIBILITY AND PARTICIPATION**...................... | **19** |
| 3.01 | Participants in Former Plan................. | 19 |
| 3.02 | Eligibility On and After September 30, 1976.. | 19 |
| 3.03 | Duration.................................... | 20 |
| **IV.** | **RETIREMENT BENEFITS**............................... | **21** |
| 4.01 | Normal Retirement Amount.................... | 21 |
| 4.01.1 | Optional Uncapped Service Benefit.......... | 23 |
| 4.02 | Deferred Retirement Amount.................. | 24 |
| 4.03 | Early Retirement Amount..................... | 24 |
| 4.04 | Disability Retirement Amount................ | 24 |
| 4.05 | Vested Benefit on Termination............... | 25 |
| 4.06 | Qualified Joint-and-Survivor Annuity......... | 25 |
| 4.07 | Qualified Pre-Retirement Survivor Annuity.... | 26 |
| 4.08 | Non-Duplication of Benefits................. | 27 |
| **V.** | **ALTERNATIVE OPTIONAL FORMS OF PENSION**............ | **30** |
| 5.01 | Alternative Benefit Options................. | 30 |
| 5.02 | Beneficiary's Death......................... | 32 |
| 5.03 | Small Payment Option........................ | 32 |
| 5.04 | Designation of Beneficiary.................. | 32 |

2002 RESTATEMENT - 11/16/2004

5.05 Insured Annuity................................ 33
5.06 Rules Concerning Actuarial Equivalence....... 36

**VI.   PAYMENT OF RETIREMENT BENEFITS**.................. 41

6.01     Benefit Commencement Dates.............. 41
6.01.1   Benefit Commencement Date - Qualified
         Pre-Retirement Survivor Annuity....... 42
6.02     Disability Payments..................... 42
6.03     Employment After Retirement............. 42
6.04     Effect of Amendments to Plan
         Changing  Benefits..................... 43
6.05     Limitation on Benefits.................. 44
6.05.1   Maximum Compensation Considered........ 55
6.06     Payment of Benefits by Delivery
         of Insured Annuities.................. 55
6.07     Payment of Retirement Benefits
         Upon Late Application.................. 55
6.08     Required Beginning Date................ 56

**VII.  CONTRIBUTIONS**.................................... 57

7.01 Employer Contributions....................... 57
7.02 Contribution Delinquencies................... 57
7.03 Minimum Contribution......................... 57
7.04 Actuarial Surcharges......................... 57
7.05 Special Contributions........................ 58
7.06 Forfeitures Do Not Increase Benefits......... 58
7.07 Refunds of Erroneous Contributions.......... 58
*7.08 (proposed) Minimum Funding Contributions*..... 58

**VIII. THE FUND**........................................ 59

8.01 Fund Management.............................. 59
8.02 Diversion Impossible......................... 59

**IX.   ACTUARIAL VALUATION**.............................. 60

9.01 Periodic Actuarial Review.................... 60

**X.    AMENDMENT OF THIS PLAN**........................... 61

10.01  Reservation of Right to Amend............. 61
10.02  Merger with Other Plans................... 61

XI.   TERMINATION........................................... 62

      11.01  Total Termination of Whole Plan............ 62
      11.02  Partial Termination of Plan................ 64
      11.02.1 Partial Termination Under IRC §411(d)(3).. 65
      11.03  Non-Discrimination......................... 65

XII.  MISCELLANEOUS PROVISIONS........................... 66

      12.01  Spendthrift Clause......................... 66
      12.02  Not A Contract of Employment............... 67
      12.03  Addresses.................................. 68
      12.04  Claims and Appeal Procedure................ 68
      12.05  Tax Qualified Plan......................... 68
      12.06  Payments to Person under Disability........ 68
      12.07  Termination for Loss of Association
             Membership................................. 68
      12.08  Saving Clause.............................. 69
      12.09  Top-Heavy Plan............................. 69

XIII. NATURE OF PLAN...................................... 70

      13.01  Association of Single Employer Plans....... 70
      13.02  Each Single Employer Plan to Provide
             Funds For Its Participants................. 70

ADDENDUM NO. 1

      Ad. 1    Definitions............................ Ad.-1
      Ad. 2    Top-Heavy Separate Plan Requirements.. Ad.-4
      Ad. 2.1  Vesting Rule........................... Ad.-4
      Ad. 2.2  Minimum Benefit Rule................... Ad.-4
      Ad. 2.3  Special Limitations in Case of More
               than One Plan.......................... Ad.-5
      Ad. 2.4  Minimum Benefit in Case of More than
               One Plan............................... Ad.-6

EXHIBIT A - PBGC LETTER

### AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN
#### 2002 RESTATEMENT - 1976 Preface

Preface. The American Bakers Association Retirement Plan (as amended and restated as of October 1, 1976) which follows seeks to bring the Plan into compliance with the requirements of the Employee Retirement Income Security Act of 1974 (ERISA) and yet retain, to the extent possible, the Plan as it was prior to the required changes.

Certain interpretations of ERISA regulations have been employed to meet the substance of the new rules and yet to avoid: (i) needless personnel record-keeping revisions, (ii) the multiplication of opportunities for mistakes, misunderstandings and controversies, and (iii) in general, forcing "round pegs into square holes."

The Trustees of the Plan are in receipt of determinations by the Pension Benefit Guaranty Corporation, the most recent of which is dated June 21, 1978, that for plan termination purposes the Plan is a group of single employer plans rather than a plan to which more than one employer contributes (see Article XIII and Exhibit A to the Plan). This concept is fundamental to the continuation of the Plan.

Notice is also hereby given that if future revision of ERISA rulings and regulations permit compliance in a manner deemed by the Trustees better suited to the purposes of the Plan and its common sense operation and more in line with the substance of the Plan's pre-ERISA provisions, changes will be made in this draft to take advantage of those revisions.

Notice is also hereby given that if any governmental agency will not permit the concept and provisions of Article XIII and the opinion in Exhibit A to remain substantially as set forth therein, this Plan will have been so radically altered that it will have to be terminated or substantially revised.

October 1, 1976

Board of Trustees,
AMERICAN BAKERS ASSOCIATION
RETIREMENT TRUST

2002 RESTATEMENT - AS AMENDED THROUGH 11.16.2004

# AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN
## 2002 RESTATEMENT

ANNE H.S. FRASER, PLAN COUNSEL
ANNE H.S. FRASER, P.C.
1320 19TH STREET, N.W, SUITE 200
WASHINGTON, D.C. 20005
202-466-4009

EDITION DATED 11.11.2004
AS AMENDED THROUGH 11.16.2004

AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN
2002 RESTATEMENT

ARTICLE I

DEFINITIONS

1.01  Definitions.  The following terms when used herein and initially capitalized as below indicated shall, unless the context clearly indicates otherwise, have the following respective meanings, namely:

"Accrued Benefit," when used in reference to a Participant at his Normal Retirement Date means his annual basic benefit determined as set forth in Section 4.01 hereof; and when used in reference to a Participant as of any given time prior to his Normal Retirement Date, means the product of (i) and (ii) or (i) and (iii) whichever is applicable, where:

(i)  equals the annual benefit commencing at his Normal Retirement Date (determined as set forth in Section 4.01 hereof) to which such Participant would be entitled assuming the terms of the Plan and his Rate of Contribution (as of such given time) remain the same to his Normal Retirement Date and assuming he commenced his participation at the earliest possible entry age; and

(ii) equals 4% multiplied by the number of his years of Credited Service at such given time (but not in excess of 100% except where the Participant is entitled to an Uncapped Service Benefit under Section 4.01.1 of the Plan), if at such given time such Participant has both attained age 47 and completed 15 years of Credited Service; and

(iii) equals 3% multiplied by the number of years of Credited Service at such given time (but not in excess of 100%), if at such given time such Participant has not both attained age 47 and completed 15 years of Credited Service.

"Actuary" or "Plan Actuary" means an actuary who is enrolled by the Joint Board for the Enrollment of Actuaries established under ERISA and who is selected by the Board from time to time to provide the actuarial reports and perform the actuarial services for the Plan and the Trust.

1

"Affiliate," when used in reference to a corporate Employer, means any corporation controlling, controlled by, or under common control with the Employer. For these purposes, a corporation is deemed to control another corporation if the controlling corporation owns, either alone or through other controlled corporations, more than 50% of the voting power of the controlled corporation.

"Beneficiary" means such person or persons as are concurrently or successively entitled to receive benefits hereunder by reason of the death of a Participant.

"Board" means the trustees of the Trust.

"Code" means the Internal Revenue Code of 1954 as from time to time amended.

"Contract Administrator" means the person or organization so designated by the Board in accordance with the provisions of Section 2.04 hereof, or in the event no such designation is in effect, such term means the Board.

"Credited Service" when used in reference to a Participant for the purpose, among others, of determining the amount of his Accrued Benefit prior to, at or after his Normal Retirement Date, means the sum of the following years (and fractions of years, if any):

(i) for the period preceding October 1, 1976, each year for which he accumulated credit as a year of credited service used in computing the benefits at Normal Retirement Date under the Former Plan;

(ii) for periods after September 30, 1976, each Plan Year for which his Participating Employer makes weekly contributions on his behalf in accordance with a Participation Agreement for a full 52 weeks;

(iii) a fractional part of a year for each Plan year after September 30, 1976 during which his Participating Employer makes weekly contributions on his behalf in accordance with a Participation Agreement for at least 10 weeks but less than 52 weeks which bears the same ratio to a full year of Credited Service as the number of such contributed weeks bears to 52;

(iv) a fractional part of a year for the Plan Year after September 30, 1976 in which he Retires and during which his Participating Employer makes weekly contributions on his behalf in accordance with a Participation Agreement for less than 10 weeks which bears the same ratio to a full year of Credited Service as the number of such contributed weeks bears to 52:

(v) for each Participant whose Participating Employer's Effective Date occurs after September 30, 1976, his last period of service with his Participating Employer (including the predecessors in business of such Participating Employer) immediately preceding the Effective Date on which such Participating Employer commenced participation in the Plan and commenced making contributions in his behalf except that no such service shall be counted which precedes 3 or more successive One-Year Breaks in Service; and such period shall be calculated and credited to the nearest completed month of such service, and the length of such period shall be certified by such Participating Employer to the Contract Administrator as of such Effective Date at the time of applying for participation herein;

(vi) for each Participant whose Initial Participation Date occurs after September 30, 1976 and before July 1980, by reason of any of the following occurrences:

(a) the addition of his Participating Employer of a new category of Employees (including said Participant) for whom his Participating Employer makes contributions under the Plan, or

(b) a change in the employment of such Participant by transfer within the employment of his Participating Employer or by transfer into the employment of his Participating Employer, pursuant to which he becomes an Employee for whom his Participating Employer commences making contributions under the Plan,

then as such Participant completes each successive 2 full years of Credited Service prior to July 1, 1980, computed as provided in clauses (ii), (iii) and (iv) above, he shall be given credit for one additional full

year of Credited Service for each 12 months of his service with his Participating Employer next preceding his Initial Participation Date except that no such service shall be counted which precedes 3 or more successive One-Year Breaks in Service;

provided, however, that unless the Participating Employer has elected otherwise as provided in Section 4.08, such Credited Service shall be reduced by any period or periods of Credited Service for which such Participant at any time receives credit toward the accrual of a benefit (whether or not such benefit is necessarily attributable to any part or all of such period or periods of Credited Service) under any pension plan (other than this Plan and other than the American Society of Association Executives Retirement Plan as it applies to employees of The American Bakers Association)

    (i)        which meets the requirements of Section
               401 of the Code, and

    (ii)       to which his Participating Employer made
               contributions on his behalf, and

    (iii)      under which he or his beneficiary becomes
               entitled to a benefit;

provided, however, that for periods after September 30, 1976, in the case of a Participant who does not have a nonforfeitable right to an Accrued Benefit, years of Service after his Initial Participation Date which would otherwise be Credited Service which occur before any One-Year Break in Service shall not be taken into account if the number of successive One-Year Breaks in Service is at least three and equals or exceeds the aggregate number of his years of Credited Service before such One-Year Break in Service; and further provided, that for periods after September 30, 1985, in the case of a Participant who does not have a nonforfeitable right to an Accrued Benefit, years of service after his Initial Participation Date, which would otherwise be Credited Service which occur before any One-Year Break in Service shall not be taken into account if the number of successive One-Year Breaks in Service is at least five and equals or exceeds the aggregate number of years of Credited Service before such One-Year Break in Service, whichever is greater; and the aggregate number of years of Credited Service before any such One-year Break in Service shall be deemed not to include any years of Credited Service similarly not required to be taken into account by reason of any prior One-Year Break in Service.  For

these purposes a Participant shall be deemed to have completed a Week of Service for each week for which contributions are erroneously omitted but later paid. No Participant will be credited with more than one year of Credited Service with respect to any Plan Year.

Notwithstanding any provision of this plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Internal Revenue Code.

"Deferred Retirement Date" means the date on which a Participant, who has remained in service after his Normal Retirement Date with the consent of his Participating Employer, retires.

"Disability" and "Disabled" means a physical or mental condition resulting from bodily injury or disease or mental disorder which, in the opinion of the Board on the basis of medical evidence satisfactory to the Board, renders a Participant incapable of engaging in any substantial employment. The Board shall be the sole and final judge of such disability and its decision shall be conclusive and binding on all parties.

"Disability Retirement Date" means the date on which a Participant for whom contributions have been made by his Participating Employer for at least 6 months, and who has completed at least 10 years of Credited Service or at least 5 years of Credited Service and at least 15 years of employment with a Participating Employer which would meet the test of Vesting Years of Service for post-September 30, 1976 Participants, and has not yet attained his Normal Retirement Date, terminates his employment with a Participating Employer by reason of Disability.

"Early Retirement Date" means the date on which a Participant for whom contributions have been made by his Participating Employer for at least 6 months, and who has completed 10 years of Credited Service or at least 5 years of Credited Service and at least 15 years of employment with a Participating Employer which would meet the tests of Vesting Years of Service for post-September 30, 1976 Participants, retires within the 10 year period next preceding his Normal Retirement Date.

"Effective Date" means October 1, 1961, with respect to any person, company or business organization which became a Participating Employer as of that date and with respect to any person,

company or business organization becoming a Participating Employer thereafter it shall mean the date on which such person, company or business organization first meets the definition of a Participating Employer.

"Employee" means a person in an employee-employer relationship with a Participating Employer. "Employee" shall include any employee of any other employer required to be aggregated with such employer under Sections 414(b), (c), (m) or (o) of the Internal Revenue Code and any leased employee of any "Employer" as defined herein.

As used herein, the term "leased employee" means any person who is not an employee of the recipient and who provides services to the recipient if -

> (A) such services are provided pursuant to an agreement between the recipient and any other person (in this subsection referred to as the "leasing organization"),
>
> (B) such person has performed such services for the recipient (or for the recipient and related persons) on a substantially full-time basis for a period of at least 1 year, and
>
> (C) such services are performed under primary direction or control by the recipient.

With respect to any person (hereinafter in this subsection referred to as the "recipient") for whom a leased employee performs services, the leased employee shall be treated as an employee of the recipient, but contributions or benefits provided by the leasing organization which are attributable to services performed for the recipient shall be treated as provided by the recipient.

In the case of a person who is an employee of the recipient (whether by reason of this subsection or otherwise), years of service for the recipient shall be determined by taking into account any period for which such employee would have been a leased employee but for the requirements of subparagraph (B), above.

"Employer" means any person, company or business organization which is a member of the American Bakers Association so long as he or it remains a member of such Association.

"ERISA" means the Employee Retirement Income Security Act of 1974, as from time to time amended.

"Forfeiture" means such amount of a Participant's Accrued Benefit as shall not be distributable to him or his Beneficiary in accordance with the provisions of Section 4.05 hereof and is thus forfeited.

"Former Plan" means the American Bakers Association Retirement Plan effective October 1, 1961, as amended to and in existence at the time of the amendment and restatement thereof effective October 1, 1976.

"Fund" means the entire trust fund from time to time held by the Board pursuant to the Trust for the purposes of the Plan.

"Highly Compensated Employee." Effective for the Plan Year beginning October 1, 1997 and thereafter, the term highly compensated employee means any employee who: (1) was a 5-percent owner at any time during the Plan Year or the preceding Plan Year; (2) for the preceding Plan Year had compensation from the employer in excess of $80,000 and was in the top-paid group for the preceding Plan Year.  The $80,000 amount is adjusted at the same time and in the same manner as under section 415(d), except that the base period is the calendar quarter ending September 30, 1996.

For this purpose the applicable Plan Year for which a determination is being made is called a determination Plan Year and the preceding 12-month period is called a look-back Plan Year.

A highly compensated former employee is determined in accordance with the regulations in effect under Code Section 414(q).

"Initial Participation Date" when used with reference to a Participant means the initial date as of which he becomes eligible to be a Participant.

"Insurance Company" means any legal reserve insurance company selected by the Board which may hold and invest assets of

the Fund and which underwrites any form of contract to provide for all or part of the benefits under the Plan.

"Investment Manager" means a person or organization:

(a)  who is designated by the Board to have the unlimited or limited authority and power to manage, acquire or dispose of any asset in the Fund, and

(b)  who is registered as an investment adviser under the Investment Advisers Act of 1940, is a bank as defined in that Act, or is an Insurance Company qualified to perform such services under the laws of more than one State, and

(c)  who has acknowledged in writing that he is a fiduciary with respect to the Plan.

"Joint-and-Survivor Annuity" means a monthly annuity for the life of the Participant with a monthly annuity payable to a survivor after the Participant's death.  Where the survivor is the Participant's spouse, the Joint-and-Survivor Annuity shall be a "Qualified Joint-and-Survivor Annuity."  Where the survivor is a designated beneficiary other than the spouse, the Joint-and-Survivor Annuity means a monthly annuity for the life of the Participant with a monthly annuity for the designated beneficiary for the lesser of a) five years from the date of the Participant's death or b) the designated beneficiary's lifetime.

"Maternity or Paternity Leave" for purposes of calculating vesting years of service means leave taken after December 31, 1984, of up to 501 hours which are hours which otherwise would normally have been credited to such individual but for such absence, or if normal working hours cannot be determined, 8 hours of service per day of absence.  Such absence must be certified by the employee and approved by the employer according to procedures determined by the Plan Administrator as leave taken for one of the following reasons:

(i)      pregnancy of the individual;

(ii)     birth of the child of the individual;

(iii)    place of a child in connection with the adoption of the child by the individual; or

(iv)    for purposes of caring for the child during the period immediately following the birth or placement for adoption (excluding foster home placement).

"Named Fiduciary" means the persons who have authority to control and manage the operation and administration of the Plan as set forth in Article II.

"Normal Retirement Date" when used in reference to a Participant means the earliest date on which (I), (ii) and (iii) are all satisfied:

(i)    he has attained his 65th birthday;

(ii)    contributions have been made for him by his Participating Employer for at least 6 months;

(iii)    the earlier of (A) or (B) has occurred where

(A) is the 5th anniversary of the commencement of his participation in the Plan; and

(B) is the date he has completed 10 years of Credited Service.

"One-Year Break in Service" when used in reference to a Participant means a Plan Year (or other appropriate 12 month period for service prior to such Participant's Initial Participation Date) during which he has completed 10 Weeks of Service or less; provided, however, that for plan years beginning after October 1, 1984, an absence from work for maternity or paternity leave (as hereinabove defined) shall be credited toward a Participant's Weeks of Service only in the year in which such absence begins if such absence, if not credited, would result in

a break in service in that year, or, in any other case, in the following year. An absence for maternity or paternity leave is disregarded for purposes of accrued benefits requirements.

"Participant" means an Employee or a former Employee who is eligible to participate in the Plan or in its benefits, or who is receiving such benefits or who is eligible to receive a vested benefit the payment of which is deferred.

"Participating Employer" means:

    (i)        any member of the American Bakers Association, so long as such membership is maintained.

    (ii)     any Affiliate of such a member provided such member is a corporation,

    (iii)    an appropriate plant or unit of such a member of such an Affiliate, and

    (iv)     the American Bakers Association, in its capacity as an employer,

which agrees in a Participation Agreement to make contributions to the Fund and is accepted by the Board for participation in the Plan.

"Participation Agreement" means the contract by which an Employer agrees with the Board to participate in the Plan and agrees to be bound by the terms and provisions of the Plan, and to make contributions to the Fund on behalf of certain of its Employees.

"Plan" means the AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN as set forth herein as from time to time amended.

"Plan Year" means the fiscal year commencing October 1 of any year and ending with the next succeeding September 30.

"Qualified Domestic Relations Order" means a qualified domestic relations order as defined at Section 414(p) of the Internal Revenue Code, which is filed with the Board or its designated agent before payment of benefits commences; or any domestic relations order entered before January 1, 1985, if payments pursuant to the order have commenced on or before January 1, 1985. The Board may, in its uncontrolled discretion, treat a domestic relations order entered prior to January 1, 1985, as a Qualified Domestic Relations Order if payment of benefits has not commenced as of January 1, 1985.

"Qualified Joint-and-Survivor Annuity" means a monthly annuity for the life of the Participant with a monthly survivor annuity for the life of the spouse which is not less than 50 percent of and not greater than 100 percent of the amount of the annuity which is payable during the joint lives of the Partici-pant and the spouse, and which is equal to the amount payable as a single annuity for the life of the Participant.

"Qualified Pre-Retirement Survivor Annuity" means a monthly survivor annuity for the life of the surviving spouse of a deceased Participant which is equal to the amount that would have been payable as a Qualified Joint-and-Survivor Annuity if the Participant had retired the day before his date of death, as set forth in Sections 4.06 and 4.07 hereof.

"Rate of Contribution" means the weekly contribution from time to time made on behalf of the Participant by his Participat-ing Employer in accordance with the terms of the Plan and the Participation Agreement entered into by and between the Board and such Participating Employer, excluding, however, any additions for late participation, any actuarial surcharges and any special contributions to provide an Uncapped Service Benefit under Section 4.01.1 of Article IV.

"Retiree" means a Participant who has terminated his employment and has commenced to receive a retirement or disabili-ty benefit under the Plan.

"Retires" or "Retirement" or "Retiring" when used in reference to a Participant means the termination of such Participant's service with his Participating Employer under circumstances which would entitle him to commence receiving a

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004          11

Normal, Deferred, Early or Disability Retirement pension in accordance with Articles IV and VI of this Plan.

"Trust" means the AMERICAN BAKERS ASSOCIATION RETIREMENT TRUST established by the Trust Agreement dated September 19, 1961, as from time to time amended.

"Uncapped Service" or "Uncapped Service Benefit" means Credited Service in excess of 25 years, or a benefit based on such service, where a Participating Employer has elected to provide an Uncapped Service Benefit in accordance with Article IV, Section 4.01.1 of the Plan.

"Vesting Year of Service" when used in reference to a Participant for the purpose, among others, of determining the nonforfeitable percentage of his Accrued Benefit (under Section 4.05 hereof) means:

(i)   for Participants on October 1, 1976, each year prior to that date for which he accumulated credit as a year of credited service under the Former Plan, and each Plan Year after that date and after his 18th birthday (22nd birthday for Participants who are separated from service prior to October 1, 1985 or who have not completed one hour of service on or after October 1, 1985) during which he has completed at least 20 Weeks of Service, and

(ii)  for each Participant who was not a Participant on and before October 1, 1976, each Plan Year after his 18th birthday (22nd birthday for Participants who are separated from service prior to October 1, 1985, or who have not completed one hour of service on or after October 1, 1985) during which he has completed at least 20 Weeks of Service since the earliest Effective Date of any Participating Employer by which he is or has been employed.

and further provided, however, that in the case of a Participant who does not have a nonforfeitable right to an Accrued Benefit, years of service which would otherwise be Vesting Years of

Service which occur before any One-Year Breaks in Service is at least three (at least five for periods after September 30, 1985) and equals or exceeds the aggregate number of such Vesting Years in Service before such One-Year Break in Service; and such aggregate number of Vesting Years of Service before any such One-Year Break in Service shall be deemed not to include any Vesting Years of Service similarly not required to be taken into account by reason of any prior One-Year Break in Service. No more than one year of Vesting Service shall be counted for a Participant for any one Plan Year.

"<u>Week of Service</u>" when used in reference to an Employee (including periods in which he is an employee, an Employee or a Participant), means each record week (defined below) for which he is directly or indirectly paid, or entitled to payment, by his employer (including periods before, during and after such employer is a Participating Employer) for the performance of duties or for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by such employer, and for reasons other than the performance of duties such as, but not limited to, vacations, holidays, jury duty, paid leaves of absence, qualified military duty or leave of absence under the Uniformed Services Employment and Re-employment Rights Act, paid sick time and periods for which Workmen's Compensation payments are made. "Record Weeks" are determined as follows:

(i)  For an Employee for whom records (such as payroll records) are kept, or are required to be kept, reflecting hours worked or for which payment is made or owing, each calendar week in which there are:

(a)  at least 20 such hours, and

(b)  at least 3 days in which such hours occur or, for hours not worked, such hours as regularly scheduled to occur,

shall be a record week.

(ii) For an Employee for whom records of hours worked or for which payment is made or owing are neither kept nor required to be kept, such as, but not

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

13

limited to, salaried Employees or those compensated on a commission or piecework basis:

(a)  if records are kept for him for days worked or for which payment is made or owing, then each calendar week in which there are 3 such days shall be a record week; or

(b)  if records are kept for him for calendar weeks worked or for which payment is made or owing, then each such calendar week shall be a record week.

In counting the Weeks of Service of an Employee, all employees of Affiliates shall be treated as employed by a single employer. Further, in counting the Weeks of Service of an Employee not already counted by reason of the preceding sentence, all Participating Employers shall be treated as a single employer so long as such Employee maintains continuity of employment or continuity of Plan coverage.

1.02  Gender and Number.  The masculine pronoun whenever used herein shall be deemed to include the feminine and the neuter, and the singular shall be deemed to include the plural whenever the context requires.

ARTICLE II

MANAGEMENT AND ADMINISTRATION OF THE PLAN

2.01 Board is Named Fiduciary. The Board shall be the Named Fiduciary of the Plan and as such shall have the full authority and responsibility under and in accordance with the Plan to control and manage the operation and administration of the Plan, and under and in accordance with the Trust, to manage and control the assets of the Fund.

2.02 Board's Administrative Powers. The Board shall have full power and authority, within the limits provided by the Plan:

(a) To authorize any person, company or business organization which the Board finds eligible to participate and which applies for participation in the Plan to become a Participating Employer; and to prescribe in the Participation Agreement the terms and conditions under which such person, company or business organization shall become a Participating Employer, and in making a determination as to the participation of a new Participating Employer, the effect upon the actuarial soundness of the Plan shall be given due consideration;

(b) To terminate the participation herein of a Participating Employer for violation of the terms of the Plan, the Participation Agreement or the rules adopted hereunder;

(c) To make determinations as to the eligibility of an Employee to Participate in the Plan;

(d) To determine all matters relating to the service of Employees and Participants, such determinations to be based on information filed by the Participating Employer and the Employee or Participant with the Board and such other information as is available to the Board;

(e)   To receive and process applications for benefits under this Plan;

(f)   To make interpretations and applications of the Plan and its provisions;

(g)   To adopt such rules and regulations as it may deem reasonably necessary for the proper and efficient administration of the Plan and not inconsistent with the purposes and provisions of the Plan;

(h)   To enforce the Plan in accordance with its terms, and with the Board's own rules and regulations;

(i)   To appoint a Plan Actuary to prepare the actuarial reports and perform the actuarial services for the Plan and the Trust;

(j)   To appoint a Plan Auditor to audit the books of the Plan and Trust, prepare the Plan's financial statements and render accounting services from time to time as requested by the Board;

(k)   To appoint an Investment Manager to manage, acquire and dispose of all or any part of the assets of the Trust;

(l)   To appoint and consult with such legal or other consultants or agents as the Board deems advisable to assist in the management or administration of the Plan and the Trust; and

(m)   To do all other acts, in its judgment necessary or desirable, for the proper and advantageous administration of the Plan;

and the due exercise by the Board of any and all such powers and authorities shall be conclusive and binding on all persons whomsoever for the purposes of the Plan and Trust.

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

16

2.03 <u>Board's Right to Delegate to Contract Administrator</u>. The Board may designate a Contract Administrator and delegate and assign to such Contract Administrator all or any part of the Board's administrative powers, duties and responsibilities hereunder, and to the extent such delegation has occurred, any reference in the Plan to "Board" shall mean and refer to the "Contract Administrator."

2.04 <u>Liability of Fiduciaries and Right to Insure</u>. The Association, each Participating Employer, the Contract Administrator, and the directors, officers, employees and agents of each of them and the Board, each of the member Trustees, and the secretary, employees, agents and consultants of the Board or any of them (herein called "involved persons") shall not, except as provided in ERISA, incur any personal liability for the breach of any responsibility, obligation or duty in connection with any act done or omitted to be done in good faith in the management and administration of the Plan and Trust and the investment and handling of the Fund and shall be indemnified and held harmless by the Trust from and against any such personal liability including all expenses reasonably incurred in its or their defense. The Plan and Trust may purchase insurance to cover potential liability of the involved persons with regard to the Plan and Trust. The Trust at its expense may insure itself against loss by misdeeds or omissions of the involved persons, but the insurer shall have recourse against the involved persons. The individual trustees of the Trust, or their employers, or the Association may at their or its expense obtain insurance to cover the exposure of the involved persons by reason of such right of recourse.

2.05 <u>Information to be Provided to Participants and Others</u>. The Board shall furnish and make available to Participants and Beneficiaries, and to the Secretary of Labor or his delegate, to the Secretary of the Treasury or his delegate, and to or for the Secretary of Health, Education and Welfare or his delegate, such plan descriptions, summaries, reports, registration statements, notifications and other documents as may be required by ERISA and the Code and regulations thereunder.

2.06 <u>Annual Reports</u>. The Board, as the administrator of the Plan and trustee of the Trust shall prepare, or cause to be prepared, an annual report for each Plan Year containing such financial statements, actuarial reports and other information in such form and for such delivery and availability at such times

and in such manner, all as may be required by ERISA and the Code and regulations thereunder and the Board shall retain such records for such periods as may be required by such laws and regulations.

2.07 Secretary. The Board will appoint a secretary who may, but need not, be a member of the Board, and any document required to be filed with, or any notice required to be given to, the Board will be properly filed or given if mailed by registered mail or delivered to the secretary of the Board in care of the Association. The Board shall notify each Participating Employer in writing of the person appointed to act as secretary of the Board and of any change therein and the Participating Employers will be protected in relying on such written notice in dealing with the secretary.

2.08 Employee Information. Each Participating Employer and each Employee, Participant and Beneficiary shall provide the Board with such information the Board may deem necessary or advisable for making determinations under the Plan with respect to Years of Participation, amount of contributions, eligibility for participation and retirement benefits, retirement dates and the modes of payment of retirement benefits.

2.09 Non-Discrimination. The Board in administering this Plan with respect to Participants shall act in a uniform non-discriminatory manner under like circumstances with respect to all Participants similarly situated.

2.10 Board Not Compensated. No member of the Board shall receive any compensation for his services as such from the contributions made to the Fund, but may be reimbursed for any expenses incurred in the transaction of the Board's business with respect to this Plan.

2.11 Agent for Service of Process. Plan Counsel shall be the agent for service of process for the Plan and Trust, and such agent's address is: Anne H.S. Fraser, P.C., 1501 M Street, N.W., Suite 1150, Washington, D.C. 20005.[*] Such agent may be changed by the Board by due notice to the Participating Employers, Participants and Beneficiaries. [* Eff. 11/1/2004, 1320 19th St. NW, Suite 200, Washington, D.C. 20036, tel. 202-466-4009.]

## ARTICLE III

### ELIGIBILITY AND PARTICIPATION

3.01 <u>Participants in Former Plan</u>.  Each Employee for whom his Participating Employer was making contributions under the Former Plan on October 1, 1976, and who upon the amendment and restatement thereof becoming effective on said date continues as such an Employee, shall, on said date, be a Participant.  Also each Retiree on October 1, 1976, and each former Employee whose employment with a Participating Employer has terminated prior to that date but who is entitled to a vested benefit under the Former Plan to commence at his Normal or Early Retirement Date shall be a Participant on that date.

3.02 <u>Eligibility On and After September 30, 1976</u>.  Each Employee:

(i)        who is not already a Participant by reason of the provisions of Section 3.01 above, and

(ii)       whose terms of employment are not determined by a collective bargaining agreement with respect to which there is evidence that retirement benefits were the subject of good faith bargaining, unless such collective bargaining agreement has a specific provision which makes this Plan applicable to him, and

(iii)      for whom his Participating Employer makes weekly contributions to the Fund in accordance with a Participation Agreement,

shall be eligible to be and shall become a Participant. In the event a participant is no longer a member of an eligible class of employees and becomes ineligible to participate but has not incurred a break in service, such employee will participate immediately upon returning to an eligible class of employees. If such participant incurs a break in service, eligibility will be determined under the break in service rules of the plan.

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

19

In the event an employee who is not a member of an eligible class of employees becomes a member of an eligible class, such employee will participate immediately if such employee has otherwise satisfied all eligibility requirements.

3.03 <u>Duration</u>.   A Participant shall continue to be a Participant until he has a One-year Break in Service and also shall continue to be a Participant thereafter for so long as he is entitled to receive any benefits hereunder regardless of when such benefits are payable.   If, when he has a One-Year Break in Service, he is not entitled to receive (then or thereafter) a benefit hereunder, he thereupon shall cease to be a Participant unless and until his right to a benefit re-arises by reason of re-employment as an Employee.

ARTICLE IV

RETIREMENT BENEFITS

       4.01 <u>Normal Retirement Amount</u>. Subject to the provisions of Section 4.06, the monthly retirement amount commencing at Normal Retirement Date for a Participant retiring on or after October 1, 1997, who has then completed at least 25 years of Credited Service shall be 58 (62 for service earned prior to 10/1/97) multiplied by the number of dollars and fraction of a dollar in the average weekly Rate of Contribution for such Participant over his last year of Credited Service for which contributions have been made for him by a Participating Employer. For example:

| Average Weekly Rate of Contribution over Last Year of Credited Service | Monthly Retirement Amount |
|---|---|
| $ 2.00 | $116.00 |
| 4.00 | 232.00 |
| 5.00 | 290.00 |
| 6.00 | 348.00 |
| 8.00 | 464.00 |
| 10.00 | 580.00 |
| 12.00 | 696.00 |

The monthly retirement amount commencing at Normal Retirement Date for a Participant retiring on or after October 1, 1997, who has completed less than 25 years of Credited Service shall be (a) below multiplied by (b) below, where

     (a)  equals 58 (62 for service earned prior to 10/1/97) (62 for all service for Participants earning Credited Service on or after 6/1/2000) multiplied by the number of dollars and fraction of a dollar in such average weekly Rate of Contribution for such Participant , and

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

21

(b)  equals a fraction, the numerator of which is the number of years of Credited Service and fraction of a year of Credited Service of such Participant to Normal Retirement Date and the denominator of which is 25.

Notwithstanding the first paragraph of this section, the monthly retirement amount for a Participant retiring on or after October 1, 1998 whose Participating Employer has elected to provide an Uncapped Service Benefit under Section 4.01.1 shall be (a) multiplied by (b) below, where:

(a)  equals 58 (62 for service earned prior to 10/1/97) (62 for all service for Participants earning Credited Service on or after 6/1/2000) multiplied by the number of dollars and fraction of a dollar in such average weekly Rate of Contribution for such Participant, and

(b)  equals a fraction, the numerator of which is the number of years of Credited Service and fraction of a year of Credited Service of such Participant to Normal Retirement Date and the denominator of which is 25.The monthly retirement amount for Participants retiring before October 1, 1997 will be calculated according to the Plan provisions in effect on the Participant's retirement date, except that for Participants receiving pensions on October 1, 1997, benefits shall be increased by a factor of 1.0164.

In no event shall the monthly amount payable at Normal Retirement Date be less than the monthly amount he could have had at any Early Retirement Date. A Participant who attains his Normal Retirement Date while receiving a Disability Benefit (as provided in Section 4.04 hereof) shall in lieu of such Disability Benefit then become entitled to receive a Normal Retirement amount (determined in accordance with the provisions of this Section 4.01).

In the event a Participant leaves the employ of a Participating Employer and subsequently becomes employed by another Participating Employer without incurring a break-in-service which would result in loss of Credited Service under the terms of this Plan, and where the subsequent Participating Employer's weekly contribution for the Participant during the Participant's last year of Credited Service with said Participating Employer is less

than the weekly contribution for the Participant made during the Participant's last year of Credited Service with the preceding Participating Employer, then a separate calculation of the monthly retirement amount shall be made according to the average weekly rate of contribution in effect over the last 52 weeks of Credited Service with each such Participating Employer [(a) above] multiplied by a fraction, the numerator of which is the number of years of Credited Service with that Participating Employer and the denominator of which is 25 [(b) above], and the sum of said separate calculations shall constitute the monthly retirement amount for such Participant. Except where an Uncapped Service Benefit in accordance with Section 4.01.1 or a benefit excluded from the Non-Duplication provisions of Section 4.08 under Section 4.08° applies to the Participant, in no event shall the sum of years of Credited Service so calculated exceed 25 years, and where a Participant has served a total of more than 25 years in service with more than one Participating Employer, the years of Credited Service at the higher or highest rate shall be calculated first and applied toward the maximum of 25 years to afford the Participant the benefit of all years of service at the highest applicable rate.

Should the termination or commencement of employment with one or the other Participating Employers not occur on an anniversary of employment, any fraction of a year immediately preceding or following commencement or termination of employment with a Participating Employer shall be included in the separate calculation in which the higher or highest applicable rate of contribution with a Participating Employer is multiplied to determine the monthly retirement amount.

   4.01.1 Optional Uncapped Service Benefit. A Participating Employer may elect to provide benefits for years of service in excess of the maximum of twenty-five (25) years (and with no maximum) for Participants ("Uncapped Service Benefit"). Such election shall be made in the participation agreement or in another form acceptable to the Board and shall require payment by the Participating Employer of an additional contribution to the Plan of Forty-Nine Cents ($0.49) for each one dollar ($1.00) of the weekly Rate of Contribution in addition to and not in lieu of the weekly Rate of Contribution and any applicable surcharges. The enhanced optional benefit referenced herein shall be treated as the Normal Retirement Amount for all Participants to whom such optional enhanced benefit applies for all purposes under the Plan. Any such election may not be revoked.

4.02 <u>Deferred Retired Amount</u>.  Subject to the provisions of Section 4.06, the monthly retirement amount commencing at Deferred Retirement Date for a Participant who then retires shall be the monthly retirement amount computed as set forth in Section 4.01 hereof accrued to such Deferred Retirement Date (by substituting Deferred Retirement Date for Normal Retirement Date in making the computation), increased by (I) one percent (.01) for each month that the Deferred Retirement Date succeeds the Participant's attainment of age 65, for all months that precede both the Deferred Retirement date and the Participant's attainment of age 70 and ½; (II) one-and-one-half percent (.015) for each month that the Deferred Retirement Date succeeds the Participant's attainment of age 70 and ½, for all months that precede both the Deferred Retirement Date and the Participant's attainment of age 75; and (III) three percent (.03) for each month that the Deferred Retirement Date succeeds the Participant's attainment of age 75, and shall not be less than the monthly amount to which he would have been entitled at Normal Retirement Date.

4.03 <u>Early Retirement Amount</u>.  Subject to the provisions of Sections 4.06 and 4.07 the monthly retirement amount commencing at Early Retirement Date for a Participant retiring on or after October 1, 1997 shall be the monthly retirement amount computed in accordance with the provisions of Section 4.01 by substituting his Early Retirement Date for Normal Retirement Date in making the computation, reduced by 25 hundredths of one percent (25/100ths of 1% or .0025) [5 tenths of one percent (5/10 of 1%) for Participants retiring before October 1, 1997] for each month that his Early Retirement Date precedes his Normal Retirement Date.

4.04 <u>Disability Retirement Amount</u>.  Subject to the provisions of Section 4.06 the monthly disability amount commencing at Disability Retirement Date for a Participant shall be equal to two-thirds (2/3) [seventy-five percent (75%) for Participants who first become Disabled after June 1, 1991] of the monthly retirement amount computed in accordance with the provisions of Section 4.01 by substituting Disability Retirement Date for Normal Retirement Date in making the computation.  In no event shall a Participant who is receiving a disability benefit (under the provisions of this Section 4.04) become entitled to an Early Retirement benefit (under the provisions of Section 4.02 hereof) during the continuance of his Disability.

4.05 <u>Vested Benefit on Termination</u>.  If a Participant's service is terminated after September 30, 1976, for a reason other than death or Retirement, after his Participating Employer has made weekly contributions on his behalf for not less than 6 months and after he has:

    (i)    completed at least 10 full Years of Vesting Service in the case of a Participant whose service is terminated prior to October 1, 1988, or 5 full Years of Vesting Service in the case of a person who is a Participant on October 1, 1988, or a person who first becomes a Participant after that date, or

    (ii)   attained his 47th birthday and completed at least 15 full years of Credited Service.

such Participant shall be entitled to a benefit amount equal in value to his Accrued Benefit determined as of the date of such termination, <u>provided</u>, <u>however</u>, that each Participant with not less than 10 Vesting Years of Service on October 1, 1976, shall be permitted to elect prior to June 1, 1978, to have the amount of his nonforfeitable interest in his Accrued Benefit determined under the provisions of the Former Plan. · Subject to the provisions of Section 4.06, any amount of a Participant's said Accrued Benefit to which he is entitled as above set forth shall be a monthly pension amount payable to the Participant on the first day of each month commencing after his Normal Retirement Date and ending with the month in which his death occurs. A Participant whose service with his Participating Employer is terminated before the earliest date which would be his Early Retirement Date if he then retired, and who has completed at least ten years of Credited Service shall upon his prior written election delivered to the Board, be entitled to receive the benefit provided in Section 4.03 commencing on the first day of the calendar month coincident with, or, failing that, next following his earliest Early Retirement Date and before his Normal Retirement Date as if he has then retired.

4.06 <u>Qualified Joint-and-Survivor Annuity</u>.  If a Participant is married on his Benefit Commencement Date as defined at Section 6.01, and the Participant and his spouse have been married throughout the one-year period ending on the later of a) the Participant's Benefit Commencement Date, or b) the date of the Participant's death, unless the Participant has elected another

form of benefit in the manner provided in Section 5.01, then the
Retirement Benefit payable under this Plan shall be in the form
of a Qualified Joint-and-Survivor Annuity calculated in accor-
dance with Section 5.06(b).

   4.07 <u>Qualified Pre-Retirement Survivor Annuity</u>.   If a
Participant dies after attaining age 55, and all of the following
conditions are met as of the date of his death:

   (a)  Distribution of benefits has not yet commenced;

   (b)  He has been married to his spouse throughout the
        one year period preceding the later of (I) the
        date of his death or (ii) his Benefit Commence-
        ment Date;

   (c)  Contributions have been made on his behalf by his
        Employer for at least six months; and

   (d)  He has completed such service as would entitle
        him to a Vested Benefit Upon Termination under
        Section 4.05 of this Plan;

then his surviving spouse shall receive a survivor's annuity
which is equal to the survivor annuity payable to a surviving
spouse under Section 4.06 if the Participant had retired (as of
Early, Normal, or Deferred Retirement, whichever is applicable)
with an immediate Qualified Joint-and-Survivor Annuity on the day
before the Participant's date of death.

   If a Participant dies on or before the date on which the
Participant would have attained age 55 but for his death, and
conditions a) through d) above are met as of the date of his
death, then his surviving spouse shall receive a survivor's
annuity which is equal to the survivor annuity which would be
payable to the spouse if the Participant had separated from
service on the date of the Participant's death, survived until
age 55, retired with an immediate Qualified Joint-and-Survivor
Annuity under Section 4.06 at age 55, and died on the day after
attaining age 55.

4.08 <u>Non-Duplication of Benefits</u>.  (a) If a Participant (or his Beneficiary) becomes entitled to a benefit (herein called his "This Plan Benefit") under this Plan and also becomes entitled to a benefit (herein called his "Other Plan Benefit") from another defined benefit plan (other than: (I) the American Society of Association Executives Retirement Plan as it applies to employees of the American Bakers Association, and (ii) a single employer defined benefit plan maintained by his employer prior to becoming a Participating Employer under this Plan):

      (i)          which meets the requirements of Code Section 401, and

      (ii)        to which his Participating Employer has made contributions on his behalf, and

      (iii)     which, in determining his Other Plan Benefit, gives credit for service with his Participating Employer which also constitutes Credited Service under this Plan (herein called "<u>Overlapping Service</u>"),

then his This Plan Benefit shall be adjusted to equal an Adjusted Benefit (defined below) in order to avoid a duplication of benefit based on the same service in accordance with the following steps:

    <u>Step 1</u>.  The single-sum actuarial equivalents of his This Plan Benefit and of his Other Plan Benefit are determined.

    <u>Step 2</u>.  The single sum actuarial equivalent of his This Plan Benefit attributable to Overlapping Service is determined by multiplying the single-sum actuarial equivalent of his This Plan Benefit by a fraction, the numerator of which is the number of his years of Credited Service (up to 25) in the Overlapping Service and the denominator of which is the total number of his years of Credited Service (up to 25).

The single-sum actuarial equivalent of his Other Plan Benefit attributable to Overlapping Service is determined by multiplying the single-sum actuarial equivalent of his Other Plan Benefit, the numerator of which is the number of his years of service with his Participating Employer which is Overlapping Service, and which is counted in determining his benefit under the Other Plan (but not more than the maximum counted for such purpose); and the denominator of which is the number of all of his years of service with his Participating Employer which is counted in determining his benefit under the Other Plan (but not more than the maximum counted for such purpose); or if such method is not appropriate, said single-sum actuarial equivalent of his Other Plan Benefit attributable to Overlapping Service shall be determined in such other way as may be equitable and appropriate.

Step 3.  His adjusted benefit under this Plan (herein called his "Adjusted Benefit") is equal in single-sum actuarial equivalent to the single-sum actuarial equivalent of his This Plan Benefit reduced by the single-sum actuarial equivalent of that part (which may be all or none) of his This Plan Benefit attributable to Overlapping Service, provided, however, that such single-sum Adjusted Benefit shall in no event fall below an amount which when added to the single-sum actuarial equivalent of his Other Plan Benefit attributable to the Overlapping Service, shall equal in sum not less than the single-sum actuarial equivalent of his This Plan Benefit.

(b)  Single-sum actuarial equivalents and other actuarial computations made under this Section 4.08 shall be based on the actuarial assumptions prescribed for use in this Plan.

(c)  Effective October 1, 1996, a Participating Employer may permanently elect to have the benefits payable to Participants under its Plan computed without regard to subsections (a) and (b) of this Section 4.08, provided that such election does not cause any contributions or benefits for such Participants to exceed any limitation contained in this Plan (or prescribed by the Internal Revenue Code) on contributions or benefits, cause its Plan to discriminate in favor of highly compensated employees, or adversely affect the Plan's favorable tax qualification.

A Participating Employer shall certify its acknowledgment of these requirements and its election to have benefits computed without regard to subsections (a) and (b) hereof in writing to the Board of Trustees no less than 90 days prior to commencement of the Plan Year in which such change is to be effective. Once made, such election may not be revoked.

ARTICLE V

ALTERNATIVE OPTIONAL FORMS OF PENSION

5.01 Alternative Benefit Options. In lieu of the amount and method of payment of monthly pensions payable under ARTICLE IV for pensions to commence at a Participant's Normal Retirement, Early Retirement, Disability Retirement or Deferred Retirement Date, a Participant by a written election (which may be an original election or a revocation or an amendment of a prior election) delivered to the Board in a form acceptable to the Board before his Early Retirement Date (if he retires, or is deemed to retire, early), or his Disability Retirement Date (if he retires for Disability), or his Normal Retirement Date (in all other events) may take the actuarial equivalent of his retirement benefit in accordance with such of the following alternative options as he may so elect:

(a) Joint-and-Survivor with Spouse. A monthly retirement benefit payable to the Participant for his lifetime and after his death, either 100% or 66-2/3% of such monthly benefit amount, payable monthly to his spouse for the lifetime of such spouse, which percentage and spouse shall be designated by the Participant in his written request for such optional form of retirement benefit; or,

(b) Limited Joint-and-Survivor With Beneficiary Other Than Spouse. A monthly retirement benefit payable to the Participant for his lifetime and after his death, either 100%, 66-2/3% or 50% of such monthly benefit amount, payable monthly to his Beneficiary (other than his spouse) for the shorter of such Beneficiary's lifetime or 5 years, which percentage and Beneficiary shall be designated by such Participant in his written request for such optional form of retirement benefit; or,

(c) Life Only. A monthly retirement benefit payable in equal installments to Participant for his

lifetime, that terminates upon the participant's death, with no provision for payments to a spouse or other Beneficiary,

provided, however, that unless he has shown evidence of good health satisfactory to the Board at the time of an election under sub-paragraph (a) or (b) of this Section 5.01, no such election shall be given effect if Participant dies within one year of the date of such election is made, except that any such election shall be given effect in any case, in which:

    i)    such Participant dies from accidental caus-es, and

    ii)    the failure to give effect would deprive Participant's surviving spouse of a sur-vivor's benefit under a Qualified Joint-and-Survivor Annuity or Qualified Pre-Retirement Survivor Annuity, and

    iii)  such election is made before the accident occurs which resulted in his death.

Effective September 19, 1995, the Plan Administrator shall give each Participant notice of the terms and conditions of alterna-tive optional forms of pension, the Participant's right to make, and the effect of an election, the right to revoke an election, the rights of the Participant's spouse, and the opportunity to elect an alternative option in the case of a joint-and-survivor annuity at least ninety (90) days and no less than thirty (30) days before the annuity starting date or the date distribution commences, as determined by the Plan Administrator. A Participant may elect (in a written form acceptable to the Plan Administra-tor, and accompanied by any applicable spousal consent) to waive the requirement of Code 417 (a) that the notice be provided no less than 30 days before the annuity starting date if the payment of benefits commences more than 7 days after such notice is provided. If a Participant separates from service, notice may be given on the date of separation or within a reasonable period thereafter with respect to benefits accrued before the separation from service. Such notice shall be in writing, in the form approved by the Board, shall require the spouse's written consent if the Participant elects to decline the Qualified Joint-and-Survivor Annuity, and shall offer the Participant the opportunity

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

31

to receive a written explanation of the alternative benefit options as described below. The spouse's consent is not valid unless witnessed by a plan representative or a notary public. If the spouse's written consent cannot be obtained for any reason, the Plan Administrator may waive the requirement of spousal consent if circumstances are established by proof satisfactory to the Plan Administrator which warrant such a waiver or which require such a waiver pursuant to regulations of the Secretary of the Treasury. In the event that a Section 4.06 joint-and-survivor benefit or an optional joint-and-survivor benefit with the Participant's spouse as the survivor Beneficiary is applicable, and Participant desires to elect an alternative option under this Section 5.01, he shall receive from the Board within a reasonable time after his request and before the commencement of his pension benefit a written explanation of the relative financial effect, giving dollar comparisons, of the monthly amounts of such joint-and-survivor benefits and the other available optional benefits.

5.02 Beneficiary's Death. If the Participant's spouse, or other Beneficiary designated under subsection (b) of Section 5.01 and Section 5.04 hereof shall die before Participant's retirement benefit commences, the option so elected will be automatically canceled and the monthly retirement benefit payable to such Participant hereunder will be made as though the election of the option had not been made, except that Participant may again elect an optional form of retirement benefit in accordance with Section 5.01 above.

5.03 Small Payment Option. Notwithstanding the provisions of Section 5.01(a) governing spousal consent and Section 5.06 governing insured annuity option upon Plan termination, should any benefit payable under this Plan to any Participant or Beneficiary, when calculated as the lump sum actuarial equivalent of a single life annuity, not exceed $5,000.00 [eff. 10/1/97] in present value, the Board may, in its uncontrolled discretion, elect to have the actuarial equivalent of the remainder of such monthly pension payments paid to such Participant or Beneficiary in a lump-sum or in periodic payments for a specified period.

5.04 Designation of Beneficiary. Any benefits payable by reason of the participation herein of a Participant which are payable under the terms hereof after his death shall be paid to such person or persons and in such proportions as may be designated by him by an instrument in writing in a form accept-

able to the Board (and subject to the provisions of Sections 4.06, 4.07 and 5.01 hereof) executed by such Participant and filed with the Board, which designation may be revoked or modified by the Participant from time to time by an instrument in writing in a form acceptable to the Board executed by such Participant and filed with the Board. Designations of surviving Beneficiaries under option (b) of Section 5.01 hereof shall be filed with the Board before Participant's Retirement date.

5.05 <u>Insured Annuity Upon Plan Termination</u>. In the event of the termination of the participation in the Plan of a Participating Employer, the Board shall, at the written request of each Participant and Beneficiary of a Participant of the terminating Participating Employer entitled to a benefit, provide for the payment of all (but not less than all) such benefits by distributing to or for each such participant and Beneficiary of a Participant entitled to a benefit an insured annuity or, if the present value of the benefit is not greater than $5,000 [eff. 10/1/97], a lump sum small payment in accordance with Section 5.03, provided that the following requirements are met:

(a)  Should a married Participant direct that distribution of the benefit be paid by the delivery of an insured annuity the Board shall require the written and notarized consent of the spouse of said Participant to the form of distribution except where the present value of the benefit is not greater than $5,000.

(b)  The value of the insured annuity shall be equal to the value at the time of such distribution of the benefit applicable to such distributee determined either on the basis of currently available annuity rates or the actuarial assumptions prescribed by Internal Revenue Code Section 411(a)(11)and any rules, regulations, procedures or guidelines promulgated from time to time for use in determining the value of lump sum distributions not greater than $5,000, whichever produces the smaller result, as follows:

|  | <u>Distributee</u> | <u>Applicable Benefits</u> |
|---|---|---|
| (i) | Retiree | Remainder of the retirement benefit due such Retiree and his Beneficiary, if any |

| | |
|---|---|
| (ii) Employee - Participant at the time of such termination | Value of Accrued Benefit of such Participant at the time of distribution |
| (iii) Vested former-Employee Participant | Value of Vested Benefit at time of distribution |
| (iv) Beneficiary | Remainder of benefit due such Beneficiary |

(c)  provided, however, that the actuarial assumptions used in determining the value of lump sum distributions not greater than $5,000 or less on plan termination shall be those set forth at Section 5.06(e) of this Plan.

(d)  The cash value of the assets in the Trust attributable to the participation of the terminating Participating Employer at the time of distribution shall be not less than the value of the insured annuities and small payments of all Participants and Beneficiaries of Participants as above indicated.

(e)  The terminating Participating Employer shall reimburse the Trust for the cost to the Trust of the services of the Plan Actuary, Plan Counsel and the Contract Administrator rendered by reason of and in connection with such termination and distributions.  Services rendered by the Plan Actuary, Plan Counsel and the Contract Administrator in connection with the termination of a Participating Employer shall be for the exclusive benefit of Plan Participants, and reimbursement of expenses hereunder shall not obligate the Plan, Plan Actuary, Plan Counsel or Contract Administrator to render any advice or service in connection with the termination for the benefit of the terminating Participating Employer, or which is contrary to the best interests of the Participants.  Payment of any expenses incurred but not reimbursed hereunder shall be secured by a lien upon any excess assets available for reversion to the terminating employer; but the assertion of such lien shall not be deemed to relieve the terminat-

ing employer of its affirmative obligation to pay said expenses.

(f)    The terminating Participating Employer shall apply to the District Director of Internal Revenue in Chicago (with a copy of the application to the attorney for the Plan) for a determination letter to the effect that the termination of such Participating Employer's participa- tion in the Plan and the annuity and IRA (or other qualified plan) rollover distributions referred to above do not adversely affect the existing favorable IRS determination and when such determination letter is received will furnish a copy thereof to said attorney for the Plan.

(g)    The terminating Participating Employer shall apply to the Pension Benefit Guaranty Corporation for approval of the termination of such Participating Employer's participation in the Plan, and the termination of such participation and the distribution of benefits pursuant to such termination shall be subject to, and contingent upon, the Employer's seeking the approval of and meet- ing all applicable requirements of the Pension Benefit Guaranty Corporation for such termination.

(h)    Any insured annuity purchased pursuant to this Section 5.06 shall by its terms comply with the provisions of the Retirement Equity Act of 1984 and regulations promulgated thereunder with respect to (I) spousal consent; and (ii) a Qualified Domestic Relations Order.

(i)    Any distribution to a participant by reason of plan termination under Section 5.05 (1) if a lump sum not greater than $5,000, may be rolled over to another qualified plan;    (2) shall be subject to mandatory withholding by the Plan Administrator except where the participant has elected a direct rollover to another qualified plan, except that the Plan shall not be deemed the payor of any distribution in the form of an annuity contract purchased on plan termination;    (3) shall cause the Plan Administrator to afford the participant affected by such distribution (A) the opportunity to elect a direct rollover where applica- ble, and (B) the notice required by Internal Revenue Code Section 402(f), 411(a)(11) and 417 in accordance

with the time limitations prescribed therein. This section applies to all distributions which occur on or after January 1, 1993.

(j)    In the event of plan termination, the benefit of any "highly compensated employee" or "restricted employee" as those terms are defined in the Internal Revenue Code and regulations and pronouncements promulgated by the Secretary thereunder, is limited to a benefit that is non-discriminatory under Internal Revenue Code Section 401(a)(4) and not in excess of the amount payable in any year to such employee under a straight life annuity equal to said employees accrued benefit and other benefits under the Plan.

(k)    In the event of plan termination, if insured annuities that conform with the requirements of this section are not available or, if available, are available only at a cost that exceeds the lump sum value [as determined by the actuary in accordance with Section 5.06(e) and (f)(II) of the Plan] of the benefits to be provided by said annuities by 15% or more of said lump sum value, then, on request of the terminating employer, the Plan may distribute benefits due to participants on plan termination by distribution of the benefits in lump sum form. Any lump sum distribution to a participant by reason of plan termination under this subsection shall be subject to the requirements of subsection 5.06(I) and (j) of this Section and to the Retirement Equity Act of 1984 and regulations promulgated thereunder with regard to (I) the requirements of spousal notification and consent; and (II) any Qualified Domestic Relations Order filed with the Plan prior to such distribution.

5.06 <u>Rules Concerning Actuarial Equivalence</u>.

(a)    <u>Effective Date</u>. Notwithstanding anything to the contrary in Article IV or V concerning actuarial equivalence, the provisions of this Section 5.07 shall be effective for any pension that first becomes payable after September 30, 1983.

(b)    <u>50% Joint and Survivor Option and Qualified Joint and Survivor Annuity</u>.

(I)  <u>Non-disability</u>.  If payment of a non-disability pension is to be made in the form of a 50% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  88% minus .4% for each year that the Beneficiary's age is less than the Participant's age or plus .4% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(II)  <u>Disability</u>.  If payment of a disability pension is to be made in the form of a 50% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  77.5% minus .4% for each year that the Beneficiary's age is less than the Participant's age or plus .4% point for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(c)   <u>66-2/3% Joint-and-Survivor Option</u>

(I)  <u>Non-disability</u>.  If payment of a non-disability pension is to be made in the form of a 66-2/3% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage: 85% minus .5% for each year that the Beneficiary's age is less than the Participant's age or plus .5% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(II) <u>Disability</u>.  If payment of a disability pension is to be made in the form of a 66-2/3% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage: 72% minus .5% for each year that the Beneficiary's age is less than the Participant's age or plus .5% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(d)   <u>100% Joint-and-Survivor Option</u>

(I)  <u>Non-disability</u>.  If payment of a non-disability pension is to be made in the form of a 100% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  79% minus .6% for each year that the Beneficiary's age is less than the Participant's age or plus .6% for each year that the Beneficiary's age is greater than the Participant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(II) <u>Disability</u>. If payment of a disability pension is to be made in the form of a 100% Joint-and-Survivor Pension, the pension amount shall be adjusted by multiplying it by the following percentage:  63% minus .6% for each year that the Beneficiary's age is less than the Participant's age or plus .6% for each year that the Beneficiary's age is greater than the Partici-

pant's age; provided, however, that the resulting percentage shall not be greater than 99 percent.

(e)  Small Payment Option.  The amount of a lump sum payable in accordance with Section 5.03 shall take into account months as well as years of attained age. The actuarial value for each month in excess of an attained age shall be interpolated from a table of lump sum factors at integral ages.  The table shall be based on the 1971 Group Annuity Mortality Table (male) and the applicable interest rate.  The applicable interest rate shall be the interest rate that would be used, as of the first day of the Plan Year in which such lump sum is paid, by the Pension Benefit Guaranty Corporation for purposes of determining the present value of immediate and deferred annuities if the Plan were then terminated.  In the case where the lump sum value of a benefit (using the applicable interest rate specified in the preceding sentence) exceeds $25,000, the applicable interest rate shall be one hundred twenty (120%) of the applicable Pension Benefit Guaranty Corporation interest rate, but in such instance, the present value so determined shall not be less than $25,000.

Effective October 1, 1999, for purposes of determining the amount of a distribution in a form other than a periodic benefit payable in accordance with any provision of this Article V, actuarial equivalence will be determined on the basis of factors using the applicable mortality table and applicable interest rate specified under Internal Revenue Code Section 417(e).  In no event shall the benefit calculated on this basis be less than the Participant's benefit as of September 30, 1999, calculated with the factors in effect on that date.

Effective October 1, 1999, the applicable interest rate is the rate of interest on 30-year treasury securities as specified by the Commissioner for the second month preceding the first day of the plan year that contains the annuity starting date.

Effective October 1, 1999, the Section 417 applicable mortality table is the table described in Section 417(e)(-3)(A)(ii)(II) of the Internal Revenue Code, which is set forth in Rev. Rul. 95-6, 1995-1 C.B. 80 or its successors, when applicable [for the period December 31, 2002 to September 30, 2003, GAR94 unloaded (50/50) projected with Scale AA to 2002 pursuant to Rev. Rul. 2001-62].

Notwithstanding the above factors, for purposes of determining the amount of a distribution in a form other than a periodic benefit payable in accordance with any provision of this Article V, actuarial equivalence will be determined on the basis of factors using the applicable mortality table and applicable

interest rate specified under Internal Revenue Code Section 417(e), if they produce a benefit greater than that determined under the above factors.

(f)  Other Option Factors

(I)  If payment is to be made in accordance with the options permitted by the plan for which determination of the adjusted amount is not specified by any other part of this Plan or by any applicable provision of law, rule or regulation, the determination is to be made by the Plan's enrolled actuary on the basis of 7 percent interest and the 1983 Group Annuity Mortality Table, with the mortality rates of males and females blended into a single set by weighing the two sets of rates in proportion to the percentages of male and female Participants found by the actuary, on the basis of the relevant experience, likely to select the option involved.

(II) If any payment under this section [5.06(f)(I)] is in a form other than a periodic benefit, actuarial equivalence will be defined as it is for such payments under section 5.06(e).