**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SARA LEE CORPORATION, on its own behalf and on behalf of its employee-participants in the American Bakers Association Retirement Plan,

Plaintiff,

v.

AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of the American Bakers Association Retirement Plan; and PENSION BENEFIT GUARANTY CORPORATION,

Defendants.

---

AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of the American Bakers Association Retirement Plan,

Third Party Plaintiffs,
Counterclaimants, and
Cross-Claimants,

v.

SARA LEE CORPORATION,

Respondent,

PENSION BENEFIT GUARANTY CORPORATION,

Cross-Defendant, and

KETTERING BAKING COMPANY, INTERSTATE BRANDS CORPORATION, LEWIS BROS. BAKERIES, INC. HARRIS BAKING CO., INC., AMERICAN BAKERS ASSOCIATION, and JENNY LEE BAKERY, INC.,

Third-Party Defendants.

Case No. 06-CV-0819 (HHK/JMF)
Hon. Henry H. Kennedy, Jr.
Magistrate Judge John M. Facciola

**CROSS-CLAIMANTS AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND BOARD OF TRUSTEES' STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN OPPOSITION TO PBGC'S MOTION FOR SUMMARY JUDGMENT**

**CROSS-CLAIMANTS AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND BOARD OF TRUSTEES' STATEMENT OF GENUINE ISSUES OF MATERIAL FACT IN OPPOSITION TO PBGC'S MOTION FOR SUMMARY JUDGMENT**

STEPTOE & JOHNSON LLP
Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
Edward R. Mackiewicz (D.C. Bar # 944884)
Ryan T. Jenny (D.C. Bar # 495863)
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902

LAW OFFICE OF ANNE H. S. FRASER, P.C.
Anne H. S. Fraser (D.C. Bar # 349472)
1320 19th Street, N.W., Suite 200
Washington, DC 20036-1637
Tel: (202) 466-4009
Fax: (202) 466-4010

**Counsel for Defendants/Third Party Plaintiffs/ Counterclaimants/Cross-Claimants, American Bakers Association Retirement Plan and Board of Trustees of the American Bakers Association Retirement Plan**

May 24, 2007

Pursuant to Local Rules 7(h) and 56.1, Cross-Claimants American Bakers Association Retirement Plan ("Plan" or "ABA Plan") and its Board of Trustees ("Board") (collectively, "Cross-Claimants") respectfully submit their Statement of Genuine Issues of Material Fact in Opposition to PBGC's Motion for Summary Judgment. In Part I, Cross-Claimants set forth the genuine issues of material fact precluding summary judgment for PBGC. In Part II, Cross-Claimants respond to the specific numbered paragraphs in PBGC's Statement of Undisputed Material Facts in Support of PBGC's Motion for Summary Judgment ("PBGC Statement").

## I. Genuine Issues of Material Fact Precluding Summary Judgment

1. The administrative record PBGC submitted to this Court is incomplete. For example, the submitted record does not contain records of PBGC's *ex parte* communications with the parties (*see* Cross-Claimants' Third-Party Complaint for Declaratory and Injunctive Relief, Counterclaim and Cross-Claim ("TPC") (Doc. 19) ¶ 54; Declaration of Anne H.S. Fraser, Esq. ("Fraser Decl.") ¶ 4), as well as any opinion letters and related documents in other similar cases that speak to the factors used by the PBGC in assessing the Title IV status of a plan and which were in fact considered by the PBGC in its 2006 review here (*see* PBGC Mem. at 3-4, 14 (Doc. 46) (relying on PBGC opinion letters); AR 1567), or documents showing the adequacy of PBGC's deliberations (*see* submitted record at Doc. 45). In contrast, PBGC attests in each volume of its submitted record that it has submitted "a full, true, and complete copy of the Administrative Record" (*see* Attestation signed by E. William Fitzgerald and William Hulteng (Apr. 3, 2007)) and while denying in its Answer that it engaged in *ex parte* communications (Doc. 43 ("PBGC TPC Answer") ¶ 54), PBGC has not submitted any evidence attempting to resolve the issue.

2. The sufficiency of PBGC's fact-finding process is at issue. PBGC permitted the parties to be involved in its review of the 1979 Letter only through a single submission. TPC ¶ 51; *see also*, Fraser Decl. Ex. A at 26-27 (PBGC Counsel Mark Blank states that PBGC on December 29, 2005 was still "looking at whether we have the obligation . . . under the Administrative Procedure Act to afford a second round of briefing . . . so that each interested party could respond to those filings that were made earlier by the respective parties."). PBGC contests this fact. PBGC TPC Answer ¶ 51. PBGC did not inform the parties as to what process it would utilize to review the submissions, whether a record was being maintained, or whether each submitter would be permitted to review what the other parties had submitted. TPC ¶ 52. PBGC contests this. PBGC TPC Answer ¶ 52. The submitters participating in the process had no formal opportunity to review the submissions of other submitters, or to make any second-round or rebuttal submissions. TPC ¶ 55; Fraser Decl. Ex. A at 26-27. PBGC again contests. PBGC TPC Answer ¶ 55. This point is especially important because PBGC bases its determination in its 2006 Letter on its observation that the Trustees and Sara Lee "did not rebut most of the specific facts identified in the Kettering-Interstate filings." AR 1566; *see also* PBGC Mem. at 7 (noting submissions were "largely unrebutted"). Representatives of the Plan had no opportunity to cross-examine or confront any witness, examine any other party's evidence, join any other interested party, discern who would be the decision-maker, or review or object to any proposed decision prior to the issuance of the determination. TPC ¶ 57; Fraser Decl. Ex. A at 27-28 (PBGC counsel Mark Blank states PBGC's decision would be made "simply on papers" without a hearing). PBGC again contests. PBGC TPC Answer ¶ 57.

3. PBGC did not inform Cross-Claimants what factors it deemed important in reaching its 2006 decision, and gave only the barest identification of legal issues, telling Cross-

Claimants to review the 1979 PBGC Letter, which PBGC now states was legally erroneous (AR 1570), and citing to two district court cases. AR 427-28; *cf.* AR 887, 1511. In contrast, PBGC describes its decision-making process as "entirely adequate." PBGC Mem. at 11.

4. An issue of material fact is what the agency looked at, in order of importance, and how that information differed, if at all, from that which it considered in reaching its prior determination. Especially in view of how the agency treated other aggregates differently, and how it treated the Plan differently based on the same facts in 1979, Cross-Claimants require discovery to understand what the agency considered important in 2006 and why its decision differs from precedent in its 1979 Letter and other decisions.

5. What decisions PBGC reached in similar cases and how it applied its standards there is an issue of fact. While PBGC has cited a handful of opinion letters in its summary judgment brief and 2006 Letter, the record has yet to be developed to what extent documents from those and other proceedings assessing plans' Title IV status informed its 2006 decision here. PBGC has taken the position that its standards have justifiably changed over time (PBGC Mem. at 1, 17-18 (contenting PBGC erred in 1979 but since then has "continued its efforts to interpret ERISA"); AR 1570 (alleging its 1979 decision was "simply wrong"), yet it only cites opinion letters from the 1970s to mid-1980s (PBGC Mem. at 3-4, 14; AR 1567) to give any explanation of its standards. Cross-Claimants have no way of knowing how PBGC's standards have changed, and how it has applied these standards in recent years since the agency determined a change was necessary. To the extent PBGC's prior precedent contradicts its 2006 Letter, this information will be crucial to demonstrating that the 2006 Letter was arbitrary and capricious.

6. The records maintained by the Plan were sufficient to successfully recreate single

employer accounts when the Plan was called upon to do so. AR 870, 876, 882, 1219, 1227-85. PBGC contests this fact. AR 1577-78; PBGC Mem. at 7, 15-16 (incorrectly alleging Plan "apparently has kept no records of assets or liabilities on an employer-by-employer basis").

7. The Plan was represented as an aggregate of single employer plans for purposes of Title IV of ERISA in submissions to governmental agencies such as the IRS, DOL and PBGC, as well as to other persons such as Plan participants and participating employers. *See, e.g.*, AR 270-75, 874-75, 880, 884, 1012, 1033-47, 1188-1212, 1577; ABA Plan at 1976 Preface, ¶¶ 13.01, 13.02; *see also* Fraser Decl. Ex. B (records of correspondence regarding numerous terminations of single employer plans within the Plan). PBGC alleges the Plan was represented as a multiple employer plan. AR 1574-75; PBGC Mem. at 7. While some of these records are found in the submitted record, the issue has not been fully developed.

8. The benefit obligations of employers who have ceased participating in the Plan have been funded by those departing employers, PBGC, and/or with assets that have been abandoned to the Plan. AR 868, 872, 875-76, 879-80, 882-83; ABA Plan ¶¶ 11.01, 11.02; TPC ¶ 27. In contrast, PBGC asserts costs were shifted to other participating employers. AR 1571, 1575-78. How the Plan's "true-up" provision, termination of employer participation, and surcharges worked is thus at issue, with the parties taking differing positions as to whether the terms of the Plan were followed and whether the Plan avoided cost shifting by means of surcharges and true-ups. And while PBGC alleges cost-shifting occurred (AR 1578), the issue of whether Sara Lee or other participating employers have subsidized the benefits of IBC employees, or whether IBC's contributions have been sufficient to present to pay such benefits, has not been developed in the submitted record.

## II. Responses to Numbered Paragraphs in the PBGC Statement

1. Cross Claimants object to Paragraph 1 of the PBGC Statement because it contains contentions of law, not statements of fact, but to the extent that a response is required, Cross Claimants do not dispute the allegations of Paragraph 1 but aver that they are immaterial.

2. Cross Claimants object to Paragraph 2 of the PBGC Statement because it contains contentions of law, not statements of fact, and aver that the contentions are not supported by the cited authorities. *See* PBGC Mem. at 3 (conceding, "There is no statutory or regulatory definition for the term "aggregate of single-employer plans").

3. Cross Claimants do not dispute Paragraph 3 of the PBGC Statement, but the facts asserted are immaterial.

4. Cross Claimants do not dispute Paragraph 4 of the PBGC Statement, but the facts asserted are immaterial.

5. Cross Claimants do not dispute Paragraph 5 of the PBGC Statement, but the fact asserted is immaterial.

6. Cross Claimants do not dispute Paragraph 6 of the PBGC Statement to the extent it alleges Sara Lee Corporation ("Sara Lee"), Interstate Brands Corp. ("IBC"), Harris Baking Co., Inc., Kettering Baking Co. ("Kettering"), Lewis Brothers Bakeries, Inc., the American Bakers Association, and Jenny Lee Bakery, Inc. are participating employers in the Plan, but aver the fact asserted is immaterial, and further aver that the allegation that these parties are "contributing sponsors" is not supported by the cited authorities.

7. Cross Claimants do not dispute Paragraph 7 of the PBGC Statement to the extent it describes the Plan's operations other than in connection with a plan termination event when an employer ceases participation in the Plan in which case the assets attributable to the terminating employer are segregated (ABA Plan at Art. XI & ¶ 5.05), and aver that the facts asserted in Paragraph 7 are immaterial to the PBGC's assertion that the Plan is a multiple employer plan for Title IV purposes.

8. Cross Claimants do not dispute Paragraph 8 of the PBGC Statement to the extent that it alleges that PBGC determined the Plan is an aggregate of single employer plans for purposes of Title IV of ERISA.

9. Cross Claimants do not dispute Paragraph 9 of the PBGC Statement, except to the extent that IBC asked PBGC to revisit its 1979 decision by letter dated June 24, 2005 (AR 339-41), and aver that the fact asserted in Paragraph 9 is immaterial. *See also* PBGC Mem. at 5 (stating on June 24, 2005, counsel for IBC asked PBGC to "reconsider" its 1979 decision).

10. Cross Claimants do not dispute Paragraph 10 of the PBGC Statement, but the fact asserted is immaterial.

11. Cross Claimants do not dispute that the text quoted in Paragraph 11 of the PBGC Statement appear in the identified June 2, 1992 letter, which otherwise speaks for itself, but aver that those statements are quoted out of context in a manner in which distorts their meaning. Those statements refer to the ongoing operation of the Plan and are made in response to a request that was contrary to the terms of the Plan and Kettering's Participation Agreement (*see* ABA Plan at 1976 Preface & ¶¶ 2.01, 2.02, 13.01 & Art. XI, AR 1011-14, 1559). In any case the letter is immaterial, not addressing the issue in this case, *i.e.*, whether the Plan was an aggregate of

single employer plans for Title IV purposes.

12. Cross Claimants do not dispute that Paragraph 12 of the PBGC Statement contains the quoted language, but the fact asserted is immaterial, and Cross Claimants aver that the Plan kept such records. *See* AR 870, 876, 882, 1219, 1227-85.

13. Cross Claimants dispute that the authority cited in Paragraph 13 of the PBGC Statement contains such a statement by the Plan's actuary, and aver that the fact asserted is immaterial to the PBGC's assertion that the Plan is a multiple employer plan for Title IV purposes. Instead, those statements support the Cross Claimants' position in that they demonstrate that separate actuarial calculations could be and in fact were periodically made.

14. Cross Claimants dispute Paragraph 14, aver that the fact asserted is immaterial, and aver that PBGC relies only on its own 2006 Letter and a page from the SPD that do not support the allegation. Cross Claimants have demonstrated that separate employer valuations occurred in circumstances other than termination of single employer plans within the Plan. *See* AR 876-77, 1219.

15. Cross Claimants dispute the allegation in Paragraph 15 of the PBGC Statement, aver that the document cited does not show "several cases" described in the second part of Paragraph 15, object that the term "required" in the first part of Paragraph 15 is vague and ambiguous, and aver that the fact asserted is immaterial.

16. Cross Claimants do not dispute Paragraph 16 of the PBGC Statement, but deny any suggestion that this was a regular or routine practice and aver that the fact asserted is immaterial.

17. Cross Claimants dispute the allegation in Paragraph 17 of the PBGC Statement that they have consistently represented the Plan to be a multiple employer plan, and aver that where the Plan's Form 5500s included a checked box indicating "multiple-employer plan" the Form 5500s elsewhere explained or demonstrated that the Plan is an aggregate of single employer plans for termination purposes by stating in a footnote or elsewhere that "Individual employer contributions are available to pay benefits to all participants except on termination each employer's contributions pay benefits to only that employer's employees" or by including separate Schedule T demonstrations for each participating employer under each separate participating employer's tax identification number. (*See* AR 1084-1111; Form 5500s (1980, 1996, 1999, 2003 plan years) attached to Graham Affidavit (submitted by Sara Lee Corp.)). Cross Claimants further aver that the facts asserted in Paragraph 17 are immaterial to the PBGC's assertion that the Plan is a multiple employer plan for Title IV purposes.

18. Cross Claimants dispute the allegation in Paragraph 18 of the PBGC Statement as stated, and aver that the Plan did not maintain negative account balances and that it acted to correct underfunding by participating employers when the fact became known by requiring the employer to assume responsibility for any shortfall in funds needed to pay its employees' benefits whether on termination or by additional contributions on an ongoing basis (AR 868, 877-80; Fraser Decl. Ex. B; ABA Plan Art. XI & ¶ 13.02), and further aver that the fact asserted is immaterial.

19. Cross Claimants dispute Paragraph 19 of the PBGC Statement, and aver that employers are required under the express terms of the Plan to fund their own employees' benefits and to make up any shortfall as it becomes known on an ongoing basis or on plan termination and in fact PBGC has processed such employer terminations under the Plan thereby

demonstrating that the Plan has effectively avoided shifting of liabilities to other employers (ABA Plan Art. XI & ¶ 13.02; AR 220-268 (Wilson Baking and Sanitary Baking terminations); AR 868, 877-80, 1218; Fraser Decl. Ex. B), and further aver that PBGC has cited no "references to the parts of the record relied on to support the statement" in violation of Local Rules 7(h) and 56.1 and that the fact asserted is immaterial.

20. Cross Claimants do not dispute Paragraph 20 of the PBGC Statement, but the fact asserted is immaterial.

21. Cross Claimants dispute the implication in Paragraph 21 of the PBGC Statement that the Plan's actuary stated that the Plan operated as one Plan for PBGC termination and premium purposes under Title IV of ERISA, rather than for other purposes. PBGC selectively quotes the actuary, omitting the clause showing the Plan does not operate as one plan for Title IV termination purposes: "Since it has always operated as one Plan, and does so *until an employer terminates* . . . ." (AR 491) (emphasis added). Cross Claimants do not dispute that the actuary stated the Plan "has always operated as one Plan" (for purposes of Titles I and II of ERISA), or that he advised the Trustees that approximately $30 million in contributions would be required, but these facts are immaterial.

22. Cross Claimants do not dispute Paragraph 22 of the PBGC Statement except to the extent that they dispute that PBGC gave notice to all interested parties (AR 427-28), and aver that the facts asserted are immaterial to the PBGC's assertion that the Plan is a multiple employer plan for Title IV purposes.

23. Cross Claimants do not dispute that PBGC received written submissions, in response to its invitation, from Cross Claimants, IBC, Sara Lee and Kettering on various dates on

or about December 2, 2005, but the facts asserted in Paragraph 23 of the PBGC Statement are immaterial.

24. Cross Claimants do not dispute Paragraph 24 of the PBGC Statement, but the fact asserted is immaterial.

25. Cross Claimants do not dispute Paragraph 25 of the PBGC Statement, but the fact asserted is immaterial.

Dated: May 24, 2007

Respectfully submitted,

STEPTOE & JOHNSON LLP

/s/ Paul J. Ondrasik, Jr.
Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
Edward R. Mackiewicz (D.C. Bar # 944884)
Ryan T. Jenny (D.C. Bar # 495863)
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902

LAW OFFICE OF ANNE H.S. FRASER, P.C.
Anne H.S. Fraser (D.C. Bar # 349472)
1320 19th Street, N.W., Suite 200
Washington, DC 20036-1637
Tel: (202) 466-4009
Fax: (202) 466-4010

**Counsel for Defendants/Third Party Plaintiffs/ Counterclaimants/Cross-Claimants, American Bakers Association Retirement Plan and Board of Trustees of the American Bakers Association Retirement Plan**