## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SARA LEE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06–CV–0819–HHK/JMF |
| | ) | |
| AMERICAN BAKERS ASSOCIATION | ) | |
| RETIREMENT PLAN; and BOARD OF | ) | |
| TRUSTEES OF THE AMERICAN BAKERS | ) | |
| ASSOCIATION RETIREMENT PLAN; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PENSION BENEFIT GUARANTY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## PBGC'S REPLY MEMORANDUM IN SUPPORT OF
## ITS MOTION FOR A PROTECTIVE ORDER

ISRAEL GOLDOWITZ (D.C. Bar No. 291120)
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
MICHAEL P. MORA
PAULA J. CONNELLY (D.C. Bar No. 389055)
Assistant Chief Counsels
MARK BLANK (D.C. Bar No. 968388)
MARC S. PFEUFFER (D.C. Bar No. 484209)

PENSION BENEFIT GUARANTY CORP.
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C. 20005
Tel. No. (202) 326-4020, ext. 4903
Fax No. (202) 326-4112
E-mail: efile@pbgc.gov

Attorneys for Pension Benefit Guaranty Corp.

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    THE ARBITRARY AND CAPRICIOUS STANDARD APPLIES.. . . . . . . . . . . 2

    B.    THE PROCEDURES PBGC UTILIZED IN THIS INFORMAL
            ADJUDICATION WERE ENTIRELY SUFFICIENT AND
            CANNOT JUSTIFY DISCOVERY.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    THE ADMINISTRATIVE RECORD IS COMPLETE.. . . . . . . . . . . . . . . . . . 10

    D.    PBGC DID NOT HAVE AN IMPROPER FINANCIAL MOTIVE.. . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE Of AUTHORITIES

## Cases Cited

*AFL-CIO v. Donovan*,
    757 F.2d 330 (D.C. Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Agomo v. Fenty*,
    2007 WL 265897 (D.C. Cir. Feb. 1, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Alaska Department of Envtl. Conservation*,
    540 U.S. 461 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*American Trucking Ass'n v. Atchison, Topeka & Santa Fe Ry.*,
    387 U.S. 397 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Azko Nobel Salt, Inc. v. FMSHRC*
    212 F.3d 1301 (D.C. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blum v. Spectrum Rest. Group, Inc.*,
    261 F. Supp. 2d 697 (E.D. Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Board of Regents of State College v. Roth*,
    408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*C&E Servs., Inc. of Washington v. DC Water & Sewer Auth.*,
    310 F.3d 197 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Califano v. Sanders*,
    430 U.S. 99 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Capital Area Immigrant's Rights Coalition v. U.S. Dept. of Justice*,
    264 F. Supp. 2d 14 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Citrosuco Paulista v. United States*,
    704 F. Supp. 1075 (C.I.T. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Collins v. PBGC*,
    No. 88-3406-AER (D.D.C. Apr. 23, 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cases primarily relied upon are marked with an asterisk.

*Doolin Security Savings Bank v. FDIC,
    53 F.3d 1395 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dumas v. PBGC,
    2007 WL 1099542 (N.D. Ind. Apr. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Entergy Services v. FERC,
    391 F.3d 1240 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Evangelical Lutheran Church in America v. INS,
    288 F. Supp. 2d 32 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Frisch v. Comm'r of Internal Revenue,
    1986 WL 22038 (U.S. Tax Ct. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hall v. Standard Ins. Co.,
    2005 WL 348266, *3 (W.D. Va. Feb. 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Interstate Bakeries Corp.,
    No. 04-45814-jwv (Bankr. W.D. Mo. June 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 9

Krupp Stahl A.G. v. United States,
    822 F. Supp. 789 (C.I.T. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lomanno v. Comm'r of Internal Revenue,
    1994 WL 456803 (U.S. Tax Ct. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Manhattan Ctr. Studios, Inc. v. NLRB,
    452 F.3d 813 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

McClain v. Barnhart,
    299 F. Supp. 2d 309 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Office of Foreign Assets Control v. Voices in Wilderness,
    382 F. Supp. 2d 54 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pacific Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Engs,
    448 F. Supp. 2d 1 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

PBGC v. Artra Group,
    1993 WL 225370 (N.D. Ill. June 23, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*PBGC v. LTV Corp.,
  496 U.S. 633 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

PBGC v. Potash,
  1986 WL 3809 (W.D.N.Y. Mar. 26, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PBGC v. United Airlines Inc.,
  436 F. Supp. 2d 909 (N.D. Ill. 2006),
  aff'd sub nom. in re UAL Corps., 468 F.3d 444 (7th Cir. 2006) . . . . . . . . . . . . . . . . 3, 4

Ramaprakash v. FAA,
  346 F.3d 1121 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

San Luis Obispo Mothers for Peace v. NRC,
  751 F.2d 1287 (D.C. Cir. 1984),
  vacated in part, 760 F.2d 1320 (D.C. Cir. 1985),
  aff'd, 789 F.2d 26 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Spartan Radiocasting Co. v. FCC,
  619 F.2d 314 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Southwest Center for Biological Diversity v. Babbitt,
  131 F. Supp. 2d 1 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

United States v. An Article of Drug Neo-Terramycin Soluble Powder Concentrate,
  540 F. Supp. 363 (N.D. Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Bean,
  537 U.S. 71 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Morgan,
  313 U.S. 409 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wisconsin Valley Improvement v. FERC,
  236 F.3d 738 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

**United States Codes Cited**

Title 5
  Section 554(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  Section 554(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  Section 554(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  Section 555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Section 557(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Section 557(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Title 29

Section 1301(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Section 1303(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
Section 1303(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Section 1322(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Section 1342(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Section 1363. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Section 1364. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# INTRODUCTION

In seeking to justify discovery in this case, Sara Lee and the Trustees use every conceivable adjective to pillory PBGC and its decision in the 2006 Letter.[1] But this colorful rhetoric does not change the principles guiding the Court's review in this case. The "arbitrary and capricious" standard of the Administrative Procedure Act applies, and review is limited to the administrative record. Discovery is not permitted, and the arguments to the contrary, however vehement, must be rejected.

As Sara Lee concedes, it has already propounded extensive document requests to PBGC under the Freedom of Information Act that are *virtually identical* to the document requests currently at issue before this Court, and PBGC has produced over 3,000 pages of documents in response.[2] These documents are either cumulative of those already included in the administrative record, or irrelevant to the determination in the 2006 letter. Sara Lee and the Trustees nevertheless seek license to continue to fish endlessly through agency files — as the Trustees note, they "have not yet served discovery upon PBGC, [but] inten[d] to do so"[3] — in a process

---

[1]  *See, e.g.,* Sara Lee Opp. Prot. Order at 5, 11, 19 (PBGC "stacked the deck"); *id.* at 13 (PBGC's "ill-advised misadventure"); *id.* at 5, 7, 8, 19 (administrative record was "contrived," "concocted," "fabricat[ed]," and a "curtain" to hide behind); *id.* at 5, 14, 19 (PBGC's position was "predetermined"); Trustees Opp. Prot. Order at 2, 4 (PBGC's position is "inexplicable"); *id.* at 3, 8 (PBGC "flip-flopped").

[2]  Sara Lee filed copies of its FOIA request, as well as many of the 3,000 pages PBGC produced, in three volumes of exhibits to its opposition to PBGC's motion for protective order. *See* Exhibit A to the Affadavit of Michael T. Graham (FOIA request); Exhibits E through O (PBGC's response). *Compare* Exhibit A to PBGC's Statement of Points and Authorities in Support of its Motion for Protective Order (Sara Lee's First Request for Production of Documents).

[3]  Trustees Opp. Prot. Order at 2.

1

that would do great harm to PBGC's ability to pursue its statutory mission in this and other cases. These attempts are unsupportable and must be rejected.

## A.      THE ARBITRARY AND CAPRICIOUS STANDARD APPLIES.

At the outset, Sara Lee argues that discovery is appropriate because the *de novo* standard of review purportedly applies to this action, since it was "brought under ERISA and not the APA."[4] This argument is groundless and illogical. Indeed, this Court rejected nearly the identical contention in *Southwest Center for Biological Diversity v. Babbitt*.[5] In that case, the plaintiffs argued that limited judicial review of an agency's action did not apply (and they could present extra-record documents) because they had brought suit under the Endangered Species Act, and not the APA.[6] This Court soundly rejected that reasoning, stating:

> the Supreme Court held in *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715 (1963), that, if Congress permits judicial review of an agency's determination, expressly or implicitly, but has not set forth the standards by which that review is to be conducted, the courts limit review to the record before that agency.[7]

The Supreme Court has reiterated several times subsequently that where an agency's organic statute does not specify a standard of review, the arbitrary and capricious standard applies.[8]

---

[4]  Sara Lee Opp. Prot. Order at 8.

[5]  131 F. Supp. 2d 1, 4 (D.D.C. 2001) (Facciola, J.)

[6]  *Id.* at 5.

[7]  *Id.*

[8]  *See Alaska Dep't of Envtl. Conservation*, 540 U.S. 461, 496-97 (2004); *United States v. Bean*, 537 U.S. 71, 77 (2002). *See also Califano v. Sanders*, 430 U.S. 99, 105-06 (1977) (the APA is not an independent source of jurisdiction to review agency action).

2

Accordingly, Sara Lee's assertion that Title IV of ERISA's jurisdictional provision, 29 U.S.C. § 1303(f)(1), somehow dictates a *de novo* standard of review simply fails. That section permits a specified list of parties to "bring an action against [PBGC] for appropriate equitable relief in the appropriate court." But since it does not address the standard of review, the arbitrary and capricious standard applies.[9]

Under Sara Lee's logic, *every* suit brought against PBGC under section 1303(f) would be adjudicated under a *de novo* standard. Courts would be holding *de novo* trials in every challenge to PBGC's calculation of pension benefits, as such cases routinely are brought under section 1303(f).[10] Of course, such a result must be rejected. Like both of the other courts that have addressed PBGC determinations similar to this one, this Court should apply the arbitrary and capricious standard and limit its review to the administrative record, precluding discovery.[11]

Sara Lee's lengthy and misplaced reliance on *PBGC v. United Airlines* is easily addressed.[12] That case involved an entirely different provision of ERISA, 29 U.S.C. § 1342(c), which requires PBGC in certain circumstances to "apply to the appropriate United States district

---

[9] Indeed, Congress knew how to establish a standard of review in Title IV of ERISA when it wanted to. *See* 29 U.S.C. § 1322(c)(4) ("Determinations under this subsection shall be binding unless shown by clear and convincing evidence to be unreasonable.").

[10] *See, e.g., Dumas v. PBGC*, 2007 WL 1099542 (N.D. Ind. Apr. 9, 2007) (challenge to PBGC benefit determination resolved on summary judgment based on the administrative record).

[11] *See PBGC v. Artra Group*, 1993 WL 225370 (N.D. Ill. June 23, 1993); *PBGC v. Potash*, 1986 WL 3809 (W.D.N.Y. Mar. 26, 1986). Of course, whether or not the parties in those cases litigated over the applicable standard of review is hardly dispositive. *See* Sara Lee Opp. Prot. Order at 12.

[12] *See* Sara Lee Opp. Prot. Order at 9-11, discussing *PBGC v. United Airlines, Inc.*, 436 F. Supp. 2d 909 (N.D. Ill. 2006). Oddly, Sara Lee does not mention the Seventh Circuit's affirmance of that decision, published at 468 F.3d 444 (7th Cir. 2006).

court for a decree adjudicating that [a] plan must be terminated in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or any unreasonable increase in the liability of the fund." The court in *United* concluded that "[s]ection 1342(c) gives the resolution of that question to the judiciary."[13] But whether or not *de novo* review is appropriate under that provision has *no* bearing on the standard of review under 29 U.S.C. § 1303(f), which provides only that a party may bring an action against PBGC.

Sara Lee also argues that *de novo* review is appropriate because PBGC changed its position on whether the Plan is an aggregate of single-employer plans or a multiple-employer plan between 1979 and 2006 based on its discovery that intended mechanisms to avoid cost-shifting were not sufficiently implemented.[14] But a change in agency position does not mandate a change in the standard of judicial review. Indeed, in the case that both the Trustees and Sara Lee cite for such a proposition, *Azko Nobel Salt v. FMSHRC*, the court held that "because the Secretary's interpretation of [the regulation] has vacillated over time," it would remand the case to the agency to secure an authoritative interpretation "and to resolve the case applying standard deference principles to that interpretation."[15] And the D.C. Circuit subsequently has applied the arbitrary and capricious standard repeatedly to cases involving changed agency position.[16]

---

[13] 468 F.3d at 451.

[14] PBGC's attention was drawn to the Plan by IBC, one of the participating employers, after the Plan's actuaries announced that the Plan was severely underfunded and Sara Lee announced its intention to withdraw most of its employees — and Plan assets — from the Plan.

[15] 212 F.3d 1301, 1302, 1305 (D.C. Cir. 2000).

[16] *See, e.g., Entergy Servs. v. FERC*, 391 F.3d 1240, 1251 (D.C. Cir. 2004) (an agency's "[d]epartures from precedent must not violate the Administrative Procedure Act's prohibition on arbitrary and capricious decisionmaking"); *Ramaprakash v. FAA*, 346 F.3d 1121, 1124 (D.C. Cir.

4

It is well-established that an agency, "faced with new developments or in light of reconsideration of the relevant facts and its mandate, may alter its past interpretation and overturn past administrative rulings and practice."[17]  Indeed, an agency "is not obligated to follow prior decisions if new arguments or facts are presented that support a different conclusion."[18]  In order to avoid absurd results, "[a]gencies must be allowed to reconsider positions in the event of changed circumstances or new information."[19]  In fact, an agency's failure to reevaluate its position as new facts come to light may be unreasonable.[20]

As the D.C. Circuit made clear in a case the Trustees themselves cited, *Manhattan Ctr. Studios, Inc. v. NLRB*, what an agency *must* do if it changes position is explain the reason for the change, and if it "departs from established precedent without a reasoned explanation," a court will find the decision to be *arbitrary and capricious* and remand the case to the agency so that it

---

2003) ("agency action is arbitrary and capricious if it departs from agency precedent without explanation"); *Wisconsin Valley Improvement v. FERC*, 236 F.3d 738, 748-49 (D.C. Cir. 2001) ("it was arbitrary and capricious for FERC to [change position] without providing any explanation for its sudden change in policy").

[17]  *American Trucking Ass'n v. Atchison, Topeka & Santa Fe Ry.*, 387 U.S. 397, 416 (1967).  *Accord AFL-CIO v. Donovan*, 757 F.2d 330, 343 (D.C. Cir. 1985); *Spartan Radiocasting Co. v. FCC*, 619 F.2d 314, 322 (4th Cir. 1980); *United States v. An Article of Drug Neo-Terramycin Soluble Powder Concentrate*, 540 F. Supp. 363 (N.D. Tex. 1982).

[18]  *Krupp Stahl A.G. v. United States*, 822 F. Supp. 789 (C.I.T. 1993).  *Accord Citrosuco Paulista v. United States*, 704 F. Supp. 1075, 1088 (C.I.T. 1988).

[19]  *Capital Area Immigrant's Rights Coalition v. U.S. Dept. of Justice*, 264 F. Supp. 2d 14, 28 (D.D.C. 2003).

[20]  *See Lomanno v. Comm'r of Internal Revenue*, T.C. Memo. 1994-426, 1994 WL 456803 (U.S. Tax Ct. 1994); *Frisch v. Comm'r of Internal Revenue*, 1986 WL 22038 (U.S. Tax Ct. 1986).

may do so, as the court did in that case.[21]  PBGC's 17-page explanation in the 2006 Letter does not suffer from this deficiency.

In short, the well-established arbitrary and capricious standard of review applies to the 2006 Letter, and discovery beyond PBGC's extensive administrative record is not permitted.

### B.    THE PROCEDURES PBGC UTILIZED IN THIS INFORMAL ADJUDICATION WERE ENTIRELY SUFFICIENT AND CANNOT JUSTIFY DISCOVERY.

Unable to justify discovery based on *de novo* review, Sara Lee and the Trustees argue that a litany of alleged procedural defects in PBGC's decision-making process necessitates discovery. Indeed, the Trustees appear to argue that discovery is warranted in *every* informal adjudication, asserting that "[i]n the absence of a formal agency proceeding, courts have held that discovery is necessarily warranted, even absent identification of specific documents excluded from the record, because the agency's fact-finding process itself is a fact issue in the case."[22]  If this really were the law, the government would come to a screeching halt as agency staff scrambled to respond to the many and varied discovery requests it undoubtedly would face.  In fact, discovery is permitted only in limited circumstances.  As the court noted in *Office of Foreign Assets Control v. Voices in Wilderness*, "were the rule otherwise, every challenge to administrative action would turn into a fishing expedition into the motives of the defendant agency."[23]

---

[21]  452 F.3d 813, 816 (D.C. Cir. 2006) (citation omitted).  *Accord Evangelical Lutheran Church in Am. v. INS*, 288 F. Supp. 2d 32, 48 (D.D.C. 2003).

[22]  Trustees Opp. Prot. Order at 7.

[23]  382 F. Supp. 2d 54, 63 (D.D.C. 2005).

6

The Supreme Court explained in *PBGC v. LTV Corp.* that certain agency decisions are required to be issued through "formal adjudication" under "the trial-type procedures set forth in §§ 5, 7 and 8 of the APA, 5 U.S.C. §§ 554, 556-557," but these provisions apply only where the agency's governing statute mandates that the matter be "determined on the record after opportunity for an agency hearing."[24]  In such formal adjudications, parties must be given notice of "the matters of fact and law asserted," an opportunity for "the submission and consideration of facts [and] arguments," and an opportunity to submit "proposed findings and conclusions" or "exceptions."[25]

In contrast, the Supreme Court emphasized that other agency decisions — the 2006 Letter is an example — may "lawfully [be] made by informal adjudication," to which only the "minimal requirements" of 5 U.S.C. § 555 apply.[26]  These require only that the agency conclude the matter within a reasonable time and give prompt notice and a brief statement of the grounds for a denial of any application or request.  PBGC far surpassed these minimal requirements, giving all affected parties an opportunity to provide input, carefully considering the hundreds of pages they submitted, and issuing a comprehensive decision.

In the *LTV* case, the Supreme Court reversed a Second Circuit decision that would have imposed procedural requirements on PBGC's decision-making process such as "appris[ing] LTV of the material on which [PBGC] was to base its decision, [giving] LTV an adequate opportunity to offer contrary evidence, proceed[ing] in accordance with ascertainable standards, [and]

---

[24]  496 U.S. 633, 655 (1990); *see* 5 U.S.C. § 554(a).

[25]  496 U.S. at 655, citing 5 U.S.C. §§ 554(b)(3), 554(c)(1), 557(c)(1), and 557(c)(2).

[26]  *Id*.

provid[ing] LTV a statement showing [PBGC's] reasoning in applying those standards."[27]  These

are *exactly* the sorts of requirements that Sara Lee and the Trustees desire here, arguing that

PBGC's "failure" to provide them constitutes bad faith that justifies discovery.

     Sara Lee and the Trustees argue that they should have been apprised of the "scope and

procedure of the PBGC's inquiry";  told "what information [PBGC] found important and what

issues were controlling"; allowed to "supplement their initial responses"; given an "opportunity

to rebut [PBGC's] 'findings' made in the 2006 Determination"; and permitted to rebut other

parties' submissions.[28]  As the Supreme Court made clear in *LTV*, there is simply no basis in the

law for these requirements, and their absence assuredly provides no grounds for allegations of

"bad faith" or justification for discovery.[29]

     Similarly, PBGC's decision to make its determination in the 2006 Letter "immediately

effective," thus obviating the need for any party to appeal to or seek reconsideration from PBGC

before challenging the determination in court, forms no basis for allowing discovery.[30]  At the

---

[27]  496 U.S. at 653.

[28]  *See* Sara Lee Opp. Prot. Order at 7, 15, Trustees Opp. Prot. Order at 3-4.  Sara Lee's complaint that it was not permitted to "rebut or comment on the positions taken by the various other parties" (Opp. at 7) is particularly disingenuous, since it alone refused to provide to other parties a copy of its submission to PBGC.  *See* AR 1448.

[29]  Somewhat perplexingly, Sara Lee also argues, presumably on behalf of some unnamed participating employer, that PBGC "failed to give all interested parties notice of its intent to review the 1979 Determination," but instead, "directly" notified "only a few" of the participating employers.  Sara Lee Opp. Prot. Order at 3, 15.  As is evident in the Administrative Record, PBGC asked the Trustees, as the officials with the most current contact information, to forward the notice to all participating employers.  AR 427.  As no participating employer has come forward to complain that it was not notified, Sara Lee's claim rings particularly hollow.

[30]  In the 2006 Letter, PBGC stated that, "[i]n light of the exigencies of this matter," "there is no obligation for any party aggrieved by this determination to exhaust its administrative

time PBGC issued the 2006 Letter, there were several ongoing lawsuits involving the status of

the Plan and Sara Lee's concomitant ability to withdraw funds.  PBGC explained to the

bankruptcy court adjudicating one of those lawsuits that "particularly in exigencies like this,

where there's pending litigation that may be affected," PBGC may make its determination

immediately effective.[31]  Thus, PBGC's effort to issue a final determination was entirely

reasonable, and the Court should summarily reject Sara Lee's disingenuous suggestion that

PBGC took this "heavy-handed action" in order "to end the review with only its *ex parte* decision

and require all aggrieved parties to file suit."[32]

The Trustees also make naked allegations, based only on "information and belief," that

PBGC "engaged in *ex parte* communications with the parties and relied on these

communications in its 2006 decision-making process."[33]  Such bare assertions are exactly the sort

of charges that the D.C. Circuit has dismissed because they are easily made but, if allowed to

stand, generate an "inordinate burden" to resolve.[34]  The Court should do so here as well.  In

---

remedies with respect to this determination, either by seeking reconsideration by PBGC, or by
filing an administrative appeal."  AR 1579.

[31] *In re Interstate Bakeries Corp.*, No. 04-45814-jwv, Transcript of Motion Hearing
before the Hon. Jerry W. Ventners (Bankr. W.D. Mo. June 27, 2006) at 72, excerpt attached
hereto as Exhibit 1.

[32] Sara Lee Opp. Prot. Order at 4.

[33] Trustees Opp. Prot. Order at 4, 6, 8-9; Third Party Complaint at ¶ 54 ("On information
and belief, there were extensive *ex parte* communications between PBGC and some of the
interested parties.").

[34] *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1327-29 (D.C. Cir. 1984),
*vacated in part*, 760 F.2d 1320 (D.C. Cir. 1985), *aff'd*, 789 F.2d 26 (D.C. Cir. 1986).

short, PBGC's informal adjudication was entirely appropriate, and the procedural mandates that

Sara Lee and the Trustees desire form no basis for discovery beyond the administrative record.[35]

### C.    THE ADMINISTRATIVE RECORD IS COMPLETE.

Finally, Sara Lee and the Trustees assert that discovery is necessary because PBGC did

not include four categories of documents in the administrative record, purportedly raising

discoverable issues about its completeness.  Because this claim is baseless, it must be rejected.

This Court recently explained the principles governing judicial review of an

administrative record in *Pacific Shores Subdivision, California Water Dist. v. U.S. Army Corps

of Engineers.*  Judicial review of agency action is based on the full administrative record that was

before the agency decision-makers at the time they made their decision.[36]  "Common sense

dictates that the agency determines what constitutes the 'whole' administrative record because it

is the agency that did the 'considering,' and that therefore is in a position to indicate initially

which of the materials were 'before' it — namely, were 'directly or indirectly considered.'"[37]

And the agency "is not obligated to include every potentially relevant document existing within

_____

[35]  Although the Trustees throw in a half-hearted allegation that "[PBGC's] process violated their procedural due process rights" (Opp. at 4, 8), the only property interest they assert is that the 2006 Letter "subjects the Plan to uncertainty and has exposed the Plan and its Trustees to litigation."  Third Party Complaint at ¶¶ 75, 76.  A hope to avoid uncertainty and litigation simply does not constitute a protected property interest.  *See Board of Regents of State College v. Roth*, 408 U.S. 564, 577 (1972); *C&E Servs., Inc. of Washington v. DC Water & Sewer Auth.*, 310 F.3d 197, 200 (D.C. Cir. 2002).

[36]  448 F. Supp. 2d 1, 4 (D.D.C. 2006) (Facciola, J.) (*quoting Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)) (internal quotations and citation omitted).

[37]  448 F. Supp. 2d at 5 (internal quotations and citation omitted).

10

its agency.  Only those documents that were directly or indirectly considered by the [agency's]

decisionmaker(s) should be included in the administrative record."[38]

Sara Lee and the Trustees nevertheless identify four categories of documents whose

absence from the record purportedly justify discovery:

1.    documents evidencing that over the years, PBGC treated the Plan as an aggregate
      of single-employer plans by processing "standard" terminations of the "plans"
      maintained by certain bakery employers;

2.    certain Form 5500's submitted by the Plan;

3.    documents regarding PBGC's 1998 audit of the standard termination of the Gulf
      Coast Snacks plan; and

4.    PBGC's opinion letters in other cases and documents "that speak to the PBGC's
      procedures in assessing the Title IV status of a plan."[39]

As to the first category, PBGC freely acknowledges that it treated the Plan as an

aggregate of single-employer plans, consistent with the 1979 Letter in which the agency

erroneously determined the Plan to *be* an aggregate of single-employer plans.  It was utterly

consistent with the 1979 Letter for the agency to process terminations of the "plans"of

participating employers within the Plan.  In issuing the 2006 Letter, it was not necessary for

PBGC to review the documentation evidencing this treatment, and PBGC did not do so.  As this

Court made clear in *Pacific Shores*, a party challenging an agency's administrative record:

cannot meet its burden simply by asserting that the [additional] documents are
relevant, were before or in front of the [agency] at the time it made its decision,
and were inadequately considered.  This is pure speculation.  Rather, [the

---

[38]  *Id.* at 7.

[39]  *See* Sara Lee Opp. Prot. Order at 17-19; Trustees Opp. Prot. Order at 8.

challenger] must identify reasonable, non-speculative grounds for its belief that the documents *were considered by the agency* and not included in the record.[40]

In any event, some of these standard termination materials *are* in the record, as well as the parties' arguments about them.[41]  Both Sara Lee and the Trustees emphasized in their submissions to PBGC that several of the Plan's participating employers had terminated their plans under "PBGC's standard termination rules."[42]  The fact that the agency did not include hundreds of pages of additional, cumulative documentation does not make the record incomplete or warrant discovery.[43]

As to the second category, Sara Lee complains that two Form 5500's, from the years 1980 and 1996, are "missing" from the administrative record.  These forms are important, according to Sara Lee, because they contain "a footnote explaining that the ABA Plan is an aggregate of single-employer plans for purposes of plan termination."[44]  But as Sara Lee concedes, the

---

[40]  448 F. Supp. 2d at 6 (emphasis added).

[41]  *See* AR 1305 (Sara Lee letter at 6); AR 298 (Plan letter of Jun. 6, 2005 at 2); AR 879 to 880 (Plan letter of Dec. 2, 2005 at 17-18); AR 1188-1212 (Gulf Coast Snacks standard termination materials).

[42]  AR 879-880 (terminations "in accordance with the rules and regulations governing single-employer plans"); AR 298 (terminations "under PBGC's standard termination rules"); AR 1305 (terminations "under the PBGC's standard termination rules").

[43]  Indeed, the vast majority of Sara Lee's hundreds of pages of exhibits are cumulative examples of plan terminations in this category.

[44]  Sara Lee Opp. Prot. Order at 18.

administrative record already includes the Plan's 1983 Form 5500, which contains *the identical footnote*, as well as the Trustees' specific argument about it.[45]

As to the third category, once again, documents regarding the Gulf Coast standard termination audit are in the administrative record, along with the Trustees' arguments about it.[46] Sara Lee acknowledges this fact, but apparently would like "almost 100 [additional] pages of documents" related to the audit to be included as well.[47] This assertion can hardly justify discovery.

As to the fourth category, of course, published opinion letters need not be included in the administrative record when they are easily available.[48] PBGC's summary judgment brief, which the Trustees cite, contains the publicly-accessible cites for the opinion letters. And the Trustees' desire for documents "that speak to the PBGC's procedures in assessing the Title IV status of a plan" is baseless; as demonstrated above, the agency's procedures were entirely adequate, and provided more than the law's minimal requirements.

In sum, as this Court made clear in *Pacific Shores*, an agency's designation of the record is "entitled to a strong presumption of regularity," which cannot be rebutted 'simply by asserting that [certain] documents are relevant, were before or in front of the [agency] at the time it made

---

[45] *See* AR 1085, 875. Sara Lee labels PBGC's inclusion of the 1983 Form 5500 an "apparent sleight of hand." Opp. at 18. To the contrary, PBGC included the Trustees' entire submission to the agency, with all exhibits. The 1983 Form 5500 was Exhibit 10. AR 1085.

[46] *See* AR 880, 1182-1205.

[47] *See* Sara Lee Opp. Prot. Order at 19 and n.11.

[48] Although the Trustees assert that PBGC "now" relies upon its opinion letters in other cases, citing PBGC's opening brief herein (Trustees Opp. Prot. Order at 8), PBGC cited the very same opinion letters in the 2006 Letter. AR 1567.

its decision, and were inadequately considered."[49]  But in the event that this Court finds the

administrative record to be incomplete, the appropriate remedy is neither *de novo* review nor

discovery, but remand to the decision-maker for consideration of the complete record.[50]

### D.    PBGC DID NOT HAVE AN IMPROPER FINANCIAL MOTIVE.

Finally, in seeking to justify discovery, Sara Lee argues that in issuing the 2006 Letter,

PBGC was improperly motivated by a desire to avoid liability for $60 million in unfunded

benefits.[51]  This accusation is groundless.  The Plan was not terminating at the time of PBGC's

determination, and thus no liability was owed to PBGC.  Nor is it terminating now.  And there is

simply no support in the administrative record for this specious allegation.

To the contrary, the record shows that PBGC was properly motivated by IBC's request

for a ruling under Title IV of ERISA, the federal insurance program that PBGC administers, on

the Plan's status.  And that  request was prompted *not* by any improper action PBGC took, but

---

[49]  448 F. Supp. 2d at 6.  *See also Collins v. PBGC*, No. 88-3406-AER (D.D.C. Apr. 23, 1993) (rejecting discovery request based on very similar charge of selective inclusion of documents in an administrative record), attached hereto as Exhibit 2.

[50]  *See Southwest Ctr.*, 131 F. Supp. 2d at 8; *Hall v. Standard Ins. Co*., 2005 WL 348266, *3 (W.D. Va. Feb. 10, 2005) ("if the court determines that the administrative record was somehow incomplete, the remedy is not additional discovery but remand to the defendant for a new review and determination");  *McClain v. Barnhart*, 299 F. Supp. 2d 309, 328-29 (S.D.N.Y. 2004) ("[r]eversal and remand to the Commissioner for further proceedings is the usual remedy where an administrative record is incomplete"); *Blum v. Spectrum Rest. Group, Inc.*, 261 F. Supp. 2d 697, 711 n.8 (E.D. Tex. 2003) ("Mrs. Blum argues that Hartford's administrative record is an incomplete sham and, therefore, this Court should consider evidence outside the administrative record.  However, the proper remedy for an incomplete administrative record would be a remand to the plan administrator, not the consideration of evidence outside the administrative record by a district court.").

[51]  Sara Lee Opp. Prot. Order at 3.

14

largely by actions Sara Lee took when its contribution obligation dramatically spiked in 2004 due to several years of Plan investment losses and other factors.[52]

At that time, Sara Lee was by far the largest participating employer in the ABA Plan, and was due to bear the brunt of the funding shortfall: approximately 4,600 of the 6,500 Plan participants were current or former employees of Sara Lee.[53] In November 2004, the Plan actuary projected that anywhere from 62% to 76% of the $31.6 million in contribution obligations due in 2005 would be allocated to Sara Lee. Thus, the Plan actuary estimated that Sara Lee's contribution assessment due to the funding crisis would be $4.9 million to $5.9 million per quarter.[54] To avoid having to pay those substantially increased pension contributions going forward, Sara Lee opted to withdraw nearly 80% of its current and former employees from the Plan — 3,600 out of 4,600 — by spinning off the Plan assets and liabilities attributable to those employees to a stand-alone pension plan sponsored solely by Sara Lee.[55]

Clearly, then, the ramifications of a determination of the Plan's status are complex. First, as PBGC has made clear from the start, the Plan's status affects whether a significant portion of

---

[52] *See* AR 1564, 1572 (2006 Letter at 2, 10); AR 491 (Plan actuary's Nov. 4, 2004 letter describing funding crisis and upcoming required quarterly contributions from all participating employers).

[53] *See* AR 683 (Plan actuary's calculation of Plan assets and benefit liabilities by employer, showing Sara Lee "headcount" of 993 and 3,582 Plan participants, for a subtotal of 4,575 out of the total population of 6,557 Plan participants).

[54] AR 491-495.

[55] AR 1572 (2006 Letter at 10); AR 1496 (ABA Plan's request for IRS waiver, Dec. 15, 2005) ("Sara Lee Corporation has filed with the IRS in the Spring of 2005 a request for approval of its transfer of assets from the ABA Plan to a successor Plan") .

Plan assets — approximately $27 million — will be transferred to Sara Lee's stand-alone

pension plan.[56]  Moreover, as PBGC has also made clear, the Plan's status dictates the applicable

termination liability scheme that will apply if the Plan should terminate, and the liability that may

arise upon the withdrawal of any "substantial employer."[57]  In addition, all withdrawing

employers, substantial or not, remain liable for a share of the Plan's underfunding if it terminates

within five years, in amounts proportional to their respective shares of the Plan's contributions

during that period.[58]

But the fact that the statutory termination insurance program may derive a financial

benefit as a consequence of this administrative determination does not taint the decision.[59]  And

---

[56]  AR 1564 (2006 Letter at 2).  According to the Plan actuary's calculations, Sara Lee would get a $98 million transfer if the Plan is an aggregate of separate pension plans, and $71 million if it is a multiple employer plan. *Id.*

[57]  2006 Letter at 2.  "Substantial employers" who withdraw from an underfunded multiple employer plan may be required to post a bond or other security to cover a share of the plan's benefit liabilities if the plan terminates within five years.  29 U.S.C. § 1363.  Sara Lee is a "substantial employer" because it is and was responsible for more than 10% of required employer contributions at all relevant times.  29 U.S.C. § 1301(a)(2).

[58]  29 U.S.C. § 1364.

[59]  *See Doolin Sec. Savs. Bank v. FDIC*, 53 F.3d 1395, 1407 (4th Cir. 1995) ("Presumably all agencies inherently have some level of 'institutional bias,' but such an interest does not render all agencies incapable of adjudicating disputes within their own proceedings given the strong public interest in effective, and expert decisionmaking in the administrative setting"); *Agomo v. Fenty*, 2007 WL 265897 (D.C. Cir. Feb. 1, 2007) ("Appellants' argument is tantamount to arguing that all judges employed by the District are biased in civil suits in which the District is a party, simply over concern that the District may fall into a budget deficit.  Appellants have not suggested, nor is there any evidence that the salaries of the individual hearing examiners or judges are contingent upon findings of liability, or that their salaries are directly affected in any way by the state of the District's budget.").

the well-established presumption of governmental good faith applies to administrative

proceedings.[60]  Moreover, as the Supreme Court emphasized long ago:

> Cabinet officers charged by Congress with adjudicatory functions are not assumed
> to be flabby creatures any more than judges are.  Both may have an underlying
> philosophy in approaching a specific case.  But both are assumed to be men of
> conscience and intellectual discipline, capable of judging a particular controversy
> fairly on the basis of its own circumstances.[61]

In sum, Sara Lee's unsupported attack on PBGC's motivation in responding to IBC's request for

a ruling presents no basis to allow discovery.

## CONCLUSION

As demonstrated above, discovery in this administrative record case is not permitted and

would do great damage to PBGC in the extensive time necessary to respond to the many and

wide-ranging requests that may be expected absent a protective order.  Because neither the

Trustees nor Sara Lee has overcome the substantial obstacles to such discovery, the Court should

enter a protective order prohibiting it.

---

[60]  *See* PBGC's opening brief at 18 n.70.

[61]  *United States v. Morgan*, 313 U.S. 409, 421 (1941).

17

Date:   June 8, 2007                              Respectfully submitted,


                                                   /s/ Marc S. Pfeuffer
                                                  ISRAEL GOLDOWITZ (D.C. Bar No. 291120)
                                                  Chief Counsel
                                                  CHARLES L. FINKE
                                                  Deputy Chief Counsel
                                                  MICHAEL P. MORA
                                                  PAULA J. CONNELLY (D.C. Bar No. 389055)
                                                  Assistant Chief Counsels
                                                  MARK BLANK (D.C. Bar No. 968388)
                                                  MARC S. PFEUFFER (D.C. Bar No. 484209)

                                                  PENSION BENEFIT GUARANTY CORP.
                                                  Office of the Chief Counsel
                                                  1200 K Street, N.W.
                                                  Washington, D.C.  20005
                                                  Tel. No. (202) 326-4020, ext. 4903
                                                  Fax No. (202) 326-4112
                                                  E-mail: pfeuffer.marc@pbgc.gov and
                                                  efile@pbgc.gov

                                                  Attorneys for Pension Benefit Guaranty Corp.