IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SARA LEE CORPORATION, on its own | ) | |
| Behalf and on behalf of its | ) | |
| Employee-participants in the American | ) | |
| Bakers Association Retirement Plan, | ) | |
| Three First National Plaza | ) | No. 06-C-00819-HHK |
| Chicago, Illinois 60602-4260 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN BAKERS ASSOCIATION | ) | |
| RETIREMENT PLAN; and BOARD OF | ) | |
| TRUSTEES OF THE AMERICAN | ) | |
| BAKERS ASSOCIATION RETIREMENT | ) | **THIRD PARTY DEFENDANT** |
| PLAN, as Administrator of The American | ) | **INTERSTATE BRANDS** |
| Bakers Association Retirement Plan, | ) | **CORP.'S REPLY IN** |
| 1300 Eye Street, N.W., Ste. 700 West | ) | **SUPPORT OF PBGC'S** |
| Washington, D.C. 20005 | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| and | ) | |
| | ) | |
| PENSION BENEFIT GUARANTY | ) | |
| CORPORATION | ) | |
| 1200 K Street, N.W. | ) | |
| Washington, D.C. 20005 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| AMERICAN BAKERS ASSOCIATION | ) | |
| RETIREMENT PLAN; and BOARD OF | ) | |
| TRUSTEES OF THE AMERICAN | ) | |
| BAKERS ASSOCIATION RETIREMENT | ) | |
| PLAN, as Administrator of The American | ) | |
| Bakers Association Retirement Plan, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| Counterclaimants, and Cross-Claimants | ) | |
| | ) | |
| v. | ) | |
| | ) | |

SARA LEE CORP.,                                        )
                                                       )
                          Respondent,                  )
                                                       )
PENSION BENEFIT GUARANTY                               )
CORPORATION,                                           )
                                                       )
                          Cross-Defendant,             )
                                                       )
          and                                          )
                                                       )
KETTERING BAKING CO.                                   )
729 Coleman Avenue                                     )
Fairmont, WV 26554                                     )
                                                       )
INTERSTATE BRANDS CORP.                                )
12 E. Armour Blvd.                                     )
Kansas City, MO  64111-1202                            )
                                                       )
LEWIS BROS. BAKERIES, INC.                             )
500 N. Fulton Avenue                                   )
Evansville, IN  47710                                  )
                                                       )
HARRIS BAKING CO., INC.                                )
2301 S. 1st Street                                )
Rogers, AR  72758-6416                                 )
                                                       )
AMERICAN BAKERS ASSOCIATION                            )
1300 Eye Street, N.W.                                  )
Suite 700 West                                         )
Washington, D.C.  20005                                )
                                                       )
          and                                          )
                                                       )
JENNY LEE BAKERY, INC.                                 )
620 Island Avenue                                      )
McKees Rock, PA  15136                                 )
                                                       )
                  Third-Party Defendants.              )
                                                       )
_____ )

# Table of Contents

Page

THIRD PARTY DEFENDANT INTERSTATE BRANDS CORPORATION'S
    REPLY IN SUPPORT OF THE PENSION BENEFIT GUARANTY
    CORPORATION'S MOTION FOR SUMMARY JUDGMENT ................................ 1

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT .................................................................................................... 3

I.     THE PBGC's 2006 DETERMINATION SHOULD BE REVIEWED UNDER
    THE APA'S ARBITRARY AND CAPRICIOUS STANDARD ................................ 3

    A.     ERISA § 1303(f) Does Not Create An Independent Cause Of Action
        Outside The APA ........................................................................... 4

    B.     The Purported Conflict Between The PBGC's 1979 And 2006
        Determinations Cannot Support The Application Of *De Novo* Review ........... 6

II.     THE PBGC'S ADMINISTRATIVE PROCEDURES AND THE
    RESULTING ADMINISTRATIVE FINDINGS AND RECORD ARE MORE
    THAN ADEQUATE ....................................................................................... 8

    A.     The Administrative Process Employed By The PBGC Met The
        Requirements Of The APA ............................................................... 8

        1. The Parties Received Adequate Notice of the PBGC's Decision to
            Review Its 1979 Determination ........................................... 9

        2. The PBGC Adequately Informed the Participating Employers as to
            the Scope of Its Review ................................................... 10

        3. The Parties Had Adequate Time to Prepare Their Submissions and
            Need Not Have Relied on the Plan to Respond on Their Behalf ......... 10

        4. Respondents Received Copies of IBC's Submissions to the PBGC ............ 11

        5. The PBGC Allowed for Direct Action in this Court to Facilitate a
            More Timely Resolution of this Matter ................................ 11

    B.     The 1,500-Page Administrative Record Prepared By The PBGC Is
        More Than Adequate To Support Its 2006 Determination ......................... 11

III.     THE PBGC'S DETERMINATION THAT THE PLAN IS, AND ALWAYS
    HAS BEEN, A MULTIPLE EMPLOYER PLAN IS REASONABLE AND
    WELL SUPPORTED BY THE RECORD .......................................................... 13

A.    Summary Judgment Is Appropriate Because This Court Need Look No
      Further Than The PBGC's 2006 Determination And The
      Administrative Record ................................................................................ 14

B.    The Plan's Actual Operation Over Nearly Thirty Years Demonstrates
      That It Is, And Always Has Been, A Multiple Employer Plan ...................... 15

C.    Contrary To Respondents' Position, The PBGC May Consider
      Evidence Other Than The Plan Documents .................................................. 17

      1.    Authorities Cited by Sara Lee and the ABA Do Not Support Their
            Argument that the Face of the Plan Documents Should be
            Controlling and are Otherwise Distinguishable .................................. 18

      2.    Authorities Cited by Sara Lee and the ABA Do Not Support Their
            Assertion that Evidence Outside the Plan Documents Should be
            Considered Only in Cases Where the Plan Documents are Not
            Clear ................................................................................................ 19

D.    Respondents Further Misconstrue The PBGC's Position And Ignore
      The Underlying Rationale For The PBGC's 2006 Determination .................. 19

E.    Additional Evidence Respondents Seek To Introduce Would Not
      Overcome The PBGC's Determination That The Plan Has Operated
      As A Multiple Employer Plan Since Its Inception ........................................ 20

F.    The Plan May Need To Take Corrective Measures As A Result Of The
      PBGC'S 2006 Determination ....................................................................... 21

CONCLUSION ............................................................................................................ 22

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Ackerman v. United States*, 324 F. Supp. 2d 1 (D.D.C. 2004)................................................. 4

*Action for Children's Television v. Federal Communications Commission*, 564
    F.2d 458 (D.C. Cir. 1977)...........................................................................................13

*Advance Foundry Co. v. Kaufman*, No. C-3-94-205, 1996 U.S. Dist. LEXIS
    22551 (S.D. Ohio Mar. 25, 1996) ............................................................................ 7

*Akzo Nobel Salt, Inc. v. Federal Mine Safety & Health Review Commission*,
    212 F.3d 1301 (D.C. Cir. 2000) ............................................................................... 7

*Ass'n of Flight Attendants-CWA v. PBGC*, No. 05-1036(ESH), 2006 U.S. Dist.
    LEXIS 1318 (D.D.C. Jan. 13, 2006) ......................................................................... 4

*A-T-O, Inc. v. PBGC*, 634 F.2d 1013 (6th Cir. 1980)............................................................ 4

*Bland v. Secretary of Army*, No. 05-02143, 2007 U.S. Dist. LEXIS 20776
    (D.D.C. Mar. 23, 2007) ............................................................................................ 4

*Belland v. PBGC*, 726 F.2d 839 (D.C. Cir. 1984) ...........................................................3, 13

*Beverly Enterprises, Inc. v. Herman*, 130 F. Supp. 2d 1 (D.D.C. 2000) ...............................12

*Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988)........................................21

*Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212 (D.D.C. 1996)................................. 8

*Burke v. United States Environmental Protection Agency*, 127 F. Supp. 2d 235
    (D.D.C. 2001) ........................................................................................................ 4

*Caskey v. PBGC*, No. 97-CV-4240, 1999 U.S. Dist. LEXIS 21448 (E.D. Pa.
    Jan. 14, 1999)......................................................................................................... 4

*\*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)..............................12

*Coleman v. Nationwide Life Insurance Co.*, 969 F.2d 54 (4th Cir. 1992) .............................17

*Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1 (D.C. Cir.
    1998)...............................................................................................................8, 12

*DSE, Inc. v. United States*, 169 F.3d 21 (D.C. Cir. 1999) .....................................................14

*Evangelical Lutheran Church in America v. Immigration & Naturalization Service*, 288 F. Supp. 2d 32 (D.D.C. 2003) .................................................14

*Federal Trade Commission v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966 (D.C. Cir. 1980) ................................................................................... 8

*Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997) ..................................... 4

*Kent County v. United States Environmental Protection Agency*, 295 F.2d 391 (D.C. Cir. 1992) .................................................................................12

*Kolentus v. Avco Corp.*, 798 F.2d 949 (7th Cir. 1986) ...........................17

*Mineral Policy Center v. Norton*, 292 F. Supp. 2d 30 (D.D.C. 2003)....................................14

*Nowell v. Central Service Ass'n*, 106 F. Supp. 2d 888 (S.D. Miss. 2000)........................18, 20

*Occidental Petroleum Corp. v. SEC*, 873 F.2d 325 (D.C. Dir. 1989) ....................................11

*PBGC v. Artra Group, Inc. ("Artra I")*, 972 F.2d 771 (7th Cir. 1992)....................................18

*PBGC v. Artra Group, Inc. ("Artra II")*, No. 90 C 5358, 1993 U.S. Dist. LEXIS 8440 (N.D. Ill. June 22, 1993) ...................................... 3, 4, 14, 19

*PBGC v. Fel Corp.*, 798 F. Supp. 239 (D.N.J. 1992) ............................. 5

*PBGC v. Haberbush*, No. CV 00-02631-GHK(AIJx), 2000 U.S. Dist. LEXIS 22818 (C.D. Cal. Nov. 1, 2000)................................................................ 5

*\*PBGC v. LTV Corp.*, 496 U.S. 633 (1990)....................................2, 3, 8, 13

*PBGC v. LTV Steel Corp.*, 119 F.R.D. 339 (S.D.N.Y. 1988) ................12

*PBGC v. Potash*, No. CIV-79-130B(E), 1986 U.S. Dist. LEXIS 30987 (W.D.N.Y Mar. 25, 1986 )........................................................................20

*PBGC v. United Air Lines, Inc.*, 436 F. Supp. 2d 909 (N.D. Ill. 2006) ................................... 5

*\*PBGC v. United Air Lines, Inc.*, No. 05-0269, , 2005 U.S. Dist. LEXIS 30117 (E.D. Va. Nov. 10, 2005), *aff'd*, No. 05-2375, 2007 U.S. App. LEXIS 401 (4th Cir. Jan. 9, 2007) .......................................................4, 5

*S.G. Loewendick & Sons, Inc. v. Reich*, 70 F.3d 1291 (D.C. Cir. 1995) ................................. 7

*Shays v. Federal Election Commission*, 424 F. Supp. 2d 100 (D.D.C.  2006)........................14

*In re UAL Corp.*, 468 F.3d 444 (7th Cir. 2006)...................................................................... 6

*Utah Marblehead, LLC v. Kempthorne*, No. 05-00844 (HHK), 2007 U.S. Dist.
    LEXIS 22855 (D.D.C. Mar. 29, 2007)............................................................................. 4

*Weingartner v. Wynne*, No. 05-01031 (HHK), 2007 U.S. Dist. LEXIS 22175
    (D.D.C. Mar. 28, 2007) ................................................................................................... 4

*Wise v. Ruffin*, , 914 F.2d 570 (4th Cir. 1990)......................................................................... 7

## STATUTES AND RULES                                             PAGE(S)

5 U.S.C. § 706(2)(A)................................................................................................................. 3

29 U.S.C. § 1303(f).............................................................................................................3, 4, 5

29 U.S.C. § 1342(c) .................................................................................................................. 5

29 U.S.C. § 4063.....................................................................................................................21

Fed. R. Civ. P. 56(b) ................................................................................................................. 1

Local Rule 56.1......................................................................................................................... 1

## OTHER AUTHORITIES                                              PAGE(S)

*PBGC Opinion Letter 79-3*, 1979 PBGC LEXIS 15 (Feb. 12, 1979) ....................................19

*PBGC Opinion Letter 84-2*, 1984 PBGC LEXIS 8 (Jan. 17, 1984).......................................19

*PBGC Opinion Letter 85-2*, 1985 PBGC LEXIS 31 (Jan. 14, 1985) .................. 15, 16, 17, 18

**THIRD PARTY DEFENDANT INTERSTATE BRANDS
CORPORATION'S REPLY IN SUPPORT OF THE PENSION BENEFIT
GUARANTY CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Third party defendant Interstate Brands Corporation ("IBC") submits this Reply in

support of the Pension Benefit Guaranty Corporation's ("PBGC") Motion for Summary Judgment

(the "Motion"), which was filed pursuant to Fed. R. Civ. P. 56(b) and Local Rules 7 and 56.1

(Docket No. 46).[1]  For all the reasons set forth below and for the reasons stated in the PBGC's

papers, summary judgment should be granted in favor of defendant PBGC on Counts I and II of

Plaintiff Sara Lee Corporation's ("Sara Lee") Second Amended Complaint, for third party

defendants PBGC and IBC on Count I of the American Bakers Association Retirement Plan and the

Board of Trustees of the American Bakers Association Retirement Plan's (collectively the "ABA")

Third Party Complaint for Declaratory and Injunctive Relief, Counterclaim, and Cross-Claim

("Third Party Complaint"), and third party defendant PBGC on Count II of the Third Party

Complaint.

## PRELIMINARY STATEMENT

In a scattershot approach, Sara Lee, the ABA, and third party defendant Lewis

Brothers Bakeries, Inc. ("Lewis Brothers") (collectively "Respondents") attack the process utilized

by the PBGC, the record reviewed by the PBGC, the standard of review to be used by this Court in

reviewing the decision, the correctness of the decision and the PBGC's good faith in rendering the

decision.  None of these attacks hit the mark.  In criticizing the process and the administrative record,

Respondents ignore the bedrock principle that Congress granted agencies wide discretion over

---

[1]  The ABA argues that IBC's Joinder in Support of the PBGC's Motion for Summary Judgment ("Joinder")
should be disregarded because it is not an independent motion for summary judgment.  (ABA Response at
11, n.8.)  In light of the stipulation by the ABA and this Court's scheduling Order allowing precisely such
filings, the ABA's contention lacks merit. (*See* Docket No. 51.)

1

proceedings so that there is no cookbook set of requirements. PBGC v. LTV Corp., 496 U.S. 633, 654 (1990). This principle of deference to the PBGC saddles Respondents with a heavy burden in complaining of supposed inadequacies in the process used by the PBGC to determine that the Plan is a multiple employer plan. Respondents do not come close to carrying their burden; rather, to the contrary, they negate one another's criticisms (e.g., one complains about not having enough time while another points out that more time was given to file papers, and they complain about a rush to judgment but admit that eight months elapsed between submission and determination). In any event, Respondents fail to show how the alleged deficiencies would have affected the outcome and do not establish a basis to merit disturbing the PBGC's 2006 determination.

Respondents' notions about the standard to be used by this Court in reviewing the PBGC's 2006 determination and the merits of the PBGC's 2006 determination analyzed pursuant to the applicable standard are equally unavailing. With respect to the standard of review, it is clear that the PBGC's 2006 determination should be reviewed under the arbitrary and capricous standard. Seeking to avoid this result, Respondents advance unsupportable notions of bad faith and tortured interpretations of statutory and case law authority. As shown below, the allegations of "bad faith," if accepted, would undermine every agency determination. With respect to the statutory case law, the cases cited by Respondents are either inapplicable or actually support the PBGC's position.

Putting aside the standard applicable to this Court's review, Respondents arguments are all over the map with regard to the controlling principles for the underlying controversy – e.g., do the Plan terms control or are the parties' actions of prime relevance? Sara Lee is adamant that the Plan terms are dispositive – although the cases they cite state the opposite. Of course, such a result is senseless since a course of conduct inconsistent with a plan's documents – such as is the case here – would render the words of the Plan document meaningless. The ABA on the other hand

recognizes that the Plan's actions govern (ABA Response at 1 and 17]) – although the ABA then later contradicts its earlier statements. (ABA Response at 26).

The PBGC's 2006 determination is fair, well-reasoned, and well-supported by the administrative record. Respondents have failed to present this Court with any legitimate reasons to disturb the PBGC's findings. As made clear by the PBGC's 2006 determination, the Plan did not abide by the representations leading to the PBGC's 1979 determination. (AR 1578.) Nor did the Plan prevent cost-shifting among employers. (Id.) Accordingly, summary judgment should be granted in favor of the PBGC and IBC.

## <u>ARGUMENT</u>

## I.    THE PBGC's 2006 DETERMINATION SHOULD BE REVIEWED UNDER THE APA'S ARBITRARY AND CAPRICIOUS STANDARD

This Court should review the PBGC's 2006 determination under the APA's arbitrary and capricious standard. 5 U.S.C. § 706(2)(A). Sara Lee's argument that *de novo* review is appropriate under the Employee Retirement Income Security Act ("ERISA") § 1303(f) and Sara Lee's and the ABA's arguments that *de novo* review is appropriate where the agency has issued more than one agency interpretation are without merit and should be rejected by this Court.

The APA provides that a court may set aside an agency's findings only where the agency's determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Courts have routinely held that the APA applies to the PBGC's administrative decisions. *PBGC v. LTV Corp.*, 496 U.S. 633, 647 (1990); *Belland v. PBGC*, 726 F.2d 839, 844 (D.C. Cir. 1984); *PBGC v. Artra Group, Inc. ("Artra II")*, No. 90 C 5358, 1993 U.S. Dist. LEXIS 8440, at *3 (N.D. Ill. June 22, 1993). As this Court has repeatedly recognized, "[f]inal agency action is subject to judicial review under the APA. . . [T]he court must defer to the [agency's] decision unless it is 'arbitrary and capricious, contrary to law, or unsupported by

3

substantial evidence.'" *Weingartner v. Wynne*, No. 05-01031 (HHK), 2007 U.S. Dist. LEXIS 22175, at *5 (D.D.C. Mar. 28, 2007) (Kennedy, J.) (quoting *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)).[2] This Court should review the PBGC's decision under an arbitrary and capricious standard.

### A.    ERISA § 1303(f) Does Not Create An Independent Cause Of Action Outside The APA

Sara Lee's new assertion that the review of an agency determination brought under § 1303(f) is entitled to *de novo* review is untenable.  (Sara Lee Response at 8-10.)  Even Sara Lee's complaint concedes that Sara Lee is seeking a "declaration and injunction reversing the PBGC's decision in the 2006 determination that the Plan is a multiple employer pension plan because that decision is *arbitrary, capricious and incorrect* as a matter of law."  (Second Amended Compl. ¶ 44) (emphasis added).

Sara Lee's change of position as to the applicable standard of review also runs against the established case law.  Courts reviewing agency determinations brought pursuant to § 1303(f) have uniformly applied the APA and reviewed such actions under an arbitrary and capricious standard.[3]  In *PBGC v. United Air Lines, Inc.*, the Virginia district court addressed the appropriate standard of review for an agency determination brought pursuant to § 1303(f) and found that "[w]hile § 1303(f) permits [a party] to challenge PBGC's determination, § 1303(f) does not contain a

---

[2] *See also Utah Marblehead, LLC v. Kempthorne*, No. 05-00844 (HHK), 2007 U.S. Dist. LEXIS 22855, at *6-7 (D.D.C. Mar. 29, 2007) (Kennedy, J.); *Bland v. Sec'y. of Army*, No. 05-02143, 2007 U.S. Dist. LEXIS 20776, at *3 (D.D.C. Mar. 23, 2007) (Kennedy, J.); *Ackerman v. United States*, 324 F. Supp. 2d 1, 5 (D.D.C. 2004) (Kennedy, J.); *Burke v. U.S. EPA*, 127 F. Supp. 2d 235, 238 (D.D.C. 2001) (Kennedy, J.).

[3]  *See A-T-O, Inc., v. PBGC*, 634 F.2d 1013, 1020 n.10 (6th Cir. 1980) ("[t]he PBGC's final decision to deny the petition for waiver is subject to judicial review under the Administrative Procedure Act");. *Ass'n of Flight Attendants-CWA v. PBGC*, No. 05-1036(ESH), 2006 U.S. Dist. LEXIS 1318, at *19-20 (D.D.C. Jan. 13, 2006) (the court applied an arbitrary and capricious standard of review to plaintiff's § 1303(f) action), *see also PBGC v. United Air Lines, Inc.*, No. 05-0269, 2005 U.S. Dist. LEXIS 30117, at *5 (E.D. Va. Nov. 10, 2005), *aff'd*, No. 05-2375, 2007 U.S. App. LEXIS 401 (4th Cir. Jan. 9, 2007); *Caskey v. PBGC*, No. 97-CV-4240, 1999 U.S. Dist. LEXIS 21448, at *7-8 (E.D. Pa. Jan. 14, 1999); *PBGC v. Artra Group, Inc.* *("Artra II")*, No. 90 C 5358, 1993 U.S. Dist. LEXIS 8440, at *3 (N.D. Ill. June 22, 1993).

standard of review or procedure for the Court to follow." No. 05-0269, 2005 U.S. Dist. LEXIS 30117, at *5 (E.D. Va. Nov. 10, 2005), *aff'd*, No. 05-2375, 2007 U.S. App. LEXIS 401 (4th Cir. Jan. 9, 2007). Because § 1303(f) lacked such guidance, the court held that § 1303(f) did not create a separate statutory cause of action and reviewed the pending PBGC appeal under the APA's arbitrary and capricious standard. *Id.*

The sole case relied on by Sara Lee, *PBGC v. United Air Lines, Inc.*, 436 F. Supp. 2d 909 (N.D. Ill. 2006), is not applicable to § 1303(f) actions. In *United Air Lines*, the Illinois district court limited its application of *de novo* review to action brought pursuant to § 1342(c) of ERISA and differentiated § 1342(c) actions from other ERISA-related actions. *Id.* at 916-17. According to the Illinois district court, the specific language of § 1342(c) required the reviewing court to consider factors different from those considered by the PBGC when making termination decisions. By setting forth independent "criteria for the court to consider," the Illinois district court found that "Congress implicitly rejected the arbitrary and capricious standard." *Id.* at 916. The Illinois district court then noted that its application of *de novo* review, even for § 1342(c) actions, was "a departure from the decision of other district courts."[4] *Id.* at 917.

Despite Sara Lee's assertions to the contrary, *United Air Lines* actually supports the application of an arbitrary and capricious standard of review in this case. In *United Air Lines*, the Illinois district court, in language not cited by Sara Lee, differentiated the non-APA causes of action that arose under § 1342(c) from the standard review of a final agency decision arising under the APA. The *United Air Lines* court stated that "the plain language of § 1342(c) establishes that the proceeding in the court is an adjudication *and not merely an enforcement or review of PBGC's prior*

---

[4] *See PBGC v. Haberbush*, No. CV 00-02631-GHK(AIJx), 2000 U.S. Dist. LEXIS 22818, at *15-16 (C.D. Cal. Nov. 1, 2000); *PBGC v. Fel Corp.*, 798 F. Supp. 239, 241 (D.N.J. 1992).

*determination.*"  *Id.* (emphasis added).  This difference was elucidated in the Seventh Circuit's

opinion on appeal, which Sara Lee also failed to cite.  *In re UAL Corp.*, 468 F.3d 444, 449 (7th Cir.

2006).  In *In re UAL Corp.* the Seventh Circuit found that "[d]eference is appropriate when agencies

wield delegated interpretive or adjudicatory power—the former usually demonstrated by rulemaking

and the latter by administrative adjudication."  *Id.*

    **B.    The Purported Conflict Between The PBGC's 1979 And 2006
            Determinations Cannot Support The Application Of *De Novo* Review**

              There is no conflict between the PBGC's 1979 and 2006 determinations.  Because the

standard employed by the PBGC in both determinations was identical, Sara Lee's and the ABA's

argument for *de novo* review based on conflicting agency interpretations is inapplicable.  In 1979

and 2006, the PBGC used the following standard to evaluate the Plan's status:

> Our determination as to the nature of an entity – whether it is a single plan or
> an aggregate of single plans – *is based on its structure and how it actually
> operates on an ongoing basis.*  We look to the documents governing the entity
> and to relevant evidence of how it has operated and continues to operate.
> Such evidence may include the reasonable expectations and intent of the
> parties.  The availability of funds held by an entity to provide benefits is a
> central factor in our analysis….If the evidence shows that payments are
> effectively restricted, by whatever means, so that there is a minimal risk of
> funds attributable to the contributions of one employer being used to pay the
> benefits of another employer's employee-participants, then the entity is an
> aggregate of single plans.

(AR 212-13, 1566-67) (emphasis added).

              The PBGC applied the above stated standard to determine "whether the Bakers Plan

ever complied, or even intended to comply, with the core tenets of the PBGC's 1979 determination."

(AR 1573.)  After considering nearly thirty years of the Plan's operations, the PBGC determined that

the Plan had not complied with its 1979 representations to the PBGC and that the termination and

actuarial previsions employed by the Plan had failed to prevent cost-shifting between participating

employers.  (AR 1578.)  Thus, when the PBGC looked at the Plan's actual operations and saw the

mixing of funds, the PBGC was required under the standard outlined in its 1979 and 2006 determinations to find that the Plan had operated as a multiple employer plan.

By comparison, in the cases cited by Sara Lee and the ABA, the agencies at issue offered multiple, conflicting interpretations of statutory wording over a relatively short period of time. *See Akzo Nobel Salt, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 212 F.3d 1301, 1304-05 (D.C. Cir. 2000); *Wise v. Ruffin*, 914 F.2d 570, 581 (4th Cir. 1990); *Advance Foundry Co. v. Kaufman*, No. C-3-94-205, 1996 U.S. Dist. LEXIS 22551, at *17-19 (S.D. Ohio Mar. 25, 1996); *S.G. Loewendick & Sons, Inc. v. Reich*, 70 F.3d 1291, 1296 (D.C. Cir. 1995). For example, in *Akzo* the court found that the promulgation of "several *different* positions strongly suggests to us that the Secretary has in fact never grappled with—and thus never exercised her judgment over—the conundrum posed by the regulation's clear ambiguity." *Akzo*, 212 F.3d at 1305. Unlike the Secretary in *Akzo*, the PBGC has advanced only one interpretation of multiple employer plans and aggregate of single employer plans.

Finally, the cases cited by both Sara Lee and the ABA are inapplicable because each concerns an agency's statutory or regulatory interpretation, not the review of an agency decision. *See Akzo,* 212 F.3d at 1304-05 (interpretation of a mine safety regulation); *Wise*, 914 F.2d at 572 (interpretation of the MPAA); *Advance Foundry,* 1996 U.S. Dist. LEXIS 22551, at *17-19 (interpretation of the MPAA); *S.G. Loewendick*, 70 F.3d at 1294-95 (interpretation of OSHA regulations). In the cases cited by Sara Lee and the ABA, the courts determined that because of agency inconsistency, the agencies' interpretations of their respective governing regulations or statutes were entitled to less deference. However, none of these cases contemplates the use of a *de novo* standard for an appeal of an agency determination under a settled interpretation of the law.

Accordingly, this Court should not deviate from the arbitrary and capricious review required by the APA when reviewing the PBGC's 2006 determination.

## II.  THE PBGC'S ADMINISTRATIVE PROCEDURES AND THE RESULTING ADMINISTRATIVE FINDINGS AND RECORD ARE MORE THAN ADEQUATE

Respondents' criticisms of the PBGC's administrative procedures and the resulting administrative record are misplaced.  None of the issues asserted by Respondents, taken individually or as a whole, justifies an invasion of the PBGC's administrative process.  It is well settled that agencies are entitled to a presumption of administrative regularity and good faith.  *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 975 (D.C. Cir. 1980); *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 216 (D.D.C. 1996) ("[t]here is a presumption in favor of the validity of the administrative action").  This presumption extends to the agency's preparation of the administrative record.  *Owens-Corning*, 626 F.2d at 975.  In order to expand this Court's review outside the administrative record, Respondents must establish a "strong showing" that the agency acted improperly or in bad faith or that the administrative record is deficient.  *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998).[5]  Respondents made no such showing.

### A.    The Administrative Process Employed By The PBGC Met The Requirements Of The APA

The administrative procedures employed by the PBGC satisfied the APA's standards.  The APA requires only that an "agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision."  *PBGC v. LTV Corp.*, 496 U.S. at 654 (citations omitted).  Here, the PBGC accepted submissions from the parties, issued a

---

[5] Sara Lee's argument regarding the PBGC's purported financial self-interest is without merit.  The PBGC's determinations will almost always affect its financial interest.  If Sara Lee is correct, then the PBGC would not be able to carry out its duties under ERISA without a court's constant supervision.

seventeen-page explanation of its determination, and provided this Court with a 1,500-page administrative record, containing more than sufficient documentation to support its determination.[6]

Respondents assert that the PBGC's administrative process was procedurally deficient because the PBGC purportedly failed to do the following: give proper notice to the parties, identify the scope of its inquiry, provide adequate time for preparation of submissions, offer an opportunity for response to other participating employers' submissions, and allow an opportunity for administrative appeal. Respondents' complaints, even if accurate, must fail because this Court is "not free to impose upon agencies specific procedural requirements that have no basis in the APA." *LTV*, 496 U.S. at 654. In any event, Respondents' complaints are belied by the record.

### 1. The Parties Received Adequate Notice of the PBGC's Decision to Review Its 1979 Determination

While the ABA does not take issue with the notice received by the parties, Sara Lee and Lewis Brothers assert that the PBGC failed to notify unidentified parties "directly." (Sara Lee Response at 15; Lewis Brothers Response at 14.) This assertion is so vague that it should be rejected on that basis alone. Further, no one else has come forward to challenge the adequacy of the notice. The PBGC provided notice in its November 2, 2005 letter, which alerted the parties that it would revisit its 1979 determination and invited submissions. (AR 427-28.) The PBGC sent the letter directly to counsel for IBC, Sara Lee, Kettering Baking Co. ("Kettering"), and the Plan and instructed the Plan's counsel to forward the letter to all other participating employers. (Id.) The notice was sufficient.

---

[6] Sara Lee's assertion that IBC's filing of an action in the bankruptcy court seeking enforcement of the PBGC's 2006 determination on August 9, 2006 (one day after the PBGC issued its opinion) somehow suggests collusion between IBC and the PBGC is desparate speculation. IBC had simply prepared to respond to the PBGC's determination, whatever that determination might have been.

### 2. The PBGC Adequately Informed the Participating Employers as to the Scope of Its Review

Respondents' assertions that the PBGC failed to apprise them of the scope and nature of its inquiry are not supported by the record.  (Sara Lee Response at 15; ABA Response at 23; Lewis Brothers Response 14.)  In its November 2, 2005 letter, the PBGC advised the parties that it would reconsider its 1979 determination that the Plan was an aggregate of single employer plans and instructed any interested parties to submit to the PBGC "any written statement or documents that [the party] would like PBGC to consider in its decision-making process."  (AR 427-28.)  The November 2, 2005 letter further identified case law the PBGC found relevant to its inquiry.  (AR. 428 (citing *PBGC v. Potash*, 1986 WL 3809 (W.D.N.Y) and *PBGC v. Artra Group, Inc.*, 1993 WL 225370 (N.D. Ill 1993).)

Sara Lee and the ABA attempt to make much of the fact that, in its submission, the Plan stated that it had "substantial additional information and records covering the past 45 years of operations that may have some bearing on the PBGC's consideration of the issues."  (Sara Lee Response at 15; ABA Response at 23 (citing AR 887).)  They fail, however, to identify any documents in their possession that would have affected the PBGC's 2006 determination.  Moreover, they cannot now cry foul merely because the Plan chose not to submit any such materials.

### 3. The Parties Had Adequate Time to Prepare Their Submissions and Need Not Have Relied on the Plan to Respond on Their Behalf

While Sara Lee and the ABA had no objection to the time period for submission, Lewis Brothers's complains that the PBGC failed to provide adequate time, forcing Lewis Brothers to rely on the Plan.  (Lewis Brothers Response at 15.)  This claim is not supported by the record. The PBGC invited submissions of all parties and not only the Plan.  (AR 427.)  Indeed, other participating employers, such as IBC, Kettering, and Sara Lee, made submissions.  (AR 429-1439.)

10

Further, Lewis Brothers chose not to seek more time for its response or to act during the eight months that passed while the PBGC considered the other parties' submissions.[7]

### 4.    Respondents Received Copies of IBC's Submissions to the PBGC

Sara Lee's and the ABA's assertions that it did not receive IBC's submissions prior to the issuance of the PBGC's 2006 determination are just plain wrong.  (Sara Lee Response at 15; ABA Response at 23-24.)  IBC timely gave all parties, including Sara Lee and the ABA, courtesy copies of its submission to the PBGC—a courtesy not returned by Sara Lee.  (AR 440, 1450.)  Sara Lee and the ABA then had *nearly eight months*, while the PBGC considered the parties' submissions, to seek permission from the PBGC or to *sua sponte* prepare and submit a rebuttal, but did not act.

### 5.    The PBGC Allowed for Direct Action in this Court to Facilitate a More Timely Resolution of this Matter

The PBGC allowed this action to proceed directly to the district court to permit the most efficient resolution of this matter.  (AR 1569; see also 1510, 1544.)  Respondents' arguments to the contrary ignore the fact that Sara Lee had already filed this action.  (Docket No. 1.) (Sara Lee Response at 15; ABA Response at 23; Lewis Brothers Response at 15.)  By allowing for direct appeal to this Court, the PBGC allowed Sara Lee to proceed with its chosen course of action without the impediment of a parallel agency action.

### B.    The 1,500-Page Administrative Record Prepared By The PBGC Is More Than Adequate To Support Its 2006 Determination

Respondents wrongly assert that discovery is necessary to supplement the 1,500-page administrative record compiled by the PBGC.[8]  Discovery is permitted in an appeal of an agency

---

[7] At the ABA's request, the initial deadline was extended to December 2, 2005.  (AR 1443.)

[8] Unlike *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 335-36 (D.C. Cir. 1989), a case cited by the ABA, in which the agency's failure "to give particularized reasons for its denial of confidentiality put [the

*(cont'd)*

determination *only if* the party seeking discovery can make a substantial showing that it will discover material in the agency's possession indicative of either bad faith or an incomplete record. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (requiring a "strong showing" before extra-record discovery will be permitted); *Beverly Enters., Inc. v. Herman*, 130 F. Supp. 2d 1, 8 (D.D.C. 2000) (to expand the review beyond the administrative record discovery, the party must make a *prima facie* showing that the agency purposefully or negligently excluded information from the administrative record) (citing *Kent County v. U.S. EPA*, 295 F.2d 391, 396 (D.C. Cir. 1992)).[9]

        Instead of providing the specific evidence necessary to establish a *prima facie* showing that the PBGC acted either negligently or in bad faith in compiling the administrative record, Respondents assert that they are entitled to discovery because the PBGC proceeded in an informal fashion and because the record is incomplete. To establish that an informal proceeding could merit further discovery, the ABA relies on *PBGC v. LTV Steel Corp.*, 119 F.R.D. 339 (S.D.N.Y. 1988). The holding in *LTV Steel*, however, was limited to the "unusual circumstances" presented in that case. *Id.* at 342. Unlike the PBGC's 2006 determination, which involved the PBGC's well-established standard for determining whether the Plan was a multiple employer plan, the PBGC's restoration determination at issue in *LTV Steel* "raise[d] novel and complex legal issues of first impression." *Id.*

_____
*(cont'd from previous page)*
        plaintiff] in the position of having 'no information as to why it had not prevailed,'" the PBGC provided substantial reasoning for its 2006 determination that the Plan was a multiple employer plan. This reasoning was further supported by the 1,500-page administrative record, leaving no reason for remand in this case.

   [9] The ABA's argument that "this Court cannot determine whether the record submitted constitutes the complete administrative record" (ABA Response at 18) misses the point: this Court must *presume* that an agency's administrative record is complete. *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998). Otherwise, discovery would be the norm, rather than the rare exception as prescribed by governing law.

Respondents' assertions that discovery is warranted because certain documents may have been excluded from the record is similarly unavailing. Respondents cite past and present PBGC Opinion letters and supporting materials, purported *ex parte* communications,[10] certain Form 5500's submitted by the Plan, and further information concerning participating employer withdrawals. (Sara Lee Response at 16; ABA Response at 19-20; Lewis Brothers Response at 15.) Beyond listing the documents, Respondents fail to present specific evidence that these documents were purposefully or negligently excluded from the record and thus cannot overcome the presumption of good faith accorded to the PBGC and its preparation of the administrative record. *Beverly Enters.*, 130 F. Supp. 2d at 8. Further, Respondents fail to establish that any of these documents would or should have affected the PBGC's determination. The PBGC's administrative process and the resulting administrative record were more than adequate to support its findings and explain its rationale to this Court. (AR 1578.)

III.    **THE PBGC'S DETERMINATION THAT THE PLAN IS, AND ALWAYS HAS BEEN, A MULTIPLE EMPLOYER PLAN IS REASONABLE AND WELL SUPPORTED BY THE RECORD**

The PBGC's 2006 determination that the Plan is a multiple employer plan is both well reasoned and well supported by the administrative record. As discussed in Section I above, the PBGC's 2006 determination should be reviewed under the APA's arbitrary and capricious standard. *PBGC v. LTV Corp.*, 496 U.S. at 647; *Belland*, 726 F.2d at 844. This standard is highly deferential to the agency. *Volpe*, 401 U.S. at 416. In reviewing agency decisions, such as those of the PBGC, courts "will not readily substitute [their] judgment for that of the agency, but will defer to [the

---

[10] According to the only "evidence" presented, the alleged *ex parte* communications occurred before September 1, 2005. (ABA Response, Decl. Ann Fraser ¶4). Thus, the alleged communications occurred prior to the PBGC's November 11, 2005 announcement that it would reconsider its 1979 determination. Further, *ex parte* communications are not proscribed during an informal agency adjudication. *See Action for Children's Television v. FCC*, 564 F.2d 458, 475 n.28 (D.C. Cir. 1977).

agency's] experience provided that the agency has offered a reasoned explanation for its decision, and that the result is in accord with material facts contained in the administrative record." *DSE, Inc. v. United States*, 169 F.3d 21, 30 (D.C. Cir. 1999) (citation omitted). This Court should defer to the PBGC's well-reasoned judgment and grant summary judgment in favor of the PBGC and IBC.

A.    **Summary Judgment Is Appropriate Because This Court Need Look No Further Than The PBGC's 2006 Determination And The Administrative Record**

Respondents' assertions that summary judgment is inappropriate because there exist issues of material fact are incorrect. (Sara Lee Response at 26; ABA Response at 20-22; Lewis Brothers Response at 16.) As courts in this Circuit have repeatedly recognized, summary judgment is particularly appropriate where the court's review is based on an administrative record. *Mineral Policy Ctr. v. Norton*, 292 F. Supp. 2d 30, 36 (D.D.C. 2003); *Shays v. FEC*, 424 F. Supp. 2d 100, 109-110 (D.D.C. 2006); *Evangelical Lutheran Church in Am. v. INS*, 288 F. Supp. 2d 32, 39 (D.D.C. 2003). As the district court explained in *Artra II* under a similar circumstance:

> The best that can be said for the matters asserted by Artra is that they are disputed by the parties. If this matter were before this court to decide as an initial matter, the disputed matters would raise sufficient questions of material fact to preclude summary judgment. The court, however, is not called upon to make an initial decision in this matter. This court is called upon to decide whether the Appeals Board's decision was irrational or "arbitrary and capricious." That the Appeals Board decided this matter based on the language of the plan's documents, the plan's accounting practices, and the treatment of other participating employers is not irrational.

1993 U.S. Dist. LEXIS 8440, at *9.

Accordingly, this Court need only look to the administrative record to determine whether the PBGC's 2006 determination is well reasoned and well supported.

**B.    The Plan's Actual Operation Over Nearly Thirty Years Demonstrates That It Is, And Always Has Been, A Multiple Employer Plan**

As the PBGC has explained, the availability of participating employers' funds to provide benefits to all beneficiaries, regardless of their employer, is a central factor in determining whether a plan is a multiple employer plan or an aggregate of single employer plans.  (AR 213, 1566; *see also PBGC Op. Ltr. 85-2*, 1985 PBGC LEXIS 31, at *2 (Jan. 14, 1985).)  Indeed, the application of this standard should not have surprised the ABA.  As the PBGC pointed out in its 2006 determination, the PBGC "advised the Trustees in 1979—and the Trustees acknowledged—that whether or not a plan in which two or more employers participated, like the Bakers Plan, would be treated as one multiple-employer plan was not a function of what the settlors wanted it to be.  Rather, the plan's status depended entirely upon how its features measured against the relevant standard."  (AR 1565.)

The administrative record contains ample uncontested evidence to establish that the Plan is, and always has, operated as a multiple employer plan, which is to say that all assets have been available to pay all plan benefits.  (AR 1575.)  The following are examples of the supporting evidence from the administrative record:

- The Plan had only one consolidated account and one pool of assets, and contributions received from the participating employers were commingled.  (AR 436-37, 452, 1574.)
- Gains or losses resulting from various factors including expected investment returns, mortality, and employee turnover were spread over the Plan as one entity. (Id.)
- The Plan has always performed only one, plan-wide, annual actuarial valuation for minimum funding purposes.  (AR 431, 454-55, 491-92, 1574-75.)
- The Plan did not keep separate records of assets or liabilities on an employer-by-employer basis.  (AR 453-54, 733, 1578.)
- The Plan was identified as a multiple employer plan in its Form 5500s— "Individual employer contributions are available to pay benefits to all Participants

except on termination of each employer's contributions pay benefits to only that employer's employees." (AR 1085.) [11]

- As of 2006, the participating employers were either overfunding or underfunding their portions of the Plan. (AR 432, 661.)

- The Plan never maintained the elaborate system of checks and balances, as described to the PBGC in the late 1970s, that were designed to minimize the risk of cost-shifting among the participating employers. (AR 1578.)

Despite making all required contributions up to the time of this dispute, IBC has, according to the Plan actuaries, underfunded its portion of the plan assets by nearly $60 million. This "deficit" resulted from the Plan's long-standing practice of calculating participating employer contributions under a multiple employer plan methodology. (AR 445, 463.) Only after the ABA changed its method of calculation and shifted most of the responsibility for the catch-up payments to IBC did IBC begin to question the fairness of the Plan's assessments (Id.) The "negative" balances of IBC and three other participating employers and the "positive" balances of the remaining participating employers demonstrate that the Plan was using other participating employers' contribution to pay benefits for employers with negative balances. This overfunding and underfunding has led to the need for employers to "true-up" their account upon termination. The

---

[11] The ABA asserts that the representations of the Plan's nature as a multiple employer plan on its Form 5500s and related actuarial assessments are not meaningful. (ABA Response at 29.) While the Form 5500 alone may not be dispositive, the Form 5500, in conjunction with other evidence is noteworthy. In *PBGC Op. Ltr. 85-2*, the PBGC noted that a statement in a Form 5500 that all assets in the Fund were available to pay benefits of all employees, along with evidence that assets contributed by one employer were used to pay benefits of other employers' employees, could be enough to overcome the stated intent of the plan document in question. 1985 PBGC LEXIS 1531, at *9 n.5. The ABA attempts to reconcile the tension between this and the well-settled standard for what constitutes a multiple employer plan by now maintaining that the Plan is a "hybrid"—i.e., an aggregate of single employer plans for the purposes of Title IV and a multiple employer plan for the purposes of Titles I and II. (ABA Response at 12.) There is no statute, regulation, or precedent authorizing or recognizing a "hybrid" plan of the type described by the ABA. There is, however, sufficient evidence to demonstrate that the Plan should be characterized as a multiple employer plan for purposes of Title IV. More to the point, such evidence establishes that the PBGC's 2006 determination was not irrational.

PBGC found that the need for such "truing-up" procedures "was proof positive that cost shifting had occurred." (AR 1570.)

> **C.** **Contrary To Respondents' Position, The PBGC May Consider Evidence Other Than The Plan Documents**

Respondents' assertion that the PBGC and this Court should look no further than the Plan documents in determining the Plan's status is unavailing. (Sara Lee Response at 18; ABA Response at 27.)

Neither the well-settled standard for determining whether an entity is a multiple employer plan or an aggregate of single employer plans, nor the authorities cited by Respondents, limit the PBGC's factual inquiry to the Plan documents. In determining whether a plan is a multiple employer plan or an aggregate of single employer plans, the PBGC has stated that it "looks to the documents governing the entity *and* to relevant evidence of how it has operated and continues to operate." *PBGC Op. Ltr. 85-2*, 1985 PBGC LEXIS 31, at *2 (emphasis added); *see also* AR 212-13, 1566-67. The PBGC's 2006 determination acknowledges that the Plan document represents that the Plan is an aggregate of separate plans, at least for Title IV purposes. (AR 1570.) The PBGC notes, however, that the Plan documents are not controlling in light of evidence establishing that the Plan's operation was inconsistent with those Plan documents.[12]  (AR 1578.)

---

[12] Further, Sara Lee's assertions that the PBGC is attempting to amend the Plan documents misreads the PBGC's 2006 determination. The PBGC determined that the Plan has not operated in accordance with its own Plan document. The PBGC is not attempting to change that Plan document. Thus, the cases cited by Sara Lee in this regard are inapplicable. *See Kolentus v. Avco Corp.*, 798 F.2d 949, 956 (7th Cir. 1986); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58-59 (4th Cir. 1992).

1.    **Authorities Cited by Sara Lee and the ABA Do Not Support Their
Argument that the Face of the Plan Documents Should be
Controlling and are Otherwise Distinguishable**

In an effort to convince this Court that the Plan documents are dispositive, Sara Lee
and the ABA point to court decisions and a PBGC opinion letter, all of which rely on the plan
documents when determining plan status in circumstances different from the case at hand.  *See
Nowell v. Cent. Serv. Ass'n.*, 106 F. Supp. 2d 888 (S.D. Miss. 2000); *PBGC v. Artra Group, Inc.*
("*Artra I*"), 972 F.2d 771 (7th Cir. 1992); *PBGC Op. Ltr. 85-2*.  In *Nowell* and *Artra I*, no evidence
was presented to suggest that the plans were run in a manner inconsistent with the plan documents.
In *Nowell,* the court expressly found that there was "nothing in the record to indicate that the Plan [is]
administered other than as recited [in the plan documents] ."  *Nowell*, 106 F. Supp. at 895.

Further, in *Artra I* and *PBGC Op. Ltr. 85-2*, the Seventh Circuit and the PBGC both
recognized that, under certain circumstances, like those present here, evidence outside the plan
documents would need to be considered.  *See Artra I*, 972 F.2d at 775;  *PBGC Op. Ltr. 85-2*, 1985
PBGC LEXIS 31, at *9 n.5.  The PBGC, in *Op. Ltr. 85-2*, noted that the stated intent of the plan
document might be overcome by certain evidence, including evidence showing that assets
contributed by one employer were actually used to pay benefits of employees of another employer
when accompanied by Form 5500-C statements asserting that all assets in the Fund were available to
pay benefits of all employees.  *See id.*

Finally, the plans determined to be an aggregate of single employer plans in *Artra I*
and *PBGC Op. Ltr. 85-2* are distinguished from the Plan.  In *PBGC Op. Ltr. 85-2* the PBGC stressed
that the entity in question maintained separate accounts for each employer, which were not used to
pay benefits of employees of any other employer. *See PBGC Op. Ltr. 85-2*, 1985 PBGC LEXIS 31,
at *9-11.  Similarly, in *Artra I,* the plan in question prohibited the commingling or pooling of
employer contributions.  *See Artra I*, 972 F.2d at 775.  By contrast, the Plan did not maintain

18

separate accounts for each employer, and the PBGC found, in its 2006 determination, that the Plan was not abiding by its 1979 going-forward representations to prevent cost-shifting between participating employers.  (AR 1578.)

**2.    Authorities Cited by Sara Lee and the ABA Do Not Support Their Assertion that Evidence Outside the Plan Documents Should be Considered Only in Cases Where the Plan Documents are Not Clear**

Sara Lee's argument that a plan's actual operation should be considered only where the plan documents are unclear is also counter to the prevailing law.  In *Artra II*, the district court considered evidence outside the plan documents even where the plan document was clear.  *Artra II*, 1993 U.S. Dist. LEXIS 8440, at *6-7.   After noting that the circuit court, on appeal, had determined that the plan documents indicated that the plan was an aggregate of single employer plans, the district court stated: "The only remaining issue is whether the [plan] was actually operated in such a manner as to indicate a different result."  *Id.* at *5-6.  Thus, *Artra II* further discredits Respondents' argument.  This argument also finds no basis in the two PBGC opinion letters cited by Sara Lee, *PBGC Op. Ltr. 84-2*, 1984 PBGC LEXIS 8 (Jan. 17, 1984) and *PBGC Op. Ltr. 79-3*, 1979 PBGC LEXIS 15 (Feb. 12, 1979). (Sara Lee Response at 20.)  When considering evidence outside of the plan documents, the PBGC does not imply that such an analysis will take place only when the plan documents are unclear.  See *PBGC Op. Ltr.* 79-3, 1979 PBGC LEXIS 15, at *4, 5; *PBGC Op. Ltr. 84-2*, 1984 PBGC LEXIS 8.

**D.    Respondents Further Misconstrue The PBGC's Position And Ignore The Underlying Rationale For The PBGC's 2006 Determination**

By asserting, without support, that the PBGC has taken the position that "maintenance of Plan assets in a single Trust makes the Plan a multiple employer plan," the ABA not only misconstrues the PBGC's 2006 determination but ignores the rationale for the PBGC's 2006 determination.  (ABA Response at 27.)  The ABA points to *PBGC Op. Ltr. 84-2*, *Nowell*, and

*Potash* as examples of cases where the PBGC or the courts have taken the position that entities can be aggregates of single employer plans even if all or part of the assets are involved in one trust. Yet, in each of those cases, the plans at issue were determined to be multiple employer plans. *Nowell*, 106 F. Supp. at 895; *PBGC v. Potash*, No. CIV-79-130B(E), 1986 U.S. Dist. LEXIS 30987, at *3 (W.D.N.Y Mar. 25, 1986 ). Thus, these authorities do not support the ABA's assertions.

Sara Lee and the ABA further ignore the PBGC's rationale for making its 2006 determination when they assert that the PBGC erred in finding that the Plan's failure to keep separate actuarial records renders it a multiple employer plan. (ABA Response at 27; Sara Lee Response at 36-37.) Respondents advance this argument apparently because the PBGC was aware when it made its 1979 determination that there would be no separate accounting for each employer's share of the assets and liabilities. However, this argument fails to acknowledge the PBGC's statements that its determination in 1979 was based largely on representations made at that time as to how the plan would operate going forward—representations by which the Plan failed to abide. (AR at 15-16.)

### E.    Additional Evidence Respondents Seek To Introduce Would Not Overcome The PBGC's Determination That The Plan Has Operated As A Multiple Employer Plan Since Its Inception

The so-called additional evidence cited by Sara Lee and the ABA, even if considered by the Court, does not warrant a departure from the PBGC's 2006 determination that the Plan is, and has always been, a multiple employer plan. Sara Lee and the ABA point out that (1) the Plan's participating employers executed participation agreements indicating that the Plan was an aggregate of single employer plans, (2) a seven-year old version of the Plan's Form 5500 contained a footnote

20

stating that the Plan was a hybrid plan,[13] and (3) there exists additional information concerning participating employer withdrawals.  As to the first, such documents are no more controlling than the Plan documents themselves.  As to the second, it is not clear why this one Form 5500 should have more weight than the others considered by the PBGC.  As to the third, the proffered explanations do not change the fact that the withdrawals cited by the 2006 determination were inconsistent with the procedures for withdrawing from, or terminating a plan within, an aggregate of single employer plans.  Taken individually or as a whole, this information is insignificant compared to the evidence in the administrative record demonstrating that the Plan is a multiple employer plan and need not be considered.  Accordingly, the PBGC's determination was rational and well reasoned and should not be disturbed by this Court.

F.    **The Plan May Need To Take Corrective Measures As A Result Of The PBGC'S 2006 Determination**

Also without merit is Sara Lee's argument that the PBGC's 2006 determination should not take effect because it may require the Plan to take some remedial actions.  This Court cannot disregard the PBGC's findings merely because those findings may have consequences.  Adjudication is, by definition, retroactive as well as prospective.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 217 (1988) (Scalia, J., concurring).  Under the PBGC's 2006 determination, the Plan can continue operating as it always has operated—as a multiple employer plan.  That the Plan may have to ensure that employer terminations were made in compliance with § 4063 of ERISA should not prevent the application of the PBGC's 2006 determination.

---

[13] There are no statutes, regulations, or precedent that authorize or recognize a "hybrid" plan of the type described by the ABA, i.e., a plan that is an aggregate of single employer plans for purposes of Title IV and a multiple employer plan for purposes of Titles I and II.

## CONCLUSION

Summary judgment should be granted for the PBGC and IBC.

Dated:  June 8, 2007
Respectfully submitted by,

                                            /s/  Edward J. Meehan
                                            _____
*Of Counsel:*                               Edward J. Meehan (DC Bar No. 413993)
Christina M. Tchen                          David E. Carney (DC Bar No. 472219)
J. Eric Ivester                             SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Samuel Ory                                  1440 New York Avenue, N.W.
Amanda S. Williamson                        Washington DC 20005-2111
SKADDEN, ARPS, SLATE,                       (202) 371-7000
  MEAGHER & FLOM LLP
333 West Wacker Drive.                      Carol Connor Flowe
Chicago, Illinois 60606                     ARENT FOX LLP
(312) 407-0700                              1050 Connecticut Avenue NW
                                            Washington, DC 20036-5303
                                            (202) 857-6054

                                            *Attorneys for Interstate Brands Corporation*

22