**PARTIES**

6.     Lewis Brothers is incorporated in the State of Missouri and has a principal place of business in Evansville, Indiana.  Chicago Baking Company, an Illinois Corporation and wholly-owned subsidiary of Third Party Defendant Lewis Brothers, is a Participating Employer in the ABA plan.  Chicago Baking Company contributes to the ABA plan on behalf of its eligible employee-participants.  As a member of the American Bakers Association ("ABA"), Chicago Baking Company is a Participating Employer in the ABA Plan.  As a Participating Employer, Chicago Baking Company makes contributions to the ABA Plan for its eligible employee-participants and has been accepted for participation in the ABA Plan by the Board of Trustees. Lewis Brothers brings this suit as a functional fiduciary under the ABA Plan.  As a Participating Employer, Lewis Brothers has the ability, right and authority to direct that funds maintained by the Board of Trustees under the ABA Plan on behalf of employees of Lewis Brothers, to be disposed by transfer of such funds to another benefit plan, as well as discretion to choose another plan administrator or another plan and discretion to implement those choices, both under the Plan, as described more specifically below, and under ERISA Section 4044, 29 U.S.C. § 1344. Because Lewis Brothers has the ability, right and authority to dispose of identifiable funds possessed by the Board of Trustees, and to choose another plan and another plan administrator, Lewis Brothers is, for that limited purpose, a fiduciary under the ABA Plan.

7.     The Defendant ABA Plan is an employee pension benefit plan as defined by ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A).  The ABA Plan is administered in the District of Columbia, where the Chairman of the Board of Trustees resides and the ABA Plan's counsel- the ABA Plan's registered agent for service of legal process-is located.  The ABA Plan's principal office is located in the District of Columbia.

25

8.    The Defendant Board of Trustees is the ABA Plan's Named Fiduciary, within the meaning of ERISA Section 402(a)(2), 29 U.S.C. § 1102(a)(2). Unless and until it is replaced, under the terms of the ABA Plan and ERISA, the Board of Trustees has the authority and responsibility under the ABA Plan to control and manage the ABA Plan's operation and administration, and under the American Bakers Association Retirement Trust (the "ABA Trust") to manage and control the ABA Plan's assets held in the ABA Trust.

9.    The Defendant PBGC is a corporation established by ERISA Section 4002, 29 U.S.C. § 1302, within the Department of Labor. The PBGC is domiciled and maintains its principal office within the District of Columbia.

## FACTUAL AVERMENTS

### The Plan's Administration

10.    The ABA Plan was initially adopted effective as of October 1, 1961. The ABA Plan was designed with the express purpose of providing Participating Employers with the benefit, including the cost savings, of centralized administration and investment management while ensuring that each Participating Employer remained singly responsible for the benefits paid under the ABA Plan to its employee-participants.

11.    The Board of Trustees is the ABA Plan's Named Fiduciary, as that term is defined by ERISA. As such, under Section 2.01 of the ABA Plan, the Board of Trustees has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund. (A true and correct copy of the 2002 Restatement of the ABA Plan's governing document is attached hereto as Exhibit 1).

12.    Under Section 2.02 of the ABA Plan, the Board of Trustees has the express duty under the Plan "[t]o enforce the Plan in accordance with its terms, and with the Board's own rules and regulations." (*See* Exhibit 1 at 16). Moreover, under Section 404(a)(1)(D) of ERISA,

29 U.S.C. § 1104(a)(1)(D), as the ABA Plan's named fiduciary, the Board of Trustees is required to discharge its duties with respect to the ABA Plan in the sole interest of its participants and beneficiaries and in accordance with the ABA Plan's governing documents.

13.     Under Section 11.02 of the ABA Plan, Lewis Brothers, as Participating Employer has the right to discontinue payments into the ABA Plan and cause a partial termination of the ABA Plan. Upon such partial termination, the Board of Trustees is required to pay benefits under the ABA Plan in accordance with Sections 5.05 and 11.01 of the ABA Plan, among others. In the alternative, or as part of a partial termination of the Plan, Lewis Brothers has the ability to enter into agreements, like the Transfer Agreement concluded between the ABA Plan and Sara Lee Corporation, made as of August 30, 2005, to effectuate the transfer of identifiable assets held by the Board of Trustees from the ABA Plan to another plan created by Lewis Brothers or otherwise made available by Lewis Brothers to its employees. In addition, Lewis Brothers has the discretion, upon such partial termination of the ABA Plan, to select another plan and another plan trustee and administrator, through which funds presently held by the ABA Plan may be kept and managed for the benefit of Lewis Brothers' employees, who are presently beneficiaries of the ABA Plan. The ability, right and authority to cause such a disposition of assets held by the Board of Trustees for the benefit of Lewis Brothers employees, and the exercise of such discretionary authority, renders Lewis Brothers a fiduciary, within the meaning of ERISA Section 3(21)(A)(i), for the limited purpose of making such a change in plans or partially terminating the ABA Plan.

### The ABA Plan Is an Aggregate of Single-Employer Pension Plans

14.     Congress enacted ERISA in 1974. Effective October 1, 1976, the ABA Plan was amended to satisfy the requirements of ERISA. After the ABA Plan became subject to ERISA, the effort to retain, to the extent possible, the terms of the ABA Plan as they existed prior to

ERISA resulted in the creation of a rather unusual plan structure. Since October 1, 1976, the ABA Plan has been administered as an aggregate of single-employer pension plans rather than a multiple employer pension plan.

15.     In a determination dated June 21, 1979, the PBGC approved the structure of the ABA Plan when it decided that the ABA Plan constituted an aggregate of separate pension plans for purposes of Title IV of ERISA (the "1979 Determination"). (A true and correct copy of the 1979 Determination is incorporated into the ABA Plan as Exhibit A). *See* Exhibit 1 at Exhibit A. While the ABA Plan has been amended and restated several times since the 1979 Determination, most recently on November 9, 2001, it has remained committed to the fundamental concept that the ABA Plan is an aggregate of single-employer plans rather than a plan to which more than one employer contributes.

16.     Section 13.01 of the ABA Plan specifically states that the ABA Plan is intended to be an aggregate of single-employer pension plans:

13.01     Association of Single-Employer Plans. This Plan constitutes an association of single-employer plans designed to give the cost savings and other benefits of a tax-qualified plan, the administration in common of all associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants. That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes .... (*See* Exhibit 1 at 70).

### Each Single-Employer Plan Is To Provide Funding for Its Own Employee-Participants

17.     Under the ABA Plan, at least as Lewis Brothers was lead to understand it would operate, as an aggregate of single-employer pension plans, each Participating Employer is a sponsor of a separate pension plan covering only its own employee-participants. Each Participating Employer's contributions to the ABA Plan are to be used to fund only the benefits

28

of its own employee-participants and each separate plan is administered in an aggregate fashion by the Board of Trustees for administrative convenience.

18.    Section 13.02 of the ABA Plan specifically states that contributions of each Participating Employer will be used only to provide benefits for its own employee-participants:

> 13.02 Each Single-Employer Plan to Provide Funds For Its Participants. Subject to the Plan's actuarial assumptions that the stated contribution amounts will produce the stated benefit amounts, *it is the fundamental concept and intent of this Plan that the contributions of each separate employer will be used only to provide benefits for Participants (and Beneficiaries thereof) by reason of such Participants' employment by such employer; and only contributions by such employer will be used to provide benefits for such Participants (and Beneficiaries)*. (Emphasis supplied). (*See* Exhibit 1 at 70).

19.    Under Section 7.02 of the ABA Plan, the Board of Trustees may terminate a Participating Employer's participation in the ABA Plan if the Participating Employer fails to submit the full amount of its agreed upon contributions to the Fund:

> 7.02    Contribution Delinquencies. A Participating Employer's participation in the Plan may be terminated by the Board if the Participating Employer shall fail to pay such sums of money as shall have been agreed upon in the Participation Agreement between the Participating Employer and the Board in accordance with the rules of the Board for remitting such contributions." (*See* Exhibit 1 at 57).

20.    In the various Participation Agreements entered into by the Board of Trustees and the Participating Employers, the Participating Employers acknowledged that they accepted the ABA Plan as an association of single-employer plans

21.    At all times since 1976, when the ABA Plan was amended, as set forth above, Lewis Brothers continued to contribute to the ABA Plan in good faith reliance upon the understanding, created by the PBGC's 1979 Determination that the structure of the ABA Plan created and constituted an aggregate of separate pension plans for purposes of Title IV of ERISA, and not a multiple-employer pension plan. But for that understanding, Lewis Brothers would have acted differently and it would have exercised its discretion under the ABA Plan and

ERISA to transfer funds in the possession of the Board of Trustees to another plan and another plan trustee and administrator, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.

22.    At all times since 1976, when the ABA Plan was amended, as set forth above, Lewis Brothers continued to contribute to the ABA Plan in good faith reliance upon the understanding, created by the Board of Trustees, that the ABA Plan was being administered by the Board of Trustees in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans. Nothing that the Board of Trustees did or said to Lewis Bakeries, prior to 2006, caused Lewis Brothers to believe or suspect that the Board of Trustees were not operating the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans. If, as the PBGC now asserts, the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, then the Board of Trustees violated the obligations that they owed, among others, under Articles II, VIII and XIII of the ABA Plan, and the obligation owed by the Board of Trustees to exercise the powers and functions described in the ABA plan with due care. If Lewis Brothers had known, as alleged by the PBGC, that the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, then Lewis Brothers would have acted differently and it would have exercised its discretion under the ABA Plan and ERISA to transfer funds in the possession of the Board of

Trustees to another plan and another plan trustee and administrator, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.

23.      At all times since 1976, when the ABA Plan was amended, as set forth above, Lewis Brothers continued to contribute to the ABA Plan in good faith reliance upon the understanding, created by the Board of Trustees, that the ABA Plan was being administered by the Board of Trustees in a manner and in accordance with procedures adopted by the Board of Trustees that would ensure that all Participating Employers would be required to contribute funds for the benefit of their respective employees in such amounts, as determined by actuaries employed by the Board of Trustees for the ABA Plan, sufficient to cover all liability to all employees of each such Participating Employer under the ABA Plan.  Lewis Brothers believed, in good faith, that if any such Participating Employer was not paying to the Board of Trustees amounts sufficient to cover such liabilities to the employees of such Participating Employer, the Board of Trustees would have taken action, under the terms of Section 7.02 of the ABA Plan, among others, to terminate the participation of such Participating Employer in the ABA Plan, and that the Board of Trustees would otherwise act, consistent with their obligations under the ABA Plan, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would not be diverted, as contemplated by Section 8.02 of the ABA Plan, and that funds contributed by Lewis Brothers for the benefit of its employees be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.  If, as the PBGC now asserts, the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for

31

the creation and operation of an aggregate of separate pension plans, then the Board of Trustees did not act in accordance with the terms of the ABA Plan and they violated the duties that they owed, among others, under Sections 7.02, 8.02 and 13.02 of the ABA Plan. If Lewis Brothers had known that the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, as the PBGC now asserts, and that the Board of Trustees thus violated the duties that they owed, among others, under Sections 7.02, 8.02 and 13.02 of the ABA Plan, then Lewis Brothers would have acted differently and it would have exercised its discretion under the ABA Plan and ERISA to transfer funds in the possession of the Board of Trustees to another plan and another plan trustee and administrator, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.

### The Board of Trustees Has Paid the Benefits for the Employee-Participants of Certain Participating Employers with the Contributions Attributable to Lewis Brothers and Other Participating Employers

24.     On or about June 17, 2005, the Board of Trustees approved a report by the ABA Plan's actuary related to the ABA Plan's financial status effective as of September 30, 2004 (the "2005 Plan Asset Report"). The 2005 Plan Asset Report listed, by Participating Employer, the contributions, administrative expenses, investment income, reallocations received due to terminated employers and fund balance for each Participating Employer.

25.     In the 2005 Plan Asset Report, the ABA Plan's actuary reported that four of the seven active Participating Employers maintained negative balances in the ABA Trust. This meant that the four Participating Employers' investment income and contributions paid to the

ABA Trust were less than their administrative expenses and the amount of benefits the Board of Trustees paid to their respective employee-participants.

26.     In 2005, Lewis Brothers' asset balance was close to $9 million dollars. In 2004, Lewis Brothers was the only participating employer to retain a positive balance minus its liability. Lewis Brothers' 2004 asset balance was over $8 million dollars and its liability was just over $5 million dollars— leaving a net positive balance of close to $3 million dollars.

27.     By permitting the four Participating Employers to maintain a negative ABA Trust balance as of October 1, 2004, the Board of Trustees would have used and diverted identifiable ABA Trust funds contributed by Lewis Brothers for the benefit of its employees (and its employees alone), as well as the contributions of two other Participating Employers, to make benefit payments for the employee-participants of the four Participating Employers that the Board of Trustees allowed to maintain negative balances. The diversion of funds contributed by Lewis Brothers for the sole benefit of its employees in order to pay benefits to employee-participants of the four Participating Employers that the Board of Trustees allowed to maintain negative balances, would have violated, among other things, Sections 7.02 and 8.02 of the ABA Plan.

### The PBGC Reverses Its Position on the Nature of the ABA Plan

28.     On or about June 24, 2005, the PBGC received a formal request to reconsider its 1979 Determination from one or more of the ABA Plan's Participating Employers that maintained negative account balances under the ABA Plan's trust.

29.     The PBGC provided the ABA Plan and any Participating Employer in the ABA Plan the opportunity to submit a position statement on the issue whether the ABA Plan is a multiple employer pension plan or an aggregate of single-employer pension plans. The position statements were to be filed on or about November 1, 2005. On information and belief, the PBGC

33

ultimately received position statements from the ABA Plan as well as three Participating Employers in the ABA Plan, including Lewis Brothers.

30.     On August 8, 2006, the PBGC issued a determination completely reversing its 1979 Determination that the ABA Plan was an aggregate of single-employer pension plans under ERISA and stating its new position that the ABA Plan is, and always has been, a multiple-employer pension plan (the "2006 Determination"). (A true and correct copy of the August 8, 2006 determination letter is attached hereto as Exhibit 2). In the 2006 Determination, the PBGC determined that, in its view, the ABA Plan has been consistently administered as a multiple employer pension plan notwithstanding the fact that the governing plan document specifically states that it is intended to be an aggregate of single-employer pension plans.

31.     Specifically, in the 2006 Determination, the PBGC failed to consider that the ABA Plan's governing document specifically provides that each Participating Employer's contributions to the ABA Plan are to be used only to provide benefits for their own employee-participants and not for the payment of benefits for other the employee-participants of other Participating Employers. Further, the PBGC failed to recognize that since the ABA Plan's adoption, when Participating Employers ceased to contribute and thus terminated their participation in the ABA Plan, the vast majority of terminations were administered as standard single-employer plan terminations and not as withdrawals from a multiple employer plan.

32.     The PBGC also stated in the 2006 Determination that, due to the exigencies of the matter, its determination would be effective immediately upon its date of issuance and that there is no obligation for any party aggrieved by this determination to exhaust its administrative remedies with respect to the 2006 Determination, either by seeking reconsideration by the PBGC or by filing an administrative appeal.

34

33. The PBGC's decision to make the 2006 Determination effective immediately essentially terminated the rights of any aggrieved party, including Lewis Brothers, to file an administrative appeal, which would permit the parties to more fully develop the factual record and for any aggrieved party to challenge the PBGC's findings administratively before resort to litigation in this Court. Instead, to challenge the PBGC's 2006 Determination, Lewis Brothers is left without any other recourse but to file the instant cross-claim/counterclaim without proper factual development at the agency-level.

## CLAIMS FOR RELIEF

### COUNT I - Claim for Judicial Review of PBGC's 2006 Determination
### on Status of ABA Plan under ERISA Section 4003(f) against Defendant PBGC

34. Lewis Brothers incorporates paragraphs 1 through 33 of this cross-claim/counterclaim as if fully set forth herein.

35. On August 8, 2006, the PBGC issued its 2006 Determination, in which it found the ABA Plan to be a multiple employer pension plan and rescinded its prior 1979 Determination, in which the PBGC concluded that the ABA Plan was an aggregate of single-employer pension plans under ERISA.

36. ERISA Section 4003(f), 29 U.S.C. § 1303(f), permits any person or party who is a fiduciary, employer, contributing sponsor, member of a contributing sponsor's controlled group, participant, or beneficiary, and is adversely affected by any action of the PBGC with respect to a plan in which such party has an interest, to bring an action against the PBGC for appropriate equitable relief in the appropriate court.

37. Lewis Brothers brings this cross-claim against the PBGC under ERISA Section 4003(f), 29 U.S.C. § 1303(f), as a Participating Employer under the ABA Plan and on behalf of its employee-participants, which are participants in the ABA Plan, and as a fiduciary and

35

functional fiduciary, within the meaning of ERISA, for the limited purposes described in paragraph 6, above.

38.     Lewis Brothers brings this cross-claim against PBGC under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 as a real party in interest in the litigation.

39.     This cross-claim is filed in an appropriate court under ERISA Section 4003(f), 29 U.S.C. § 1303, because the District of Columbia is an appropriate statutory venue and the ABA Plan's principal offices are located in the District of Columbia.

40.     Lewis Brothers seeks appropriate equitable and declaratory relief from the Court in the form of a declaration and injunction reversing the PBGC's decision in the 2006 Determination that the ABA Plan is a multiple employer pension plan because that decision is arbitrary, capricious and incorrect as a matter of law.

41.     The PBGC's determination in the 2006 Determination should also be reversed as arbitrary, capricious and incorrect as a matter of law because the PBGC is subject to a conflict of interest, as the PBGC will receive a significant financial benefit as a result of its decision to reverse its 1979 Determination that the ABA Plan is an aggregate of single-employer pension plans, and the PBGC should not be permitted to reverse a determination after the fact when it becomes financially beneficial for the PBGC to do so.

**WHEREFORE,** Lewis Brothers, on its own behalf and on behalf of its employee-participants in the ABA Plan, requests that this Court grant the following relief:

(1)     A declaration that the PBGC's August 8, 2006 determination that the ABA Plan is a multiple employer pension plan and not an aggregate of single-employer pension plans to be arbitrary, capricious and incorrect as a matter of law;

36

(2)    A declaration that, by acting procedurally in the manner that it did, and by failing to provide Lewis Brothers with adequate notice and opportunity to be heard, and from taking an administrative appeal, the PBGC acted in violation of applicable law;

(3)    Reversal of the PBGC's August 8, 2006 determination;

(4)    A permanent injunction, restraining and enjoining the PBGC from rescinding its 1979 Determination, or from making any other determination that the ABA Plan is not an aggregate of single-employer pension plans; and

(5)    Such other and further relief as to the Court may seem appropriate.

### COUNT II - Claim for Enforcement of ABA Plan Terms and Transfer Agreement under ERISA Section 502(a)(3) against Defendants ABA Plan and Board of Trustees

42.    Lewis Brothers incorporates paragraphs 1 through 41 of this cross-claim/counterclaim as if fully set forth herein.

43.    Lewis Brothers brings this claim under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

44.    Lewis Brothers also brings this cross-claim against PBGC under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 as a real party in interest in the litigation, having sustained a real injury as a result of the actions and inactions of the Board of Trustees described above and below.

45.    Lewis Brothers brings this claim as and is a fiduciary, within the meaning of ERISA, for the limited purposes described in paragraph 6, above.  Among other things, as a fiduciary and a functional fiduciary with respect to the ABA Plan, for the limited purposes

described above, and as a Participating Employer, Lewis Brothers has standing and authority to enforce the terms of the ABA Plan, and to seek remedies for violation of the ABA Plan.    In particular, among other things, Lewis Brothers has standing and authority under Section 11.03 of the ABA Trust, which states:

> Participating Employers shall have the authority, either jointly or severally, to enforce this Trust on behalf of the persons having or claiming any interest in the Fund.    In any action or proceeding affecting the Fund or the administration thereof or for instructions to the Board, the Association and the Board shall be the only necessary parties, and no Participating Employer or employees or former employees of any Participating Employer or their beneficiaries or any other person having or claiming to have an interest in the Fund shall be entitled to any notice of process, and any judgement that may be entered in such action or proceeding shall be binding on all persons having or claiming to have any interest in the Fund. (A copy of the ABA Trust is attached hereto as Exhibit 3).

46.     Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers.

47.     Lewis Brothers was one of only three active Participating Employers in the ABA Plan that maintained a positive balance in the ABA Trust as of October 1, 2004.

48.     If, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan by using and diverting funds contributed by Lewis Brothers solely for the benefit of its employees to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust.

49.    If, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the Defendants ABA Plan and the Board of Trustees have also violated the terms of Section 2.02 of the ABA Plan by failing to enforce the ABA Plan in accordance with its terms.

50.    If, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the, then the Defendants ABA Plan and the Board of Trustees therefore should be enjoined from continuing to violate the ABA Plan's terms and should be directed to require all Participating Employers to fulfill their benefit contribution requirements under the ABA Plan and their Participation Agreements and maintain positive balances in the ABA Trust so that their own contributions will be used to pay the benefits due to their respective employee-participants.

51.    In addition, if, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that did not comply in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the, then the Defendants ABA Plan and the Board of Trustees should be enjoined and compelled to segregate all of the funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees; they should be enjoined and compelled to maintain separate all such funds in a separate account; and they should be enjoined and compelled otherwise to make

such funds available for disposition by Lewis Brothers, in the sole discretion of Lewis Brothers, in accordance with instructions given by Lewis Brothers, for the benefit of its employees, to transfer such segregated funds to such other benefit plan account as, in the future, Lewis Brothers may specifically direct.

**WHEREFORE**, Lewis Brothers, on its own behalf and on behalf of its employee-participants in the ABA Plan, requests that this Court grant the following relief:

(1)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are found to have operated the ABA Plan in a manner that failed to comply in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, operated the ABA Plan as a multiple-employer plan, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

(2)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are required to use and divert contributed by Lewis Brothers solely for the benefit of its employees to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

(3)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from violating the terms of the ABA Plan, and prohibiting the Defendants ABA Plan and Board of Trustees from taking any action, or from refraining to take any action, the effect of which will be to enable a Participating Employer to avoid, delay or otherwise fail to comply with the obligations to make benefit contributions under and consistent with the ABA

40

Plan and their Participation Agreements, that will be sufficient in amount to maintain a positive balance in the ABA Trust for the benefit of the employees of each such Participating Employer (without regard to any other), so that the contributions made by each such Participating Employer will be used solely to pay benefits due to its own employee-participants and not to or for the benefit of any other person;

(4)     A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to segregate all of the funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees;

(5)     A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to maintain all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees in a separate account;

(6)     A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to make all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees available for disposition by Lewis Brothers, in the sole discretion of Lewis Brothers, in accordance with instructions given by Lewis Brothers, for the benefit of its employees, and from failing to transfer such segregated funds to such other benefit plan account as, in the future, Lewis Brothers may specifically direct.

(7)     Such other appropriate equitable relief under ERISA and further relief under 28 U.S.C. § 2202 as to the Court may seem necessary, in order to ensure that Defendants enforce

41

the ABA Plan's for all Participating Employers, including Lewis Brothers, and for all Plan Participants and Beneficiaries, including the employees of Lewis Brothers;

(8)    Reasonable attorneys' fees and court costs as a prevailing party under ERISA Section 502(g), 29 U.S.C. § 1132(g); and

(9)    Such other and further relief as to the Court may seem appropriate.

### COUNT III - In the Alternative, Claim for Breach of Fiduciary Duty under ERISA Section 502(a)(3) against Defendants ABA Plan and Board of Trustees

52.    Lewis Brothers' incorporates paragraphs 1 through 51 of this cross-claim/counterclaim as if fully set forth herein.

53.    Lewis Brothers' brings this claim under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

54.    Lewis Brothers' brings this claim as a fiduciary and functional fiduciary under the ABA Plan and Participating Employer under Section 11.03 of the ABA Trust, as described more specifically above.

55.    Lewis Brothers brings this cross-claim against PBGC under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 as a real party in interest in this litigation.

56.    Section 13.01 of the ABA Plan specifically states that the ABA Plan is to be administered as an aggregate of single-employer pension plans:

13.01    Association of Single-Employer Plans.    This Plan constitutes an association of single-employer plans designed to give the cost savings and other benefits of a tax-qualified prototype plan, the administration in common of all the associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of

42

investment managers or advisers and pension consultants. That the Plan is, and is to be treated as, "an aggregate or separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes (*see* Exhibit 1 at Exhibit A).

57.    Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers.

58.    Further, the termination provisions in Article XI of the ABA Plan provide that when a Participating Employer ceases contributing to the ABA Plan or terminates its business, the termination will be treated as a termination of a single-employer pension plan. In addition, if the ABA Plan as a whole terminates, then each Participating Employer's portion of the ABA Plan will be treated as a termination of a single employer pension plan. Put another way, when a single Participating Employer's plan terminates or the ABA Plan as whole terminates, each Participating Employer's contributions will be used to pay only the benefits of its own employee-participants and the Participating Employer will not suffer any withdrawal liability that would require the terminating Participating Employer to fund any benefits for the employee-participants of any other Participating Employer remaining in the ABA Plan.

59.    Section 2.01 of the ABA Plan states that the Board of Trustees is the Named Fiduciary of the ABA Plan and has the authority and responsibility to administer the ABA Plan in accordance with the terms of the ABA Plan's governing document. Under Article 2 of the ABA Plan, the Board of Trustees owes duties to Participating Employers, and to their employees, including the fiduciary duty of care.

60.    In its 2006 Determination, the PBGC determined that the ABA Plan has always been administered as a multiple employer pension plan and not as an aggregate of single-employer pension plans. *See* Exhibit 3.

61.    If the Court upholds and affirms the PBGC's 2006 determination that the ABA Plan is a multiple employer pension plan because it has been administered as a multiple employer pension plan and not as an aggregate of single-employer pension plans, then the Defendant Board of Trustees breached its fiduciary duties, including the duty of care that it owed both to Lewis Brothers and to its employee-participants, by failing to administer the ABA Plan according to its terms, as required by the governing documents, as an aggregate of single-employer pension plans. In addition, under such circumstances, the Defendant Board of Trustees violated the terms of the various Participation Agreements entered into by the Board of Trustees and the Participating Employers, including Lewis Brothers.

62.    If the PBGC's 2006 Determination is upheld, the Board of Trustees' failure to administer the ABA Plan as an aggregate of single employer pension plans will result in the use and diversion of funds contributed by Lewis Brothers solely for the benefit of its own employees, to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust. Such use and diversion of funds held by the ABA Trust for the benefit of Lewis Brothers' employees will violate, among other things, Sections 7.02, 8.02 and 13.02 of the ABA Plan, and it will constitute a breach of the duties owed by the Board of Trustees under Section 2.02 of the ABA Plan, as well as the duty of care owed by the Board of Trustees, both to Lewis Brothers and its employees. The use and diversion of funds contributed by Lewis Brothers solely for the benefit of its own employees, to pay the benefits and administrative expenses for employee-

44

participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust, will wrongfully result in the imposition of financial liability on Lewis Brothers, under the terms of the ABA Plan, to make additional contributions for the benefit of its own employees, in order to fulfill the contribution requirements imposed upon Lewis Brothers under the ABA Plan.

**WHEREFORE**, Lewis Brothers, on its own behalf and on behalf of its employee-participants in the ABA Plan, requests that this Court grant the following relief:

(1)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are found to have operated the ABA Plan in a manner that failed to comply in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, operated the ABA Plan as a multiple-employer plan, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

(2)    A declaration that Defendants ABA Plan and Board of Trustees have violated the terms of Section 13.01 of the ABA Plan by failing to administer the ABA Plan by its own terms, which state that the ABA Plan is to be administered as an aggregate of single-employer pension plans;

(3)    A declaration that the Defendants ABA Plan and Board of Trustees have violated the terms of Section 2.02 of the ABA Plan by failing to administer the ABA Plan in accordance with its terms;

(4)    A declaration that the Defendants ABA Plan and Board of Trustees breached their ERISA-based fiduciary duties to Lewis Brothers and its employee-participants by failing to

administer the ABA Plan according to its terms as an aggregate of single-employer pension plans;

      (5)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are required to use and divert contributed by Lewis Brothers solely for the benefit of its employees to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

      (6)    An accounting of all funds presently in the possession of the ABA Plan and Board of Trustees;

      (7)    The imposition of a constructive trust on such portion of the ABA Plan assets as are identifiable contributions made by Lewis Brothers for the benefit of its own employees;

      (8)    The imposition of a constructive trust on such other assets that may be in the possession of the ABA Plan and Board of Trustees that are not identifiable contributions of any Participating Employer, for the benefit of Lewis Brothers, to satisfy any liability that may hereafter be imposed upon the ABA Plan and Board of Trustees, or upon Lewis Brothers, for or as a result of any losses, liabilities or damages that Lewis Brothers may suffer, as a result of the failure of the Defendants ABA Plan and Board of Trustees to operate and administer the ABA Plan as an aggregate of single-employer pension plans;

      (9)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from violating the terms of the ABA Plan, and prohibiting the Defendants ABA Plan and Board of Trustees from taking any action, or from refraining to take any action, the effect of which will be to enable a Participating Employer to avoid, delay or otherwise fail to

comply with the obligations to make benefit contributions under and consistent with the ABA Plan and their Participation Agreements, that will be sufficient in amount to maintain a positive balance in the ABA Trust for the benefit of the employees of each such Participating Employer (without regard to any other), so that the contributions made by each such Participating Employer will be used solely to pay benefits due to its own employee-participants and not to or for the benefit of any other person;

(10)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to segregate all of the funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees;

(11)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to maintain all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees in a separate account;

(12)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to make all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees available for disposition by Lewis Brothers, in the sole discretion of Lewis Brothers, in accordance with instructions given by Lewis Brothers, for the benefit of its employees, and from failing to transfer such segregated funds to such other benefit plan account as, in the future, Lewis Brothers may specifically direct.

(13)    Such other appropriate equitable relief under ERISA and further relief under 28 U.S.C. § 2202 as to the Court may seem necessary, in order to ensure that Defendants enforce

the ABA Plan for all Participating Employers, including Lewis Brothers, and for all Plan Participants and Beneficiaries, including the employees of Lewis Brothers;

    (14)    Reasonable attorneys' fees and court costs as a prevailing party under ERISA Section 502(g), 29 U.S.C. § 1132(g); and

    (15)    Such other and further relief as to the Court may seem appropriate.


Respectfully submitted,

LEWIS BROTHERS BAKERIES, INC.


By:       /s/ D. Christopher Ohly
            One of Its Attorneys


D. Christopher Ohly
D.C. Bar # 486370
Roger Pascal
Schiff Hardin LLP
1666 K Street, N.W.
Washington, D.C. 20006
(202) 778-6458
(202) 778-6460 (facsimile)
dcohly@schiffhardin.com