UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA LEE CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, et al.,<br><br>    Defendants. | Civil Action 06-00819  (HHK) |

**MEMORANDUM OPINION AND ORDER**

  Sara Lee Corp. files this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.,* challenging certain acts and practices of American Bakers Association Retirement Plan and its Board of Trustees (collectively, the "ABA Plan"), and seeking judicial review of a 2006 determination of the Pension Benefit Guaranty Corp. ("PBGC").  The ABA Plan has filed a counterclaim against Sara Lee, a cross-claim against PBGC, and a third-party complaint against the American Bakers Association and other participants in the ABA Plan, including Lewis Brothers Bakeries, Inc. ("Lewis Brothers"), seeking declaratory relief resolving the contradiction between a 1979 PBGC determination and the 2006 determination.

  Before the court is the motion by defendants ABA Plan to dismiss Counts II and III of Sara Lee Corp.'s second amended complaint [#16] and third-party defendant Lewis Brothers' motion for leave to file an amended answer, a counterclaim against the ABA Plan, and a

cross-claim against defendant PBGC [#77].[1]  Upon consideration of the motions, the oppositions thereto, and the record in this case, the court concludes that (1) the ABA Plan's motion to dismiss counts II and III must be granted; and (2) Lewis Brothers' motion must be granted in part and denied in part, for the reasons explained below.

## II.  BACKGROUND

As explained in more detail in the separate memorandum opinion docketed this same day, the ABA Plan is a defined-benefit pension plan under ERISA to which several employers, including Sara Lee and Lewis Brothers, contribute on behalf of their current and former employees.  The Plan was founded in 1961 and was subsequently covered by ERISA, which was enacted in 1974.  In 1979, the PBGC determined that, for purposes of ERISA, the ABA Plan was an "aggregate of single-employer plans," which is an association of separate plans where each employer's contributions are maintained in separate accounts or effectively restricted so that the funds of each account are only used to pay the benefits of employees of that particular sponsor, and not the benefits of another sponsor's employees.  *See PBGC v. Artra Grp.*, 972 F.2d 771, 773 (7th Cir. 1992); *PBGC v. Potash*, 1986 WL 3809, at *1–2 (W.D.N.Y. Mar. 26, 1986).  By contrast, a "multiple employer plan," is a plan "maintained by two or more contributing sponsors [employers] . . . under which all plan assets are available to pay benefits to all plan participants and beneficiaries."  29 C.F.R. § 4001.2.  An employer's liability when it terminates a plan with insufficient funds to pay its benefits depends on what type of plan it was.  *Artra Grp.*, 972 F.2d at 772.  If the plan is a multiple-employer plan, an employer is generally only liable for

---

[1] A motion for summary judgment by PBGC on Counts I and II of Sara Lee's second amended complaint are resolved in a separate memorandum opinion and order docketed this same day.

underfunding if it is a "substantial employer" within the meaning of ERISA, 29 U.S.C. § 1301(a)(2), or has made contributions to the plan within the five years preceding the termination of the plan as a whole, *id.* §§ 1363, 1364. *See also Artra Grp.*, 972 F.2d at 772. Otherwise, the obligation for that liability falls to the other contributors to the fund. *See id.* § 1301(a)(2). In an aggregate plan, however, the employer must make up the missing contributions or seek to qualify for a "distressed" or "involuntary" termination by the PBGC, which then is liable for that plan's obligations. *See Artra Grp.*, 972 F.2d at 772–73; 29 U.S.C. § 1322. The distinction is also relevant to the type of insurance coverage the PBGC will provide when a particular plan terminates with insufficient funds to pay its benefits — in an aggregate plan, the PBGC will assume that employer's liabilities, while in a multiple-employer plan, it may fall to the remaining employers in the plan.

In 2005, a dispute arose among the ABA Plan's participants regarding the management and distribution of the Plan's assets and liabilities. Sara Lee sought to terminate its participation in the Plan and to withdraw its assets, estimated at $110.9 million, which constituted more than 90 percent of the fund's balance. Compl. ¶ 22, 28.[2] An assessment of the Plan's assets indicated that seven participating employers had negative balances in the Plan's accounts. *Id.* ¶ 27. A "negative balance" can occur when the Plan pays out benefits to employees whose employers have not made their full contribution to the fund. Sara Lee alleges that, by permitting employers to maintain negative balances, the ABA Plan effectively used Sara Lee's contributions to fund the benefits of other employers and thereby violated its fiduciary duties and the terms of the Plan agreement.

---

[2] All citations herein to the "Complaint" refer to the second amended complaint.

In 2006, the PBGC determined that the ABA Plan was not an aggregate plan — as it had previously determined in 1979 — but rather it was a multiple-employer plan.  Such a change in plan status could require Sara Lee or other participants to fund the shortfall in the ABA Plan.  On May 3, 2006, Sara Lee filed this action against the ABA Plan, and subsequently added PBGC as a defendant.

## II. ANALYSIS

The ABA Plan moves to dismiss Counts II and III of Sara Lee Corp.'s second amended complaint on the grounds that Sara Lee lacks standing, the court lacks subject matter jurisdiction, and Sara Lee has failed to state a claim for relief because Sara Lee is not entitled to sue the ABA Plan under ERISA to enforce the terms of the Plan.  The motion has merit.

The district courts have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, over civil actions brought to enforce ERISA.  29 U.S.C. § 1132(a).  As relevant here, ERISA provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*Id.* § 1132(a)(3).  Under ERISA, a person is a fiduciary with respect to a pension plan

> to the extent (i) [s]he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [s]he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [s]he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* § 1002(21)(A); *see also Int'l Bhd. of Painters and Allied Trades Union and Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 828 (D.D.C. 1996) ("Simply stated, whether an individual is an ERISA fiduciary turns upon whether the individual has discretionary authority or responsibility in the administration of a plan or regarding the disposition of plan assets."). An employer who contributes to a plan administered by another is not one of the persons explicitly authorized to sue under this provision of ERISA. *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71 (D.C. Cir. 1987).

Thus, the only way that Sara Lee could maintain its suit under this provision is if it were a "fiduciary" with respect to the Plan. The ABA Plan contends, however, that Sara Lee does not qualify as a "fiduciary" under §1132 because Sara Lee does not have discretionary authority or responsibility over the Plan. Sara Lee contends, however, that it has been vested with discretionary authority to enforce the terms of the ABA Plan Trust, and it is thus entitled to bring suit under this section for that purpose.

In support of its contention, Sara Lee points to ¶ 11.03 of the ABA Plan Trust, which provides that the "Participating Employers shall have the authority . . . to enforce this Trust." Compl., Ex. 4 (ABA Trust). This assertion, however, does not carry the day for Sara Lee. First, as Sara Lee's complaint acknowledges, it is the Board of Trustees which is the "Named Fiduciary" of the Plan and which "has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund." *Id.* ¶ 11. Second, as the ABA Plan points out, Sara Lee's authority to enforce the Trust is irrelevant because the Trust is not the same as the Plan — by its very terms, the Trust agreement merely covers the creation of the Trust, which is the "funding medium" for the Plan, *id.* ¶ 2.01;

the Plan, however, is the "governing document" which sets forth the administration and management of the Plan, *id.* ¶ 11; Ex. 1 (ABA Plan). Moreover, the right to enforce the Trust does not constitute a fiduciary function for purposes of ERISA as it does not involve discretionary authority or responsibility for administration of the Plan. Finally, no contract could empower Sara Lee to bring this suit in federal court if Sara Lee is not, in fact, a fiduciary under the terms of the statute which gives rise to jurisdiction over the cause of action. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."). Accordingly, the ABA Plan's motion to dismiss must be granted.[3]

### III.  CONCLUSION

For the foregoing reasons, it is, this 11th day of September, 2007, hereby

**ORDERED** that the motion of the ABA Plan to dismiss counts II and III of the second amended complaint [#16] is **GRANTED**; and it is further

**ORDERED** that Lewis Brothers' motion for leave to file an amended answer and cross claim against defendant PBGC [#77] are **GRANTED** but the motion to file a counterclaim against ABA Plan [#77] is **DENIED**.

Henry H. Kennedy, Jr.
United States District Judge

---

[3] Lewis Brothers' attempt to assert the substantially the same claim against the ABA Plan under § 1132 must fail for the same reason — that Lewis Brothers is a participating employer, not a fiduciary of the plan. Thus, Lewis Brothers' motion for leave to amend and assert a counterclaim against the ABA Plan is denied. The motion for leave to amend its answer and assert a cross-claim against PBGC is granted.