## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SARA LEE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06–CV–00819 HHK (JMF) |
| | ) | |
| AMERICAN BAKERS ASSOCIATION | ) | |
| RETIREMENT PLAN; and BOARD OF | ) | |
| TRUSTEES OF THE AMERICAN BAKERS | ) | |
| ASSOCIATION RETIREMENT PLAN; | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PENSION BENEFIT GUARANTY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

### PBGC'S MEMORANDUM IN OPPOSITION TO MOTION FOR LEAVE TO SERVE DISCOVERY AND TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Date:   November 30,  2007

ISRAEL GOLDOWITZ (D.C. Bar No. 291120)
Chief Counsel
CHARLES L. FINKE
Associate Chief Counsel
PAULA CONNELLY (D.C. Bar No. 389055)
Assistant Chief Counsels
MARK BLANK (D.C. Bar No. 968388)
MARC S. PFEUFFER (D.C. Bar No. 484209)

PENSION BENEFIT GUARANTY CORP.
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005
Tel. No. (202) 326-4020, ext. 4903
Fax No. (202) 326-4112
E-mail: pfeuffer.marc@pbgc.gov and
efile@pbgc.gov
*Attorneys for Pension Benefit Guaranty Corp.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    DISCOVERY IS PERMITTED ONLY IN EXCEPTIONAL CASES,
           AND THE MOVANTS HAVE NOT MADE THE REQUIRED
           SHOWING HERE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    THE 2006 LETTER WAS AN ADJUDICATION, AND PBGC DID
           NOT CHANGE THE APPLICABLE LEGAL STANDARD.. . . . . . . . . . . . . . 6

      C.    THE ADMINISTRATIVE RECORD IS COMPLETE, AND THE
           ADMINISTRATIVE PROCESS WAS ENTIRELY SUFFICIENT.. . . . . . . . . 10

      D.    BECAUSE PBGC DID NOT DETERMINE THE RAMIFICATIONS
           OF THE 2006 LETTER, DISCOVERY ON THAT GROUND IS
           NEITHER NECESSARY NOR PERMITTED.. . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## Cases Cited

*Ad Hoc Metals Coalition v. Whitman*,
227 F. Supp. 2d 134 (D.D.C. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Alaska Prof. Hunters Ass'n v. FAA*,
177 F.3d 1030 (D.C. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Alpharma, Inc. v. Leavitt*,
460 F.3d 1 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Apex Const. Co. v. United States*,
719 F. Supp. 1144 (D. Mass. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Balaton, Inc. v. Reno*,
93 F. Supp. 2d 61 (D.D.C. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Camp v. Pitts*,
411 U.S. 138 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*CCNV v. Lujan*,
908 F.2d 992 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Citizens for Alternatives to Radioactive Dumping v. United States Dep't of Energy*,
485 F.3d 1091 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Commercial Drapery Contractors, Inc. v. United States*,
133 F.3d 1 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Common Sense Salmon Recovery v. Evans*,
217 F. Supp. 2d 17 (D.D.C. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dr. Pepper/Seven-Up Cos. v. FTC*,
No. 91-2712, 1991 WL 318828 (D.D.C. Dec. 23, 1991). . . . . . . . . . . . . . . . . . . . . . . . 4

*Authorities chiefly relied upon are marked with an askerisk.

*Environmental Defense Fund, Inc. v. Blum*,
      458 F. Supp. 650 (D.D.C. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Environmental Integrity Project v. EPA*,
      425 F.3d 992 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*\*Florida Power & Light Co. v. Lorion*,
      470 U.S. 729 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Friends of the Earth v. United States Dep't of Interior*,
      236 F.R.D. 39 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fund for Animals v. Williams*,
      391 F. Supp. 2d 191 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*John Doe, Inc. v. DEA*,
      484 F.3d 561 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mead Corp. v. Tilley*,
      490 U.S. 714 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Motion Picture Ass'n of America v. Oman*,
      969 F.2d 1154 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NLRB v. Bell Aerospace Co.*,
      416 U.S. 267 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NRDC v. EPA*,
      683 F.2d 752 (3d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*N.W. Bypass Group v. United States Army Corps of Eng'rs*,
      No. 06-CV-00258, 2007 WL 1498912 (D.N.H. May 14, 2007). . . . . . . . . . . . . . . . . 3-4

*Office of Foreign Assets Control v. Voices in the Wilderness*,
      382 F. Supp. 2d 54 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*\*Pac. Shores Subdivision, Cal. Water Dist. v. United States Army Corps of Eng'rs*,
      448 F. Supp. 2d 1 (D.D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6

*PBGC v. LTV Corp.*,
      496 U.S. 633 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Authorities chiefly relied upon are marked with an askerisk.

*PDK Labs. v. DEA*,
   438 F.3d 1184 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*PPG Indus., Inc. v. United States*,
   52 F.3d 363 (D.C. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*San Luis Obispo Mothers for Peace v. NRC*,
   751 F.2d 1287 (1984),
   *vacated in part*, 760 F.2d 1320 (1985),
   *aff'd*, 789 F.2d 26 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Saratoga Dev. Corp. v. United States*,
   21 F.3d 445 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trudeau v. FTC*,
   384 F. Supp. 2d 281 (D.D.C. 2005),
   *aff'd on other grounds*, 456 F.3d 178 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Florida East Coast Ry. Co.*,
   410 U.S. 224 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Vitamins Antitrust Litigation*,
   398 F. Supp. 2d 209 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Yakima Valley Cablevision, Inc. v. FCC*,
   794 F.2d 737 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Yesler Terrace Cmty Council v. Cisneros*,
   37 F.3d 442 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Authorities chiefly relied upon are marked with an askerisk.

## United States Code Cited

Title 5

     Section 555.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     Section 706.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## Other Authorities Cited

29 C.F.R. § 4003.22(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Authorities chiefly relied upon are marked with an askerisk.

## INTRODUCTION

This litigation involves a 2006 determination of the Pension Benefit Guaranty Corporation ("PBGC"), a federal government agency, under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"). In that determination ("the 2006 Letter"), reprinted at page 1563 of the administrative record filed with the Court, PBGC concluded after reviewing the extensive submissions of the parties that the American Bakers Association Retirement Plan ("ABA Plan") constitutes a multiple-employer pension plan, rather than an aggregate of single-employer pension plans. PBGC found that the agency's conclusion to the contrary some 27 years earlier (the "1979 Letter") was "simply wrong." This suit challenges the 2006 Letter.

After PBGC filed a motion for protective order precluding the discovery sought by one of the Movants herein (which initially was referred to the Magistrate Judge) and moved for summary judgment, Judge Kennedy issued a Memorandum Opinion and Order on September 11, 2007. Judge Kennedy held that the Court's summary judgment decision would be based on PBGC's administrative record under the arbitrary and capricious standard, but found that "[b]ased on the submissions before it, the court is unable to determine whether the administrative record as submitted by PBGC is complete."[1] Accordingly, he ordered the parties to confer, and, absent agreement, to brief the issue of supplementing the record or conducting discovery. Judge Kennedy also vacated his order referring the earlier protective order motion to the Magistrate Judge. After the parties conferred without success, the Movants filed the current motion for leave to serve discovery and supplement the administrative record, and Judge Kennedy referred that motion to the Magistrate Judge on November 7, 2007.

_____

[1] Mem. Op. (Docket #80) at 10.

In requesting discovery, the Movants admit that they must make "a *prima facie* showing of bad faith or an incomplete record" to overcome the settled law that restricts discovery in cases involving agency determinations.[2]  But instead of making such a showing, they plow into brand new theories about why PBGC's 2006 Letter should not be upheld.  These theories have no place in a discovery motion, and the Court should not entertain them here.  Instead, it should focus on whether the Movants have made the required showing, and should conclude that they have not.

The Movants do not allege bad faith, or that the record is so bare that effective judicial review is impossible, as required.  Instead, they argue the merits, asserting in different words (and sometimes for new reasons) that the 2006 Letter is arbitrary and capricious.  Despite their complete failure to meet the standard for discovery, the Movants seek permission to begin an extensive inquiry.

The Movants seek to pursue discovery on a variety of subjects, beginning with an unspecified number of document requests and 49 requests for admissions, all to be potentially followed by interrogatories and depositions of agency officials.[3]  This is impermissible, particularly where PBGC *already* has scoured its records in response to the Movants' FOIA request concerning the very same matter, and made a comprehensive production.  Granting the Movants' motion would only generate a resource-intense but fruitless fishing expedition, which the Court simply should not allow.

---

[2]  Movants' brief at 8.

[3]  *See, e.g., id.* at 7, 15, 18-19; 36.  The Movants assert that their initial inquiries "will define any need for further discovery, either through depositions, interrogatories or other requests for production . . . ."  *Id.* at 18-19.  Their motion seeks open-ended leave "to serve discovery on the PBGC."  And their proposed order recites their "need to open discovery" and would authorize them "to serve discovery on PBGC."

**ARGUMENT**

**A.    DISCOVERY IS PERMITTED ONLY IN EXCEPTIONAL CASES, AND THE MOVANTS HAVE NOT MADE THE REQUIRED SHOWING HERE.**

The Administrative Procedure Act limits judicial review of an agency determination to the administrative record.[4]  The Supreme Court and the D.C. Circuit have made clear that discovery is not permitted  "except when there has been a 'strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review."[5] Courts in this Circuit apply this rule routinely, as this Court did in *Balaton, Inc. v. Reno*.  There, the Court held:

> The administrative record may be supplemented, and discovery permitted, *only if* there has been a strong showing of agency bad faith or improper behavior or if the administrative record is so bare that it prevents effective judicial review.[6]

Moreover, an agency is entitled to a strong presumption of regularity that it properly designated the complete administrative record, which may be overcome only if the challenger provides "clear evidence" to the contrary.[7]  As this Court emphasized in *Pacific Shores*

---

[4]  5 U.S.C. § 706; *see Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

[5]  *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998), *quoting Overton Park*, 401 U.S. at 420; *accord Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994); *CCNV v. Lujan*, 908 F.2d 992, 997-98 (D.C. Cir. 1990).

[6]  93 F. Supp. 2d 61, 62 (D.D.C. 2000) (emphasis added).  *Accord Friends of the Earth v. United States Dep't of Interior*, 236 F.R.D. 39, 42 (D.D.C. 2006); *Trudeau v. FTC*, 384 F. Supp. 2d 281, 293-94 (D.D.C. 2005), *aff'd on other grounds*, 456 F.3d 178 (D.C. Cir. 2006); *Office of Foreign Assets Control v. Voices in the Wilderness*, 382 F. Supp. 2d 54, 62-63 (D.D.C. 2005).

[7]  *Pac. Shores Subdivision, Cal. Water Dist. v. United States Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).  *Accord Citizens for Alternatives to Radioactive Dumping v. United States Dep't of Energy*, 485 F.3d 1091, 1097 (10th Cir. 2007); *N.W. Bypass Group v.*

*Subdivision, California Water District v. United States Army Corps of Engineers*, "Plaintiffs must put forth *concrete evidence* to show that the record was not properly designated."[8]

And courts are especially vigilant when a challenger seeks to propound discovery to the agency, which is far more intrusive than supplementing the record with materials the challenger provides, and may be obtained only on a strong showing of bad faith, improper behavior, or a record so bare that it prevents effective judicial review.[9]  Courts carefully apply these restrictions, recognizing that mere allegations of impropriety "must not serve to allow those disappointed by regulatory activity to invoke all the benefits of the rules of civil procedure for an extensive search into the agency's decisional process."[10]  As the court noted in *Office of Foreign Assets Control v. Voices in the Wilderness*, "[w]ere the rule otherwise, every challenge to administrative action would turn into a fishing expedition into the motives of the defendant agency."[11]  Thus, a party may not rely on unsupported allegations that the administrative record is "incomplete" to hamstring the agency with endless discovery requests, as the Movants seek to do here.

---

*United States Army Corps of Eng'rs*, No. 06-CV-00258, 2007 WL 1498912, *2 (D.N.H. May 14, 2007); *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005).

[8]  448 F. Supp. 2d at 6 (emphasis added).

[9]  *See Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134, 137-38 & n.1 (D.D.C. 2002); *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002); *Dr. Pepper/Seven-Up Cos. v. FTC*, No. 91-2712, 1991 WL 318828, *1 (D.D.C. Dec. 23, 1991).

[10]  *Environmental Defense Fund, Inc. v. Blum*, 458 F. Supp. 650, 663 (D.D.C. 1978). *Accord Apex Const. Co. v. United States*, 719 F. Supp. 1144, 1147 (D. Mass. 1989) ("a plaintiff cannot institute discovery in a case involving review of an agency's action simply in the hope of finding something wrong in what the agency did").

[11]  382 F. Supp. 2d at 63.

-4-

Indeed, on August 18, 2006, one of the Movants, Sara Lee, filed an extensive FOIA request with PBGC covering the very same materials at issue here.[12]  PBGC scoured its records, reviewed thousands of pages of documents, made three productions, and certified that it has no other responsive documents, after a diligent search of over 70 hours.[13]  PBGC reiterated in its recent correspondence with the Movants that PBGC had fully responded to the FOIA request and was unable to locate any other responsive documents.[14]

As PBGC explained in its summary judgment pleadings, not every document in the FOIA production belonged in the administrative record, and PBGC did not include the cumulative or irrelevant materials.  This was entirely appropriate.  As this Court made clear in *Pacific Shores*, an agency "is not obligated to include every potentially relevant document existing within its agency.  Only those documents that were directly or indirectly considered by the [agency] decisionmaker(s) should be included in the administrative record."[15]  Accordingly, the Movants' suggestion that "additional *relevant* documents may exist and should be sought in formal

---

[12]  *See* Attachment 1 hereto (Sara Lee's FOIA request) (also filed as Exhibit 2A to Sara Lee's Opposition to PBGC's Motion for Summary Judgment, Docket #65).

[13]  *See* Attachment 2 hereto at 3 (Letter from PBGC General Counsel Judith Starr to Sara Lee counsel John Hendrickson (Jun. 14, 2007)) (also filed with Exhibit C to the Joint Status Report, Docket #81).  As noted therein, PBGC withheld 80 pages of exempt documents that were agency drafts and confidential financial and actuarial documents that were submitted to PBGC under a statute prohibiting disclosure.

[14]  *See* Attachments 3 and 4 hereto (Letters from P. Connelly to M. Graham dated Sept. 24, 2007 and Sept. 27, 2007) (also filed as Exhibits C and E to Joint Status Report, Docket #81).

[15]  448 F. Supp. 2d at 7.

discovery" misses the point entirely.[16]  Here, as in *Pacific Shores*, the "sheer volume and complexity of this administrative record suggests that it is complete."[17]

And in fact, the Movants provide no evidence to the contrary, much less "concrete evidence."[18]  Instead, they attempt to distract the Court with a new theory that the 2006 Letter constituted rulemaking, rather than adjudication, and merits arguments about whether the determination may be applied "retroactively" or would have different effects on similarly situated parties.  The Court should reject these musings and address the motion that is before it — the Movants' request for discovery.  Because there are no grounds for discovery, the Court should deny the motion.

**B.    THE 2006 LETTER WAS AN ADJUDICATION, AND PBGC DID NOT CHANGE THE APPLICABLE LEGAL STANDARD.**

In a desperate attempt to find a deficiency in the administrative process or the administrative record and thereby justify discovery, the Movants now argue for the first time that the 2006 Letter somehow constituted rulemaking, rather than adjudication.  They assert that PBGC changed the legal standard for assessing a multiple-employer plan from the standard the agency applied in the 1979 Letter.  Thus, under the Movants' logic, they were entitled to notice

---

[16]  Movants' brief at 15 n.14 (emphasis added).  The Movants similarly assert that the responses to its proposed requests for admissions are "relevant."  *Id.* at 18.

[17]  448 F. Supp. 2d at 7.

[18]  The Movants assert that PBGC "has provided some additional documents since the Court's [September 11] opinion," and this provides a "strong basis" for their good faith belief that additional documents exist (brief at 3).  But as the Movants admit (brief at 7), the *only* additional documents that PBGC provided were, at Movants' request, "three filings in IBC's pending bankruptcy case."  As Movants further admit (brief at 15), PBGC made those filings in March 2005, which was before PBGC even began the reconsideration that led to the 2006 Letter.

and an opportunity to comment, and because they did not receive them, they should be allowed to pursue discovery instead.  This far-fetched new theory completely fails.  The 2006 Letter falls firmly within the category of adjudication, and PBGC did not change the applicable legal standard.  In either case, the remedy would not be discovery.

The 2006 Letter was an adjudication because it resolved a dispute between specific parties, rather than formulating a policy of general application.  As the D.C. Circuit has explained, an adjudication "decide[s] a[n] individual case," whereas a rulemaking results in a decision "of general application only."[19]  As the Supreme Court held in *United States v. Florida East Coast Ry. Co.*, adjudication involves "adjudicating a particular set of disputed facts," which is exactly what PBGC did by issuing the 2006 Letter.[20]

In contrast, the case the Movants cite, *Environmental Integrity Project v. EPA* (brief at 28), involved the EPA's generally applicable standard governing air pollution, which specified the type of monitoring that *all* permits must contain.[21]  Because that was a classic rule, the court's holding that notice was required before it was amended is neither surprising nor relevant.[22]

---

[19]  *Motion Picture Ass'n of America v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992). *Accord Yesler Terrace Cmty Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994) ("adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals").

[20]  410 U.S. 224, 245 (1973).

[21]  425 F.3d 992, 995 (D.C. Cir. 2005).

[22]  Although an agency may choose whether to proceed by rulemaking or adjudication, and may develop interpretations of its governing statute through adjudication, those principles are not at issue here, as the 2006 Letter was a classic adjudication, and PBGC did not change its interpretation of the statute.  *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974); *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947); *PDK Labs. v. DEA*, 438 F.3d 1184, 1193-95 (D.C. Cir. 2006).

-7-

Similarly, the agency interpretation at issue in *Alaska Professional Hunters Ass'n v. FAA* (brief at 28) was one of general applicability, which governed *all* Alaskan hunting guides who provided certain services.[23]  Because the instant case, in contrast, involved adjudication of an individual case based on its specific facts, the notice and comment requirements applicable to rulemaking, and any restrictions on a rule's retroactive effect, simply did not apply.  Even if they did, the remedy would not be discovery.

In any event, the 2006 Letter did not change the legal standard that applies in determining whether a pension arrangement is an aggregate of single-employer plans or a multiple-employer plan, contrary to the Movants' new argument.  Accordingly, the Movants' reliance on *Alaska Professional Hunters Ass'n* (brief at 28), in which an agency completely reversed the legal standard, is simply misplaced.[24]  And the Movants' discussion of what an agency must do to change its position (brief at 30, 33) is irrelevant.

PBGC did not change the legal standard in the 2006 Letter.  Indeed, the 2006 Letter began with an extensive quote from the 1979 Letter, reiterating that "[t]he factors that PBGC and other ERISA agencies use for determining the 'single versus aggregate' status of a pension plan

_____

[23] *Alaska Prof. Hunters Ass'n v. FAA*, 177 F.3d 1030, 1031-33 (D.C. Cir. 1999).  This is also true of *Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 743 (D.C. Cir. 1986) (brief at 35), which involved an agency's published rule of general applicability in which it "announced a new policy of leaving franchise disputes to the courts."

[24] In *Alaska Prof. Hunters*, the FAA's initial interpretation was that certain regulations did *not* apply to guides who fly customers to and from sites where they provide guide services.  Its subsequent interpretation, published in the Federal Register and at issue before the court, was that the regulations *did* apply to such guides.  177 F.3d at 1031-33.  Similarly, in *Yakima Valley* (brief at 35), the agency announced a new policy of leaving franchise disputes to the courts, where it previously "had not once declined to resolve" such a dispute.  794 F.2d at 741.

*have not changed since 1979.*"[25]  Instead, as PBGC explicitly stated in the 2006 Letter, "PBGC's *application* of the legal standard [in 1979] was simply wrong."[26]

The Movants' nevertheless focus on the fact that PBGC used the words "effectively eliminate" in the 2006 Letter when discussing the risk of cost-shifting, and used the words "effectively restrict" in the 1979 Letter.[27]  But as set forth in *both* letters, the heart of the standard is whether all of a pension plan's assets are available to pay benefits to all plan participants and beneficiaries.[28]  This was the standard in 1977, in PBGC's proposed regulation, and has been the "central factor" thereafter, as PBGC stressed in both letters.[29]  Thus, as used in the 1979 Letter, the words "effectively restrict" could mean only one thing:  that PBGC was convinced that the restrictions would be "effective" in ensuring that cost-shifting would not occur, not that it would occur to some permissible or unavoidable degree.  In any event, these phrases had no impact at all in this case because, as demonstrated in the 2006 Letter, the Plan had *no* control over cost-shifting.

Moreover, in the 1979 Letter, PBGC stated explicitly that in applying this standard, the agency looks to "evidence of how [the Plan] has operated and continues to operate."[30]

---

[25]  AR 1566 (2006 Letter at 4) (emphasis added).

[26]  AR 1570 (2006 Letter at 8) (emphasis added).

[27]  Movants' brief at 4, 10.

[28]  AR 213 (1979 Letter at 2) ("The availability of funds held by an entity to provide benefits is a *central factor* in our analysis."); AR 1567 (2006 Letter at 5) (same).

[29]  *Id.*

[30]  AR 212.

Accordingly, the Movants' assertion that "PBGC's decision to focus on the [Plan's] pattern and practice of administration" somehow changed the legal standard (brief at 32) is equally specious.

Finally, although the Movants assert that the 2006 Letter changed the standard in that it "appears to require" the creation of physically separate accounts for each putative plan (brief at 11), it did no such thing.  As the 2006 Letter said in describing what the Plan failed to do:  "No attempt was made to *track* employer-by-employer account balances on an ongoing basis to *adjust employer contributions* and prevent cost-shifting.  Indeed, according to the Plan actuary, the accountants for the Plan never kept asset or liability *records* by employer."[31]  In short, the 2006 Letter did not change the legal standard, and this straw man should be ignored.

## C.     THE ADMINISTRATIVE RECORD IS COMPLETE, AND THE ADMINISTRATIVE PROCESS WAS ENTIRELY SUFFICIENT.

The Movants' repeated assertions that PBGC has admitted that the administrative record is incomplete are outright misrepresentations.[32]  To the contrary, PBGC has steadfastly maintained, in writing, that the record as filed on April 4, 2006 is complete, and PBGC offered to supplement the record with the documents the Movants identified *only* in an effort to resolve this controversy, an effort that failed.[33]  PBGC continues to maintain that the record contains all

---

[31]  AR 1578 (emphasis added).

[32]  *See* Movants' brief at 7, 15, 19, 20.

[33]  *See* Attachment 3 hereto (Letter from P. Connelly to M. Graham (Sept. 24, 2007)) at 2 (emphasis added) (also filed as Exhibit C to Joint Status Report, Docket #81):

PBGC remains steadfast in its position that ***the administrative record is complete***. However, at your request, we are willing to provide the Court with the exhibits that were attached to Sara Lee's and the Plan's summary judgment briefs as

materials that the agency directly or indirectly considered in reaching the 2006 Letter, and the cumulative or irrelevant documents the Movants seek to add played no role in that process. Because the parties' efforts to resolve their dispute failed, PBGC is not bound to submit the voluminous materials the Movants would like as supplemental volumes, and their motion to compel PBGC to do so should be denied.[34]

Moreover, the 2006 Letter and the administrative record make clear what standard PBGC applied, what documents it considered, and the bases for its determination. The Movants assert no fewer than ten times that PBGC failed to explain various aspects of its determination, and that they need discovery on a variety of subjects.[35] However, if the standards and bases for PBGC's determination are not clear from the administrative record or adequately explained in the 2006 Letter, the appropriate remedy is for the Court to remand the case to PBGC, *not* to

---

>   supplemental volumes of the record. Please let us know by September 26 whether this will resolve the matter.

*Accord* Attachment 4 hereto (Letter from P. Connelly to M. Graham (Sept. 27, 2007)) at 1 (emphasis added) (also filed as Exhibit E to Joint Status Report, Docket #81):

>   Contrary to the suggestion in your letter, PBGC **has not acknowledged** that the documents it produced under FOIA *should* be included in the administrative record. However, we have indicated that we are willing to file those documents (as well as the bankruptcy claims we provided on September 24) as supplemental volumes to the administrative record in order to resolve this matter.

[34] This is item 3 in the Movants' proposed order.

[35] The Movants' assert that they need discovery, *inter alia*, to "determine what standards were in fact applied" (brief at 4); to "determine the specific factual bases" (*id.*); to "assess PBGC's thoroughness, validity and consistency" (brief at 19 n.19); to "address the issues that were or should have been considered" (brief at 26); to determine "whether the PBGC addressed or considered any of the myriad of issues and effects that retroactive application of the 2006 Determination will have" (brief at 36); and "to determine the rationale for PBGC's departure from its prior precedence . . . ." (brief at 39).

-11-

authorize discovery.  This familiar principle was articulated in *Florida Power & Light Co. v. Lorion*, and has been repeated many times since:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.[36]

As this Court noted in *In re Vitamins Antitrust Litigation*, "when the court detects that the agency did not predicate its decision correctly on the facts before it or when the agency has taken as given and established a matter that actually requires the exercise of judgment and discretion, the court will remand the case."[37]   Accordingly, discovery is simply not an option in this case.

The Movants devote several pages to listing the *initial*, "limited" discovery they would like to conduct (brief at 16-19) to "complete the administrative record."[38]  Once again, since they

---

[36]  470 U.S. 729, 744 (1985).  *Accord John Doe, Inc. v. DEA*, 484 F.3d 561, 570 (D.C. Cir. 2007) (same); *Alpharma, Inc. v. Leavitt*, 460 F.3d 1,13 (D.C. Cir. 2006) (court remanded to FDA to "straighten out its explanation"); *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end:  the case must be remanded to the agency for further action consistent with the corrected legal standards.").

[37]  398 F. Supp. 2d 209, 235 (D.D.C. 2005).

[38]  First, the Movants would like a privilege log for the documents that PBGC's Disclosure Officer withheld in the FOIA production to Sara Lee.  These consisted of 38 pages of agency drafts and 42 pages of confidential financial and actuarial documents that were submitted to PBGC under a statute prohibiting disclosure.  *See* Attachment 2 hereto, Letter from J. Starr at 2-3.  Because the discovery rules do not apply to PBGC's FOIA production and this is not a FOIA enforcement suit, Movants may not "assess the propriety and reasonableness of PBGC's claim of privilege, as required by Fed. R. Civ. P. 26" (brief at 17).  The Movants also would like e-mails "related to communications by PBGC with outside parties, including other governmental agencies and current or former ABA Plan participating employers, related to the ABA Plans' administration or structure, including but not limited to communications related to the [2006 Letter]" (brief at 17 & n.16).  As PBGC noted to the Movants, this request is "substantively

have not provided "concrete evidence" that the record was not properly designated, no such discovery is permitted.

Although the Movants assert that perceived procedural flaws in PBGC's decision-making process entitle them to discovery, they are wrong on several levels. First, the Movants cite *no authority* for the proposition that procedural flaws in informal agency adjudication justify discovery. Nor is there any. As the Supreme Court made clear in *PBGC v. LTV Corp.*, an agency need only "take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision," and if it did not, the remedy is remand, *not* discovery.[39]

In any event, PBGC far surpassed the minimal procedural requirements that apply to agency decisions reached through informal adjudication, like the 2006 Letter. Although some agency decisions must be issued through "formal adjudication" using "trial-type procedures" when the agency's governing statute so mandates, others may "lawfully [be] made by informal adjudication," to which only the "minimal requirements" of 5 U.S.C. § 555 apply.[40] These require only that the agency conclude the matter within a reasonable time and give prompt notice

---

identical to [one of] those in the FOIA request," request number 6, which PBGC already had "thoroughly answered." Attachment 3 hereto, Letter from P. Connelly at 1. Although the Movants speculate that additional PBGC staff are "substantially likely to have produced or received such emails" with outside parties (brief at 17), this naked and baseless speculation hardly provides the required "concrete evidence" that the record is not complete. In addition, the Movants would like PBGC to answer *forty-nine* requests for admissions covering a variety of subjects. There is simply no basis for imposing this burdensome obligation in this administrative record case.

[39] 496 U.S. 633, 654 (1990).

[40] *Id.* at 655.

and a brief statement of the grounds for a denial of any application. PBGC did far more, giving all affected parties an opportunity to provide input, carefully considering the hundreds of pages they submitted, and issuing a comprehensive decision.

The Movants nevertheless assert that they were not permitted to "rebut or comment on the positions taken by other parties"; that PBGC did not conduct fact-finding into the Plan's assertion that there was "substantial additional information and records covering the Plan's 45 years of operations that may have some bearing on the PBGC's consideration of the issues"; and that PBGC "cut off administrative review" by making the 2006 Letter immediately effective pursuant to its regulation.[41] As the Supreme Court made clear in *LTV*, PBGC's procedures in reaching its determination were entirely within its discretion, and the choices it made assuredly create no right to discovery.

More specifically, there simply is no requirement that an agency collect position statements from the parties and then collect comments on those position statements before issuing a determination.[42] Nor does an agency have to conduct fact-finding any time a party suggests that additional information "may have some bearing" on the issues.[43] And PBGC's effort to issue a final determination that could be immediately challenged in court was entirely reasonable under the circumstances. At that time, there were several ongoing lawsuits involving the Plan's status and Sara Lee's concomitant ability to withdraw funds. As PBGC explained to

---

[41]  Movants' brief at 22-25.

[42]  It is particularly disingenuous for Sara Lee to complain that it was not permitted to comment on other parties' positions, since it alone refused to provide to the other parties a copy of its submission to PBGC. *See* AR 1448-1450.

[43]  *See PBGC v. LTV Corp.*, 496 U.S. at 655.

-14-

the bankruptcy court adjudicating one of those suits, "particularly in exigencies like this, where there's pending litigation that may be affected," PBGC may make its determination immediately effective, as provided in the agency's regulation.[44]  The Movants' assertion that PBGC had to provide "prior notice" to the parties before taking that step is wholly without support in PBGC's regulation or anywhere else.[45]

Finally, the Movants' naked assertions of an "apparent partnership between PBGC and IBC in defending the 2006 Determination" (brief at 24); "*ex parte* communications" between PBGC and IBC (brief at 25); and a "significant financial interest" by PBGC (brief at 10 n.10) are entirely unsupported.  Such bare allegations are exactly the sort of charges that the D.C. Circuit has dismissed because they are easily made but, if allowed to stand, generate an "inordinate burden" to resolve.[46]  The Court should do so here as well.

**D.     BECAUSE PBGC DID NOT DETERMINE THE RAMIFICATIONS OF THE 2006 LETTER, DISCOVERY ON THAT GROUND IS NEITHER NECESSARY NOR PERMITTED.**

In their effort to use this discovery motion to address the merits of PBGC's determination, the Movants devote the majority of their brief to an exhaustive discussion of the

---

[44]  29 C.F.R. § 4003.22(b).  *See In re Interstate Bakeries Corp.*, No. 04-45814-jwv, Transcript of Motion Hearing (Bankr. W.D. Mo. June 27, 2006) at 72, excerpt attached to PBGC's summary judgment brief (Docket #46) as Exhibit 1.

[45]  The Movants' description of *NRDC v. EPA*, 683 F.2d 752, 765 (3d Cir. 1982) (brief at 24) shows its utter irrelevance.  Of course, the APA's requirement of notice and comment in an agency rulemaking should not be avoided based on the "urgent need for action."  But no APA requirement of any kind was at issue here, so the case is inapposite.

[46]  *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1327-29 (D.C. Cir. 1984), *vacated in part*, 760 F.2d 1320 (D.C. Cir. 1985), *aff'd*, 789 F.2d 26 (D.C. Cir. 1986).

-15-

potential retroactive applicability of the 2006 Letter and the effects thereof.[47]  Almost as an afterthought, they assert that discovery is permissible because PBGC was obligated, but failed, to give them specific notice that the 2006 Letter "could be applied retroactively."[48]  No such procedural requirement applies, and PBGC did not determine the ramifications of the 2006 Letter in any event.  Because the merits and ramifications of the 2006 Letter are not at issue in this motion, the Court should apply the well-established law that controls discovery, and deny the motion.[49]

First, even if PBGC had determined the ramifications of the 2006 Letter in that determination, the agency would not have been required to specifically notify the parties in advance.  As demonstrated above, virtually no procedural requirements apply to informal adjudication.  In any event, notwithstanding the Movants' complaint about lack of notice, both Sara Lee and the Plan submitted *extensive* arguments about the potential retroactive impact of changing the Plan's classification, as they acknowledge in their brief.[50]  Accordingly, their assertions ring hollow, and must be disregarded.

In any event, PBGC did not determine the ramifications of the 2006 Letter, and the Movants' assertion that PBGC made a "specific decision to . . . apply the 2006 [Letter]

---

[47]  *See* Movants' brief at 5-6, 19-36.

[48]  *Id.* at 19.

[49]  This principle applies equally to the Movants' lengthy argument that the 2006 Determination is arbitrary in that it purportedly treats similarly situated parties differently (brief at 36-39).

[50]  Movants' brief at 22-23; AR 1305 (Sara Lee); AR 886-87 (Plan).

retroactively" is simply wrong.[51]  PBGC has not addressed the impact of the 2006 Letter on the

Plan or its assets and liabilities, as this issue falls primarily under the jurisdiction of other federal

agencies.[52]  PBGC merely noted that under the Plan actuary's calculations, $27 million is in

dispute, and Sara Lee had a correlating "potential exposure" if the Plan is a multiple-employer

plan.[53]  In sum, the retroactive effect or other ramifications of the 2006 Letter are not before the

Court, and provide no basis for the discovery the Movants seek.

---

[51]  Movants' brief at 20; *see also id.* at 5, 26.

[52]  Indeed, PBGC has no authority to address most of the potential ramifications that the Movants predict (brief at 5).  Under Title IV of ERISA, PBGC implements plan terminations, guarantees benefits in terminated plans, and collects statutory termination liability.  The Secretaries of Labor and Treasury administer and enforce the remaining provisions of ERISA and the Internal Revenue Code governing ongoing plans, including the funding requirements and asset and liability allocations.  *See*, *e.g., Mead Corp. v. Tilley*, 490 U.S. 714, 717 (1989) ("Titles I and II [of ERISA] provide requirements for plan participation, benefit accrual and vesting, and plan funding.  Title III contains general administrative provisions.  Title IV covers the termination of private pension plans, establishes a system of insurance for benefits provided by such plans, and creates a 'body corporate' within the Department of Labor, the Pension Benefit Guaranty Corporation (PBGC), to administer that system.").

[53]  AR 1564, 1565.

**CONCLUSION**

The Movants have not made the required "strong showing" of bad faith or improper behavior, or that the administrative record is so bare that it prevents effective judicial review of the 2006 Letter. Nor have they provided concrete evidence that PBGC did not properly designate the administrative record. Accordingly, their motion to serve discovery, to supplement the administrative record with materials produced in discovery, and to compel PBGC to supplement the record with the documents they identified must be denied.

November 30, 2007                    Respectfully submitted,
Washington, DC

                                      /s/ Marc S. Pfeuffer
                                     ISRAEL GOLDOWITZ (D.C. Bar No. 291120)
                                     Chief Counsel
                                     CHARLES L. FINKE
                                     Associate Chief Counsel
                                     PAULA CONNELLY (D.C. Bar No. 389055)
                                     Assistant Chief Counsels
                                     MARK BLANK (D.C. Bar No. 968388)
                                     MARC S. PFEUFFER (D.C. Bar No. 484209)

                                     PENSION BENEFIT GUARANTY CORP.
                                     Office of the Chief Counsel
                                     1200 K Street, N.W.
                                     Washington, D.C.  20005
                                     Tel. No. (202) 326-4020, ext. 4903
                                     Fax No. (202) 326-4112
                                     E-mail: pfeuffer.marc@pbgc.gov and
                                     efile@pbgc.gov