## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA LEE CORPORATION, on its own behalf and on behalf of its employee-participants in the American Bakers Association Retirement Plan,<br><br>       Plaintiff,<br><br>v.<br><br>AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of the American Bakers Association Retirement Plan; and PENSION BENEFIT GUARANTY CORPORATION,<br><br>       Defendants.<br>_____<br>AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of the American Bakers Association Retirement Plan,<br><br>       Third Party Plaintiffs,<br>       Counterclaimants, and<br>       Cross-Claimants,<br><br>v.<br><br>SARA LEE CORPORATION,<br><br>       Respondent,<br><br>PENSION BENEFIT GUARANTY CORPORATION,<br><br>       Cross-Defendant, and<br><br>KETTERING BAKING COMPANY, INTERSTATE BRANDS CORPORATION, LEWIS BROS. BAKERIES, INC., HARRIS BAKING COMPANY, INC., AMERICAN BAKERS ASSOCIATION, and JENNY LEE BAKERY, INC.,<br><br>       Third-Party Defendants. | Case No. 06-CV-0819(HHK/JMF)<br><br>Judge Henry H. Kennedy, Jr.<br><br>Magistrate Judge John M. Facciola<br><br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SERVE DISCOVERY AND TO SUPPLEMENT THE ADMINISTRATIVE RECORD OF SARA LEE CORPORATION, LEWIS BROS. BAKERIES, INC., AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, AND BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN |

Plaintiff-Respondent Sara Lee Corporation ("Sara Lee"), Third Party Defendant Lewis Brothers Bakeries, Inc. ("Lewis Brothers"), and Defendants-Third Party Plaintiffs American Bakers Association Retirement Plan ("ABA Plan") and Board of Trustees of the ABA Plan ("ABA Plan Trustees") (collectively, "Movants"), by their respective attorneys, submit this reply memorandum in support of their motion for leave to serve discovery and to supplement the administrative record, and in support state as follows:

## ARGUMENT

A.    **The PBGC Misstates the Standards Set Forth in the Case Law, Which in Fact Support Discovery and Supplementation of the Record.**

The PBGC's Opposition[1] misstates the standards governing the instant motion for discovery and supplementation (or completion with extra-record evidence)[2] of the administrative record.  But this is not a difficult issue to resolve—Judge Kennedy already has provided ample guidance by citing three decisions addressing that question:  *Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989), *Amfac Resorts, LLC v. United States DOI*, 143 F. Supp. 2d 7 (D.D.C. 2001), and *James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996).  While the PBGC wholly ignores these cases, Judge Kennedy cited them in describing the standards that govern here:

> A complete administrative record includes **all materials before the agency** at the time the decision was made, [*James Madison Ltd. v. Ludwig*, 82 F.3d

---

[1] *See* PBGC's Memorandum in Opposition to Motion for Leave to Serve Discovery and to Supplement the Administrative Record (Docket No. 88) (hereafter "PBGC Opposition" or "PBGC Opp.").

[2] Supplementation of the record has sometimes been considered a different issue from review of extra-record evidence.  This Court recently explained that supplementing the record is "adding to the volume of the administrative record with documents the agency considered," while allowing the review of extra-record evidence is "viewing evidence outside of or in addition to the administrative record that was not necessarily considered by the agency."  *Pacific Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006).  The instant motion requests both supplementation and addition of extra-record evidence, seeking to add both documents the PBGC possessed and directly or indirectly considered, and additional documents, such as answers to requests to admit, yet to be produced in discovery.

1085, 1095 (D.C. Cir. 1996)], **as well as "all materials that might have influenced the agency's decision**, and not merely those on which the agency relied in its final decision," *Amfac Resorts, LLC v. United States DOI*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (internal quotation marks and citations omitted). **Where the administrative record as produced by the agency is not complete, a plaintiff may be entitled to discovery to identify materials that are properly part of the administrative record**. *Esch v. Yeutter*, 278 U.S. App. D.C. 98, 876 F.2d 976, 991 (D.C. Cir. 1989).

*Sara Lee Corp. v. Am. Bakers Ass'n Retirement Plan*, 06-CV-819(HHK), 2007 U.S. Dist. LEXIS 66758, at *17 (D.D.C. Sept. 11, 2007) (emphasis added).

The standards set forth in the cases cited by Judge Kennedy bear elaboration.  *Amfac* explains:

[T]he rule limiting judicial review to the record is subject to certain narrow exceptions. In this Circuit, four separate exceptions are well established. **First**, a court may look beyond the record if 'there was such **a failure [by the agency] to explain administrative action [so] as to frustrate effective judicial review.'** . . . **Second**, courts have looked beyond the record when it is necessary to **determine whether the agency 'considered all the relevant factors**.' . . . **Third**, non-record review is merited when the agency may have '**deliberately or negligently excluded documents that may have been adverse to its decision**.' . . . **Finally**, non-record review is also permissible in situations where there is a '**strong showing of bad faith or improper behavior**' on the part of the  agency.

143 F. Supp. 2d at 11-12 (citations omitted, emphasis added).  *Esch* similarly indicates review of evidence outside an administrative record is appropriate:

(1) when agency action is **not adequately explained** in the record before the court; (2) when the agency **failed to consider factors which are relevant** to its final decision; (3) **when an agency considered evidence which it failed to include in the record**; (4) **when a case is so complex that a court needs more evidence to enable it to understand the issues clearly**; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases **where relief is at issue** . . . .

876 F.2d at 991 (emphasis added).  Movants' prior brief shows that all the *Amfac* factors, and at least 1-4 and 8 of the *Esch* factors, are met here.

Movants have clearly demonstrated that the record is incomplete – "all materials before the agency" are not in the record.  The PBGC cannot dispute this.  For example, the PBGC does

not dispute that numerous relevant documents, which were in its possession and produced by the agency to Sara Lee in a FOIA disclosure, are not included in the administrative record before the Court; yet the PBGC now opposes record supplementation with these documents. Specifically, the PBGC excluded documentation establishing that the PBGC consistently treated employer terminations from the ABA Plan as single-employer plan terminations—contrary to its 2006 Determination that the ABA Plan is and always has been administered as a multiple-employer plan. In the PBGC's multiple FOIA productions to Sara Lee, the PBGC produced records that show that during the 1977-2000 period, the PBGC treated at least *nine* additional terminations from the ABA Plan as single-employer plan terminations. Those records were ***not*** included in the "complete" administrative record that the PBGC filed with the Court:[3]

| **Employer** | **Proposed Month of Termination** |
|---|---|
| Lloyd J. Harris Pie Company and Flowers Industries, Inc. | December 1977[4] |
| Beaver Valley Industries, Inc. and Chef's Supply, Inc. | July 1982 |
| Fasano Pie Company | March 1983[5] |

---

[3] Copies of the documents produced by the PBGC on these various single-employer plan terminations are attached as Exhibits E through K to the Graham Affidavit ("Graham Aff."), respectively, which was filed as an Exhibit to Sara Lee's response brief in opposition to the PBGC's summary judgment motion (Docket No. 63).

[4] The termination of Flowers Industries, Inc. was accomplished through a plan to plan merger. *See* Graham Aff., Ex. F, attached to Sara Lee's response brief in opposition to the PBGC's summary judgment motion.

[5] It appears from documentation produced by the PBGC through Sara Lee's FOIA Request that the PBGC may have assumed trusteeship of the termination of the Fasano Pie Company in the ABA Plan, either through a voluntary or involuntary underfunded plan termination. *See* Graham Aff., Ex. G, attached to Sara Lee's response brief in opposition to the PBGC's summary judgment motion. Further information is necessary to determine the nature and circumstances of the termination, which Movants will be able to request if the Court allows discovery to proceed. Should it be determined that the Fasano Pie termination was a voluntary or involuntary termination where the PBGC accepted trusteeship of that single-employer plan, that fact would undercut PBGC's 2006 Determination that the ABA Plan was a multiple-

| | |
|---|---|
| Boge's Bread (Division of U.S. Bakery) | August 1987 |
| Holsum Baking Company | September 1987 |
| Oven Fresh/April Hill (Grocer's Baking Company) | September 1988 |
| Community Shops, Inc. | August 2000 |

Under *Amfac* and *Esch*, it was erroneous for the agency to exclude these documents from the record both if it considered them *or* if it failed to consider them.

The PBGC similarly does not dispute that relevant records were withheld as privileged or confidential, and were also omitted from the record. Yet the PBGC refuses to produce a privilege log, consistent with the requirements of the Rules, that would permit a determination of whether the PBGC's claims of privilege are meritorious. The withholding of a privilege log is improper and renders the record incomplete.[6]

As explained in Section C, *infra*, the PBGC's 2006 Determination also does not explain its retroactive effects, which the PBGC has claimed in this case not to have considered at all. For this reason alone supplementation is proper because the agency "failed to consider factors which are relevant to its final decision" and to "explain its administrative action so as to frustrate effective judicial review" and the granting of appropriate relief.

As explained fully in Movants' initial brief, it is also unclear what standard the PBGC applied in the 2006 Determination to determine if the ABA Plan is an aggregate of single employer plans. Notably, the PBGC's Opposition does not clarify this point. By focusing on the distinction between the "effectively restrict" and "effectively eliminate" language in its 1979 and 2006 Determinations, the PBGC has misstated and failed to respond to Movants' arguments. Movants in fact argued that the PBGC's standard changed from 1979 to 2006, *inter alia*, because

---

employer plan. The PBGC simply could not have treated such a cessation of participation in the ABA Plan as a plan termination if the ABA Plan were a multiple-employer plan.

[6] PBGC's refusal to allow supplementation with records it has already compiled is but one example of the agency's improper behavior and bad faith, addressed further in Section B below. This refusal begs the question whether the agency is improperly withholding yet more documents. Movants must be given the opportunity to learn in discovery what other documents or materials the PBGC has in its possession, and to submit such documents to the Court.

the prior standard required a showing of a "*minimal risk*" of cost-shifting, while the 2006 Determination required a showing of *no risk*—*i.e.*, that the risk had been "effectively eliminated." The PBGC has failed to address the argument Movants in fact made: that the 2006 Determination completely ignores the "minimal risk" standard it applied in the 1979 Determination and numerous other determinations, and which it set forth in a preamble to a regulation.[7] Instead, the PBGC chooses to attack its own "straw man."[8]

Furthermore, the PBGC refuses to certify that it searched the e-mails of Mr. Terrence Deneen and others involved in the 2006 Determination. While the PBGC apparently searched the e-mail records of Mr. Mark Blank, it appears to have omitted from the record information considered by the person who actually wrote and signed the 2006 Determination. There is nothing to indicate the PBGC searched for these documents during the FOIA review, and given the agency's improper behavior, Movants should not be expected to be satisfied with the agency's *ipse dixit*. This is also true for the PBGC's representation that it has no relevant files from other similar cases, other than decisions that are publicly available on LexisNexis.[9]

---

[7] *See* 45 Fed. Reg. 55636, 55637 n.2 (1980); PBGC Op. Ltrs. 85-2, 1985 PBGC LEXIS 31, at *2 (Jan. 14, 1985); PBGC Op. Ltrs. 84-2, 1984 PBGC LEXIS 8, at *6 (Jan. 17, 1984); PBGC Op. Ltrs. 79-14, 1979 PBGC LEXIS 4, at *2 (Oct. 17, 1979); PBGC Op. Ltrs. 79-3, 1979 PBGC LEXIS 15, at *2 (Feb. 12, 1979).

[8] When the "contemporaneous construction" of a particular term or regulation is involved, and where "the meaning is vague or ambiguous or where construction used in the particular case appears inconsistent," the courts have permitted not only additions to the record, but discovery to assist the court in understanding a purported agency action. *Apex Construction Co. v. U.S.*, 719 F. Supp. 1144, 1147 n.1 (D. Mass. 1989).

[9] In *Kelly v. PBGC*, No. 79 Civ. 0547 (HFW) NP 723, 1980 U.S. Dist. LEXIS 12458 (S.D.N.Y. July 17, 1980), only four years after ERISA became effective, the PBGC possessed and was ordered to disclose files on 46 cases determining the status of plans as aggregate plans (in a multiemployer plan context), yet it now urges that 27 years later it has *no such records* in the multiple employer plan context other than the several reported decisions. In addition, it is notable that the *Kelly* court ordered the PBGC to produce in discovery documents related to the plan at issue—the very same discovery the PBGC resists here.

In summary, Judge Kennedy invited this motion for supplementation and discovery because he believed they may be warranted in this case. The facts presented and the controlling case law show that they *are* warranted, and in fact are not unusual. Moreover, they are particularly appropriate here since the PBGC short-circuited the administrative review process by making its decision immediately final and thereby depriving Movants of an opportunity to submit additional evidence to the initial decision-maker or in an administrative appeal. Having thus prevented the record from being fully developed, the PBGC has no basis for opposing the relief Movants seek. Accordingly, because the record is incomplete—and is incomplete because of the PBGC's own actions—discovery and supplementation should be allowed.[10]

**B.    Movants Have Alleged the Improper Behavior or Bad Faith by the PBGC Necessary to Warrant Discovery and Supplementation of the Administrative Record.**

In their Opposition Briefs, IBC and the PBGC argue that Movants failed to allege or prove that the PBGC has acted in "bad faith" to warrant supplementation of the administrative record or permit additional discovery. However, these arguments not only fail to address Movants' allegations of the PBGC's many indiscretions during the administrative process, they misstate the law applicable to the Court's review of Movants' motion. Moreover, the PBGC's general dismissal of Movants' arguments as to the retroactivity of the 2006 Determination fails to comprehend, much less address, that some of the arguments on the merits of the ABA Plan's structure are directly relevant to whether discovery is necessary in this case.

Contrary to IBC's and the PBGC's arguments, "bad faith" need not be proved to allow supplementation of an administrative record or discovery into an administrative decision. Rather, upon a *prima facie* showing of bad faith, improper agency behavior *or* an incomplete

---

[10] To the extent the PBGC argues that remand is appropriate rather than discovery, that is not a matter before this Court in the present discovery motion and should be addressed by Judge Kennedy in ruling on the substantive merits of the challenges to the PBGC's 2006 Determination.

record, a reviewing court may go beyond the purported administrative record, including allowing for additional discovery. *See Citizens to Preserve Overton Park*, 401 U.S. 402, 420 (1971); *PBGC v. LTV Steel Corp.*, 119 F.R.D. 339, 341-343 (S.D.N.Y. 1988); *National Wilderness Inst. v. U.S. Army Corps of Engineers*, 2002 U.S. Dist. Lexis 27743 (D.D.C. Oct. 8, 2002). Courts generally review allegations of bad faith or improper agency behavior on a "you know it when you see it" standard. *See, e.g., Commercial Drapery Contrs. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) (citing *Overton Park*, 401 U.S. at 420); *see also Beach Communications v. Fed. Communications Comm'n*, 959 F.2d 975, 987 (D.C. Cir. 1992); *Community for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997 (D.C. Cir. 1990). Notably, a showing of bad faith is only required when a party seeks discovery or supplementation on the mental processes of an agency; it does *not* apply to supplementation or other discovery generally. *See Overton Park*, 401 U.S. at 420 (bad faith showing required only where the method of supplementation involves testimony inquiring into the mental processes of administrative decision-makers); *see also James Madison Limited v. Ludwig*, 82 F.3d at 1095; *Esch v. Yeutter*, 876 F.2d at 991; *Beach Communications*, 959 F.2d at 987.

The PBGC has acted improperly, amounting to "bad faith," because the PBGC's 2006 Determination was a result-oriented decision which furthered its own economic stake in the case, and was reached by withholding material in its possession from inclusion in its proffered administrative record and by cutting off administrative review prematurely. The PBGC's actions solely benefited itself and IBC, and defeated the long-held expectations of Movants that the ABA Plan was an aggregate of single-employer pension plans—a decision that had been followed by all parties for over 27 years.

As previously noted, evidence of the PBGC's bad faith is abundant. PBGC clearly has a very significant financial stake in the outcome of its own decision. Contrary to the PBGC's continued suggestion that it is merely a disinterested government corporation, it is uncontested that the PBGC will shed a potential $60 million (or greater) unfunded benefit liability exposure if the ABA Plan is held to be a multiple employer pension plan. That is, the liability to fund the

7

benefits of IBC's employee-participants under the ABA Plan, should IBC not be able to meet that liability, will shift from the PBGC to the Plan's participating employers who have met their funding and contribution obligations in the ABA Plan, including Sara Lee and Lewis Brothers (whose single-employer plans under the ABA Plan are fully funded) if the ABA Plan were held a multiple employer plan. As IBC remains in bankruptcy, it is very possible that its participation in the ABA Plan will cease through the bankruptcy proceedings; that cessation will trigger the PBGC's statutory guarantees and payment liability to IBC's ABA Plan employee-participants if the ABA Plan is an aggregate of single-employer plans. Accordingly, the PBGC's actions in this case must be reviewed with a critical eye to assess whether the PBGC's 2006 Determination is mere coincidence or evidence of improper behavior and bad faith.

In addition, it is uncontested that the PBGC previously ruled in its 1979 Determination— on substantially the same facts as those present in 2006—that the ABA Plan is an aggregate of single-employer pension plans. When IBC requested the PBGC to revisit that decision in 2005 and 2006, the PBGC faced an interesting choice: (1) continue treating the ABA Plan as an aggregate of single-employer plans and meet its statutorily mandated obligations to IBC's employee-participants if IBC terminates its participation in the ABA Plan; or (2) reverse its 1979 Determination, eliminate its potential $60 million (or greater) statutory obligation upon the termination of IBC's single-employer plan and instead transfer that obligation to the ABA Plan's other participating employers and, ultimately, the remaining ABA Plan participants, who could potentially experience some benefit reduction if the IBC liability is absorbed by the ABA Plan. Notably, this latter option is completely contrary to one of the central purposes stated in the ABA Plan's governing documents—that no participating employer would be required to fund the benefit liabilities of their competing participating employers.

In issuing its 2006 Determination, it is uncontested that the PBGC sided with its pocket-book and chose to pursue the second option, reversing its earlier determination that the ABA Plan is an aggregate of single-employer pension plans—a determination that all parties to this litigation, including the PBGC, had operated under for some 27 years. In doing so, as discussed

above, the PBGC excluded from the administrative record extensive documentation *in the PBGC's possession* that directly contradict its 2006 Determination that the ABA Plan is a multiple employer pension plan.

Contrary to the PBGC's and IBC's arguments that Movants have not alleged the necessary improper behavior or bad faith to warrant further discovery or supplementation of the administrative record, examples of the PBGC's improper behavior and bad faith are abundant and supported by clear and convincing evidence. For example, the PBGC asserts that it provided all affected parties with adequate notice and an opportunity to be heard. *See* PBGC Opp. at 14. This position is not supported by the facts as the PBGC directly notified only a few of the ABA Plan's participating employers—completely leaving Lewis Brothers off of the notice to provide a position statement on the issue of the ABA Plan's structure. *See* AR 0427.

PBGC furthermore ignored the evidence in its own administrative record. For example, in its 2006 Determination and in presentations to the Court, the PBGC cites the fact that the ABA Plan checked the "multiple-employer plan" box on its annual Form 5500s filed with the Internal Revenue Service ("IRS") to support its position that the ABA Plan "held itself out" as a multiple-employer plan. However, the PBGC's argument is factually incorrect because (i) there is no "aggregate of single-employer plans" box on Form 5500 that the ABA Plan could have selected; (ii) the box is actually labeled "multiple-employer plan **(other)**"; and (iii) generally, when the ABA Plan submitted a Form 5500 with the "Multiple-employer plan (other)" box checked, a footnote was added to the first page of the Form 5500 explaining that the ABA Plan is an aggregate of single-employer plans for ERISA Title IV plan termination purposes. Moreover, the ABA Plan's submission to the PBGC prior to the 2006 Determination specifically pointed out that determination letter filings submitted to the IRS were accompanied by letters setting forth a detailed description of the ABA Plan's structure as an aggregate of single-employer plans for purposes of Title IV. AR 0873-75, 1033-36. Yet, the PBGC chose to arbitrarily disregard this evidence without explanation. Instead, it stated only that a Form 5500 was filed by the ABA Plan that checked the "multiple employer plan" box. This demonstrates a bad faith skewing of

9

evidence before the PBGC, as well as the intention to exclude documents that contradict the conclusion of the 2006 Determination.

In addition, the PBGC included in the administrative record only one Form 5500 for the ABA Plan—which was submitted by the ABA Plan with its position statement in 2005. Notably, two additional Form 5500s were provided by PBGC to Sara Lee in response to Sara Lee's FOIA Request, and these Form 5500s also included the footnote referencing the ABA Plan's status as an aggregate of single-employer pension plans for Title IV plan termination purposes. *See* Graham Aff., Ex. L , filed with Sara Lee's Response in Opposition to the PBGC's Motion for Summary Judgment (Docket No. 63). The PBGC's mischaracterization of the nature of the Form 5500 filings as well as the PBGC's exclusion of this additional evidence begs the question of what additional documents on this issue, as well as other issues related to the ABA Plan's structure, exist within the PBGC's files and thereby necessitate discovery. Moreover, as noted earlier, the PBGC also improperly excluded from the administrative record documents related to the PBGC's treatment of employer terminations from the ABA Plan as single employer terminations, which documents further support the view that the ABA Plan was as an aggregate of single-employer plans and not a multiple-employer plan.

These are but three examples of the manner with which the PBGC has attempted to "stack the deck" in its favor to support its predetermined reversal of the 1979 Determination that the ABA Plan was an aggregate of single employer plans. The PBGC's exclusion of these and other relevant materials that were produced to Sara Lee in response to its FOIA Request clearly indicates that the administrative record filed with this Court is flawed and that the PBGC has engaged in at least improper behavior, much less bad faith, throughout the administrative review of this case, including in the creation of the administrative record. Accordingly, Movants should be permitted to engage in discovery to expose all of the facts relevant to the issue of the ABA Plan's nature and structure. *See Amfac*, 143 F. Supp. 2d at 11-12 (indicating that discovery may be "the only way a non-agency party can demonstrate . . . the need for extra-record judicial

review" where an "agency may have 'deliberately or negligently excluded documents that may have been adverse to its decision,'" or otherwise engaged in " 'bad faith or improper behavior'")

Furthermore, in their document and information requests to the PBGC, Movants have requested that the PBGC provide them with documentation relating to other cases raising similar aggregate of single-employer pension plan issues. *See* Parties' Joint Status Report (Docket No. 81), Exs. B, D. The PBGC has refused to provide Movants with any additional documentation, even though it is a matter of public record that such documents exist and that the PBGC has in fact been compelled to produce such documents in other cases. *See, e.g., Kelly v. PBGC*, No. 79 Civ. 0547 (HFW) NP 723, 1980 U.S. Dist. LEXIS 12458 (S.D.N.Y. July 17, 1980) (compelling the PBGC to turn over documentation regarding 46 cases in which the issue of whether a plan was an aggregate of single-employer plans was addressed by the PBGC). Even when confronted with the fact that its own responses to Sara Lee's FOIA Request indicated that all ABA Plan employer terminations were approved by the PBGC as single-employer plan terminations—a fact supportive of the view that the ABA Plan is an aggregate of single-employer plans, the PBGC seeks to avoid further discovery by arguing that Movants' document requests should be governed by FOIA rules and not the Federal Rules of Civil Procedure. *See* PBGC Opp. at p. 15. However, the PBGC should not be permitted to hide behind less exacting FOIA production standards, especially when Sara Lee has served document requests ***in this case*** on the PBGC under Fed. R. Civ. P. 34, seeking many of the same documents requested in Sara Lee's FOIA Request. Rather than respond to these discovery requests, the PBGC moved for protective order, based on the same arguments it makes here, which remains pending.[11]

Although the PBGC invites this Court to ignore the "Movants' naked assertions" of improper behavior and bad faith, the facts of this case underscore the lack of any foundation for

---

[11] On April 18, 2007, Sara Lee served its First Requests for Production of Documents on the PBGC. On May 2, 2007, the PBGC filed a motion for protective order, seeking to avoid responding to Sara Lee's document requests. *See* Docket No. 55. The parties briefed this motion, and it remains pending before the Court.

the positions asserted by the PBGC on this issue. Far from giving the PBGC absolute authority to determine the parties' rights before the agency, legal precedent, not to mention the United States Constitution, require that the PBGC follow a procedure sufficient to apprise claimants of the issues under review as well as a good faith adherence to those procedures. The PBGC followed no such procedures here in dealing with the ABA Plan and its participating employers. When viewed as whole, the PBGC's self-interest in shedding a potential $60 million or greater liability from its own bottom-line, its reversal of position, the fact that the administrative record is far from complete and the agency's failure to utilize fair and proper procedures in this matter establish at a minimum a *prima facie* showing of bad faith sufficient to warrant further discovery in this case. For these reasons as well as those discussed above, Movants should be granted leave to pursue limited additional discovery.

      **C.**    <u>**Discovery Concerning the Retroactive Effect of the 2006 Determination Is Warranted, As Well As Consideration of Related Documents That Have Been Omitted from the PBGC's Record.**</u>

      As Movants have argued, the proposed limited discovery is warranted because the parties with an interest in the ABA Plan's Title IV status (as either a multiple-employer plan or an aggregate of single employer plans) are uncertain whether the PBGC's 2006 Determination effects a *retroactive* revocation of the agency's 1979 Determination, and what the agency considered in regard to this issue. On its face, the 2006 Determination retroactively revokes the 1979 Determination as if it was never issued, because the PBGC was "simply wrong" and because the ABA Plan "always has been" a multiple employer plan. AR 1563, 1566, 1570. However, the PBGC represented at the July 2, 2007 hearing before Judge Kennedy that the agency had not decided the retroactivity issue, and the agency continues to take that position in opposition to the instant motion. Docket No. 85, Ex. 2 at 16-17; PBGC Opp. at 15-17.

      The PBGC's divergent positions place in question the ramifications of the revocation of its 1979 Determination, which is so unclear that even the two parties opposing this Motion cannot agree on what in fact the PBGC did with respect to the retroactive application of its 2006

Determination. IBC's and the PBGC's briefs are a perfect illustration of the confusion the 2006 Determination has created—while the PBGC still maintains it did not decide retroactivity, IBC's brief is wholly at odds with that position claiming that the "retroactive effect of the 2006 Determination . . . was well-known and indeed desired by the parties." Docket No. 87 at 6. A threshold question in the Court's review for abuse of discretion is therefore what was the effect of the 2006 Determination or what consideration was given to its effect—and discovery is necessary to find that out. [12]

The PBGC and IBC object to Movants' raising the retroactivity issue in the instant motion because they argue that it is a substantive issue going to the merits of the lawsuit and not to the discovery issue before this Court. This position is surprising because the PBGC admits that it did not consider the retroactivity issue and that there is "no record before the Court on that."[13] Docket No. 85, Ex. 2 at 16-17; PBGC Opp. at 15-17. But there should be—as this issue is undeniably relevant under Title IV because: (i) if applied to the funds now in the ABA Plan's trust, the decision confiscates for the PBGC's (or IBC's) benefit at least $26.4 million contributed by Sara Lee, and additional amounts contributed by Lewis Brothers; and (ii) as

---

[12] IBC argues that retroactivity was "well-known" and PBGC claims "Sara Lee and the Plan submitted *extensive* arguments about the potential retroactive impact of changing the Plan's classification" (PBGC Opp. at 16 (emphasis in original)). However, the PBGC now argues that it did not consider the retroactivity issue. This raises an obvious question: "Why?"—which must be answered in discovery.

[13] The PBGC's administrative record thus lacks any information concerning whether the agency considered any of the five factors set forth in *Retail, Wholesale*, used to assess whether a determination should be applied retroactively. *Retail, Wholesale, and Dep't Store Union v. NLRB*, 466 F.2d 380, 389-90 (D.C. Cir. 1972); *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 30 (D.C. Cir. 2005) ("Our cases establish a five-factor framework for evaluating retroactive application of rules announced in agency adjudications.") (punctuation and citation omitted). *Retail, Wholesale* states: "the considerations that enter into a resolution of the problem are (1) whether the particular case is one of first impression, (2) whether the new rule represents an *abrupt departure from well established practice* or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied *relied on the former rule*, (4) *the degree of the burden which a retroactive order imposes on a party*, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard." 466 F.2d at 390 (emphasis added).

demonstrated in the cases cited below and in the Motion, the Court must consider retroactivity in assessing whether the 2006 Determination is arbitrary and capricious.  Therefore, Movants have properly raised the issue in this Motion to explain their need for, and the scope of, the discovery and supplementation required for the Court to decide, based on a complete record, the issues before it.

The PBGC's assertion that retroactivity is irrelevant because the agency engaged in adjudication of an individual case and that, as a result,  "any restrictions on a rule's retroactive effect simply did not apply" (PBGC Opp. at 8 (comma omitted)) is wholly without merit.  The applicable case law clearly indicates that retroactivity is a relevant issue in adjudications.  The courts have often ruled that agencies may not apply revocations retroactively or are without authority to reopen a previously decided adjudication for such a purpose.

In fact, the PBGC's attempts to apply retroactively new policies, as it appears to be doing here, have been blocked by the courts.  For example, in *Solar v. Pension Ben. Guar. Corp.*, 504 F. Supp. 1116, 1123 (S.D.N.Y.), *aff'd*, 666 F.2d 28 (2d Cir. 1981), the court held the PBGC has no statutory authority to retroactively apply a new policy to past events through a "redetermination" of a prior adjudication.  This Court likewise has held revocations of prior adjudicatory determinations to be arbitrary and capricious, and further that detrimental reliance and unreasonable timing bar an agency from even reopening a previous determination.  *See Prieto v. United States*, 655 F. Supp. 1187, 1191-94 (D.D.C. 1987) (revocation of determination was arbitrary and capricious and violated APA; reconsideration of determination made nine months earlier was untimely, in part because party detrimentally relied on it); *see also Gabbs Exploration Co. v. Udall*, 315 F.2d 37, 40-41 (D.C. Cir. 1963) (rejecting as untimely a reconsideration initiated 27 years after the initial adjudication, even if the law had clearly been misapplied); *Gubisch v. Brady*, Civil Act. No. 88-2031, 1989 U.S. Dist. LEXIS 4317, at *31-32 (D.D.C. April 20, 1989) ("if an agency reopens one of its decisions, it must do so within 'a short and reasonable time period.'  Although each case necessarily differs, 'absent unusual circumstances, the time period would be measured in weeks, not years.'  Once the reasonable

14

time period has expired, however, the agency has lost its opportunity to correct previous errors and its decision becomes final.") (citations omitted) (*quoting Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977)).[14]

It is also difficult to understand how retroactivity could be irrelevant because the retroactive effect of the 2006 Determination was only one of two specific issues the Court wanted addressed at oral argument on July 2, 2007. Docket No. 85, Ex. 2 at 5-6, 15-17. This issue was not fully briefed in the summary judgment papers previously filed with this Court, and will have to be briefed in the future. Therefore, it was entirely proper to raise the issue in this discovery motion to ensure that Judge Kennedy has a complete record upon which to determine if retroactivity renders the 2006 Determination arbitrary and capricious.

Movants' discovery and supplementation requests are narrowly tailored to address the precise issues described above: retroactivity, reliance, burdensomeness, an unannounced change in policy and the applicable standard for the PBGC's decision, unreasonable timing and what the PBGC considered in relation to these issues. The Court should therefore grant the instant Motion. In particular, the PBGC's FOIA disclosure to Sara Lee, which the PBGC now argues should not be added to the administrative record although it previously agreed to do so, contains documents concerning individual employer terminations from the ABA Plan, which the PBGC processed over the course of 27 years as if the ABA Plan is an "aggregate." These documents are crucial to showing the parties' reliance on the 1979 Determination, the abrupt change in the PBGC's policy and the burdensome consequences that will follow if these plan terminations

---

[14] It is well-settled in other circuits as well that retroactivity is relevant in agency adjudications, with the factors set forth by the D.C. Circuit in *Retail, Wholesale* at issue on judicial review. *See, e.g., Stewart Capital Corp. v. Andrus*, 701 F.2d 846, 848-50 (10th Cir. 1983) (applying *Retail, Wholesale* test, court held that because interpretation of regulation was an abrupt departure from established practice upon which party had relied, agency abused its discretion by applying it retroactively); *Montgomery Ward & Co. v. Federal Trade Com.*, 691 F.2d 1322, 1329, 1332-34 (9th Cir. 1982) (court reverses retroactive effect of adjudicatory restatement of previously articulated law as overly burdensome under *Retail, Wholesale* test).

must be reassessed.[15]  Because these documents were omitted from the administrative record, Movants seek to discern whether or to what extent the PBGC considered them, and also whether additional relevant plan termination and other documents exist.  In short, whether or not the PBGC's 2006 Determination is intended to and should apply retroactively—despite 27 years of reliance on the 1979 Determination and the burdensome financial and administrative effects retroactivity would have on Movants and third parties—is properly raised here, and the narrowly tailored discovery and supplementation Movants request should be allowed to proceed.

<u>CONCLUSION</u>

For the reasons stated herein and in their initial brief, Movants respectfully request that that the Court grant their Motion and allow supplementation of the existing administrative record and limited discovery.

Dated:  December 14, 2007                  Respectfully submitted,

**SARA LEE CORPORATION**

By:     /s/ Michael T. Graham_____

M. Miller Baker (DC Bar No. 444736)
James Napoli (DC Bar No. 496369)
Sarah E. Hancur (DC Bar No. 480537)
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005-3096
Phone: 202.756.8000
Fax:    202.756.8087
Email: mbaker@mwe.com
        jnapoli@mwe.com
        shancur@mwe.com

---

[15] Should the ABA Plan be deemed a multiple-employer plan retroactively, the PBGC's past treatment of many plan terminations as single plan terminations presumably will have to be undone, and former participating employers may potentially face new liabilities.  The PBGC's sole jurisdiction over these Title IV plan terminations demonstrates the baseless nature of its claim (PBGC Opp. at 17) that it did not consider retroactivity because the "issue falls primarily under the jurisdiction of" the IRS and DOL.  Unfortunately for the PBGC, it will have to deal with these and many other issues should the Court choose to affirm the 2006 Determination.

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois  60606
Phone: 312.372.2000
Fax:    312.984.7700
Email:  mgraham@mwe.com


**LEWIS BROTHERS BAKERIES, INC.**

By:    /s/ D. Christopher Ohly_____

D. Christopher Ohly (DC Bar No. 486370)
SCHIFF HARDIN, LLP
1666 K Street, NW
Suite 300
Washington, DC 20006
Phone:  202.778.6458
Email: dcohly@schiffhardin.com


**AMERICAN BAKERS ASSOCIATION
RETIREMENT PLAN and BOARD OF
TRUSTEES OF THE AMERICAN BAKERS
ASSOCIATION RETIREMENT PLAN**

By:    /s/ Paul J. Ondrasik, Jr._____

Paul J. Ondrasik, Jr. (DC Bar No. 261388)
Edward R. Mackiewicz (DC Bar No. 944884)
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue
Washington, DC 20036
Phone: 202.429.6412
Fax:   202.429.3902
Email: pondrasik@steptoe.com
       emackiewicz@steptoe.com

Anne H. S. Fraser (DC Bar No. 349472)
ANNE H. S. FRASER, PC
1320 19th Street, NW
Suite 200
Washington, DC 20036
Phone:  202.466.4009
Fax: (202) 466.4010
Email: ahsfraser@aol.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Edward R. Mackiewicz, hereby certify that a true and exact copy of the foregoing **Reply Memorandum in Support of Motion for Leave to Serve Discovery and to Supplement the Administrative Record of Sara Lee Corporation, Lewis Bros. Bakeries, Inc., American Bakers Association Retirement Plan, and Board of Trustees of the American Bakers Association Retirement Plan,** has been served on the following parties this 14th day of December, 2007, as indicated below:

*VIA ELECTRONIC FILING:*

M. Miller Baker
Sarah E. Hancur
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8233

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606
(312) 984-3606

**Attorneys for Plaintiff Sara Lee Corp.**

Edward J. Meehan
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., NW
Washington, DC 20005
(202) 371-7000

Amanda S. Williamson
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606
(312) 407-0700

Carol Connor Cohen
Arent Fox, LLP
1050 Connecticut Ave., NW
Washington, DC 20036
(202) 857-6054

**On behalf of Third-Party Defendant Interstate Brands Corporation**

James Hamilton
Bingham McCutchen
2020 K Street, NW
Washington, DC  20006
(202) 373-6026

**On behalf of Third-Party Defendant American Bakers Association**

D. Christopher Ohly
Roger Pascal
Schiff Hardin LLP
1666 K Street, NW  Suite 300
Washington, DC  20006
(202) 778-6400

Sonia Macias Steele
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL  60606
(312) 258-5500

**On behalf of Third-Party Defendant Lewis Brothers Bakery**

Lonie A. Hassel
Groom Law Group
1701 Pennsylvania Ave., NW
Washington, DC  20006
(202) 857-0620

**On behalf of Third-Party Defendant Harris Baking Co.**

Israel Goldowitz, Chief Counsel
Charles Finke, Deputy Chief Counsel
Michael Miller, Assistant Chief Counsel
Paula Connelly, Assistant Chief Counsel
Marc Pfeuffer, Attorney
Mark Blank, Attorney
PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.
Washington,  DC  20005

**On behalf of Defendant Pension Benefit Guaranty Corporation**

*The following individuals have been served VIA FIRST CLASS MAIL:*

James R. Kettering, Jr.
President
Kettering Baking Co.
729 Coleman Avenue
Fairmont, WV  26554

**On behalf of Third-Party Defendant Kettering Baking Co.**

Bernard Baker
President
Jenny Lee Bakery, Inc.
620 Island Avenue
McKees Rock, PA  15136

**On behalf of Third-Party Defendant Jenny Lee Bakery, Inc.**

/s/ _Edward R. Mackiewicz__
Edward R. Mackiewicz
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel:  (202) 429-3000
Fax: (202) 429-3902