# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARA LEE CORPORATION, on its own** <br> **behalf and on behalf of its** <br> **employee-participants in the American** <br> **Bakers Association Retirement Plan,** <br> Three First National Plaza <br> Chicago, Illinois 60602-4260 <br><br> Plaintiff, <br><br> v. <br><br> **AMERICAN BAKERS ASSOCIATION** <br> **RETIREMENT PLAN; and BOARD OF** <br> **TRUSTEES OF THE AMERICAN** <br> **BAKERS ASSOCIATION RETIREMENT** <br> **PLAN, as Administrator of The American** <br> **Bakers Association Retirement Plan,** <br> 1300 Eye Street, N.W., Ste. 700 West <br> Washington, D.C. 20005 <br><br> and <br><br> **PENSION BENEFIT GUARANTY** <br> **CORPORATION,** <br> 1200 K Street, N.W. <br> Washington, D.C. 20005 <br><br> Defendants. <br><br> **AMERICAN BAKERS ASSOCIATION** <br> **RETIREMENT PLAN; and BOARD OF** <br> **TRUSTEES OF THE AMERICAN** <br> **BAKERS ASSOCIATION RETIREMENT** <br> **PLAN, as Administrator of The American** <br> **Bakers Association Retirement Plan,** <br><br> Third Party Plaintiffs, <br> Counterclaimants, and Cross-Claimants, <br><br> v. | Case No. 06-CV-0819-HHK <br> Hon. Henry H. Kennedy, Jr. <br><br><br> CROSS-CLAIM <br> (Fed. R. Civ. P. 13(g)) <br><br> COUNTERCLAIM <br> (Fed. R. Civ. P. 13(a)) |

SARA LEE CORP., )
 )
   Respondent, )
 )
PENSION BENEFIT GUARANTY )
CORPORATION, )
 )
   Cross-Defendant, )
 )
  and )
 )
KETTERING BAKING CO. )
729 Coleman Avenue )
Fairmont, WV 26554 )
 )
INTERSTATE BRANDS CORP. )
12 E. Armour Blvd. )
Kansas City, MO 64111-1202 )
 )
LEWIS BROS. BAKERIES, INC. )
500 N. Fulton Avenue )
Evansville, IN 47710 )
 )
HARRIS BAKING CO., INC. )
2301 S. 1st Street )
Rogers, AR 72758-6416 )
 )
AMERICAN BAKERS ASSOCIATION )
1300 Eye Street, N.W. )
Suite 700 West )
Washington, DC 20005 )
 )
  and )
 )
JENNY LEE BAKERY, INC. )
620 Island Avenue )
McKees Rock, PA 15136 )
 )
   Third-Party Defendants. )
 )

---

LEWIS BROS. BAKERIES, INC. )
500 N. Fulton Avenue )
Evansville, IN 47710 )

Counterclaimants, and Cross-Claimants, )

v.

|  |  |
|---|---|
| AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of The American Bakers Association Retirement Plan, | ) ) ) ) ) ) ) |
| Third Party Plaintiffs, Counterclaimants, and Cross-Claimants, Counterclaim Defendant. | ) ) ) ) |
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) |
| Cross-Defendant,. | ) ) |

### THIRD PARTY DEFENDANT LEWIS BROTHERS BAKERIES, INC.'S[1] AMENDED ANSWER TO AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND BOARD OF TRUSTEES OF THE AMERICAN BAKERS RETIREMENT PLAN'S THIRD PARTY COMPLAINT, LEWIS BROS. BAKERIES INC.'S CROSS-CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST PENSION BENEFIT GUARANTY CORPORATION AND COUNTERCLAIM AGAINST AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN AND BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, AS ADMINISTRATOR OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN

### ANSWER

#### Nature of the Action

1.    Sara Lee Corporation ("Sara Lee") initiated this action for declaratory and injunctive relief against the ABA Plan Defendants and Defendant Pension Benefit Guaranty Corporation ("PBGC"). Count I of the Second Amended Complaint is asserted solely against Defendant PBGC and seeks judicial review of PBGC's August 8, 2006, letter determination (the "2006 PBGC Letter") that the ABA Plan is a "multiple employer" pension plan under Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

---

[1] Third Party Defendant Lewis Brothers Bakeries, Inc. is correctly named in the caption of the Third Party Complaint, but is incorrectly referred to throughout the Third Party Complaint as Lewis Brothers Baking Company.

("ERISA"). Counts II and III are asserted against the ABA Plan Defendants. Count II alleges that the ABA Plan Defendants have used Plan assets attributable to Sara Lee to provide pension benefits to all Plan participants rather than only Sara Lee employees, and has thereby violated the terms of the Plan incorporating an earlier determination by the PBGC that the ABA Plan is an "aggregation of single employer plans" for ERISA Title IV purposes (the "1979 PBGC Letter"). Count III asserts that if the Court affirms PBGC's recent determination that that Plan is a multiple employer plan, the ABA Plan Defendants breached their fiduciary duties by operating it as such a plan.

**ANSWER:**     Third Party Defendant Lewis Brothers Bakeries, Inc. ("Lewis Brothers") admits that Sara Lee initiated this action against the ABA Plan Defendants (as defined in the Third Party Complaint) and Defendant PBGC. Third Party Defendant Lewis Brothers states that the Second Amended Complaint speaks for itself.

2.     In Count I of its Third Party Complaint, Counterclaim and Cross-Claim, the ABA Plan Defendants seek declaratory and injunctive relief from this Court, ruling on whether the Plan is indeed a "multiple employer" plan pursuant to the 2006 PBGC Letter, or whether it is instead an "aggregation of single-employer plans" pursuant to the 1979 PBGC Letter and the terms of the Plan documents.  As the Plan is underfunded, this determination affects the allocation of Plan assets as among the seven Participating Employers, and constitutes an actual case or controversy.

**ANSWER:**     Third Party Defendant Lewis Brothers admits that the subject of this action constitutes an actual case or controversy.  Third Party Defendant Lewis Brothers states that the Third Party Complaint, Counterclaim and Cross-Claim speaks for itself.

3.     In addition, in Count II of its Cross-Claim against Co-Defendant PBGC, the ABA Plan Defendants seek review of the 2006 PBGC Letter, which was issued on the basis of erroneous and incomplete facts, and was the result of a procedurally flawed inquiry by PBGC.

**ANSWER:**     Third Party Defendant Lewis Brothers states that the Third Party Complaint, Counterclaim and Cross-Claim speaks for itself.

4.     Count I is brought by the ABA Plan and its Trustees, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and 28 U.S.C. § 2201 against Plaintiff Sara Lee, the Third Party Defendants, and Co-Defendant PBGC.

**ANSWER:**     Third Party Defendant Lewis Brothers states that the Third Party Complaint, Counterclaim and Cross-Claim speaks for itself.

5.    Count II is brought by the ABA Plan and its Trustees, pursuant to Section 4003(f)(1) of ERISA, 29 U.S.C. § 1303(f)(1), against Co-Defendant PBGC for violation of their procedural due process rights under the Fifth Amendment of the Constitution.  U.S. Const. amend. V.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the Third Party Complaint, Counterclaim and Cross-Claim speaks for itself.

### Jurisdiction and Venue

6.    This Court has subject matter jurisdiction over this action pursuant to ERISA §§ 4003(f)(1), (2) and (6), 29 U.S.C. §§ 1303(f)(1), (2) and (6); ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1); and 28 U.S.C. § 1331.

**ANSWER:**    Paragraph 6 states a non-factual, legal conclusion to which no response is required.  To the extent that a response is required, Third Party Defendant Lewis Brothers admits that this Court has subject matter jurisdiction.

7.    This Court has personal jurisdiction over all of the Third-Party Defendants pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**ANSWER:**    Paragraph 7 states a non-factual, legal conclusion to which no response is required.  To the extent that a response is required, Third Party Defendant Lewis Brothers admits that this Court has personal jurisdiction.

8.    Venue is exclusive to the District of Columbia pursuant to ERISA § 4003(f)(2), 29 U.S.C. § 1303(f)(2), and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

**ANSWER:**    Paragraph 8 states a non-factual, legal conclusion to which no response is required.  To the extent that a response is required, Third Party Defendant Lewis Brothers admits that venue is proper.

### Parties

9.    The Plan is a "defined benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The Plan is administered in the District of Columbia, and has its principal office there.  The Plan is funded and operated through the medium of a single trust, the American Bakers Association Retirement Trust, (the "Trust") (attached to the Second Amended Complaint ("SAC") as Exhibit 4).

**ANSWER:**    Third Party Defendant Lewis Brothers admits the allegations of Paragraph 9.

10.    The Board of Trustees is the Plan's named fiduciary pursuant to Section 2.01 of the Trust, and as defined by ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2). The Trustees are also responsible for the administration and management of the Plan. The Trust is an Illinois trust, and was established by the American Bakers Association in 1961. The Trust provides for the establishment of the ABA Plan and governance of the Plan and Trust by the Board of Trustees. The Trust and the Plan are administered in Washington D.C. The Chairman of the Board of Trustees is also located in Washington D.C. and maintains his principal place of business there.

**ANSWER:**    Third Party Defendant Lewis Brothers admits the allegations of Paragraph 10.

11.    As the named fiduciaries, the Trustees are the proper parties to bring suit on behalf of the Plan and Trust and its participants and beneficiaries.

**ANSWER:**    Paragraph 11 states a non-factual, legal conclusion to which no response is required. To the extent a response is required, Third Party Defendant Lewis Brothers admits that fiduciaries are permitted to bring a suit pursuant to ERISA § 502(a)(3).

12.    Plaintiff Sara Lee is incorporated in the State of Maryland and has its principal place of business in Chicago, Illinois. Sara Lee is a "Participating Employer" in the ABA Plan. As a Participating Employer, Sara Lee contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Third-Party Defendant Sara Lee is a Participating Employer in the ABA Plan. Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations of Paragraph 12, and therefore denies the remaining allegations of Paragraph 12.

13.    Third-Party Defendant Interstate Bakeries Corporation ("IBC") is incorporated in the State of Delaware and has its principal place of business in Kansas City, Missouri. IBC is a Participating Employer in the ABA Plan. As a Participating Employer, IBC contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Third-Party Defendant IBC is a Participating Employer in the ABA Plan. Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations of Paragraph 13, and therefore denies the remaining allegations of Paragraph 13.

14.    Third-Party Defendant Harris Baking Company is incorporated in the State of Missouri and has its principal place of business in Rogers, Arkansas. Harris Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Harris Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Third-Party Defendant Harris

Baking Company is a Participating Employer in the ABA Plan. Third Party Defendant Lewis

Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of

the remaining allegations of Paragraph 14, and therefore denies the remaining allegations of

Paragraph 14.

15.    Third-Party Defendant Jenny Lee Bakery, Inc. is incorporated in the State of Pennsylvania and has its principal place of business in McKees Rock, Pennsylvania. Jenny Lee Bakery, Inc. is a Participating Employer in the ABA Plan. As a Participating Employer, Jenny Lee contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Third-Party Defendant Jenny

Lee Bakery is a Participating Employer in the ABA Plan. Third Party Defendant Lewis Brothers

lacks sufficient information or knowledge to form a belief as to the truth or falsity of the

remaining allegations of Paragraph 15, and therefore denies the remaining allegations of

Paragraph 15.

16.    Third-Party Defendant Kettering Baking Company is incorporated in the State of West Virginia and has its principal place of business in Fairmont, West Virginia. Kettering Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Kettering Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Third-Party Defendant

Kettering Baking Company is a Participating Employer in the ABA Plan. Third Party Defendant

Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or

falsity of the remaining allegations of Paragraph 16, and therefore denies the remaining

allegations of Paragraph 16.

17.    Third-Party Defendant Lewis Brothers Baking Company is incorporated in the State of Illinois and has its principal place of business in Evansville, Indiana. Lewis Brothers Baking Company is a Participating Employer in the ABA Plan. As a Participating Employer, Lewis Brothers Baking Company contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers states that it is a Missouri corporation with

its principal place of business in Evansville, Indiana. Third Party Defendant Lewis Brothers

states further that Chicago Baking Company, an Illinois corporation and wholly-owned

subsidiary of Third Party Defendant Lewis Brothers, is a Participating Employer in the ABA

Plan. Third Party Defendant Lewis Brothers admits that Chicago Baking Company contributes

to the ABA Plan on behalf of its eligible employee-participants.

18.    Third-Party Defendant American Bakers Association is incorporated in the State of Illinois and has its principal place of business in Washington, D.C. American Bakers Association is a Participating Employer in the ABA Plan. As a Participating Employer, American Bakers Association contributes to the ABA Plan on behalf of its eligible employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 18, and therefore denies

the allegations of Paragraph 18.

19.    Co-Defendant PBGC is a government corporation established by ERISA § 4002, 29 U.S.C. § 1302, within the U.S. Department of Labor. PBGC administers the plan termination insurance program under Title IV of ERISA and is domiciled and maintains its principal office in the District of Columbia.

**ANSWER:**    Third Party Defendant Lewis Brothers admits the allegations of Paragraph 19.

### Factual Allegations

### Plan Design

20.    The Plan is a defined benefit pension plan under ERISA, to which the Participating Employers, including Sara Lee, contribute.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that the Plan is a defined benefit

plan and that Chicago Baking Company has contributed to the Plan. Third Party Defendant

Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations of Paragraph 20. To the extent that the allegations of Paragraph 20 suggest that the Plan is a multiple employer plan, Third Party Defendant Lewis Brothers denies each and every allegation.

21.     The Plan is governed by a Plan Document as required by ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). A copy of the Plan Document, as amended from time to time, is attached and incorporated by reference as Exhibit 1 to the Second Amended Complaint.

**ANSWER:**     Third Party Defendant Lewis Brothers admits the allegations of Paragraph 21.

22.     The Plan was established in 1961 by the American Bakers Association, to provide a vehicle for baking industry employers to offer a traditional defined benefit pension plan to groups of their employees at various work locations. The Plan is administered by a Board of Trustees chosen from the employers that have contracted with the Plan to provide pensions for certain of their employees ("Participating Employers").

**ANSWER:**     Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 22, and therefore denies the allegations of Paragraph 22.

23.     Since ERISA went into effect in 1976, the Plan has been administered and regarded by the Board and Participating Employers as a single plan for purposes of Titles I and II of ERISA.

**ANSWER:**     Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 23. To the extent that the allegations of Paragraph 23 suggest that the Plan is a multiple employer plan, Third Party Defendant Lewis Brothers denies each and every allegation.

24.     In 1979, the PBGC issued a letter ("1979 PBGC Letter") wherein the agency determined that the Plan is an "aggregate of single employer plans" for purposes of plan termination and premiums under Title IV of ERISA. The 1979 PBGC Letter concluded that the requirement under the Plan Document that each employer fund its own participation and employee-participant benefits and the system of assessing surcharges on new Participating Employers based on an actuarial review of their employee-participant population were sufficient to demonstrate an intent to maintain separate plans.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the 1979 PBGC Letter speaks for itself.

25.    Upon issuance of the 1979 PBGC Letter, the Plan Document was amended to conform to the 1979 PBGC Letter by adding Article XIII.  Article XIII describes the purpose and intent of the Plan as follows:

> 13.01 Association of Single Employer Plans.  This Plan constitutes an association of single employer plans designed to give the cost savings and other benefits of a tax-qualified prototype plan, the administration in common of all the associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants.  That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes (see Exhibit A attached hereto).

**ANSWER:**    Third Party Defendant Lewis Brothers states that the Plan Document speaks for itself.

26.    Each employer joining the Plan executes a Participation Agreement adopting the terms of the Plan Document, whereby it agrees to make contributions to the Plan to fund its employee-participants' benefits.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Chicago Baking Company executed a Participation Agreement and made contributions to the Plan to fund its employee-participants' benefits.  Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations of Paragraph 26, and therefore denies the remaining allegations of Paragraph 26.

27.    Pursuant to Article XI, Sections 11.01 and 11.02 of the Plan Document, when an employer terminates its participation under the Plan, a separate actuarial study is made of its contributions and pensions payable, and the employer is required to cover any additional costs for benefits for its employee-participants that have not been adequately funded by its past contributions.  If the employer has contributed excess funds, the surplus assets revert to the terminating employer after the benefits are paid.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the Plan Document speaks for itself.

28.    Since 1979, PBGC has approved a number of individual employer terminations from the Plan.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 28, and therefore denies

the allegations of Paragraph 28.

29.    Since 1979, the ABA Plan and its employers have operated in the belief that each employer was to provide funds for the benefit of its own employee-participants, and that the Plan was an "aggregation of single employer plans" wherein any funding deficiencies at the time of termination were to be addressed by the employer.

**ANSWER:**    Third Party Defendant Lewis Brothers admits the allegations of Paragraph 29.

30.    The ABA Plan has been governed in substantial compliance and conformity with the 1979 PBGC Letter and its governing documents in accordance with ERISA § 404.  29 U.S.C § 1104.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 30, and therefore denies

the allegations of Paragraph 30.

## Events Leading Up to This Action

31.    For the past five years, the Plan has had seven Participating Employers: Interstate Bakeries Corporation ("IBC"), Harris Baking Company, Jenny Lee Bakery, Inc., Kettering Baking Company, Lewis Brothers Baking Company, the American Bakers Association (collectively, the "Third Party Defendants") and Plaintiff Sara Lee Corporation.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Chicago Baking Company has

participated in the Plan for the past five years.  Third Party Defendant Lewis Brothers lacks

sufficient information or knowledge to form a belief as to the truth or falsity of the remaining

allegations of Paragraph 31, and therefore denies the remaining allegations of Paragraph 31.

32.    As of September 1, 2006, the Plan covered 2,581 total participants: 1,597 participants from IBC, 687 from Sara Lee, 141 from Jenny Lee, 57 from Lewis Brothers, 34 from Harris, 31 from American Bakers Association, and 13 from Kettering.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Chicago Baking Company had

57 participants in the Plan as of September 1, 2006.  Third Party Defendant Lewis Brothers lacks

sufficient information or knowledge to form a belief as to the truth or falsity of the remaining

allegations of Paragraph 32, and therefore denies the remaining allegations of Paragraph 32.

33.    IBC filed Chapter 11 bankruptcy proceedings in the United States District Court
for the Western District of Missouri, Case No. 04-45814 (JWV) on September 22, 2004.  On
November 7, 2006, the Bankruptcy Court entered an Agreed Order granting the Plan and the
Trustees relief from the automatic stay provisions of the Bankruptcy Code, in connection with
this action.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that IBC filed bankruptcy

proceedings in 2004.  Third Party Defendant Lewis Brothers states that the Bankruptcy Court's

Agreed Order speaks for itself.

34.    While IBC participants comprise approximately 62% of the total Plan
participants, the percentage of IBC former employees who are among the terminated and vested
population is much higher, namely, approximately 80% of the Plan's total population.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 34, and therefore denies

the allegations of Paragraph 34.

35.    As of October 1, 2005, the Plan's total actuarial value of assets was
approximately $65.8 million, representing the contributions and investment earnings of all
employers less benefits payments and administrative expenses.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 35, and therefore denies

the allegations of Paragraph 35.

36.    The number of active participants in the Plan for whom contributions are being
made and the amount of contributions received relative to pensions being paid out are in decline.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 36, and therefore denies the allegations of Paragraph 36.

37.    In March 2004, after discussion over a period of several years of its intentions in maintaining the Plan, Sara Lee announced that it intended to terminate the participation of some Sara Lee employees in the Plan.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 37, and therefore denies the allegations of Paragraph 37.

38.    At Sara Lee's request, the Plan began the administrative transfer of Sara Lee's non-union active employee-participants, as well as the union and non-union former and retired employees and their beneficiaries, from the ABA Plan to the Consolidated Sara Lee Bakery Group Hourly Employees' Pension Plan (the "Sara Lee Plan"), a separate Sara Lee successor plan sponsored by the Plaintiff.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 38, and therefore denies the allegations of Paragraph 38.

39.    The active union employees of Sara Lee remain in the ABA Plan.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 39, and therefore denies the allegations of Paragraph 39.

40.    The associated pension liabilities for the transferred participants were also transferred to the Sara Lee Plan.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 40, and therefore denies the allegations of Paragraph 40.

41.    During the plan year beginning October 1, 2004, the Plan was required to collect, in addition to the normal contributions required by the Plan from Participating Employers,

quarterly contributions from Participating Employers to meet ERISA's minimum funding requirements and to reduce the balance of unfunded benefits under the Plan.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 41, and therefore denies

the allegations of Paragraph 41.

     42.    The Plan initially calculated and assessed such quarterly contributions according to a method that was based on the number of each Participating Employer's active and inactive participants weighted by the contractual rate of each Participating Employer's weekly contributions. After completing studies of the relative funded position of each employer group during the 2005 Plan Year, the Plan adopted a new method of assessing additional required funding contributions and applied the new method retroactively to the beginning of the 2005 Plan Year. The new method apportioned the quarterly contribution according to each employer's unfunded liability for the benefits of its own employee-participants. The new method eliminated any need for additional quarterly contributions by Sara Lee and increased the contribution requirement of IBC by millions of dollars.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 42, and therefore denies

the allegations of Paragraph 42.

     43.    In the summer of 2005, IBC and Sara Lee were provided with preliminary calculations of the share of ABA Plan assets attributable to their respective employees' participation in the Plan. The asset calculation considered contributions plus investment earnings minus administrative expenses and pensions paid.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 43, and therefore denies

the allegations of Paragraph 43.

     44.    These calculations indicated that five of the Participating Employers, including IBC, had made insufficient contributions to the Plan to fund the benefits of their employee-participants, while two of the Participating Employers, including Sara Lee, had made contributions more than sufficient to fund the benefits of their employee-participants.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that Chicago Baking Company

made contributions more than sufficient to fund the benefits of its employee-participants. Third

Party Defendant Lewis Brothers admits further that certain Participating Employers made

insufficient contributions to the Plan to fund the benefits of their employee-participants. Third

Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to

the truth or falsity of the remaining allegations of Paragraph 44, and therefore denies the

remaining allegations of Paragraph 44.

45.     On June 24, 2005, IBC requested the PBGC to conduct a review of the Plan, to
determine compliance with the 1979 PBGC Letter and to consider involuntary termination of the
Plan. IBC alleged that the Plan had not been operated in accordance with the 1979 PBGC Letter
by failing to maintain records and by failing to perform separate valuations. IBC ceased making
required quarterly contributions to the Plan on January 15, 2006, although it continued to make
regular monthly contributions based on the number of its active participants.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that one or more participating

employers requested reconsideration of the 1979 PBGC Letter.  Third Party Defendant Lewis

Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of

the remaining allegations of Paragraph 45, and therefore denies the remaining allegations of

Paragraph 45.  To the extent that the allegations of Paragraph 45 suggest that the Plan is a

multiple employer plan, Third Party Defendant Lewis Brothers denies each and every allegation.

46.     While IBC's request was pending, IBC, Sara Lee and the Plan entered into a "No-
Action Agreement."  The No-Action Agreement authorized the transfer by the Plan of $71
million to the Sara Lee Plan following its execution and provided for a delay in transfers of any
additional assets from the Plan to the Sara Lee Plan until PBGC completed its review. The $71
million authorized to be transferred represented a calculation made in accordance with Internal
Revenue Code Section 414(l) that was agreed to by Sara Lee, IBC and the Plan, and was not the
Plan's ordinary method for calculating the amount of such liabilities.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the remaining allegations of Paragraph 46.  To the

extent that the allegations of Paragraph 46 suggest that the Plan is a multiple employer plan,

Third Party Defendant Lewis Brothers denies each and every allegation.

47.     On August 28, 2005, Sara Lee entered into a Transfer Agreement with the Plan,
providing for transfer of the $71 million and for the transfer of an additional amount of assets
attributable to Sara Lee's contributions for the transferred participants according to the Plan's
usual method for single employer terminations.  The additional amount to be transferred was

approximately $27 million, but the transfer of those funds has not been effected as a result of PBGC's determination that the Plan is a multiple employer plan.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 47, and therefore denies the allegations of Paragraph 47.  To the extent that the allegations of Paragraph 47 suggest that the Plan is a multiple employer plan, Third Party Defendant Lewis Brothers denies each and every allegation.

48.    On or about September 30, 2005, pursuant to the Transfer Agreement, and with the knowledge and consent of IBC and with the knowledge of PBGC, $71 million was transferred to the Sara Lee Plan, but no further amounts have since been transferred.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 48, and therefore denies the allegations of Paragraph 48.  To the extent that the allegations of Paragraph 48 suggest that the Plan is a multiple employer plan, Third Party Defendant Lewis Brothers denies each and every allegation.

49.    As of October 1, 2005, the present actuarial value of accrued benefits to be paid to employees, former employees and beneficiaries of the Participating Employers (excluding the transferred Sara Lee participants) was approximately $95.7 million.  The present value of accrued benefits to be paid to employees and former employees of IBC and their beneficiaries is approximately $60 million.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 49, and therefore denies the allegations of Paragraph 49.

50.    On November 2, 2005, the PBGC announced that it would revisit the 1979 PBGC Letter determination and informed the Plan, IBC, and other interested parties that they would be permitted to make written submissions to the PBGC by November 18, 2005.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that the PBGC announced that it would revisit the 1979 PBGC Letter and that interested parties were permitted to make

submissions to the PBGC. To the extent that the allegations of Paragraph 50 suggest that the Plan is a multiple employer plan, Third Party Defendant Lewis Brothers denies each and every allegation.

51.     The PBGC permitted the parties to be involved only through this single submission.

**ANSWER:**     Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 51, and therefore denies the allegations of Paragraph 51.

52.     The PBGC did not inform the parties what process it would employ to review the submissions, or whether a record was being maintained, or whether each submitter would be permitted to review what the other parties had submitted.

**ANSWER:**     Third Party Defendant Lewis Brothers admits the allegations of Paragraph 52.

53.     Parties who submitted written documents were not required to serve, and were not identified to other interested parties in any formal way.

**ANSWER:**     Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 53, and therefore denies the allegations of Paragraph 53.

54.     On information and belief, there were extensive *ex parte* communications between PBGC and some of the interested parties.

**ANSWER:**     Third Party Defendant Lewis Brothers admits the allegations of Paragraph 54.

55.     The submitters participating in the process had no opportunity to review the submissions of other submitters, or to make any second-round or rebuttal submissions.

**ANSWER:**     Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 55, and therefore denies the allegations of Paragraph 55.

56.     The submitters had no opportunity to review any agency record despite efforts to obtain such records through the Freedom of Information Act.

**ANSWER:**     Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 56, and therefore denies

the allegations of Paragraph 56.

     57.     Representatives of the Plan had no opportunity to cross-examine or confront any witness, examine any other party's evidence, join any other interested party, discern who would be the decision-maker, or review or object to any proposed decision prior to the issuance of the determination.

**ANSWER:**     Third Party Defendant Lewis Brothers admits the allegations of Paragraph 57.

     58.     On August 8, 2006, the PBGC responded to IBC's June 24, 2005 request by written letter ("2006 PBGC Letter"). The 2006 PBGC Letter expressly revoked the 1979 PBGC Letter and determined that assets that have been contributed to the ABA Plan by each employer since at least 1979 are not restricted in use to pay pensions for participants of the employer that contributed the assets, but instead are available to pay the benefits of all employers' participants. The 2006 PBGC Letter is incorporated by reference and is attached as Exhibit 2 to the Second Amended Complaint.

**ANSWER:**     Third Party Defendant Lewis Brothers admits that the PBGC issued a second

letter on August 8, 2006. Third Party Defendant Lewis Brothers states that the 2006 PBGC

Letter speaks for itself. To the extent that the allegations of Paragraph 58 suggest that the Plan is

a multiple employer plan, Third Party Defendant Lewis Brothers denies each and every

allegation.

     59.     Against its liabilities, the Plan held in trust approximately $78.2 million in assets at market value as of September 30, 2006, with the balance to be paid by contributions from Participating Employers. This amount includes the approximately $27 million that would have been transferred to the Sara Lee Plan, in addition to the $71 million that was transferred, under the Plan's usual methodology for plan spin-offs or employer terminations.

**ANSWER:**     Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 59, and therefore denies

the allegations of Paragraph 59.

     60.     The present value of the unfunded amount of liabilities of all Plan participants is approximately $16.9 million. If the $27 million were transferred to Sara Lee, the unfunded amount for the Plan would increase to approximately $43.9 million.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 60, and therefore denies the allegations of Paragraph 60.

61.    Prior to August 8, 2006, the Plan was pursuing actions to collect additional contributions from the Participating Employers. These efforts included filing a Proof of Claim in the Bankruptcy Court against IBC for all amounts needed to fund IBC's liabilities under the Plan, including the unpaid quarterly contributions for the Plan Year commencing October 1, 2005, and taking actions to compel other employers to pay their quarterly contributions under both the old and new methods.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to form a belief as to the truth or falsity of the allegations of Paragraph 61, and therefore denies the allegations of Paragraph 61.

62.    On information and belief, the 2006 PBGC Letter requires the Plan to cease actions that are inconsistent with its determination that all the Plan's assets are available to pay the pensions of all active, inactive and retired employees who participate in the Plan.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the 2006 PBGC Letter speaks for itself.

63.    In effect, the 2006 PBGC Letter shifts each employer's individual liability to fund its own employee-participants' benefits to the common trust and thus to all Participating Employers collectively.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the 2006 PBGC Letter speaks for itself.

64.    The 2006 PBGC Letter also shifts the funding obligation for each employer's liability to its employee-participants to all Participating Employers collectively on a joint and several basis. This renders the amount of unfunded or underfunded liability arising from the participation of IBC participants, which is currently approximately $60.7 million, the collective responsibility of all the employers in the Plan.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the 2006 PBGC Letter speaks for itself.

65.    Upon information and belief, the amount of liability for IBC participants alone exceeds the net worth of one or more of the Plan's smaller employers.

**ANSWER:**    Third Party Defendant Lewis Brothers lacks sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations of Paragraph 65, and therefore denies

the allegations of Paragraph 65.

### Count I - Action for Declaratory Judgment
#### (against Co-Defendant PBGC, Plaintiff Sara Lee, and the Third-Party Defendants)

66.    The ABA Plan Defendants incorporate Paragraphs 1 through 65 of this Third
Party-Complaint, Counterclaim and Cross-Claim as if fully set forth herein.

**ANSWER:**    Third Party Defendant Lewis Brothers incorporates its responses to paragraphs 1

through 65 as its answer to Paragraph 66.

67.    The 1979 PBGC Letter states that the Plan is an aggregation of single employer
plans for purposes of Title IV. Sara Lee seeks to make contributions to, and effect distributions
from the Plan according to the 1979 PBGC Letter.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the 2006 PBGC Letter speaks

for itself. Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to

form a belief as to the truth or falsity of the remaining allegations of Paragraph 67, and therefore

denies the remaining allegations of Paragraph 67.

68.    The 2006 PBGC Letter, on the other hand, concludes that the Plan is not an
aggregation of single employer plans but rather a multiple employer plan for purposes of Title
IV. On information and belief, several other Participating Employers seek to make contributions
to, and effect distributions from the Plan according to the 2006 PBGC Letter.

**ANSWER:**    Third Party Defendant Lewis Brothers states that the 2006 PBGC Letter speaks

for itself. Third Party Defendant Lewis Brothers lacks sufficient information or knowledge to

form a belief as to the truth or falsity of the remaining allegations of Paragraph 68, and therefore

denies the remaining allegations of Paragraph 68.

69.    The 2006 PBGC Letter is in conflict with Section 3.01 of the Trust Instrument,
Article XIII, Section 13.02 of the Plan Document, the Plan's termination provisions found in
Articles V and XI and other provisions of the Plan document, the Plan's Participation
Agreements with its Participating Employers, the Plan's previously received governmental
approvals, and the Plan's longstanding practice. ERISA mandates that the Trustees manage the
Plan according to its terms.

**ANSWER:**    Third Party Defendant Lewis Brothers admits the allegations of Paragraph 69.

70.    The contradictions between the positions contained in the 1979 PBGC Letter and the Plan documents on the one hand, and in the 2006 PBGC Letter on the other hand create an actual case or controversy that is properly before this Court.

**ANSWER:**    Third Party Defendant Lewis Brothers admits that the subject of this action constitutes an actual case or controversy.

71.    The Court can and should determine the continuing validity and effect, if any, of the Plan's governing documents in light of the 1979 PBGC Letter and 2006 PBGC Letter.

**ANSWER:**    Third Party Defendant Lewis Brothers admits the allegations of Paragraph 71.

### Count II - Violation of Fifth Amendment Right to Procedural Due Process (against Co-Defendant PBGC)

72.    The ABA Plan Defendants incorporate Paragraphs 1 through 71 of this Third Party Complaint, Counterclaim and Cross-Claim as if fully set forth herein.

**ANSWER:**    Third Party Defendant Lewis Brothers incorporates its responses to paragraphs 1 through 65 as its answer to Paragraph 72.

73.    On August 8, 2006, PBGC issued its 2006 Letter, in which it found the ABA Plan to be a multiple employer pension plan and revoked its prior 1979 Letter, in which it concluded that the Plan was an aggregate of single-employer pension plans under ERISA.

**ANSWER:**    The allegations in Paragraph 73 are not asserted against Third Party Defendant Lewis Brothers, and therefore no answer is required.

74.    ERISA § 4003(f)(1) permits any fiduciary who is adversely affected by any action of PBGC to bring an action against PBGC for appropriate equitable relief.    29 U.S.C. § 1303(f)(1).

**ANSWER:**    The allegations in Paragraph 74 are not asserted against Third Party Defendant Lewis Brothers, and therefore no answer is required.

75.    The ABA Plan Defendants have adversely been affected by PBGC's 2006 Letter, in that it subjects the Plan to uncertainty and has exposed the Plan and its Trustees to litigation.

**ANSWER:**    The allegations in Paragraph 75 are not asserted against Third Party Defendant Lewis Brothers, and therefore no answer is required.

76.    The PBGC's 2006 Letter was based on erroneous facts and information, and is in violation of the due process clause of the Fifth Amendment. The inquiry was conducted in an arbitrary and capricious manner, with no party understanding the process or having the opportunity to address and respond to arguments that may have been made by other interested parties.

**ANSWER:**    The allegations in Paragraph 73 are not asserted against Third Party Defendant Lewis Brothers, and therefore no answer is required.

### PRAYER FOR RELIEF

Third Party Defendant Lewis Brothers requests that this Court:

1.    Reverse the 2006 PBGC Letter and enjoin the PBGC from rescinding the 1979 PBGC Letter;

2.    Declare the rights and obligations of the ABA Plan Defendants in administering the Plan Document by affirming the positions of the 1979 PBGC Letter, and the Plan Document, Trust Instrument and Participation Agreements;

3.    Declare that the ABA Plan Defendants have violated the terms of the Plan Document and Third Party Defendant Lewis Brothers' Participation Agreement by using Third Party Defendant Lewis Brothers' contributions to the Trust to pay the benefits for employee-participants of other Participating Employers;

4.    Declare that the ABA Plan Defendants have violated the terms of the Plan Document by failing to enforce the Plan Document in accordance with its terms;

5.    Permanently enjoin the ABA Plan Defendants from violating the terms of the Plan Document;

6.    Permanently enjoin the ABA Plan Defendants from violating the Plan Document terms with respect to using Third Party Defendant Lewis Brothers' contributions to pay the benefits for employee-participants of other Participating Employers;

7.    Dismiss the Third Party Complaint;

8.    Award Third Party Defendant Lewis Brothers its reasonable attorneys' fees, costs and expenses under ERISA §§ 502(g)(1) and 4003(f)(3), 29 U.S.C. §§ 1132(g)(1) and 1303(f)(3); and

9.    Award such other relief as may be appropriate.

## LEWIS BROS. BAKERIES INC. CROSS-CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST PENSION BENEFIT GUARANTY CORPORATION AND COUNTERCLAIM AGAINST AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN

Lewis Brothers Bakeries, Inc. ("Lewis Brothers"), by and through its undersigned counsel, on its own behalf and on behalf of its employee-participants in the American Bakers Association Retirement Plan (the "ABA Plan"), for its Cross-Claim for declaratory and injunctive relief against Pension Benefit Guaranty Corporation ("PBGC") and a Counterclaim against ABA Plan and the Board of Trustees of the American Bakers Association Retirement Plan, as Administrator of the ABA Plan ("Board of Trustees"), states as follows:

## NATURE OF ACTION

1.    This is an action by Lewis Brothers, a Participating Employer and actual or functional fiduciary under the ABA Plan, seeking declaratory, injunctive and other equitable relief against the Board of Trustees. Among other things, this action seeks an Order that will compel the Board of Trustees to segregate all of the identifiable funds that are presently retained in the ABA Trust that are attributable to contributions to the ABA Plan made by Lewis Brothers for the benefit of its employees. It seeks a further Order compelling the Board of Trustees to maintain separate all such funds in a separate account, and otherwise to make such funds available for disposition by Lewis Brothers, and to abide by instructions given by Lewis Brothers, in its sole discretion, for the benefit of its employees, to transfer such segregated funds to such other benefit plan account as, in the future, Lewis Brothers may specifically direct. In

addition, this action seeks (i) to reverse and enjoin the PBGC's August 8, 2006 determination that the ABA Plan is a multiple employer pension plan and not an aggregate of single-employer pension plans under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); (ii) to challenge the acts and practices of the Board of Trustees that violate the terms of the ABA Plan, an employee benefit pension plan governed by ERISA; and (iii) if the PBGC's August 8, 2006 determination is upheld and the ABA Plan is determined to be a multiple employer pension plan, to challenge the Board of Trustees' breach of fiduciary duty for failing to administer the ABA Plan according to its terms that state it is to be administered as an aggregate of single-employer pension plans.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over Lewis Brothers' claim against the PBGC pursuant to ERISA Section 4003(f)(1), 29 U.S.C. § 1303(f)(1), and 28 U.S.C. § 1331.

3.    This Court has subject matter jurisdiction over Lewis Brothers' claims against the ABA Plan and the Board of Trustees pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

4.    Venue is exclusive to the District of Columbia on Lewis Brothers' claim against the PBGC pursuant to ERISA Section 4003(f)(2), 29 U.S.C. § 1303(f)(2), because the ABA Plan's principal office is located in this District and this District is a proper venue for all actions against the PBGC.

5.    Venue is proper in the District of Columbia on Lewis Brothers' claims against the ABA Plan and the Board of Trustees pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ABA Plan is administered in this District, the acts and practices violating the ABA Plan's terms occurred in this District and the ABA Plan and the Board of Trustees can be found in this District.

**PARTIES**

6.      Lewis Brothers is incorporated in the State of Missouri and has a principal place

of business in Evansville, Indiana.  Chicago Baking Company, an Illinois Corporation and

wholly-owned subsidiary of Third Party Defendant Lewis Brothers, is a Participating Employer

in the ABA plan. Chicago Baking Company contributes to the ABA plan on behalf of its eligible

employee-participants.  As a member of the American Bakers Association ("ABA"), Chicago

Baking Company is a Participating Employer in the ABA Plan.  As a Participating Employer,

Chicago Baking Company makes contributions to the ABA Plan for its eligible employee-

participants and has been accepted for participation in the ABA Plan by the Board of Trustees.

Lewis Brothers brings this suit as a functional fiduciary under the ABA Plan.  As a Participating

Employer, Lewis Brothers has the ability, right and authority to direct that funds maintained by

the Board of Trustees under the ABA Plan on behalf of employees of Lewis Brothers, to be

disposed by transfer of such funds to another benefit plan, as well as discretion to choose another

plan administrator or another plan and discretion to implement those choices, both under the

Plan, as described more specifically below, and under ERISA Section 4044, 29 U.S.C. § 1344.

Because Lewis Brothers has the ability, right and authority to dispose of identifiable funds

possessed by the Board of Trustees, and to choose another plan and another plan administrator,

Lewis Brothers is, for that limited purpose, a fiduciary under the ABA Plan.

7.      The Defendant ABA Plan is an employee pension benefit plan as defined by

ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A).  The ABA Plan is administered in the District

of Columbia, where the Chairman of the Board of Trustees resides and the ABA Plan's counsel-

the ABA Plan's registered agent for service of legal process-is located.  The ABA Plan's

principal office is located in the District of Columbia.

25

8.    The Defendant Board of Trustees is the ABA Plan's Named Fiduciary, within the meaning of ERISA Section 402(a)(2), 29 U.S.C. § 1102(a)(2).  Unless and until it is replaced, under the terms of the ABA Plan and ERISA, the Board of Trustees has the authority and responsibility under the ABA Plan to control and manage the ABA Plan's operation and administration, and under the American Bakers Association Retirement Trust (the "ABA Trust") to manage and control the ABA Plan's assets held in the ABA Trust.

9.    The Defendant PBGC is a corporation established by ERISA Section 4002, 29 U.S.C. § 1302, within the Department of Labor.  The PBGC is domiciled and maintains its principal office within the District of Columbia.

## FACTUAL AVERMENTS

### The Plan's Administration

10.    The ABA Plan was initially adopted effective as of October 1, 1961.  The ABA Plan was designed with the express purpose of providing Participating Employers with the benefit, including the cost savings, of centralized administration and investment management while ensuring that each Participating Employer remained singly responsible for the benefits paid under the ABA Plan to its employee-participants.

11.    The Board of Trustees is the ABA Plan's Named Fiduciary, as that term is defined by ERISA.  As such, under Section 2.01 of the ABA Plan, the Board of Trustees has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund.  (A true and correct copy of the 2002 Restatement of the ABA Plan's governing document is attached hereto as Exhibit 1).

12.    Under Section 2.02 of the ABA Plan, the Board of Trustees has the express duty under the Plan "[t]o enforce the Plan in accordance with its terms, and with the Board's own rules and regulations."  (*See* Exhibit 1 at 16).  Moreover, under Section 404(a)(1)(D) of ERISA,

29 U.S.C. § 1104(a)(1)(D), as the ABA Plan's named fiduciary, the Board of Trustees is required to discharge its duties with respect to the ABA Plan in the sole interest of its participants and beneficiaries and in accordance with the ABA Plan's governing documents.

13.    Under Section 11.02 of the ABA Plan, Lewis Brothers, as Participating Employer has the right to discontinue payments into the ABA Plan and cause a partial termination of the ABA Plan.  Upon such partial termination, the Board of Trustees is required to pay benefits under the ABA Plan in accordance with Sections 5.05 and 11.01 of the ABA Plan, among others. In the alternative, or as part of a partial termination of the Plan, Lewis Brothers has the ability to enter into agreements, like the Transfer Agreement concluded between the ABA Plan and Sara Lee Corporation, made as of August 30, 2005, to effectuate the transfer of identifiable assets held by the Board of Trustees from the ABA Plan to another plan created by Lewis Brothers or otherwise made available by Lewis Brothers to its employees.  In addition, Lewis Brothers has the discretion, upon such partial termination of the ABA Plan, to select another plan and another plan trustee and administrator, through which funds presently held by the ABA Plan may be kept and managed for the benefit of Lewis Brothers' employees, who are presently beneficiaries of the ABA Plan.  The ability, right and authority to cause such a disposition of assets held by the Board of Trustees for the benefit of Lewis Brothers employees, and the exercise of such discretionary authority, renders Lewis Brothers a fiduciary, within the meaning of ERISA Section 3(21)(A)(i), for the limited purpose of making such a change in plans or partially terminating the ABA Plan.

### The ABA Plan Is an Aggregate of Single-Employer Pension Plans

14.    Congress enacted ERISA in 1974.  Effective October 1, 1976, the ABA Plan was amended to satisfy the requirements of ERISA.  After the ABA Plan became subject to ERISA, the effort to retain, to the extent possible, the terms of the ABA Plan as they existed prior to

ERISA resulted in the creation of a rather unusual plan structure. Since October 1, 1976, the ABA Plan has been administered as an aggregate of single-employer pension plans rather than a multiple employer pension plan.

15.    In a determination dated June 21, 1979, the PBGC approved the structure of the ABA Plan when it decided that the ABA Plan constituted an aggregate of separate pension plans for purposes of Title IV of ERISA (the "1979 Determination"). (A true and correct copy of the 1979 Determination is incorporated into the ABA Plan as Exhibit A). *See* Exhibit 1 at Exhibit A. While the ABA Plan has been amended and restated several times since the 1979 Determination, most recently on November 9, 2001, it has remained committed to the fundamental concept that the ABA Plan is an aggregate of single-employer plans rather than a plan to which more than one employer contributes.

16.    Section 13.01 of the ABA Plan specifically states that the ABA Plan is intended to be an aggregate of single-employer pension plans:

> 13.01         Association of Single-Employer Plans. This Plan constitutes an association of single-employer plans designed to give the cost savings and other benefits of a tax-qualified plan, the administration in common of all associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants. That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes .... (*See* Exhibit 1 at 70).

**Each Single-Employer Plan Is To Provide Funding for Its Own Employee-Participants**

17.    Under the ABA Plan, at least as Lewis Brothers was lead to understand it would operate, as an aggregate of single-employer pension plans, each Participating Employer is a sponsor of a separate pension plan covering only its own employee-participants. Each Participating Employer's contributions to the ABA Plan are to be used to fund only the benefits

of its own employee-participants and each separate plan is administered in an aggregate fashion by the Board of Trustees for administrative convenience.

18.    Section 13.02 of the ABA Plan specifically states that contributions of each Participating Employer will be used only to provide benefits for its own employee-participants:

> 13.02   Each Single-Employer Plan to Provide Funds For Its Participants. Subject to the Plan's actuarial assumptions that the stated contribution amounts will produce the stated benefit amounts, *it is the fundamental concept and intent of this Plan that the contributions of each separate employer will be used only to provide benefits for Participants (and Beneficiaries thereof) by reason of such Participants' employment by such employer; and only contributions by such employer will be used to provide benefits for such Participants (and Beneficiaries).* (Emphasis supplied). (*See* Exhibit 1 at 70).

19.    Under Section 7.02 of the ABA Plan, the Board of Trustees may terminate a Participating Employer's participation in the ABA Plan if the Participating Employer fails to submit the full amount of its agreed upon contributions to the Fund:

> 7.02    Contribution Delinquencies. A Participating Employer's participation in the Plan may be terminated by the Board if the Participating Employer shall fail to pay such sums of money as shall have been agreed upon in the Participation Agreement between the Participating Employer and the Board in accordance with the rules of the Board for remitting such contributions." (*See* Exhibit 1 at 57).

20.    In the various Participation Agreements entered into by the Board of Trustees and the Participating Employers, the Participating Employers acknowledged that they accepted the ABA Plan as an association of single-employer plans

21.    At all times since 1976, when the ABA Plan was amended, as set forth above, Lewis Brothers continued to contribute to the ABA Plan in good faith reliance upon the understanding, created by the PBGC's 1979 Determination that the structure of the ABA Plan created and constituted an aggregate of separate pension plans for purposes of Title IV of ERISA, and not a multiple-employer pension plan. But for that understanding, Lewis Brothers would have acted differently and it would have exercised its discretion under the ABA Plan and

29

ERISA to transfer funds in the possession of the Board of Trustees to another plan and another plan trustee and administrator, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.

22.    At all times since 1976, when the ABA Plan was amended, as set forth above, Lewis Brothers continued to contribute to the ABA Plan in good faith reliance upon the understanding, created by the Board of Trustees, that the ABA Plan was being administered by the Board of Trustees in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans. Nothing that the Board of Trustees did or said to Lewis Bakeries, prior to 2006, caused Lewis Brothers to believe or suspect that the Board of Trustees were not operating the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans.  If, as the PBGC now asserts, the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, then the Board of Trustees violated the obligations that they owed, among others, under Articles II, VIII and XIII of the ABA Plan, and the obligation owed by the Board of Trustees to exercise the powers and functions described in the ABA plan with due care.  If Lewis Brothers had known, as alleged by the PBGC, that the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, then Lewis Brothers would have acted differently and it would have exercised its discretion under the ABA Plan and ERISA to transfer funds in the possession of the Board of

30

Trustees to another plan and another plan trustee and administrator, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.

23.    At all times since 1976, when the ABA Plan was amended, as set forth above, Lewis Brothers continued to contribute to the ABA Plan in good faith reliance upon the understanding, created by the Board of Trustees, that the ABA Plan was being administered by the Board of Trustees in a manner and in accordance with procedures adopted by the Board of Trustees that would ensure that all Participating Employers would be required to contribute funds for the benefit of their respective employees in such amounts, as determined by actuaries employed by the Board of Trustees for the ABA Plan, sufficient to cover all liability to all employees of each such Participating Employer under the ABA Plan.  Lewis Brothers believed, in good faith, that if any such Participating Employer was not paying to the Board of Trustees amounts sufficient to cover such liabilities to the employees of such Participating Employer, the Board of Trustees would have taken action, under the terms of Section 7.02 of the ABA Plan, among others, to terminate the participation of such Participating Employer in the ABA Plan, and that the Board of Trustees would otherwise act, consistent with their obligations under the ABA Plan, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would not be diverted, as contemplated by Section 8.02 of the ABA Plan, and that funds contributed by Lewis Brothers for the benefit of its employees be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.  If, as the PBGC now asserts, the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for

the creation and operation of an aggregate of separate pension plans, then the Board of Trustees did not act in accordance with the terms of the ABA Plan and they violated the duties that they owed, among others, under Sections 7.02, 8.02 and 13.02 of the ABA Plan. If Lewis Brothers had known that the Board of Trustees did not operate the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, as the PBGC now asserts, and that the Board of Trustees thus violated the duties that they owed, among others, under Sections 7.02, 8.02 and 13.02 of the ABA Plan, then Lewis Brothers would have acted differently and it would have exercised its discretion under the ABA Plan and ERISA to transfer funds in the possession of the Board of Trustees to another plan and another plan trustee and administrator, to ensure that funds contributed by Lewis Brothers for the benefit of its employees would be fully protected against distribution to persons or entities who were not employed by Lewis Brothers, either directly or indirectly.

### The Board of Trustees Has Paid the Benefits for the Employee-Participants of Certain Participating Employers with the Contributions Attributable to Lewis Brothers and Other Participating Employers

24.    On or about June 17, 2005, the Board of Trustees approved a report by the ABA Plan's actuary related to the ABA Plan's financial status effective as of September 30, 2004 (the "2005 Plan Asset Report"). The 2005 Plan Asset Report listed, by Participating Employer, the contributions, administrative expenses, investment income, reallocations received due to terminated employers and fund balance for each Participating Employer.

25.    In the 2005 Plan Asset Report, the ABA Plan's actuary reported that four of the seven active Participating Employers maintained negative balances in the ABA Trust. This meant that the four Participating Employers' investment income and contributions paid to the

ABA Trust were less than their administrative expenses and the amount of benefits the Board of Trustees paid to their respective employee-participants.

26.    In 2005, Lewis Brothers' asset balance was close to $9 million dollars. In 2004, Lewis Brothers was the only participating employer to retain a positive balance minus its liability. Lewis Brothers' 2004 asset balance was over $8 million dollars and its liability was just over $5 million dollars— leaving a net positive balance of close to $3 million dollars.

27.    By permitting the four Participating Employers to maintain a negative ABA Trust balance as of October 1, 2004, the Board of Trustees would have used and diverted identifiable ABA Trust funds contributed by Lewis Brothers for the benefit of its employees (and its employees alone), as well as the contributions of two other Participating Employers, to make benefit payments for the employee-participants of the four Participating Employers that the Board of Trustees allowed to maintain negative balances. The diversion of funds contributed by Lewis Brothers for the sole benefit of its employees in order to pay benefits to employee-participants of the four Participating Employers that the Board of Trustees allowed to maintain negative balances, would have violated, among other things, Sections 7.02 and 8.02 of the ABA Plan.

### The PBGC Reverses Its Position on the Nature of the ABA Plan

28.    On or about June 24, 2005, the PBGC received a formal request to reconsider its 1979 Determination from one or more of the ABA Plan's Participating Employers that maintained negative account balances under the ABA Plan's trust.

29.    The PBGC provided the ABA Plan and any Participating Employer in the ABA Plan the opportunity to submit a position statement on the issue whether the ABA Plan is a multiple employer pension plan or an aggregate of single-employer pension plans. The position statements were to be filed on or about November 1, 2005. On information and belief, the PBGC

33

ultimately received position statements from the ABA Plan as well as three Participating Employers in the ABA Plan, including Lewis Brothers.

30.    On August 8, 2006, the PBGC issued a determination completely reversing its 1979 Determination that the ABA Plan was an aggregate of single-employer pension plans under ERISA and stating its new position that the ABA Plan is, and always has been, a multiple-employer pension plan (the "2006 Determination").  (A true and correct copy of the August 8, 2006 determination letter is attached hereto as Exhibit 2).  In the 2006 Determination, the PBGC determined that, in its view, the ABA Plan has been consistently administered as a multiple employer pension plan notwithstanding the fact that the governing plan document specifically states that it is intended to be an aggregate of single-employer pension plans.

31.    Specifically, in the 2006 Determination, the PBGC failed to consider that the ABA Plan's governing document specifically provides that each Participating Employer's contributions to the ABA Plan are to be used only to provide benefits for their own employee-participants and not for the payment of benefits for other the employee-participants of other Participating Employers.  Further, the PBGC failed to recognize that since the ABA Plan's adoption, when Participating Employers ceased to contribute and thus terminated their participation in the ABA Plan, the vast majority of terminations were administered as standard single-employer plan terminations and not as withdrawals from a multiple employer plan.

32.    The PBGC also stated in the 2006 Determination that, due to the exigencies of the matter, its determination would be effective immediately upon its date of issuance and that there is no obligation for any party aggrieved by this determination to exhaust its administrative remedies with respect to the 2006 Determination, either by seeking reconsideration by the PBGC or by filing an administrative appeal.

33.    The PBGC's decision to make the 2006 Determination effective immediately essentially terminated the rights of any aggrieved party, including Lewis Brothers, to file an administrative appeal, which would permit the parties to more fully develop the factual record and for any aggrieved party to challenge the PBGC's findings administratively before resort to litigation in this Court. Instead, to challenge the PBGC's 2006 Determination, Lewis Brothers is left without any other recourse but to file the instant cross-claim/counterclaim without proper factual development at the agency-level.

### CLAIMS FOR RELIEF

### COUNT I - Claim for Judicial Review of PBGC's 2006 Determination on Status of ABA Plan under ERISA Section 4003(f) against Defendant PBGC

34.    Lewis Brothers incorporates paragraphs 1 through 33 of this cross-claim/counterclaim as if fully set forth herein.

35.    On August 8, 2006, the PBGC issued its 2006 Determination, in which it found the ABA Plan to be a multiple employer pension plan and rescinded its prior 1979 Determination, in which the PBGC concluded that the ABA Plan was an aggregate of single-employer pension plans under ERISA.

36.    ERISA Section 4003(f), 29 U.S.C. § 1303(f), permits any person or party who is a fiduciary, employer, contributing sponsor, member of a contributing sponsor's controlled group, participant, or beneficiary, and is adversely affected by any action of the PBGC with respect to a plan in which such party has an interest, to bring an action against the PBGC for appropriate equitable relief in the appropriate court.

37.    Lewis Brothers brings this cross-claim against the PBGC under ERISA Section 4003(f), 29 U.S.C. § 1303(f), as a Participating Employer under the ABA Plan and on behalf of its employee-participants, which are participants in the ABA Plan, and as a fiduciary and

functional fiduciary, within the meaning of ERISA, for the limited purposes described in paragraph 6, above.

38.    Lewis Brothers brings this cross-claim against PBGC under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 as a real party in interest in the litigation.

39.    This cross-claim is filed in an appropriate court under ERISA Section 4003(f), 29 U.S.C. § 1303, because the District of Columbia is an appropriate statutory venue and the ABA Plan's principal offices are located in the District of Columbia.

40.    Lewis Brothers seeks appropriate equitable and declaratory relief from the Court in the form of a declaration and injunction reversing the PBGC's decision in the 2006 Determination that the ABA Plan is a multiple employer pension plan because that decision is arbitrary, capricious and incorrect as a matter of law.

41.    The PBGC's determination in the 2006 Determination should also be reversed as arbitrary, capricious and incorrect as a matter of law because the PBGC is subject to a conflict of interest, as the PBGC will receive a significant financial benefit as a result of its decision to reverse its 1979 Determination that the ABA Plan is an aggregate of single-employer pension plans, and the PBGC should not be permitted to reverse a determination after the fact when it becomes financially beneficial for the PBGC to do so.

**WHEREFORE**, Lewis Brothers, on its own behalf and on behalf of its employee-participants in the ABA Plan, requests that this Court grant the following relief:

(1)    A declaration that the PBGC's August 8, 2006 determination that the ABA Plan is a multiple employer pension plan and not an aggregate of single-employer pension plans to be arbitrary, capricious and incorrect as a matter of law;

(2)     A declaration that, by acting procedurally in the manner that it did, and by failing to provide Lewis Brothers with adequate notice and opportunity to be heard, and from taking an administrative appeal, the PBGC acted in violation of applicable law;

(3)     Reversal of the PBGC's August 8, 2006 determination;

(4)     A permanent injunction, restraining and enjoining the PBGC from rescinding its 1979 Determination, or from making any other determination that the ABA Plan is not an aggregate of single-employer pension plans; and

(5)     Such other and further relief as to the Court may seem appropriate.

**COUNT II - Claim for Enforcement of ABA Plan Terms and Transfer Agreement under ERISA Section 502(a)(3) against Defendants ABA Plan and Board of Trustees**

42.     Lewis Brothers incorporates paragraphs 1 through 41 of this cross-claim/counterclaim as if fully set forth herein.

43.     Lewis Brothers brings this claim under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

44.     Lewis Brothers also brings this cross-claim against PBGC under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 as a real party in interest in the litigation, having sustained a real injury as a result of the actions and inactions of the Board of Trustees described above and below.

45.     Lewis Brothers brings this claim as and is a fiduciary, within the meaning of ERISA, for the limited purposes described in paragraph 6, above.  Among other things, as a fiduciary and a functional fiduciary with respect to the ABA Plan, for the limited purposes

37

described above, and as a Participating Employer, Lewis Brothers has standing and authority to enforce the terms of the ABA Plan, and to seek remedies for violation of the ABA Plan.    In particular, among other things, Lewis Brothers has standing and authority under Section 11.03 of the ABA Trust, which states:

> Participating Employers shall have the authority, either jointly or severally, to enforce this Trust on behalf of the persons having or claiming any interest in the Fund. In any action or proceeding affecting the Fund or the administration thereof or for instructions to the Board, the Association and the Board shall be the only necessary parties, and no Participating Employer or employees or former employees of any Participating Employer or their beneficiaries or any other person having or claiming to have an interest in the Fund shall be entitled to any notice of process, and any judgement that may be entered in such action or proceeding shall be binding on all persons having or claiming to have any interest in the Fund. (A copy of the ABA Trust is attached hereto as Exhibit 3).

46.    Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers.

47.    Lewis Brothers was one of only three active Participating Employers in the ABA Plan that maintained a positive balance in the ABA Trust as of October 1, 2004.

48.    If, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan by using and diverting funds contributed by Lewis Brothers solely for the benefit of its employees to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust.

49.     If, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the Defendants ABA Plan and the Board of Trustees have also violated the terms of Section 2.02 of the ABA Plan by failing to enforce the ABA Plan in accordance with its terms.

50.     If, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the, then the Defendants ABA Plan and the Board of Trustees therefore should be enjoined from continuing to violate the ABA Plan's terms and should be directed to require all Participating Employers to fulfill their benefit contribution requirements under the ABA Plan and their Participation Agreements and maintain positive balances in the ABA Trust so that their own contributions will be used to pay the benefits due to their respective employee-participants.

51.     In addition, if, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that did not comply in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the, then the Defendants ABA Plan and the Board of Trustees should be enjoined and compelled to segregate all of the funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees; they should be enjoined and compelled to maintain separate all such funds in a separate account; and they should be enjoined and compelled otherwise to make

such funds available for disposition by Lewis Brothers, in the sole discretion of Lewis Brothers, in accordance with instructions given by Lewis Brothers, for the benefit of its employees, to transfer such segregated funds to such other benefit plan account as, in the future, Lewis Brothers may specifically direct.

**WHEREFORE**, Lewis Brothers, on its own behalf and on behalf of its employee-participants in the ABA Plan, requests that this Court grant the following relief:

(1)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are found to have operated the ABA Plan in a manner that failed to comply in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, operated the ABA Plan as a multiple-employer plan, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

(2)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are required to use and divert contributed by Lewis Brothers solely for the benefit of its employees to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

(3)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from violating the terms of the ABA Plan, and prohibiting the Defendants ABA Plan and Board of Trustees from taking any action, or from refraining to take any action, the effect of which will be to enable a Participating Employer to avoid, delay or otherwise fail to comply with the obligations to make benefit contributions under and consistent with the ABA

Plan and their Participation Agreements, that will be sufficient in amount to maintain a positive balance in the ABA Trust for the benefit of the employees of each such Participating Employer (without regard to any other), so that the contributions made by each such Participating Employer will be used solely to pay benefits due to its own employee-participants and not to or for the benefit of any other person;

(4)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to segregate all of the funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees;

(5)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to maintain all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees in a separate account;

(6)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to make all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees available for disposition by Lewis Brothers, in the sole discretion of Lewis Brothers, in accordance with instructions given by Lewis Brothers, for the benefit of its employees, and from failing to transfer such segregated funds to such other benefit plan account as, in the future, Lewis Brothers may specifically direct.

(7)    Such other appropriate equitable relief under ERISA and further relief under 28 U.S.C. § 2202 as to the Court may seem necessary, in order to ensure that Defendants enforce

the ABA Plan's for all Participating Employers, including Lewis Brothers, and for all Plan Participants and Beneficiaries, including the employees of Lewis Brothers;

(8)     Reasonable attorneys' fees and court costs as a prevailing party under ERISA Section 502(g), 29 U.S.C. § 1 132(g); and

(9)     Such other and further relief as to the Court may seem appropriate.

### COUNT III - In the Alternative, Claim for Breach of Fiduciary Duty under ERISA Section 502(a)(3) against Defendants ABA Plan and Board of Trustees

52.     Lewis Brothers' incorporates paragraphs 1 through 51 of this cross-claim/counterclaim as if fully set forth herein.

53.     Lewis Brothers' brings this claim under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

54.     Lewis Brothers' brings this claim as a fiduciary and functional fiduciary under the ABA Plan and Participating Employer under Section 11.03 of the ABA Trust, as described more specifically above.

55.     Lewis Brothers brings this cross-claim against PBGC under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 as a real party in interest in this litigation.

56.     Section 13.01 of the ABA Plan specifically states that the ABA Plan is to be administered as an aggregate of single-employer pension plans:

13.01     Association of Single-Employer Plans.     This Plan constitutes an association of single-employer plans designed to give the cost savings and other benefits of a tax-qualified prototype plan, the administration in common of all the associated plans (including, but not limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of

investment managers or advisers and pension consultants. That the Plan is, and is to be treated as, "an aggregate or separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes (*see* Exhibit 1 at Exhibit A).

57.    Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers.

58.    Further, the termination provisions in Article XI of the ABA Plan provide that when a Participating Employer ceases contributing to the ABA Plan or terminates its business, the termination will be treated as a termination of a single-employer pension plan. In addition, if the ABA Plan as a whole terminates, then each Participating Employer's portion of the ABA Plan will be treated as a termination of a single employer pension plan. Put another way, when a single Participating Employer's plan terminates or the ABA Plan as whole terminates, each Participating Employer's contributions will be used to pay only the benefits of its own employee-participants and the Participating Employer will not suffer any withdrawal liability that would require the terminating Participating Employer to fund any benefits for the employee-participants of any other Participating Employer remaining in the ABA Plan.

59.    Section 2.01 of the ABA Plan states that the Board of Trustees is the Named Fiduciary of the ABA Plan and has the authority and responsibility to administer the ABA Plan in accordance with the terms of the ABA Plan's governing document. Under Article 2 of the ABA Plan, the Board of Trustees owes duties to Participating Employers, and to their employees, including the fiduciary duty of care.

60.    In its 2006 Determination, the PBGC determined that the ABA Plan has always been administered as a multiple employer pension plan and not as an aggregate of single-employer pension plans. *See* Exhibit 3.

61.    If the Court upholds and affirms the PBGC's 2006 determination that the ABA Plan is a multiple employer pension plan because it has been administered as a multiple employer pension plan and not as an aggregate of single-employer pension plans, then the Defendant Board of Trustees breached its fiduciary duties, including the duty of care that it owed both to Lewis Brothers and to its employee-participants, by failing to administer the ABA Plan according to its terms, as required by the governing documents, as an aggregate of single-employer pension plans. In addition, under such circumstances, the Defendant Board of Trustees violated the terms of the various Participation Agreements entered into by the Board of Trustees and the Participating Employers, including Lewis Brothers.

62.    If the PBGC's 2006 Determination is upheld, the Board of Trustees' failure to administer the ABA Plan as an aggregate of single employer pension plans will result in the use and diversion of funds contributed by Lewis Brothers solely for the benefit of its own employees, to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust. Such use and diversion of funds held by the ABA Trust for the benefit of Lewis Brothers' employees will violate, among other things, Sections 7.02, 8.02 and 13.02 of the ABA Plan, and it will constitute a breach of the duties owed by the Board of Trustees under Section 2.02 of the ABA Plan, as well as the duty of care owed by the Board of Trustees, both to Lewis Brothers and its employees. The use and diversion of funds contributed by Lewis Brothers solely for the benefit of its own employees, to pay the benefits and administrative expenses for employee-

participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust, will wrongfully result in the imposition of financial liability on Lewis Brothers, under the terms of the ABA Plan, to make additional contributions for the benefit of its own employees, in order to fulfill the contribution requirements imposed upon Lewis Brothers under the ABA Plan.

**WHEREFORE**, Lewis Brothers, on its own behalf and on behalf of its employee-participants in the ABA Plan, requests that this Court grant the following relief:

(1)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are found to have operated the ABA Plan in a manner that failed to comply in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, operated the ABA Plan as a multiple-employer plan, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

(2)    A declaration that Defendants ABA Plan and Board of Trustees have violated the terms of Section 13.01 of the ABA Plan by failing to administer the ABA Plan by its own terms, which state that the ABA Plan is to be administered as an aggregate of single-employer pension plans;

(3)    A declaration that the Defendants ABA Plan and Board of Trustees have violated the terms of Section 2.02 of the ABA Plan by failing to administer the ABA Plan in accordance with its terms;

(4)    A declaration that the Defendants ABA Plan and Board of Trustees breached their ERISA-based fiduciary duties to Lewis Brothers and its employee-participants by failing to

administer the ABA Plan according to its terms as an aggregate of single-employer pension plans;

(5)    A declaration that, to the extent the Defendants ABA Plan and Board of Trustees are required to use and divert contributed by Lewis Brothers solely for the benefit of its employees to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust, the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan;

(6)    An accounting of all funds presently in the possession of the ABA Plan and Board of Trustees;

(7)    The imposition of a constructive trust on such portion of the ABA Plan assets as are identifiable contributions made by Lewis Brothers for the benefit of its own employees;

(8)    The imposition of a constructive trust on such other assets that may be in the possession of the ABA Plan and Board of Trustees that are not identifiable contributions of any Participating Employer, for the benefit of Lewis Brothers, to satisfy any liability that may hereafter be imposed upon the ABA Plan and Board of Trustees, or upon Lewis Brothers, for or as a result of any losses, liabilities or damages that Lewis Brothers may suffer, as a result of the failure of the Defendants ABA Plan and Board of Trustees to operate and administer the ABA Plan as an aggregate of single-employer pension plans;

(9)    A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from violating the terms of the ABA Plan, and prohibiting the Defendants ABA Plan and Board of Trustees from taking any action, or from refraining to take any action, the effect of which will be to enable a Participating Employer to avoid, delay or otherwise fail to

comply with the obligations to make benefit contributions under and consistent with the ABA Plan and their Participation Agreements, that will be sufficient in amount to maintain a positive balance in the ABA Trust for the benefit of the employees of each such Participating Employer (without regard to any other), so that the contributions made by each such Participating Employer will be used solely to pay benefits due to its own employee-participants and not to or for the benefit of any other person;

(10)     A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to segregate all of the funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees;

(11)     A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to maintain all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees in a separate account;

(12)     A permanent injunction, enjoining and restraining the Defendants ABA Plan and Board of Trustees from failing to make all funds that are presently retained in the ABA Trust that are attributable to contributions under the ABA Plan made by Lewis Brothers for its employees available for disposition by Lewis Brothers, in the sole discretion of Lewis Brothers, in accordance with instructions given by Lewis Brothers, for the benefit of its employees, and from failing to transfer such segregated funds to such other benefit plan account as, in the future, Lewis Brothers may specifically direct.

(13)     Such other appropriate equitable relief under ERISA and further relief under 28 U.S.C. § 2202 as to the Court may seem necessary, in order to ensure that Defendants enforce

the ABA Plan for all Participating Employers, including Lewis Brothers, and for all Plan Participants and Beneficiaries, including the employees of Lewis Brothers;

(14)    Reasonable attorneys' fees and court costs as a prevailing party under ERISA Section 502(g), 29 U.S.C. § 1132(g); and

(15)    Such other and further relief as to the Court may seem appropriate.


Respectfully submitted,

LEWIS BROTHERS BAKERIES, INC.


By:    ___/s/ D. Christopher Ohly_____
One of Its Attorneys


D. Christopher Ohly
D.C. Bar # 486370
Roger Pascal
Schiff Hardin LLP
1666 K Street, N.W.
Washington, D.C. 20006
(202) 778-6458
(202) 778-6460 (facsimile)
dcohly@schiffhardin.com