## ARTICLE VI

### PAYMENT OF RETIREMENT BENEFITS

6.01 <u>Benefit Commencement Dates</u>. Benefit payments to each Participant who Retires on a Normal, Deferred, or Early Retirement Date (under Sections 4.01 to 4.03 hereof inclusive) shall commence as of the later of the first of the month next following his said Retirement date or the first of the month next following the date which is 60 days prior to his written application for the Retirement benefit. Deferred nonforfeitable benefit payments shall commence as set forth in Section 4.05 hereof. In no event shall any benefit payments commence later than the first day of April of the year following the later of

(a) the calendar year in which the Participant attains age 70 ½ or

(b) the calendar year in which the Participant retires;

<u>except that</u> distribution to a five percent (5%) owner must commence by April 1 of the year following the calendar year in which such Participant attains age 70 ½.

Such Retirement benefit payments to a Participant, once commenced, shall continue to be paid monthly for the remainder of Participant's life. Any benefit payments payable to his surviving spouse shall commence as of the first day of the month next following the month in which Participant's death occurs or the benefit commencement date if Participant is not living, and shall continue to be paid monthly for the remainder of such spouse's life. Any benefit payments payable to a Beneficiary other than his spouse after Participant's death shall be paid in equal monthly payments commencing on the first day of the month next following the month in which Participant's death occurs, or on the benefit commencement date if Participant is not living, and shall continue to be paid until the 60th such payment or the payment next preceding the earlier death of such Beneficiary.

6.01.1   <u>Benefit Commencement Date - Qualified Pre-Retirement Survivor Annuity</u>.   Payment of a Qualified Pre-Retirement Survivor Annuity to a surviving spouse shall commence on the later of a) the first of the month next following the date on which the Participant would have attained age 55 but for his death, or if the Participant dies after attaining age 55, on the first of the month next following the date of the Participant's death; or b) the first of the month next following the date which is 60 days prior to the Survivor's written application for the survivor benefit.

6.02 <u>Disability Payments</u>.   Benefit payments to each Participant who retires by reason of Disability on a Disability Retirement Date shall commence as of the later of the first day of the month next following the month in which the Participant becomes eligible therefor or the first of the month next following the date which is 60 days prior to his written application for the Disability Retirement Benefit and shall be payable on the first day of each month thereafter until the first to occur of:

(a)   his recovery from Disability,

(b)   his Normal Retirement Date, or

(c)   his death.

Whether or not a Participant has recovered from Disability shall be determined finally and conclusively by the Board using such information as it shall require.  To make such determination, the Board may require the Participant to furnish at any time and from time to time such medical or other evidence as it may request, provided, however, that such evidence may not be requested more often than semi-annually.  No monthly disability payment shall be payable with respect to any period during which the Board has declared the Participant recovered.  No disability benefit shall be payable hereunder to a Participant who is not in active service with an employer participating in this Plan at the time said Participant becomes Disabled.

6.03 <u>Employment After Retirement</u>. If a Participant who is Retired and receiving a retirement benefit (other than a Disability benefit) is re-employed by any Participating Employer

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

42

or Affiliate thereof, he shall continue to receive such retirement benefit during such re-employment. When his re-employment is terminated, his retirement benefit shall be redetermined in accordance with the Plan, subject to the following:

a) such redetermination shall take into account additional Credited Service attributable to the re-employment period and any change that may have occurred in the Rate of Contribution during the re-employment period that is applicable to him; and

b) such benefit as so determined shall be reduced by amounts determined by the Board to be the actuarial equivalent of such retirement benefits as may theretofore have been paid him under the Plan;

provided, however, that in no event shall such benefit, as so redetermined and as so reduced, be less, in actuarial equivalent, than the benefit he was receiving at the end of such re-employment period.

6.04 Effect of Amendments to Plan Changing Benefits. All rights and benefits, if any, provided under the Plan or Former Plan for any Participant or the Beneficiary of any Participant shall be determined under the terms and provisions of the Plan or Former Plan as they exist at the time such Participant's service with his Participating Employer terminates, whether by death, retirement, resignation, discharge or otherwise, and such benefits, so determined and fixed, shall not be changed by amendments to the Plan effective after such termination of service unless Section 6.03 hereof is applicable; provided, however, that the benefit payable immediately prior to October 1, 1982, under this Plan to:

(a) each Retirement Participant in pay status,

(b) each Beneficiary in pay status of a deceased Participant, and

(c) each Participant who is no longer employed by a Participating Employer but who is entitled to a vested

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

43

benefit to commence in the future pursuant to Section 4.05 hereof,

shall be increased by 9.375% from and after October 1, 1982 if the Participant referred to in each of (a), (b) and (c) above was, immediately before the time of his retirement or other separation from service, the employee of a Participating Employer which continued to make contributions as a Participating Employer on October 1, 1982.

6.05 Limitation on Benefits

(a)(1)    This section, except for subsection (a)(3), applies regardless of whether any Participant is or has ever been a Participant in another qualified plan maintained by the Participating Employer. For limitation years beginning before January 1, 2000, If any Participant is or has ever been a Participant in another qualified plan maintained by the Employer, or a welfare benefit fund, as defined in section 419(3) of the Code, maintained by the Employer, or an individual medical account, as defined in section 415(1)(2) of the Code, which provides an annual addition as defined in subsection (d), subsection (b) is also applicable to that Participant's benefits.

(a)(2)    The annual benefit otherwise payable to a Participant at any time will not exceed the maximum permissible amount. If the benefit the Participant would otherwise accrue in a limitation year would produce an annual benefit in excess of the maximum permissible amount, the rate of accrual will be reduced so that the annual benefit will equal the maximum permissible amount.

(a)(3)    The limitation in subsection (a)(1) is deemed satisfied if the annual benefit payable to a Participant is not more than $1,000 multiplied by the Participant's number of years of service or parts thereof (not to exceed 10) with the Employer, and the Employer has not at any time maintained a defined contribution plan, a welfare benefit plan as defined in section 419(e) of the Code, or an individual medical account as defined in section 415(1)(2) of the Code in which such Participant participated.

(b)(1)    For limitation years beginning before January 1, 2000, this section applies if any Participant is covered, or has ever been covered, by another plan maintained by the Employer, including a qualified plan, a welfare benefit fund, as defined in section 419(e) of the Code, or an individual medical account, as defined in section 415(1)(2) of the Code, which provides an annual addition as described in subsection (d).

(b)(2)    If a Participant is, or has ever been, covered under more than one defined benefit plan maintained by the employer, the sum of the Participant's annual benefits from all such plans may not exceed the maximum permissible amount.

(b)(3)    For limitation years beginning before January 1, 2000, if the Employer maintains, or at any time maintained, one or more qualified defined contribution plans covering any Participant in this plan, a welfare benefit fund, as defined in section 419(e) of the Code, or an individual medical account as defined in section 415(1)(2) of the Code, the sum of the Participant's defined contribution fraction and defined benefit fraction will not exceed 1.0 in any limitation year, and the annual benefit otherwise payable to the Participant under this plan will be limited in accordance with this Section 6.05.

(c)(1)    In the case of an individual who was a participant in one or more defined benefit plans of the employer as of the first day of the first limitation year beginning after December 31, 1994, the application of the limitations of this article shall not cause the maximum permissible amount for such individual under all such defined benefit plans to be less than the individual's Retirement Protection Act of 1994 old law benefit.  The preceding sentence applies only if such defined benefit plans met the requirements of Section 415 of the Internal Revenue Code on December 7, 1994.

(d)        Definitions.

(d)(1)    Annual additions:  The sum of the following amounts credited to a Participant's account for the limitation year:

(i)        employer contributions;
(ii)       employee contributions;

(iii)     forfeitures; and

(iv)     Amounts allocated to an individual medical account, as defined in section 415(1)(2) of the Code, which is part of a pension or annuity plan maintained by the employer are treated as annual additions to a defined contribution plan.  Also, amounts derived from contributions paid or accrued after December 31,1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits allocated to the separate account of a key employee, as defined in section 419A(d)(3) of the Code, under a welfare benefit fund, as defined in section 419(e) of the Code, maintained by the employer, are treated as annual additions to a defined contribution plan.

(d)(2)     Annual benefit:     For limitation years beginning before January 1, 1995, such actuarially equivalent straight life annuity is equal to the greater of the annuity benefit computed using the interest rate specified in the plan for adjusting benefits in the same form or 5 percent.  For limitation years beginning after December 31, 1994, the actuarially equivalent straight life annuity is equal to the greater of the annuity benefit computed using the interest rate and mortality table (or other tabular factor) specified in the plan for adjusting benefits in the same form, and the annuity benefit computed using a 5 percent interest rate assumption and the applicable mortality table defined in section 5.06(f)of the plan.  In determining the actuarially equivalent straight life annuity for a benefit form other than a nondecreasing annuity payable for a period of not less than the life of the participant (or, in the case of a qualified pre-retirement survivor annuity, the life of the surviving spouse), or decreases during the life of the participant merely because of (a) the death of the survivor annuitant (but only if the reduction is not below 50% of the annual benefit payable before the death of the survivor annuitant), or (b) the cessation or reduction of Social Security supplements of qualified disability payments (as defined in § 401(a)(11), "the applicable interest rate", as defined in section 5.06(f)of the plan, will be substituted for "a 5 percent interest rate assumption" in the preceding sentence.

The annual benefit does not include any benefits attributable to employee contributions or rollover contributions, or the assets transferred from a qualified plan that was not maintained by the employer.

(d)(3)    Compensation: A Participant's earned income, wages, salaries, and fees for professional services, and other amounts received for personal services actually rendered in the course of employment with the Employer maintaining the plan (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips and bonuses), and excluding the following:

(A)    Employer contributions to a plan of deferred compensation which are not included in the employee's gross income for the taxable year in which contributed or employer contributions under a simplified employee pension plan to the extent such contributions are deductible by the employee, or any distributions from a plan of deferred compensation;

(B)    Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(C)    Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(D)    Other amounts which received special tax benefits, or contributions made by the Employer (whether or not under a salary reduction agreement) towards the purchase of an annuity described in section 403(b) of the Code (whether or not the amounts are actually excludable from the gross income of the employee).

Compensation for any limitation year is the compensation actually paid or includable in gross income during such year. For limitation years beginning after December 31, 1997, for purposes of applying the limitations of this article, compensation paid or made available during such limitation year shall include any elective deferral (as defined in Code §402(g)(3)), and any amount which is contributed or deferred by the employee at the election of the employee and which is not includable in the gross income of the employee by reason of Section 125 or 457.

(d)(4)    Current accrued benefit.    A Participant's accrued benefit under the plan, determined as if the Participant had separated from service as of the close of the last limitation year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of 415(b)(2) of the Code.    In determining the amount of a Participant's current accrued benefit, the following shall be disregarded:

(i)    any change in the terms and conditions of the plan after May 5, 1986; and

(ii)    any cost of living adjustments occurring after May 5, 1986.

(d)(5)    Defined benefit dollar limitation: $90,000. Effective on January 1, 1988, and each January thereafter, the $90,000 limitation above will be automatically adjusted by multiplying such limit by the cost of living adjustment factor prescribed by the Secretary of the Treasury under section 415(d) of the Code in such manner as the Secretary shall prescribe.    The new limitation will apply to limitation years ending within the calendar year of the date of the adjustment.

(d)(6)    Defined benefit fraction:    A fraction, the numerator of which is the sum of the Participant's projected annual benefits under all the defined benefit plans (whether or not terminated) maintained by the employer, and the denominator of which is the lesser of 125 percent of the dollar limitation determined for the limitation year under sections 415(b)(1)(A) and (d) of the Code or 140 percent of the higher average compensation, including any adjustments under section 415(b)(5) of the Code, both in accordance with Section (d)(11) below.

Notwithstanding the above, if the Participant was a Participant as of the first day of the first limitation year beginning after December 31, 1986, in one or more defined benefit plans maintained by the employer which were in existence on May 6, 1986, the denominator of this fraction will not be less than 125 percent of the sum of the annual benefits under such plans which the Participant had accrued as of the close of the last limitation year beginning before January 1, 1987, disregarding any changes in the terms and conditions of the plans after May 5, 1986.    The preceding sentence applies only if the defined benefit plans individually and in the aggregate satisfied the require-

ments of section 415 for all limitation years beginning before January 1, 1987.

(d)(7)    Defined contribution fraction: A fraction, the numerator of which is the sum of the annual additions to the Participant's account under all the defined contribution plans (whether or not terminated) maintained by the Employer for the current and all prior limitation years (including the annual additions attributable to the Participant's nondeductible employee contributions to all other defined benefit plans (whether or not terminated) maintained by the Employer, and the annual additions attributable to all welfare benefit funds, as defined in section 419(e) of the Code or individual medical accounts, as defined in section 415(1)(2) of the Code, maintained by the employer), and the denominator of which is the sum of the maximum aggregate amounts for the current and all prior limitation years of service with the Employer (regardless of whether a defined contribution plan was maintained by the Employer). The maximum aggregate amount in any limitation year is the lesser of (1) 125 percent of the dollar limitation under Code Section 415 (c)(1)(A) after adjustment under Code Section 415(d), or (2) 35 percent of the participant's compensation for such year.    The annual addition for any limitation year beginning before January 1, 1987 shall not be recomputed to treat all employee contributions as annual additions.

If the Employee was a Participant as of the first day of the first limitation year beginning after December 31, 1986, in one or more defined contribution plans maintained by the Employer which were in existence on May 6, 1986, the numerator of this fraction will be adjusted if the sum of this fraction and the defined benefit fraction would otherwise exceed 1.0 under the terms of this plan.  Under the adjustment, an amount equal to the product of (1) the excess of the sum of the fractions over 1.0 times (2) the denominator of this fraction, will be permanently subtracted from the numerator of this fraction.  The adjustment is calculated using the fractions as they would be computed as of the end of the last limitation year beginning before January 1, 1987, and disregarding any changes in the terms and conditions of the plans made after May 5, 1986, but using the section 415 limitation applicable to the first limitation year beginning on or after January 1, 1987.

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

The annual addition for any limitation year beginning before January 1, 1987, shall not be recomputed to treat all employee contributions as annual additions.

(d)(8)    Employer:  For purposes of this section, employer shall mean the Employer that enters into a Participation Agreement pursuant to which the Employer makes contributions to this Plan, and all members of a controlled group of corporations (as defined in section 414(b) of the Code, as modified by section 415)h)), all commonly controlled trades or businesses (as defined in section 414(c) as modified by section 415(h)), or affiliated service groups (as defined in section 414(m)) of which the Participating Employer is a part, and any other entity required to be aggregated with the Employer pursuant to regulations under section 414(o) of the Code.

(d)(9)    Highest average compensation:  The average compensation for the three consecutive years of service with the Employer that produces the highest average.  A year of service with the Employer is a year of Credited Service as defined in Article I, Section 1.01 of this Plan.

In the case of a participant who has separated from service, the participant's highest average compensation will be automatically adjusted by multiplying such compensation by the cost of living adjustment factor prescribed by the Secretary of the Treasury under Section 415(d) of the Internal Revenue Code. The adjusted compensation amount will apply to limitation years ending within the calendar year of the date of the adjustment.

(d)(10)    Limitation year:  A plan year as defined in Article I, Section 1.01 of this Plan unless otherwise specified in the Participation Agreement.  All qualified plans maintained by the Employer must use the same limitation year.  If the limitation year is amended to a different 12-consecutive month period, the new limitation year must begin on a date within the limitation year in which the amendment is made.

(d)(11)    Maximum permissible amount:

(A)  The lesser of the defined benefit dollar limitation or 100 percent of the Participant's highest average compensation.

(B)  If the participant has less than 10 years of participation in the plan, the defined benefit dollar limitation shall be multiplied by a fraction -- (I) the numerator of which is the number of years (or part thereof) of participation in the plan, and (ii) the denominator of which is 10.  In the case of a participant who has less than ten years of service with the employer, the compensation limitation shall be multiplied by a fraction -- (I) the numerator of which is the number of years (or part thereof) of service with the employer, and (ii) the denominator of which is 10.

The adjustments of this section (B) shall be applied in the denominator of the defined benefit fraction based upon years of service.  For purposes of computing the defined benefit fraction only, years of service shall include future years of service (or part thereof) commencing before the participant's normal retirement age.  Such future years of service shall include the year that contains the date the participant reaches normal retirement age,  only if it can be reasonably anticipated that the participant will receive a year of service for such year, or the year in which the participant terminates employment, if earlier.  This paragraph does not apply for limitation years beginning on or after January 1, 2000.

(C)  If the annual benefit of the Participant commences before the Participant's social security retirement age, but on or after age 62, the defined benefit dollar limita- tion as reduced in (B) above, if necessary, shall be determined as follows:

(i)  If a Participant's social security retirement age is 65, the dollar limitation for benefits commencing on or after age 62 is determined by reducing the defined benefit dollar limitation by 5/9 of one percent for each month by which benefits commence before the month in which the Participant attains age 65.

(ii) If a Participant's social security retirement age is greater than 65, the dollar limitation for benefits commencing on or after age 62 is determined by reducing the defined benefit dollar limitation by 5/9 of one percent for each of the first 36 months and 5/12 of one percent for each of the additional months (up to 24 months) by which benefits commence

before the month of the Participant's social security retirement age.

(D) If the annual benefit of the Participant commences prior to age 62, the defined benefit dollar limitation shall be an annual benefit that is the actuarial equivalent of the defined benefit dollar limitation for age 62, as determined above, reduced for each month by which benefits commence before the month in which the participant attains age 62. The annual benefit beginning prior to age 62 shall be determined as the lesser of the equivalent annual benefit computed using the interest rate and mortality table (or other tabular factor) equivalence for early retirement benefits, and the equivalent annual benefit computed using a 5 percent interest rate and the applicable mortality table as defined in section 5.06(f) of the plan. Any decrease in the adjusted defined benefit dollar limitation determined in accordance with this provision (D) shall not reflect any mortality decrement to the extent that benefits will not be forfeited upon the death of the participant.

(E) If the annual benefit of a participant commences after the participant's social security retirement age, the defined benefit dollar limitation as reduced in (B) above, if necessary, shall be adjusted so that it is the actuarial equivalent of an annual benefit of such dollar limitation beginning at the participant's social security retirement age. The equivalent annual benefit beginning after social security retirement age shall be determined as the lesser of the equivalent annual benefit computed using the interest rate and mortality table (or other tabular factor) specified in the plan for purposes of determining actuarial equivalence for delayed retirement benefits, and the equivalent annual benefit computed using a 5 percent interest rate assumption and the applicable mortality table as defined in section 5.06(f) of the plan.

(F) Notwithstanding anything else in this section to the contrary, the benefit otherwise accrued or payable to a participant under this plan shall be deemed not to exceed the defined benefit dollar limitation if:

(i) the retirement benefits payable for a plan year under any form of benefit with respect to such participant under this plan and under all other defined benefit plans (regardless of whether terminated) ever maintained by the employer do not exceed $1,000

multiplied by the participant's number of years of service or parts thereof (not to exceed 10) with the I employer; and

(ii) the employer has not at any time maintained a defined contribution plan, a welfare benefit plan, or an individual medical account in which the participant participated.

(d)(12)  RPA '94 old law benefit: The participant's accrued benefit under the terms of the plan as of October 1, 1999, (the RPA '94 freeze date), for the annuity starting date and optional form and taking into account the limitations of § 415, as in effect on December 7, 1994, including the participation require-ments under § 415(b)(5). In determining the amount of a partici-pant's RPA '94 old law benefit, the following shall be disre-garded:

(i) any plan amendment increasing benefits adopt-ed after the RPA '94 freeze date; and

(ii) any cost of living adjustments that become effective after such date.

A participant's RPA '94 old law benefit is not increased after the RPA '94 freeze date, but if the limitations of    § 415, as in effect on December 7, 1994, are less than the limitations that were applied to determine the participant's RPA '94 old law benefit on the RPA '94 freeze date, then the participant's RPA '94 old law benefit will be reduced in accordance with such reduced limitation. If, at any date after the RPA '94 freeze date, the participant's total plan benefit, before the applica-tion of § 415, is less than the participant's RPA '94 old law benefit, the RPA '94 old law benefit will be reduced to the participant's total plan benefit.

If the RPA '94 benefit was reduced during the period between the RPA '94 freeze date and the first day of the first limitation year beginning on or after January 1, 2000 because of annual additions credited to a participant's account in an existing defined contribution plan, the RPA '94 old law benefit may increase to the RPA '94 freeze date level as of the first day of the first limitation year beginning on or after January 1, 2000.

(d) (13) Social security retirement age: Age 65 in the case of a participant attaining age 62 before January 1, 2000 (i.e., born before January 1, 1938), age 66 for a Participant attaining age 62 after December 31, 1999, and before January 1, 2017 (i.e., born after December 31, 1937, but before January 1, 1955), and age 67 for a Participant attaining age 62 after December 31, 2016 (i.e., born after December 31, 1954).

(d) (14)  TRA '86 accrued benefit:  A participant's accrued benefit under the plan, determined as if the participant had separated from service as of the close of the last limitation year beginning before January 1, 1987, when expressed as an annual benefit within the meaning of    § 415(b)(2) of the Internal Revenue Code. In determining the amount of a participant's TRA '86 accrued benefit, the following shall be disregarded:

(i) any change in the terms and conditions of the plan after May 5, 1986; and

(ii) any cost of living adjustments occurring after May 5, 1986.

(d)(15)   Year of participation: The Participant shall be credited with a year of participation (computed to fractional parts of a year) for each accrual computation period for which the following conditions are met:   (1) The participant is credited with at least the number of hours of service (or period of service if the elapsed time method is used) for benefit accrual purposes, required under the terms of the plan in order to accrue a benefit for the accrual computation period, and (2) the Participant is included as a Participant under the eligibility provisions of the plan for at least one day of the accrual computation period. If these two conditions are met, the portion of a year of participation credited to the Participant shall equal the amount of benefit accrual service credited to the Participant for such accrual computation period. A Participant who is permanently and totally disabled within the meaning of section 415(c)(3)(C)(I) of the Code for an accrual computation period shall receive a year of participation with respect to that period. In addition, for a Participant to receive a year of participation (or part thereof) for an accrual computation period, the plan must be established no later than the last day

of such accrual computation period. In no event will more than one year of participation be credited for any 12-month period.

(e) Transition Rule

If this plan was adopted by and in effect for a partici-pating employer before December 8, 1994, determinations under Code § 415(b)(2)(E) that are made before October 1, 1999, shall be made with respect to a participant's RPA '94 old law benefit on the basis of Code § 415(b)(2)(E) as in effect on December 7, 1994, and the provisions of the plan as in effect on December 7, 1994, but only if such provisions of the plan meet the require-ments of Code § 415(b)(2)(E) as so in effect.

6.05.1  Maximum Compensation Considered.  The annual compensation (as defined in Section 415(c)(3) of the Internal Revenue Code) of each employee taken into account in computing the applicable rate of contribution or any benefit under this Plan for any year shall not exceed the greater of (a) $150,000.00; or (b) said $150,000.00 as adjusted by the Secretary of the Treasury in accordance with Internal Revenue Code Section 415(d).

6.06  Payment of Benefits by Delivery of Insured Annuities. The Trustees may, in their sole discretion, provide for the payment of Retirement benefits by the purchase and delivery of insurance contracts issued by an Insurance Company. Any annuity contract distributed to a participant shall comply with the terms of this plan and shall be non-transferrable.

6.07  Payment of Retirement Benefits Upon Late Application. Whenever a Participant fails to make an application for Early, Deferred, Disability or Normal Retirement Benefits within a reasonable time after he becomes eligible therefor, the Board may, in its sole discretion, determine whether said failure to apply is by reason of mistake, inability, inadvertence or negligence of the Participant or of any other person; and if the Board determines that there is cause for such failure to apply, it may, in its sole discretion, treat such application as if made within a reasonable time after the Participant became eligible for such benefits, and may order the payment of benefits in a lump sum retroactively to such Participant for the period

commencing on the first day of eligibility and continuing until the date of application for benefits with or without payment of interest thereon.

6.08 Required Beginning Date. Notwithstanding any other provision of this Plan, distribution of benefits to a Participant must commence no later than the first day of April of the year following the later of

        (a)   the calendar year in which the Participant attains age 70 ½, or

        (b)   the calendar year in which the Participant retires;

except that distribution to a five percent (5%) owner must commence by April 1 of the year following the calendar year in which such Participant attains age 70 ½.  A Participant is treated as a five-percent owner for purposes of this section if such Participant is a five percent owner as defined in Section 416(I)(1) of the Code at any time during the plan year ending with or within the calendar year in which such owner attains age 70 and ½.

ARTICLE VII

<u>CONTRIBUTIONS</u>

7.01 <u>Employer Contributions</u>. All contributions to provide the benefits under this Plan shall be made by the Participating Employer and no contributions shall be required of Employees. Contributions shall be paid to the Fund in accordance with the procedures adopted for such by the Board. Contributions must be made for all Employees in the covered unit, including temporary, part time, or seasonal employees for any Week of Service of such Employee.

7.02 <u>Contribution Delinquencies</u>. A Participating Employer's participation in the Plan may be terminated by the Board if the Participating Employer shall fail to pay such sums of money as shall have been agreed upon in the Participation Agreement between the Participating Employer and the Board in accordance with the rules of the Board for remitting such contributions.

7.03 <u>Minimum Contribution</u>. In no event shall the Rate of Contribution for any Employee be less than $2.00 per week.

7.04 <u>Actuarial Surcharges</u>. An Employer applying to become a Participating Employer shall be required to submit such data with respect to Employees in the units such Employer proposes to have covered as the Actuary may require to determine whether a surcharge over and above the regular weekly Rate of Contribution set forth in Section 4.01 hereof is necessary in order to avoid an actuarial deficiency, and to pay any such surcharge as the Actuary determines is so required. A similar determination and surcharge (if found necessary) is required with respect to an increase in Rate of Contribution or with respect to the inclusion of a new employee unit in the Plan by a Participating Employer but such a surcharge, if any, will apply only to the increase in Rate of Contribution or to the new Employee unit covered, as the case may be. Each surcharge in existence on December 31, 1982, shall be reduced by 50% for all weeks commencing thereafter and shall thereafter apply to, and be payable for, only the Partici-pants to whom such surcharges were applicable on such date. Any surcharges imposed after December 31, 1982, shall be added to the regular weekly Rate of Contribution only of the Participants of

said Participating Employer who were or became Participants at the time such surcharge was imposed; no such surcharge shall apply to any Participant of said Participating Employer who first becomes a Participant by reason of being hired after December 31, 1982, and after such surcharge was imposed.

7.05 <u>Special Contributions</u>.  A Participating Employer shall pay any past contribution amount due (including surcharges, if any) but erroneously omitted promptly upon learning of the error. The Trustees may require payment of interest by the Participating Employer on any past contribution amount due (including surcharges), at a rate equal to actual Plan experience for the period of the deficiency.

7.06 <u>Forfeitures Do Not Increase Benefits</u>.  In no event shall Forfeitures be applied to increase the benefit any Participant would otherwise receive under the Plan.

7.07 <u>Refunds of Erroneous Contributions</u>.  Contributions made by a Participating Employer by reason of a *bona fide* mistake of fact may be returned to such Participating Employer within one year after the payment to the Trust of such erroneous contribution.

*[Proposed Amendment 7.08, November 17, 2004:  **The Participating Employers may contribute such sums of money (in addition to the regular weekly contribution stated in the Participation Agreements on which benefit calculations are based and any special assessments or surcharges) as are required by law to satisfy the minimum funding requirements of the Internal Revenue Code and ERISA; and the acceptance of such sums in addition to the regular weekly Rate (or Rates) of Contribution as defined in the Plan Document Section 1.01 shall not affect the weekly Rate of Contribution stated in the Participation Agreement(s) of any such Employer, the benefit calculation based thereon, or any other obligation of the parties under such Participation Agreement(s).]***

## ARTICLE VIII

## THE FUND

8.01 <u>Fund Management</u>.  The contributions paid to the Fund shall be held, invested, transferred and distributed by the Board in accordance with the terms and provisions of the Trust.  Said Trust authorizes the Board to enter into both a trust agreement with a corporate Trustee and contract(s) with an Investment Manager which may be an Insurance Company in order to implement this Plan so that the benefits to be provided may be payable under either the Trust or such contract(s) or a combination of both.

8.02 <u>Diversion Impossible</u>.  It shall be impossible at any time prior to satisfaction of all liabilities to Participants and Beneficiaries for any part of the Fund to revert to the Participating Employers, or to be used for, or diverted to, any purpose other than the exclusive benefit of such Participants and Beneficiaries.  Only after such satisfaction may recovery be had to the extent of any surplus existing because of an actuarial error.

ARTICLE IX

ACTUARIAL VALUATION

9.01 Periodic Actuarial Review.  The benefits as set forth in this Plan have been adopted by the Board on the basis of an actuarial estimate furnished to them by the Actuary that the contributions to the Fund and the estimated earnings thereof will be sufficient to provide such benefits on a continuing basis. However, it is recognized that:

    (a)   in the future the income and/or liabilities of the Fund may differ from those estimated at the time of establishment of this Plan or from time to time thereafter, and

    (b)   the benefits set forth in this Plan can be provided only to the extent that the assets of the Fund are sufficient to provide them.

In recognition of the foregoing, the Board shall have an Actuary prepare an actuarial valuation of the Fund not less often than every third year, and recommend to the Board changes in benefits and contributions.

## ARTICLE X

### AMENDMENT OF THIS PLAN

10.01     Reservation of Right to Amend.  The Board reserves the right at any time to amend this Plan in whole or in part; provided, however, that said Board shall have no power to amend this Plan in such manner as would cause or permit any portion of the Fund to be used for, or diverted to, purposes other than for the exclusive benefit of Participants or their Beneficiaries, or as would cause or permit any portion of the Fund to become the property of the Participating Employers.  Except for amendments revoking changes made solely for the purpose of complying with ERISA requirements if such changes are later ruled not to have been required, no such amendment shall have the effect of retroactively depriving Participants or Beneficiaries of rights already accrued under this Plan.  Any such amendment of the Plan duly effected by the Board shall be binding on Participants, the Participating Employers, the Board and each Trustee, the Corporate Trustee, the Contract Administrator and all others whomsoever.

10.02     Merger with Other Plans.  In the event of any merger or consolidation of part or all of the Plan with, or the transfer of part or all of its assets or liabilities to, any other plan or trust (herein called "other plan"), such other plan shall provide that each Participant in the Plan and Trust whose Plan and Trust interests were so merged, consolidated or transferred into, with or to the other plan would (if the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which would be equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

ARTICLE XI

TERMINATION

11.01    *Total Termination of Whole Plan*.  This Plan and Trust may be completely terminated, or the participation of all Participating Employers herein, or further contributions by the Participating Employers hereto may be terminated by a duly adopted resolution of the Board; and the complete discontinuance of contributions under the Plan shall constitute a termination thereof.  In the event of any such termination the rights of all Participants to the benefits accrued to the date of such termination to the extent then funded, all as more particularly set forth below in this ARTICLE XI, shall become nonforfeitable. For the period required to complete such termination, the Board shall continue to hold, administer, invest and distribute the Fund in accordance with the provisions of the Plan and the Trust Agreement unless and until the Fund is to be administered by a trustee appointed by the Pension Benefit Guarantee Corporation pursuant to proceedings instituted under ERISA.  In the event of the termination of this Plan the Board with the aid and counsel of the Actuary and the accountants for the Plan shall determine in accordance with any applicable ERISA rules and regulations thereunder the portion of the assets of the Plan attributable to the participation in the Plan of the Participants and Beneficiaries of each of the Participating Employers and shall then allocate such portion among the Participants and Beneficiaries of Participants of such Participating Employer for the following benefits and in the following order of priority:

First        (a)  In the case of each Participant and Beneficiary to whom a benefit was being paid on the date of such termination and as of the beginning of the 3rd year before such termination date, the actuarial equivalent of the benefit determined at the lowest benefit level paid during such 3-year period or provided under the Plan during the 5-year period before such termination date; and

                (b)  In the case of each Participant and Beneficiary to whom a benefit would have been payable at the beginning of the 3rd year before such termination date if the Participant had retired prior thereto, the actuarial

equivalent of the benefit determined at the lowest benefit level provided under the Plan during the 5-year period before such termination date;

Second (a) The actuarial equivalent of each benefit of a Participant and Beneficiary other than provided for in First above which is guaranteed under ERISA Section 4022 (determined without regard to paragraph (b)(5) thereof); and

(b) The actuarial equivalent of each benefit of a Participant or Beneficiary other than provided for in First and Second (a) above which is nonforfeitable under the provisions of the Plan (other than benefits which become nonforfeitable upon termination under this Section 12.01);

Third, the actuarial equivalent of each benefit of a Participant or Beneficiary other than provided for in First and Second above, provided for under the Plan; and

Fourth, any excess after all of the foregoing have been fully provided for shall be allocated to the Participating Employer as an excess due to actuarial error.

If the assets of the Fund available for allocation under any paragraphs First or Second above are insufficient to satisfy in full all of the benefits described in such paragraph, such assets shall be allocated pro rata among such benefits on the basis of the actuarial equivalent referred to in such paragraph of their respective benefits; and if the assets available for allocation under paragraph Third above are insufficient to satisfy in full all of the benefits described in such paragraph, such assets shall be allocated among such benefits pro rata as such benefits are determined under the Plan as in effect at the beginning of the 5-year period ending on such termination date, and if sufficient for that purpose and if the Plan has been amended during such 5-year period, the remainder shall be allocated pro rata among any benefits in addition to such benefits (as were in effect at the beginning of such 5-year period) for which each such amendment provided, in the order of occurrence until all such assets are exhausted. The manner and time of paying benefits not already being paid shall be determined by the Board subject to the applicable provisions of ERISA and the Code. If and to the extent that such assets are insufficient to satisfy in full all of the benefits described in any of paragraph First,

Second, or Third (in that order of priority) for the Participants and Beneficiaries of the terminating Participating Employer, then such Participating Employer shall contribute to the Fund the amount necessary to make up the insufficiency for any or all of such benefits in the order of priority given.

11.02   **Partial Termination of Plan.** If any Participating Employer shall discontinue its participation in the Plan by any one or more of the following actions:

(a)  The termination of such Participating Employer's contributions;

(b)  The termination of such Participating Employer's business with consequent termination of employment of Participants employed by such Participating Employer;

(c)  Disposition of substantially all its business operations without the acquiring person or entity assuming and continuing the Participating Employer's participation in the Plan,

then the Plan shall be terminated with respect to such Participating Employer and with respect to the Participants and Beneficiaries of Participants whose participation in the Plan is attributable to employment with such Participating Employer, other than any such Participant who continues his participation in the Plan by becoming employed by another Participating Employer. Upon any such termination of the Plan with respect to such Participating Employer, the portion of the assets of the Fund attributable to the participation in the Plan of the Participants and Beneficiaries of Participants with respect to whom the Plan is thus terminated shall be determined and allocated in accordance with the provisions of Section 11.01. The provisions of Article V, Section 5.05 shall apply to any partial termination under this Section.

In the event a Participating Employer discontinues contributions or otherwise seeks to terminate participation in this Plan, before such termination shall be effective, Participants in the Plan of said Employer shall receive advance written notice from the Employer that contributions and benefit accruals will cease;

and the Participant shall cease to accrue benefits in said Plan as of the latest of

    (a)  the date contributions cease;

    (b)  the date specified in the notice of cessation of benefit accruals; or

    (c)  any other date required by any government agency having jurisdiction over the termination.

An Employer seeking to terminate its Participation in the Plan shall notify the Plan in writing no less than 180 days in advance of the proposed termination date, and no termination shall be effective until a period of 180 days has elapsed from the date of notification of the Plan.

**11.02.1**   <u>Partial Termination Under Internal Revenue Code Section 411(d)(3)</u>. If a "partial termination" under Internal Revenue Code Section 411(d)(3) occurs with respect to a Participating Employer, the rights of all employees and participants affected by such partial termination to benefits accrued to the date of such termination, to the extent funded as of such date, shall be non-forfeitable; and the Plan shall be terminated with respect to the affected participants. In the event of such partial termination, the portion of the assets of the Fund attributable to the participation in the Plan of the Participants and Beneficiaries of Participants with respect to whom the Plan is thus terminated shall be determined and allocated in accordance with the provisions of Section 11.01. The provisions of Article V, Section 5.05 shall apply to any partial termination under this Section.

**11.03**   <u>Non-Discrimination.</u> In the event of total or partial plan termination, the benefit of any highly compensated active or former employee is limited to a benefit that is non-discriminatory under Code section 401(a)(4).

ARTICLE XII

MISCELLANEOUS PROVISIONS

12.01    Spendthrift Clause.    Amounts payable under the
Plan to a Participant or to a Beneficiary shall be paid only to
him and upon his personal receipt (except (a) a person under a
disability as provided in Section 12.06 hereof; or (b) a person
whose entitlement to a benefit under this Plan is subject to a
Qualified Domestic Relations Order duly filed with the Plan, in
which event payment shall be made in accordance with the terms of
said Qualified Domestic Relations Order).    No benefit payable
under the provisions hereof shall be assigned or alienated or be
subject in any manner to anticipation, alienation, sale,
transfer, assignment, pledge, encumbrance or charge. Any attempt
to so charge shall be void, nor shall the Trust or the Fund or
any part thereof be in any manner liable for or subject to the
debts, contracts, liabilities, engagements or torts of the person
entitled to any benefit payment.

    The prohibition against assignment contained herein shall
not apply to any offset of a participant's benefits provided
under the Plan against an amount that the participant is ordered
or required to pay to the plan if

    (i) the order or requirement to pay arises -

        (I) under a judgment of conviction for a crime
        involving such plan,

        (II) under a civil judgment (including a consent order
        or decree) entered by a court in an action brought in
        connection with a violation (or alleged violation) of
        part 4 of subtitle B of title I of ERISA, or

        (III) pursuant to a settlement agreement between the
        Secretary of Labor and the participant, or a settlement
        agreement between the Pension Benefit Guaranty Corpora-
        tion and the participant, in connection with a viola-
        tion (or alleged violation) of part 4 of such subtitle
        by a fiduciary or any other person,

    (ii) the judgment, order, decree, or settlement agreement
    expressly provides for the offset of all or part of the

2002 RESTATEMENT AS AMENDED THROUGH 11.16.2004

66

amount ordered or required to be paid to the plan against the participant's benefits provided under the plan, and

(iii) in a case in which the survivor annuity requirements of section 401(a)(11) apply with respect to distributions from the plan to the participant has a spouse at the time at which the offset is to be made -

(I) either such spouse has consented in writing to such offset in accordance with the formalities set forth in Section 5.01 of the Plan, or an election to waive the right of the spouse to either a qualified joint and survivor annuity or a qualified preretirement survivor annuity is in effect,

(II) such spouse is ordered or required in such judgment, order, decree, or settlement to pay an amount to the plan under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of part 4 of subtitle B of title I of ERISA, or

(III) in such judgment, order, decree, or settlement, such spouse retains the right to receive the survivor annuity under a Qualified Joint and Survivor Annuity and under a Qualified Preretirement Survivor Annuity provided pursuant to section 401(a)(11)(A)(ii), determined in accordance with subparagraph (D).

12.02    <u>Not A Contract of Employment</u>.  Nothing contained herein shall be construed as a contract of employment between any Participant and his Participating Employer or as giving a right to any Participant to be continued in the employment of his Participating Employer, or as a limitation of the right of a Participating Employer to discharge any Participant at any time with or without cause.

12.03    <u>Addresses</u>.  Each person entitled to benefits hereunder shall file with the Board from time to time in writing his complete mailing address and each change of mailing address.  Any check representing payment hereunder, and any communication, addressed to a Participant or to any other person at his last address so filed (or if no such address has been filed, then at his last address indicated on the records of the Company) shall be deemed to have been

received by such person for all purposes of the Plan, and neither the Board nor any Participating Employer shall be obliged to search for or ascertain the location of any such person.

12.04    Claims and Appeal Procedure.  Any claim for benefits which are not received shall be made in writing to the Board.  The Board shall consider such claim and shall within 60 days either approve it or deny it.  Each denial shall be in writing, setting forth the specific reasons for such denial and written in a manner calculated to be understood by the Participant or Beneficiary making such claim and the Board shall afford a reasonable opportunity to any Participant or Beneficiary whose claim is denied for a full and fair review by the Board or its delegate of the decision denying the claim.

12.05    Tax Qualified Plan.  The Board intends this Plan and the Trust to be qualified under the provisions of Section 401 of the Code.  The Board shall seek determination letters to that effect and keep the Participating Employers advised of any changes in the federal income tax qualification status of the Plan and the Trust.

12.06    Payments to Person under Disability.  If the Board shall find that any person to whom a benefit is payable from the Fund is unable to care for his affairs because of infirmity, illness or accident, any payment due (unless a prior claim therefor shall have been made by a duly appointed guardian or other legal representative) may be made to the spouse, a child, a parent, or a brother or a sister, or to any other person whom the Board deems competent to receive payments on behalf of the person to whom said benefit is payable.  Any such payment shall be a complete discharge of any liability under this Plan.

12.07    Termination for Loss of Association Membership.  Upon the Board's receipt of notification by the American Bakers Association that the membership of a Participating Employer in the Association has been terminated, the participation in this Plan of such Participating Employer and its Affiliates (except to the extent any such Affiliate may be or become an Association member) may be terminated by the Board after due consideration of the circumstances.

12.08    <u>Saving Clause</u>. In the event that any section or clause hereof should be invalid, the remaining parts not so invalid shall be given full force and effect. Should any provision of this Plan conflict with any governing law, rule or regulation then in effect, the provisions of said governing law, rule or regulation shall control the terms of this Plan; and the terms of this Plan which conflict shall be construed in the manner most consistent with said governing law, rule or regulation.

12.09    <u>Top-Heavy Plan</u>. If the part of the Plan which is the separate plan of a Participating Employer hereunder becomes a "Top-Heavy Plan" as defined in ADDENDUM NO. 1 to this Plan, then such Addendum No. 1 shall become applicable to such separate plan and shall remain applicable thereto to the extent therein set forth.

## ARTICLE XIII

## NATURE OF PLAN

13.01     _Association of Single Employer Plans_.  This Plan constitutes an association of single employer plans designed to give the cost savings and other benefits of a tax-qualified prototype plan, the administration in common of all the associated plans (including, but no limited to, actuarial, legal, accounting, and computerized record-keeping services) and the handling of the receipt, investment and distribution of their funds through the medium of a single trust and the use of investment managers or advisers and pension consultants.  That the Plan is, and is to be treated as, "an aggregate of separate plans rather than a single pension plan" is recognized by the Pension Benefit Guaranty Corporation for plan termination purposes (see Exhibit A attached hereto).

13.02     _Each Single Employer Plan to Provide Funds For Its Participants_.  Subject to the Plan's actuarial assumptions that the stated contribution amounts will produce the stated benefit amounts, it is the fundamental concept and intent of this Plan that the contributions of each separate employer will be used only to provide benefits for Participants (and Beneficiaries thereof) by reason of such Participants' employment by such employer; and only contributions by such employer will be used to provide benefits for such Participants (and Beneficiaries).

(END)

ADDENDUM NO. 1
TO
AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN

Ad. 1  Definitions.  For the purposes of this Addendum No. 1 the following terms, when used herein, shall have the following respective meanings:

I)     Key Employee:  Any employee or former employee (and the beneficiaries of such employee) who at any time during the determination period was an officer of the employer is such individual's annual compensation exceeds 50 percent of the dollar limitation under section 415(b) 1)(A) of the Internal Revenue Code, an owner (or considered an owner under section 318 of the Code) of one of the ten largest interests in the employer if such individual's compensation exceeds 100 percent of the dollar limitation under section 415(c)(1)(A) of the Code, a 5-percent owner of the employ r, o a 1-percent owner of the employer who has an annual compensation of mor than $150,000.  Annual compensation means compensation as defined in section 415(c)(3) of the Code, but including amounts contributed by the employer pursuant to a salary reduction agreem nt which are excludable from the employee's gross income under sectio 125, section 402(a)(8), section 402(h) or section 403(b) of the Code.  The determination period is the plan year containing the determination date and the 4 preceding plan years.  The determination of who is a key employee will be made in accordance with section 416(I)(1) of the Code and the regulations thereunder.

ii)    Top-heavy plan:  For any plan year beginning after December 31, 1983 the separate plan of any Participating Employer in this Plan ("separate plan") is top-heavy if any of the following conditions exists:

a.     If the top-heavy ratio for such plan exceeds 60 percent and such separate plan is not part of any required aggregation group or permissive aggregation group of plans.

b.     If such separate plan is a part of a required aggregation group of plans but no part of a permissive aggregation group and the top-heavy ratio for the group of plans exceeds 60 percent.

c.     If such separate plan is a part of a required aggregation group and part of a permissive aggregation group of plans and the top-heavy ratio for the permissive aggregation group exceeds 60 percent.

2002 RESTATEMENT

iii)    <u>Top-heavy ratio</u>:

a.    If the employer maintains one or more defined benefit plans and the employer has not maintained any defined contribution plan (including any Simplified Employee Pension Plan) which during the 5-year period ending on the determination date(s) has or has had account balances, the top-heavy ratio for the separate plan of said Participating Employer alone or for the required or permissive aggregation group as appropriate is a fraction, the numerator of which is the sum of the present values of accrued benefits of all key employees as of the determination date(s) (including any part of any accrued benefit distributed in the 5-year period ending on the determination date(s)), and the denominator of which is the sum of the present value of all accrued benefits (including any part of any accrued benefit distributed in the 5-year period ending on the determination date(s)), determined in accordance with section 416 of the Code and the regulations thereunder.

b.    If the employer maintains one or more defined benefit plans and the employer maintains or has maintained one or more defined contribution plans (including any Simplified Employee Pension Plan) which during the 5-year period ending on the determination date(s) has or has had any account balances, the top-heavy ratio for any required or permissive aggregation group as appropriate is a fraction, the numerator of which is the sum of the present value of accrued benefits under the aggregated defined benefit plan or plans for all key employees, determined in accordance with (a) above, and the sum of account balances under the aggregated defined contribution plan or plans for all key employees as of the determination date(s), and the denominator of which is the sum of the present value of accrued benefits under the aggregated defined benefit plan or plans, determined in accordance with (a) above, for all participants and the sum of the account balances under the aggregated defined contribution plan or plans for all participants as of the determination date(s), all determined in

- 2 -

accordance with section 416 of the Code and the regulations thereunder. The account balances under a defined contribution plan in both the numerator and denominator of the top-heavy ratio are increased for any distribution of an account balance made in the five-year period ending on the determination date.

c.    For purposes of (a) and (b) above the value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that falls within or ends with the 12-month period ending on the determination date, except as provided in section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan. The account balances and accrued benefits of a participant (1) who is not a key employee but who was a key employee in a prior year, and (2) who has not been credited with at least one hour of service with any employer maintaining the plan at any time during the 5-year period ending on the determination date will be disregarded. The calculation of the top-heavy ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with section 416 of the Code and the regulations thereunder. Deductible employee contributions will not be taken into account for purposes of computing the top-heavy ratio. When aggregating plans the value of account balances and accrued benefits will be calculated with reference to the determination dates that fall within the same calendar year.

The accrued benefit of a participant other than a key employee shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the employer, or (b) if there is not such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of section 411(b)(1)(C) of the Code.

iv)    Permissive aggregation group: The required aggregation group of plans plus any other plan or plans of the employer which, when considered

- 3 -

as a group with the required aggregation group, would continue to satisfy the requirements of sections 401(a)(4) and 410 of the Code.

v)    Required aggregation group:  (1) Each qualified plan of the employer in which at least one key employee participates or participated at any time during the determination period (regardless of whether the plan has terminated), and (2) any other qualified plan of the employer which enables a plan described in (1) to meet the requirements of sections 401(a)(4) or 410 of the Code.

vi)    Determination date:  For any plan year subsequent to the first plan year, the last day of the preceding plan year.  For the first plan year of the plan, the last day of that year.

vii)    Valuation date:  The most recent valuation date that falls within or ends with the 12-month period ending on the determination date, except as provided in section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.

viii) Present value:  Present value shall be based only on the following interest and mortality rates:

Interest: 7%  Mortality Table: 1971 Group Annuity  Mortality Table

Ad. 2  Top-Heavy Separate Plan Requirements

Ad. 2.1    Vesting Rule.  For purposes of these Top-Heavy Rules, each Participant who has completed at least 3 Vesting Years of Service with a Participating Employer has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

Ad. 2.2    Minimum Benefit Rule.  (1) Notwithstanding any other provision in this plan except (3), (4), and (5) below, for any plan year in which the separate plan of a Participating Employer is top-heavy, each participant who is not a key employee and has completed 1,000 hours of service will accrue a benefit (to be provided solely by employer contributions and expressed as a life annuity commencing at normal retirement age) of not less than 2 percent of his or her highest average compensation for the five consecutive years for which the participant had the highest compensation.  The aggregate compensation for the years during such five-year period in which the participant was credited with a year of service will be divided by the number of such years in order to determine average annual compensation.  The minimum accrual is determined without regard to any Social Security contribution.  The minimum accrual applies even though under other plan provisions the participant would not otherwise be entitled to receive an accrual, or would have received a

- 4 -

lesser accrual for the year because (I) the non-key employee's compensation is less than a stated amount, or (ii) the non-key employee is not employed on the last day of the accrual computation period.

      (2)    For purposes of computing the minimum accrued benefit, Average Compensation shall mean: average annual compensation (as defined in Section 415(c)(3) of the Internal Revenue Code) for the period of 5 (or all if less than 5) consecutive Plan Years included in his Credited Service in which such Participant's aggregate compensation is the highest.

      (3)    No additional benefit accruals shall be provided pursuant to (1) above to the extent that the total accruals on behalf of the participant attributable to employer contributions will provide a benefit expressed as a life annuity commencing at normal retirement age that equals or exceeds 20 percent of the participant's highest average compensation for the five consecutive years for which the participant had the highest compensation.

      (4)    The provision in (1) above shall not apply to any participant to the extent the participant is covered under any other plan or plans of the employer and the employer has provided in such other plan that the minimum allocation of benefit requirement applicable to top-heavy plans will be met in the other plan or plans.

      (5)    All accruals of employer derived benefit, whether or not attributable to years for which the plan is top-heavy, may be used in computing whether the minimum accrual requirements of paragraph (3) above are satisfied.

      (6)    If the form of benefit is other than a single life annuity, the employee must receive an amount that is the actuarial equivalent of the minimum single life annuity benefit. If the benefit commences at a date other than at normal retirement age, the employee must receive at least an amount that is the actuarial equivalent of the minimum single life annuity benefit commencing at normal retirement age.

      (7)    The minimum accrued benefit required (to the extent required to be nonforfeitable under section 416(b)) may not be forfeited under section 411(a)(3)(B) or 411(a)(3)(D).

      (8)    For any plan year in which the separate plan of a Participating Employer is top-heavy, the minimum vesting schedule set forth at Ad. 2.1 will automatically apply to the plan. The minimum vesting schedule applies to all benefits within the meaning of section 411(a)(7) of the Code except those attributable to employee contributions, including benefits accrued before the effective date of section 416 and benefits accrued before the plan became top-heavy. Further, no decrease in a participant's nonforfeitable percentage may occur in the event the plan's status as top-heavy changes for any plan year. However, this section does not apply

to the accrued benefits of any employee who does not have an hour of service after the plan has initially become top-heavy and such employee's account balance attributable to employer contributions and forfeitures will be determined without regard to this section.

Ad. 2.3     Special Limitations In Case Of More Than One Plan. For limitation years beginning before January 1, 2000, in any plan year in which the separate Plan of a Participating Employer, considered along with any other plan of a particular Participating Employer, is top-heavy, i.e., the top-heavy ratio exceeds 60%, the denominators of the defined benefit fraction (as defined in section 6.05 of the plan) and defined contribution fraction (as defined in section 6.05 of the plan) shall be computed using 100 percent of the dollar limitation set forth at subsection (d)(6) of Section 6.05 instead of 125 percent, unless otherwise permitted by Section 416(h)(2) of the Internal Revenue Code.

Ad. 2.4     Minimum Benefit In Case Of More Than One Plan. For limitation years beginning before January 1, 2000, when the separate Plan of a Participating Employer, considered along with any other plan of a particular Participating Employer is top-heavy, the employer will provide a minimum nonintegrated accrued benefit of 2% of the highest 5-consecutive year average compensation (not to exceed a cumulative accrued benefit of 20%), to each non-key employee who participates in this Plan and who does not participate in the Participating Employer's other plan.

[END]

# EXHIBIT A

 Pension Benefit Guaranty Corporation
2020 K Street, N.W., Washington, D.C. 20006

JUN 2 1 1979

Mr. Donald Gerrish
American Bakers Association
2020 K Street, N.W.
Suite 850
Washington, D.C. 20006

Dear Mr. Gerrish:

This is in response to your request for a determination by
the Pension Benefit Guaranty Corporation ("PBGC") whether
the American Bakers Association Retirement Plan (the "Fund")
constitutes a single pension plan or an aggregate of separate
pension plans. We have concluded that the Fund constitutes
an aggregate of separate plans. Therefore, an employer's
cessation of participation constitutes a plan termination.

We understand that the American Bakers Association ("ABA"),
an association of approximately one hundred employers in the
baking industry, established the ABA Trust ("Trust"), effective
September, 1961. Pursuant to Trust Article II, the Fund was
established October 1, 1961. The Fund has been amended from
time to time, including October 1, 1976 amendments to satisfy
a requirements of ERISA. The Fund is managed by seven
trustees, three of whom are elected by the participating
employers and four of whom are appointed by the ABA. All
seven trustees are participating employers. The trustees
oversee the work of the plan administrator, Mass Insurance
Consultants and Administrators, Inc. ("MICA"). The approxi-
mately four thousand active Fund participants work in ninety-
three separate plants, that are located in twenty-seven
states from Florida to California. There are from one to
more than two hundred participants at each participating
plant. More than three hundred participants receive pension
benefits under the Fund. The Fund is not union negotiated.

Our determination as to the nature of an entity -- whether
it is a single plan or an aggregate of single plans -- is
based on its structure and how it actually operates on an
ongoing basis. We look to the documents governing the
entity and to relevant evidence of how it has operated and
continues to operate. Such evidence may include the reasonable
expectations and intent of the parties.

EXHIBIT A to t'
Page 1

-2-

The availability of funds held by an entity to provide
benefits is a central factor in our analysis. Restrictions
in the use of such funds indicate that the entity may be an
aggregate of single plans. For example, if separate accounts
are maintained for each contributing employer, it may be
possible to restrict the use of assets from each separate
account to pay only the benefits of the employee-participants
of the employer maintaining the account. If the evidence
shows that payments are effectively restricted, by whatever
means, so that there is a minimal risk of funds attributable
to the contributions of one employer being used to pay the
benefits of another employer's employee-participants, then
the entity is an aggregate of single plans.

We note first that since the inception of the Fund in 1961,
each employer that enters the Fund, that increases its
contribution rate, or that adds a new unit has been required
to sign a separate participation agreement. This agreement
states that the employer's participation in the Fund is only
with respect to its own employees. Each participation
agreement sets forth the employees to be covered and the
contribution rate or rates applicable to the signatory. The
contribution rate varies at the discretion of each employer,
and the benefits are directly related to that contribution.
Benefits are determined individually by employer and contribution
rates are actuarially determined by the Fund actuary. (See
dited Financial Statements of the Fund, September 30, 1974
d September 30, 1975 at page 6.)

Each new employer and each employer that chooses to increase
its contribution rate(s) is the subject of an actuarial
study made by the Fund actuary. This study is made to
determine whether, in addition to the contribution rate
stated in its participation agreement, the employer must pay
a surcharge to avoid any actuarial deficiency. [Fund section
10.04]. This surcharge is a direct function of the age and
service distribution of the subject employer's employees.
Each new employer and each employer that changes its contri-
bution rate must separately submit to the Internal Revenue
Service ("IRS") an application for a determination letter
that its new or amended participation in the Fund separately
meets the Internal Revenue Code requirements for a qualified
plan. Also concerning the Fund's representations to the
IRS, we note that the Annual Returns of Fiduciary of Employees'
Pension or Profit Sharing Trust (IRS Form 990P) filed by the
Fund state that more than ninety employer-adopted plans are

EXHIBIT A to the
Page 2

-3-

involved in the Fund's commingled trust account.  Further,
the Schedules A of IRS Form 990P list the discrete serial
umber of each employer's plan.

On an ongoing basis all contributions are paid into and all
distributions are paid from the commingled trust, estab-
lished pursuant to Trust Article III.  Although the trustees
do keep a record of the credited service of each employee-
participant, on an ongoing basis the Fund only maintains
separate accounting per employer for purposes of cost
allocation.

We note, too, that upon total discontinuance of the Fund,
Fund Article XIV and Trust Article IX provide initially for
an allocation of Fund assets by employer, crediting each
employer with that portion of assets attributable to its
participation in the Fund.  Each such portion is allocated
according to express priority categories of each employer's
employees.

The intent to maintain an aggregate of single plans has been
expressed to the employee-participants in the Fund.  The
Summary Plan Description ("SPD") distributed to all employee-
participants specifies that continued benefit payments are a
direct function of continued employer participation, i.e.,
requisite funding by the appropriate employer.  "Your company
is paying the entire cost of the Plan . . . The company's
ability to continue payments to the Plan will depend upon
he company's continued financial success." 1/  The SPD also
states that "[s]hould the company's participation in the
Plan end, only its employees then receiving, or eligible to
receive benefits would have any further interest in the
Plan, and their benefits might be reduced if an actuarial
evaluation showed that the company's past contributions had
not been sufficient to fund their benefits." 2/

Further examination of the documentation submitted to this
Office reveals the following information:

(1) The raw data necessary to historically re-create
separate accounts has been maintained.  Such accounts
were created pursuant to Fund Section 14.02 each time
an employer ceased participation in the Fund; and

---

1/  SPD at page 2.

2/  SPD at page 10.

EXHIBIT A to the P'
Page 3

-4-

(2) The Fund presently provides for a reversion to an employer ceasing participation, of any amounts attributable to its contributions that prove to be in excess of the accrued pensions of its employees. However, until the Fund was so amended in 1976, any such excess remained in the commingled trust rather than reverting to the subject employer.

Examining the evidence under the analysis set forth above, we have determined that the Fund is an aggregate of separate pension plans. In this case the separate actuarial valuations made with regard to each employer and the system of surcharges, discussed above, effectively minimize the risk that one employer's contributions will be used to fund the benefits of another employer's employees.

I hope that this response is helpful to you. Should you need further assistance, please do not hesitate to contact David Levin of this Office at (202) 254-4895.

Sincerely,

Henry Rose
General Counsel

cc: William C. Childs, Esquire
    Hopkins, Sutter, Mulroy, Davis &
        Cromartie
    One First National Plaza
    Chicago, Illinois 60603

    Laura E. Stone, Esquire
    Steptoe & Johnson
    1250 Connecticut Avenue, N.W.
    Washington, D.C. 20036

    Mrs. Albert Spelsberg
    115 South Main Street
    West Hartford, Connecticut 06107

EXHIBIT A to the Pla
Page 4