## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SARA LEE CORPORATION, on its own behalf and on behalf of its employee-participants in the American Bakers Association Retirement Plan, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 06-CV-0819-HHK |
| AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of the American Bakers Association Retirement Plan; and PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) ) ) ) ) ) | Judge Henry H. Kennedy, Jr.  Magistrate John M. Facciola |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN; and BOARD OF TRUSTEES OF THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN, as Administrator of the American Bakers Association Retirement Plan, | ) ) ) ) ) ) | **AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND BOARD OF TRUSTEES'** |
| Third Party Plaintiffs, Counterclaimants, and Cross-Claimants, | ) ) ) ) | **MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS LEWIS BROS. BAKERIES** |
| v. | ) ) | **INC.'S COUNT II AND III COUNTERCLAIMS** |
| SARA LEE CORPORATION, | ) ) | |
| Respondent, | ) ) | |
| PENSION BENEFIT GUARANTY CORPORATION, | ) ) ) | |
| Cross-Defendant, and | ) ) | |
| KETTERING BAKING COMPANY, INTERSTATE BRANDS CORPORATION, LEWIS BROS. BAKERIES, INC., HARRIS BAKING COMPANY, INC., AMERICAN BAKERS ASSOCIATION, and JENNY LEE BAKERY, INC., | ) ) ) ) ) ) | |

|  |  |
|---|---|
| Third-Party Defendants. | ) |
| | ) |
| ————————————————————————— | ) |
| | ) |
| LEWIS BROS. BAKERIES, INC., | ) |
| | ) |
| Counterclaimants, and Cross-Claimants | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN BAKERS ASSOCIATION | ) |
| RETIREMENT PLAN; and BOARD OF | ) |
| TRUSTEES OF THE AMERICAN BAKERS | ) |
| ASSOCIATION RETIREMENT PLAN, as | ) |
| Administrator of the American Bakers Association | ) |
| Retirement Plan; | ) |
| | ) |
| Third Party Plaintiffs, | ) |
| Counterclaimants, and Cross-Claimants, | ) |
| Counterclaim Defendant. | ) |
| | ) |
| PENSION BENEFIT GUARANTY CORPORATION, | ) |
| | ) |
| Cross-Defendant. | ) |

## AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S AND BOARD OF TRUSTEES' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS LEWIS BROS. BAKERIES, INC.'S COUNT II AND III COUNTERCLAIMS

Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
Edward R. Mackiewicz (D.C. Bar # 944884)
Ryan T. Jenny (D.C. Bar # 495863)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036-1795
Tel:  (202) 429-3000
Fax:  (202) 429-3902

Anne H.S. Fraser (D.C. Bar # 349472)
Anne H.S. Fraser, P.C.
1320 19th Street, N.W., Suite 200
Washington, DC  20036-1637
Tel:  (202) 466-4009
Fax:  (202) 466-4010

**Attorneys for American Bakers Association Retirement Plan and Board of Trustees of the American Bakers Association Retirement Plan**

May 5, 2008

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), counterclaim defendants American

Bakers Association Retirement Plan (the "Plan" or "ABA Plan") and the Plan's Board of

Trustees (the "Board") (collectively, "Defendants") respectfully submit this memorandum of law

in support of their motion to dismiss Counts II and III of the Counterclaim filed by Lewis Bros.

Bakeries, Inc. ("Lewis Brothers").[1] These counterclaims, both of which are brought under

ERISA, "attempt to assert substantially the same claim" that Plaintiff Sara Lee Corporation

("Sara Lee") previously asserted in this case and this Court dismissed by Order dated September

11, 2007, for lack of standing and subject matter jurisdiction.  Indeed, this Court recognized

precisely this fact when it earlier denied Lewis Brothers leave to file an amended answer

asserting these very counterclaims against the ABA Plan and its Board.  *See* Memorandum

Opinion and Order of Sept. 11, 2007 at 6 (Doc. 79) (the "2007 Order") (reported at *Sara Lee*

*Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 39 (D.D.C. 2007)).  While this Court

recently granted Lewis Brothers leave to file its amended answer – presumably so that it could

assert its own claim against the PBGC, the only claim surviving in Sara Lee's complaint – its

claims against the ABA Plan and its Board should be dismissed for lack of standing and subject

matter jurisdiction just as those of Sara Lee.  As this Court has already stated:

> Lewis Brothers' attempt to assert substantially the same claim
> against the ABA Plan under § 1132 must fail for the same reason
> — that Lewis Brothers is a participating employer, not a fiduciary
> of the plan.

*Id.* at 6 n.3.

The principles this Court set forth in its decision to dismiss Sara Lee's claims against

---

[1] This Count granted Lewis Brothers leave to file its counter- and cross-claims by Minute
Order dated March 20, 2008.  Its claims begin on page 23 of its Amended Answer ("AA") (Doc.
91).  Citations herein to that section of the Amended Answer shall be to:  "AA ¶ __."

Defendants apply equally here.  *See* 2007 Order.  As a participating employer in the Plan, Lewis

Brothers, like Sara Lee, is not a fiduciary of the ABA Plan.  Since it is not, Lewis Brothers, just

like Sara Lee, lacks standing to bring the ERISA claims it has asserted against the ABA

Defendants under ERISA's civil enforcement scheme and this Court lacks subject matter

jurisdiction over its claims.  Nor do the additional grounds alleged by Lewis Brothers to bolster

its standing claim alter this result.[2]  Those employer actions – (1) the theoretical authority to

enter into a contract with the Board that directs a transfer of Plan assets to another plan, (2) the

authority to sponsor another plan and appoint a plan administrator for it, and/or (3) the authority

to cause a partial plan termination by discontinuing its Plan participation – do not involve the

discretionary authority over the administration of the ABA Plan or the Plan's assets essential to

give rise to fiduciary status.  Indeed, they do not involve plan administration at all, but the ability

of an employer to end its relationship with the Plan.  As such, they represent quintessential

employer/settlor actions that have long been recognized as non-fiduciary in nature.  Thus, even

apart from the fact that Lewis Brothers' claims have no relation to those activities, it lacks

standing as a fiduciary to asserts its claims against the ABA Defendants.

## FACTUAL BACKGROUND

### A.    Nature of the Plan and the 1979 PBGC Letter.

The Plan is a defined benefit pension plan that was established in 1961 for the benefit of

certain employees of various unrelated employer members of the American Bakers Association

("ABA"), including Lewis Brothers.  (AA ¶¶  1, 6, 7, 10).  The Plan is governed by, *inter alia,*

ERISA and the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 1 *et seq.*  (AA ¶¶  1, 7,

---

[2] Lewis Brothers filed its motion for leave the file an amended answer with the present counterclaims *after* the ABA Plan and its Board had moved to dismiss Sara Lee's claims against them, but before the Court ruled on that motion.

14; ABA Plan[3] ¶¶ 2.05, 2.06, 12.05).  The Board is the Plan's named fiduciary, and as such "has the authority and responsibility under the ABA Plan to control and manage the ABA Plan's operation and administration, and under the [terms of the] American Bakers Association Retirement Trust (the "ABA Trust")[4] to manage and control the ABA Plan's assets held in the ABA Trust."  (AA ¶¶ 8, 11; *see also* ABA Plan at p. 9, Art. II, ¶ 8.01).

The underlying dispute in this lawsuit involves the nature of the Plan for PBGC plan termination and premium purposes (Title IV of ERISA).  The Plan was designed as an aggregation of single employer plans for PBGC termination purposes but was operated as a single plan for other purposes.  (AA ¶¶ 10, 11, 14-16; *see also* ABA Plan).  In fact, in 1979 the Plan secured a determination from the PBGC (the "1979 PBGC Letter") that the Plan was an aggregation of single employer plans and not a multiple employer plan for plan termination and PBGC premium purposes.  (AA ¶¶ 15, 30; ABA Plan Ex. A).  The Plan's documents were amended to incorporate this principle, and the 1979 PBGC Letter was attached to the Plan as Exhibit A.  (AA ¶¶ 15, 16, Ex. 1 at Ex. A).  The importance of this principle to the Plan was emphasized by a plan provision which provided:  "Notice is also hereby given that if any governmental agency will not permit the concept and provisions of Article XIII and the opinion in Exhibit A to remain substantially as set forth therein, this Plan will have been so radically altered that it will have to be terminated or substantially revised."  (ABA Plan at 1976 Preface).

In June 2005 it was determined that when the Plan's financial condition was examined on a "separate account" (*i.e.*, a separate employer) basis, four of the seven remaining

---

[3] The ABA Plan document, entitled American Bakers Association Retirement Plan 2002 Restatement, and the 1979 PBGC Letter which is attached as Exhibit A thereto, are attached to Lewis Brothers' Amended Answer at Exhibit 1.  (AA ¶¶ 11, 15, Ex. 1).

[4] The ABA Trust, entitled Amendment and Restatement of the American Bakers Association Retirement Trust, is attached at Exhibit 3 to the Amended Answer. (AA ¶ 45, Ex. 3).

participating employers had "negative account balances."  (AA ¶¶ 24, 25).  On the same separate

employer basis, it was determined that Lewis Brothers was among the three participating

employers having a positive balance.  (AA ¶ ¶ 26, 47).

  **B.**    **The 2006 PBGC Letter.**

   In late June 2005, Interstate Bakeries Corporation ("IBC") and Kettering Baking Co.

("Kettering"), two participating employers in the Plan, made a formal request to the PBGC to

reconsider its 1979 determination that the Plan is an aggregation of single employer plans.  (AA

Ex. 2 at 1, 2, 11; AA ¶ 28).  In response to this reconsideration request, the Plan and Sara Lee,

among others, provided to the agency submissions stating their respective positions.  (AA ¶ 29;

AA Ex. 2 at 4).  The Plan and Sara Lee argued that the Plan is an aggregation of single employer

plans for plan termination purposes and has operated as such in accordance with the 1979 PBGC

Letter.  (AA Ex. 2 at 2, 4, 8, 9, 11).

   On August 8, 2006, the PBGC issued its ruling (the "2006 PBGC Letter").[5]  (AA Ex. 2;

AA ¶ 30).  The PBGC reversed its prior position, concluding the Plan is, and has always been, a

multiple employer plan and not an aggregation of single employer plans for plan termination and

PBGC premium purposes.  (AA Ex. 2 at *passim*; AA ¶¶ 30, 35).  The effect of this change is that

participating employers with positive account balances, such as Lewis Brothers and Sara Lee,

may be required to fund the shortfall in the ABA Plan caused by employers having negative

account balances such as IBC.  (2007 Order at 4).  The PBGC made its determination effective

immediately upon the date of its issuance.  (AA Ex. 2 at 17; AA ¶¶ 32-33).

  **C.**    **Procedural Background Relevant to this Motion.**

   This action has a complicated procedural history, much of which may be omitted for

_____

   [5] The 2006 PBGC Letter is Exhibit 2 to the Amended Answer.  (AA ¶ 30, Ex. 2).

purposes of this Motion. The following facts, however, may provide useful context.

On May 3, 2006, Sara Lee commenced this action against Defendants, and on May 10, 2006, filed its First Amended Complaint (Doc. 4). On November 2, 2006, Sara Lee filed its Second Amended Complaint ("SAC") (Doc. 15). The SAC added PBGC as a defendant and asserts, in Count I, a claim against the agency seeking "to reverse and enjoin the PBGC's August 8, 2006 determination that the ABA Plan is a multiple employer pension plan and not an aggregate of single-employer pension plans." (SAC ¶ 1; *see also* ¶¶ 37-45). Sara Lee also asserted two claims against Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), purportedly on behalf of itself and its employee-participants in the Plan, in its capacity as a participating employer and "functional fiduciary" of the Plan. (SAC preamble & ¶¶ 1, 6, 47, 48, 55, 56).

In Count II, Sara Lee sought a declaration that the Plan and its Board of Trustees violated the Plan's terms by not operating as an aggregation of single employer plans as provided in the Plan and in accordance with the 1979 PBGC Letter by using assets attributable to contributions of participating employers with positive account balances to pay the benefits of employees of participating employers with negative account balances. (*See, e.g.*, SAC ¶¶ 51-53, Count II Prayer for Relief ¶¶ 3, 4). Sara Lee also sought an order prohibiting the Plan and its trustees from such further violation of the Plan's terms, compelling Defendants to seek additional contributions from other participating employers whose alleged single employer plan accounts are under-funded, and compelling Defendants to transfer additional Plan assets to a Sara Lee Bakery Plan pursuant to a Transfer Agreement between Sara Lee and the Board. (SAC ¶ 53, Count II Prayer for Relief ¶¶ 5-8, Ex. 2).

In Count III, Sara Lee asserted a breach of fiduciary duty claim under ERISA § 502(a)(3)

seeking, *inter alia*, monetary relief for itself by means of a constructive trust on Plan assets and declaratory relief for its employee-participants in the event this Court upheld the 2006 PBGC Letter. (SAC ¶¶ 1, 55, 62-64, Count III Prayer for Relief at ¶¶ 6, 7). Sara Lee argued that if this Court were to affirm the PBGC's determination that the Plan is a multiple employer plan, Defendants breached their fiduciary duties by operating it as such a plan. (SAC ¶¶ 1, 62).

On November 14, 2006, Defendants moved for dismissal of Counts II and III of Sara Lee's SAC for failure to state a claim and lack of subject matter jurisdiction. (Doc. 16).

On November 30, 2006, Defendants filed a Third Party Complaint against the PBGC and the participating employers in the Plan, seeking in Count I a ruling on the Plan's Title IV status and in Count II a review of the 2006 PBGC Letter, which Defendants assert was issued on the basis of erroneous and incomplete facts and was the result of a procedurally flawed inquiry by the PBGC. (Doc. 19). Thereafter, the PBGC and the participating employers, including Lewis Brothers on January 26, 2007 (Doc. 35), answered the Third Party Complaint. On July 19, 2007, and before this Court ruled on Defendants' motion to dismiss Sara Lee's claims against them, Lewis Brothers filed a revised motion for leave to amend its Answer and to add counterclaims against Defendants and a cross claim against the PBGC. (Doc. 77).

On September 11, 2007, in the "2007 Order," this Court ruled on Defendants' motion to dismiss the Sara Lee claims as well as on Lewis Brothers' motion for leave to amend. (Doc. 91). The Court granted Defendants' motion to dismiss Sara Lee's claims, holding Sara Lee was not authorized as a participating employer to maintain suit, and that it could not maintain suit as a fiduciary because it could not demonstrate fiduciary authority over the Plan. (2007 Order at 4-6). While granting Lewis Brothers' motion for leave to amend its answer and assert a cross-claim against the PBGC, the Court denied its motion to assert counterclaims against Defendants,

holding: "Lewis Brothers' attempt to assert substantially the same claim against the ABA Plan under § 1132 must fail for the same reason — that Lewis Brothers is a participating employer, and not a fiduciary of the plan." *Id.* at 6 n.3.

However, on March 20, 2008, the Court issued a Minute Order granting Lewis Brothers leave to file its counterclaims against Defendants, as well as its cross-claim against PBGC. That same day, Lewis Brothers filed an Amended Answer including such claims. (Doc. 91).

Lewis Brothers' Count I claim against the PBGC seeks reversal of the 2006 PBGC Letter, and is nearly identical to Sara Lee's Count I claim.

Lewis Brothers' counterclaims against Defendants (Counts II and III) are brought under section 502(a)(3) of ERISA (AA ¶¶ 43, 53), purportedly on behalf of itself and its employee-participants in the ABA Plan (*see* AA at preamble, Count II & III prayers for relief, ¶¶ 61-62). Count II seeks declaratory and injunctive relief in the event that this Court agrees with the PBGC's 2006 determination that the Plan was operated as a multiple employer plan and not as an aggregate of single employer plans by allowing cost-sharing between participating employers. Lewis Brothers seeks to have the terms of the Plan enforced, ensuring that Plan assets attributable to the company will be used to provide pension benefits only to its employee-participants, and compelling the Board to seek additional contributions from other participating employers for their employee-participants' benefits. Specifically, Count II seeks an order (1) declaring that Defendants violated the Plan, (2) compelling Defendants to seek additional contributions from participating employers whose alleged Plan accounts are under-funded and otherwise enjoining Defendants from allowing employers to the fund benefits of other employers' employee-participants, (3) compelling Defendants to segregate and maintain in a separate account funds attributable to Lewis Brothers' contributions to the Plan, and

(4) compelling Defendants to follow an instruction that Lewis Brothers may or may not give in the future to transfer such funds to another benefit plan.  (AA ¶¶ 50-51, Count II prayer for relief).[6]

In Count III, Lewis Brothers asserts that if this Court affirms the PBGC's recent determination that the Plan is a multiple employer plan, Defendants breached their fiduciary duties, in violation of the Plan documents, by operating it as such a plan.  (AA ¶¶ 61-62).  Lewis Brothers complains that the result of such a holding will be "the imposition of financial liability on Lewis Brothers, under the terms of the ABA Plan, to make additional contributions for the benefit of its own employees."  (AA ¶ 62).  The relief sought by Count III is (1) a constructive trust on Plan assets attributable to Lewis Brothers' contributions, (2) monetary relief to make Lewis Brothers whole by means of a constructive trust on any assets in the possession of Defendants "that are not identifiable contributions of any Participating Employer," (3) the injunctive relief sought in Count II, (4) declarations that Defendants breached their duties and Plan terms, (5) an accounting of all funds presently in the possession of Defendants. (AA Count III prayer for relief).

The instant motion seeks dismissal of Lewis Brothers' two counterclaims against Defendants.

---

[6] While the heading in Count II makes reference to a transfer agreement, this appears to have been inadvertently copied from Sara Lee's Count II.  Lewis Brothers has asserted no claim with regard to a transfer agreement, has not alleged one exists, and in fact it, unlike Sara Lee, has not entered into a transfer agreement with the Board.  *See, e.g.*, AA ¶ 13.

**ARGUMENT**

A.    <u>Standards of Review.</u>

    1.    <u>Fed. R. Civ. P. 12(b)(1) Standard.</u>

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also GMC v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction"). Because "subject-matter jurisdiction is 'an Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (*quoting Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Does v. Bush*, 2006 U.S. Dist. LEXIS 79175, *12 (D.D.C. Oct. 31, 2006); *Kinard v. United States DOJ*, 2006 U.S. Dist. LEXIS 43410, *5 (D.D.C. June 27, 2006). The court may dismiss a complaint for lack of subject matter jurisdiction if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), *vacated on other grounds*, 542 U.S. 155 (2004).

Because subject matter jurisdiction focuses on the court's power to hear the claim, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia*

*v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

        2.    Fed. R. Civ. P. 12(b)(6) Standard.

      A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to set forth facts stating a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *Cook v. Billington*, 2008 U.S. Dist. LEXIS 26324, at *14 (D.D.C. Mar. 31, 2008) (Kennedy, J.) ("Plaintiffs must provide enough facts to 'state a claim to relief that is plausible on its face.'"). While the court must accept all well-pled allegations of fact, allegations that are overbroad and unsupported by specific factual averments are insufficient to state a claim. *Hartline v. Sheet Metal Worker's Nat'l Pension Fund*, 134 F. Supp. 2d 1, 8 (D.D.C. 2000), *aff'd*, 286 F.3d 598 (D.C. Cir. 2002). The court also need not accept as true the plaintiff's legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). Nor need the court accept unsupported assertions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. *Miree v. De Kalb County*, 433 U.S. 25, 27 (1977); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In addition, the court need not assume the existence of facts that would eliminate a defense. *Hartline*, 134 F. Supp. 2d at 8. The court may consider the allegations of the complaint, documents attached to or specifically referred to in the complaint, matters of which the court may take judicial notice, and matters of public record. *Id.*; *EEOC v. St. Francis Xavier*

– 10 –

*Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

**B.      Counts II & III Must be Dismissed for Lack of Standing and Subject Matter Jurisdiction Because Lewis Brothers is a "Non-Enumerated Party" Under ERISA.**

Lewis Brothers asserts two bases for its standing to bring an ERISA § 502(a)(3) claim; namely, (1) as a fiduciary of the Plan, and (2) as a participating employer in the Plan.  (AA ¶¶ 6, 13, 45, 54).  But Lewis Brothers cannot establish its standing or the subject matter jurisdiction of this Court on either of these bases.  The Amended Answer sets forth no facts showing that Lewis Brothers is a Plan fiduciary, and the Plan document does not support such an allegation.  Lewis Brothers' status as a participating employer also is insufficient because employers are not among the classes of persons allowed to bring section 502(a)(3) claims under the express terms of ERISA.  As a "non-enumerated party" under the statute, Lewis Brothers – like Sara Lee before it – has no standing to assert a claim on its own behalf *or* on a representational basis on behalf of its employee-participants.  Furthermore, as an employer and not a union, Lewis Brothers is not in fact a representative of its employee-participants even for purposes of Article III standing.

Section 502 of ERISA enumerates those classes of persons who may bring an ERISA civil action.  29 U.S.C. § 1132.  Under the subsection under which Lewis Brothers brings suit, section 502(a)(3) (*see* AA ¶¶ 43, 53), only plan participants, beneficiaries, and fiduciaries have standing to assert an action.  29 U.S.C. § 1132(a)(3).  Section 502(e)(1) likewise restricts the federal courts' subject matter jurisdiction to suits brought by these persons and the Secretary of Labor.  29 U.S.C. § 1132(e)(1).  These statutory lists are "exclusive."  *Systems Council EM-3 v. AT&T Corp.*, 972 F. Supp. 21, 27 (D.D.C. 1997), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998) (*citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27 (1983) (ERISA "does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of

- 11 -

action"); *and Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71 (D.C. Cir. 1987)); *see also Hermann Hosp. v. MEBA Medical & Ben. Plan*, 845 F.2d 1286, 1288-89 (5th Cir. 1988) (adhering to a "literal construction" of Congress' enumeration of the parties that may bring civil actions under ERISA); *Crown Cork & Seal Co. v. Teamsters Pension Fund*, 549 F. Supp. 307, 310 n.3, 311 (E.D. Pa. 1982), *aff'd mem.*, 720 F.2d 661 (3d Cir. 1983) ("Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) (1976) clearly restricts the categories of individuals empowered to bring a civil action to four groups of persons").

The allegations in the counter- and cross-claim section of the Amended Answer are insufficient to show Lewis Brothers is a Plan fiduciary.[7]  On its face, the AA fails to assert any basis to conclude that Lewis Brothers has *any* discretionary authority or responsibility over the management or administration of the Plan or its assets.  Lewis Brothers' assertion (AA ¶¶ 6, 13) that it is a fiduciary to the Plan because it may seek to enter into a contract with the Board (like the Transfer Agreement Sara Lee entered into) providing for a transfer of Plan assets to a different plan must be rejected.  Decisions to modify a plan, partially terminate it, or transfer its assets to another plan are not made in a fiduciary role, but in a business or settlor role.  *Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (1996) (holding that an employer does not act as a fiduciary when it establishes, modifies or terminates an ERISA-covered pension plan); *Steinman v. Hicks*, 352 F.3d 1101, 1105 (7th Cir. 2003) ("a decision to transfer trust funds from one trust

---

[7] Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  "Simply stated, whether an individual is an ERISA fiduciary turns upon whether the individual has discretionary authority or responsibility in the administration of a plan or regarding the disposition of plan assets." *International Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 828 (D.D.C. 1996).

to another . . . is not a fiduciary act"); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718-20 (6th Cir. 2000) (holding that the transfer of assets from one plan to another was not a decision subject to ERISA's fiduciary obligations); *Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1379-80 (D.C. Cir. 1998) (holding employer's allocation of a plan's assets between itself and a company to be spun-off was not a fiduciary decision).  A party to a contract involving a transfer of plan assets does not acquire fiduciary obligations over the transferor plan simply by negotiating the terms of the deal with the plan's fiduciaries.  *Flanigan v. GE*, 242 F.3d 78, 87 (2d Cir. 2001). And Lewis Brothers' ability to choose a new plan and appoint a plan administrator for it obviously does not give it fiduciary authority, as defined in ERISA, *over the ABA Plan*, the party to these claims.  *See* 29 U.S.C. § 1002(21)(A); 2007 Order at 5 (explaining, "the only way that Sara Lee could maintain its suit . . . is if it were a 'fiduciary' *with respect to the Plan*.").

The Plan document also does not show that Lewis Brothers had any fiduciary responsibility or authority.  In fact, Lewis Brothers admits that under the Plan it is the Plan's "Board of Trustees [that] has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund." (AA ¶ 11; *see also* ¶ 8).  Lewis Brothers' ability under ABA Plan ¶ 11.02 to discontinue its participation in the Plan and cause a partial termination does not give it any discretionary authority over the Plan's assets – as Lewis Brothers admits (AA ¶ 13), on partial termination Plan assets are allocated and distributed to participants under the terms of the Plan (ABA Plan ¶¶ 5.05, 11.01, 11.02), and administration of such is conducted by the Board (ABA Plan ¶¶ 5.05, 11.01), not by any participating employer.  Nor would Lewis Brothers' decision to cause a partial termination of the Plan be made in a fiduciary capacity.  *Lockheed*, 517 U.S. at 890-91.  Since Lewis Brothers bears no discretionary authority required to render it a fiduciary under the Plan,

its claims should be dismissed in their entirety.[8]

Furthermore, since any participating employer in any multiple employer plan or aggregate of single employer plans may seek to discontinue its participation, enter into a contract for the transfer of plan assets to a new plan, and choose a new plan and its administrator, Lewis Brothers' theories would swallow the well-established rule, described below, that participating employers are not plan fiduciaries. The Court should decline Lewis Brothers' invitation to deviate from the well-established precedent of this and other circuits.[9]

Lewis Brothers also cannot assert standing based on its status as a non-fiduciary

---

[8] *See Trs. of the Sheet Metal Workers Prod. Workers Welfare Fund v. Southbay Air Sys., LLC*, 2006 U.S. Dist. LEXIS 66944, *15 (E.D.N.Y. Sept. 19, 2006) (dismissing employer's ERISA § 502(a)(3) claim because "there are no allegations in the [Complaint] upon which this Court could conclude that the [employer] is a fiduciary with ERISA standing"); *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, 361 F. Supp. 2d 1280, 1287-89 (D. Kan. 2005) (dismissing employer's ERISA claims for lack of standing because plan document showed employer was a fiduciary for only a narrow purpose unrelated to its claims and it lacked fiduciary standing to assert its claims); *Healthtek Solutions, Inc. v. Fortis Bens. Ins. Co.*, 274 F. Supp. 2d 767, 775-76 (E.D. Va. 2003) (employer-plan sponsor was not a fiduciary with ERISA standing where insurance company, and not employer, bore the discretionary authority over plan); *Sanofi-Synthelabo Inc. v. Eastman Kodak Co.*, 2000 U.S. Dist. LEXIS 15676, *10 (S.D.N.Y. Oct. 27, 2000) (dismissing ERISA claims by employer-plan sponsor whose complaint "has not pleaded any facts to demonstrate that it is a fiduciary," but only alleged that it had undertaken to appoint a trustee and financial advisors to manage the plan assets); *McDermott Food Brokers, Inc. v. Kessler*, 899 F. Supp. 928, 932 (N.D.N.Y. 1995) (remanding to state court because plaintiff employer did not have standing as a fiduciary for purposes of the ERISA claims asserted on the face of the complaint); *Bernard Food Indus. v. Heatherton Staff Leasing*, 1994 U.S. Dist. LEXIS 4941, *5, 9 (N.D. Ill. Apr. 15, 1994) (granting motion to dismiss where "the complaint's allegations indicate no 'fiduciary' activities on the part of" the employer-plaintiff).

[9] Should the Court credit Lewis Brothers' theories, the Plan's other participating employers will likely be surprised to learn that they are ERISA fiduciaries and concerned with the implications of that status. If they were fiduciaries, they potentially would be subject to co-fiduciary liability for the alleged breaches of others, including those alleged in Count III. ERISA § 405, 29 U.S.C. § 1105. They may also be liable under ERISA § 404 for their own breaches, including potentially here not mitigating the Plan's under-funding problem by prudently fulfilling their alleged fiduciary duty to enforce the ABA Plan and Trust (AA ¶ 45) in the 27 years since the 1979 PBGC Letter was issued.

participating employer.[10]  As this Court has already ruled in dismissing Sara Lee's claims,

employers do not have standing to assert ERISA Title I breach of fiduciary duty claims *qua*

employers and the federal courts lack jurisdiction over their claims because employers are not

among the parties enumerated in ERISA's standing and jurisdictional provisions.  2007 Order at

4-6.[11]

Nor does Lewis Brothers' employer status give it the ability to claim representational

standing on behalf of its employee-participants because it must *itself* fall into one of ERISA's

enumerated classes, *i.e.*, as a fiduciary.  *Sys. Council EM-3 v. AT&T Corp.*, 972 F. Supp. 21, 27-

28 (D.D.C. 1997), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998) (holding ERISA does not allow

representational standing by non-enumerated party).  In any event, Lewis Brothers cannot argue

that it is a representative of its employees even for purposes of Article III standing, much less

ERISA statutory standing purposes, because it is its employee-participants' *employer* and not

---

[10] Notably, Sara Lee conceded this point in its response to Defendants' motion to dismiss.
Doc. 20 at 4 ("In order to plead [Counts II and III], Sara Lee is required to be considered a
fiduciary under the ABA Plan.").  The Court also applied the principle in its dismissal order.  *See*
2007 Order at 5 ("An employer who contributes to a plan administered by another is not one of
the persons explicitly authorized to sue under this provision of ERISA.. . . Thus, the only way
that Sara Lee could maintain its suit . . . is if it were a 'fiduciary' with respect to the Plan.").

[11] *Accord Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71
(D.C. Cir. 1987) (affirming dismissal of breach of fiduciary duty claims brought by employer
against multiemployer plan and its trustees for lack of standing); *Tuvia Convalescent Ctr., Inc. v.
Nat'l Union of Hosp. & Health Care Employees*, 717 F.2d 726, 729-30 (2d Cir. 1983) (holding
that employer did not have standing under ERISA § 1132); *Pressroom Unions-Printers League
Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 891-93 (2d Cir. 1983) (ERISA
§ 1132(e)(1) viewed as exclusive jurisdictional grant, thus excluding suits by employers);
*Healthtek*, 274 F. Supp. 2d at 775 n.2 ("Any argument that an employer has standing to sue
under ERISA based on their status as an employer must fail. . . . The Court of Appeals for the
Fourth Circuit and every other circuit court to address the question [except the Ninth] have held
that employers must fit into one of the enumerated categories in order to have standing.");
*County, Mun. Emples. Supervisors & Foreman's Union Local No. 1001 v. Laborers' Pension
Fund*, 240 F. Supp. 2d 827, 831-32 (N.D. Ill. 2003) (although union was participating employer
in multiemployer plan, it lacked standing to assert ERISA claims).

their union. *County, Mun. Emples.*, 240 F. Supp. 2d at 831 (union that asserted ERISA action as an employer could not prove representational standing).[12]

Finally, while Lewis Brothers repeats Sara Lee's argument that ¶ 11.03 of the ABA Trust gives it standing to bring these claims (AA ¶¶ 45, 54), this Court has already disposed of this argument for four reasons:

> First, . . . it is the Board of Trustees which is the "Named Fiduciary" of the Plan and which "has the authority and responsibility to control and manage the operation and administration of the ABA Plan and to manage and control the assets of the Fund." . . . Second, . . . Sara Lee's authority to enforce the Trust is irrelevant because the Trust is not the same as the Plan — by its very terms, the Trust agreement merely covers the creation of the Trust, which is the "funding medium" for the Plan, [ABA Trust] ¶ 2.01; the Plan, however, is the "governing document" which sets forth the administration and management of the Plan, . . . . Moreover, the right to enforce the Trust does not constitute a fiduciary function for purposes of ERISA as it does not involve discretionary authority or responsibility for administration of the Plan. Finally, no contract could empower Sara Lee to bring this suit in federal court if Sara Lee is not, in fact, a fiduciary under the terms of the statute which gives rise to jurisdiction over the cause of action. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."). Accordingly, the ABA Plan's motion to dismiss must be granted.

2007 Order at 5-6. For these same reasons, Lewis Brothers has no ERISA standing on the basis of ¶ 11.03 of the ABA Trust.[13]

Defendants therefore respectfully request dismissal of Lewis Brothers' Counts II and III claims for lack of subject matter jurisdiction and standing, pursuant to Rules 12(b)(1) and 12(b)(6).

---

[12] Sara Lee appeared to concede these points by making no argument against them in its response to Defendants' motion to dismiss.

[13] *See also Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003); *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989); *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982).

C.    **Count II Does Not State a Claim Because the Relief it Seeks is Not "Appropriate" Under ERISA § 502(a)(3), and its Request for an Order Compelling Defendants to Follow a Future Instruction to Transfer Plan Assets is Not Ripe for Review.**

Even apart from lack of standing, Count II should be dismissed.  The substantive relief that Count II seeks is flatly inconsistent with the basic premise of the claim, and unavailable as a matter of law.[14]  Lewis Brothers repeatedly states that it seeks relief only in the event this Court agrees with the PBGC's conclusion in its 2006 Letter that the Plan was operated as a multiple employer plan rather than as an aggregate of single employer plans.[15]  (AA ¶¶ 48-51).  That is, Lewis Brothers has a Count II dispute only if the Court holds that the Plan is a multiple employer plan; Lewis Brothers has no dispute if the Plan is an "aggregate" plan because then its contributions will be used only for the benefit of its own employee-participants.  But if the Plan is a multiple employer plan, by definition "all plan assets are available to pay benefits to all plan

_____

[14] In the absence of any available substantive relief, empty declarations that Defendants breached their duties are also unavailable for the reasons stated in Section D.2, *infra*.

[15] In an earlier opinion, the Court explained the differing characteristics of these two types of plans:

> Under ERISA, employers are permitted to join together to provide pension benefits to their employees. There are two types of such plans: (1) a "multiple employer plan," which is a plan "maintained by two or more contributing sponsors [employers] . . . under which all plan assets are available to pay benefits to all plan participants and beneficiaries," 29 C.F.R. § 4001.2; and (2) an "aggregate of single-employer plans,"  which is an association of separate plans where each employer's contributions are maintained in separate accounts or effectively restricted so that the funds of each account are only used to pay the benefits of employees of that particular sponsor, and not the benefits of another sponsor's employees, *see Pension Benefit Guar. Corp. v. Artra Group, Inc.*, 972 F.2d 771, 773 (7th Cir. 1992); *Pension Benefit Guar. Corp. v. Potash*, 1986 U.S. Dist. LEXIS 30987, 1986 WL 3809, at *1--2 (W.D.N.Y. Mar. 26, 1986). Essentially, an aggregate plan is operated as a collection of separate plans sharing administrative costs, while a multiple-employer plan is operated as a single plan sharing all assets and liabilities.

*Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 32, 35 (D.D.C. 2007).

participants and beneficiaries."  29 C.F.R. § 4001.2; *Nowell v. Central Serv. Ass'n*, 106 F. Supp.

2d 888, 894 (S.D. Miss. 2000) (citing court and PBGC decisions setting forth this definition).  In

seeking (1) an order compelling Defendants to require participating employers to make up any

contribution shortfalls they would have if the Plan's liabilities were calculated on a separate

employer basis, and (2) to segregate its contributions in a separate account that may be

transferred out of the Plan's trust at Lewis Brothers' direction, Lewis Brothers asks the Court to

order Defendants to operate the Plan as an aggregate of individual plans.  However, the

underlying premise of this claim is a determination by this Court that the Plan is a multiple

employer plan.  Thus, such an order would effectively require the Plan to operate in a manner

contrary to law and simply cannot constitute "appropriate" equitable relief within ERISA

§ 502(a)(3)'s meaning.[16]

In the alternative, that portion of Count II that seeks an order compelling Defendants to

follow an instruction that Lewis Brothers may or may not give in the future to transfer Plan

assets to another benefit plan must be dismissed because such a claim is not ripe for review.  No

such instruction has been given or refused.  Whether to authorize such a transfer is a decision for

the Board of Trustees to make in the first instance, based on the facts and circumstances then

prevailing, and free from the legal impediments to such a transfer that are at issue in this

litigation.  Any potential future disputes that might arise concerning such a transfer request –

apart from the questions at issue in this case – are simply not ripe for resolution.  *See Systems

Council EM-3*, 972 F. Supp. at 39 (explaining Art. III and prudential components of the doctrine

of ripeness).  Furthermore, such an order is not "appropriate" under ERISA § 502(a)(3), which

---

[16] Section 502(a)(3) authorizes a civil action: "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  29 U.S.C. § 1132(a)(3).

seeks to provide equitable relief enforcing a plan's or ERISA's terms or redressing a violation of them. An order bestowing on Lewis Brothers the right to unilaterally order a transfer of Plan assets does neither, and in fact is contrary to the Plan.[17]

### D.    Count III Must be Dismissed Because Defendants Bore No Fiduciary Duty to Lewis Brothers and None of the Relief Requested May be Awarded.

Count III likewise is subject to dismissal for reasons apart from lack of standing and subject matter jurisdiction. Count III asserts an ERISA § 502(a)(3) breach of fiduciary duty claim against Defendants on behalf of Lewis Brothers and its employee-participants. The crux of the relief requested is (1) money payable *to Lewis Brothers* and (2) various orders compelling Defendants to operate the Plan as an aggregate of single employer plans. Any claim brought on behalf of Lewis Brothers necessarily fails as a matter of law because Defendants owed *no* ERISA fiduciary duties to it; furthermore, Lewis Brothers does not bring an equitable action or seek equitable relief as required for an ERISA § 502(a)(3) claim. And, as was explained in Section C *supra*, relief compelling Defendants to operate the Plan as an "aggregate" plan is contrary to the premise of this claim that the Court has held the Plan to be a multiple employer plan. While Lewis Brothers also seeks declarations that Defendants breached their duties, these requests should be dismissed as unavailable under ERISA § 502(a)(3) and, because no substantive relief is available, as an empty and futile gesture.

### 1.    Count III must be dismissed to the extent it is brought on behalf of Lewis Brothers.

Lewis Brothers alleges that by operating the Plan as a multiple employer plan for Title IV purposes, Defendants breached a fiduciary duty owed under ERISA *to Lewis Brothers*. The short answer to this question is that under ERISA's fiduciary duty provision, ERISA § 404(a)(1),

---

[17] Lewis Brothers alleges *no right* to order such a transfer under the Plan, but only that it may seek to enter into an agreement with the Board for such a transfer. (AA ¶ 13).

– 19 –

fiduciary duties are owed *solely* to participants and beneficiaries of a plan, and not to employers. 29 U.S.C. § 1104(a)(1) (stating, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). For this reason, when a participating employer in a multi-employer plan claimed that the plan owed it a fiduciary duty under ERISA, this Court rejected the claim, holding: "**Pension Funds have no fiduciary duty to employers.**" *Nat'l Shopmen Pension Fund v. Burtman Iron Works, Inc.*, 148 F. Supp. 2d 60, 67 (D.D.C. 2001) (emphasis added) (*citing Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113, 119 (3d Cir. 1988); *and Alton Mem'l Hosp. v. Metro. Life Ins. Co.*, 656 F.2d 245, 249 (7th Cir. 1981)); *cf.* Section B, *supra*, and cases cited therein showing employers do not have standing to bring ERISA claims. Thus, Lewis Brothers cannot state a claim that Defendants breached a fiduciary duty to it,[18] and its claims for relief should be dismissed in their entirety.[19]

Even if, *arguendo*, Lewis Brothers has standing to assert this claim and can state a claim that Defendants breached a fiduciary duty to it, it cannot be awarded the monetary relief it seeks. It is well-established that only equitable relief – and not money damages – are available under ERISA § 502(a)(3). Notwithstanding its efforts to characterize Count III as an equitable claim seeking a constructive trust, it is nothing more than a claim at law for compensatory damages. Lewis Brothers must demonstrate that the basis for its claim is equitable in order for its claim to come within ERISA § 502(a)(3). *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 363 (2006) ("While Mid Atlantic's case for characterizing its relief as equitable thus does not falter because

---

[18] Sara Lee notably disavowed the claim brought on its own behalf, making no argument supporting such a claim in its response to Defendants' motion to dismiss. *See* Doc. 20 at 13, n. 4.

[19] To the extent Lewis Brothers may be claiming to seek to enforce the terms of a participation agreement, the plain language of § 502(a)(3) *only* authorizes equitable relief to enforce the terms of a *plan or ERISA*, and not contracts such as a participation agreement.

of the nature of the recovery it seeks, Mid Atlantic *must still establish that the basis for its claim is equitable*.") (emphasis added).  To meet this prong, Lewis Brothers must demonstrate that it has a claim of right or entitlement – that it is in effect, the "true owner"[20] – to specific, identifiable property in the Defendants' possession.  Moreover, that claim of right or entitlement must be based on the terms of the plan itself.  *See id.* at 1874-75.

Lewis Brothers, however, can point to no specific, identifiable fund apart from the Plan's Trust Fund, and that Trust Fund constitutes the "general assets" of the Plan.[21]  Nor can Lewis Brothers identify any particular portion of that Trust Fund to which it has a claim of right or entitlement under the ABA Plan's terms.[22]  *See Pell v. E.I. Dupont De Nemours & Co.*, Civ. Action No. 02-21 KAJ, 2006 U.S. Dist. LEXIS 73053, *40-42 (D. Del. Oct. 6, 2006), *reconsideration denied by*, 2006 U.S. Dist. LEXIS 84773, *5-7 (D. Del. Nov. 22, 2006) (denying restitution in the form of a constructive trust where plaintiffs sought assets of a particular fund but did not otherwise meet the standards for equitable restitution set forth in *Great-West* and *Sereboff*).  And, indeed, Lewis Brothers' principal complaint in Count III is that the assets of the Plan are not segregated on an employer-by-employer basis, but are available to satisfy the

---

[20] *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) ("money or property [must be] identified as *belonging* in good conscience to the plaintiff" such that the plaintiff "was, in the eyes of equity, the true owner").

[21] To hold that a plan's trust was a sufficiently identifiable fund for § 502(a)(3) purposes would effectively make monetary relief available in any case in which a plan is a defendant; a plan's trust fund always is specifically identifiable.

[22] Lewis Brothers' prayers for relief themselves flatly refute any claim to entitlement.  In its seventh prayer for relief it seeks contributions it made "for the benefit of its own employees."  Obviously these are not Lewis Brothers' assets, as the assets of the Plan "belong" only to the participants and beneficiaries of the Plan and may be used only for the "exclusive purpose" of providing them benefits.  29 U.S.C. § 1104(a).  Similarly, Lewis Brothers admits the assets sought in the eighth prayer for relief do not belong to it, as they are "not identifiable contributions of any Participating Employer."

benefits of any ABA Plan participant.

In addition to stating an equitable claim, the relief Lewis Brothers seeks must be equitable in nature to proceed with an ERISA § 502(a)(3) claim. The equitable relief allowed under § 502(a)(3) has been narrowly construed. The Supreme Court has held "that the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (*quoting Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)). As the Supreme Court has also made clear, "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Bowen v. Massachusetts*, 487 U.S. 879, 918-919 (1988) (Scalia, J. dissenting) (as quoted with approval in *Great-West*, 534 U.S. at 210). "[M]oney damages are, of course, the classic form of *legal* relief.'" *Great-West*, 534 U.S. at 210 (*quoting Mertens*, 508 U.S. at 255). It is therefore well-established that "compensatory and punitive damages are not considered 'equitable relief' for the purposes of [§ 502(a)(3)]." *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 583 (6th Cir. 2002).

Monetary relief that is measured by a plaintiff's loss, rather than a defendant's gain, traditionally has been viewed as a form of money damages, unavailable under ERISA § 502(a)(3). *See Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1061 (8th Cir. 2006); *Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 482-83 (6th Cir. 2001). To the extent Lewis Brothers is requesting monetary relief from Defendants to compensate it or otherwise make it whole for any additional contributions it may have to make as a result of the Board's alleged breach of a duty to operate the Plan as an "aggregate," such relief is a form of legal, rather than

equitable, relief, and thus not available under § 502(a)(3), despite Lewis Brothers' careful characterization of the claim as one for a constructive trust. *See Mertens*, 508 U.S. at 255-56 (holding that a claim that sought "nothing other than compensatory *damages*" was outside the scope of ERISA § 502(a)(3)); *Great-West*, 534 U.S. at 211 n.1 (cautioning that "lawyerly inventiveness" cannot transform a claim for legal relief into one for equitable relief); *Ramsey v. Formica Corp.*, 398 F.3d 421, 425 (6th Cir. 2005) (holding, ERISA "does not provide a cause of action for legal actions for monetary damages disguised as suits in equity").

To the extent Lewis Brothers is seeking monetary damages from the Board for its alleged breach of fiduciary duty in prayer for relief number 8,[23] such relief is likewise not available because it is not "equitable" within the meaning of ERISA § 502(a)(3). *Great-West*, 534 U.S. 204. Monetary relief in the form of restitution may be considered equitable only if it "seek[s] not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214; *see also Sereboff*, 547 U.S. at 362; *Callery v. United States Life Ins. Co.*, 392 F.3d 401 (10th Cir. 2004). Here, the Amended Answer does not allege that there are any "particular funds or property in the [Board members'] possession" (*Great-West,* 534 U.S. at 213-14) upon which the Court could place a constructive trust. Instead, "the requested monetary relief is in the nature of legal relief because it seeks to impose personal liability on the defendant, is measured by the plaintiffs' loss, and does not involve traceable funds that belong to the plaintiff and are being unlawfully held by the defendant." *Calhoon v. TWA*, 400 F.3d 593, 598 (8th Cir. 2005). Accordingly, Lewis Brothers' claim for monetary relief from the Board cannot be asserted under ERISA § 502(a)(3). *Great-West*, 534 U.S. at 221.

---

[23] The eighth prayer for relief is vague, in that it does not indicate whether the assets Lewis Brothers seeks from the Board are Plan assets only. Sara Lee, notably, abandoned its attempt to impose personal liability on the Board members, choosing to seek Plan assets only. (Doc. 20 at 22-23).

2.    <u>The remaining relief requested under Count III cannot be awarded.</u>

For the reasons stated in Section C, *supra*, the various orders Lewis Brothers seeks

compelling Defendants to operate the Plan as an aggregate of single employer plans, including to

segregate assets for its employee-participants or create a constructive trust for them, are

unavailable because they are contrary to the premise of this claim that the Court has held the

Plan to be a multiple employer plan.  Such orders would effectively require the Plan to operate in

a manner contrary to law and simply cannot constitute "appropriate" equitable relief within

ERISA § 502(a)(3)'s meaning.  Moreover, these are not equitable claims for the reasons stated in

Section D.1, *supra*, as the employee-participants cannot lay claim to any identifiable funds if the

Plan is a multiple employer plan.

Because Lewis Brothers cannot obtain any substantive relief for the reasons stated above,

its request for a declaration that Defendants breached their fiduciary duty cannot in and of itself

state a claim for which relief may be granted.  Dismissal is appropriate under these

circumstances because: "Such a declaration, in the absence of any other accompanying

meaningful and tangible relief the Court can award, would be an empty and futile gesture."

*Ramsey v. Formica Corp.*, 2006 U.S. Dist. LEXIS 966, *14 n.2, *16 (S.D. Ohio Jan. 5, 2006)

(granting motion to dismiss ERISA claims); *see also Davis v. Liberty Mut. Ins. Co.*, 871 F.2d

1134, 1137 (D.C. Cir. 1989) (holding, "Inasmuch as the grant of declaratory relief would . . .

constitute a hollow exercise, we affirm the District Court's dismissal of claims under [ERISA]

section 1133.").

Similarly, the declaration Lewis Brothers seeks must also be denied because it is not an

equitable form of relief under ERISA § 502(a)(3).  *Yoon v. Fordham Univ. Faculty & Admin.*

*Ret. Plan*, 2004 U.S. Dist. LEXIS 26070 (S.D.N.Y. Dec. 28, 2004), *aff'd*, 173 Fed. Appx. 936

(2d Cir. 2006).  As in *Yoon*, Lewis Brothers' "prayer for declaratory relief is merely a prelude to a claim for damages."  2004 U.S. Dist. LEXIS 26070 at *44.  As the Second Circuit observed, such claims are "inherently legal rather than equitable in nature." 173 Fed. Appx. at 941; *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763 (7th Cir. 2003) (Court distinguished between equitable and declaratory relief, asserting that the plaintiffs could not have sued for declaratory relief under § 502(a)(3) because the declaration they sought "was merely a prelude to a request for damages").  Like *Yoon*, the court in *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002, 1024-26 (S.D. Ohio 2006), dismissed the claims asserted under ERISA § 502(a)(3) in their entirety where the plaintiffs argued their claims should survive to the extent they sought a declaration (as well as other relief such as a constructive trust).  The *Cardinal* court correctly held: "though Plaintiffs try to mask their requested relief as equitable, in truth, it is nothing more than 'compensatory damages': monetary relief for the losses their plan sustained as a result of the alleged breach of fiduciary duties."  424 F. Supp. 2d at 1026.  This Court should likewise reject Lewis Brothers' attempt to "mask" its requested relief in this manner.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that Lewis Brothers' Count II and III counterclaims be dismissed with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: May 5, 2008                          Respectfully submitted,

                                            STEPTOE & JOHNSON LLP

                                            /s/ Paul J. Ondrasik, Jr.
                                            Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
                                            Edward R. Mackiewicz (D.C. Bar # 944884)
                                            Ryan T. Jenny (D.C. Bar # 495863)
                                            1330 Connecticut Avenue, N.W.
                                            Washington, DC  20036-1795
                                            Tel:  (202) 429-3000
                                            Fax:  (202) 429-3902

ANNE H.S. FRASER, P.C.
Anne H.S. Fraser (D.C. Bar # 349472)
1320 19th Street, N.W., Suite 200
Washington, DC  20036-1637
Tel:  (202) 466-4009
Fax:  (202) 466-4010

**Counsel for American Bakers Association
Retirement Plan and Board of Trustees of the
American Bakers Association Retirement Plan**

<u>**CERTIFICATE OF SERVICE**</u>

   I, Edward R. Mackiewicz, hereby certify that a true and exact copy of the foregoing American Bakers Association Retirement Plan's and Board of Trustees' Motion to Dismiss Lewis Bros. Bakeries Inc.'s Count II and III Counterclaims, the Memorandum in Support thereof and the Proposed Order, have been served on the following parties this 5th day of May, 2008, as indicated below:

*VIA ELECTRONIC FILING:*

M. Miller Baker
Sarah E. Hancur
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC  20005-3096
(202) 756-8233

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL  60606
(312) 984-3606

**Attorneys for Plaintiff Sara Lee Corp.**

Edward J. Meehan
David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., NW
Washington, DC 20005
(202) 371-7000

Amanda S. Williamson
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606
(312) 407-0700

Carol Connor Cohen
Arent Fox, LLP
1050 Connecticut Ave., NW
Washington, DC  20036
(202) 857-6054

**On behalf of Third-Party Defendant Interstate Brands Corporation**

James Hamilton
Bingham McCutchen
2020 K Street, NW
Washington, DC  20006
(202) 373-6026

**On behalf of Third-Party Defendant American Bakers Association**

D. Christopher Ohly
Roger Pascal
Schiff Hardin LLP
1666 K Street, NW  Suite 300
Washington, DC  20006
(202) 778-6400

Sonia Macias Steele
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL  60606
(312) 258-5500

**On behalf of Third-Party Defendant Lewis Brothers Bakery**

Lonie A. Hassel
Groom Law Group
1701 Pennsylvania Ave., NW
Washington, DC  20006
(202) 857-0620

**On behalf of Third-Party Defendant Harris Baking Co.**

Israel Goldowitz, Chief Counsel
Charles Finke, Deputy Chief Counsel
Michael Miller, Assistant Chief Counsel
Paula Connelly, Assistant Chief Counsel
Marc Pfeuffer, Attorney
Mark Blank, Attorney
PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.
Washington,  DC  20005

**On behalf of Defendant Pension Benefit Guaranty Corporation**

*The following individuals have been served VIA FIRST CLASS MAIL:*

James R. Kettering, Jr.
President
Kettering Baking Co.
729 Coleman Avenue
Fairmont, WV  26554

**On behalf of Third-Party Defendant Kettering Baking Co.**

Bernard Baker
President
Jenny Lee Bakery, Inc.
620 Island Avenue
McKees Rock, PA  15136

**On behalf of Third-Party Defendant Jenny Lee Bakery, Inc.**

/s/ Edward R. Mackiewicz_____
Edward R. Mackiewicz
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036
Tel:  (202) 429-3000
Fax: (202) 429-3902