# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SARA LEE CORPORATION, et al.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06-CV-0819-HHK |
| v. ) | Hon. Henry H. Kennedy, Jr. |
| ) | |
| **AMERICAN BAKERS ASSOCIATION** ) | |
| **RETIREMENT PLAN; and BOARD OF** ) | **LEWIS BROTHERS BAKERIES, INC.'S** |
| **TRUSTEES OF THE AMERICAN** ) | **OPPOSITION TO AMERICAN** |
| **BAKERS ASSOCIATION RETIREMENT** ) | **BAKERS ASSOCIATION'S MOTION** |
| **PLAN,** as Administrator of The American ) | **TO DISMISS COUNTS II AND III OF** |
| Bakers Association Retirement Plan, ) | **THE COUNTERCLAIM** |
| ) | |
| and ) | |
| ) | |
| **PENSION BENEFIT GUARANTY** ) | |
| **CORPORATION,** ) | |
| ) | |
| Defendants. ) | |
| ) | |
| **AMERICAN BAKERS ASSOCIATION** ) | |
| **RETIREMENT PLAN; and BOARD OF** ) | |
| **TRUSTEES OF THE AMERICAN** ) | |
| **BAKERS ASSOCIATION RETIREMENT** ) | |
| **PLAN,** as Administrator of The American ) | |
| Bakers Association Retirement Plan, ) | |
| ) | |
| Third Party Plaintiffs, ) | |
| Counterclaimants, and Cross-Claimants, ) | |
| ) | |
| v. ) | |
| ) | |
| **SARA LEE CORPORATION,** ) | |
| ) | |
| Respondent, ) | |
| ) | |
| **PENSION BENEFIT GUARANTY** ) | |
| **CORPORATION,** ) | |
| ) | |
| Cross-Defendant, ) | |
| ) | |

|  |  |
|---|---|
| and | ) |
|  | ) |
| **KETTERING BAKING CO.,** | ) |
| **INTERSTATE BRANDS CORP.,** | ) |
| **LEWIS BROS. BAKERIES, INC.,** | ) |
| **HARRIS BAKING CO., INC.,** | ) |
| **AMERICAN BAKERS ASSOCIATION, and** | ) |
| **JENNY LEE BAKERY, INC.** | ) |
|  | ) |
| Third-Party Defendants. | ) |
|  | ) |

---

|  |  |
|---|---|
| **LEWIS BROS. BAKERIES, INC.,** | ) |
|  | ) |
| Counterclaimants, and Cross-Claimants, | ) |
|  | ) |
| v. | ) |
|  | ) |
| **AMERICAN BAKERS ASSOCIATION** | ) |
| **RETIREMENT PLAN; and BOARD OF** | ) |
| **TRUSTEES OF THE AMERICAN** | ) |
| **BAKERS ASSOCIATION RETIREMENT** | ) |
| **PLAN,** as Administrator of The American | ) |
| Bakers Association Retirement Plan, | ) |
|  | ) |
| Third Party Plaintiffs, | ) |
| Counterclaimants, and Cross-Claimants, | ) |
| Counterclaim Defendant, and | ) |
|  | ) |
| **PENSION BENEFIT GUARANTY** | ) |
| **CORPORATION,** | ) |
|  | ) |
| Cross-Defendant. | ) |
|  | ) |

LEWIS BROTHERS BAKERIES, INC.'S OPPOSITION TO
AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S
MOTION TO DISMISS COUNTS II AND III OF THE COUNTERCLAIM

On July 19, 2007, Lewis Brothers Bakeries, Inc. ("Lewis Brothers") filed a revised motion for leave to file an Amended Answer, Crossclaims and Counterclaims (Doc. 77). Although the Crossclaims and Counterclaims were similar to claims previously advanced by Sara Lee, they were *not* identical.

Following a hearing in early July 2007, the Court entered an Order, dated September 11, 2007, dismissing Sara Lee's claims against the American Bakers Association Retirement Plan ("the ABA Plan") and the Board of Trustees of the American Bakers Association Retirement Plan ("the Trustees") (Doc. 91).  In particular, the Court ruled that Sara Lee was not a "fiduciary" within the meaning of ERISA, 29 U.S.C. § 1002(21)(a), "because Sara Lee does not have discretionary authority or responsibility over the Plan."  Opinion, at 5.  The Court stated that as "ABA Plan points out, Sara Lee's authority to enforce the Trust is irrelevant because the Trust is not the same as the Plan — by its very terms, the Trust agreement merely covers the creation of the Trust, which is the 'funding medium' for the Plan …"  *Id*.  It noted that "the Plan … is the 'governing document' which sets forth the administration and management of the Plan, *id*. ¶ 11; Ex. 1 (ABA Plan)," and it stated that "the right to enforce the Trust does not constitute a fiduciary function for purposes of ERISA as it does not involve discretionary authority or responsibility for administration of the Plan."  *Id*., at 6.  The Court found that, as a result, a cause of action was not stated under 29 U.S.C. § 1132(a)[1], and it granted the ABA Plan's motion to dismiss.  *Id.*

In the same Order, the Court stated: "Lewis Brothers' attempt to assert the substantially the same claim against the ABA Plan under § 1132 must fail for the same reason — that Lewis Brothers is a participating employer, not a fiduciary of the plan. Thus, Lewis Brothers' motion for leave to amend and assert a counterclaim against the ABA Plan is denied."  The Court

---

[1] This section of ERISA provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

nevertheless granted Lewis Brothers' motion for leave to amend its answer and assert a cross-claim against the PBGC. *Id.*, at 6, n.3.

On March 20, 2008, the Court entered a further Order, *granting* Lewis Brothers' motion for leave to file a counterclaim against the ABA Plan, and cross-claims against the PBGC. (Doc. 91.) Lewis Brothers filed its Amended Answer, Crossclaims and Counterclaims the same day.

On May 5, 2008, the ABA Plan filed a Motion, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to Dismiss Counts II and III of Lewis Brothers' Counterclaim. The Motion argues that, although these Counts differ from those asserted by Sara Lee, the Court should treat them as if they were the same.

## ARGUMENT

The Counterclaim filed by Lewis Brothers asserts causes of action seeking declaratory, injunctive and other equitable relief against the Board of Trustees of the American Bakers Association Retirement *Trust*, as Administrators of the ABA *Plan*. The ABA Plan has sought dismissal of these claims, under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, asserting that Lewis Brothers is without standing to assert them, because Lewis Brother is not a "fiduciary" of the Plan, or otherwise within the categories of persons entitled to bring actions under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a). That section provides that provides that a civil action may be brought *under ERISA*

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*Id.*, § 1132(a)(3). Counts II and III of the Amended Counterclaim, admittedly, as styled as actions predicated upon ERISA Section 502(a)(3). The allegations of the Counterclaim, fairly construed, *primarily* assert causes of action under ERISA Section 502. Lewis Brothers

acknowledges that the Court, in the Opinion that it rendered after the Counterclaim was filed, ruled that Sara Lee, and Lewis Brothers, are not "fiduciaries" within the meaning of ERISA, 29 U.S.C. § 1002(21)(a), "because [they do] not have discretionary authority or responsibility over the Plan." *See* Opinion Granting ABA Plan Motion to Dismiss Sara Lee Counterclaim, September 11, 2007, at 5, 6 (Doc. 91). Lewis Brothers also acknowledges that it is not a "participant" or a "beneficiary" within the meaning of the statute. Lewis does not here reargue these Court's findings.

However, Lewis Brothers did *not* bring its claims *solely* under the provisions of ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), as the ABA Plan seems to suggest. Count II of the Counterclaim specifically asserts that Lewis Brothers "has standing and authority under Section 11.03 of the ABA Trust" to bring an action against the Trustees. *See* Counterclaim ¶ 45.[2] That section of the ABA Trust, provides:

> *Participating Employers shall have the authority*, either jointly or severally, *to enforce this Trust on behalf of the persons having or claiming any interest in the Fund*. In any action or proceeding affecting the Fund or the administration thereof or for instructions to the Board, the Association and the Board shall be the only necessary parties, and no Participating Employer or employees or former employees of any Participating Employer or their beneficiaries or any other person having or claiming to have an interest in the Fund shall be entitled to any notice of process, and any judgment that may be entered in such action or proceeding shall be binding on all persons having or claiming to have any interest in the Fund.

Counterclaim ¶ 45, *quoting* American Bakers Association Retirement Trust, as amended, Effective October 1, 1976, ¶ 11.03.

---

[2] Lewis Brothers also acknowledges that, in its opinion in September 2007, the Court addressed Sara Lee's argument that Section 11.03 of the ABA Trust supported Sara Lee's assertion that it was and is a "functional fiduciary." The Court rejected that argument. However, Sara Lee did not argue, as does Lewis Brothers here, that Section 11.03 of the ABA Trust provides an independent basis for action, cognizable by the Court as a matter of federal common law. The Court did not, in its September 2007 Opinion, address the argument now raised by Lewis Brothers.

- 5 -

The Counterclaim contends that, "Section 13.02 of the ABA Plan unambiguously states that the contributions of each Participating Employer will be used only to pay benefits for its own employee-participants and their beneficiaries and not for the benefit of the employee-participants and beneficiaries of other Participating Employers." *Id.,* ¶ 46. It avers that:

> If, as the PBGC has asserted, the Board of Trustees has operated the ABA Plan in a manner that complied in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, and, instead, as a multiple-employer plan, then the Defendants ABA Plan and Board of Trustees have violated the terms of Sections 2.02, 7.02, 8.02 and 13.02 of the ABA Plan by using and diverting funds contributed by Lewis Brothers solely for the benefit of its employees to pay the benefits and administrative expenses for employee-participants of other Participating Employers that the Board of Trustees allowed to maintain negative balances in the ABA Trust.

*Id*., ¶ 48. Count II further alleges that, if, as the PBGC has asserted, the Trustees have operated the ABA Plan as a multiple-employer plan, "the Defendants ABA Plan and the Board of Trustees have also violated the terms of Section 2.02 of the ABA Plan by failing to enforce the ABA Plan in accordance with its terms." *Id*., ¶ 49. Although not explicitly so stated in the Counterclaim, if, as the PBGC has asserted, the Trustees have operated the ABA Plan as a multiple-employer plan, they have also violated the terms of the *Trust*. *See also* Counterclaim, Ex. 3, ¶ 3.01 (Board of Trustees "shall receive contributions paid by the Participating Employers" and perform other functions "all pursuant to and in accordance with the terms of the Plan and as set forth in this Trust"); and ¶ 6.01 (Board of Trustees "shall maintain accurate and detailed records and accounts of all transactions).

Both Counts II and III of the Counterclaim were also brought under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, because Lewis Brothers is a "real party in interest in the litigation." *See* Counterclaim ¶¶ 44 and 53. *See, e.g., MedImmune, Inc. v. Genentech, Inc.,*

549 U.S. 118, 127 S.Ct. 764 (2007).[3] In view of the allegations made in the Counterclaim that Lewis Brothers is a Participating Employer, who, as one of the settlors of the Trust, specifically reserved to itself the right to enforce the Trust on behalf of the persons having or claiming any interest in the Fund, and that, at least as now construed by the PBGC, the Trustees have operated the Trust and the related Plan in a manner not in accordance with the terms of the Trust, the Counterclaim clearly. alleges that Lewis Brothers, as a Participating Employer, has a direct interest in the litigation, and thus standing to bring these claims against the Trustees.

## Rule 8

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U. S. 41, 47

---

[3] In *MedImmune*, the Court stated: "Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*, at 240–241. In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U. S. 270, 273 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*, 127 S.Ct. at 771.

The Declaratory Judgment Act, to be sure, does not create an independent basis for *jurisdiction*, or even a separate cause of action. *See, e.g., Walker Process Equipment Co., Inc. v. FMC Corp.*, 356 F.2d 449 (1966), *cert denied* 385 U.S. 824, 87 S.Ct. 56 (1966). The Act, among other things, allows prospective defendants to establish their *nonliability*. *Bacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948 (1959). However, it is not limited to defensive matters. The purpose of the Act is to settle "actual controversies" *before* they ripen into violations of law or breach some contractual duty. *See, e.g., United States v. Fisher-Otis Co.,Inc.,* 496 F.2d 1146, 1151 (10th Cir. 1974). This is especially applicable here. The Court will not, if it renders a judgment on the claims made in Lewis Brothers' Counterclaim, be rendering an "opinion advising what the law would be upon a hypothetical state of facts." To the contrary, especially if the Court finds merit in the PBGC's claims, a judgment on Lewis Brothers' claims will resolve a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." The controversy between Lewis Brothers and the Trustees is "real and substantial" and admits of "specific relief through a decree of a conclusive character," including a decree under the Declaratory Judgment Act.

(1957)." *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The factual allegations made in a complaint must, of course, be sufficient "to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, *Federal Practice and Procedure* §1216, pp. 235–236 (3d ed. 2004)... ."  *Id.*, 127 S.Ct. at 1964   Reviewing these standards, commentators have stated that:

> The complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.  Similarly, it need not appear that plaintiff can obtain the particular relief prayed for, as long as the court can ascertan that some relief may be granted.

5 Wright & Miller, *supra*, §1357, at 336-339.  *See also Harrison v. U.S. Postal Service*, 840 F.2d 1149, 1152 (4th Cir. 1988); *Oliver v. Bostetter*, 426 F.Supp. 1082, 1084 (D.Md. 1977).

Moreover, a complaint should not be dismissed merely because the court doubts that the plaintiff will prevail in a particular action.  *See Revene v. Charles County Commissioners*, 882 F.2d 870, 872 (4th Cir. 1989); *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982).  Whether the plaintiff can prevail is a matter properly determined on the basis of the proof and evidence, not merely on the basis of the pleadings.  *Oliver v. Bostetter*, 426 F.Supp. at 1088; 5 Wright & Miller, *supra*, §1357, at 340-341.

When the allegations of the Counterclaim are viewed in light of these standards, contrary to the assertions made by the ABA Plan in its Motion to Dismiss, Lewis Brothers' Counterclaim has stated causes of action, at least in Count II of the Counterclaim (which is based almost entirely on the terms of the Trust, instead of the ABA Plan), upon which relief may be granted.  And, viewed in light of these pleadings standards, Lewis Brothers has sufficiently stated its real

interests in the litigation to warrant a finding that it has standing to bring the actions alleged in the Counterclaim.

Federal Common Law Cause of Action

The question raised by the ABA Plan's Motion to Dismiss is whether the *only* causes of action that may be asserted against the Board of Trustees of the American Bakers Association Retirement Trust are those described in ERISA Section 502(a)(3), 29 U.S.C. § 1132(a). Clearly, they are not. In several cases decided under ERISA, the courts have recognized, at least in some circumstances, the existence of actions under "federal common law" to vindicate various rights. *See, e.g., Group Hospitalization and Medical Services, Inc. v. Richardson,* 946 F.Supp. 50 (D.D.C. 1996)(Congress intended federal courts to create federal common law regarding ERISA), *citing Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 109 S.Ct. 948 (1989); *Steinberg v. Mikkelsen*, 901 F.Supp. 1433 (E.D.Wisc. 1995)(factors determining when federal common law should be adopted in actions relating to ERISA); *Reid v. Prudential Ins. Co. of America*, 755 F.Supp. 372 (M.D. Fla. 1990)(federal courts must fashion federal common law for interpretation and enforcement of employee benefit plans); *Cury v. Colonial Life Ins. Co. of America*, 737 F.Supp. 847 (E.D.Pa. 1990)(federal common law must be developed to resolve disputes arising from ERISA regulated plans); *Provident Life and Acc. Ins. Co. v. Williams*, 858 F.Supp. 907 (W.D. Ark. 1994)(discussing timeliness of federal common law cause of action under ERISA; federal common law of ERISA must utilize equitable principles where necessary to prevent injustice); *Neal v. General Motors Corp.*, 266 F.Supp.2d 449 (W.D.N.C. 2003)(action seeking declaratory judgment verifying entitlement of beneficiary's estate to monies paid from

plan)[4]. *Cf. Blackmar v. Lichtenstein*, 603 F.2d 1306 (8th Cir. 1979)(legislative history of ERISA demonstrates that the trust instrument is to be followed unless it is inconsistent with the fiduciary requirements set out in ERISA; finding former trustee who was properly replaced had no standing to sue because he no longer had an interest in the suit). An action under "federal common law" arises under the laws of the United States, within the meaning of 28 U.S.C § 1331.[5]

In *Empire Kosher Poultry, Inc.*, *supra*, employer, Empire, sued United Fund, a multiemployer plan established under ERISA to provide health and welfare benefits to employees, for restitution of amounts mistakenly paid to defendant under a contract between Empire and its employees' union. Empire alleged that United Fund was aware of Empire's error in making the payments and unjustly retained the additional amounts. United Fund moved for dismissal of Empire's compliant, under both FRCP Rules 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted, especially standing. United Fund argued that dismissal was warranted because plaintiff's claim for restitution is not cognizable under federal common law. United argues, in particular, that claims for equitable restitution "are no longer cognizable in light of the Supreme Court's decision

---

[4] "The Supreme Court concluded that § 1331 jurisdiction supports "claims founded upon federal common law as well as those of a statutory origin." *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972)." *Neal v. General Motors Corp.*, 266 F.Supp.2d at 453.

[5] "The question of whether the district court had subject matter jurisdiction pursuant to [§ 1331] is not whether [the plaintiff] had a valid cause of action against the [the defendant] under federal common law. Rather, the subject matter jurisdiction analysis is one of whether the determination of the existence *vel non* of that cause of action is a question "arising under the ... laws ... of the United States." *Airco,* 850 F.2d at 1032. In other words, the very issue of whether federal law creates a cause of action is itself a "federal question," permitting judicial review under § 1331. See *Bell v. Hood,* 327 U.S. 678, 685, 66 S.Ct. 773, 90 L.Ed. 939 (1946)." *Empire Kosher Poultry, Inc. v. United Food and Commercial Workers Health and Welfare Fund, etc.,* 285 F.Supp.2d 573, 578 (E.D.Pa. 2003).

in *Great-West Life and Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)."[6]

Rejecting Union Fund's arguments, and finding that Empire had stated a cognizable cause of action for restitution under federal common law and had standing to bring it, the court stated that, although "ERISA itself does not provide expressly for such a claim, the statute does allow funds to return any contributions 'made by an employer ... by a mistake of fact or law.' 29 U.S.C. § 1103(c)(2)(A)(ii)." From this permissive language, the *Empire* court said, the Third Circuit Court of Appeals "inferred authority to develop a right of action for employers to recover these contributions," limited by "equitable considerations." *Id.,* 285 F.Supp.2d at 579 – 80. "In other words," the court said, "the analysis of a common law restitution claim is not tied to any specific provision of ERISA but is based on application of equitable principles." *Id.* But see *Unum Life Ins. Co. v. Grourke*, 406 F.Supp.2d 524 (M.D. Pa. 2005)(reaching an opposite conclusion, under different facts; Unum, a plan "fiduciary" sought to recover overpayments from beneficiary).

The teaching of the decision in *Empire* is that at least some claims asserted under federal common law survive, even in light of ERISA's limitations on causes of action, standing and relief. Lewis Brothers contends that, as in *Empire*, a federal common law cause of action exists, in favor of Lewis Brothers, over which the Court may exercise subject matter jurisdiction under

---

[6] The *Empire* court noted that *"*Federal circuits have split on the issues of whether courts should permit equitable claims in addition to those specifically enumerated by ERISA and whether such claims arise by implication or through federal common law. *See, e.g., Frank L. Ciminelli Constr. Co., Inc. v. Buffalo Laborers Supplemental Unemployment Benefit Fund,* 976 F.2d 834, 835 (2d Cir.1992) (citing cases). Because the Supreme Court has not directly addressed this issue," the *Empire* court said, its analysis was based primarily on Third Circuit precedent. Counsel have been unable to locate any specific finding by the D.C. Circuit that relates to the exact points raised in *Empire*.

28 U.S.C § 1331, for equitable relief, and for relief under the Declaratory Judgment Act, to the extent that Lewis Brothers seeks equitable relief to *enforce* the obligations of the ABA Plan Trustees under the ABA *Trust*. Lewis Brothers also contends that, under the reasoning of *Empire*, the Court should find that Lewis Brothers, as a Participating Employer and one of the settlors of the Trust, has standing and "authority" to enforce the terms of the Trust on behalf of the persons having or claiming any interest in the Fund, and to obtain equitable relief to ensure that the Trustees have operated and will operate the Trust (and the related Plan) in a manner not in accordance with the terms of the Trust.

As in *Empire*, it will do ERISA no harm, if the Court recognizes a federal common law cause of action in favor of Lewis Brothers, to enforce the terms of the ABA Trust.[7] Such an action is *consistent* with other terms of the Trust, which *explicitly* provides Lewis Brothers with a right to enforce the terms of the Trust. The language of paragraph 11.03 of the Trust is and contains a specific reservation of power in the settlors of the Trust, to "enforce" the Trust, on behalf of any persons having or claiming any interest in the Fund. ABA Trust, ¶ 11.03.

To the contrary, recognizing a federal common law cause of action, under ERISA, in favor of Lewis Brothers, designed to enforce the terms of the ABA Trust will promote the salutary objectives of ERISA. In the absence of such a cause of action, the Trustees will essentially be without *any* restraint, even for palpably illegal action, or for actions that the Court may find are *contrary* to the express terms of the Trust and the Plan. The beneficiaries of the Plan, if they are "persons having or claiming any interest in the Fund," are largely without resources to enforce the terms of the *Trust*. Unlike Lewis Brothers, whose right to enforce the

---

[7] As one court has noted the legislative history of ERISA "demonstrates that the trust instrument is to be followed unless it is inconsistent with the fiduciary requirements set out in ERISA." *Blackmar v. Lichtenstein*, *supra*, 603 F.2d at 1309.

*Trust* is explicitly recognized by the Trust itself, and who is as a contributor a "persons having or claiming any interest in the Fund," the Plan beneficiaries have *no status* under the Trust. Indeed, the terms of Trust, ¶ 11.03, quoted above, do not even provide for *notice* to Plan beneficiaries in any *action* to enforce the Trust.

An action by Lewis Brothers to enforce ¶¶ 3.01 and 6.01 of the Trust is or will be a natural outgrowth of, and directly related to the action against the PBGC in this case. If the Trustees (who are also the members of the Plan's Board), have wrongly operated the Plan as a "multiple employer plan," as asserted by the PBGC, then *asTtrustees of the Trust*, they have not received contributions paid by the Participating Employers, and they have not performed other functions "pursuant to and in accordance with the terms of the Plan and as set forth in this Trust," as is required by *the Trust*. If they have wrongly operated, or allowed the Plan to operate, as a "multiple employer plan," as alleged by the PBGC, then they have also breached their obligations to "maintain accurate and detailed records and accounts of all transactions," as required by *the Trust*.

If the Court were to find that Lewis Brothers is *not* entitled to enforce these terms of *the Trust*, and if it were to grant the ABA Plan's Motion to Dismiss, then the terms of ¶ 11.03 of the Trust, there will be no remedy for anyone to enforce the terms of the Trust, and ¶ 11.03 will be rendered a nullity. This is not consistent with logic, the law or the terms of the Trust. It is not, and cannot be, consistent with ERISA.

Remedies

The remedies sought by Lewis Brothers, contrary to the ABA Plan's assertions, are all equitable in nature or countenanced by the Declaratory Judgment Act. The Counterclaim seeks a declaration, dependent upon the Court's decision on the ABA Plan's, Sara Lee's and Lewis

Brothers' actions against the PBGC, seeking reversal of the PBGC's incorrect decision that gave rise to this case. As noted above, the purpose of the Declaratory Judgment Act is to settle "actual controversies" *before* they ripen into violations of law or breach some contractual duty. *See* Note 2, *supra*.[8] If the Court finds that the Trustees are found to have operated the ABA Plan in a manner that failed to comply in all respects with the requirements imposed by ERISA and the PBGC for the creation and operation of an aggregate of separate pension plans, as contemplated by the *Trust* and the Plan, and if, instead, the Court sustains the PBGC's decision that the *Trustees* operated the ABA Plan as a multiple-employer plan, then, it would follow, almost automatically, that funds "contributed" by Lewis Brothers have *not* been "held" in accordance with the terms of the *Trust* and the Plan, as required by ¶ 3.01 of the *Trust*.

Moreover, any funds held by the Trust, that have been contributed by Lewis Brothers, *must* be "specifically identifiable." The Trust contemplates that such contributions may be co-mingled with those of other Participating Employers for purposes of efficiency and administrative cost savings. But that does *not* mean that such funds are not *or should not be* "traceable" or "specifically identifiable." As noted above, the Trust requires the Trustees to

---

[8] While it is true, as the ABA Plan has intimated, that the dispute between the *Trustees* and Lewis Brothers is dependent upon the Court's ruling in this case, and might well be resolved by the Court's determination of the merits of the PBGC's position (*i.e.,* if the Plan has *always* been operated as an "aggregate of single employer plans), this observation does not mean that there is no *active* and justiciable controversy between the *Trustees* and Lewis Brothers *at present*. *See* ABA Plan Memorandum in Support of Motion to Dismiss, at 18. The PBGC's determination, on August 6, 2006, that the Plan is and "always has been " operated as a "multiple employer plan," rather than as an "aggregate of single employer plans," as required by the *Trust* and the Plan which it incorporates, created the dispute. While the parties have a common interest in a finding by the Court that the PBGC determination was erroneous, Lewis Brothers has a separate and unique interest in ensuring that the conditions that gave rise to the PBGC determination are ameliorated, and that the terms of the *Trust* are enforced, now and in the future. If the terms of the *Trust* are enforced, by the relief that Lewis Brothers has sought, then the *Trust* will be operated in accordance with its terms, and monies held by the Trust will be disbursed and accurately accounted, as required by the Trust, in and as an "aggregate of single employer plans," for the benefit of Lewis Brothers' employees.

"maintain accurate and detailed records and accounts of all transactions." ABA Trust ¶ 6.01. If such records are maintained, then it should be reasonably possible for the Trustees to identify all funds contributed by Lewis Brothers, and the proceeds of those funds.

Among other things, Count III of the Counterclaim seeks "An accounting of all funds presently in the possession of the ABA Plan and Board of Trustees." Such an "accounting" is an equitable remedy, clearly designed to identify the funds that may be in the possession of the Trustees that were contributed by Lewis Brothers, and the proceeds thereof. Such an accounting will obviously inure to the benefit of Plan beneficiaries, as well as Lewis Brothers, as a Trust settlor and Participating Employer. Likewise, the "imposition of a constructive trust on such portion of the ABA Plan assets as are identifiable contributions made by Lewis Brothers for the benefit of its own employees," as requested in Count III, will serve the same purpose, and is clearly relief that is equitable in nature. Both requests for relief will ensure that monies that have been paid for the benefit of Lewis Brothers' employees will only be used *in the future* to pay for benefits payable to those beneficiaries, and no others. If the Court finds that the PBGC's position should be sustained, and that the Plan has *not* been *operated* as an "aggregate of single employer plans," that finding does *not* mean that, *in the future*, changes to the method of operation of the Plan should *not* be adopted, so that the Plan and the Trust will be operated *in the future*, in accordance with and pursuant to the terms of the Trust and the Plan, as an "aggregate of single employer plans," for the benefit of Lewis Brothers' employees. Lewis Brothers' requests for injunctive relief, obviously equitable in nature, plainly seek to compel this result *whatever* the past may be determined to have been.

## CONCLUSION

For the foregoing reasons, and for reasons that may be advanced at any oral argument

that the Court may entertain on this Motion, the Counterclaimant, Lewis Brothers Bakeries, Inc., respectfully submits that the Motion filed by the Counterclaim Defendants, the American Bakers Association Retirement Plan and the Board of Trustees of the American Bakers Association Retirement Plan, to Dismiss Counts II and III of the Counterclaim, should be denied.

    Respectfully submitted,

    /s/ D. Christopher Ohly

    D. Christopher Ohly (DC Bar No. 486370)
    SCHIFF HARDIN, LLP
    1666 K Street, NW
    Suite 300
    Washington, DC 20006
    Tel: 202.778.6458

    **Counsel for Lewis Bros. Bakeries, Inc.**

# CERTIFICATE OF SERVICE

      I, D. Christopher Ohly, hereby certify that a true and exact copy of the foregoing OPPOSITION TO THE AMERICAN BAKERS ASSOCIATION RETIREMENT PLAN'S MOTION TO DISMISS COUNTS II AND III OF THE COUNTERCLAIM filed by Lewis Brothers Bakeries, Inc., have been served on the following parties this 13th day of June, 2008, as indicated below:

*VIA ELECTRONIC FILING:*

STEPTOE & JOHNSON LLP

Paul J. Ondrasik, Jr. (D.C. Bar # 261388)
Edward R. Mackiewicz (D.C. Bar # 944884)
Ryan T. Jenny (D.C. Bar # 495863)
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902

LAW OFFICE OF ANNE H.S. FRASER, P.C.
Anne H.S. Fraser (D.C. Bar # 349472)
1320 19th Street, N.W., Suite 200
Washington, DC 20036-1637
Tel: (202) 466-4009
Fax : (202) 466-4010

**Counsel for American Bakers Association Retirement Plan and Board of Trustees of the American Bakers Association Retirement Plan**

M. Miller Baker
Sarah E. Hancur
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
(202) 756-8233

Michael T. Graham
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606
(312) 984-3606

**Attorneys for Plaintiff Sara Lee Corp.**

Edward J. Meehan

- 17 -

David E. Carney
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., NW
Washington, DC 20005
(202) 371-7000

Amanda S. Williamson
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606
(312) 407-0700

Carol Connor Cohen
Arent Fox, LLP
1050 Connecticut Ave., NW
Washington, DC  20036
(202) 857-6054

**On behalf of Third-Party Defendant Interstate Brands Corporation**


James Hamilton
Bingham McCutchen
2020 K Street, NW
Washington, DC  20006
(202) 373-6026

**On behalf of Third-Party Defendant American Bakers Association**

Lonie A. Hassel
Groom Law Group
1701 Pennsylvania Ave., NW
Washington, DC  20006
(202) 857-0620

**On behalf of Third-Party Defendant Harris Baking Co.**

Israel Goldowitz, Chief Counsel
Charles Finke, Deputy Chief Counsel
Michael Miller, Assistant Chief Counsel
Paula Connelly, Assistant Chief Counsel
Marc Pfeuffer, Attorney
Mark Blank, Attorney
PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, N.W.

Washington, DC 20005

**On behalf of Defendant Pension Benefit Guaranty Corporation**

*The following individuals have been served VIA FIRST CLASS MAIL:*

James R. Kettering, Jr.
President
Kettering Baking Co.
729 Coleman Avenue
Fairmont, WV 26554

**On behalf of Third-Party Defendant Kettering Baking Co.**

Bernard Baker
President
Jenny Lee Bakery, Inc.
620 Island Avenue
McKees Rock, PA 15136

**On behalf of Third-Party Defendant Jenny Lee Bakery, Inc.**


/s/ D. Christopher Ohly

D. Christopher Ohly (DC Bar No. 486370)
SCHIFF HARDIN, LLP
1666 K Street, NW
Suite 300
Washington, DC 20006
Tel: 202.778.6458

**Counsel for Lewis Bros. Bakeries, Inc.**